**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net
Counsel of Record for Plaintiff, **SYLABS, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **GREGORY ROSE** a/k/a **GREGORY M.** ) <br> **KURTZER**, et al., ) <br> ) <br> Defendants. ) <br> ) <br> ) | Case No. **5:23-cv-00849-SVK** <br><br> **FILED UNDER SEAL: SYLABS, INC.'S ADMINISTRATIVE MOTION AND [*PROPOSED*] ORDER TO RESCHEDULE CASE MANAGEMENT CONFERENCE** <br><br> [Civil L.R., Rules 7-11, 16-2, and 79-5; Federal Rules of Criminal Procedure, Rule 6(e)] |

1. I, Peter D. Lepiscopo, declare under the penalty of perjury as follows.

2. I am an attorney licensed to practice law in the State of California and a Member of the Bar of this Court. I am over the age of eighteen and have personal knowledge of the matters stated herein, except those stated on information and belief, and as to those I believe them to be true. I am now and have been throughout these proceedings counsel of record for plaintiff, Sylabs, Inc. (hereinafter referred to as "Sylabs" or "Plaintiff").

3. In order to preserve Sylabs' claims prior to expiration of their respective limitations period, on February 24, 2023, this action ("Action") was filed [ECF 1] and the reasons why it has not yet been served on any of the Defendants are explained herein.

4. Upon initiation, this Action was immediately assigned to the Honorable Susan van Keulen, Magistrate Judge. [ECF 2.]

5. On February 24, 2023, the Court issued the Order Setting Case Management Conference and ADR Deadlines ("CMC Order"). [ECF 3.]

6. On February 24, 2023, I submitted for the Court's approval and issuance, summons for all named defendants in this matter. [ECF 4-14.]

7. Upon review of the CMC Order, I discovered that the date of the CMC Hearing was set for a time frame that I was previously scheduled to be on vacation in Hawaii. Consequently, on February 27, 2023, I filed Sylabs' administrative motion to reschedule case management conference [ECF 15], which the Court granted on March 13, 2023, thereby setting the new hearing for July 11, 2023 [ECF 21, p. 4].

8. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

9. As of the date of the filing of this motion, no defendant has made an appearance in this Action.

10. The following paragraphs are provided to not only support this motion but also to provide context. I would suggest that if further detail is needed in order to assess this motion, Sylabs' Complaint [ECF 1] provides extensive details regarding the facts underlying Sylabs' federal and state claims.

11. Stated generally, high-performance computing industry ("HPC") refers to the computer science architecture of aggregating computing power in a way that delivers much higher performance than could be obtained from a typical desktop computer or

workstation in order to solve large problems in, for example, science, engineering, medicine, or business. [ECF 1, ¶44.]

12. In 2018, Sylabs commenced development of technologies for the HPC industry, which is a technology that harnesses the power of supercomputers or computer clusters to solve complex problems requiring massive computation. [ECF 1, ¶43.]

13. Sylabs was specifically founded in order to invent and market value-added technology for the HPC industry. [ECF 1, ¶59.]

14. Sylabs' intellectual property ("IP") relates to high-performance computing—an industry with over $39 billion in annual revenues worldwide, which is expected to grow to over $74 billion by 2030. [ECF 1, ¶9.]

15. In order to provide the efficiency, security, and functionality that the HPC market required, Sylabs invented Singularity Image Format ("SIF") to create a digital container that holds pieces of software in a structured format that allows the programs to be portable and reproducible, as well as being secured through encryption. This is especially important for the development, creation, and sharing of intellectual property in collaborative environments or ones subject to higher levels of security classifications (e.g., military, National Security Agency, etc.). [ECF 1, ¶72.]

16. Sylabs' SIF technology and strategy has successfully positioned the company as a global leader in secure, trusted, performance-focused container solutions. The capabilities that Sylabs has created are revolutionary and unique within the HPC industry, purposely and uniquely built to address some of the limits, shortcomings, and flaws within current container technologies. [ECF 1, ¶87.]

