1  CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
   carolyn.luedtke@mto.com
2  MIRIAM KIM (State Bar No. 238230)
   miriam.kim@mto.com
3  TAYLOR L. BENNINGER (State Bar No. 344825)
   Taylor.Benninger@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
5  San Francisco, California 94105-2907
   Telephone:    (415) 512-4000
6  Facsimile:    (415) 512-4077

7  Attorneys for Defendants
   JOEL WHITLEY AND IAG CAPITAL PARTNERS

8

9              **UNITED STATES DISTRICT COURT**

10   **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

11

12  SYLABS, INC., a Delaware corporation,          Case No. 5:23-cv-00849-SVK

13              Plaintiff,                          **IAG DEFENDANTS' NOTICE OF**
                                                    **MOTION AND MOTION TO DISMISS**
14       v.                                         **COMPLAINT PURSUANT TO RULE**
                                                    **12(B)(6); MEMORANDUM OF POINTS**
15  GREGORY ROSE a/k/a GREGORY M.                   **AND AUTHORITIES**
    KURTZER; JULIA ROSE a/k/a JULIA
16  KURTZER; ROBERT ADOLPH; MATTHEW
    HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a         Date:       October 3, 2023
17  CIQ; OPEN DRIVES, INC.; DAVID BUSS;            Time:       10:00 a.m.
    MARLIN PRAGER; JOEL WHITLEY; IAG              Courtroom:  6, 4th Floor
18  CAPITAL PARTNERS; and DOES 1 through           Judge:      Hon. Susan van Keulen
    50, inclusive,
19                                                  Filed/Lodged Concurrently with:
              Defendants.                               1.  Proposed Order Granting IAG
20                                                         Defendants' Motion to Dismiss

21

22

23

24

25

26

27

28

Case No. 5:23-cv-00849-SVK

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 3, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants Joel Whitley and IAG Capital Partners[1] (collectively, "IAG Defendants") will and do hereby move to dismiss Plaintiff Sylabs, Inc.'s ("Sylabs" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on the accompanying Memorandum of Points and Authorities, all documents in the Court's file, and such other written and oral argument as may be presented to the Court.

DATED:  August 28, 2023                    MUNGER, TOLLES & OLSON LLP


By:   /s/ Carolyn Hoecker Luedtke
      CAROLYN HOECKER LUEDTKE
      carolyn.luedtke@mto.com
      MIRIAM KIM
      miriam.kim@mto.com
      TAYLOR L. BENNINGER
      Taylor.Benninger@mto.com

      Attorneys for JOEL WHITLEY AND IAG
      CAPITAL PARTNERS

---

[1] IAG Capital Partners is a named Defendant, but it is not an existing corporate entity.  As set forth in Footnote 1 of the attached Memorandum of Points and Authorities, counsel appears for IAG Fund II, LP and IAG Capital Holdings, II for the purpose of this Motion to Dismiss, though those entities have not been served and reserve all rights.

-1-

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      INTRODUCTION ...............................................................................................................1

II.     BACKGROUND .................................................................................................................2

        A.     The Parties ...............................................................................................................2

        B.     CIQ's Formation and Funding ...............................................................................3

        C.     Sylabs' Lawsuit .......................................................................................................3

III.    LEGAL STANDARD ..........................................................................................................5

IV.    ARGUMENT ......................................................................................................................6

        A.     Sylabs' Claims Against IAG and Whitley Rest on Impermissible Group Allegations and Must be Dismissed. ......................................................................6

        B.     All of Sylabs' Claims Against IAG and Whitley Fail on the Merits. ...................10

                1.     Sylabs' Complaint Fails to State a Claim for Trade Secret Misappropriation (Counts I & III) Against the IAG Defendants. ...............10

                2.     Sylabs' CFAA Claim (Count II) is Both Time-Barred and Inadequately Pleaded. ........................................................................15

                3.     Sylabs' Complaint Fails to State Civil RICO Claims (Counts IV & V) Against the IAG Defendants. .................................................................17

                4.     CUTSA Preempts Sylabs' State Law Claims (Counts VI, VII, IX, X, XI) Against the IAG Defendants. ...............................................................19

V.     CONCLUSION .................................................................................................................21

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abcarian v. Levine,*
    972 F.3d 1019 (9th Cir. 2020) ...........................................................................................17

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.,*
    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ...........................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................5, 13

*Attia v. Google LLC,*
    983 F.3d 420 (9th Cir. 2020) .......................................................................................10, 14

*Bank of Am., N.A. v. Knight,*
    725 F.3d 815 (7th Cir. 2013) ............................................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................................5, 17

*Calendar Rsch. LLC v. StubHub, Inc.,*
    No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13, 2020) ........................17

*Cisco Sys., Inc. v. Chung,*
    462 F. Supp. 3d 1024 (N.D. Cal. 2020) ...........................................................................10

*CleanFish v. Sims,*
    No. 19-CV-03663-HSG, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020)...........................11, 12

*Corazon v. Aurora Loan Services*
    No. 11-00542 SC, 2011 WL 1740099 (N.D. Cal. May 5, 2011) ...........................................7, 8

*Digital Envoy, Inc. v. Google, Inc.,*
    370 F. Supp. 2d 1025 (N.D. Cal. 2005) ...........................................................................19

*Grimmett v. Brown,*
    75 F.3d 506 (9th Cir. 1996)...........................................................................................17

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) .....................................................................................................18

*hiQ Labs, Inc. v. LinkedIn Corp.,*
    31 F.4th 1180 (9th Cir. 2022)..........................................................................................16

-ii-           Case No. 5:23-cv-00849-SVK

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ................................................................................19

*In re iPhone Application Litig.*,
  No. 11–MD–02250–LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................7, 8

*Jardin v. Datallegro, Inc.*,
  No. 10-CV-2552-IEG WVG, 2011 WL 1375311 (S.D. Cal. Apr. 12, 2011) .........................20

*Kimera Labs Inc. v. Jayashankar*,
  No. 21-CV-2137-MMA (DDL), 2022 WL 11965058 (S.D. Cal. Oct. 20, 2022) ...............12, 20

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ...............................................................................16

*Mattel, Inc. v. MGA Ent., Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ....................................................................20

*Metaxas v. Lee*,
  503 F. Supp. 3d 923 (N.D. Cal. 2020) ...................................................................18

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) .................................................................10, 12

*Navigation Holdings, LLC v. Molavi*,
  No. 19-CV-02644-LHK, 2020 WL 5074307 (N.D. Cal. Aug. 25, 2020) ...........................11

*New Show Studios LLC v. Needle*,
  No. 2:14-CV-01250-CAS, 2014 WL 2988271 (C.D. Cal. June 30, 2014) .....................15, 16

*Nguyen v. Chow*,
  No. 14-CV-01444-VC, 2014 WL 12625960 (N.D. Cal. Sep. 19, 2014) ...........................17

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
  No. 3:16-CV-05399-WHO, 2017 WL 67075 (N.D. Cal. Jan. 6, 2017) ...........................13

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) .................................................................................19

*Resh v. Skimlite Manufacturing*,
  -- F. Supp. 3d --, 2023 WL 2744423 (N.D. Cal. March 31, 2023) ............................7, 8, 9

