NEEL CHATTERJEE (SBN 173985)
NChatterjee@goodwinlaw.com
ELIZABETH J. LOW (SBN 308098)
ELow@goodwinlaw.com
ARIEL E. ROGERS (SBN 316910)
ARogers@goodwinlaw.com
DAVID SERATI (SBN 329811)
DSerati@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 Marshall Street
Redwood City, California 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

JENNIFER BRIGGS FISHER (SBN 241321)
JFisher@goodwinlaw.com
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendants
CTRL IQ, INC. d/b/a CIQ; GREGORY ROSE a/k/a
GREGORY M. KURTZER; JULIA ROSE a/k/a
JULIA KURTZER; ROBERT ADOLPH; MATTHEW
HAYDEN; ERIN FONG; OPEN DRIVES, INC.;
DAVID BUSS; and MARLIN PRAGER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYLABS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY ROSE a/k/a GREGORY M. KURTZER; JULIA ROSE a/k/a JULIA KURTZER; ROBERT ADOLPH; MATTHEW HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a CIQ; OPEN DRIVES, INC.; DAVID BUSS; MARLIN PRAGER; JOEL WHITLEY; IAG CAPITAL PARTNERS; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:23-cv-00849-SVK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      October 3, 2024<br>Time:     10:00 a.m.<br>Courtroom:  6<br>Judge:    Hon. Susan van Keulen<br><br>Filed/Lodged Concurrently with:<br>   1.  Request for Judicial Notice<br>   2.  Declaration of Neel Chatterjee<br>   3.  Declaration of Gregory M. Kurtzer<br>   4.  [Proposed] Order |

**REDACTED VERSION SOUGHT TO BE SEALED**

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on October 3, 2023 at 10:00 a.m., or as soon thereafter as

3   the matter may be heard, Defendants Gregory Rose a/k/a Gregory M. Kurtzer, Julia Rose a/k/a Julia

4   Kurtzer, Robert Adolph, Erin Fong, Marlin Prager, and CTRL IQ, Inc. d/b/a CIQ ("CIQ") (together,

5   the "CIQ Defendants"); and Open Drives, Inc. and David Buss (together, the "Open Drives

6   Defendants") (collectively, "Defendants") will and do hereby move to dismiss Plaintiff Sylabs,

7   Inc.'s ("Sylabs" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

8      This Motion is based on the accompanying Memorandum of Points and Authorities, all

9   documents in the Court's file, and such other written and oral argument as may be presented to the

10  Court.

11

12  Dated: August 28, 2023                    GOODWIN PROCTER LLP

13

14                                            By: */s/ Neel Chatterjee*

                                                 Neel Chatterjee
15                                               *NChatterjee@goodwinlaw.com*
                                                 Jennifer Briggs Fisher
16                                               *JFisher@goodwinlaw.com*
                                                 Elizabeth J. Low
17                                               *ELow@goodwinlaw.com*
                                                 Ariel E. Rogers
18                                               *ARogers@goodwinlaw.com*
                                                 David Serati
19                                               *DSerati@goodwinlaw.com*

20                                            Attorneys for Defendants
                                              CTRL IQ, INC. d/b/a CIQ; GREGORY ROSE
21                                            a/k/a GREGORY M. KURTZER; JULIA
                                              ROSE a/k/a JULIA KURTZER; ROBERT
22                                            ADOLPH; MATTHEW HAYDEN; ERIN
                                              FONG; OPEN DRIVES, INC.; DAVID BUSS;
23                                            and MARLIN PRAGER

24

25

26

27

28

1

2

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 1

        A.      The Parties.................................................................................................... 1

                1.      Sylabs ................................................................................................ 1

                2.      The CIQ Defendants ......................................................................... 2

                3.      The Open Drives and IAG Defendants ............................................. 2

        B.      Procedural Background................................................................................. 3

        C.      Allegations Related to Sylabs' Purported Trade Secrets, Corporate Secrets,
                and Other Confidential Information.............................................................. 3

        D.      Release Agreement Between Mr. Kurtzer and Sylabs ................................. 4

III.    LEGAL STANDARD ............................................................................................... 6

IV.     ARGUMENT ............................................................................................................ 6

        A.      Sylabs Released Its Claims Against the CIQ Defendants that Arise from
                Pre-April 29, 2020 Conduct ........................................................................ 6

        B.      Counts I and III Fail to State Trade Secret Claims ..................................... 8

                1.      Sylabs Fails to Identify the Alleged Trade Secrets with Sufficient
                        Particularity ...................................................................................... 8

                        a.      Sylabs Does Not Distinguish SingularityPRO, SIF
                                Technology, or Singularity Enterprise from Open Source
                                Materials................................................................................ 9

                        b.      Sylabs' Patent Application Discloses SIF Containers and
                                Armored Containers ............................................................ 10

                        c.      Fuzzball Is Subject to the Release...................................... 11

                        d.      Sylabs Fails to Identify What Constitutes "Other Privileged
                                and Protected Information." ................................................ 11

                        e.      Sylabs' Open-Ended Allegations Fail to Provide Reasonable
                                Notice of Its Claims............................................................ 12

                2.      There Are No Allegations Showing Sylabs' Efforts to Maintain the
                        Secrecy of the Alleged Trade Secrets .............................................. 12

                3.      The Trade Secrets Claims Fail as to Mr. Buss, Ms. Fong, Mr.
                        Hayden, Ms. Kurtzer, Mr. Prager, or Open Drives .......................... 13

        C.      Count II Fails to State a CFAA Claim ....................................................... 14

                1.      The CFAA Claim Is Time-Barred ................................................... 14

                2.      The Complaint Fails to Allege the Specific CFAA Subsection at
                        Issue ................................................................................................. 15

                3.      Sylabs Fails to Plead Unauthorized Access .................................... 15

                4.      Sylabs Does Not Plead a "Loss" Under the CFAA ......................... 16

i

<ins>**TABLE OF CONTENTS**</ins><br>(continued)

**Page**

D. Counts IV and V Fail to State RICO Claims ........................................................ 17

    1. Sylabs Fails to Plead "Racketeering Activity." ...................................... 17

    2. There Are No Allegations of a Pattern of Racketeering Activity ............ 18

    3. Sylabs Does Not Plead a Threat of Continued Criminal Activity .......... 19

    4. Sylabs' § 1962(d) Claim Fails ................................................................. 20

E. CUTSA Preempts Sylabs' State Law Claims ....................................................... 20

F. Count VII Fails to State a UCL Claim ................................................................. 21

    1. Because the Predicate Claims Fail, the UCL Claim Cannot Survive ....... 22

    2. Sylabs Lacks UCL Standing ................................................................. 22

    3. Sylabs Fails to Plead "Unfair" Business Practices................................. 23

    4. Sylabs Fails to Plead "Fraudulent" Business Practices........................... 24

G. The Complaint Is Devoid of Allegations Regarding Mr. Buss' Conduct ............ 25

V. CONCLUSION.............................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                           **Page(s)**

3

*123 Los Robles LLC v. Metzler*,
4
    No. 17-CV-00392-RGK-SK, 2017 WL 10311209 (C.D. Cal. Oct. 26, 2017).......................23

5
*Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*,
    No. CV 10-3738 ABC, 2010 WL 11463697 (C.D. Cal. Sept. 20, 2010)...............................23

6

7
*Admor HVAC Prods., Inc. v. Lessary*,
    No. 19-00068 SOM-KJM, 2019 WL 2518105 (D. Haw. June 18, 2019)...............................14

8
*Alta Devs., Inc. v. LG Elecs., Inc.*,
9
    343 F. Supp. 3d 868 (N.D. Cal. 2018.........................................................................................8

10
*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................................10

11

12
*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019)...............................................................................................17

13
*Arthur J. Gallagher & Co. v. Tarantino*,
14
    No. 20-cv-05505-EMC, 2022 WL 4092673 (N.D. Cal. July 27, 2022)................................21

15
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................25

16

17
*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020)....................................................................................10, 17, 18

18
*Attia v. Google LLC*,
19
    No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. June 13, 2018) .................................18

20
*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*,
    No. 16-cv-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017) ....................................20

21

22
*Aviva USA Corp. v. Vazirani*,
    632 F. App'x 885 (9th Cir. 2015) ........................................................................................18

23
*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006)............................................................................................24

24

25
*Beaver v. Tarsadia Hotels*,
    816 F.3d 1170 (9th Cir. 2016)..............................................................................................21

26
*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
27
    77 F. Supp. 3d 850 (N.D. Cal. 2014) ...................................................................................24

28

i

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
  No. 19-4162 SBA, 2019 WL 11499334, N.D. Cal. Nov. 13, 2019) ....................................... 12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ......................................................................................................... 23

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) .................................................................................................. 22

*ChromaDex, Inc. v. Elysium Health, Inc.*,
  369 F. Supp. 3d 983 (C.D. Cal. 2019) .................................................................................. 20

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ............................................................................................... 24

*Diodes, Inc. v. Franzen*,
  260 Cal. App. 2d 244 (1968) ...................................................................................... 9, 10, 12

