**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net
Counsel of Record for Plaintiff, **SYLABS, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **GREGORY ROSE** a/k/a **GREGORY M.** ) <br> **KURTZER**, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. **5:23-cv-00849-SVK** <br><br> **SYLABS, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO FILE UNDER SEAL (ECF 38)** |

Plaintiff Sylabs, Inc. hereby opposes the motion to file under seal ("Motion") [ECF 38] filed by Defendants CTRL IQ, Inc. d/b/a CIQ; Gregory Rose a/k/a Gregory M. Kurtzer; Julia Rose a/k/a Julia Kurtzer; Robert Adolph; Matthew Hayden; Erin Fong; Marlin Prager; Open Drives, Inc.; and David Buss (collectively, "Defendants"). Specifically, Defendants seek to seal the Waiver, Release and Settlement Agreement ("Kurtzer Release") attached as Exhibit A to the Declaration of Gregory M. Kurtzer in Support of Motion to Dismiss [ECF 40-4] (currently under seal).

I.      **SUMMARY OF ARGUMENT IN OPPOSITION:**

The Defendants have no reasonable expectation of privacy regarding the Kurtzer Release because their legal counsel has already waived such expectation by disclosing the

Kurtzer Release to the public and attributed his and his clients' interpretation of its terms. (Decl. of Lepiscopo ¶ 2; Exh. 1 pp.3-4.)

More specifically, Defendants have already publicly disclosed the Kurtzer Release and have assigned a false interpretation to influence and mislead the public. It is only fair that the public gets to see the **entire** Kurtzer Release to make their own determination and to protect and inform investors who might invest in defendant CIQ. On the one hand, Defendants move to seal the Kurtzer Declaration so the public cannot see it, while on the other hand, Defendant's legal counsel, Neel Chatterjee, proclaimed in the press that the Kurtzer Declaration will serve to preclude all claims alleged against all Defendants:

> "Sylabs knew Mr Kurtzer was leaving the company, signed an agreement acknowledging that he started his new company with independently developed and open sourced technology, and agreed to waive any potential claims it could have against him and the other CIQ founders. We look forward to responding to the baseless allegations in court."

(Decl. of Lepiscopo ¶ 2; Exh. 1, pp. 3-4.)

Finally, for the Court's consideration, the other parties to the Release, Sylabs Holdings, LLC, and R-Stor, Inc., have provided their consent to the public disclosure and filing of the **entire** Release, unredacted, in the Court file. Thus, defendant Kurtzer is the only party to the Kurtzer Release who opposes such filing. (Decl. of Lepiscopo ¶ 3; Exhs. 2 and 3, respectively.)

## II.  RELEVANT ALLEGATIONS TO PROVIDE BACKGROUND AND CONTEXT:

On February 24, 2023, Sylabs, Inc. filed its civil complaint ("Complaint") in this action ("Action") was filed. [ECF 1.]

The following paragraphs are provided in opposition to the Motion and to provide the Court with context of the Action. If further detail is needed in order to assess the Motion, then review of Sylabs' Complaint [ECF 1] provides extensive details regarding the facts underlying Sylabs' federal and state claims.

Stated generally, high-performance computing industry ("HPC") refers to the computer science architecture of aggregating computing power in a way that delivers much higher performance than could be obtained from a typical desktop computer or workstation in order to solve large problems in, for example, science, engineering, medicine, or business. [ECF 1, ¶44.]

In 2018, Sylabs commenced development of technologies for the HPC industry, which is a technology that harnesses the power of supercomputers or computer clusters to solve complex problems requiring massive computation. Sylabs was specifically founded in order to invent and market value-added technology for the HPC industry. [ECF 1, ¶43 and ¶59.]

Sylabs' intellectual property ("IP") relates to high-performance computing—an industry with over $39 billion in annual revenues worldwide, which is expected to grow to over $74 billion by 2030. [ECF 1, ¶9.]

