**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net
Counsel of Record for Plaintiff, **SYLABS, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, | Case No. **5:23-cv-00849-SVK** |
| Plaintiff, | **SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)** |
| v. | |
| **GREGORY ROSE** a/k/a **GREGORY M. KURTZER**, et al., | |
| Defendants. | Date:   October 3, 2023<br>Time:   10:00 am<br>Courtroom:  6<br>Judge:   Honorable Susan van Keulen |

Filed/Lodged Concurrently with:
1.    Evidentiary Objections to Exhibit A (Kurtzer Release) to Declaration of Kurtzer
2.    Opposition to Defendants' Request for Judicial Notice
3.    Declaration of Peter D. Lepiscopo
4.    Declaration of Christopher Tarbell
5.    Sylabs' Request for Judicial Notice
6.    Exhibits 1 through 37
7.    [*Proposed*] Order Denying Motion
8.    [*Proposed*] Order Sustaining Objections to and Excluding Kurtzer Release

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES.................................................................. iv

INTRODUCTION & SUMMARY OF OPPOSITION...................................... 1

LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS.............. 3

RELEVANT ALLEGATIONS TO PROVIDE BACKGROUND
AND CONTEXT............................................................................ 4

ARGUMENT.................................................................................. 7

I.     THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY
       THE MOTION TO DISMISS BECAUSE THE ISSUES RELATING
       TO COMPUTER FORENSICS, PATENTS, HIGH-TECH
       SUPERCOMPUTER TECHNOLOGY, AND PATENT LAW ARE
       HIGHLY COMPLEX, WHICH REQUIRES EXPERT WITNESS
       TESTIMONY, AND THE FACTS ARE DISPUTED, ALL OF
       WHICH MAY NOT BE RESOLVED THROUGH A RULE 12(b)(6)
       MOTION TO DISMISS............................................................. 7

II.    THE MOTION TO DISMISS MUST BE DENIED BECAUSE THIS
       COURT MAY NOT CONSIDER THE KURTZER RELEASE AS IT
       IS OUTSIDE THE FOUR CORNERS OF THE SYLABS
       COMPLAINT, AND, THEREFORE, IS INADMISSIBLE AND
       SHOULD BE EXCLUDED.......................................................... 9

III.   THE MOTION TO DISMISS MUST BE DENIED BECAUSE THE
       KURZTER RELEASE IS UNENFORCEABLE TO RELEASE
       DEFENDANTS FROM THE CLAIMS ALLEGED IN SYLABS'
       COMPLAINT AS IT IS AGAINST STATE AND FEDERAL
       PUBLIC POLICES.................................................................. 11

IV.    THE MOTION TO DISMISS MUST BE DENIED BECAUSE THE
       ALLEGATIONS OF THE COMPLAINT AND THE EVIDENCE
       PROVE THAT THE KURTZER RELEASE IS IN DISPUTE, AND,
       THEREFORE, DISMISSAL IS PRECLUDED BY RULE 12(b)(6)...... 14

LEPISCOPO & ASSOCIATES LAW FIRM

1

## <u>TABLE OF CONTENTS—Cont.</u>

2
<u>Pages</u>

3

V.    PLAINTIFF HAS ALLEGED FACTS WITH SUFFICIENT
      PARTICULARITY TO ESTABLISH THAT COUNTS I THROUGH
      V OF THE COMPLAINT SATISFY THE PLEADING
      REQUIREMENTS OF RULE 8(a) THERBY REQUIRING THIS
      COURT TO DENY THE
      MOTION........................................................................    16

      A.    Sylabs' Complaint Alleges Facts With Sufficient
            Particularity To Establish Count I  For Violations Of
            The Federal Defend Trade Secrets Act ("DTSA") And
            Count III For Violations of California Uniform Trade
            Secrets Act...............................................    17

            1.    The Kurtzer Release Does Not Release Defendants From
                  Any Of Their Acts Of Cyber Theft.........................    17

            2.    Sylabs' Complaint Complies With Rule 8(a) By Alleging
                  With More Than Sufficient Particularity That Defendants
                  Engaged In A Conspiracy To And Actually Carried Out
                  The Cyber Theft Of Sylabs' Trade Secrets And Intellectual
                  Property...................................................    19

            3.    Sylabs' Complaint Complies With Rule 8(a) By Alleging
                  With More Than Sufficient Particularity That Sylabs Did
                  Not Forfeit Protection Of Its Trade Secrets And Intellectual
                  Property...................................................    20

## <u>TABLE OF CONTENTS—Cont.</u>

**PAGES**

B.   SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT
     PARTICULARITY TO ESTABLISH COUNT II FOR VIOLATIONS OF
     THE FEDERAL COMPUTER FRAUD AND ABUSE ACT..................... 21

     1.   Sylabs' Claim In Count II For Violations Of CFAA Are
          Not Time Barred................................................. 21

     2.   Sylabs' Complaint Alleges Facts With Sufficient
          Particularity To Establish Violations Of CFAA.................... 21

C.   SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT
     PARTICULARITY TO ESTABLISH COUNT IV FOR VIOLATIONS OF
     CIVIL RICO, 18 U.S.C. § 1962(**c**) AND COUNT V FOR
     VIOLATIONS OF CIVIL RICO, 18 U.S.C. § 1962(**d**)........................ 22

D.   SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT
     PARTICULARITY TO ESTABLISH COUNTS I-V AGAINST DAVID
     BUSS................................................................. 23

VI.   SYLABS REQUESTS LEAVE TO AMEND......................................... 25

CONCLUSION.................................................................... 25

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF AUTHORITIES

**Pages**

C̲ASES:

*Angelica Textile Services, Inc. v. Park*,
220 Cal.App.4th 495, 506 (2013).................................................................. 2

*Austin v. Terhune*,
367 F.3d 1167 (9th Cir. 2004).................................................................... 3

*Breier v. Northern California Bowling Proprietors' Association*,
316 F.2d 787 (1963)................................................................................ 25

*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court*,
50 Cal.3d 658 (1990).............................................................................. 12

*Carmichael v. Nissan Motor Acceptance Corp.*,
291 F.3d 1278 (11th Cir. 2002)................................................................ 21

*City of Santa Barbara v. Superior Court*,
41 Cal.4th 747 (2007)............................................................................. 12

*Conley v. Gibson*,
355 U.S. 41 (1957).................................................................................... 4

*Davis v. Scherer*,
468 U.S. 183 (1984).............................................................................. 9, 25

*Fontana v. Haskin*,
262 F.3d 871 (9th Cir. 2001)...................................................................... 4

*Galbraith v. County of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002).................................................................... 3

*Graylee v. Castro*,
52 Cal.App.5th 1107 (2020)..................................................................... 12

*Hishon v. King & Spalding*,
467 U.S. 69 (1984).................................................................................... 4

*Hospital Bldg. Co. v. Rex Hospital Trustees*,
425 U.S. 738 (1976).................................................................................. 3

*In re Southeast Banking Corp.*,
69 F.3d 1539 (11th Cir. 1995).................................................................. 21

*In re Toll Rds. Litig.*,
2018 U.S. Dist. LEXIS 226961................................................................... 9

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,
499 F.3d 1048 (9th Cir. 2007).................................................................. 10

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003)...................................................................... 3

