**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net
Counsel of Record for Plaintiff, **SYLABS, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, | Case No.  **5:23-cv-00849-SVK** |
| Plaintiff, | **SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)** |
| v. | |
| **GREGORY ROSE** a/k/a **GREGORY M. KURTZER**, et al., | |
| Defendants. | |

Date:     October 3, 2023
Time:     10:00 am
Courtroom:  6
Judge:    Honorable Susan van Keulen

Filed/Lodged Concurrently with:
1.   Declaration of Peter D. Lepiscopo
2.   Sylabs' Request for Judicial Notice
3.   Exhibit 37
4.   [*Proposed*] Order Denying Motion

LEPISCOPO & ASSOCIATES LAW FIRM

---

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES................................................................... iii

INTRODUCTION & SUMMARY OF OPPOSITION................................... 1

LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS............. 2

RELEVANT ALLEGATIONS TO PROVIDE BACKGROUND
AND CONTEXT........................................................................ 3
ARGUMENT............................................................................ 7

I.  THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY
    THE MOTION TO DISMISS BECAUSE THE ISSUES RELATING
    TO COMPUTER FORENSICS, PATENTS, HIGH-TECH
    SUPERCOMPUTER TECHNOLOGY, AND PATENT LAW ARE
    HIGHLY COMPLEX, WHICH REQUIRES EXPERT WITNESS
    TESTIMONY, AND THE FACTS ARE DISPUTED, ALL OF
    WHICH MAY NOT BE RESOLVED THROUGH A RULE 12(b)(6)
    MOTION TO DISMISS........................................................ 7

II. PLAINTIFF HAS ALLEGED FACTS WITH SUFFICIENT
    PARTICULARITY TO SATISFY THE PLEADING
    REQUIREMENTS OF RULE 8(a) THERBY REQUIRING THIS
    COURT TO DENY THE MOTION............................................. 8

    A.  SYLABS CLAIMS AGAINST THE AIG DEFENDANTS ARE MADE
        WITH SUFFICIENT PARTICULARITY, NOT UPON GROUP
        ALLEGATIONS, THEREBY SATISFYING THE LIBERAL PLEADING
        REQUIREMENTS OF RULE 8(A).................................... 8

    B.  SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT
        PARTICULARITY TO ESTABLISH COUNT I FOR VIOLATIONS OF
        THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA") AND
        COUNT III FOR VIOLATIONS OF CALIFORNIA UNIFORM TRADE
        SECRETS ACT ("CUTSA").......................................... 10

        1.  Sylabs Has Sufficiently Pleaded And Defined Its Trade
            Secrets And Intellectual Property............................ 10

LEPISCOPO & ASSOCIATES LAW FIRM

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

i

1

**TABLE OF CONTENTS—Cont.**

2

**Pages**

3          2.    Sylabs Has Sufficiently Pleaded Reasonable Measures To
                 Protect Its Trade Secrets........................................................    13

4

5          3.    Sylabs Has Sufficiently Pleaded Misappropriation Of
                 Trade Secrets.......................................................................    15

6     C.    Sylabs Has Pleaded Facts With Sufficient
            Particularity to State Claims Under the CFAA

7           Against Whitley and IAG.....................................................    20

8     D.    Sylabs Has Amply Pleaded Facts With Sufficient
            Specificity To State Claims Under RICO (Civil)

9           Against Whitley And IAG....................................................    22

10    E.    Sylabs' Common Law Claims Are Not Preempted...........    24

11 III.   SYLABS REQUESTS LEAVE TO AMEND....................................    25

12 CONCLUSION...............................................................................    25

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lepiscopo & Associates Law Firm

# TABLE OF AUTHORITIES

**Pages**

**CASES:**

*Alta Devices, Inc. v. LG Electronics, Inc.,*
   343 F.Supp.3d 868 (N.D. Cal. 2018)....................................................... 10, 11

*Angelica Textile Services, Inc. v. Park,*
   220 Cal.App.4th 495 (2013)................................................................... 24, 25

*Austin v. Terhune,*
   367 F.3d 1167 (9th Cir. 2004)................................................................ 3

*Autodesk, Inc. v. ZWCAD Software Co., Ltd.,*
   2015 U.S. Dist. LEXIS 63610 (N.D. Cal. 2015)..................................... 10

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.,*
   331 F. Supp. 3d 977 (N.D. Cal. 2018).................................................... 13

*Breier v. Northern California Bowling Proprietors' Association,*
   316 F.2d 787 (1963)............................................................................... 25

*Calendar Research LLC v. StubHub, Inc.,*
   No. 2:17-CV-04062-SVW-SS, WL 4390391 (C.D. Cal. 2020)................. 21

*CleanFish v. Sims,* No. 19-CV-03663-HSG,
   2020 WL 1274991 (N.D. Cal. Mar. 17, 2020).......................................... 19

*Conley v. Gibson,*
   355 U.S. 41 (1957)................................................................................ 3

*Fontana v. Haskin,*
   262 F.3d 871 (9th Cir. 2001).................................................................. 3

*Galbraith v. County of Santa Clara,*
   307 F.3d 1119 (9th Cir. 2002)................................................................ 2

*Hishon v. King & Spalding,*
   467 U.S. 69 (1984)................................................................................ 3

*Hospital Bldg. Co. v. Rex Hospital Trustees,*
   425 U.S. 738 (1976).............................................................................. 2

*In re Toll Rds. Litig.,*
   2018 U.S. Dist. LEXIS 226961.............................................................. 8

*Jackson v. Carey,*
   353 F.3d 750 (9th Cir. 2003).................................................................. 3

*Jenkins v. McKeithen,*
   395 U.S. 411 (1969).............................................................................. 2

*Jones v. Greninger,*
   188 F.3d 322 (5th Cir. 1999)................................................................. 2

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,*
   431 F.3d 353 (9th Cir. 2005).................................................................. 22

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

<u>TABLE OF AUTHORITIES—CONT.</u>

**Pages**

CASES:

*LVRC Holdings LLC v. Brekka,*
  581 F.3d 1127 (9th Cir. 2009)...................................................................... 21

*Navigation Holdings, LLC v. Molavi,*
  445 F.Supp.3d 69 (2020)............................................................................... 19

*New Show Studios LLC v. Needle,*
  No. 2:14-CV-01250-CAS, WL 2988271 (C.D. Cal. 2014).......................... 21

*Palmer v. Roosevelt Lake Log Owners Ass'n,*
  651 F.2d 1289 (9th Cir. 1981)........................................................................ 3

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.,*
  923 F.Supp. 1231, 1253 (N.D. Cal. 1995)..................................................... 15

*Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.,*
  482 F.2d 1086 (9th Cir. 1973).................................................................. 1, 7, 8

*Scheuer v. Rhodes,*
  416 U.S. 232 (1974)........................................................................................ 3

*Schneider v. California Dept. of Corr.,*
  151 F.3d 1194 (9th Cir. 1998)......................................................................... 2

*Swierkiewicz v. Sorema N. A.,*
  534 U.S. 506 (2002)........................................................................................ 3

*UniRAM Technology, Inc. v. Taiwan Semiconductor Mfg. Co.,*
  617 F.Supp.2d 938 (N.D. Cal. 2007)............................................................. 16

*U.S. v. Nosal,*
  676 F.3d 854 (9th Cir. 2012)..................................................................... 20, 21

*Van Buren v. U.S.,*
  141 S.Ct. 1648, 1649 (2021)........................................................................ 21