17. The following will generally describe the gravamen of this Action.

18. During the time period between March 1 through June 1 of 2020, the Defendants surreptitiously and unlawfully intruded into and accessed Sylabs' computer server to delete files and steal all of Sylabs' IP and Trade Secrets that were under development and close to being submitted to the U.S. Patent and Trademark Office

("USPTO") for protection and prosecution, including downloading the contents of Sylabs' <u>entire</u> server ("Sylabs' Server"). [ECF 1, ¶110.]

19. Paragraphs 109-134 of the Complaint is a detailed discussion of Defendants' acts of cyber theft, misappropriation, and unlawful use of Sylabs' IP and Trade Secrets, as well as other legally protected information, including, for example: corporate records; financial records; partner and joint venture records; customer lists; sales and potential sales lists, statements of work; purchase orders; invoices; marketing strategies, plans, and pricing; prospective investors list; HR records; employees' files; employees' private information; staff agreements; emails and correspondence; and privileged documents (collectively "Sylabs' Corporate Secrets") [ECF 1, ¶135].

20. It is clear that Defendants' cyber theft of Sylabs IP, Trade Secrets, and Corporate Secrets demonstrates that their strategy was to surreptitiously commandeer Sylabs' entire business and resources so that they in effect had an ongoing business without having to invest in research and development or pay a single penny to Sylabs for use of Sylabs' IP, Trade Secrets, or Corporate Secrets. [ECF 1, ¶¶ 109-134.]

21. The allegations of the Complaint establish a pattern of Defendants' criminal enterprise and conspiracy, which is currently ongoing and expanding [ECF 1, ¶¶ 135-178]. For example, through their cyber theft of Sylabs' IP, Trade Secrets, and Corporate Secrets, Defendants recently raised $26,000,000 in investment capital, making a total of $33,000,000 raised. Furthermore, according to defendant Greg Kurtzer, defendant CIQ now has an enterprise valuation of $150,000,000—**this is actually Sylabs' enterprise value, as it is based on Sylabs' IP, Trade Secrets, and Corporate Secrets**. [ECF 1, ¶138.]

22. In addition to the aforementioned cyber theft, Defendants also perpetrated a fraud on the USPTO by unlawfully and fraudulently presenting Sylabs' technologies as their own inventions, which was a product of their theft of Sylabs' IP, Trade Secrets, and Corporate Secrets. [ECF 1, ¶¶ 179-181.]

LEPISCOPO & ASSOCIATES LAW FIRM

23. For example, one such technology stolen by the Defendants through their cyber theft was funded, developed, and invented by Sylabs, which is known as "Fuzzball." Generally, Fuzzball is Sylabs' IP and Trade Secret relating to value-added technology that creates a cluster of two differentiated software stacks. The first, Fuzzball **service**, is a cloud native service for workflow management and orchestration. The second, Fuzzball **agent**, is a small, purpose-built systems service that executes workflows on computer nodes. [ECF 1, ¶¶ 91-94].

24. Another example of a technology stolen by the Defendants through their cyber theft was funded, developed, and invented by Sylabs, which is known as "Armored Containers." As the name implies, Sylabs' Armored Containers technology expands its SIF technology in a way that allows increased security in deployments to cloud environments as well as on-field deployed devices. [ECF 1, ¶¶ 99-101].

25. As to its development, in June 2019, Sylabs invented and commenced the development and design of SIF technology. For purposes of context, it was on June 7, 2019, that Sylabs filed its SIF U.S. Patent Application (No. 16/435,251) with the USPTO. [ECF 1, ¶ 100].