*Sollberger v. Wachovia Secs., LLC*,
  No. SACV 09–0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010) ..................6, 8

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016) ...........................................................................16, 17

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  No. 14-CV-04050-MEJ, 2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) ........................13, 14

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) ...........................................................................................16

*Yu v. Design Learned, Inc.*,
    No. 15-CV-05345-LB, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ................................6, 7, 8

**STATE CASES**

*Altavion, Inc. v. Konica Minolta Sys. Lab'y Inc.*,
    226 Cal. App. 4th 26 (2014)...................................................................................13

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009)...............................................................................19, 20

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011)...........................................................................................19

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010).................................................................................19

**FEDERAL STATUTES**

18 U.S.C. § 1030(a)...................................................................................................15

18 U.S.C. § 1030(g)...................................................................................................15

18 U.S.C. § 1839(3)...................................................................................................12

18 U.S.C. § 1839(5)...................................................................................................10

18 U.S.C. § 1961(1)...................................................................................................17

18 U.S.C. § 1961(5)...................................................................................................18

18 U.S.C. § 1962.......................................................................................................17

**STATE STATUTES**

Cal. Civ. Code § 3426.1.............................................................................................10

Cal. Civ. Code § 3426.1(d)(2)....................................................................................12

**FEDERAL RULES**

Fed. R. Civ. P. 4(m)...................................................................................................5

Fed. R. Civ. P. 12(b)(6).............................................................................................5

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is about a company in dire straits—the Plaintiff, Sylabs—using litigation to try to target its competitor, Defendant CIQ, and CIQ's investors.  Bitter about its own failures, Sylabs filed a Complaint claiming that several of its former employees stole its allegedly secret technologies and incorporated them into CIQ's business, all while purportedly convincing investors to participate in and ratify their conspiracy.  But Sylabs did *nothing* for three years after the alleged "theft" and only filed suit when several statutes of limitations were set to expire.  And after filing, Sylabs did *nothing* to prosecute this case—not even serving the Defendants or notifying them of supposedly misappropriated confidential information—for nearly six months, until the Court ordered Sylabs to proceed or risk dismissal.  These are not the actions of a legitimately wronged company seeking to protect its valuable corporate secrets.  They are the actions of a desperate company trying to use baseless claims to disparage CIQ and its investors.

This Motion, filed by IAG Fund II, LP and IAG Capital Holdings II, LLC (collectively, "IAG")[1] and one of IAG's partners, Joel Whitley (collectively, "IAG Defendants" or "IAG Investors"), seeks to dismiss these spurious claims.  The IAG Investors also join in the separately filed motion to dismiss filed on behalf of CIQ, Open Drives, and the other individual Defendants, which also seeks to dismiss all claims pending before this Court.  *See generally* Defendants' Notice of Motion and Motion to Dismiss, Dkt. No. 38-3 (Aug. 28, 2023) ("CIQ Defendants' Motion to Dismiss").

***First***, the IAG Investors are an afterthought in the Complaint and the claims against them are facially inadequate as pled.  Specifically, Sylabs' claims against Whitley and IAG rest not on any individualized allegations against these Defendants, but on improper group allegations against "Defendants" or "Co-Conspirators" generically.  Sylabs' collective allegations fail to differentiate

---

[1] Sylabs sued "IAG Capital Partners" in this lawsuit.  This is not an existing corporate entity.  The entities IAG Fund II, LP and IAG Capital Holdings II, LLC file this motion to dismiss, although they were not named in the lawsuit, do not admit to proper service, and reserve all rights.

1  between the conduct of each Defendant, do not give Whitley or IAG adequate notice of the

2  wrongdoing that they allegedly committed, and are insufficient to state a plausible claim against

3  either Defendant.  Sylabs' excessive and impermissible group pleading justifies dismissal of all of

4  its claims against Whitley and IAG.

5      ***Second***, each of Sylabs' ten claims against Whitley and IAG also fail on their own terms.

6  Sylabs' trade secret claims do not allege any misappropriation by Whitley or IAG, describe

7  Sylabs' efforts to protect its secrets, or define the purported secrets with particularity.  *See* Section

8  IV.B.1, *infra*.  Sylabs' CFAA claim is barred by the statute of limitations, fails to identify the

9  subsection under which it sues Whitley and IAG, and contains no allegations that either Whitley

10  or IAG accessed Sylabs' computers without authorization.  *See* Section IV.B.2, *infra*.  Sylabs'

11  RICO claims fail because Sylabs does not allege that Whitley or IAG committed any predicate

12  racketeering acts or engaged in a pattern of racketeering conduct.  *See* Section IV.B.3, *infra*.

13  Finally, the rest of Sylabs' claims involve the same nucleus of facts as Sylabs' trade secrets claims

14  and are therefore preempted.  *See* Section IV.B.4, *infra*.

15      For these reasons, and as further explained below, the Court should dismiss all of Sylabs'

16  claims against Defendants Whitley and IAG.

17  **II.     BACKGROUND**[2]

18      **A.     The Parties**

19      Sylabs, Inc., the Plaintiff in this lawsuit, "is a Delaware corporation with its headquarters

20  located in Reno, Nevada."  Compl. ¶ 10.  Sylabs operates within the high-performance computing

21  industry.  Compl. ¶ 43.

22      "IAG Capital Partners" is one of eleven named Defendants in this suit.  Sylabs alleges that

23  IAG Capital Partners "is engaged in business in this District and state of California."  Compl. ¶ 27.

24  But "IAG Capital Partners" is not a real entity.  It is just a catch-all term for several business

25  entities, including IAG Fund II, LP, a venture fund, and IAG Capital Holdings II, LLC, the

---

26

27  [2] The IAG Defendants refer to allegations from the Complaint only to aid in the Court's resolution

28  of this Motion and do not admit them by including them here.

1  general partner of IAG Fund II.  IAG Fund II and IAG Capital Holdings II are Delaware

2  companies and share a headquarters in Charleston, South Carolina.  These entities have neither

3  been named in this lawsuit nor served.

4        Joel Whitley, another named Defendant in this matter, is a partner at IAG.  Although the

5  Complaint alleges that Whitley is a "resident of the State of California," Compl. ¶ 28, Whitley in

6  fact lives and works in South Carolina.

7        **B.**      **CIQ's Formation and Funding**

8        CTRL IQ, Inc., which does business as CIQ, is a very promising startup in the high-

9  performance computing industry.  Greg Kurtzer founded CIQ in April 2020 and continues to lead

10  the startup as its CEO and CFO.  Compl. ¶¶ 30, 171.  Before founding CIQ, Kurtzer[3] served as

11  Sylabs' CEO.  Compl. ¶ 30.  Kurtzer's transition from Sylabs to CIQ was no secret: Kurtzer and

12  Sylabs negotiated and signed a release agreement shortly after Kurtzer resigned from Sylabs.  *See*

13  CIQ Defendants' Motion to Dismiss at 4-6.  Four other CIQ employees are also former employees

14  or affiliates of Sylabs.  Compl. ¶¶ 31-34.