*Emazing Lights LLC v. De Oca*,
  No. SACV 15-1561 (AG) (Ex), 2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ....................... 12

*Epicor Software Corp. v. Alt.f Tech. Sols., Inc.*,
  No. SACV 13-00448-CJC(RNBx), 2015 WL 12724073 (C.D. Cal. Apr. 2,
  2015) ..................................................................................................................................... 20

*ESPOT, Inc. v. MyVue Media, LLC*,
  492 F. Supp. 3d 672 (E.D. Tex. 2020) .................................................................................. 18

*Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*,
  761 F. App'x 989 (Fed. Cir. 2019) ........................................................................................ 10

*Fraser v. Mint Mobile, LLC*,
  No. C 22-00138 WHA, 2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) ................................. 17

*Greencycle Paint, Inc. v. Paintcare, Inc.*,
  No. 15-cv-04059-MEJ, 2016 WL 1402845 (N.D. Cal. Apr. 8, 2016) .................................... 22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) .............................................................................................................. 19

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ................................................................................................. 22

*Hiramanek v. Clark*,
  No. C-13-0228 EMC, 2013 WL 12308479 (N.D. Cal. Mar. 25, 2013) ................................. 25

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ................................................................................................. 20

ii

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ................................................................................. 8

*Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................... 21

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ............................................................................. 8, 9

*Jackson Pryor Group v. Lima*,
    No. 22-cv-00111-SVK, 2022 WL 17730382 (N.D. Cal. Nov. 10, 2022) ................. 6

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
    No. 20CV1765-GPC(BGS), 2021 WL 148063 (S.D. Cal. Jan. 15, 2021) ............... 24

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*,
    171 Cal. App. 4th 939 (2009) ........................................................................ 20, 21

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................ 24

*Kimera Labs Inc. v. Jayashankar*,
    No. 21-cv-2137-MMA (DDL), 2022 WL 11965058 (S.D. Cal. Oct. 20, 2022) ...... 21

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .............................................................................. 6

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ............................................................................ 22, 23, 24

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ................................................................. 25

*Maddalena v. Toole*,
    No. 13–cv–4873–ODW(RZx), 2013 WL 5491869 (C.D. Cal. Oct. 1, 2013) .......... 15

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ................................................................................. 1

*Metaxas v. Lee*,
    503 F. Supp. 3d 923 (N.D. Cal. 2020) ............................................................ 17, 19

*Navigation Holdings, LLC v. Molavi*,
    445 F. Supp. 3d 69 (N.D. Cal. 2020) ................................................................... 14

*Nevijel v. N. Coast Life Ins. Co.*,
    651 F.2d 671 (9th Cir. 1981) ................................................................................. 1

*Perlan Therapeutics, Inc. v. Superior Ct.*,
    178 Cal. App. 4th 1333 (2009) .............................................................................. 9

iii

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
    223 Cal. App. 4th 1105 (2014), *as modified on denial of reh'g* (Feb. 27, 2014)..................22

*Reyes v. Nationstar Mortg. LLC*,
    No. 15-CV-01109-LHK, 2015 WL 4554377 (N.D. Cal. July 28, 2015) ...............................23

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021) ..................................................................................10

*Song v. Drenberg*,
    No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019) ................................15

*Strategic Partners, Inc. v. FIGS, Inc.*,
    No. 19-cv-02286-JWH-KSx, 2021 WL 4813645 (C.D. Cal. Aug. 10, 2021).......................21

*Sun Sav. and Loan Ass'n v. Dierdorff*,
    825 F.2d 187 (9th Cir. 1987)................................................................................................19

*SunPower Corp. v. SolarCity Corp.*,
    No. 12–CV–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ...........................20

*Synopsys, Inc. v. ATopTech, Inc.*,
    No. C 13-cv-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013).................................11

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992)..............................................................................................19

*Teva Pharms. USA, Inc. v. Health IQ, LLC*,
    No. SACV 13-00308-CJC(RNBx), 2013 WL 12132029 (C.D. Cal. Apr. 29,
    2013) ...................................................................................................................................13

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
    306 F. Supp. 3d 1164 (C.D. Cal. 2018).................................................................................16

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004)..............................................................................................19

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012)................................................................................................16

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) .........................................................................................15, 16, 17

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697 (N.D.
    Cal. Mar. 23, 2018 ..............................................................................................................10

*Wagda v. Town of Danville*,
    No. 16-cv-00488-MMC, 2016 WL 6160160 (N.D. Cal. Oct. 24, 2016) ..............................25

iv

*Waymo LLC v. Uber Techs., Inc.*,
    256 F. Supp. 3d 1059 (N.D. Cal. 2017) ................................................................. 20

*WHIC LLC v. NextGen Lab'ys, Inc.*,
    341 F. Supp. 3d 1147 (D. Haw. 2018) .................................................................. 14

**Statutes**

18 U.S.C. § 1030 ............................................................................................. 14, 15, 16

18 U.S.C. § 1836 ........................................................................................................ 18

18 U.S.C. § 1839 .......................................................................................................... 9

18 U.S.C. § 1961 ........................................................................................................ 17

Cal. Bus. & Prof. Code § 17204 ............................................................................... 22

Cal. Civ. Code § 3426 ........................................................................................... 9, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

This case is an improper attempt by a failing business, Plaintiff Sylabs, Inc. ("Sylabs"), to

4

disrupt the groundbreaking development efforts of Defendant Ctrl IQ, Inc. ("CIQ") in the high-

5

performance computing industry by asserting a grab bag of meritless claims against numerous

6

defendants without a meaningful set of plausible allegations.  CIQ is the owner of its pioneering

7

technology, and the Complaint is a desperate attempt to salvage Sylabs' business.

8

The Court should dismiss Sylabs' Complaint in its entirety for at least two reasons.  ***First,***

9

Sylabs' Complaint conspicuously omits a critical fact—Sylabs and Mr. Kurtzer entered into a

10

Waiver, Release, and Settlement Agreement (the "Release") in which Sylabs not only

11

acknowledged that Mr. Kurtzer was starting CIQ with independently developed technology, but

12

also released Mr. Kurtzer, Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Hayden, Mr. Prager and CIQ

13

from *all* claims arising out of conduct prior to April 29, 2020.  For these Defendants, the Release

14

ends this case in its entirety.

15

***Second,*** Sylabs' prolix 89-page Complaint does not meet basic federal pleading standards.

16

Rather than satisfying the "short and plain statement" directive of Rule 8(a), "the pleading seems

17

designed to provide quotations for newspaper stories."  *McHenry v. Renne*, 84 F.3d 1172, 1176,

18

1178 (9th Cir. 1996).  The lengthy Complaint's "verbose, confusing and almost entirely

19

conclusory" allegations do nothing to solve its fundamental deficiency – no actionable claims are

20

alleged so it must be dismissed.  *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

21

**II.    BACKGROUND**

22

    **A.    The Parties[1]**

23

        **1.    Sylabs**

24

"Sylabs was founded in order to invent and market value-added technology for Singularity

25

in the HPC industry."  Compl. ¶ 59; *see id.* ¶ 56 (Singularity is open-source software that "was

26

created at Lawrence Berkley [*sic*] National Laboratory in 2016 to fill a gap in the performance of

27

28

---

[1] Allegations from the Complaint are intended only to aid in the Court's resolution of this motion. Defendants do not admit them by including them here.

1

1  supercomputers in the HPC industry.").

2  **2.   The CIQ Defendants**

3  Sylabs brings its Complaint against CIQ and its employees, Gregory Kurtzer, Julia Kurtzer,

4  Robert Adolph, Matthew Hayden, and Erin Fong (collectively, the "CIQ Defendants").  CIQ was

5  founded by Mr. Kurtzer and Robert Adolph in 2020 to provide enterprise-grade software

6  infrastructure solutions for a variety of computing needs in the high-performance computing

7  ("HPC") industry.

8  Mr. Kurtzer serves as CIQ's founder, director, CEO, CFO, and secretary.  *Id.* ¶ 30.  Mr.

9  Kurtzer was previously Sylabs' CEO and a member of its board of directors.  *Id.*  Prior to joining

10  Sylabs, Mr. Kurtzer was an HPC engineering, developer, and researcher working at the United

11  States Department of Energy for over 16 years.

12  Ms. Kurtzer was previously a "trusted advisor" at Sylabs.  *Id.* ¶ 31.  She serves as CIQ's

13  Manager of Office Services.

14  Mr. Adolph is a co-founder and the CPO of CIQ.  *Id.* ¶ 32.

15  Mr. Hayden is a customer advocate at CIQ.  *Id.* ¶ 33.  He was formerly a project coordinator

16  at Sylabs.  *Id.*  There is only one allegation specific to Mr. Hayden: that he purportedly "access[ed]

17  Sylabs' Server and download[ed] Sylabs' [Small Business Innovation Research ('SBIR')] Proposal

18  and work relating to Sylabs' SIF and Armored Containers technology utilized with the National

19  Security Agency[.]"  *Id.* ¶ 165.

20  Ms. Fong is CIQ's operations manager.  *Id.* ¶ 34.  Prior to joining CIQ, Ms. Fong served as

21  "Sylabs' controller and handled marketing."  *Id.*  The Complaint fails to identify any misconduct

22  by Ms. Fong.  At best, the Complaint alleges that Ms. "Fong remotely and surreptitiously (as she

23  was no longer a Sylabs' employee) accessed Sylabs' Server for an unknown purpose[.]"  *Id.* ¶ 173.