In order to provide the efficiency, security, and functionality that the HPC market required, Sylabs invented Singularity Image Format ("SIF") to create a digital container that holds pieces of software in a structured format that allows the programs to be portable and reproducible, as well as being secured through encryption. This is especially important for the development, creation, and sharing of intellectual property in collaborative environments or ones subject to higher levels of security classifications (*e.g.*, military, National Security Agency, etc.). [ECF 1, ¶72.]

Sylabs' SIF technology and strategy has successfully positioned the company as a global leader in secure, trusted, performance-focused container solutions. The capabilities that Sylabs has created are revolutionary and unique within the HPC industry, purposely and uniquely built to address some of the limits, shortcomings, and flaws within current container technologies. [ECF 1, ¶87.]

The following will generally describe the gravamen of this Action.

During the time period between March 1 through June 1 of 2020, the Defendants surreptitiously and unlawfully intruded into and accessed Sylabs' computer server to

delete files and steal all of Sylabs' IP and Trade Secrets that were under development and close to being submitted to the U.S. Patent and Trademark Office ("USPTO") for protection and prosecution, including downloading the contents of Sylabs' <u>entire</u> server ("Sylabs' Server"). [ECF 1, ¶110.]

Paragraphs 109-134 of the Complaint provide a detailed discussion of Defendants' acts of cyber theft, misappropriation, and unlawful use of Sylabs' IP and Trade Secrets, as well as other legally protected information, including, for example: corporate records; financial records; partner and joint venture records; customer lists; sales and potential sales lists, statements of work; purchase orders; invoices; marketing strategies, plans, and pricing; prospective investors list; HR records; employees' files; employees' private information; staff agreements; emails and correspondence; and privileged documents (collectively "Sylabs' Corporate Secrets") [ECF 1, ¶135].

It is clear that Defendants' cyber theft of Sylabs IP, Trade Secrets, and Corporate Secrets demonstrate that their strategy was to surreptitiously commandeer Sylabs' **entire** business and resources so that they in effect had an ongoing business without having to invest in research and development or pay a single penny to Sylabs for use of Sylabs' IP, Trade Secrets, or Corporate Secrets. [ECF 1, ¶¶ 109-134.]

The allegations of the Complaint establish a pattern of Defendants' criminal enterprise and conspiracy, which is currently ongoing and expanding [ECF 1, ¶¶ 135-178]. For example, through their cyber theft of Sylabs' IP, Trade Secrets, and Corporate Secrets, Defendants recently raised $26,000,000 in private investment capital, making a total of $33,000,000 raised. Furthermore, according to defendant Greg Kurtzer, defendant CIQ now has an enterprise valuation of $150,000,000—**this is actually Sylabs' enterprise value, as it is based on Sylabs' IP, Trade Secrets, and Corporate Secrets**. [ECF 1, ¶138.]

In addition to the aforementioned cyber theft, Defendants also perpetrated a fraud on the USPTO by unlawfully and fraudulently presenting Sylabs' technologies as their own

inventions, which was a product of their theft of Sylabs' IP, Trade Secrets, and Corporate Secrets. [ECF 1, ¶¶ 179-181.]

For example, one such technology stolen by the Defendants through their cyber theft was funded, developed, and invented by Sylabs, which is known as "Fuzzball." Generally, Fuzzball is Sylabs' IP and Trade Secret relating to value-added technology that creates a cluster of two differentiated software stacks. The first, Fuzzball **service**, is a cloud native service for workflow management and orchestration. The second, Fuzzball **agent**, is a small, purpose-built systems service that executes workflows on computer nodes. [ECF 1, ¶¶ 91-94].

Another example of a technology stolen by the Defendants through their cyber theft was funded, developed, and invented by Sylabs, which is known as "Armored Containers." As the name implies, Sylabs' Armored Containers technology expands its SIF technology in a way that allows increased security in deployments to Cloud environments as well as on-field deployed devices. [ECF 1, ¶¶ 99-101].

As to its development, in June 2019, Sylabs invented and commenced the development and design of SIF technology. For purposes of context, it was on June 7, 2019, that Sylabs filed its SIF U.S. Patent Application (No. 16/435,251) with the USPTO. [ECF 1, ¶ 100]. Then, on May 2, 2023, the USPTO issued U.S. Patent Number US 11,640,372 B2 to Sylabs for its SIF technology.