*Jenkins v. McKeithen*,
395 U.S. 411 (1969).................................................................................. 3

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

iv

L̲EPISCOPO & ASSOCIATES LAW FIRM

1

## **TABLE OF AUTHORITIES**

2

**Pages**

3
*Jones v. Greninger,*
    188 F.3d 322 (5th Cir. 1999)................................................. 3

4
*Kaufman v. Goldman,*
    195 Cal.App.4th 734 (2011)................................................ 12

5
*McClure v. McClure,*
    100 Cal. 339 (1893)........................................................... 12

6
*Mobley v. McCormick,*
    40 F.3d 337 (10th Cir. 1994)........................................ 10, 11

7

8
*Monster Energy Co. v. Schechter,*
    7 Cal.5th 781 (2019)......................................................... 12

9
*Omar v. Lindsey,*
    334 F.3d 1246 (11th Cir. 2003)........................................ 21

10

11
*Osumi v. Sutton,*
    151 Cal.App.4th 1355 (2007)............................................ 12

12
*Palmer v. Roosevelt Lake Log Owners Ass'n,*
    651 F.2d 1289 (9th Cir. 1981)............................................. 4

13
*Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.,*
    482 F.2d 1086 (9th Cir. 1973)..................................... 2, 8, 9

14
*Scheuer v. Rhodes,*
    416 U.S. 232 (1974).................................................. 3, 9, 11

15

16
*Schneider v. California Dept. of Corr.,*
    151 F.3d 1194 (9th Cir. 1998)............................................. 3

17
*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506 (2002)............................................................ 4

18
*Timney v. Lin,*
    106 Cal.App.4th 1121 (2003)............................................ 12

19
*Tregenza v. Great American Communications Co.,*
    12 F.3d 717 (7th Cir. 1993)............................................... 21

20

21
*Zamora v. Clayborn Contracting Group, Inc.,*
    28 Cal.4th 249 (2002)...................................................... 12

## STATUTES & CODES:

22
18 U.S.C. § 1030............................................................... 21, 22

23
18 U.S.C. § 1831 *et seq*..................................................... 17, 22

24
18 U.S.C. § 1962(c)...................................................... 22, 23, 25

25

26

27

28

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF AUTHORITIES

**Pages**

37 CFR 1.56..................................................................................  6

California Civil Code §§ 3426 et seq...................................................  13

California Penal Code § 502(a)..........................................................  18

**RULES:**

Federal Code of Civil Procedure, Rule 8(a)........................................  *passim*

Federal Code of Civil Procedure, Rule 12(b)(6)..................................  *passim*

**TREATISES & SECONDARY MATERIALS:**

Report of the U.S. Senate's Committee on the Judiciary,
   S. Rep. 114-220, at 3 (March 7, 2016)............................................  13

LEPISCOPO & ASSOCIATES LAW FIRM

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**
vi

**INTRODUCTION & SUMMARY OF OPPOSITION**

Plaintiff Sylabs, Inc. ("Sylabs") hereby opposes the Federal Rule of Civil Procedure, Rule 12(b)(6) motion to dismiss ("Motion") (ECF 40) filed by Defendants CTRL IQ, Inc. d/b/a CIQ; Gregory Rose a/k/a Gregory M. Kurtzer; Julia Rose a/k/a Julia Kurtzer; Robert Adolph; Matthew Hayden; Erin Fong; Marlin Prager; Open Drives, Inc.; and David Buss (collectively, "CIQ Defendants" or "Defendants"). Specifically, Defendants seek dismissal of the complaint ("Complaint" or "Sylabs' Complaint") (ECF 1) based on the following grounds:

1. Counts I-XI ("Claims") in the Complaint have been released through the Waiver, Release and Settlement Agreement ("Kurtzer Release"), which is attached as Exhibit A to the Declaration of Gregory M. Kurtzer in Support of Motion to Dismiss (ECF 40-4) (currently filed under seal).

2. The Claims fail to allege facts sufficient to state claims for relief.

As a recurring theme throughout the Motion, Defendants are confusing their discovery rights with the scope of a Rule 12(b)(6) motion and the liberal pleading standards of Rule 8(a). All of Defendants' arguments regarding lack of particularity can be clarified through requests for admission, interrogatories, requests for documents, and depositions. As will be discussed below, neither Rule 12(b)(6) nor Rule 8(a) requires Sylabs to include every single fact about every count in order to survive the Motion. Discovery is the proper vehicle for discovering the existence or non-existence of material facts, not a Rule 12(b)(6) motion.

In light of the Defendants' argument that California Uniform Trade Secrets Act preempts other state law claims,[1] Sylabs requests this Court to consider the State Law Claims **separate and independent** of the claims for cyber theft of trade secrets and

---

[1] The counts based on state law include: Count VI for Civil Conspiracy; Count VII for Violations of California Unfair Competition Law; Count VIII for Breach of Fiduciary Duty—Cyber Theft & Fraud By Officer & Director; Count IX for Aiding and Abetting Breach of Fiduciary Duty—Cyber Theft & Fraud by Officer & Director; Count X for Unjust Enrichment; and Count XI for Conversion.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

1

LEPISCOPO & ASSOCIATES LAW FIRM

intellectual property. This is because Defendants' expansive theory of preemption is inconsistent with California law and therefore fails. The CUTSA "does not displace noncontract claims that, although related to trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495, 506 (2013). Here, Defendants' unlawful conduct extended far beyond just Sylabs' Trade Secrets and Intellectual Property, and included **separate and distinct** corporate records, financial records, collaboration records, customer lists, sales lists, statements of work, purchase order, marketing, HR records, and employees' files, all of which Defendants conspired to, and aided and abetted Co-Conspirators to steal for their own use and unjust gain. (Complaint ¶¶ 117-120 and 133-135). Accordingly, the preemption theory does not serve to dismiss the State Law Claims. *Id.*; Rule 12(b)(6).

In this Opposition, Sylabs will argue as follows. First, the issues presented in this Action are not only highly complex but also disputed (see Section IV, *infra*) and require expert witness testimony. Accordingly, this Court should exercise its discretion to deny the Motion in its entirety. *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, 482 F.2d 1086, 1093 (9th Cir. 1973) (*see* Section I, *infra*).

Second, this Court may <u>not</u> consider the Kurtzer Release as it is **outside** of the four corners of Sylabs' Complaint, and, therefore, inadmissible and should be excluded (*see* Section II, *infra*).[2]

Third, the Kurtzer Release should <u>not</u> be considered by this Court because it is against state and federal public policies (*see* Section III, *infra*).

---

[2]    Sylabs has concurrently filed (a) Opposition to Defendants' Request for Judicial Notice and (b) Evidentiary Objections to the Kurtzer Release, and, therefore, this Court should <u>not</u> take judicial notice of the Kurtzer Release and sustain the objections to the Kurtzer Release and exclude same from consideration.

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

2

LEPISCOPO & ASSOCIATES LAW FIRM

Lepiscopo & Associates Law Firm

Fourth, the allegations of the Complaint and the evidence prove that the Kurtzer Release is in dispute, and, therefore, dismissal is precluded by Rule 12(b)(6) (*see* Section IV, *infra*).

Fifth, Sylabs has alleged each count with sufficient particularity in compliance with Rule 8(a) and Rule 12(b)(6) (*see* Section V, *infra*).