*WeRide Corp. v. Kun Huang,*
  379 F. Supp. 3d 834 (N.D. Cal. 2019)........................................................... 13

*Wisk Aero LLC v. Archer Aviation Inc.,*
  2021 U.S. Dist. LEXIS 160001 (N.D. Cal. 2021).......................................... 13

# TABLE OF AUTHORITIES—Cont.

**Pages**

**STATUTES & CODES:**

| | |
|---|---|
| 18 U.S.C. § 1030(e)(1) | 20 |
| 18 U.S.C. § 1030(e)(2)(B) | 20 |
| 18 U.S.C. § 1030(g) | 20 |
| 18 U.S.C. § 1343 | 22 |
| 18 U.S.C. § 1832(a)(1) | 22 |
| 18 U.S.C. § 1832(a)(2) | 22 |
| 18 U.S.C. § 1832(a)(3) | 22 |
| 18 U.S.C. § 1839 | 10 |
| 18 U.S.C. § 1961(1) | 22 |
| 18 U.S.C. § 1962 | 24 |
| 18 U.S.C. § 1962(d) | 24 |
| 37 CFR 1.56 | 5 |

**RULES:**

| | |
|---|---|
| Federal Code of Civil Procedure, Rule 8(a) | *passim* |
| Federal Code of Civil Procedure, Rule 12(b)(6) | *passim* |

LEPISCOPO & ASSOCIATES LAW FIRM

## INTRODUCTION & SUMMARY OF OPPOSITION

Plaintiff Sylabs, Inc. ("Sylabs") hereby opposes the Federal Rule of Civil Procedure, Rule 12(b)(6) motion to dismiss ("Motion") (ECF 39) filed by Defendants Joel Whitley, IAG Capital Partners, IAG Fund II, LP, and IAG Capital Holdings II, LLC (collectively, "IAG Defendants" or "Defendants"). Specifically, Defendants seek dismissal of the complaint ("Complaint" or "Sylabs' Complaint") (ECF 1) based on the following grounds:

1. Sylabs' Claims of Defendants' Cyber Theft of Trade Secrets and Intellectual Property ("Claims") Rest on Impermissible Group Allegations and Must be Dismissed.

2. All of Sylabs' Claims Against IAG and Whitley Fail on the Merits.

As a recurring theme throughout the Motion, Defendants are confusing their discovery rights with the scope of a Rule 12(b)(6) motion and the liberal pleading standards of Rule 8(a). All of Defendants' arguments regarding lack of particularity can be clarified through requests for admission, interrogatories, requests for documents, and depositions. As will be discussed below, neither Rule 12(b)(6) nor Rule 8(a) requires Sylabs to include every single fact about every count in order to survive the Motion. Discovery is the proper vehicle for discovering the existence or non-existence of material facts, not a Rule 12(b)(6) motion.

In this Opposition, Sylabs will argue as follows. First, the issues presented in this Action, **including those presented by the CIQ Defendants' Motion to Dismiss (ECF 40)**, are not only highly complex but also disputed and require expert testimony that has not and cannot be presented in this Rule 12(b)(6) motion. Accordingly, this Court should exercise its discretion to deny the Motion in its entirety. *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, 482 F.2d 1086, 1093 (9th Cir. 1973) (*see* Section I, *infra*).

Second, Defendants' challenge to Claims regarding Defendants' cyber theft of Sylabs' Trade Secrets and Intellectual Property claims fails because Sylabs has satisfied the pleading requirements of Rule 8(a).

Third, Defendants' challenge to Sylabs' CFAA claim fails because Sylabs commenced this action well before the expiration of the statute of limitations.

Fourth, Defendants' challenge to Sylabs' RICO claims also fails because Sylabs has adequately pleaded multiple predicate racketeering acts involving Sylabs' trade secrets (*i.e.*, misappropriation of trade secrets, conspiracy to misappropriate trade secrets, fraud on the United States Patent Office (USPTO), etc.), and because there is a well-articulated plan and pattern of racketeering activity that is ongoing and continues to harm Sylabs. These claims are specific to Defendants.

Finally, Defendants' argument that Sylabs' common law claims are preempted by the CUTSA fails because while Sylabs' common law claims may relate to its trade secret claims, they are not entirely dependent on them and thus cannot be dismissed.

## LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. California Dept. of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

As aptly put by the Fifth Circuit, at this stage of the litigation, this Court must simply determine whether the allegations in the Complaint are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Ninth Circuit has expounded upon this principle:

> "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely **but that is not the test**."

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)

2

LEPISCOPO & ASSOCIATES LAW FIRM

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (emphasis added) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting *Fontana v. Haskin*, 262 F.3d 871, 977 (9th Cir. 2001)).

As to the technical drafting of federal complaints, a simplified pleading standard applies to all civil actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Specifically, pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Further, each allegation "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at 512.

Finally, a motion to dismiss for failure to state a claim should <u>not</u> be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See e.g. Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).

**RELEVANT ALLEGATIONS TO PROVIDE BACKGROUND AND CONTEXT**

High-performance computing industry ("HPC") refers to the computer science architecture of aggregating computing power that delivers much higher performance than could be obtained from a typical desktop computer or workstation in order to solve large problems in, for example, science, engineering, medicine, or business. (Complaint ¶ 44.)

In 2018, Sylabs commenced development of technologies for the HPC industry. Sylabs was specifically founded in order to invent and market value-added technology for the HPC industry, which as over $39 billion in annual revenues worldwide, which is expected to grow to over $74 billion by 2030. (Complaint ¶¶ 9, 43 and 59.)

In order to provide the efficiency, security, and functionality that the HPC market required, Sylabs invented Singularity Image Format ("SIF") to create a digital container that holds pieces of software in a structured format that allows the programs to be portable and reproducible, as well as being secured through encryption. This is especially important

for the development, creation, and sharing of intellectual property in collaborative environments or ones subject to higher levels of security classifications (*e.g.*, military, National Security Agency, etc.). (Complaint ¶72.)

During the time period between March 1 through June 1 of 2020, Defendants surreptitiously and unlawfully intruded into and accessed Sylabs' computer server to delete files and steal all of Sylabs' IP and Trade Secrets that were under development and close to being submitted to the U.S. Patent and Trademark Office ("USPTO") for protection and prosecution, including downloading the contents of Sylabs' <u>entire</u> server ("Sylabs' Server"). (Complaint ¶110.)

Paragraphs 109-134 of the Complaint provide a detailed allegations of Defendants' acts of cyber theft, misappropriation, and unlawful use of Sylabs' IP and Trade Secrets, as well as other legally protected information ("Corporate Secrets") (Complaint ¶135).

It is clear that Defendants' cyber theft demonstrates that their strategy was to surreptitiously commandeer Sylabs' **entire** business and resources so that they in effect had an ongoing business without having to invest in research and development or pay a single penny to Sylabs. (Complaint ¶¶ 109-134.)

The allegations of the Complaint establish a pattern of Defendants' criminal enterprise and conspiracy, which is currently ongoing and expanding (Complaint ¶¶ 135-178). For example, through their cyber theft, Defendants recently raised $26,000,000 in private investment capital, making a total of $33,000,000 raised. Furthermore, according to defendant Greg Kurtzer, defendant CIQ now has an enterprise valuation of $150,000,000. (Complaint ¶138.)