26. [REDACTED]

27. Through their cyber theft, the Defendants utilized Sylabs' post and pre-patented SIF technology without disclosing Sylabs' prior art in its SIF technology. By failing to disclose such prior art in their patent applications, the Defendants perpetrated an intentional fraud upon the USPTO, which is proscribed by 37 CFR 1.56(a) and which in its relevant part provides (emphasis added) [ECF 1, ¶ 131]:

> "However, no patent will be granted on an application in connection with which **fraud on the Office was practiced or attempted** or the duty of disclosure was violated through bad faith or intentional misconduct."

28. Defendants violated 37 CFR 1.56 by breaching their duty of candor, disclosure, and good faith by perpetrating a fraud on the USPTO, to wit [ECF 1, ¶ 132]:

a.  fraudulently omitting prior art, *i.e.*, Sylabs' Trade Secrets that Defendants obtained and misappropriated through cyber theft;

b.  fraudulently representing that SIF containers, Fuzzball, and Armored Containers were their IP when they were actually invented and owned by Sylabs; and

c.  fraudulently representing they were the inventors of the IP whereas the actual inventors were Sylabs and its relevant employees.

29. For a point of reference, Figure 10 on page 43 of the Complaint sets forth the six (6) U.S. Patents that the Defendants procured through theft of Sylabs' SIF, Fuzzball, and Armored Containers technologies (*see* ECF 1, 180, pp. 42-43):

| SYLABS' TRADE SECRET | KURTZER, et al.'s THEFT: PATENT # | PROOF THAT PATENT IS SYLABS' TRADE SECRET |
|---|---|---|
| Fuzzball | US 10,970,113 | As set forth in greater detail in Sections V-VIII of the Complaint (ECF 1, pp. 7-43), the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date.<br><br>In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Fuzzball | US 11,099,893 | " " |
| Fuzzball | US 11,310,342 | " " |
| Armored Containers | US 11,055,428 | The Armored Containers a based on Sylabs' prior trade secrets in the SIF technology.<br><br>As set forth in greater detail in Sections V-VIII of the Complaint (ECF 1, pp. 7-43), the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as July of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date. |

| Armored Containers | US 11,163,902 | " | " |
| Armored Containers | US 11,321,064 | " | " |
|  |  |  |  |

**FIGURE 10**: Defendants' Patents Procured Through Theft of Sylabs' Trade Secrets

30. As alleged in Sylabs' Complaint, the foregoing cyber theft gives rise to the following counts under federal and state law (*see* ECF 1, Counts I-XI, pp. 58-87, ¶¶ 208-359):

 (a) Count I: Violation of Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.;

 (b) Count II: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

 (c) Count III: Violation of California Uniform Trade Secrets Act, California Civil Code §§ 3426 et seq.;

 (d) Count IV: Violation of Civil RICO, 18 U.S.C. § 1962(c);

 (e) Count V: Violation Civil RICO, 18 U.S.C. § 1962(d);

 (f) Count VI: Civil Conspiracy, Judicial Council of California Civil Jury Instructions (2022 edition) ("CACI"), CACI No. 3600;

 (g) Count VII: Violation of California Unfair Trade Practices Act, Cal. Bus & Prof. Code § 17200;

 (h) Count VIII: Breach of Fiduciary Duty, CACI No. 4400;

 (i) Count IX: Aiding & Abetting Breach of Fiduciary Duty;

 (j) Count X: Unjust Enrichment, CACI No. 4410; and

 (k) Count XI: Conversion, CACI No. 2100.

31. [REDACTED]



33. ███████████████████████

34. ███████████████████████

35. ███████████████████████

36. ███████████████████████

37. ███████████████████████

---

[1] ███████████████████████

[2] *See:* ███████████████████████

[3] *See, generally:* https://csrc.nist.gov/glossary/term/audit_trail. [ECF 1, ¶ 111.]