15        Recognizing Kurtzer's talent and CIQ's tremendous potential within the high-performance

16  computing industry, an IAG entity decided to invest in the startup.  *See* Compl. ¶ 38.  IAG is not

17  alone in recognizing CIQ's potential.  Co-Defendant Open Drives also invested in the startup.

18  Compl. ¶ 38.

19        **C.**      **Sylabs' Lawsuit**

20        In February 2023—almost three full years after CIQ's founding—Sylabs filed the instant

21  lawsuit.  In it, Sylabs alleges that Kurtzer misappropriated its trade secrets and other corporate

22  information and used that allegedly stolen information to benefit CIQ.  The Complaint names as

23  Defendants not only CIQ and Kurtzer, but also two other former Sylabs employees; two former

24

25

26

27  [3] Two named Defendants in this lawsuit, Greg Kurtzer and Julia Kurtzer, share the same last
name.  Unless stated otherwise, this Motion uses "Kurtzer" to mean Greg Kurtzer rather than Julia

28  Kurtzer.

1    Sylabs "trusted advisor[s]"; two businesses that invested into CIQ, including IAG; and three

2    employees of those investors, including Whitley.

3        The Complaint alleges that all eleven defendants, including IAG and Whitley, are liable for

4    violations the Defend Trade Secrets Act (Count I), the Computer Fraud and Abuse Act (Count II),

5    the California Uniform Trade Secrets Act (Count III), Civil RICO (Counts IV and V), and the

6    California Unfair Competition Law (Count VII), and also for Civil Conspiracy (Count VI), Unjust

7    Enrichment (Count X), and Conversion (Count XI).  The Complaint further alleges that Kurtzer

8    breached his fiduciary duty to Sylabs (Count VIII) and that all Defendants except Kurtzer are

9    liable for aiding and abetting Kurtzer's breach (Count IX).

10        Despite asserting ten causes of action against IAG and Whitley, Sylabs' 89-page

11    Complaint says vanishingly little about their conduct.  As to IAG, Sylabs alleges that it "invested

12    in CIQ and, therefore, w[as] aware of, ratified, and benefited from Defendants' conspiracy."

13    Compl. ¶ 38.  But Sylabs does not allege any specific facts suggesting that IAG was aware of any

14    alleged misconduct or describing how or when it "ratified" that misconduct.  As to Whitley,

15    Sylabs alleged that he received an email from Kurtzer describing a planned new company and a

16    technology called "Fuzzball."  Compl. ¶ 147.  But Sylabs does not allege how that email, in which

17    Kurtzer told Whitley that the technology was "all open source," revealed any of Kurtzer's alleged

18    misconduct, let alone Whitley's.  Sylabs further alleges that Kurtzer provided "Whitley and IAG"

19    with "all documents relating to Fuzzball" and "Sylabs' Corporate Records," and that Whitley,

20    IAG, Kurtzer, and other listed Defendants used these "Corporate Secrets and strategies" to

21    "plan[]" future misconduct.  Compl. ¶¶ 147, 150-52.  Sylabs makes no allegations against Whitley

22    or IAG related to any other purported trade secrets.  And once again, Sylabs alleges no specifics:

23    The Complaint says nothing about whether Whitley or IAG viewed or accessed any document

24    links or what steps they took to "plan[]" the alleged misconduct.

25        Sylabs' Complaint instead makes broad allegations against "Defendants" as a group.  It

26    alleges, for example, that "*Defendants* misappropriated [Fuzzball] from Sylabs through their cyber

27    theft," and that "*Defendants* subsequently patented Fuzzball as their own invention."  Compl. ¶ 98

28    (emphasis added).  In much the same way, it alleges that "*Defendants* surreptitiously and

unlawfully intruded into and accessed Sylabs' server to delete files and steal all of Sylabs' Trade Secrets." Compl. ¶ 110 (emphasis added). Sylabs similarly makes undifferentiated allegations against "Co-Conspirators," which it defines as "the Defendants, Co-Conspirator Greg Kurtzer, Co-Conspirator Julia Kurtzer, Co-Conspirator Buss, Co-Conspirator Prager, Co-Conspirator Adolph, Co-Conspirator Hayden, Co-Conspirator Fong, Co-Conspirator Whitley, and the DOE defendants." Compl. ¶ 42. For example, it alleges that "*the Co-Conspirators* intended to and knowingly stole through cyber theft from Sylabs' Server and, without authorization, disclosed, acquired, used, copied, downloaded, uploaded, photocopied, replicated, transmitted, delivered, communicated, or conveyed Sylabs' Trade Secrets." Compl. ¶ 214 (emphasis added). This pleading style continues throughout Sylabs' entire Complaint.

After filing its Complaint, Sylabs then waited nearly six months to serve it. Indeed, Sylabs candidly admits that it did not even attempt service prior to the 90-day deadline set out in Federal Rule of Civil Procedure 4(m). *See* Sylabs, Inc.'s Administrative Motion to File Under Seal and Reschedule Case Management Conference, Dkt. No. 22, Ex. 1 ¶ 3 (June 20, 2023). Sylabs only took action after this Court ordered it to serve the Complaint before the rescheduled case management conference. *See* Order Continuing Initial Case Management Conference; Order Denying Without Prejudice Administrative Motion to Seal, Dkt. No. 23, at 1 (June 27, 2023). Whitley received in-person service at IAG's offices in Charleston, South Carolina, on August 16, 2023.

IAG and Whitley now bring this Motion to dismiss Sylabs' suit against them in its entirety.

## III.    **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (citation omitted).

1    IV.    **ARGUMENT**

2        Sylabs' Complaint, despite its considerable length, is woefully inadequate to support the

3    ten alleged claims against the IAG Investors.  Sylabs' claims against Whitley and IAG should be

4    dismissed as improper group pleadings, which fail to give Whitley and IAG fair notice of the

5    claims against them and the wrongdoing with which they are alleged.  Additionally, each of

6    Sylabs' claims against Whitley and IAG should be dismissed because Sylabs did not provide

7    sufficient allegations to show essential elements of those claims, because the claims are time-

8    barred or preempted, or both.

9        A.    **Sylabs' Claims Against IAG and Whitley Rest on Impermissible Group**

10            **Allegations and Must be Dismissed.**

11        Sylabs' claims against IAG and Whitley rest on collective, group allegations against

12    "Defendants" or "Co-Conspirators" generically, rather than allegations against IAG or Whitley

13    specifically.  Longstanding case law establishes that group pleadings of this sort are insufficient to

14    state a plausible claim against, or provide fair notice to, individual defendants.  Accordingly,

15    Sylabs' claims against IAG and Whitley cannot stand.

16        A complaint that improperly "group[s] multiple defendants together in a broad

17    allegation"—sometimes called a "shotgun pleading"—cannot survive a motion to dismiss.  *Yu v.*

18    *Design Learned, Inc.*, No. 15-CV-05345-LB, 2016 WL 1621704, at *4 (N.D. Cal. Apr. 22, 2016);

19    *see also, e.g.*, *Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL

20    2674456, at *4 (C.D. Cal. June 30, 2010) (discussing "shotgun pleadings").  This rule is grounded

21    in core principles of plausibility pleading and fair notice.  The pleading standards in *Iqbal* and

22    *Twombly* require plaintiffs to "give the defendants a clear statement about what the defendants

23    allegedly did wrong," which cannot be accomplished through broad allegations that do not

24    differentiate between the conduct of separate defendants.  *Sollberger*, 2010 WL 2674456, at *4.