24  **3.   The Open Drives and IAG Defendants**

25  Open Drives, Inc. ("Open Drives") and IAG Fund II, LP are investors in CIQ.[2]  Compl.

26  ¶ 38.  The Complaint alleges that Messrs. Buss and Prager are directors of Open Drives. *Id.* ¶¶ 35-

27

28  [2] IAG Fund II, LP and IAG Capital Holdings II, LLC (together, "IAG") were erroneously sued as
"IAG Capital Partners."  *See* Compl. ¶ 27.

2

36.  The Complaint further alleges that Mr. Buss is Open Drives' CEO and secretary, and that Mr. Prager is Open Drives' CFO.  *Id.*  Mr. Whitley is a principal at IAG. [3]  *Id.* ¶ 37.

The Complaint does not contain a single allegation as to any specific conduct by Mr. Buss that gives rise to any of Sylabs' claims.

### B.    Procedural Background

Sylabs initiated this lawsuit more than six months ago on the last day of a statute of limitations, February 24, 2023.  *See generally* Compl.  Sylabs waited until recently to serve the Complaint.  *See* Dkt. Nos. 25-27.  Sylabs asserts eleven claims: (1) violation of the Defend Trade Secrets Act ("DTSA"); (2) violation of the Computer Fraud and Abuse Act ("CFAA"); (3) violation of the California Uniform Trade Secrets Act; (4) violation of Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (5) violation of Civil RICO, 18 U.S.C. § 1962(d); (6) civil conspiracy; (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (8) breach of fiduciary duty; (9) aiding and abetting breach of fiduciary duty; (10) unjust enrichment; and (11) conversion.[4]  Compl. ¶¶ 209-359.  The breach of fiduciary duty claim is asserted against Mr. Kurtzer, and the aiding and abetting breach of fiduciary duty claim is asserted against Ms. Kurtzer, Mr. Adolph, Mr. Hayden, Ms. Fong, Mr. Prager, CIQ, Open Drives, and the IAG Defendants.  *Id.* ¶¶ 316-29.  Sylabs asserts the remaining claims against all Defendants.  *Id.* ¶¶ 209-315, 330-59.

### C.    Allegations Related to Sylabs' Purported Trade Secrets, Corporate Secrets, and Other Confidential Information

Sylabs alleges that the "value-added technology" it has developed and added to the open-source Singularity constitutes its "Trade Secrets and IP." Compl. ¶¶ 59, 62. At issue are several alleged Sylabs technologies and confidential information:

***SingularityPRO.***  SingularityPRO is "Sylabs' high-performance container technology specifically designed to enhance enterprise performance computing by building containers that support HPC, analytics, artificial intelligence, machine learning, and deep learning to provide

---

[3] Defendants join in the motion to dismiss separately filed by Defendants IAG and Mr. Whitely.
[4] While the Complaint refers to a claim for patent infringement under 18 U.S.C. § 1962 (Compl. ¶ 7), Sylabs does not in fact assert such a claim.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 5:23-cv-00849-SVK

'intelligence anywhere.'" Compl. ¶ 60; *see id.* ¶¶ 61, 63, 66, 67. SingularityPRO was originally based entirely on the open source version of Singularity created by Mr. Kurtzer.

*Singularity Image Format ("SIF") Technology.* Sylabs' SIF Technology allegedly "create[s] a digital container that holds pieces of software in a structured format that allows the programs to be portable and reproducible, as well as being secured through encryption." *Id.* ¶ 72. Sylabs alleges that its SIF technology, which is patented, serves as the *sine qua non* technology for all the Trade Secrets." *Id.* ¶¶ 75 & 77.

*Singularity Enterprise.* Singularity Enterprises consists of "a set of three services to support Sylabs' SIF container workflows." *Id.* ¶ 79.

*Fuzzball.* Sylabs' released version of Fuzzball is an open sourced system that "relat[es] to value-added technology that creates a cluster of two differentiated software stacks." *Id.* ¶ 91. It consists of (1) the "Fuzzball service, . . . a cloud native service for workflow management and orchestration" and (2) the "Fuzzball agent, . . . a small, purpose-built systems service that executes workflows on computer nodes." *Id.* (emphasis omitted). Sylabs alleges that "Defendants stole Sylabs' Fuzzball Trade Secrets and submitted and received [certain] patents through perpetration of an intentional fraud upon the USPTO[.]" *Id.* ¶ 128.

*Armored Containers.* Armored containers "[are] the next generation of Sylabs' unique [SIF] technology[.]" *Id.* ¶ 100. Sylabs alleges that "Defendants stole Sylabs' Armored Containers technology and submitted and received [certain] patents through perpetration of an intentional fraud upon the USPTO[.]" *Id.* ¶ 127.

*Sylabs' Corporate Secrets.* Sylabs asserts that Defendants stole the "following sensitive documents: corporate records; financial records; partner and joint venture records; customer lists; sales and potential sales lists; statements of work; purchase orders; invoices; marketing strategies, plans, and pricing; prospective investors list; HR records; employees' files; employees' private information; staff agreements; emails and correspondence; and privileged documents." *Id.* ¶ 135; *see* ¶¶ 117-19.

**D.    Release Agreement Between Mr. Kurtzer and Sylabs**

Mr. Kurtzer left Sylabs in the spring of 2020. On April 29, 2020, Mr. Kurtzer, on the one

4

1   hand, and Sylabs, Sylabs Holdings LLC, and R-Stor, Inc. (collectively, the "Sylabs Companies"),

2   on the other, negotiated and entered into the Release. Kurtzer Decl., Ex. A (Release). As is relevant

3   here, the Sylabs Companies agreed to ███████████████████████████████████████ as

4   defined in the agreement ████████████████ :

5   ██████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████

10  ████████████████████████████████

11  *Id.* § 3.B; *see id.* § 3.D (███████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████ ). [5]

14      Pursuant to Paragraph 9(C) of the Release, the parties agreed that ███████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████

17  ██████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████

20  ████████████████████████████████████████

21  Schedule 1 also contains the following Disclosure Schedule that identifies specific instances of

22  conduct expressly covered by the Release:

23      • ████████████████████████████████████████████████

24  ████████████████████

25      • ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████

28  ─────────────────
[5] Unless otherwise noted, all emphases are added.



Release at 9.

## III.    LEGAL STANDARD

The Court articulated the legal standard on a Rule 12(b)(6) motion in *Jackson Pryor Group v. Lima*, No. 22-cv-00111-SVK, 2022 WL 17730382, at *6 (N.D. Cal. Nov. 10, 2022).  The Court should apply the same standard here.

## IV.    ARGUMENT

The Court should dismiss each of Sylabs' claims.  Not only are they barred by the Release, but they fail to meet Rule 12(b)(6)'s pleading standards.  In addition to the grounds set forth below, Defendants join in the argument made in the separately-filed Motion to Dismiss brought by Defendants IAG and Mr. Whitely that Sylabs' claims must be dismissed because they rest on impermissible group allegations.

### A.    Sylabs Released Its Claims Against the CIQ Defendants that Arise from Pre-April 29, 2020 Conduct.

Sylabs and Mr. Kurtzer heavily negotiated the Release as part of Mr. Kurtzer's departure from Sylabs.[6]  The Disclosure Schedule outlined in Schedule 1 of the Release applies to, and thus bars, each of the allegations forming the basis of Sylabs' trade secret claims, including:

---

[6] For the reasons set forth in Defendants' concurrently-filed Request for Judicial Notice, the Court may consider the Release in ruling on the instant Motion by taking judicial notice of it or under the incorporation by reference doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

6

- On March 30, 2020, "defendant Julia Kurtzer sent an email to a website known as: 'joindeleteme.com.'" (Compl. ¶ 113);

- "On March 8 and 9, 2020, defendant Kurtzer provided defendants Prager and Open Drives with access to the Sylabs Server . . ." (*id.* ¶ 146);

- "On March 11, 2020, defendant Greg Kurtzer sent defendant Joel Whitley . . . an email . . . wherein he explains part of the conspiracy to commit cyber theft of Sylabs' Trade Secrets and Sylabs' customers . . . (*id.* ¶ 147);

- "Over an approximate two-week period at the end of March 2020, defendant Greg Kurtzer downloaded the entire Sylabs' Server, as memorialized in the Audit Logs, Greg Kurtzer, 3/26/20 thru 3/29/20." (*id.* ¶ 149; *see id.* ¶¶ 150-53);

- "On March 18, 2020, defendant Greg Kurtzer commenced recruiting future employees and engineers, and solicited job applicants for Newco . . ." (*id.* ¶ 155; *see id.* ¶¶ 156-61);

- "On March 23, 2020, the very next day after he announced his resignation, defendant Greg Kurtzer destroyed Sylabs' Trade Secrets and IP by releasing Sylabs' Fuzzball technology—which was closed-source—to open-source." (*id.* ¶ 162);

- "On March 24 through 31, 2020, defendant Adolph commenced deleting and downloading items from the Sylabs' Server by using defendant Greg Kurtzer's Command Control email account and defendant Adolph's personal email account." (*id.* ¶ 164);

- "Commencing on March 24 and continuing through April 6, 2020, defendant Hayden commenced his cyber theft of Sylabs' Corporate Secrets by accessing Sylabs' Server and downloading Sylabs' SBIR Proposal and work relating to Sylabs' SIF and Armored Containers technology utilized with the National Security Agency ("NSA") in 2018 through 2019 . . ." (*id.* ¶ 165); and

- "On March 26, 2020, defendant Greg Kurtzer granted his Personal Email accounts full access to Sylabs' Server . . ." (*id.* ¶ 166; *see id.* ¶¶ 167-69).