Through their cyber theft, the Defendants utilized Sylabs' post and pre-patented SIF technology without disclosing Sylabs' prior art in its SIF technology. By failing to disclose such prior art in their patent applications, the Defendants perpetrated an intentional fraud upon the USPTO, which is proscribed by 37 CFR 1.56(a) and which in its relevant part provides (emphasis added) [ECF 1, ¶ 131]:

> "However, no patent will be granted on an application in connection with which **fraud on the Office was practiced or attempted** or the duty of disclosure was violated through bad faith or intentional misconduct."

Defendants violated 37 CFR 1.56 by breaching their duty of candor, disclosure, and good faith by perpetrating a fraud on the USPTO, to wit [ECF 1, ¶ 132]:

    a.    fraudulently omitting prior art, *i.e.*, Sylabs' Trade Secrets that Defendants obtained and misappropriated through cyber theft;

    b.    fraudulently representing that SIF containers, Fuzzball, and Armored Containers were their IP when they were actually invented and owned by Sylabs; and

    c.    fraudulently representing they were the inventors of the IP whereas the actual inventors were Sylabs and its relevant employees.

For a point of reference, Figure 10 on page 43 of the Complaint sets forth the six (6) U.S. Patents that the Defendants procured through theft of Sylabs' SIF, Fuzzball, and Armored Containers technologies (*see* ECF 1, 180, pp. 42-43):

| SYLABS' TRADE SECRET | KURTZER, et al.'s THEFT: PATENT # | PROOF THAT PATENT IS SYLABS' TRADE SECRET |
|---|---|---|
| Fuzzball | US 10,970,113 | As set forth in greater detail in Sections V-VIII of the Complaint (ECF 1, pp. 7-43), the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date.<br><br>In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Fuzzball | US 11,099,893 | " " |
| Fuzzball | US 11,310,342 | " " |
| Armored Containers | US 11,055,428 | The Armored Containers a based on Sylabs' prior trade secrets in the SIF technology.<br><br>As set forth in greater detail in Sections V-VIII of the Complaint (ECF 1, pp. 7-43), the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as July of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date. |

| | | | |
|---|---|---|---|
| Armored Containers | US 11,163,902 | " | " |
| Armored Containers | US 11,321,064 | " | " |
| | | | |

**FIGURE 10**: Defendants' Patents Procured Through Theft of Sylabs' Trade Secrets

As alleged in Sylabs' Complaint, the foregoing cyber theft gives rise to the following counts under federal and state law (*see* ECF 1, Counts I-XI, pp. 58-87, ¶¶ 208-359):

    a.    Count I: Violation of Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.;

    b.    Count II: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

    c.    Count III: Violation of California Uniform Trade Secrets Act, California Civil Code §§ 3426 et seq.;

    d.    Count IV: Violation of Civil RICO, 18 U.S.C. § 1962(c);

    e.    Count V: Violation Civil RICO, 18 U.S.C. § 1962(d);

    f.    Count VI: Civil Conspiracy, Judicial Council of California Civil Jury Instructions (2022 edition) ("CACI"), CACI No. 3600;

    g.    Count VII: Violation of California Unfair Trade Practices Act, Cal. Bus & Prof. Code § 17200;

    h.    Count VIII: Breach of Fiduciary Duty, CACI No. 4400;

    i.    Count IX: Aiding & Abetting Breach of Fiduciary Duty;

    j.    Count X: Unjust Enrichment, CACI No. 4410; and

    k.    Count XI: Conversion, CACI No. 2100.

Sylabs has an overwhelming amount of documentary evidence, including extensive computer drive audit logs ("Audit Logs") (explained below) evincing the Defendants' unlawful intrusions into Sylabs' Server and cyber theft of Sylabs' IP, Trade Secrets, and Corporate Secrets.