Finally, if any count or counts are deemed by the Court to be deficient, then leave to amend should be granted (*see* Section VI, *infra*).

### LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. California Dept. of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

As aptly put by the Fifth Circuit, at this stage of the litigation, this Court must simply determine whether the allegations in the Complaint are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Ninth Circuit has expounded upon this principle:

> "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely **but that is not the test**."

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (emphasis added) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

3

Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting *Fontana v. Haskin*, 262 F.3d 871, 977 (9th Cir. 2001)).

As to the technical drafting of federal complaints, a simplified pleading standard applies to all civil actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Specifically, pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Further, each allegation "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at 512.

Finally, a motion to dismiss for failure to state a claim should <u>not</u> be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See e.g. Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).

## RELEVANT ALLEGATIONS TO PROVIDE BACKGROUND AND CONTEXT

High-performance computing industry ("HPC") refers to the computer science architecture of aggregating computing power that delivers much higher performance than could be obtained from a typical desktop computer or workstation in order to solve large problems in, for example, science, engineering, medicine, or business. (Complaint ¶ 44.)

In 2018, Sylabs commenced development of technologies for the HPC industry. Sylabs was specifically founded in order to invent and market value-added technology for the HPC industry, which as over $39 billion in annual revenues worldwide, which is expected to grow to over $74 billion by 2030. (Complaint ¶¶ 9, 43 and 59.)

In order to provide the efficiency, security, and functionality that the HPC market required, Sylabs invented Singularity Image Format ("SIF") to create a digital container that holds pieces of software in a structured format that allows the programs to be portable and reproducible, as well as being secured through encryption. This is especially important for the development, creation, and sharing of intellectual property in collaborative

LEPISCOPO & ASSOCIATES LAW FIRM

environments or ones subject to higher levels of security classifications (*e.g.*, military, National Security Agency, etc.). (Complaint ¶72.)

During the time period between March 1 through June 1 of 2020, Defendants surreptitiously and unlawfully intruded into and accessed Sylabs' computer server to delete files and steal all of Sylabs' IP and Trade Secrets that were under development and close to being submitted to the U.S. Patent and Trademark Office ("USPTO") for protection and prosecution, including downloading the contents of Sylabs' <u>entire</u> server ("Sylabs' Server"). (Complaint ¶110.)

Paragraphs 109-134 of the Complaint provide a detailed allegations of Defendants' acts of cyber theft, misappropriation, and unlawful use of Sylabs' IP and Trade Secrets, as well as other legally protected information ("Corporate Secrets") (Complaint ¶135).

It is clear that Defendants' cyber theft demonstrates that their strategy was to surreptitiously commandeer Sylabs' **entire** business and resources so that they in effect had an ongoing business without having to invest in research and development or pay a single penny to Sylabs. (Complaint ¶¶ 109-134.)

The allegations of the Complaint establish a pattern of Defendants' criminal enterprise and conspiracy, which is currently ongoing and expanding (Complaint ¶¶ 135-178). For example, through their cyber theft, Defendants recently raised $26,000,000 in private investment capital, making a total of $33,000,000 raised. Furthermore, according to defendant Greg Kurtzer, defendant CIQ now has an enterprise valuation of $150,000,000. (Complaint ¶138.)

In addition to the aforementioned cyber theft, Defendants also perpetrated a fraud on the USPTO by unlawfully and fraudulently presenting Sylabs' technologies as their own inventions, after having stolen Sylabs' IP, Trade Secrets, and Corporate Secrets. (Complaint ¶¶ 179-181.) For example, one such technology stolen by the Defendants through their cyber theft, which was funded, developed, and invented by Sylabs, is known as "Fuzzball." (Complaint ¶¶ 91-94.)

LEPISCOPO & ASSOCIATES LAW FIRM

Another example of a technology stolen by the Defendants through their cyber theft, which was funded, developed, and invented by Sylabs, is known as "Armored Containers." As the name implies, Sylabs' Armored Containers technology expands its SIF technology in a way that allows increased security in deployments to Cloud environments as well as on-field deployed devices. (Complaint ¶¶ 99-101).

As to its development, in June 2019, Sylabs invented and commenced the development and design of its SIF technology. For purposes of context, it was on June 7, 2019, that Sylabs filed its SIF U.S. Patent Application (No. 16/435,251) with the USPTO. (Complaint ¶ 100). Then, on May 2, 2023, the USPTO issued U.S. Patent Number US 11,640,372 B2 to Sylabs for its SIF technology.

Through their cyber theft,  Defendants utilized Sylabs' post and pre-patented SIF technology without disclosing Sylabs' prior art in its SIF technology. By failing to disclose such prior art in their patent applications, the Defendants perpetrated an intentional fraud upon the USPTO, which is proscribed by 37 CFR 1.56(a) (*see* Complaint ¶ 131): "However, no patent will be granted on an application in connection with which **fraud on the Office was practiced or attempted** or the duty of disclosure was violated through bad faith or intentional misconduct." Defendants violated 37 CFR 1.56 by breaching their duty of candor, disclosure, and good faith by perpetrating a fraud on the USPTO, to  wit (Complaint ¶ 132): fraudulently omitting prior art, *i.e.*, Sylabs' Trade Secrets that Defendants obtained and misappropriated through cyber theft; fraudulently representing that SIF containers, Fuzzball, and Armored Containers were their IP when they were actually invented and owned by Sylabs; and fraudulently representing that they were the inventors of the IP whereas the actual inventors were Sylabs and its relevant employees.

For a point of reference, Figure 10 on page 43 of the Complaint sets forth the six (6) U.S. Patents that the Defendants procured through theft of Sylabs' SIF, Fuzzball, and Armored Containers technologies (*see* Complaint, 180, pp. 42-43).

Sylabs has an overwhelming amount of documentary evidence, including extensive computer drive audit logs ("Audit Logs") (explained below) evincing the Defendants'

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

**6**

Lepiscopo & Associates Law Firm

unlawful intrusions into Sylabs' Server and cyber theft of Sylabs' IP, Trade Secrets, and Corporate Secrets. Part of the evidence utilizes a forensic tool known as the audit trail, which is comprised of audit logs that provide detailed information about an individual's access and operations within a computer server[3]:

> "AUDIT TRAILS
>
> **Audit trails maintain a record of system activity** both by system and application processes and **by user activity** of systems and applications. In conjunction with appropriate tools and procedures, audit trails can assist in detecting security violations, performance problems, and flaws in applications.
>
> BENEFITS AND OBJECTIVES
>
> Audit trails can provide a means to help accomplish several security-related objectives, including individual accountability, **reconstruction of events** (actions that happen on a computer system), intrusion detection, and problem analysis."[4]

Throughout the country, the FBI utilizes computer forensics through its Regional Computer Forensics Laboratories for investigations into various areas of criminal activity, including trade secret theft and theft or destruction of intellectual property.[5] In fact, the FBI's use of computer forensics for investigation of cyber thefts like those committed by the Defendants in this Action is ubiquitous and indispensable:

> " 'Without digital forensics, it would be hard to get a conclusion in a lot of cases,' said Walsh, who noted the very nature of modern communications makes the work of the FBI more challenging. 'Suspects aren't talking on the phone anymore and our technical techniques are not working as well because so much more is encrypted. I pull in the [Forensics Laboratory] very early in my investigative strategy.' "[6]

---

[3]   *See, generally:* https://csrc.nist.gov/glossary/term/audit_trail. (ECF 1, ¶ 111.)
[4]   *See:* https://csrc.nist.gov/csrc/media/publications/shared/documents/itl-bulletin/itlbul1997-03.txt. (ECF 1, ¶ 112.)
[5]   *See:* https://www.rcfl.gov/. (ECF 1, ¶ 114.)
[6]   *See:* https://www.fbi.gov/news/stories/rcfls-follow-the-modern-evidence-trail-081219. (ECF 1, ¶ 115.)