In addition to the aforementioned cyber theft, Defendants also perpetrated a fraud on the USPTO by unlawfully and fraudulently presenting Sylabs' technologies as their own inventions, after having stolen Sylabs' IP, Trade Secrets, and Corporate Secrets. (Complaint ¶¶ 179-181.) For example, one such technology stolen by the Defendants through their cyber theft, which was funded, developed, and invented by Sylabs, is known as "Fuzzball." (Complaint ¶¶ 91-94.)

Another example of a technology stolen by the Defendants through their cyber theft, which was funded, developed, and invented by Sylabs, is known as "Armored Containers." As the name implies, Sylabs' Armored Containers technology expands its SIF technology in a way that allows increased security in deployments to Cloud environments as well as on-field deployed devices. (Complaint ¶¶ 99-101).

As to its development, in June 2019, Sylabs invented and commenced the development and design of its SIF technology. For purposes of context, it was on June 7, 2019, that Sylabs filed its SIF U.S. Patent Application (No. 16/435,251) with the USPTO. (Complaint ¶ 100). Then, on May 2, 2023, the USPTO issued U.S. Patent Number US 11,640,372 B2 to Sylabs for its SIF technology.

Through their cyber theft, Defendants utilized Sylabs' post and pre-patented SIF technology without disclosing Sylabs' prior art in its SIF technology. By failing to disclose such prior art in their patent applications, the Defendants perpetrated an intentional fraud upon the USPTO, which is proscribed by 37 CFR 1.56(a) (*see* Complaint ¶ 131): "However, no patent will be granted on an application in connection with which **fraud on the Office was practiced or attempted** or the duty of disclosure was violated through bad faith or intentional misconduct." Defendants violated 37 CFR 1.56 by breaching their duty of candor, disclosure, and good faith by perpetrating a fraud on the USPTO, to wit (Complaint ¶ 132): fraudulently omitting prior art, *i.e.*, Sylabs' Trade Secrets that Defendants obtained and misappropriated through cyber theft; fraudulently representing that SIF containers, Fuzzball, and Armored Containers were their IP when they were actually invented and owned by Sylabs; and fraudulently representing that they were the inventors of the IP whereas the actual inventors were Sylabs and its relevant employees.

For a point of reference, Figure 10 on page 43 of the Complaint sets forth the six (6) U.S. Patents that the Defendants procured through theft of Sylabs' SIF, Fuzzball, and Armored Containers technologies (*see* Complaint, 180, pp. 42-43).

Sylabs has an overwhelming amount of documentary evidence, including extensive computer drive audit logs ("Audit Logs") (explained below) evincing the Defendants'

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

unlawful intrusions into Sylabs' Server and cyber theft of Sylabs' IP, Trade Secrets, and Corporate Secrets. Part of the evidence utilizes a forensic tool known as the audit trail, which is comprised of audit logs that provide detailed information about an individual's access and operations within a computer server[1]:

"AUDIT TRAILS

**Audit trails maintain a record of system activity** both by system and application processes and **by user activity** of systems and applications. In conjunction with appropriate tools and procedures, audit trails can assist in detecting security violations, performance problems, and flaws in applications.

BENEFITS AND OBJECTIVES

Audit trails can provide a means to help accomplish several security-related objectives, including individual accountability, **reconstruction of events** (actions that happen on a computer system), intrusion detection, and problem analysis."[2]

Throughout the country, the FBI utilizes computer forensics through its Regional Computer Forensics Laboratories for investigations into various areas of criminal activity, including trade secret theft and theft or destruction of intellectual property.[3] In fact, the FBI's use of computer forensics for investigation of cyber thefts like those committed by the Defendants in this Action is ubiquitous and indispensable:

" 'Without digital forensics, it would be hard to get a conclusion in a lot of cases,' said Walsh, who noted the very nature of modern communications makes the work of the FBI more challenging. 'Suspects aren't talking on the phone anymore and our technical techniques are not working as well because so much more is encrypted. I pull in the [Forensics Laboratory] very early in my investigative strategy.' "[4]

---

[1]   *See, generally:*  https://csrc.nist.gov/glossary/term/audit_trail. (ECF 1, ¶ 111.)

[2]   *See:* https://csrc.nist.gov/csrc/media/publications/shared/documents/itl-bulletin/itlbul1997-03.txt. (ECF 1, ¶ 112.)

[3]   *See:* https://www.rcfl.gov/. (ECF 1, ¶ 114.)

[4]   *See:* https://www.fbi.gov/news/stories/rcfls-follow-the-modern-evidence-trail-081219. (ECF 1, ¶ 115.)

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

6

LEPISCOPO & ASSOCIATES LAW FIRM

Finally, in this Action, Sylabs' Audit Logs evince and memorialize each and every act of cyber theft perpetrated by the Defendants, all of which contained the following information for each and every unlawful access to Sylabs' server: (a) the identity of the person accessing, (b) the date and time of access, (c) what was accessed, (d) what files were deleted, (e) what files were renamed, (f) what files were download, (g) what directories were created for deletion and copying purposes, (h) the specific emails utilized to access Sylabs' server, and so on. (Complaint ¶¶ 111-116.)

## ARGUMENT

**I.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE MOTION TO DISMISS BECAUSE THE ISSUES RELATING TO COMPUTER FORENSICS, PATENTS, HIGH-TECH SUPERCOMPUTER TECHNOLOGY, AND PATENT LAW ARE HIGHLY COMPLEX, WHICH REQUIRES EXPERT WITNESS TESTIMONY, AND THE FACTS ARE DISPUTED, ALL OF WHICH MAY NOT BE RESOLVED THROUGH A RULE 12(b)(6) MOTION TO DISMISS.**

Once this Court has had the opportunity to review the Motion and supporting and opposing papers, **including those presented by the CIQ Defendants' Motion to Dismiss (ECF 40)**, the Court should quickly conclude that the disputed factual issues, complex forensic, technology, and patent issues, and the required expert testimony, require these matters to be placed before a trier of fact **during trial** not decided in a Rule 12(b)(6) motion to dismiss. Specifically, based on the fact that Sylabs' Complaint alleges complex issues of computer forensics, patents, high-tech supercomputer technology, patent law, etc., all of which requires expert witness testimony, this Court should deny the Motion in its entirety for discretionary reasons. *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, 482 F.2d 1086 (9th Cir. 1973) ("*Safe Flight*").

*Safe Flight* was a patent infringement case in which the defendants asserted various defenses, including patent invalidity. The parties filed cross-motions for partial summary judgment, which the district court denied because the patent issues were so highly complex they should be handled in a trial. The Ninth Circuit affirmed the denial for those reasons:

LEPISCOPO & ASSOCIATES LAW FIRM

"The factual premises of Safe Flight's motion, and of MDC's opposition thereto, are highly complex. The district court did not deny the motion because it was convinced that the motion was without merit, but because the issue presented was so complicated the court did not wish to dispose of it on a motion for partial summary judgment. In effect, the denial was without prejudice. Under the circumstances we believe this was a judicious way to deal with the matter."

*Id*. at 1093.

Provided for guidance only, the Central District of California applied *Safe Flight* in a similarly complex case:

"Aside from these discovery disputes, the scope of the legal and factual issues involved in the TCA motion is unwieldy, a sentiment expressed by counsel for Plaintiffs and Defendants at the hearing. When issues are particularly complex, courts may determine that summary judgment isn't the proper method to dispose of claims, and may deny summary judgment on those grounds."

*In re Toll Rds. Litig.*, 2018 U.S. Dist. LEXIS 226961, *33 ("*Toll Roads*").