**FILED UNDER SEAL: SYLABS, INC.'S ADMINISTRATIVE MOTION & [*PROPOSED*] ORDER RESCHEDULING CMC**

38. The Information Technology Laboratory at the National Institute of Standards and Technology, U.S Department of Commerce ("NIST") provides the following guidance regarding audit trails (emphasis added):

"AUDIT TRAILS

**Audit trails maintain a record of system activity** both by system and application processes and **by user activity** of systems and applications.
In conjunction with appropriate tools and procedures, audit trails can assist in detecting security violations, performance problems, and flaws in applications.

BENEFITS AND OBJECTIVES

Audit trails can provide a means to help accomplish several security-related objectives, including individual accountability, **reconstruction of events** (actions that happen on a computer system), intrusion detection, and problem analysis." [4]

39. Throughout the country, the FBI utilizes computer forensics through its Regional Computer Forensics Laboratories for investigations into various areas of criminal activity, including trade secret theft and theft or destruction of intellectual property.[5]

40. In fact, the FBI's use of computer forensics for investigation of cyber theft like those committed by the Defendants in this Action is ubiquitous and indispensable:

" 'Without digital forensics, it would be hard to get a conclusion in a lot of cases,' said Walsh, who noted the very nature of modern communications makes the work of the FBI more challenging. 'Suspects aren't talking on the phone anymore and our technical techniques are not working as well because so much more is encrypted. I pull in the [Forensics Laboratory] very early in my investigative strategy.' " [6]

41. In this Action, Sylabs' Audit Logs evince and memorialize each and every act of cyber theft perpetrated by the Defendants, all of which contained the following

---

[4] *See:* https://csrc.nist.gov/csrc/media/publications/shared/documents/itl-bulletin/itlbul1997-03.txt. [ECF 1, ¶ 112.]
[5] *See:* https://www.rcfl.gov/. [ECF 1, ¶ 114.]
[6] *See:* https://www.fbi.gov/news/stories/rcfls-follow-the-modern-evidence-trail-081219. [ECF 1, ¶ 115.]

information for each and every unlawful access to Sylabs' server: (a) the identity of the person accessing, (b) the date and time of access, (c) what was accessed, (d) what files were deleted, (e) what files were renamed, (f) what files were download, (g) what directories were created for deletion and copying purposes, (h) the specific emails utilized to access Sylabs' server, and so on. [ECF 1, ¶¶ 111-116].

42. [redacted]

43. [redacted]

44. [redacted]

45. [redacted]

46. [redacted]

47. [redacted]

48. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████

49. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████

50. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████

51. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

Accordingly, the forgoing provides good cause for this Court to:

    (a)    order that this motion be filed under seal until further order of the Court; and

    (b)    grant the requested rescheduling of the initial Case Management Conference as set forth below in Paragraph 53.

52. ███████████████████████████████████
███████████████████████████████████████

53. Based on the foregoing, Sylabs respectfully requests the Court to issue an order continuing the CMC Hearing and all related dates to the following proposed new dates:

| CASE SCHEDULE – ADR MULTI-OPTION PROGRAM | | |
|---|---|---|
| **Proposed New Date** | **Event** | **Governing Rule** |
| 11/7/2023 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan<br>_____ | F.R.Civ.P. 26(f) &<br>ADR L.R. 3-5<br><br>_____ |
| 11/7/2023 | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8(b) &<br>ADR L.R. 3-5(b) |
| 11/14/2023 | **Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a)(1) &<br>Civil L.R. 16-9 |
| 11/21/23 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) at 9:30 AM in:<br><br>Courtroom 6, 4th Floor<br>Robert F. Peckham Federal Building<br>280 South 1st Street<br>San Jose, CA 95113 | Civil L.R. 16-10 |

54. Finally, this motion is not made for the purposes of delay or for any other inappropriate reason.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 20th day of June 2023 at Orange County, California.

Dated: June 20, 2023.  **LEPISCOPO & ASSOCIATES LAW FIRM**

By: /s/ Peter D. Lepiscopo
    **PETER D. LEPISCOPO**
    *Counsel of Record*
    Attorneys for Plaintiff, **SYLABS, INC.**