25    Relatedly, group allegations violate Federal Rule of Civil Procedure 8 because they do not

26    "provide the defendants with fair notice of the claims against them."  *Yu*, 2016 WL 1621704, at

27    *4.  In Judge Easterbrook's words: "Liability is personal," meaning that "[e]ach defendant is

28

1   entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*,

2   725 F.3d 815, 818 (7th Cir. 2013).

3       Time and time again, courts in this district have dismissed "shotgun" complaints based on

4   their improper use of group allegations.  For example, in *Corazon v. Aurora Loan Services*, the

5   court examined a complaint in which the plaintiff "simply refer[red] to 'Defendants' in nearly all

6   of her allegations" and "fail[ed] to specify" which defendant committed what conduct.  No. 11-

7   00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011).  The court dismissed that

8   complaint, holding that "[u]ndifferentiated pleading against multiple defendants is improper,"

9   because "it fails to provide . . . fair notice of [the] alleged misconduct."  *Id*.  The court in *Yu*

10  similarly dismissed a complaint that "ma[de] allegations against a group of seven defendants

11  without differentiating among them," for exactly the same reason.  2016 WL 1621704, at *5.  So,

12  too, in *Resh v. Skimlite Manufacturing*, the court dismissed a complaint filled with "generalized

13  allegations against 'Defendants' as a whole."  -- F. Supp. 3d. ----, 2023 WL 2744423, at *3 (N.D.

14  Cal. March 31, 2023).  It found that, "[b]y lumping all Defendants together, Plaintiff has not stated

15  sufficient facts to state a claim for relief that is plausible against one Defendant."  *Id.* at *2

16  (cleaned up) (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL

17  4403963, at *8 (N.D. Cal. Sept. 20, 2011)).

18      In the instant case, Sylabs' claims against IAG and Whitley—like the claims in *Corazon*,

19  *Yu*, and *Resh*—are built on improper group allegations.  The Complaint contains no individualized

20  allegations as to Whitley's or IAG's *misconduct*; at most, the Complaint alleges that Whitley

21  received an email and some documents from Kurtzer, and that IAG invested in CIQ, none of

22  which is wrongful.  *See* Compl. ¶¶ 38, 147-48, 150-51; *see also* Section IV.B.2, *infra*.  In contrast

23  to these bare allegations, Sylabs' Complaint is replete with allegations against "Defendants" as a

24  group: "*Defendants* . . . patented Fuzzball as their own invention . . . ."  Compl. ¶ 98 (emphasis

25  added).  "*Defendants* surreptitiously and unlawfully intruded into and accessed Sylabs'

26  server . . . ."  Compl. ¶ 110 (emphasis added).  "*Defendants* stole Sylabs' Fuzzball Trade

27  Secrets . . . ."  Compl. ¶ 128 (emphasis added).  "*Defendants* were engaged in their conspiracy and

28  planning the theft of Sylabs' [technologies] . . . ."  Compl. ¶ 153 (emphasis added).  And so on.

1  Sylabs uses the collective term "Co-Conspirators" in much the same way.  *See* Compl. ¶¶ 142-43,

2  212-68, 333-59.  But these allegations against "Defendants" or "Co-Conspirators" fail to

3  "distinguish[] among the defendants," *Corazon*, 2011 WL 1740099, at *4, and are "insufficient to

4  provide [IAG and Whitley] with fair notice of the claims against them and the grounds for relief,"

5  *Yu*, 2016 WL 1621704, at *4.  Likewise, "by lumping all Defendants together, [Sylabs] has not

6  stated sufficient facts to state a claim for relief that is plausible against" either IAG or Whitley.

7  *Resh*, 2023 WL 2744423, at *2 (cleaned up) (quoting *In re iPhone Application Litig.*, 2011 WL

8  4403963, at *8).

9       The defects of shotgun pleadings cannot be cured by listing out defendants' names.

10  *Sollberger*, a case from the Central District of California, demonstrates as much.  *See* 2010 WL

11  2674456 at *4-5.  There, the court had previously dismissed the complaint as a shotgun pleading,

12  noting that such pleadings commonly occur "in cases with multiple defendants where the plaintiff

13  uses the omnibus term 'Defendants' throughout a complaint . . . without identifying what the

14  particular defendants specifically did wrong."  *Id.* at *4.  The court found that the amended

15  complaint "shares the same defect with only slight, inadequate improvements."  *Id.* at *5.  The

16  amended complaint "allege[d] in multiple places that" a list of defendants "did certain things or

17  'knew or should have known' certain information."  *Id.*  Although "Plaintiff improved this slightly

18  by adding some allegations addressing particular Defendants," the continued "impermissible

19  lumping of Defendants" failed to inform them of "exactly what they [were] accused of doing

20  wrong."  *Id.*  "[T]his defect alone warrant[ed] dismissal."  *Id.*

21       Here, Sylabs' occasional use of a list of Defendants, in lieu of a collective term like

22  "Defendants" or "Co-Conspirators," cannot save its claims against IAG or Whitley.  For example,

23  Sylabs at one point alleges that "defendant Greg Kurtzer was engaged in detailed planning with

24  defendants Adolph, Whitley, Open Drives, Prager, and IAG."  Compl. ¶ 152.  But as *Sollberger*

25  demonstrates, this style of collective pleading is also improper.  The plaintiff in *Sollberger* stated

26  her allegations against a list of defendants: "Defendants Wachovia, Morgan Keegan, and Janney."

27  2010 WL 2674456 at *5 (cleaned up).  But the court held that this list did not constitute "specific

28  allegations against" each of these defendants, as it was just another form of "impermissible

1    lumping." *Id.* So, too, here: Listing out the names of Kurtzer, Adolph, Whitley, Open Drives,

2    Prager, and IAG does not reveal each Defendant's individualized conduct any more than a

3    collective term would.

4            Sylabs' claims against IAG are deficient for yet another reason: Its Complaint states many

5    allegations against *ambiguous groups* of Defendants, of which IAG may or may not be a part. In

6    *Resh*, the court noted that the plaintiff used an ambiguous definition of the term "Defendants,"[4]

7    which compounded the problems associated with its group allegations. *See* 2023 WL 2744423, at

8    *2. Similarly, Sylabs' Complaint uses an ambiguous definition for the term "Co-Conspirators,"

9    which it defines as "the Defendants, Co-Conspirator Greg Kurtzer, Co-Conspirator Julia Kurtzer,

10   Co-Conspirator Buss, Co-Conspirator Prager, Co-Conspirator Adolph, Co-Conspirator Hayden,

11   Co-Conspirator Fong, Co-Conspirator Whitley, and the DOE defendants." Compl. ¶ 42. This

12   definition does not mention IAG. Nor does Sylabs' alleged RICO "Enterprise," which it defines

13   as "an association-in-fact" of "the Co-Conspirators," explicitly include IAG. Compl. ¶ 279.