Sylabs also waived each of its claims to the extent they arise out of any conduct that occurred prior to April 29, 2020. *See* Release § 3(B) (Sylabs ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████). The Release not only covers Mr. Kurtzer, but the other

7

1  CIQ Defendants, as it defines the ████████████ as "████████████

2  ████████████" *Id.* § 3(B).  Mr. Kurtzer's employees—

3  including Mr. Adolph, Ms. Fong, Mr. Hayden, and Ms. Kurtzer[7]—fall within the scope of this

4  definition.  *See* Compl. ¶¶ 31-34.  So too does CIQ, as Mr. Kurtzer's employer.  *See id.* ¶ 30.[8]

5          **B.      Counts I and III Fail to State Trade Secret Claims.**

6          Sylabs fails to state CUTSA and DTSA claims.  Both statutes require a plaintiff to allege

7  "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade

8  secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *InteliClear,*

9  *LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020); *see Alta Devs., Inc. v.*

10  *LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) ("The elements of misappropriation

11  under the DTSA are similar to those under the CUTSA, . . . except that the DTSA applies only to

12  misappropriations that occur or continue to occur on or after its date of enactment on May 11,

13  2016.") (cleaned up).

14          The Court should dismiss Sylabs' trade secret claims for at least three reasons: (1) the

15  Complaint does not identify its alleged trade secrets with sufficient particularity; (2) Sylabs fails to

16  plead facts that it made reasonable efforts to maintain the secrecy of its alleged trade secrets; and

17  (3) there are no facts alleging that Ms. Kurtzer, Ms. Fong, Mr. Buss, Mr. Prager, or Open Drives

18  misappropriated any alleged trade secrets or confidential information.

19          **1.      Sylabs Fails to Identify the Alleged Trade Secrets with Sufficient**
                     **Particularity.**

20

21          The Court should dismiss the CUTSA and DTSA claims on the ground that Sylabs fails to

22  "describe the subject matter of the trade secret with sufficient particularity to separate it from

23  matters of general knowledge in the trade or of special knowledge of those persons skilled in the

24  trade."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (cleaned up).

25  Before the defendants are "compelled to respond" to the Complaint "and to embark on discovery

26

---

27  [7] Mr. Prager is also the Chief Financial Officer of CIQ and therefore falls within the scope of the
    definition of "GK Released Parties."

28  [8] To the extent the Court declines to consider the Release at this juncture, Defendants respectfully
    request leave to file a limited motion for summary judgment on this issue.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 5:23-cv-00849-SVK

1  which may be both prolonged and expensive," Sylabs must "describe the subject matter of the trade

2  secret with sufficient particularity . . . to permit the defendant[s] to ascertain at least the boundaries

3  within which the [alleged] secret lies." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).

4  A "trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown

5  to others, and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657 (citing

6  18 U.S.C. §§ 1839(3), (5)); *see* Cal. Civ. Code § 3426.1(d).  Sylabs fails to plead facts to satisfy

7  the second and third elements.

8                              a.       **Sylabs Does Not Distinguish SingularityPRO, SIF Technology,**
                                       **or Singularity Enterprise from Open Source Materials.**
9

10        There are no allegations demonstrating that SingularityPRO, SIF technology, or Singularity

11  Enterprise are trade secrets.  SingularityPRO and SIF technology are based on publicly available,

12  open source software also called "Singularity."   Compl. ¶ 56 ("Singularity is an open-source

13  project, with a friendly community of developers and users.").   There are no allegations that

14  Singularity Enterprise is a trade secret.  Sylabs instead alleges that "the value-added technology

15  that Sylabs has created and added and continues to create and add to Singularity constitutes its

16  Trade Secrets and IP" and that "when Sylabs adds to Singularity to create, for example,

17  SingularityPRO, such transformation constitutes Sylabs' Trade Secrets and IP." *Id.* ¶¶ 59, 63.  But

18  it is unclear what precisely Sylabs claims to be a trade secret—i.e., if the trade secret is only the

19  Sylabs' "value-added technology" (*id.* ¶ 59), or if it is something else entirely.

20        Sylabs' attempt to describe the purported  "value-added technology" does not save the

21  claims.  *See id.* ¶¶ 67, 89; *see id.* ¶ 63.  Where, as here, "the alleged trade secrets consist of

22  incremental variations on, or advances in the state of the art in a highly specialized technical field,

23  a more exacting level of particularity may be required to distinguish the alleged trade secrets from

24  matters already known to persons skilled in that field." *Perlan Therapeutics, Inc. v. Superior Ct.*,

25  178 Cal. App. 4th 1333, 1346 (2009) (cleaned up).  Sylabs fails to meet this standard.  At best,

26  Sylabs "has set out its purported trade secrets in broad, categorical terms, more descriptive of the

27  types of information that generally may qualify as protectable trade secrets than as any kind of

28  listing of particular trade secrets [Sylabs] has a basis to believe actually were misappropriated

here." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (dismissing CUTSA claim under Rule 12(b)(6)). Sylabs claims that certain features of SingularityPRO are not in the open-source Singularity Community, but fails to show how these additional features transform SingularityPRO into a trade secret. For instance, it is unclear how the "Cryptographically Viable" feature, which is allegedly present in both Singularity Community and SingularityPRO, is different from the "Cryptographic Keys Service" that is purportedly found in Singularity Community and SingularityPRO. Compl. ¶ 67, Fig. 2.

This is insufficient. The DTSA and CUTSA claims thus should be dismissed given Sylabs' failure to clearly delineate the bounds of its trade secrets. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 965-66 (S.D. Cal. 2021) (dismissing CUTSA and DTSA claims where "[p]aintiff d[id] not plead 'the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade.'") (quoting *Diodes*, 260 Cal. App. 2d at 253).

### b. Sylabs' Patent Application Discloses SIF Containers and Armored Containers.

The Complaint fails to allege facts that Sylabs' SIF technology and armored containers are trade secrets. Indeed, Sylabs forfeited trade secret protection when it filed U.S. Patent Application No. 16/435,251 (the "'251 Application") which, by Sylabs' own admission, encompasses SIF technology. Compl. ¶ 75 ("On June 7, 2019, Sylabs filed its patent application with the U.S. Patent and Trademark Office . . . to patent Sylabs' SIF technology . . . , which was assigned Application No. 16/435,251."); *see id.* ¶ 100; *see* Chatterjee Decl., Ex. A (the '251 Application).

" [W]ithin the context of the DTSA [and CUTSA], a plaintiff has a viable trade secret claim that would protect his proprietary unpatented technology only if he reveals implementation details and techniques *beyond* what was disclosed in [its] patent." *Attia v. Google LLC* ("*Attia II*"), 983 F.3d 420, 426 (9th Cir. 2020) (cleaned up; emphasis in the original); *see Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989, 994 (Fed. Cir. 2019) (information disclosed in a patent application cannot be a trade secret); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1146 (N.D. Cal. 2019) (plaintiff should "delineate the boundaries between its trade secrets and its

10

1    information that has been made public through patents and patent applications"). Sylabs does not

2    reckon with these disclosures or "delineate the boundaries" between the '251 Application, on the

3    one hand, and its SIF technology and Armored Containers, on the other.

### c.    Fuzzball Is Subject to the Release.

5    Sylabs alleges that Fuzzball has been publicly available since it was made open source in

6    March 2020 (Compl. ¶ 162) by Sylabs, after Mr. Kurtzer had resigned and prior to the signing of

7    the Release. Thus, not only have the trade secret claims have been waived to the extent they are

8    predicated on Fuzzball, there are also no allegations as to what, if any, aspects of Fuzzball remain

9    confidential so as to render it a trade secret. *See Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-cv-

10   02965 SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (dismissing CUTSA claim where

11   the court "c[ould ]not determine which parts of [p]laintiff's code and documentation [we]re

12   supposed to be trade secrets and which parts [we]re publicly available, open source commands.").