Part of the evidence utilizes a forensic tool known as the audit trail, which is comprised of audit logs that provide detailed information about an individual's access and operations within a computer server.[1]

The Information Technology Laboratory at the National Institute of Standards and Technology, U.S Department of Commerce ("NIST") provides the following guidance regarding audit trails (emphasis added):

> "AUDIT TRAILS
>
> **Audit trails maintain a record of system activity** both by system and application processes and **by user activity** of systems and applications.
> In conjunction with appropriate tools and procedures, audit trails can assist in detecting security violations, performance problems, and flaws in applications.
> BENEFITS AND OBJECTIVES
>
> Audit trails can provide a means to help accomplish several security-related objectives, including individual accountability, **reconstruction of events** (actions that happen on a computer system), intrusion detection, and problem analysis."[2]

Throughout the country, the FBI utilizes computer forensics through its Regional Computer Forensics Laboratories for investigations into various areas of criminal activity, including trade secret theft and theft or destruction of intellectual property.[3] In fact, the FBI's use of computer forensics for investigation of cyber theft like those committed by the Defendants in this Action is ubiquitous and indispensable:

> " 'Without digital forensics, it would be hard to get a conclusion in a lot of cases,' said Walsh, who noted the very nature of modern communications makes the work of the FBI more challenging. 'Suspects aren't talking on the phone anymore and our technical techniques are not working as well because so much more is encrypted. I pull in the [Forensics Laboratory] very early in my investigative strategy.' "[4]

---

[1] *See, generally:* https://csrc.nist.gov/glossary/term/audit_trail. [ECF 1, ¶ 111.]
[2] *See:* https://csrc.nist.gov/csrc/media/publications/shared/documents/itl-bulletin/itlbul1997-03.txt. [ECF 1, ¶ 112.]
[3] *See:* https://www.rcfl.gov/. [ECF 1, ¶ 114.]
[4] *See:* https://www.fbi.gov/news/stories/rcfls-follow-the-modern-evidence-trail-081219. [ECF 1, ¶ 115.]

Finally, in this Action, Sylabs' Audit Logs evince and memorialize each and every act of cyber theft perpetrated by the Defendants, all of which contained the following information for each and every unlawful access to Sylabs' server: (a) the identity of the person accessing, (b) the date and time of access, (c) what was accessed, (d) what files were deleted, (e) what files were renamed, (f) what files were download, (g) what directories were created for deletion and copying purposes, (h) the specific emails utilized to access Sylabs' server, and so on. [ECF 1, ¶¶ 111-116].

### III.    THE MOTION SHOULD BE DENIED:

Based on the foregoing, Sylabs respectfully requests the Court to deny Defendants' Motion to seal the Kurtzer Release.

First, there are four parties to the Kurtzer Release, three of whom have consented to the public disclosure and filing of the Kurtzer Release: plaintiff Sylabs, Sylabs Holdings, LLC, and R-Stor, Inc. (Decl. of Lepiscopo ¶ 3; Exhs. 2 and 3, respectively.)

Second, on the one hand, Defendants move to seal the Kurtzer Declaration so the public cannot see it, while on the other hand claiming to the public it is a complete defense to the entire Complaint. (Decl. of Lepiscopo ¶ 2; Exh. 1, pp. 3-4.)

Finally, this Action concerns the public interest and prospective investors who might be in the process of investing in defendant CIQ. Accordingly, Defendants' motion to seal the Kurtzer Declaration is not in the public's interest and, therefore, should be denied.

Dated:  August 30, 2023.                            **LEPISCOPO & ASSOCIATES LAW FIRM**

By:  /s/ Peter D. Lepiscopo
  **PETER D. LEPISCOPO**
  *Counsel of Record*
  Attorneys for Plaintiff, **SYLABS, INC.**

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on August 30, 2023. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on August 30, 2023.

                                                LEPISCOPO & ASSOCIATES LAW FIRM

                                                By: /s/ Peter D. Lepiscopo
                                                        **PETER D. LEPISCOPO**
                                                        *Counsel of Record*
                                                        Attorneys for Plaintiff, **SYLABS, INC.**