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

7

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

Finally, in this Action, Sylabs' Audit Logs evince and memorialize each and every act of cyber theft perpetrated by the Defendants, all of which contained the following information for each and every unlawful access to Sylabs' server: (a) the identity of the person accessing, (b) the date and time of access, (c) what was accessed, (d) what files were deleted, (e) what files were renamed, (f) what files were download, (g) what directories were created for deletion and copying purposes, (h) the specific emails utilized to access Sylabs' server, and so on. (Complaint ¶¶ 111-116; Decl. of Tarbell ¶¶ 11-116.)

## ARGUMENT

**I.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE MOTION TO DISMISS BECAUSE THE ISSUES RELATING TO COMPUTER FORENSICS, PATENTS, HIGH-TECH SUPERCOMPUTER TECHNOLOGY, AND PATENT LAW ARE HIGHLY COMPLEX, WHICH REQUIRES EXPERT WITNESS TESTIMONY, AND THE FACTS ARE DISPUTED, ALL OF WHICH MAY NOT BE RESOLVED THROUGH A RULE 12(b)(6) MOTION TO DISMISS.**

Once this Court has had the opportunity to review the Motion and supporting and opposing papers, the Court should quickly conclude that the disputed factual issues, complex forensic, technology, and patent issues, and the required expert testimony, require these matters to be placed before a trier of fact **during trial** not decided in a Rule 12(b)(6) motion to dismiss. Specifically, based on the fact that Sylabs' Complaint alleges complex issues of computer forensics, patents, high-tech supercomputer technology, patent law, etc., all of which require expert witness testimony, this Court should deny the Motion in its entirety for discretionary reasons. *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, 482 F.2d 1086 (9th Cir. 1973) ("*Safe Flight*").

*Safe Flight* was a patent infringement case in which the defendants asserted various defenses, including patent invalidity. The parties filed cross-motions for partial summary judgment, which the district court denied because the patent issues were so highly complex, they should be handled in a trial. The Ninth Circuit affirmed the denial for those reasons:

> "The factual premises of Safe Flight's motion, and of MDC's opposition
> thereto, are highly complex. The district court did not deny the motion

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

8

LEPISCOPO & ASSOCIATES LAW FIRM

because it was convinced that the motion was without merit, but because the issue presented was so complicated the court did not wish to dispose of it on a motion for partial summary judgment. In effect, the denial was without prejudice. Under the circumstances we believe this was a judicious way to deal with the matter."

*Id*. at 1093.

Provided for guidance only, the Central District of California applied *Safe Flight* in a similarly complex case:

"Aside from these discovery disputes, the scope of the legal and factual issues involved in the TCA motion is unwieldy, a sentiment expressed by counsel for Plaintiffs and Defendants at the hearing. When issues are particularly complex, courts may determine that summary judgment isn't the proper method to dispose of claims, and may deny summary judgment on those grounds."

*In re Toll Rds. Litig*., 2018 U.S. Dist. LEXIS 226961, \*33 (C.D. Cal. 2018) ("*Toll Roads*").

In this Action, the issues presented are not only highly complex like the ones in *Safe Flight* and *Toll Roads*, but also disputed and require expert testimony that has not and cannot be presented in this Rule 12(b)(6) motion to dismiss. Accordingly, this Court should deny the Motion in its entirety on this ground alone.

## II.    THE MOTION TO DISMISS MUST BE DENIED BECAUSE THIS COURT MAY NOT CONSIDER THE KURTZER RELEASE AS IT IS OUTSIDE THE FOUR CORNERS OF THE SYLABS COMPLAINT, AND, THEREFORE, IS INADMISSIBLE AND SHOULD BE EXCLUDED.

It is well established in Rule 12(b)(6) motions that the scope of review concerns the allegations contained within the **four corners** of the Complaint. This Court, in ruling on a motion to dismiss, must accept Sylabs' well pleaded facts as true, and construe Sylabs' Complaint in the light most favorable to Sylabs. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of

the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

In support of their Motion, Defendants have submitted a document <u>not</u> attached to Sylabs Complaint—the Kurtzer Release. In deciding the Motion, this Court may <u>not</u> consider the Kurtzer Release. First, the Kurtzer Release is a matter outside the four corners of Sylabs' Complaint. Specifically, unlike motions for summary judgment, a Rule 12(b)(6) motion precludes this Court from considering materials outside Sylabs' Complaint to be utilized in support of the Motion, in this case the Kurtzer Release. *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("*Intri-Plex*").

Here, for purposes of Rule 12(b)(6), the Kurtzer Release is simply an agreement that is not attached to, discussed, alluded to, or raised in Sylabs' Complaint. Of course, if, for example, the Kurtzer Release was a court order or a stipulation, declaration, or other pleading filed in a state or federal court, then it might be subject to a court's consideration through judicial notice (assuming it was relevant). For example, in *Intri-Plex*, the defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted because of a claim that had been previously litigated and dismissed with prejudice and was, therefore, barred by the doctrine of *res judicata*. In support of the Rule 12(b)(6) motion the defendant filed a request for judicial notice of (1) the filed state court complaint, (2) the filed stipulation regarding the protective order in state court, and (3) a filed request for dismissal of its state court complaint with prejudice. *Id*. at 1051-1052. All three documents were judicially noticed in support of the motion, which resulted in the court dismissing the claim as barred by *res judicata*. *Id*.

Unlike the **court-filed** documents in *Intri-Plex*, the Kurtzer Release was not filed in or approved by any state or federal court. It is simply a document outside Sylabs' Complaint that Defendants are attempting to improperly introduce into this Action at the improper stage of this Action. This Court should <u>not</u> consider the Kurtzer Release. *Id*.; Rule 12(b)(6).

LEPISCOPO & ASSOCIATES LAW FIRM

Second, this Court may <u>not</u> take judicial notice of the Kurtzer Release because it is neither attached to nor referenced in Sylabs' Complaint, and, therefore, the incorporation doctrine is inapplicable. Defendants admit this but incorrectly posit, "And while the Complaint does not expressly cite the Release, the document is integral to Sylabs' claims as its very terms limit Sylabs' ability to bring claims against Gregory Kurtzer." All documents in this matter are "integral" to the claims and defenses in this Action. Defendants merely are stating one of their affirmative defenses that they can set forth in their answer. The mere assertion by legal counsel that the Kurtzer Release is "integral" is an argument but that does not make the Kurtzer Release admissible at the pleading stage of this Action. Certainly, Defendants are not waiving their ability to serve Sylabs with requests for admissions, interrogatories, and requests for documents, as well as conducting depositions regarding the Kurtzer Release and other "integral" matters.