In this Action, the issues presented are not only highly complex like the ones in *Safe Flight* and *Toll Roads*, but also disputed and require expert testimony that has not and cannot be presented in this Rule 12(b)(6) motion to dismiss. Accordingly, this Court should deny the Motion in its entirety on this ground alone.

## II. PLAINTIFF HAS ALLEGED FACTS WITH SUFFICIENT PARTICULARITY TO SATISFY THE PLEADING REQUIREMENTS OF RULE 8(a) THERBY REQUIRING THIS COURT TO DENY THE MOTION.

### A. SYLABS CLAIMS AGAINST THE AIG DEFENDANTS ARE MADE WITH SUFFICIENT PARTICULARITY, NOT UPON GROUP ALLEGATIONS, THEREBY SATISFYING THE LIBERAL PLEADING REQUIREMENTS OF RULE 8(A).

Preliminarily, it is clear that Defendants have not reviewed the details alleged in Sylabs' Complaint at Section V (pages 9-25), wherein Sylabs alleges in more than sufficient particularity all of Sylabs' trade secrets and intellectual property: (a) General Description of Sylabs' Trade Secrets (pp. 9-12); (b) Sylabs' SingularyPRO (pp. 12-15); (c)

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)

8

Sylabs' Singularity Image File Technology (pp. 15-16); (d) Sylabs' Singularity Enterprise (pp. 16-19); (e) Sylabs' Fuzzball Technology (pp. 19-21); and (f) Sylabs' Armored Containers Technology (pp. 21-24).

Commencing in 2019 and continuing through and including the timeframe in which Defendants committed cyber theft of Sylabs' Trade Secrets and IP, Sylabs was developing all of the forgoing trades secrets and intellectual property (Complaint ¶ 43). In particular, and as alleged in greater detail in Sylabs' Complaint in ¶¶ 109-179 , Defendants have unlawfully and fraudulently patented Sylabs' Fuzzball and Armored Containers through their theft of Sylabs' Trade Secrets and IP. (Complaint ¶ 180, p. 43; Figure 10.)

Defendants simply assert that Sylabs failed to each count with sufficient particularity, then marched on to make assertions and arguments to fit a Rule 12(b)(6) motion. In so doing, Defendants failed to pay any mind to Rule 8(a), which requires that each count of Sylabs Complaint simply contain "a **short and plain statement** of the claim showing that the pleader is entitled to relief . . ." (Emphasis added.)

There is another aspect of the Motion that requires mentioning. Defendants act as though they have no idea, understanding, or **notice** of Sylabs' Trade Secrets and Intellectual Property. However, as set forth in Section V of Sylabs' Complaint (¶¶ 109-179) and summarized in Figure 10 (Complaint ¶ 180, p. 43), Defendants have full and complete notice of what Sylabs has alleged to be its Trade Secrets and Intellectual Property, which Sylabs alleges Defendants have stolen (Complaint ¶¶ 129-134).

Sylabs has alleged that Defendants have committed cyber theft of its Trade Secrets and Intellectual Property, which was unlawfully patented by Defendants as the 3 Sylabs' Fuzzball, US 10,970,113, US 11,099,893, US 11,310,342 ("Fuzzball Patents"), and 3 Sylabs' Armored Containers, US 11,055,428, US 11,163,902, and US 11,321,064 ("Armored Containers Patents"). (Complaint ¶¶ 129-134 and ¶ 180.)

Defendants also make the specious argument that "Sylabs' Claims Against IAG and Whitley Rest on Impermissible Group Allegations." (Mot. Section IV.A.) Of course, such an argument can always be made when a conspiracy is alleged. Part of the legal reason why

LEPISCOPO & ASSOCIATES LAW FIRM

conspiracies are so dangerous is that unlawful conduct coordinated through confederates like Defendants increased the likelihood the object of their conspiracy will succeed—which is precisely what has occurred in this Action. More details of Defendants' conspiracy will be revealed during written discovery and depositions. This is not a trial but rather the pleading stage where the complaint is required to place Defendants on notice pursuant to the liberal pleading requirements of Rule 8(a)—the Complaint satisfies those requirements.

As will be discussed below, Sylabs' Complaint has satisfied the pleading and legal dictates of Rule 8(a) and Rule 12(b)(6). Accordingly, the Motion must be denied in its entirety.

**B.** **SYLABS' COMPLAINT ALLEGES FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH COUNT I FOR VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA") AND COUNT III FOR VIOLATIONS OF CALIFORNIA UNIFORM TRADE SECRETS ACT ("CUTSA").**

1.    Sylabs Has Sufficiently Pleaded And Defined Its Trade Secrets And Intellectual Property.

Defendants' contention that Sylabs has failed to sufficiently define its protected Trade Secrets And Intellectual Property and security measures is disproven by the copious facts that set forth in painstaking detail the genesis, development, functionality, capability, distinctiveness, secrecy, and immense economic value of Sylabs' high-performing computing ("HPC") trade secrets that Co-Conspirators and Defendants unlawfully and brazenly ransacked. (Complaint ¶¶ 43-108.)

A trade secret is information that is economically valuable because it is unknown to others. (18 U.S.C.A. § 1839). The "DTSA and CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F.Supp.3d 868, 880 (N.D. Cal. 2018). Concerning the requirements, "courts are in general agreement that trade secrets need not be disclosed in detail in a complaint…" *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, 2015 U.S. Dist. LEXIS 63610, *15 (N.D. Cal. 2015). It is enough to simply "describe the subject matter of the trade secret" to

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

separate it "from matters of general knowledge in the trade or of special persons who are skilled in the trade..." *Alta Devices, Inc., supra*, 343 F.Supp.3d at 881. There is no heightened pleading requirement. *See Rockwell Collins, Inc. v. Wallace, 2017 U.S. Dist. LEXIS 190361,* at 5 (C.D. Cal. 2017).

Here, Sylabs has adequately defined its Trade Secrets and Intellectual Property. Indeed, they are described in meticulous detail. (Complaint ¶¶ 43-108.) Sylabs' Fuzzball Technology, for example, a trade secret that Defendants indisputably and unlawfully stole from Sylabs–and later fraudulently patented–is sufficiently defined:

> "In 2018, Sylabs commenced development of technologies for the high-performance computing industry ("HPC"), which is a technology that harnesses the power of supercomputers or computer clusters to solve complex problems requiring massive computation." (Complaint ¶43.)

> "HPC refers to the computer science architecture of aggregating computing power in a way that delivers much higher performance than could be obtained from a typical desktop computer or workstation" (Complaint ¶44.)

> "On or about June 5, 2019, Sylabs first discussed the concepts of Fuzzball and Armored Containers during a design review meeting with Sylabs' staff, including its engineers. The high-level design of the architecture of Fuzzball commenced in late 2019 (Complaint ¶90). [I]n June of 2019 Sylabs invented and commenced development and design of Fuzzball." (Complaint ¶ 98.)

> "Fuzzball is Sylabs value-added technology that works with Singularity to manage and schedule jobs to execute on one or more nodes and manage locality of data sets by selecting the correct node(s) and cluster(s)." (Complaint ¶53.)

> "Fuzzball **service**, is a cloud native service for workflow management and orchestration. The second, Fuzzball **agent**, is a small, purpose-built systems service that executes workflows on computer nodes" (Complaint ¶ 91.)