14   Nonetheless, Sylabs seeks to hold IAG liable for violations of Civil RICO and for civil conspiracy.

15   *See* Compl. Count IV (Civil RICO) ("Against All Defendants"), Count V (RICO Conspiracy)

16   (same), Count VI (Civil Conspiracy) (same). What's more, the term "Co-Conspirators" pervades

17   the Complaint, including in the trade secrets misappropriation, CFAA, unjust enrichment, and

18   conversion counts. *See* Compl. ¶¶ 212-68, 333-59. Sylabs' ambiguous definitions of the terms

19   "Co-Conspirator" and "Enterprise," like the ambiguous definition of "Defendants" in *Resh*, leave

20   IAG to guess which allegations against "Co-Conspirators" or the "Enterprise," if any, are intended

21   to apply against it. *See* 2023 WL 2744423 at *2. Such guesswork does not constitute adequate

22   notice of the claims against IAG.

23           In sum, all of Sylabs' claims against IAG and Whitley rest on improper group pleadings,

24   which fail to state a plausible claim and do not give IAG and Whitley adequate notice of their

25

26   _____

27   [4] That definition read: "depending on the context in which it is used herein, the term 'Defendants'
     is intended to include not only 'Skimlite' and 'James Conrad' and 'Barrett Conrad,' but also any

28   and/or all other Defendants or any individuals or other entities." *Resh*, 2023 WL 2744423, at *2.

1  alleged wrongdoing.  On this ground alone, Sylabs' entire Complaint against IAG and Whitley

2  should be dismissed.

3  **B.      All of Sylabs' Claims Against IAG and Whitley Fail on the Merits.**

4       Even setting aside the Complaint's group pleading problems, which should be dispositive,

5  Sylabs' allegations against Whitley and IAG fail to state a claim for a single cause of action

6  against either of them.

7       **1.      Sylabs' Complaint Fails to State a Claim for Trade Secret**

8            **Misappropriation (Counts I & III) Against the IAG Defendants.**

9       To state a claim for trade secrets misappropriation, Sylabs must allege, among other things,

10 that it owns a valid trade secret, that it has taken reasonable steps to protect that secret, and that

11 Whitley and IAG misappropriated that trade secret.  *See, e.g.*, *Cisco Sys., Inc. v. Chung*, 462 F.

12 Supp. 3d 1024, 1046-47 (N.D. Cal. 2020).  Sylabs did not sufficiently plead any of these

13 requirements against Whitley or IAG.

14      **First**, Sylabs has not alleged that Whitley or IAG misappropriated any purported trade

15 secrets.

16      Under both federal and California law, trade secret misappropriation can take one of three

17 forms: the trade secret can be (1) "acqui[red] . . . by a person who knows or has reason to know

18 that the trade secret was acquired by improper means," (2) "disclos[ed] . . . without the owner's

19 consent," or (3) "use[d] . . . without the owner's consent."  *Attia v. Google LLC*, 983 F.3d 420,

20 424 (9th Cir. 2020) (quoting 18 U.S.C. § 1839(5)); *see also* Cal. Civ. Code § 3426.1 (articulating

21 identical definition of misappropriation under CUTSA).  Within the acquisition subtype, "[c]ourts

22 distinguish between direct trade secret misappropriation claims and indirect trade secret

23 misappropriation claims, depending on whether a plaintiff alleges that a defendant obtained the

24 trade secrets directly from the plaintiff or," as relevant here, "indirectly from someone other than

25 plaintiff."  *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020)

26 [hereinafter *Navigation Holdings I*] (citation and internal quotation marks omitted).

27      To state a claim under an indirect acquisition theory, "a plaintiff must allege facts showing

28 that a defendant . . . knew or had reason to know that the disclosing party had acquired it through

1   improper means or was breaching a duty of confidentiality by disclosing it." *Id.* at 79.

2   Complaints that fail to plead this element are properly dismissed.  For example, in *Navigation

3   Holdings I*, plaintiffs alleged that a former employee, Molavi, provided its trade secrets to a

4   competitor.  *Id.* at 73-74.  The court dismissed the claims against all defendants except Molavi, as

5   plaintiffs had only made conclusory allegations about the other defendants' knowledge.  *See id.* at

6   78-79.  Plaintiffs amended their complaint, but the court again held that they failed to state a claim

7   against the competitor's president or manager.  *See Navigation Holdings, LLC v. Molavi*, No. 19-

8   CV-02644-LHK, 2020 WL 5074307, at *5 (N.D. Cal. Aug. 25, 2020) [hereinafter *Navigation

9   Holdings II*].  Although plaintiffs "suggest[ed] that [the president and manager] knew that Molavi

10  had *access* to trade secrets," plaintiffs did not show that the president or manager "had reason to

11  believe that Molavi would *misappropriate* those secrets."  *Id.* (emphasis added).

12          *CleanFish v. Sims*, No. 19-CV-03663-HSG, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020),

13  is in accord.  There, plaintiff's former employee, Sims, started his own competing business and

14  allegedly collaborated with a supplier to misappropriate plaintiff's trade secrets.  *Id.* at *1.  The

15  court held that plaintiff failed to plead an indirect misappropriation claim against the supplier

16  defendants.  *Id.* at 10-11.  It concluded that the plaintiff did not "allege any factual basis to support

17  the conclusion that" the supplier defendants knew that Sims acquired any information "through

18  improper means."  *Id.* at 10.  Plaintiffs alleged that the supplier defendants "contacted and

19  continuously communicated with Sims, while Sims was employed by Plaintiff," but such

20  allegations did not show that the supplier defendants knew Sims misappropriated trade secrets; to

21  the contrary, those allegations were consistent with "an innocent explanation" of the supplier

22  defendants' conduct.  *Id.*

23          Sylabs' trade secret claims against Whitley and IAG are attempted under an indirect

24  acquisition theory only.  Sylabs' Complaint contains no allegations that either Whitley or IAG

25  personally disclosed or used Sylabs' alleged trade secrets.  Nor are there allegations that either

26  Whitley or IAG acquired any alleged trade secrets directly from the plaintiff, that is to say, Sylabs.

27  The only sentence in the entire Complaint connecting the IAG Defendants to any purported trade

28  secret—the allegation that "defendant Kurtzer provided defendants Whitley and IAG with access

-11-

Case No. 5:23-cv-00849-SVK

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

to the Sylabs Server, in particular to all documents relating to Fuzzball," Compl. ¶ 150—relies on

a theory of indirect access through another Defendant.  *See Navigation Holdings I*, 445 F. Supp.

3d at 78 (distinguishing between direct and indirect misappropriation claims).