### d.    Sylabs Fails to Identify What Constitutes "Other Privileged and Protected Information."

15   The Complaint's vague allegations render Defendants unable to discern what non-technical

16   information Sylabs claims to be a trade secret. Under the header of "Defendants' Theft of Sylabs'

17   Trade Secrets," the Complaint identifies and defines several other categories of information,

18   including Audit Logs, Sylabs' HR Records, Employee's Files, Employee's Private Information,

19   Sylabs' Staff Agreements, Sylabs' Privileged Docs, Sylabs' Correspondence, and "sensitive

20   documents." *See, e.g.*, *id.* ¶¶ 113, 118-20, 133-35.

21   But the trade secret claims only refer to "Sylabs' Trade Secrets, IP, Corporate Secrets and/or

22   other privileged and protected information[.]" *Id.* ¶¶ 210, 212-29, 252-68. It is unclear whether

23   "other privileged and protected information" refers to any of the "sensitive documents" identified

24   in paragraph 135 or the Audit Logs, Sylabs' HR Records, Employee's Files, Employee's Private

25   Information, Sylabs' Staff Agreements, Sylabs' Privileged Docs, Sylabs' Correspondence. Had

26   Sylabs intended to include such information in its trade secret claims, Sylabs would have used the

27   defined terms. Thus, dismissal is warranted to the extent that the misappropriation claims are

28   purportedly based on the alleged theft of the aforementioned categories of information.

1
2

        **e.**      **Sylabs' Open-Ended Allegations Fail to Provide Reasonable Notice of Its Claims.**

3
4
5
6
7
8
9
10
11
12

Sylabs' Complaint is filled with vague, non-limiting language that makes it impossible for Defendants to understand the boundaries of Sylabs' trade secret claims. Sylabs describes its alleged trade secrets by using catch-all language, such as "including," to provide a litany of broad categories of documents and technology that comprise such alleged trade secrets. Compl. ¶¶ 110, 117, 133, 152, 167, 211, 231, 251, 271, 347. This is insufficient, as Sylabs "need[s] to allege the existence of trade secrets that are defined within some meaningful limit." *Emazing Lights LLC v. De Oca*, No. SACV 15-1561 (AG) (Ex), 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (plaintiff failed to state CUTSA claim with "enough particularity" where plaintiff alleged the trade secret "'include[d], but [was] not limited to,' [certain] enumerated items" such that "[a]ny piece of information could potentially be labeled a trade secret under this definition."). Indeed,

13
14
15
16

> [b]efore a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

17
18
19
20
21
22
23
24
25

*Diodes*, 260 Cal. App. 2d at 253. In other words, using the term "including" makes it impossible for Defendants to understand what Sylabs claims as alleged trade secrets—i.e., whether the trade secrets are only the documents enumerated in the list or whether there are others. This does not meet 12(b)(6) pleading standard. *See Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 19-4162 SBA, 2019 WL 11499334, at *4 (N.D. Cal. Nov. 13, 2019) (dismissing DTSA and CUTSA claims where plaintiff "ha[d] done little more than set forth the purported trade secrets in broad, categorical terms that are more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets that form the basis of the misappropriation of trade secrets claim.") (cleaned up).

26
27

        **2.**      **There Are No Allegations Showing Sylabs' Efforts to Maintain the Secrecy of the Alleged Trade Secrets.**

28

The Complaint lacks any facts alleging that Sylabs took reasonable efforts to keep the

12

1    alleged trade secrets confidential.  At most, Sylabs alleges that it "has taken reasonable measures

2    to protect the secrecy of the Sylabs' Trade Secrets and IP."  Compl. ¶¶ 212, 252.  Such a conclusory

3    allegation is insufficient.  *See Teva Pharms. USA, Inc. v. Health IQ, LLC*, No. SACV 13-00308-

4    CJC(RNBx), 2013 WL 12132029, at *6 (C.D. Cal. Apr. 29, 2013) ("The SAC states that the

5    information at issue 'is subject to reasonable efforts to maintain its secrecy and is treated secret by

6    Teva,' but fails to outline any steps taken to protect the information, such as limiting access to the

7    information or advising employees of its confidential nature.").

8                    **3.    The Trade Secrets Claims Fail as to Mr. Buss, Ms. Fong, Mr. Hayden,
                            Ms. Kurtzer, Mr. Prager, or Open Drives.**

9

10            Sylabs fails to allege any instances of misappropriation by Mr. Buss, Ms. Fong, Mr. Hayden,

11    Ms. Kurtzer, Mr. Prager, or Open Drives.

12            The Complaint does not identify *any* specific conduct by Mr. Buss.  *Infra* § IV(G).

13            Nor does Sylabs allege facts that Ms. Fong engaged in trade secret misappropriation.  Sylabs

14    merely asserts that Ms. "Fong remotely and surreptitiously (as she was no longer a Sylabs'

15    employee) accessed Sylabs' Server for ***an unknown purpose***[.]"  Compl. ¶ 173.  There is no

16    suggestion that Ms. Fong misappropriated any trade secrets when she allegedly accessed the Server.

17            As to Mr. Hayden, Sylabs alleges only that he purportedly "access[ed] Sylabs' Server and

18    download[ed] Sylabs' SBIR Proposal and work relating to Sylabs' SIF and Armored Containers

19    technology utilized with the National Security Agency[.]"  *Id.* ¶ 165.  As explained above, such

20    conduct is covered by the Release.  *Supra* § IV(A).  Moreover, this does not meet the requisite level

21    of particularity to withstand a 12(b)(6) motion, as there are no allegations as to kind of "work

22    relating to Sylabs' SIF and Armored Containers" was allegedly downloaded.  And Sylabs does not

23    allege that the SBIR proposal was a trade secret or otherwise considered to be confidential.  *See,*

24    *e.g.*, Compl. ¶¶ 123-26 (describing SBIR proposal).

25            Similarly, there are no facts as to Ms. Kurtzer's unlawful conduct.  The Complaint identifies

26    only two specific actions by Ms. Kurtzer.  First, that on March 30, 2020, "Julia Kurtzer sent an

27    email to a website known as: 'joindeleteme.com.'"  *Id.* ¶ 113.  But Sylabs fails to allege any facts

28    related to that email to suggest that Ms. Kurtzer shared any of Sylabs' trade secret or confidential

1   information.   Second, the Complaint alleges that "[o]n April 16, 2020, . . . Julia Kurtzer . . .

2   download[ed] and email[ed] Sylabs' Purchase Orders received from customers to defendants Greg

3   Kurtzer, Fong, and Adolph." *Id.* ¶ 175.  But there are no facts that Sylabs' purchase orders are

4   confidential, or what information in the purchase order may constitute a trade secret.  For instance,

5   "[c]ontact information would generally not receive trade secret protection because such information

6   could be easily obtained and would not have independent economic value." *Admor HVAC Prods.,*

7   *Inc. v. Lessary*, No. 19-00068 SOM-KJM, 2019 WL 2518105, at *10 (D. Haw. June 18, 2019); *see*

8   *e.g.*, *WHIC LLC v. NextGen Lab'ys, Inc.*, 341 F. Supp. 3d 1147, 1162 (D. Haw. 2018) ("[T]he court

9   agrees that such a list *by itself* is not generally protected as a trade secret, especially where such

10  information is otherwise readily available in the public domain.") (emphasis in the original).

11      There are also no allegations that Mr. Prager or Open Drives had reason to believe that it

12  was in receipt of Sylabs' alleged trade secrets.  While Sylabs alleges that Mr. "Kurtzer provided

13  defendants Prager and Open Drives with access to the Sylabs Server, in particular to all documents

14  relating to Fuzzball . . ." (Compl. ¶ 146), there are no allegations that Mr. Prager or Open Drives

15  had reason to believe that such documents constitute trade secrets.  *See Navigation Holdings, LLC*

16  *v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (dismissing trade secret claims in the absence

17  of "any factual substantiation of Defendants' knowledge" of the alleged misappropriation).

18          **C.      Count II Fails to State a CFAA Claim.**

19      Sylabs' CFAA claim fails for at least four reasons: (1) Sylabs does not identify which

20  provision(s) of the CFAA were allegedly violated, (2) the statute of limitations bars the claim, (3)

21  there are no allegations that Defendants engaged in "unauthorized access" of the Sylabs Server,

22  and (4) Sylabs has not established that it has suffered a "loss" within the meaning of the statute.