Third, Sylabs has objected to the Kurtzer Release and requested it be excluded from consideration in the Motion (*see* concurrently filed herewith, Sylabs' Evidentiary Objections to the Kurtzer Release).

Finally, this Court should not take judicial notice of the Kurtzer Release, should sustain Sylabs' Evidentiary Objections, and should exclude the Kurtzer Release from being considered in deciding the Motion. *Rhodes*, *supra*; *Mobley*, *supra*; Rule 12(b)(6).

## III. THE MOTION TO DISMISS MUST BE DENIED BECAUSE THE KURZTER RELEASE IS UNENFORCEABLE TO RELEASE DEFENDANTS FROM THE CLAIMS ALLEGED IN SYLABS' COMPLAINT AS IT IS AGAINST STATE AND FEDERAL PUBLIC POLICES.

In regard to this section, Sylabs initial notes that Defendants' arrogance has no bounds as they argue that they are all covered by the Kurtzer Release and, therefore, the Complaint should be dismissed against all of them. Although this would be a question for the jury, Sylabs would argue that: (a) this is further evidence of Defendants' conspiracy because they were trying to release themselves—**in advance**—from cyber theft they had already committed and were in the process of committing; (b) such release of cyber theft

in this manner is, as will be demonstrated below, against state and federal public policies; and (c) the underlying facts are clearly in dispute. Accordingly, the Kurtzer Release is unenforceable.

California has a strong public policy favoring the voluntary settlement of disputes. *Monster Energy Co. v. Schechter*, 7 Cal.5th 781, 793 (2019); *Zamora v. Clayborn Contracting Group, Inc.*, 28 Cal.4th 249, 260 (2002) ("the law favors settlements"); *Kaufman v. Goldman*, 195 Cal.App.4th 734, 745 (2011) ("*Kaufman*"); *Osumi v. Sutton*, 151 Cal.App.4th 1355, 1359 (2007)  ("It is, of course, the strong public policy of this state to encourage the voluntary settlement of litigation.").   Furthermore, it has been long established that settlement agreements "are highly favored as productive of peace and good will in the community, and reducing the expense and persistency of litigation."  *McClure v. McClure*, 100 Cal. 339, 343 (1893).

Notwithstanding that policy, courts can declare a settlement agreement or release, which the law treats like any other contract, *Timney v. Lin*, 106 Cal.App.4th 1121, 1127 (2003), void and unenforceable on the basis it is contrary to public policy, illegal, or unfair. *City of Santa Barbara v. Superior Court*, 41 Cal.4th 747, 777 & fn. 53 (2007) (agreement purporting to release liability for future gross negligence against disabled child violates public policy and is unenforceable); *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court*, 50 Cal.3d 658, 664 (1990) (court may reject a stipulated settlement that is contrary to public policy); *Graylee v. Castro,* 52 Cal.App.5th 1107, 1114-1115 (2020) (courts cannot approve or enforce a settlement agreement that is illegal or contrary to public policy).

The California Legislature has declared that cyber theft, such as the scheme engaged in by Defendants, is against its clearly articulated public policy:

> "It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

12

LEPISCOPO & ASSOCIATES LAW FIRM

> concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.
>
> The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data."

*See* California Penal Code § 502(a).

In addition, the California Legislature carried out California's public policy through enactment of California's **civil** statutory scheme, which provides protection for individuals and entities through the California Uniform Trade Secrets Act ("UTSA"), California Civil Code §§ 3426 *et seq.*

Similarly, under federal law, the theft of intellectual property has become a matter of national concern, which has been addressed in policy through enactment of federal legislation. For example, in a rare show of solidarity, in 2016 the Defend Trade Secrets Act of 2016 ("DTSA") passed both houses of Congress with remarkable 87-0 approval in the Senate and 410-2 approval in the House. Studies cited placed the cost to the U.S. economy from theft and misappropriation of intellectual property at somewhere between $300 and $480 billion annually, a Senate Judiciary Committee Report noted that the DTSA would benefit trade secret owners by allowing them to bring misappropriation suits in federal court.[7]

Keep in mind that the Defendants' cyber theft is alleged in great detail in paragraphs 43 through 181 of Sylabs' Complaint, all of which must be accepted as true for purposes of the CIQ Motion. As it is being interpreted and applied by the Defendants through the CIQ Motion, the Kurtzer Release is being used to release Defendants from liability for

---

[7]    Report of the U.S. Senate's Committee on the Judiciary, S. Rep. 114-220, at 3 (March 7, 2016).

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

**13**

LEPISCOPO & ASSOCIATES LAW FIRM

cyber theft. This is contrary to the aforementioned California and federal public policies, thereby rendering the entire Kurtzer Release unenforceable by this Court.

## IV. THE MOTION TO DISMISS MUST BE DENIED BECAUSE THE ALLEGATIONS OF THE COMPLAINT AND THE EVIDENCE PROVE THAT THE KURTZER RELEASE IS IN DISPUTE, AND, THEREFORE, DISMISSAL IS PRECLUDED BY RULE 12(b)(6).

As an initial point, this section is neither intended to be nor should it be interpreted as a waiver of the arguments made in Sections II and III, *supra*, to exclude the Kurtzer Release. The following arguments and authorities are made in the event this Court decides to **consider** the Kurtzer Release, and, in that case, Sylabs provides additional reasons why this Court may <u>not</u> consider the Kurtzer Release at this juncture of the proceedings.

In order to make the point that the Kurtzer Release should not be considered in this Rule 12(b)(6) motion, Sylabs will proffer the Declaration of Christopher Tarbell ("Tarbell Declaration") in response to the Kurtzer Release—the Tarbell Declaration would be integral to Sylabs' allegations. Concurrently filed herewith are the following: (a) the Tarbell Declaration and (b) Exhibits 1 through 36 in support of the Tarbell Declaration.

By way of introduction, Mr. Tarbell was a special agent of the Federal Bureau of Investigation ("FBI"). He was employed as a computer forensic examiner and Special Agent. As a member of the FBI's Computer Analysis Response Team ("CART"), his professional responsibilities focused on forensically recovering data and conducting forensic examinations of electronic evidence. As a Special Agent with the FBI, Mr. Tabell's primary professional responsibility was to conduct criminal investigations into computer and network intrusions, which also involved the retrieval and forensic examination of computer-related evidence. During the course of his career at the FBI, Mr. Tarbell worked on nearly 100 criminal and national security investigations that involved the recovery and forensic analysis of a wide range of electronic evidence as well as the investigations of computer artifacts from cyber intrusions. (Decl. of Tarbell ¶¶ 4 & 9; Exh. 1.)

LEPISCOPO & ASSOCIATES LAW FIRM

As a computer forensic examiner with the FBI, Mr. Tarbell engaged in rapid-response investigations all over the world on matters related to terrorism, botnets, and other cybercrimes. In 2009, Mr. Tarbell joined the FBI's renowned cybercrime squad as a Special Agent in the New York field office. He was the lead investigator on several of the FBI's most complex and cutting-edge cases, including the takedown of the billion-dollar, cryptocurrency based drug marketplace "Silk Road" including the arrest of its founder, and the investigation and arrest of the leadership of the Anonymous/LulzSec hacking crews. (Decl. of Tarbell ¶ 9; Exh. 1.)