> "The power of Fuzzball clusters lies in their ability to be easily configured to accommodate various scales of computer resources. Fuzzball can be deployed in environments from as small as a single node … to deploying the service to orchestrate workloads across agents on various clusters of supercomputers located on-premises or on the cloud" (Complaint ¶ 92.)

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)

11

LEPISCOPO & ASSOCIATES LAW FIRM

"Fuzzball service has a pluggable scheduler that will manage where and when jobs within a workflow are executed based on criteria such as submission order, data locality, hardware availability, etc. Having a pluggable scheduler allows for the cluster scheduling behavior to be changed depending on what is optimal for the particular cluster deployment." (Complaint ¶ 93.)

"Fuzzball can be comprehended as an intelligent task manager that controls data flow and computing at the node and cluster level regardless of the geographic locations of nodes and clusters—i.e., it harmonizes supercomputers that might be located on premises or on the other side of the globe. Thus, Fuzzball's intelligent management technology makes location irrelevant." (Complaint ¶ 94.)

"Sylabs'… Fuzzball technology, and Armored Containers technology all have a broad customer base including academic and governmental research entities (DoE) and military agencies (DoD), as well as companies in the biomedical, telecommunications, electronics, and manufacturing sectors." Figure 8 (Complaint ¶ 108.)

"[I]n June of 2019 Sylabs invented and commenced development and design of Fuzzball, which Defendants misappropriated from Sylabs through their cyber theft of Sylabs' Trade Secrets and IP. Once their cyber theft was complete, Defendants subsequently patented Fuzzball as their own invention through prosecution of fraudulent patent applications and perpetrating a fraud on the USPTO." (Complaint ¶¶ 98, 129-132.)

"Sylabs' Trade Secrets and IP constitute information, including systems and methods, code, compilations, programs, devices, methods, techniques, or processes that derive independent economic value from not being generally known to the public or other persons who can obtain significant economic value from the Trade Secrets and IP's disclosure." (Complaint ¶¶ 211, 251.)

The foregoing alleges Sylabs' Trade Secrets and Intellectual Property with sufficient particularity in compliance with Rule (8)(a). Defendants should not be permitted to feign confusion about what they demonstrably stole. If Defendants require more clarity, they need only review the fraudulently obtained patents for Sylabs' Fuzzball Technology. (Complaint ¶¶ 129-132, 179-181, Figure 10). The forensic audit trails detailing how the massive and unauthorized cybertheft occurred, coupled with the rapidity by which

Defendants and Co-Conspirators started a new company (*i.e.*, Defendant CIQ) and filed for patents of Sylabs' Fuzzball and Armored Containers Technology–information and technological sophistication Defendants and Co-Conspirators did not previously have–proves Sylabs' Claims. (Complaint ¶¶ 109-134, 171, 179-181, Figure 10.) *See Wisk Aero LLC v. Archer Aviation Inc.*, 2021 U.S. Dist. LEXIS 160001, *41 (N.D. Cal. 2021) (suspiciously fast development of technology can contribute to finding misappropriation) (citing cases).

The allegations in Section V of the Complaint when taken in their totality are sufficient to meet the pleading standard of Rule 8(a). Taken together, the allegations reasonably imply misappropriation by Defendants. *See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 984 (N.D. Cal. 2018) (finding that reliance on circumstantial evidence is particularly appropriate in trade secret cases); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849 (N.D. Cal. 2019) (finding that an implausibly fast timeline can be indicative of misappropriation). It should be noted that on June 7, 2019, Sylabs filed its SIF U.S. Patent Application (No. 16/435,251) with the USPTO. (Complaint ¶ 100). Shortly after Defendants succeeded with their cyber theft in March-June of 2020, they filed, for example, the Fuzzball patent application in December of 2020, which was granted **four months** later on April 6, 2021, issued as U.S. Patent No. US 10,970,113 (*see* Exh. 37); whereas, Sylabs' patent application 16/435,251 was not granted until **3-years and 10 months** later in May of 2023 (Complaint ¶¶ 128-133 and 179-181). Defendants' cyber theft of Sylabs' Trade Secrets and Intellectual Property was a smashing success, reducing Defendants' patent timeline by over 3 years.

    2.    <u>Sylabs Has Sufficiently Pleaded Reasonable Measures To Protect Its Trade Secrets</u>.

Furthermore, Defendants' contention that Sylabs failed to allege it took reasonable measures to protect its trade secrets is unfounded. (Mot. 12:23-13:16.) Sylabs "took reasonable measures to protect the secrecy of the Sylabs' Trade Secrets and IP." (Complaint ¶¶ 212, 252). This is demonstrated by the reasonable manner by which Sylabs

LEPISCOPO & ASSOCIATES LAW FIRM

secured and stored its Trade Secrets and IP for work at Sylabs. (Complaint ¶ 110, n. 13). This can also be inferred from the copious allegations detailing how Defendants conspired to and evaded Sylabs' reasonable security measures to accomplish their commandeering of Sylabs' Trade Secrets (emphasis added):

> "[D]uring the time frame of March 1 through June 1, 2020, defendant Greg Kurtzer used three different email accounts to commit his cyber theft by granting full and complete credentials for all 3 email accounts to access Sylabs' Server, two of which were his personal email addresses, which he encouraged his Co-Conspirators to use to hide their cyber theft, as memorialized in the Audit Logs, Greg Kurtzer, 3/1/20 thru 6/1/20: a. Sylabs: g@sylabs.io; and b. Personal: gmkurtzer@gmail.com & gmk@hushmail.com ("Personal Emails")." (Complaint ¶ 143.)

> "On March 11, 2020 (same date as the Kurtzer/**Whitley** Email), defendant Kurtzer provided defendants **Whitley and IAG** with access to the Sylabs Server, in particular to all documents relating to Fuzzball, as memorialized in the Audit Logs, Greg Kurtzer, 3/11/20." (Complaint ¶ 150.)

> "On March 13, 2020, defendant Greg Kurtzer provided defendants **Whitley and IAG** with access to the Sylabs Server, in particular to all of Sylabs Corporate Records, as memorialized in the Audit Logs, Greg Kurtzer, 3/13/20." (Complaint ¶ 151.)

> "On March 24 through 31, 2020, defendant Adolph commenced deleting and downloading items from the Sylabs' Server by using defendant Greg Kurtzer's Command Control email account and defendant Adolph's personal email account. These deletions and downloads related primarily to Sylabs' Trade Secrets and IP." (Complaint ¶ 151.)

> "On March 26, 2020, defendant Greg Kurtzer granted his Personal Email accounts full access to Sylabs' Server, as memorialized in the Audit Logs, Greg Kurtzer (g@sylabs.io and gmkurtzer@gmail.com & gmk@hushmail.com), 3/26/20." (Complaint ¶ 166.)

> "Once he granted his Personal Email accounts access to the Sylabs' Server on March 26, 2020, defendant Greg Kurtzer immediately commenced the cyber theft of Sylabs' Server by downloading the entire contents of Sylabs' Server to his Personal Email accounts, including, for example, all of Sylabs' Trade Secrets and IP, all current and potential sales and pipeline, all corporate

LEPISCOPO & ASSOCIATES LAW FIRM

documents, and privileged documents, as memorialized in the Audit Logs, Greg Kurtzer (g@sylabs.io and gmkurtzer@gmail.com & gmk@hushmail.com), 3/26/20." (Complaint ¶ 167.)