But Sylabs' Complaint, like the faulty complaints in *Navigation Holdings* and *CleanFish*,

does not allege that IAG or Whitley had reason to suspect that Kurtzer might be disclosing a trade

secret or that he improperly acquired that trade secret.  Sylabs' allegations that Whitley and IAG

received Fuzzball documents cannot be sufficient in themselves: "Both state and federal courts in

California have held that a plaintiff must prove more than a defendant's mere possession of trade

secrets" to state an indirect misappropriation claim.  *Kimera Labs Inc. v. Jayashankar*, No. 21-

CV-2137-MMA (DDL), 2022 WL 11965058, at *9 (S.D. Cal. Oct. 20, 2022).  Conclusory

allegations—such as the allegation that "Co-Conspirators acquired, used, or disclosed Sylabs'

Trade Secrets . . . , knowing that they were stolen and misappropriated, obtained, or converted

through Co-Conspirators' cyber theft," Compl. ¶ 216—do not provide "factual substantiation of

Defendants' knowledge."  *Navigation Holdings I*, 445 F. Supp. 3d at 79.  And Sylabs' other

allegations *undermine* any inference that Whitley or IAG should have known that Kurtzer was

sharing trade secrets or that he acquired them through improper means.  As far as Whitley knew,

according to Sylabs' allegations, "the intellectual property that [Kurtzer] would need to build

Fuzzball is *all open source*," and Sylabs' commercial IP, while "advantageous," was "not a

requirement."  Compl. ¶ 147 (emphasis added).  These allegations tend to support "an innocent

explanation" that Whitley did *not* know he was receiving a purported trade secret.  *CleanFish*,

2020 WL 1274991, at *10 (citation and internal quotation marks omitted).  Accordingly, Sylabs

has failed to plead that either Whitley or IAG misappropriated any purported trade secrets.

***Second***, Sylabs trade secret misappropriation claims fail against Whitley and IAG because

Sylabs has not alleged that it made reasonable efforts to maintain the secrecy of its purported trade

secrets.

Information can only be a trade secret if "the owner thereof has taken reasonable measures

to keep such information secret."  18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d)(2)

(requiring that trade secrets be the "subject of efforts that are reasonable under the circumstances

1   to maintain its secrecy").  A plaintiff's failure to plead this required element of trade secret claims

2   is grounds for dismissal.  For example, in *Prostar Wireless Group v. Domino's Pizza*, this court

3   dismissed a CUTSA claim for failure to allege reasonable efforts to maintain secrecy.  *See Prostar*

4   *Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 3:16-CV-05399-WHO, 2017 WL 67075, at *7

5   (N.D. Cal. Jan. 6, 2017).  Prostar's complaint included a single allegation "that it undertook

6   'reasonable efforts to maintain [the trade secrets'] secrecy by, for example, not sharing the

7   information with anyone except those necessary to allow for the continued development and

8   eventual implementation of the [product].'"  *Id.* (first alteration in original).  The court found that

9   this allegation "amount[ed] to a 'formulaic recitation of the elements'" and dismissed the trade

10  secrets claim on that basis.  *Id.* (quoting *Iqbal*, 556 U.S. at 681).

11       Sylabs' trade secret claims fail for the same reason.  Sylabs' Complaint only includes one

12  allegation about its reasonable efforts, namely, that "[a]t all times mentioned herein, Sylabs has

13  taken reasonable measures to protect the secrecy of the Sylabs' Trade Secrets and IP."  Compl.

14  ¶ 212.  That boilerplate allegation amounts to a conclusory recitation of the elements and is

15  insufficient to state a trade secret claim under either CUTSA or DTSA.  *See Prostar*, 2017 WL

16  67075, at *7.

17       ***Third***, Sylabs trade secret misappropriation claims fail against Whitley and IAG because

18  Sylabs failed to plead the existence of a trade secret with particularity.

19       A "trade secret must be described 'with sufficient particularity to separate it from matters

20  of general knowledge in the trade or of special knowledge of those persons who are skilled in the

21  trade and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"

22  *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2014 WL

23  6788310, at *21 (N.D. Cal. Dec. 2, 2014) (quoting *Altavion, Inc. v. Konica Minolta Sys. Lab'y*

24  *Inc.*, 226 Cal. App. 4th 26, 43-44 (2014)).  This is true even at the pleading stage: "It is crucial to

25  any CUTSA cause of action—and any defense—that the information claimed to have been

26  misappropriated be clearly identified."  *Id.* (quoting *Agency Solutions.Com, LLC v. TriZetto Grp.,*

27  *Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011)).

28

Sylabs repeatedly violates this rule by using unclear, confusing, or duplicative definitions of its trade secrets instead of defining them with specificity.  For instance, Sylabs vaguely describes its alleged trade secrets as "the value-added technology that Sylabs has created and added and continues to create and add" to open-source software.  Compl. ¶ 59.  But its allegations are insufficient to separate its "value-added" technologies "from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade."  *United Tactical Sys.*, 2014 WL 6788310, at *21.

Sylabs also fails to sufficiently distinguish its trade secrets from public information contained in its patents.  Sylabs alleges that its patented SIF technology is a trade secret and indeed is the "*sine qua non* technology for all the Trade Secrets stolen by Defendants."  Compl. ¶ 77.  But it is "well-settled that publication of information in a patent application eliminates any trade secrecy."  *Attia*, 983 F.3d at 426.  Sylabs cannot claim secrecy in the information disclosed by the patent, and its Complaint fails to distinguish between its patented SIF technology and any SIF or Armored Container trade secrets.

Additionally, Sylabs' Complaint discusses not only the company's "trade secrets," but also its "IP," "corporate secrets," "HR records," "employee files," "privileged docs," "correspondence," and "sensitive documents."  *See* Compl. ¶¶ 111, 117, 118-20, 133-35.  It is unclear whether or how these documents fit within Sylabs' trade secret claims.  At times, Sylabs states that Defendants' alleged theft of "Sylabs' Corporate Secrets" occurred "[i]n addition to"— that is to say, separate from—their alleged "cyber theft and misappropriation of Sylabs' Trade Secrets and IP."  Compl. ¶ 117.  Yet Sylabs still includes allegations about its "IP, Corporate Secrets, and/or other privileged and protected information" in its trade secret counts.  Compl. ¶¶ 215, 254.  These ambiguous and contradictory pleadings fail to "clearly identif[y]" the contours of the purported trade secrets, hampering the IAG Defendants' ability to craft an appropriate response.  *United Tactical Sys.*, 2014 WL 6788310, at *21.

Sylabs' trade secret misappropriation claims, then, are deficient for several reasons: Sylabs does not allege any misconduct by Whitley or IAG, makes only conclusory allegations about its

1  efforts to maintain secrecy, and fails to define its alleged secrets with any particularity.  The Court

2  should dismiss Counts I and III against both Whitley and IAG.

3  **2.    Sylabs' CFAA Claim (Count II) is Both Time-Barred and Inadequately**

4  **Pleaded.**

5  Sylabs' CFAA claim, like its trade secret misappropriation claim, fails against both

6  Whitley and IAG.  This is true for four independent reasons.

7  **First**, and most obviously, Sylabs' CFAA claim is time barred.  The statute of limitations

8  for CFAA claims is two years.  18 U.S.C. § 1030(g).  The Complaint's allegations of wrongdoing

9  end in May 2020.  *See* Compl. ¶¶ 170-78.  But Sylabs did not file its Complaint in this action until

10 February 24, 2023.  This is nearly *three* years after the last identified instance of any party's

11 alleged wrongdoing and well outside of the statute of limitations.

12 **Second**, Sylabs' Complaint fails to identify which provision or provisions of the CFAA

13 Whitley and IAG allegedly violated.  The CFAA is a complex, multi-part statute, and each of its

14 subparts have distinct pleading requirements.  *See* CIQ Defendants' Motion to Dismiss at 15.