23          **1.      The CFAA Claim Is Time-Barred.**

24       The face of the Complaint shows that Sylabs' CFAA claim is timed-barred by the statute's

25  two-year limitations period.  *See* 18 U.S.C. § 1030(g) ("No action may be brought . . . such action

26  is begun within 2 years of the date of the act complained of or the date of the discovery of the

27  damage.").  The alleged conduct giving rise to the CFAA claim occurred nearly three years before

28  Sylabs filed the Complaint on February 24, 2023.  *See* Compl. ¶ 110 (Defendants' conduct took

14

place "during the time period between *March 1 through June 1 of 2020*"); *id.* ¶ 113 (Ms. Kurtzer "sent an email to a website known as: 'joindeleteme.com[]' . . . *on March 30, 2020*"); *id.* ¶ 177 ("commencing *on May 18th and continuing through May 26, 2020*, defendant Adolph accessed Sylabs Server . . ."). As Sylabs waited almost three years to file suit, the claim should be dismissed as untimely. *See Maddalena v. Toole*, No. 13–cv–4873–ODW(RZx), 2013 WL 5491869, at *5 (C.D. Cal. Oct. 1, 2013) (dismissing CFAA claim where, "[b]ecause [p]laintiffs waited almost two-and-a-half years to file their complaints, their actions [we]re time-barred").

### 2.    The Complaint Fails to Allege the Specific CFAA Subsection at Issue.

The Complaint does not identify which provisions of the CFAA were allegedly violated. "18 U.S.C. §§ 1030(a)(1)-(7) is comprised of many parts and subparts, all of which are defined to give rise to liability under the CFAA in different ways and which have different pleading requirements." *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *4 (N.D. Cal. May 6, 2019). Sylabs' "fail[ure] to identify whether any particular section of the CFAA is implicated" is fatal, as it fails to give Defendants sufficient notice of the nature of the claim. *Id.* at *5 (dismissing claim and noting that "courts have found as insufficient pleadings that fail to specify which part of a multi-part statute [d]efendants have allegedly violated").

### 3.    Sylabs Fails to Plead Unauthorized Access.

The CFAA claim should be dismissed on grounds that Sylabs does not plausibly allege that Defendants engaged in "unauthorized access" of the Sylabs Server. The CFAA proscribes both "access[ing] a computer without authorization," and "exceed[ing] authorized access." 18 U.S.C. § 1030(a)(2), (e)(6). Sylabs appears to bring its claim under the "exceed[ing] authorized access" prong. *See* Compl. ¶ 239 (Defendants "exceeded their authority to use Sylabs' Trade Secrets, IP, Corporate Secrets, and other privileged and protected information in contravention of CFAA[.]"). "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021). Sylabs' CFAA claim fails to the extent it is based on conduct that occurred before Mr. Adolph, Mr. Hayden, Ms. Fong, Mr. Kurtzer, and Ms. Kurtzer resigned from Sylabs, as the

15

1    Complaint does not allege that these individuals were not authorized to access the Sylabs Server

2    during their employment.  The claim also fails as to any post-employment conduct (*see* Compl.

3    ¶¶ 172-78), as there are no allegations that Sylabs revoked their access to Sylabs' Server, which

4    was hosted in Google Drive (*id*. ¶ 110 n.13).  *See Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F.

5    Supp. 3d 1164, 1175 (C.D. Cal. 2018)  (dismissing CFAA claim where plaintiff "ha[d] not shown

6    that it rescinded permission from Defendants to use its website").

7         Moreover, the gravamen of this claim is that Defendants "exceeded their authority ***to use***"

8    information.  *See* Compl. ¶ 239.  But "the plain language of the CFAA targets the unauthorized

9    procurement or alteration of information, not its misuse or misappropriation."  *United States v.*

10   *Nosal*, 676 F.3d 854, 863 (9th Cir. 2012)) (cleaned up).

11   **4.    Sylabs Does Not Plead a "Loss" Under the CFAA.**

12        The Complaint fails to allege facts to show that Sylabs suffered a "loss" necessary to sustain

13   a CFAA claim.  *See* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a

14   violation of this section may maintain a civil action against the violator . . .").  "A civil action for a

15   violation of [the CFAA] may be brought only if the conduct involves 1 of the factors set forth in

16   subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  *Id.*  Based on the Complaint,

17   Sylabs can claim only a "loss to 1 or more persons during any 1-year period (and, for purposes of

18   an investigation, prosecution, or other proceeding brought by the United States only, loss resulting

19   from a related course of conduct affecting 1 or more other protected computers) aggregating at least

20   $5,000 in value[.]"[9]  18 U.S.C. § 1030(c)(4)(A)(i)(I).

21        The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of

22   responding to an offense, conducting a damage assessment, and restoring the data, program, system,

23   or information to its condition prior to the offense, and any revenue lost, cost incurred, or other

24   consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).  In

25   other words, "'loss' . . . focus[es] on technological harms—such as the corruption of files—of the

26   type unauthorized users cause to computer systems and data."  *Van Buren*, 141 S. Ct. at 1660; *see*

27

28   [9] Sylabs does not plead facts that suggest it can seek relief for any of the other harms identified in
     the CFAA.  *See* 18 U.S.C. §§ 1030(c)(4)(A)(i)(II)-(VI), 1030(c)(4)(A)(ii).

1   *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262-63 (9th Cir. 2019) (CFAA's definition of

2   "loss" is "a narrow conception" that is "clearly limit[ed] its focus to harms caused by computer

3   intrusions, not general injuries unrelated to the hacking itself").

4           There are no allegations that Sylabs suffered any technological harms as a result of

5   Defendants' actions.  Sylabs alleges that it "has suffered actual damages . . . in an amount that

6   greatly exceeds $75,000" (Compl. ¶ 240), but offers no explanation as to what comprises those

7   damages, let alone any facts showing that these damages are the result of "technological harms."

8   *See Van Buren*, 141 S. Ct. at 1660.  Indeed, it appears that any "loss" to Sylabs "flows from the use

9   of" the information rather than any loss "related to a computer or system"—i.e., the Sylabs Server.

10  *Fraser v. Mint Mobile, LLC*, No. C 22-00138 WHA, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27,

11  2022).  The Court should therefore dismiss the CFAA claim.  *See id.* (dismissing CFAA claim

12  where plaintiff alleged a "type of damage or loss . . . not recognized by the CFAA").

13          **D.      Counts IV and V Fail to State RICO Claims.**

14          The Court should dismiss Sylabs' RICO claims brought under 18 U.S.C. § 1962(c) and (d).

15  The § 1962(c) claim fails, as Sylabs does not allege any "racketeering activity," let alone a pattern

16  thereof, and because there are no allegations of a threat of continued criminal activity.  Because the

17  § 1962(c) claim fails, so too does the § 1962(d) claim.

18          **1.      Sylabs Fails to Plead "Racketeering Activity."**

19          Sylab's § 1692(c) claim should be dismissed as there are no allegations of racketeering

20  activity, let alone any pattern of racketeering activity.  "In order to assert a RICO claim pursuant to

21  18 U.S.C. § 1962(c), a plaintiff must allege a pattern of racketeering activity by showing that the

22  racketeering predicates are related, and that they amount to or pose a threat of continued criminal

23  activity."  *Attia II*, 983 F.3d at 427 (cleaned up).  "'Racketeering activity' is any act indictable

24  under several provisions of Title 18 of the United States Code, namely those enumerated at 18

25  U.S.C. § 1961(1)."  *Metaxas v. Lee*, 503 F. Supp. 3d 923, 935 (N.D. Cal. 2020) (cleaned up).  "A

26  pattern is defined as 'at least two acts of racketeering activity' within ten years of each other." *Attia*

27  *II*, 983 F.3d at 427 (cleaned up; citing 18 U.S.C. § 1961(5); additional citation omitted).

28          Sylabs' RICO claim is based on a violation of the DTSA.  *See, e.g.*, Compl. ¶ 279 ("[T]he

17

Co-Conspirators formed an association-in-fact enterprise . . . to engage in activities to affect interstate and foreign commerce by conspiring and collaborating to plan and effectuate the interstate theft and sale of Sylabs' Trade Secrets . . ."). As Sylabs has failed to state a DTSA claim (*supra* § IV(B)), the DTSA cannot serve as a predicate act.

### 2.    There Are No Allegations of a Pattern of Racketeering Activity.

Sylabs fails to plead "at least two acts of racketeering activity'" so as to establish a pattern. *See Attia II*, 983 F.3d at 427. The Complaint alleges that Defendants' "interstate theft and sale of Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other privileged and protected information constitutes a pattern of racketeering activity under RICO[.]" Compl. ¶ 281. While Sylabs alleges multiple instances of Defendants accessing the Sylabs Server over a span of weeks (*see, e.g.*, *id.* ¶¶ 109-78), these allegations – at best – only collectively form a "series of steps that were part of a single plan." *Aviva USA Corp. v. Vazirani*, 632 F. App'x 885, 888-89 (9th Cir. 2015). In other words, Sylabs has not identified two (or even one) predicate acts, which is insufficient to show a pattern of racketeering activity. *See Attia v. Google LLC* ("*Attia I*"), No. 17-cv-06037-BLF, 2018 WL 2971049, at *18-19 (N.D. Cal. June 13, 2018).