Mr. Tarbell has reviewed the following documents that support his declaration: (a) Audit Logs from Sylabs' Server for activity engaged in by defendants Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager, and David Buss; (b) Sylabs' Issue Notification from the United States Patent and Trademark Office, Application No. 16/435.251, with an Issue Date of May 2, 2023; (c) Sylabs' Notice of Allowance and Fee(s) Due from the United States Patent and Trademark Office, Application No. 16/435.251, Date Mailed of January 5, 2023; (d) Sylabs' Employee Handbook 2019 (Excerpts pp. 15-19); (e) The unredacted version of the Kurtzer Release; and (f) the Complaint. (Decl. of Tarbell ¶¶ 11 and 112.)

In addition to reviewing the foregoing documents, Mr. Tarbell performed a comprehensive review and analysis of the Audit Logs for the timeframe January 1 through April 17, 2020. (Decl. of Tarbell ¶¶ 28-111.)

Mr. Tarbell explains what an "insider threat" is:

"The Cybersecurity and Infrastructure Security Agency ("CISA") of the United States defines an insider threat as 'the potential for an insider to use their authorized access or understanding of an organization to harm that organization.'"

(Decl. of Tarbell ¶ 16.)

Contrary to the Kurtzer Release and arguments made by Defendants' legal counsel, Mr. Tarbell has concluded from his review and analysis of the evidence that defendants

LEPISCOPO & ASSOCIATES LAW FIRM

Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager, and David Buss were **insider threats** to Sylabs at the time they committed cyber theft of Sylabs' Trade Secrets and Intellectual Property:

> "Sylabs suffered multiple insider threat attacks by their former CEO and his cohorts. Sylabs' former CEO, Gregory Kurtzer ("KURTZER"), used his authorized access to and knowledge of Sylabs' intellectual property, trade secrets, confidential information, resources, including personnel, facilities, information, equipment, networks, and system to delete, share with outsiders, and download Sylabs' sensitive corporate data."

(Decl. of Tarbell ¶ 17; *see also* Complaint ¶¶109-178.)

In Section IV of his declaration, Mr. Tarbell provides other examples of Defendants' insider threats and cyber intrusions into Sylabs Server. (Decl. of Tarbell ¶¶ 112-123; Exhs. 2-36; *see also* Complaint ¶¶109-178.)

It matters not whether this Court or Defendants agree with or believe the foregoing analysis, conclusions, and opinions provided by Mr. Tarbell. Rather, the relevant legal point is that it disputes the Kurtzer Release because such "insider threat" activity was NOT disclosed in and is inconsistent with the Kurtzer Release thereby calling the veracity and enforceability of the Kurtzer Release into dispute. It is this dispute that defeats Defendants Motion made under Rule 12(b)(6), **reserving these disputed facts for trial**.

Disputes must be resolved by jury or court sitting as a trier of fact but not in a Rule 12(b)(6) motion to dismiss.

## V.  PLAINTIFF HAS ALLEGED FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH THAT COUNTS I THROUGH V OF THE COMPLAINT SATISFY THE PLEADING REQUIREMENTS OF RULE 8(a) THERBY REQUIRING THIS COURT TO DENY THE MOTION.

Preliminarily, it is clear that Defendants have not reviewed the details alleged in Sylabs' Complaint at Section V (pages 9-25), wherein Sylabs alleges in more than sufficient particularity all of Sylabs' trade secrets and intellectual property: (a) General Description of Sylabs' Trade Secrets (pp. 9-12); (b) Sylabs' SingularyPRO (pp. 12-15); (c) Sylabs' Singularity Image File Technology (pp. 15-16); (d) Sylabs' Singularity Enterprise

(pp. 16-19); (e) Sylabs' Fuzzball Technology (pp. 19-21); and (f) Sylabs' Armored Containers Technology (pp. 21-24).

Defendants simply assert that Sylabs failed to each count with sufficient particularity, then marched on to make assertions and arguments to fit a Rule 12(b)(6) motion. In so doing, Defendants failed to pay any mind to Rule 8(a), which requires that each count of Sylabs Complaint simply contain "a **short and plain statement** of the claim showing that the pleader is entitled to relief . . ." (Emphasis added.)

Finally, there is another aspect of the Motion that requires mentioning. Defendants act as though they have no idea, understanding, or **notice** of Sylabs' Trade Secrets and Intellectual Property. However, as set forth in Section V of Sylabs' Complaint (¶¶ 109-179) and summarized in Figure 10 (Complaint ¶ 180, p. 43), Defendants have full and complete notice of what Sylabs has alleged to be its Trade Secrets and Intellectual Property, which Sylabs alleges Defendants have stolen (Complaint ¶¶ 129-134).

**A.   SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH COUNT I FOR VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA") AND COUNT III FOR VIOLATIONS OF CALIFORNIA UNIFORM TRADE SECRETS ACT.**

1.   <u>The Kurtzer Release Does Not Release Defendants From Any Of Their Acts Of Cyber Theft</u>.

As discussed in greater detail above, the Kurtzer Release does not release Defendants from their cyber theft of Sylabs' Trade Secrets and Intellectual Property.

2.   <u>Sylabs' Complaint Complies With Rule 8(a) By Alleging With More Than Sufficient Particularity That Defendants Engaged In A Conspiracy To And Actually Carried Out The Cyber Theft Of Sylabs' Trade Secrets And Intellectual Property</u>.

Section 5 of the DTSA provides Congress' clear and unequivocal rationale for its enactment, which is codified at 18 U.S.C. § 1831 et seq.:

"(Sec. 5) The bill expresses the sense of Congress that: (1) trade secret theft occurs in the United States and around the world, (2) trade secret theft harms owner companies and their employees, (3) the Economic Espionage Act of

LEPISCOPO & ASSOCIATES LAW FIRM

1996 applies broadly to protect trade secrets from theft; and (4) it is important, when seizing information, to balance the need to address misappropriation with the needs of third parties and the accused party."

Similar to the DTSA, California protects Sylabs' Trade Secrets, Intellectual Property, and other privileged and protected information through its Uniform Trade Secrets Action, California Civil Code §§ 3426 *et seq*.

Sylabs has clearly alleged that its Trade Secrets and Intellectual Property is comprised of "information, including systems and methods, code, compilations, programs, devices, methods, techniques, or processes that derive independent economic value from not being generally known to the public or other persons who can obtain significant economic value from the Trade Secrets and IP's disclosure." (*See* Complaint ¶ 211.)

As mentioned above, the Trade Secrets and Intellectual Property stolen by Defendants through their cyber theft were unlawfully converted into the Fuzzball Patents and Armored Container Patents. This refutes Defendants argument that "[I]t is unclear what precisely Sylabs claims to be a trade secret—i.e., if the trade secret is only the Sylabs' 'value-added technology', or if it is something else entirely." Sylabs allegations could not be more definite and detailed—the Trade Secrets and Intellectual Property is identified in the Fuzzball Patents and the Armored Container Patents (*see* Complaint ¶¶ 129-134 and ¶ 180). Accordingly, the Defendants are on clear notice of what Sylabs is alleging as its Trade Secrets and Intellectual Property. Any confusion Defendants might have can be clarified through written discovery and depositions.