"On March 29, 2020, in order to further Defendants' conspiracy to steal Sylabs' Server, former Sylabs employee Rose Stein transferred her ownership and administrative credentials in Sylabs' Server to defendant Greg Kurtzer. He proceeded to download all of the documents from the Sylabs' Server." (Complaint ¶ 169)

The forgoing allegations are not intended to be exhaustive but show that Defendants circumvented Sylabs' reasonable security measures to begin pillaging both before and after they left their employment with Sylabs. (Complaint ¶¶ 170-178). Sylabs' Server was never open or generally accessible. As is evident by the forgoing allegations, Sylabs had company emails for its employees, credentials, and access limitations, which Defendant Kurtzer and Co-Defendants breached only through an intentional and malicious abuse of their positions and authority. Defendants are known as "**insider threats**," which is "the potential for an insider to use their authorized access or understanding of an organization to harm that organization." *See* Cybersecurity and Infrastructure Security Agency. "Defining Insider Threats." https://www.cisa.gov/topics/physical-security/insider-threat-mitigation/defininginsiderthreats. Thus, Accordingly, Sylabs has adequately alleged that it took reasonable measures to maintain the secrecy of its trade secrets. *See Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F.Supp. 1231, 1253 (N.D. Cal. 1995).

>        3.    Sylabs Has Sufficiently Pleaded Misappropriation Of Trade Secrets.

Defendants' contention that the misappropriation claims fail because there are no facts to indicate they had reason to know that the information Co-Conspirator Kurtzer disclosed to them was a trade secret or that Kurtzer was breaching a duty of confidentiality at the time of the disclosure is preposterous because, as further shown below, it erroneously ignores the reality of the circumstances as revealed in the Complaint.

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

Importantly, when analyzing the instant Motion, this Court should consider the Complaint as a whole, the totality of the circumstances alleged. Rule 8(a). Moreover, because "misappropriation and misuse can rarely be proved by convincing direct evidence," courts recognize that "circumstantial evidence is particularly important in trade secret cases." *UniRAM Technology, Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F.Supp.2d 938, 944 (N.D. Cal. 2007). This is why Sylabs' is entitled to conduct written discovery and depositions, which are so important.

Here, Sylabs has adequately alleged that Defendants knew or had reason to know the information it acquired was a trade secret. The circumstantial evidence is overwhelming. Sylabs began developing its Fuzzball Technology in June 2019. (Complaint ¶ 180, Figure 10.) In early March 2020, defendant Kurtzer "engaged in detailed planning with" Defendants to "develop their plan for stealing Sylabs' Trade Secrets …" (Complaint ¶ 152). Defendant Kurtzer emailed Defendants while he was still Sylabs CEO and revealed his plan to leave Sylabs and take with him technology and employees to carry on the same work at Defendant CIQ. (Complaint ¶ 147.) Defendants insist Kurtzer's comment about Sylabs' Fuzzball Technology being "open source" exonerates them, but this is not dispositive at the pleading stage—this is something for the jury or court sitting as the trier of fact to assess. Defendant Kurtzer also writes that he "personally lead[s] those open source projects" and, critically, that he wants "*to keep the team together and continue the development of Fuzzball/HPC-2.0 …* for **NEWCO** (or Defendant CIQ)," meaning it was already in development at Sylabs and therefore Sylabs' Trade Secrets and Intellectual Property. *Id.* (emphasis added).

Defendant Kurtzer further touts the current and projected economic value of Sylabs' Fuzzball Technologies, including "big name customers and opportunities", sales models, projections, DOD awards, and "new market injections points around Fuzzball," all of which were obviously generated for the use and benefit of Sylabs, <u>not</u> Defendant

LEPISCOPO & ASSOCIATES LAW FIRM

CIQ or Defendants. (Complaint ¶ 147.) Sylabs has satisfied Rule 8(a)'s pleading requirements to demonstrate that Defendants knew and had reason to know the information involved Sylabs' trade secrets, and, by extension, that Defendants' cyber theft of Sylabs' Trade Secrets and Intellectual Property was well under way before and after defendant Kurtzer left Sylabs. (Complaint ¶¶ 109-178.)

That Defendants knew or had reason to know the information they acquired were Sylabs' protected Trade Secrets and Intellectual Property is further supported by the fact that Kurtzer had to grant Defendants who were external users access to Sylabs' otherwise private server (*i.e.*, Sylabs' Server) where Defendants' theft began (but did not end), which will be proven by forensic computer evidence through the Audit Logs—in the Complaint Sylabs specifically allege and provide an offer of proof of the forensic evidence in the form of the Audit Logs:

> "The details of Defendants' conspiracy and criminal scheme to steal Sylabs' Trade Secrets, IP, and Corporate Secrets will be set forth below. The evidence utilized is a forensic tool known as the audit trail, which is comprised of audit logs that provide detailed information about an individual's access and operations within a computer server.[5]

> The Information Technology Laboratory at the National Institute of Standards and Technology, U.S Department of Commerce ("NIST") provides the following guidance regarding audit trails (emphasis added):

> 'AUDIT TRAILS

> **Audit trails maintain a record of system activity** both by system and application processes and **by user activity** of systems and applications.
> In conjunction with appropriate tools and procedures, audit trails can assist in detecting security violations, performance problems, and flaws in applications.

> BENEFITS AND OBJECTIVES

> Audit trails can provide a means to help accomplish several security-related objectives, including individual accountability, **reconstruction of events**

---

[5]    *See, generally:* https://csrc.nist.gov/glossary/term/audit_trail.

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

17

(actions that happen on a computer system), intrusion detection, and problem analysis.' [6]

As alleged in this Action, Defendants' cyber theft and intrusion is evinced through audit logs from Sylabs' Server ("Audit Logs")."

(Complaint ¶¶ 111-113.)

Furthermore, defendants Whitley and IAG were placed on notice of the cyber theft scheme on March 11, 2020:

"On March 11, 2020, defendant Greg Kurtzer sent defendant Joel Whitley, a principal of defendant IAG, an email ("Kurtzer/Whitley Email"), wherein he explains part of the conspiracy to commit cyber theft of Sylabs' Trade Secrets and Sylabs' customers:

'Dear Joel, . . .

This will provide us with the ability to keep the team together and continue the development of Fuzzball/HPC-2.0. Additionally, we have some big name customers and opportunities we've been developing and this will allow us to continue bringing in the ARR (about $1M today) while also servicing a pipeline of $10M over the next 24 months.

It is important to note that the intellectual property that we would need to build Fuzzball is all open source and I personally lead those respective open source projects and communities. Sylabs does have some commercial IP, which would be quite advantageous to have (e.g. Singularity Enterprise, which is not open source), but it is not a requirement for Fuzzball or any of our plans or projections for **NEWCO**. . .

The second model demonstrates inclusion of an optimistic sales pipeline which includes multiple DOD awards, strategic development NREs, as well as building ARR. It also includes several new market injection points around Fuzzball, which are conservative.'

The Kurtzer/Whitley Email is memorialized in the Audit Logs, Greg Kurzer, 3/11/20."

---

[6]    *See:* https://csrc.nist.gov/csrc/media/publications/shared/documents/itl-bulletin/itlbul1997-03.txt.

LEPISCOPO & ASSOCIATES LAW FIRM

(Complaint ¶ 147.)

Furthermore, Sylabs has also adequately alleged that Defendants knew or had reason to know that Kurtzer was breaching a duty of confidentiality when he allowed Defendants who were external users to enter, access, and download "Sylabs' Server, in particular to all documents relating to Fuzzball." (Complaint ¶ 150.)