15 Sylabs' Complaint must be dismissed on this ground, because by failing to specify the applicable

16 subsections, Sylabs has also failed to give Whitley and IAG adequate notice of the claims against

17 them.

18 **Third**, Sylabs fails to allege that either Whitley or IAG accessed Sylabs' computers.  Every

19 CFAA provision that could possibly be implicated by this lawsuit[5] requires, as an essential

20 element, that the defendant accessed a computer—and a failure to plead this element is grounds

21 for dismissal.  In *New Show Studios v. Needle*, for example, the court dismissed plaintiffs' CFAA

22

23 ───────────────

24 [5] The only subsections of 18 U.S.C. § 1030(a) that do not require access are subsection (5)(A),
which prohibits "the transmission of a program" causing "damage without authorization";

25 subsection (6), which prohibits trafficking in passwords; and subsection (7), which prohibits
transmitted threats or demands with intent to extort.  Although it is unclear which of the CFAA

26 subsections IAG and Whitley are accused of violating, it *is* clear that there are no allegations
*whatsoever* that could possibly show either Whitley or IAG violated § 1030(a)(5)(A), (6), or (7).

27 All the remaining sections—and therefore, all possible bases for Sylabs' CFAA claim—require

28 allegations of access.

1    claim for failure to plead access.  *See* No. 2:14-CV-01250-CAS(MRWx), 2014 WL 2988271, at

2    *6-7 (C.D. Cal. June 30, 2014).  Plaintiffs alleged that the defendant "intentionally *gained* access

3    to confidential and sensitive information stored on [New Show's] private computer network."  *Id.*

4    at *6 (alteration in original) (emphasis added).  But the court held that this allegation failed to

5    show that the defendant in fact "accessed plaintiffs' computer systems."  *Id.*  Accordingly,

6    plaintiffs did not meet their burden to "plainly allege that defendants' accessed their computer

7    systems, and explain the basis for those allegations."  *Id.* at *6-7.

8        Here, Sylabs' Complaint fails to allege that either Whitley or IAG accessed Sylabs'

9    computers.  The Complaint alleges only that Kurtzer "*provided* defendants Whitley and IAG with

10   access to the Sylabs Server," Compl. ¶ 150-51 (emphasis added)—presumably through a Google

11   Drive link, since "[a]t all relevant times, Sylabs' server was hosted in Google Drive."  Compl.

12   ¶ 110 n.13.  Critically, though, the Complaint does not allege that Whitley or IAG took advantage

13   of any such link and in fact accessed Sylabs' server.  Exactly like the allegations in *New Show*, the

14   allegations here fall short of "plainly alleg[ing]" that the defendants actually "accessed plaintiff['s]

15   computer systems."  2014 WL 2988271, at *6-7

16       **Fourth**, and finally, Sylabs' Complaint does not plausibly allege any unauthorized access

17   by Whitley or IAG.  The Ninth Circuit has held that "the phrase '"without authorization' is a non-

18   technical term that, given its plain and ordinary meaning, means accessing a protected computer

19   without permission.'"  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195 (9th Cir. 2022)

20   (quoting *United States v. Nosal*, 844 F.3d 1024, 1028 (9th Cir. 2016)).  "[A]uthorization means

21   permission or power granted by an authority," whereas "a person who uses a computer 'without

22   authorization' has no rights, limited or otherwise, to access the computer in question."  *Nosal*, 844

23   F.3d at 1035 (citation and internal quotation marks omitted); *LVRC Holdings LLC v. Brekka*, 581

24   F.3d 1127, 1133 (9th Cir. 2009).  Authorization is "a gates-up-or-down inquiry": "one either can

25   or cannot access a computer system."  *Van Buren v. United States*, 141 S. Ct. 1648, 1658 (2021).

26       Sylabs' Complaint does not allege that Whitley or IAG accessed its server without

27   authorization.  Even if Sylabs has sufficiently alleged that Whitley and IAG accessed its server, it

28   also alleges that Greg Kurtzer—who was Sylabs' CEO at the time—*granted* them access.  ¶ 150

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1    ("[D]efendant Kurtzer provided defendants Whitley and IAG with access to the Sylabs

2    Server . . . ."); ¶ 151 (same).  In other words, according to the allegations, Whitley and IAG were

3    granted "permission and power" to access the Sylabs server by Kurtzer.  *Nosal*, 844 F.3d at 1035.

4    Kurtzer, as Sylabs' then-CEO, had "authority" to do so.  *Id.*  Sylabs "has provided no evidence to

5    show that [its Founder and CEO] did not have plenary authority to . . . grant access to [the

6    company's] computers and files while employed" at that company.  *Calendar Rsch. LLC v.

7    StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391, at *19 (C.D. Cal. May 13,

8    2020).  Accordingly, if the Complaint is read to allege that Whitley or IAG accessed Sylabs'

9    server (which it does not), such access was authorized.  Sylabs' only allegation to the contrary—

10   that "the Co-Conspirators . . . stole . . . from Sylabs' Server . . . without authorization," Compl.

11   ¶ 234—is nothing more than "a formulaic recitation of the elements" of a CFAA claim.  *Twombly*,

12   550 U.S. at 555.

13         Sylabs' CFAA claim against Whitley and IAG contains four major flaws: it is time barred,

14   does not identify the applicable statutory provision, fails to allege access, and fails to allege

15   unauthorized access.  Any one of these failures justifies dismissal.

16         **3.      Sylabs' Complaint Fails to State Civil RICO Claims (Counts IV & V)**

17         **Against the IAG Defendants.**

18         Sylabs has also failed to state any Civil RICO claims against the IAG Investors.  Civil

19   RICO claims are "focused on long-term criminal conduct, not on sporadic activity or on garden-

20   variety tort or contract claims."  *Nguyen v. Chow*, No. 14-CV-01444-VC, 2014 WL 12625960, at

21   *3 (N.D. Cal. Sep. 19, 2014).  To successfully state such a claim under 18 U.S.C. § 1962, "a

22   plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

23   activity (known as "predicate acts") (5) causing injury to the plaintiff's "business or property."'"

24   *Abcarian v. Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020) (quoting *Grimmett v. Brown*, 75 F.3d

25   506, 510 (9th Cir. 1996)).  Sylabs' Complaint does not contain sufficient allegations to satisfy

26   these requirements.

27         ***First***, Sylabs failed to allege any racketeering activity by Whitley or IAG.  RICO defines

28   racketeering activity by reference to a laundry list of predicate acts in 18 U.S.C. § 1961(1).  Out of

the dozens of possible predicate acts, the Complaint highlights "economic espionage **and theft of**

**trade secrets**" as the predicate act at issue.  Compl. ¶ 199 (emphasis in original).  However, for

the reasons described in Section IV.B.1 *supra*, Sylabs' trade secret misappropriation claims

against Whitley and IAG fail.  Without this predicate act, Sylabs has alleged no racketeering

activity from which its claims against Whitley and IAG can proceed.

  ***Second***, Sylabs failed to allege a pattern of racketeering activity against either Whitley or

IAG.  A pattern of racketeering activity "requires at least two acts of racketeering activity . . .

within ten years" of each other.  18 U.S.C. § 1961(5).  "A 'pattern' of racketeering activity also

requires proof [1] that the racketeering predicates are related and [2] 'that they amount to or pose a

threat of continued criminal activity.'"  *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020)

(citation omitted).  Continuity, in turn "encompass[es] 'both a closed- and open-ended concept.'"

*Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)).  "Closed-ended continuity

entails 'a series of related predicates extending over a substantial period of time,' i.e., more than 'a

few weeks or months,'" whereas "[o]pen-ended continuity involves 'past conduct that by its nature

projects into the future with a threat of repetition.'"  *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241).

  Here, even if Sylabs' Complaint had alleged a predicate act against Whitley or IAG—

which it did not—there is no pattern of racketeering activity as to either Defendant.  A pattern of

racketeering activity requires at least two predicate acts, 18 U.S.C. § 1961(5), and Sylabs'

Complaint describes *at most* one instance of Whitley and IAG receiving any purported trade

secrets.  *See* Compl. ¶ 150.  Further, Sylabs has not pleaded either close-ended or open-ended

continuity.  There is no close-ended continuity because all of Sylabs' allegations against Whitley

and IAG took place within a week.  *See* Compl. ¶¶ 147, 150-52 (describing conduct between

March 7 and March 13, 2020).  And there is no open-ended continuity because Sylabs has not

alleged any "past conduct" by Whitley or IAG that "projects into the future with a threat of

repetition."  *Metaxas*, 503 F. Supp. 3d at 941 (quoting *H.J. Inc.*, 492 U.S. at 241).  Indeed, the last

alleged instance of misconduct by *any* Defendant occurred in June 2020, Compl. ¶¶ 110, 170, and

the Complaint does not allege that there will be threats of repetition in the future.  Thus, Sylabs'

1  civil RICO claim fails for the independent reason that it has not pleaded a pattern of racketeering

2  activity against Whitley or IAG.

3         As for Sylabs' second civil RICO claim, alleging RICO conspiracy under 18 U.S.C.

4  § 1962(d), that claim fails because Sylabs' substantive claims under subsection (c) fail.  Where a

5  plaintiff "has failed to allege the requisite substantive elements of RICO, the conspiracy cause of

6  action cannot stand."  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (quoting

7  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992)).

8                  **4.      CUTSA Preempts Sylabs' State Law Claims (Counts VI, VII, IX, X,**

9                          **XI) Against the IAG Defendants.**

10        The remainder of Sylabs' claims against Whitley and IAG—civil conspiracy, unfair

11 competition, aiding and abetting breach of fiduciary duty, unjust enrichment, and conversion—all

12 fail on preemption grounds.[6]

13        California's Uniform Trade Secrets Act (CUTSA) "preempts common law claims that are

14 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"

15 *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009)

16 (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).  This

17 preemption occurs whether or not the information at issue is ultimately protectable as a trade

18 secret.  Indeed, the California Court of Appeal in *Silvaco v. Intel* "emphatically reject[ed]" the

19 suggestion that CUTSA did not preempt "conversion claims based on the taking of information

20 that, though not a trade secret, was nonetheless of value to the claimant."  *Silvaco Data Sys. v.*

21 *Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010) (citation omitted), *as modified on denial of*

22 *reh'g* (May 27, 2010), *and overruled on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal.

23 4th 310 (2011).  To do otherwise, the court reasoned, would "create[] a new category of

24

25 _____

26 [6] In addition, the IAG Defendants agree with CIQ Defendants that the UCL claims also fail
because the predicate claims fail, because Sylabs lacks UCL standing, and because Sylabs does
27 not allege unfair or fraudulent business practices.  *See* CIQ Defendants' Motion to Dismiss at 21-
25.
28

IAG DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE
12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1  intellectual property far beyond the contemplation of [CUTSA]" and "effectively obliterat[e] the

2  uniform system [CUTSA] seeks to generate." *Id.*

3    *Silvaco* involved conversion claims, but far more than conversion claims are preempted

4  under these rules.  In *Mattel v. MGA Entertainment*, the court concluded that CUTSA superseded

5  "aiding and abetting breach of fiduciary duty" claims where those claims were "based upon

6  nothing more than the misappropriation of trade secret information."  *Mattel, Inc. v. MGA Ent.,*

7  *Inc.*, 782 F. Supp. 2d 911, 988-89 (C.D. Cal. 2011).  And in *Kimera Labs*, the court held that civil

8  conspiracy, unjust enrichment, and unfair competition claims were preempted by CUTSA where

9  they were "based on the same factual scenario alleged in its trade secrets claims" and involved

10  "the misappropriation of . . . confidential information, whether or not that information r[ose] to the

11  level of a trade secret."  2022 WL 11965058, at *11 (quoting *Jardin v. Datallegro, Inc.*, No. 10-

12  CV-2552-IEG WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011)).

13    Here, Sylabs' conspiracy, UCL, aiding and abetting, unjust enrichment, and conversion

14  claims rest on precisely "the same nucleus of facts as the misappropriation of trade secrets claim

15  for relief," *K.C. Multimedia*, 171 Cal. App. 4th at 958 (citation omitted), and allege "the

16  misappropriation of confidential information," *Mattel*, 782 F. Supp. 2d at 987; *accord Kimera*

17  *Labs*, 2022 WL 11965058, at *11.  Sylabs' civil conspiracy claim alleges a "conspiracy to

18  perpetrate the theft and misappropriation of Sylabs' Trade Secrets, IP, Corporate Secrets, and/or

19  other privileged and protected information."  Compl. ¶ 294.  Its UCL claims all rest on

20  "misappropriation of Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other privileged and

21  protected information and . . . fraud on the USPTO."  Compl. ¶¶ 305, 306; *accord* Compl. ¶ 310.

22  Sylabs' aiding and abetting claim recites that the listed Defendants "aided and abetted defendant

23  Greg Kurtzer to breach his fiduciary duties to Sylabs by participating in the conspiracy to commit

24  cyber theft and misappropriation of Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other

25  privileged and protected information and perpetrate a fraud on the USPTO."  Compl. ¶ 326.  Its

26  unjust enrichment claim alleges that, "as a result of the Co-Conspirators' conversion through

27  cyber theft and misappropriation of Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other

28  privileged and protected information, Co-Conspirators have been unjustly enriched."  Compl.

¶ 340.  And its conversion claim states that "the Co-Conspirators . . . stole and converted through cyber theft from Sylabs' Server . . . Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other privileged and protected information."  Compl. ¶ 349.

Because Sylabs' state law claims are based, solely and inextricably, on the misappropriation of confidential information, these claims are preempted and must be dismissed.

**V.    CONCLUSION**

For the foregoing reasons, the Court should dismiss Sylabs' claims against Defendants Joel Whitley and IAG.

DATED:  August 28, 2023                MUNGER, TOLLES & OLSON LLP


                                       By:   */s/ Carolyn Hoecker Luedtke*
                                             CAROLYN HOECKER LUEDTKE
                                             carolyn.luedtke@mto.com
                                             MIRIAM KIM
                                             miriam.kim@mto.com
                                             TAYLOR L. BENNINGER
                                             Taylor.Benninger@mto.com

                                             Attorneys for JOEL WHITLEY AND IAG
                                             CAPITAL PARTNERS