The Complaint is unclear as to whether the allegations that Sylabs' trade secrets were used in the filing of patent applications (*see, e.g.*, Compl. ¶¶ 179-81) serve as a predicate for the RICO claim. Regardless, the incorporation of Sylabs' alleged trade secrets into a patent filing would constitute a "use" misappropriation of trade secrets and is actionable under the DTSA's civil provision, 18 U.S.C. § 1836. *See ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 695 (E.D. Tex. 2020). But RICO identifies the criminal provision of the DTSA—§ 1832—which is concerned with "the ways in which a person or entity can take or receive a trade secret, not use it once taken." *Id.* ("If the criminal statute is limited to the point in time that a trade secret falls into unauthorized hands, then the ongoing use of the trade secrets once obtained cannot be a predicate act to establish a threat of continued criminal activity.").

In addition, the patent filing allegations are part of the same "series of steps that were part of a single plan" as the accessing of the Sylabs Server because the patent filing allegedly contained the same trade secrets. *See Aviva*, 632 F. App'x at 888-89; *see Attia I*, 2018 WL 2971049, at *18

18

n.15 (interpreting each use of a trade secret as its own predicate act "would turn a single trade secret misappropriation claim into a RICO offense every time a defendant violated the DTSA and then did not immediately stop their allegedly unlawful use of the trade secrets").

### 3.    Sylabs Does Not Plead a Threat of Continued Criminal Activity.

Sylabs has not alleged facts sufficient to show a threat of continued criminal activity.  In addition to alleging at least two predicate acts, a plaintiff must allege the racketeering predicates "'amount to or pose a threat of continued criminal activity.'"  *Metaxas*, 503 F. Supp. 3d at 941 (quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004); additional citation omitted).  The continuity requirement has been interpreted as "'both a closed- and open-ended concept.'"  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)).  To establish closed-ended continuity, a plaintiff must show "'a series of related predicates extending over a substantial period of time,'" *i.e.*, more than "'a few weeks or months.'"  *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241).  Open-ended continuity concerns "'past conduct that by its nature projects into the future with a threat of repetition.'"  *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241).  These requirements aim "'at eliminating RICO actions against perpetrators of isolated or sporadic acts.'"  *Id.* (quoting *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987)).

There are no allegations of either a closed- or open-ended concept of continuity.  Sylabs' allegation that Defendants accessed the Sylabs Servers between March and May 2020—a three-month period—to download Sylabs' alleged trade secrets (*see* Compl. ¶¶ 109-78) falls well short of the "substantial period of time" required to establish closed-ended continuity.  *See, e.g.*, *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) (scheme spanning seven months insufficiently short to establish closed-ended continuity for RICO claim).

Sylabs also does not establish open-ended continuity, as there are no allegations of a future threat of repetition from Defendants.  *See Metaxas*, 503 F. Supp. 3d at 941 ("Particularly in the context of open-ended continuity, a criminal scheme with a singular goal poses no threat of continuing criminal activity once that goal is achieved.") (citation omitted).  Sylabs alleges that its purported trade secrets were stolen over 3 years ago (*see, e.g.*, Compl. ¶ 144), and does not allege that Defendants have attempted to steal trade secrets, either from Sylabs or elsewhere, since then.

1          **4.      Sylabs' § 1962(d) Claim Fails.**

2          As Sylabs fails to state a claim under § 1962(c), it cannot state a claim under § 1962(d).  *See*

3   *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[I]f the section 1962(c) claim does

4   not state an action upon which relief could ever be granted, regardless of the evidence, then the

5   section 1962(d) claim cannot be entertained.") (cleaned up).

6          **E.      CUTSA Preempts Sylabs' State Law Claims.**

7          CUTSA preempts Sylabs' civil conspiracy, UCL, breach of fiduciary duty, aiding and

8   abetting breach of fiduciary duty, unjust enrichment, and conversion claims.  "CUTSA provides

9   the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies

10  based upon misappropriation of a trade secret." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d

11  1059, 1062 (N.D. Cal. 2017) (citing Cal. Civ. Code § 3426.7; additional citations omitted).

12  California courts "share the broad view that CUTSA's 'comprehensive structure and breadth'

13  suggests a legislative intent to occupy the field." *K.C. Multimedia, Inc. v. Bank of Am. Tech. &*

14  *Ops., Inc.*, 171 Cal. App. 4th 939, 957 (2009). Consequently, CUTSA "occupies the field" of

15  common law claims "based on trade secret misappropriation, and provides 'the exclusive civil

16  remedy' under California law for conduct that falls within its purview." *Epicor Software Corp. v.*

17  *Alt. Tech. Sols., Inc.*, No. SACV 13-00448-CJC(RNBx), 2015 WL 12724073, at *2 (C.D. Cal. Apr.

18  2, 2015) (citation omitted); *see also Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-

19  cv-03737-JCS, 2017 WL 412524, at *5-6 (N.D. Cal. Jan. 31, 2017).  "CUTSA serves to preempt

20  all claims premised on the wrongful taking and use of confidential business and proprietary

21  information, even if that information does not meet the statutory definition of a trade secret."

22  *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019).

23         To avoid preemption, a plaintiff's tort and common law claims must "allege wrongdoing

24  that is materially distinct from the wrongdoing alleged in a CUTSA claim." *SunPower Corp. v.*

25  *SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012).

26  Sylabs does not and cannot do that here.  The state law and CUTSA claims are based on the same

27  nucleus of fact—i.e., that Defendants engaged in "interstate cyber theft and misappropriation of

28  Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other privileged and protected information and

1   to perpetrate a fraud on the USPTO."  Compl. ¶ 305 (UCL); *see id.* ¶¶ 295, 298-99 (civil

2   conspiracy); *id.* ¶¶ 318-21 (breach of fiduciary duty); *id.* ¶¶ 326-28 (aiding and abetting breach of

3   fiduciary duty); *id.* ¶¶ 340-44 (unjust enrichment); *id.* ¶¶ 355-57, 359 (conversion).

4        The Court thus should dismiss Sylabs' civil conspiracy, UCL, breach of fiduciary duty,

5   aiding and abetting breach of fiduciary duty, unjust enrichment, and conversion claims as

6   preempted by CUTSA.  *See, e.g., Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-cv-02286-JWH-

7   KSx, 2021 WL 4813645, at *7 (C.D. Cal. Aug. 10, 2021) (holding CUTSA preempted, among

8   others, claims of breach of fiduciary duty and aiding and abetting where claims were "premised

9   entirely upon the acquisition or use of [plaintiff's] Confidential Information"); *Mattel, Inc. v. MGA

10  Ent., Inc.*, 782 F. Supp. 2d 911, 989 (C.D. Cal. 2011) (repackaging a trade secrets claim in the guise

11  of fiduciary duty claims does not avoid preemption); *Arthur J. Gallagher & Co. v. Tarantino*, No.

12  20-cv-05505-EMC, 2022 WL 4092673, at *15–16 (N.D. Cal. July 27, 2022) (rejecting the "narrow

13  approach" and holding an "allegation of 'conspiracy' to commit trade secrets misappropriation does

14  not, in itself, avoid preemption by CUTSA"); *Kimera Labs Inc. v. Jayashankar*, No. 21-cv-2137-

15  MMA (DDL), 2022 WL 11965058, at *11 (S.D. Cal. Oct. 20, 2022) (dismissing civil conspiracy

16  claim "essentially based on the same factual scenario alleged in its trade secrets claims"); *K.C.

17  Multimedia*, 171 Cal. App. 4th at 962 (CUTSA preempted UCL claim where, "[a]s a legal basis for

18  its unfair competition claim, appellant asserts a violation of CUTSA.  As a factual basis for its

19  claim, appellant alleges the same conduct that gives rise to trade secrets claim.").

20        **F.    Count VII Fails to State a UCL Claim.**

21        Sylabs fails to plausibly allege that Defendants violated the UCL.  "The UCL is a California

22  consumer protection statute that broadly proscribes the use of any 'unlawful, unfair or fraudulent

23  business act or practice.'"  *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (quoting

24  Cal. Bus. & Prof. Code § 17200).  Sylabs brings its UCL claim under all three prongs.

25        This claim should be dismissed for at least four reasons.  First, as each of the underlying

26  predicate violations fail, the UCL likewise should be dismissed.  Second, Sylabs does not allege

27  any facts that it has "lost money or property" to give rise to UCL standing.  Third, there are no

28  allegations that Defendants have engaged in any "unfair" business practices.  Finally, Sylabs does

21

not plead any facts showing any "fraudulent" business practices.

### 1.    Because the Predicate Claims Fail, the UCL Claim Cannot Survive.

Sylabs' UCL claim fails to the extent it is predicated on its DTSA, CFAA, CUTSA, RICO, civil conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, or conversion claims.  "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014), *as modified on denial of reh'g* (Feb. 27, 2014).  As these predicate violations fail, the UCL should also be dismissed.  *See Greencycle Paint, Inc. v. Paintcare, Inc.*, No. 15-cv-04059-MEJ, 2016 WL 1402845, at *9 (N.D. Cal. Apr. 8, 2016) ("[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims.") (cleaned up); *see also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty . . . .") (citation omitted).