Defendants make arguments relating to open source—*i.e.*, that Defendants used open source materials not Sylabs' Trade Secrets or Intellectual Property. What Defendants failed to acknowledge is that Sylabs clearly alleges that Defendants engaged in a conspiracy to take Sylabs Trade Secrets and Intellectual Property by publishing everything to open source and through cyber theft of all other materials from Sylabs' server, which Defendants submitted in the patent applications to the USPTO.(Complaint ¶¶ 153 & 154.)

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

**18**

Lepiscopo & Associates Law Firm

Defendants also complain that Sylabs has failed to detail privileged and other protected information. Of course, Sylabs is not going to publish privileged information. In any event, Defendants can seek answers to these questions via the discovery process.

Finally, Defendants contend that Sylabs' Trade Secrets and Intellectual Property relating to the three Fuzzball Patents are subject to the Kurzer Release. As discussed in greater detail above, the Kurtzer Release does <u>not</u> release Defendants from their cyber theft.

3.    <u>Sylabs' Complaint Complies With Rule 8(a) By Alleging With More Than Sufficient Particularity That Sylabs Did Not Forfeit Protection Of Its Trade Secrets And Intellectual Property</u>.

Defendants also assert that Sylabs' U.S. Patent application No. 16/435,251 (the "'251 Application") somehow forfeited trade secret protection of Sylabs' Trade Secrets and Intellectual Property that are the subject of the Fuzzball Patents and Armored Container Patents. However, by virtue of the fact that Defendants submitted and obtained the Fuzzball and Armored Containers patents, Defendants demonstrate that they are not the same trade secrets and intellectual property listed in the '251 Application. Accordingly, the Sylabs' Trade Secrets and Intellectual Property contained in the Fuzzball Patents and Armored Containers Patents were secure and secret until Defendants published them to open source, stole them through cyber theft, and fraudulently submitted the six patent applications.

Finally, Defendants' argument also fails for a more fundamental reason. It requires expert witness testimony from patent experts who provide opinions, for example, that prove: (a) the '251 Application contains the same technology as Sylabs' Trade Secrets and Intellectual Property; (b) the specific claims in the '251 Application are the same claims as those in the Fuzzball and Armored Container Patents; (c) the specific claims in the '251 Application that are the same claims as those in Sylabs' Trade Secrets or Intellectual Property; (d) which, if any, claims in Sylabs' Trade Secrets or Intellectual Property was forfeited in the'251 Application; and (e) which, if any, claims in the Fuzzball or Armored Containers Patents was forfeited in the'251 Application.

LEPISCOPO & ASSOCIATES LAW FIRM

4.    <u>Sylabs' Complaint Complies With Rule 8(a) By Alleging With More Than Sufficient Particularity Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, Whitley, CIQ, And Open Drives' Cyber Theft And Misappropriation Of Sylabs' Trade Secrets And Intellectual Property</u>.

Defendants also make the laughable argument that "Sylabs fails to allege any instances of misappropriation by Mr. Buss, Ms. Fong, Mr. Hayden, Ms. Kurtzer, Mr. Prager, or Open Drives." Just one example that proves this is that Sylabs alleges that during all timeframes alleged in the Complaint defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, Whitley, CIQ, and Open Drives engaged in a conspiracy including "cyber theft and misappropriation of Sylabs' Trade Secrets; cyber theft of Sylabs' corporate secrets; cyber theft and misappropriation. . ." (Complaint ¶¶ 30-38.) Furthermore, Sylabs alleges that the purpose and object of defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, Whitley, CIQ, Open Drives, and IAG's conspiracy was to "eliminate Sylabs as a competitor in the high-performance computing industry marketplace." (Complaint ¶ 39.)

Sylabs also alleges that "during the time period between March 1 through June 1 of 2020, Defendants surreptitiously and unlawfully intruded into and accessed Sylabs' server to delete files and steal all of Sylabs' Trade Secrets that were under development and close to being submitted to the USPTO for protection and prosecution, including downloading Sylabs' entire server." (Complaint ¶ 110.)

Sylabs' Complaint complies with Rule 8(a) by alleging with more than sufficient particularity that Defendants engaged in a conspiracy to and actually carried out the cyber theft of Sylabs' Trade Secrets and Intellectual Property, published it to open source, patented it (*i.e.*, the Fuzzball Patents and Armored Container Patents), and then raised over $30,000,000 in capital on the fruit of their cyber theft. (*See* Complaint ¶¶ 109-134, ¶ 138, and ¶¶ 179-181.) Accordingly, Defendants have been placed on notice of the claims of Counts I and II, as required by Rule 8(a) and Rule 12(b)(6).

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

20

Lepiscopo & Associates Law Firm

**B.    SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH COUNT II FOR VIOLATIONS OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT.**

1.    <u>Sylabs' Claim In Count II For Violations Of CFAA Are Not Time Barred</u>.

A statute of limitations bar is "an affirmative defense, and . . . plaintiffs [are] not required to negate an affirmative defense in [their] complaint." *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993). Not surprisingly, cases say that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred. *See Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003); *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir. 2002). Accord *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("For better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can."). On that note, if the Court finds that clarifying allegations are required then this Court should grant leave to amend to provide such allegations (*see* Section VI, *infra*).

As to Defendants' 2-year statute of limitations argument regarding Count II for violations of the Computer Fraud and Abuse Act ("CFAA"), the earliest Sylabs would have fully learned that Defendants had taken their Trade Secrets and Intellectual Property and had stolen and used Sylabs' source code would have been on April 6, 2021, when U.S Patent No. US 10,970,113, the first and earliest of the six Fuzzball and Armored Containers U.S. Patents, was granted and published. (*See* Complaint ¶¶ 179-181; Decl. of Lepiscopo ¶¶ 2 & 3; Exhibit 37.)

Since Sylabs Complaint was filed on February 24, 2023 (ECF 1), which is clearly within the 2-yead statute of limitation of the CFAA, 18 U.S.C. § 1030(g), Count II of Sylabs Complaint is <u>not</u> time barred.

2.    <u>Sylabs' Complaint Alleges Facts With Sufficient Particularity To Establish Violations Of CFAA</u>.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

21

First, Sylabs' Complaint alleges facts with sufficient particularity to show violations of the CFAA, Sections 1030(a), 1030(e), and 1030(g), and, therefore, Sylabs alleges violations of these sections. (Complaint ¶¶ 190-191 and 239.)

Second, Defendants argue that the Complaint fails to allege that Defendants committed unauthorized access. This is incorrect as Sylabs' Complaint alleges that "during the time period between March 1 through June 1 of 2020, Defendants **surreptitiously and unlawfully intruded into and accessed Sylabs' server** to delete files and steal all of Sylabs' Trade Secrets . . ." (Complaint ¶¶ 110-134; emphasis added.)

Finally, Defendants argue that the Complaint fails to allege that Defendants suffered loss under CFAA. This is incorrect as Sylabs suffered loss through Defendants': (a) publishing Sylabs' Trade Secrets and Intellectual Property to open source so it could be sold by defendant CIQ—this type of cyber theft is known as cyber destruction (*see* Complaint ¶¶ 147, 148, 153, and 154); (b) cyber theft and subsequent unlawful and fraudulent patenting of Sylabs' Trade Secrets and Intellectual Property through the three Fuzzball Patents and the three Armored Containers Patents (*see* Complaint ¶¶ 98, 109-134, 179-181 (Figure 10 in ¶ 180), and 215); and cyber theft and subsequent unlawful and fraudulent patenting of Sylabs' Trade Secrets and Intellectual Property in an amount in excess of $75,000 for actual damages, lost royalties, and disgorgement of profits (*see* Complaint ¶¶ 220, 223, and 224).