The allegations demonstrate that defendant Kurtzer was conspiring with Defendants to leave Sylabs and take with him Sylabs' Fuzzball and Armored Containers technology, which Defendants knew was already in development at Sylabs and had immense economic potential and Defendants would continue its development at what would become Defendant CIQ, a direct competitor of Sylabs. (Complaint ¶¶ 147-152). It undeniable that Defendants' cyber theft was adverse to Sylabs.

Defendants' reliance on *CleanFish v. Sims*, No. 19-CV-03663-HSG, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) and *Navigation Holdings, LLC v. Molavi*, 445 F.Supp.3d 69, 79 (2020) are misplaced because they are factually distinguishable. They primarily involved customer lists as trade secrets, not technology. The court found the plaintiffs failed to assert enough facts to indicate the defendants knew that the information the disclosing party provided (*i.e.*, customer lists) belonged to the plaintiffs. *CleanFish*, *supra*, at *10. Here, however, the correspondence exchanged between Co-Conspirator Kurtzer and Defendants unquestionably reveals that they knew Sylabs' Fuzzball Technology belonged to Sylabs because Sylabs had already developed it. (Complaint ¶¶ 90, 94, 98, 108, and 147). As set forth above and in the Complaint, defendant Kurtzer disclosed this fact to Defendants, along with his intent to steal Sylabs' Fuzzball Technology and continue to develop it. (*Id*.) Defendant Kurtzer granted Defendants access to Sylabs' otherwise private and secure server ("Sylabs' Server) to view and acquire the Sylabs' Server and Fuzzball Technology, all of which will be shown by forensic computer evidence. (Complaint ¶ 150.) Consequently, these cases are of no help to Defendants.

LEPISCOPO & ASSOCIATES LAW FIRM

**C.    SYLABS HAS PLEADED FACTS WITH SUFFICIENT PARTICULARITY TO STATE CLAIMS UNDER THE CFAA AGAINST WHITLEY AND IAG**

Defendants' contentions that Plaintiff's CFAA claim fails because (1) it is barred by the statute of limitations, (2) fails to identify the specific CFAA provisions Defendants violated, (3) fails to allege that Defendants accessed Sylabs' computers, and (4) fails to assert unauthorized access are all meritless.

First, CFAA's 2-year statute of limitations does not begin to run until "the date of the discovery of the damage." (18 U.S.C. § 1030(g)). Here, the earliest Sylabs would have fully learned that Defendants had taken their Trade Secrets and Intellectual Property and had stolen and used Sylabs' source code would have been on April 6, 2021, when U.S Patent No. US 10,970,113, the first and earliest of the six Fuzzball and Armored Containers U.S. Patents, was granted and published. (*See* Complaint ¶¶ 179-181; Figure 2, *supra*; Exhibit 37.) As Sylabs Complaint was filed on February 24, 2023 (ECF 1), which is clearly within the 2-year statute of limitation of the CFAA, Sylabs' CFAA claim is not time barred.

Second, Sylabs dedicates an entire section of its Complaint to identifying and setting out the specific provisions of the CFAA that Sylabs alleges Defendants violated; accordingly, Defendants' argument is nonsensical. (Complaint ¶¶ 190-191, 230-248). Defendants need only read Sylabs' robust, factually detailed, and well-organized Complaint to ascertain the information they claim is missing. (*Id*.) Thus Defendants' second argument is meritless.

Third, Sylabs' forensic computer evidence incontrovertibly demonstrates that Defendants unlawfully accessed, entered, selected, viewed, and downloaded Sylabs' Trade Secrets and IP from Sylabs' Server, which was hosted in Google Drive. (Complaint ¶¶ 110, 147-152). Google Drive is an electronic device connected to the internet that performs logical and storage functions including data storage, and therefore qualifies as a "protected computer" under the CFAA. (Complaint ¶ 110.) *See also* 18 U.S.C. §§ 1030(e)(1), 1030(e)(2)(B); *U.S. v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (stating

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

**20**

"protected computer" means "effectively all computers with internet access"); *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1136 (9th Cir. 2009) (website considered a protected computer). Thus, Sylabs has adequately alleged that Defendants accessed its computer system. Defendants' reliance on *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, WL 2988271, at *6 (C.D. Cal. 2014) is inapposite because unlike Sylabs–who possesses and has alleged in the Complaint undisputed forensic evidence (*i.e.*, Audit Logs) that Defendants accessed, entered, viewed, and downloaded information from Sylabs' Server–the plaintiffs in *New Show* alleged only that the defendants had "gained access to confidential information," which the court found insufficient. (*Id*.) Of course, as the well pleaded allegations in the Complaint demonstrate, that is not the case here.

Fourth, Defendants accessed and entered Sylabs' Server without authorization and then viewed and downloaded Sylabs' Server and Trade Secrets, which will be proven by forensic computer evidence. (Complaint ¶¶ 110-116.) The authority Defendants rely on is inapposite because the defendants in those cases were former employees who at one time or another had the authority to access the computers and/or databases in question. (*See U.S. v. Nosal*, 844 F.3d 1024, 1028 (9th Cir. 2016) (former employee); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (former employee); *Van Buren v. U.S.*, 141 S.Ct. 1648, 1649 (2021) (same); *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, WL 4390391, at *18 (C.D. Cal. 2020) (same). Here, however, defendants Whitley and IAG were never employees, agents, or customers of Sylabs—they were co-conspirators engaged in the plan to commit cyber theft of Sylabs' Trade Secrets and Intellectual Property. (Complaint ¶¶ 27-29 and ¶¶ 109-178.) At no point in time did Defendants have the authority to access and enter Sylabs' Server.

Finally, that Co-Conspirator Kurtzer gave Defendants the credentials to access Sylabs' Server does not exonerate Defendants because Sylabs will be able to prove with forensic computer evidence that Kurtzer accessed Sylabs' Server both before *and after his employment with Sylabs ended*, which is a per se violation of the CFAA. (Complaint ¶¶ 109-134 and ¶¶ 170-178.) *See LVRC, supra*, 581 F.3d at 1136 ("There is no dispute that if

[the defendant] accessed [the plaintiff's] information … after he left the company … [the defendant] would have accessed the computer 'without authorization for purposes of the CFAA.''). Accordingly, Defendants' Motion must be denied.

**D.    SYLABS HAS AMPLY PLEADED FACTS WITH SUFFICIENT SPECIFICITY TO STATE CLAIMS UNDER RICO (CIVIL) AGAINST WHITLEY AND IAG**

Defendants' argument that Sylabs' RICO claims fail because Sylabs fails to assert (1) requisite predicate acts or (2) establish a pattern of racketeering activity is unfounded.

Sylabs' RICO claims against Defendants must survive because it has amply pleaded multiple predicate acts in its Complaint. *See Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (RICO claims must include "racketeering activity (known as predicate acts)"). Here, Defendants misappropriated Sylabs' Trade Secrets and Intellectual Property without authorization, which is a separate predicate act (Complaint ¶¶ 27-28, 30, 37, 110-111, and 147-153). 18 U.S.C. § 1961(1); 18 U.S.C. § 1832(a)(1). Defendants entered Sylabs' Server and accessed, received copies, and downloaded Sylabs' trade secrets without authorization (Complaint ¶¶ 27-28, 30, 37, 110-111, and 147-153), which is a separate predicate act. 18 U.S.C. § 1961(1); 18 U.S.C. § 1832(a)(2).