### 2.    Sylabs Lacks UCL Standing.

Sylabs fails to allege facts that it has standing under the UCL.  *See* Cal. Bus. & Prof. Code § 17204.  The UCL "requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011) (citation omitted); *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018) ("California law requires plaintiffs alleging UCL . . . claims to show that they 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'") (brackets in the original; citation omitted).  A UCL plaintiff may suffer an economic injury in "innumerable ways[,]" including by:

> (1) surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have; (2) hav[ing] a present or future property interest diminished; (3) be[ing] deprived of money or property to which he or she has a cognizable claim; or (4) be[ing] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset*, 51 Cal. 4th at 323.

There are no facts that Sylabs has "lost money or property" in such a manner. Sylabs merely alleges that Defendants' conduct allowed Defendants to "raise[] over $25,000,000[.]" Compl. ¶ 313. But this does not satisfy the federal pleading standard, as Sylabs does not, and cannot, explain how this constitutes "lost money" by Sylabs.[10] *See Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *10 (N.D. Cal. July 28, 2015) (As "Plaintiffs fail to allege that Plaintiffs have lost money or property, . . . Plaintiffs fail to show that they have standing to bring a claim pursuant to Business and Professions Code §§ 17200 *et seq.*"); *Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-3738 ABC (CWx), 2010 WL 11463697, at *10 (C.D. Cal. Sept. 20, 2010) (dismissing UCL claim where plaintiff "conclusorily alleged the loss of a property interest, loss of goodwill, and economic and financial loss due to [d]efendants' conduct, without alleging any specific facts as to what was lost and how").

### 3.      Sylabs Fails to Plead "Unfair" Business Practices.

Sylabs' claim under the UCL's "unfair" prong does not plead facts showing any harm to consumers or the market. "Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

There are no allegations of such conduct. Sylabs instead asserts that "Defendants' behavior clearly offends Acts of Congress and California policy regarding trade secrets and intellectual property[,]" and that Defendants' "actions violated the criminal provisions of DTSA, CFAA, and RICO" and "harm[ed] . . . Sylabs, as well as the public[.]" Compl. ¶¶ 304-05. The Complaint says nothing about threats or harms to competition. Thus, Sylabs' "unfair" UCL claim should be dismissed. *See 123 Los Robles LLC v. Metzler*, No. 17-CV-00392-RGK-SK, 2017 WL 10311209, at *6 (C.D. Cal. Oct. 26, 2017) (plaintiff failed to state claim under unfair prong where it "offered no facts to support an injury to competition in the relevant market.").

---

[10] The allegation that Sylabs "has suffered actual damages . . . in an amount that greatly exceeds $75,000" appears elsewhere in the Complaint and are not asserted as part of the UCL claim. Compl. ¶¶ 220, 240, 259, 298, 320, 327. Such conclusory allegations also do not meet the UCL's "lost money or property" requirement, as Sylabs does not explain what was lost or how the loss occurred.

23

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 5:23-cv-00849-SVK

1

### 4.    Sylabs Fails to Plead "Fraudulent" Business Practices.

2      Sylabs also fails to state a claim under the "fraudulent" prong.  **First**, Sylabs' allegations of

3 "fraudulent" business practices fail to meet the heightened pleading requirements of Rule 9(b).  *See*

4 *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b)'s pleading standard

5 applies to the UCL).  The Complaint lacks specific allegations as to the circumstances of the alleged

6 fraudulent conduct, instead only containing vague and conclusory allegations.  *See e.g.*, *id.* ¶ 306

7 ("Defendants' conduct was clearly fraudulent and designed to commit cyber theft and

8 misappropriation of Sylabs' Trade Secrets, IP, Corporate Secrets, and/or other privileged and

9 protected information and to perpetrate a fraud on the USPTO.").

10      **Second**, Sylabs fails to allege any conduct that would cause the public to be deceived.  *See*

11 *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("[A] business practice is

12 fraudulent under the UCL if members of the public are likely to be deceived."); *Capella Photonics,*

13 *Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 (N.D. Cal. 2014) (dismissing UCL counterclaim

14 alleging "fraudulent" business practices predicated upon allegations of inequitable conduct before

15 the USPTO on grounds that counterclaim "d[id] not allege that members of the public have been

16 deceived by [the] alleged fraudulent misrepresentations about the strength of its patent rights");

17 *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) (trial court properly

18 sustained demurrer as to UCL claim brought under fraudulent prong where complaint failed to

19 allege that members of the public were likely to be deceived by alleged misconduct).

20      **Third**, there are no factual assertions that Defendants relied upon the alleged "fraudulent"

21 business practices.  "[A] UCL fraud plaintiff must allege [it] was motivated to act or refrain from

22 action based on the truth or falsity of a defendant's statement, not merely on the fact it was made."

23 *Kwikset*, 51 Cal. 4th at 327.  "[N]o California state court has addressed whether competitor

24 plaintiffs must plead their own reliance or whether pleading consumer reliance is sufficient for

25 fraudulent business practice claims brought by competitors[.]"  *Jerome's Furniture Warehouse v.*

26 *Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 148063, at *6 (S.D. Cal. Jan.

27 15, 2021) (cleaned up).  As a result, "there is a split of authority in the district courts in California

28 as to whether competitors must allege actual reliance under the fraudulent prong of the UCL but

24

1    the majority view is that a plaintiff must allege its own reliance and not the reliance of third parties."

2    *Id.* (cleaned up).  Sylabs' UCL claim fails under either view, as the Complaint lacks any allegations

3    of reliance by Sylabs or consumers.  Dismissal is therefore warranted.  *See L.A. Taxi Coop., Inc. v.*

4    *Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866-67 (N.D. Cal. 2015) ("[B]ecause Plaintiffs do not plead

5    their own reliance on Uber's allegedly false advertising, they lack standing to seek relief under the

6    UCL's fraud prong").

7        **G.    The Complaint Is Devoid of Allegations Regarding Mr. Buss' Conduct.**

8        The Complaint does not assert a single allegation about Mr. Buss' specific wrongdoing.  At

9    most, the Complaint alleges that Mr. Buss "conspired with other defendants to engage in cyber theft

10   and misappropriation of Sylabs' Trade Secrets; cyber theft of Sylabs' corporate secrets; cyber theft,

11   misappropriation, and unlawful use of privileged documents; unfair trade practices; and other

12   tortious conduct."  *Id.* ¶ 35.  This is the same conclusory allegation that Sylabs asserts against each

13   of the individual Defendants (*see id.* ¶¶ 30-34, 36-37) and fails to articulate the specific conduct in

14   which Mr. Buss allegedly engaged.  The remaining allegations specific to Mr. Buss identify him as

15   a party (Compl. ¶¶ 7, 24, 26, 35, 42) or impermissibly lump him with the other Defendants without

16   identifying any conduct specifically attributable to him (*id.* ¶¶ 325-28).

17       Thus, there are no allegations that "allow[] the [C]ourt to draw the reasonable inference that

18   [Mr. Buss] is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see*

19   *Wagda v. Town of Danville*, No. 16-cv-00488-MMC, 2016 WL 6160160, at *21 (N.D. Cal. Oct.

20   24, 2016) (plaintiff's "claim fails because the FAC does not allege any specific misconduct by

21   either said defendant in connection with the instant case"); *Hiramanek v. Clark*, No. C-13-0228

22   EMC, 2013 WL 12308479, at *2 (N.D. Cal. Mar. 25, 2013) ("[M]any of the claims are deficient in

23   that they fail to identify the specific wrongdoing that each defendant allegedly committed.").

24   **V.    CONCLUSION**

25       For these reasons, Defendants respectfully request the Court grant Defendants' Motion.

26

27

28

1  Dated:  August 28, 2023                          GOODWIN PROCTER LLP

2

3                                                    By:  */s/ Neel Chatterjee*

4                                                         Neel Chatterjee
                                                          *NChatterjee@goodwinlaw.com*
5                                                         Jennifer Briggs Fisher
                                                          *JFisher@goodwinlaw.com*
6                                                         Elizabeth J. Low
                                                          *ELow@goodwinlaw.com*
7                                                         Ariel E. Rogers
                                                          *ARogers@goodwinlaw.com*
8                                                         David Serati
                                                          *DSerati@goodwinlaw.com*
9
                                                     Attorneys for Defendants
10                                                   CTRL IQ, INC. d/b/a CIQ; GREGORY ROSE
                                                     a/k/a GREGORY M. KURTZER; JULIA
11                                                   ROSE a/k/a JULIA KURTZER; ROBERT
                                                     ADOLPH; MATTHEW HAYDEN; ERIN
12                                                   FONG; OPEN DRIVES, INC.; DAVID BUSS;
                                                     and MARLIN PRAGER
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 5:23-cv-00849-SVK

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3  United States District Court for the Northern District of California by using the CM/ECF system

4  on August 28, 2023.  I further certify that all participants in the case are registered CM/ECF users

5  and that service will be accomplished by the CM/ECF system.

6      I certify under penalty of perjury that the foregoing is true and correct.  Executed on August

7  28, 2023.

8

9                                 */s/ Neel Chatterjee*
                                    Neel Chatterjee

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
CASE NO. 5:23-cv-00849-SVK