## C. SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH COUNT IV FOR VIOLATIONS OF CIVIL RICO, 18 U.S.C. § 1962(c) AND COUNT V FOR VIOLATIONS OF CIVIL RICO, 18 U.S.C. § 1962(d).

First, Defendants are incorrect when they assert that Sylabs has failed to plead Racketeering Activity. Specifically, Sylabs' Complaint alleges facts with sufficient particularity to show that Defendants' cyber theft of Sylabs' Trade Secrets and Intellectual Property constitutes Racketeering Activity under RICO:

"187. In its relevant part, Section 3 of the DTSA adds violations of the act to the list of predicates to establish a private civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1831 et

LePiscopo & Associates Law Firm

seq. (emphasis added): '(Sec. 3) . . . It adds economic espionage and **trade secret theft** to the list of **predicate offenses that constitute racketeering activity**.'

(*See* Complaint ¶¶ 187 and 188; emphasis added.)

Second, Defendants are incorrect when they assert that Sylabs has failed to plead a pattern of Racketeering Activity and ongoing criminal activity. Specifically, Sylabs' Complaint alleges facts with sufficient particularity to show that Defendants' cyber theft of Sylabs' Trade Secrets and Intellectual Property that was ongoing in March through June of 2020, and continues to the present. Specifically, the refers to the profits (Complaint ¶ 223) and investment capital, $33M, and enterprise valuation. $150M, that Defendant have enjoyed and received through their cyber theft and patenting of Sylabs' Trade Secrets and Intellectual Property, which is ongoing and continues as Defendants continue to seek investment capital (Complaint ¶¶ 138 and 139).

Sylabs alleges the operative section showing a pattern of Racketeering Activity engaged in through Defendants' use of the proceeds from profits and investment capital that was derived from their cyber theft to operate defendant CIQ: "(a) It shall be unlawful for any person who **has received any income derived, directly or indirectly, from a pattern of racketeering activity** . . . to use or invest, directly or indirectly, any part of such income. . . in operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." (*See* Complaint ¶ 198; emphasis added.) Finally, Defendants incorrectly argue that Sylabs has failed to plead violations of Section 1962(d) of RICO, which provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."( Complaint ¶ 198.)

## D. SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH COUNTS I-V AGAINST DAVID BUSS.

Defendants assert that the "Complaint is devoid of allegations regarding" defendant Buss. Sylabs believes that what Defendants meant to say was, "In a void, there are no allegations alleged against Mr. Buss." The allegations concerning the Defendants'

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)

23

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

comprehensive actions of cyber theft and their conspiracy to commit cyber theft of Sylabs' Trade Secrets and Intellectual Property cover the timeframe of January through June of 2020, which are alleged in Paragraphs 109 through 178 of the Complaint. (See also Decl. of Tarbell ¶¶ 28, 84, 86, 87, 88.)

During this time period, defendant Buss is alleged to be a director and C.E.O. of defendant Open Drives, Inc., and alleged to be part of the conspiracy with the other defendants to engage in the object of the conspiracy—to use cyber theft to steal Sylabs' Trade Secrets and Intellectual Property. (Complaint ¶ 35.) Defendants seem to miss the fact that defendant Buss worked with his co-conspirator, defendant Prager, at defendant Open Drives as a director and chief financial officer. (Complaint ¶ 36.) Sylabs also alleged that defendants Buss and Prager had a common goal for their company, defendant Open Drives, to injure Sylabs and self-enrichment as follows:

> "The main object of the foregoing conspiracy ("Conspiracy") was to steal Sylabs' Trade Secrets and IP, technologies, and customers for the express purpose of **enriching defendants Open Drives**, IAG, and Co-Conspirators and to eliminate Sylabs as a competitor in the high-performance computing industry marketplace."

(Complaint ¶ 39; emphasis added.)

As alleged in the Complaint, Congress created the Small Business Innovation Research Program ("SBIR") in order to expand research and development as well as promoting innovative small businesses. On or about 2019, the U.S. Air Force issued SBIR Request No. 20.1, Contract No. FA8649-20-P-0729, Tracking No. J201-CSO1-7047, and Topic J201CSO1 for Containers Technologies for LevelUp. In or about the end of 2019, Sylabs commenced discussions and preparation of its SBIR proposal No. F2-13944 ("SBIR Proposal") regarding its hardened SIF container technology, which Sylabs titled, "Sylabs' Armored Containers." (Complaint ¶ 121-124.)

Defendants, which includes defendant Buss, engaged in cyber theft of Sylabs' SBIR Proposal through Defendants' unlawful and unauthorized access to Sylabs' Server. In fact, the Audit Logs prove that on March 30, 2020, the very day before defendant Gregory

Kurtzer left Sylabs, he received an email from defendant David Buss regarding the SBIR Proposal. (Decl. of Tarbell ¶ 28.)

Clearly, the foregoing demonstrates that Sylabs has placed defendant Buss on notice regarding its claims against him, which alleges facts with sufficient particularity to establish counts I-V against defendant Buss in compliance with the pleading requirements of Rule 8(a).

## VI.    SYLABS REQUESTS LEAVE TO AMEND.

As there is an enormous amount of evidence in this Action, even before discovery of all parties has commenced, any deficiencies would be easily cured. Accordingly, in the event, this Court determines that one or more counts of Sylabs' Complaint is or are deficient, then Sylabs respectfully request leave to amend it in light of Supreme Court and Ninth Circuit precedent:

> "As the Supreme Court indicated in Foman [v. Davis, 371 U.S. 178, 182 (1962)], amendment should not be barred as futile if the underlying facts 'may be a proper subject of relief.' As we have recently said, leave to amend should be allowed unless the complaint 'cannot under any conceivable state of facts be amended to state a claim.' *Alexander v. Pacific Maritime Ass'n*, 9th Cir., 1963, 314 F.2d 690. Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.' 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)."

*Breier v. Northern California Bowling Proprietors' Association*, 316 F.2d 787, 790 (1963).

## CONCLUSION

Based on the forgoing, Sylabs respectfully requests the Court to deny the Motion. Alternatively, if this Court grants the Motion in whole or in part, then Sylabs hereby requests leave to amend the Complaint.

Dated:  September 11, 2023.              LEPISCOPO & ASSOCIATES LAW FIRM


                                         By: /s/ Peter D. Lepiscopo
                                              **PETER D. LEPISCOPO**

LEPISCOPO & ASSOCIATES LAW FIRM

1

LEPISCOPO & ASSOCIATES LAW FIRM

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on September 11, 2023. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 11, 2023.

LEPISCOPO & ASSOCIATES LAW FIRM

By: /s/ Peter D. Lepiscopo          
      **PETER D. LEPISCOPO**
      *Counsel of Record*
      Attorneys for Plaintiff, **SYLABS, INC.**

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 40)**

26