Defendants also received and possessed (and still possess) Sylabs' trade secrets knowing or having reason to know that they were obtained without authorization (Complaint ¶¶ 27-28, 30, 37, 110-111, and 147-153), which is a separate predicate act. 18 U.S.C. § 1961(1); 18 U.S.C. § 1832(a)(3). Defendants conspired with Co-Conspirators, including Kurtzer, to accomplish the forgoing unlawful predicate acts (Complaint ¶¶ 27-28, 30, 37, 110-111, and 147-153), which is also a separate predicate act. 18 U.S.C. § 1961(1); 18 U.S.C. § 1832(a)(5). Defendants also perpetrated fraud on the United States Patent Office (USPTO) by filing fraudulent patent applications for Sylabs' trade secrets, including Sylabs' Fuzzball Technology (Complaint ¶¶ 27-28, 30, 37, 110-111, 147-153, and 170-181.), which is a separate predicate act. 18 U.S.C. § 1961(1); 18 U.S.C. § 1343. All of this can and will be proven by forensic computer evidence (*i.e.*, the Audit Logs).

LEPISCOPO & ASSOCIATES LAW FIRM

(Complaint ¶¶ 111-113.) Thus, Sylabs has alleged predicate acts with sufficient particularity to satisfy Rule 8(a).

Sylabs has also sufficiently pleaded that Defendants have and are engaged in a pattern of racketeering activity that involves conspiring to misappropriate Sylabs' trade secrets, misappropriating Sylabs' trade secrets, creating a new corporate entity (*i.e.*, Defendant CIQ) to compete with Sylabs' using its trade secrets, filing fraudulent applications with the USPTO, and obtaining fraudulent patents of Sylabs' trade secrets, and using Sylabs' trade secrets to "commit interstate securities fraud." (Compliant ¶¶ 109-181.) Sylabs' Complaint alleges facts with sufficient particularity to show that Defendants' cyber theft of Sylabs' Trade Secrets and Intellectual Property that was ongoing in March through June of 2020, and continues to the present. Specifically, the profits (Complaint ¶ 223) and investment capital from Defendants (Complaint ¶¶ 27-28 and 37-39) and valuation that Co-Conspirators have enjoyed and received through their cyber theft and patenting of Sylabs' Trade Secrets and Intellectual Property, which is ongoing and continues as Defendants and Co-Conspirators continue to seek investment capital.

The following discussion is not intended to be a comprehensive recitation of all the events surrounding the theft and subsequent use of Sylabs' Trade Secrets, IP, Corporate Secrets, privileged documents, and sensitive information. Rather, it is to establish a pattern of their criminal enterprise and conspiracy, which is currently ongoing and expanding. For example, through defendant CIQ, Defendants recently raised $26,000,000, making a total of $33,000,000 raised, and according to defendant Greg Kurtzer, CIQ now has a valuation of $150,000,000.20. (Complaint ¶ 138).

CIQ's raising of capital and its valuation are the product of their cyber theft as outlined above. Thus, separate and apart from the cyber theft Defendants have committed against Sylabs and the fraud perpetrated on the USPTO, Defendants have been and currently are engaged in an ongoing conspiracy to commit interstate securities fraud by their efforts to raise capital based on the Trade Secrets and Intellectual Property they stole from Sylabs. (Complaint ¶ 139.)

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

23

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

In Paragraph 198 of Sylabs' Complaint, Sylabs sets forth the operative section showing pattern of Racketeering Activity engaged in through Co-Conspirators and Defendants' use of the proceeds from profits and investment capital that was derived from their cyber theft to operate defendant CIQ, Section 1962 of RICO, which provides:

> "(a) It shall be unlawful for any person who **has received any income derived, directly or indirectly, from a pattern of racketeering activity** . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

(*See* Complaint ¶ 198; emphasis added.)

Finally, Defendants incorrectly argue that Sylabs has failed to plead violations of Section 1962(d) of RICO, which provides:

> "(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

(*See* Complaint ¶ 198.) As discussed and cited above, Sylabs has alleged facts with sufficient particularity to show Defendants' conspiracy to engage in Racketeering Activity thereby violating Section 1962(d).

**E.    SYLABS' COMMON LAW CLAIMS ARE <u>NOT</u> PREEMPTED**

Defendants' expansive theory of preemption is inconsistent with California law and therefore fails. The CUTSA "does not displace noncontract claims that, although related to trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495, 506 (2013). Here, Co-Conspirators and Defendants unlawful and treacherous conduct extended far beyond just Sylabs' Trade Secrets and Intellectual Property, and included separate and distinct corporate records, financial records, collaboration records, customer lists, sales lists, statements of work, purchase order, marketing, HR records, and employees' files, all of which Defendants conspired to, and aided and abetted Co-Conspirators to pilfer for their own unjust gain. (Complaint ¶¶ 117-120 and 133-135).

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

24

The nature of the information stolen is important. In *Angelica Textile*, for example, the court reversed the dismissal of a common law conversion claim because even though the documents and information misappropriated "contained no trade secrets," they were still "property and therefore the proper subject of a conversion claim." *Angelica Textile, supra*, 220 Cal.App.4th at 508. Sylabs has alleged and will be able to prove through forensic computer evidence that Defendants unlawful conduct extended beyond Sylabs' Trade Secrets. Accordingly, Sylabs' common law claims must survive.

## III.    SYLABS REQUESTS LEAVE TO AMEND.

As there is an enormous amount of evidence in this Action, even before discovery of all parties has commenced. Consequently, any deficiencies would be easily cured. Accordingly, in the event, this Court determines that one or more counts of Sylabs' Complaint is or are deficient, then Sylabs respectfully request leave to amend in light of Supreme Court and Ninth Circuit precedent:

> "As the Supreme Court indicated in Foman [v. Davis, 371 U.S. 178, 182 (1962)], amendment should not be barred as futile if the underlying facts 'may be a proper subject of relief.' As we have recently said, leave to amend should be allowed unless the complaint 'cannot under any conceivable state of facts be amended to state a claim.' *Alexander v. Pacific Maritime Ass'n*, 9th Cir., 1963, 314 F.2d 690. Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.' 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)."

*Breier v. Northern California Bowling Proprietors' Association*, 316 F.2d 787, 790 (1963).

## CONCLUSION

Based on the forgoing, Sylabs respectfully requests the Court to deny the motion. Alternatively, if this Court grants the Motion in whole or in part, then Sylabs hereby requests leave to amend the Complaint.

Dated:  September 11, 2023.          **LEPISCOPO & ASSOCIATES LAW FIRM**

By: /s/ Peter D. Lepiscopo
**PETER D. LEPISCOPO**

LEPISCOPO & ASSOCIATES LAW FIRM

1

## <u>CERTIFICATE OF SERVICE</u>

2
       I hereby certify that I electronically filed the foregoing with the Clerk of the Court

3
for the United States District Court for the Northern District of California by using the

4
CM/ECF system on September 11, 2023. I further certify that all participants in the case

5
are registered CM/ECF users and that service will be accomplished by the CM/ECF

6
system.

7
       I certify under penalty of perjury that the foregoing is true and correct. Executed on

8
September 11, 2023.

9
                          LEPISCOPO & ASSOCIATES LAW FIRM

10

11
                          By: /s/ Peter D. Lepiscopo
                               **PETER D. LEPISCOPO**

12
                               *Counsel of Record*
                             Attorneys for Plaintiff, **SYLABS, INC.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
      **SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
      **IAG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 39)**

LEPISCOPO & ASSOCIATES LAW FIRM