UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLABS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GREGORY ROSE, et al.,<br><br>    Defendants. | Case No. 23-cv-00849-SVK<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 39-40 |

Plaintiff Sylabs, Inc. ("Sylabs") accuses 11 defendants—Gregory Kurtzer ("GK"), Julia Kurtzer ("JK"), Robert Adolph, Matthew Hayden, Erin Fong, CTRL IQ, Inc. d/b/a CIQ ("CIQ"), Marlin Prager, David Buss, Open Drives, Inc. ("ODI"), IAG Capital Partners ("IAG") and Joel Whitley—of conspiring to steal its intellectual property. *See* Dkt. 1 (the "Complaint"). With the exception of Defendant GK, Sylabs offers little detail concerning Defendants' conduct. What detail Sylabs does offer proves insufficient to state any of Sylabs' claims. Accordingly, after considering the Parties' briefing, relevant law and the record in this action, and for the reasons that follow, the Court **DISMISSES** all of Sylabs' claims **WITH LEAVE TO AMEND**.

**I.   BACKGROUND**

The following discussion of background facts is based on the allegations contained in the Complaint, the truth of which the Court accepts for purposes of resolving the Motions. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022).

///

///

///

///

///

///

### A. Sylabs Created Five Technologies For The Supercomputer Industry

Supercomputers allow users "to solve complex problems requiring massive computation" through a technology called high-performance computing ("HPC"). Complaint ¶ 43. Users in the HPC industry often use an open-source (*i.e.*, publicly available) software called "Singularity." *See id.* ¶¶ 55-56. Singularity "fill[s] a gap in the performance of supercomputers in the HPC industry," but its capabilities are "limited." *See id.* ¶¶ 56-58.

In light of Singularity's popularity and limitations, "Sylabs was founded in order to invent and market value-added technology for Singularity in the HPC industry." *Id.* ¶ 59. Between 2018 and 2020, Sylabs created five such value-added technologies: (1) SingularityPRO, (2) Singularity Image Format ("SIF") technology, (3) Singularity Enterprise, (4) Fuzzball and (5) Armored Containers. *See id.* ¶¶ 60-108.

### B. Defendants Departed Sylabs And Took Its Technologies On The Way Out

Towards the end of 2019, Defendant GK, Sylabs' then-CEO, began "scar[ing] off" investors:

> [H]e feigned being unprepared for meetings and uninterested in his presentations, could not explain Sylabs' IP or existing products, provided incorrect and foolish answers to questions, and exhibited other behavior and demeanor that resulted in all investors being scared off and not moving forward with any further discussions or negotiations.

*Id.* ¶ 141. Then, on March 11, 2020, Defendant GK emailed Defendant Whitley, a principal of investment firm IAG, about (1) Sylabs' "big name customers and opportunities," (2) "keep[ing] the team together and continu[ing] the development of Fuzzball/HPC-2.0," (3) "plans" and "projections" for a "NEWCO" entity and (4) "build[ing]" Fuzzball using open-source technology.[1] *See id.* ¶ 147. A week-and-a-half later, Defendants GK, Adolph (a Sylabs' advisor), Hayden (a Sylabs' project coordinator), JK (a Sylabs' advisor) and Fong (a Sylabs' controller and marketer) resigned from the company. *See id.* ¶¶ 31-34, 156-161. Shortly thereafter, on April 1, 2020,

---

[1] Sylabs does not include a complete copy of the March 11, 2020 email in the Complaint.

2

Defendant GK founded CIQ, another player in the HPC industry. *See id.* ¶ 171. Defendants Adolph, Hayden and Fong joined Defendant GK in his new venture with IAG and ODI signing on as investors. *See id.* ¶¶ 32-34, 38.

In the weeks before and after the mass resignation, Defendant GK endeavored to transfer information on Sylabs' server outside the company as part of an effort to jumpstart the fledgling CIQ:

- On March 8 and 9, 2020, Defendant GK provided ODI and Defendant Prager (ODI's CFO) "with access to the Sylabs server, in particular to all documents relating to Fuzzball and terms relating to Corporate Secrets." *See id.* ¶ 146.
- On March 11 and 13, 2020, Defendant GK provided IAG and Defendant Whitley "with access to the Sylabs Server, in particular to all documents relating to Fuzzball" and "Sylabs['] Corporate Records." *See id.* ¶¶ 150-51.
- On March 18, 2020, Defendant GK "commenced recruiting future employees and engineers, and solicited job applicants for Newco." *See id.* ¶ 155.
- On March 23, 2020, Defendant GK "release[ed] Sylabs' Fuzzball technology—which was **closed-source**—to open-source [and] arranged for all sales inquiries and purchase requests [sent to Sylabs] to be held until" after the effective date of his resignation and "directed those sales inquiries and purchase requests to his **Personal** Email Accounts." *See id.* ¶ 162.
- On March 26, 2020, Defendant GK "granted his Personal Email accounts full access to Sylabs' Server" and then downloaded the contents of Sylabs' server, including "Sylabs' Trade Secrets and IP, all current and potential sales and pipeline, all corporate documents, and privileged documents." *See id.* ¶¶ 166-67.
- Between March 26 and 31, 2020, Defendant GK downloaded and deleted documents from Sylabs' server "relating to Sylabs' sales opportunities." *See id.* ¶ 168.
- "Over an approximate two-week period at the end of March 2020, [Defendant GK] downloaded the entire Sylabs' server . . . ." *Id.* ¶ 149.
- On April 6, 2020, Defendant GK downloaded thousands of files from Sylabs' server

concerning Sylabs' "potential and current customers." *See id.* ¶¶ 172, 174.

Other Defendants engaged in similar or supporting activity during this time, although Sylabs offers few detailed allegations about the acts of any individual Defendant other than Defendant GK:

- Between March 24 and 31, 2020, Defendant Adolph "commenced deleting and downloading items from Sylabs' Sever . . . related primarily to Sylabs' Trade Secrets and IP . . . and Sylabs' development of opportunities and sales in the federal space." *See id.* ¶ 164.
- Between March 24 and April 6, 2020, Defendant Hayden downloaded from Sylabs' server documents concerning Sylabs' HPC technology. *See id.* ¶ 165.
- On March 30, 2020, Defendant JK attempted to "scrub" Defendants' actions from Sylabs' server. *See id.* ¶ 113.
- On April 2, 2020, Defendant Fong "remotely and surreptitiously (as she was no longer a Sylabs[] employee) accessed Sylabs' Server for an unknown purpose." *See id.* ¶ 173.
- On April 16, 2020, Defendant JK "remotely and surreptitiously accessed Sylabs' Server [and] download[ed] and email[ed] Sylabs' Purchase Orders received from customers to" Defendants GK, Fong and Adolph. *See id.* ¶ 175.
- Between May 18 and 26, 2020, Defendant Adolph renamed and edited a white paper on Sylabs' server "in a manner to read as though Sylabs' Trade Secrets and the opportunities expressed in that document had nothing to do with Sylabs." *See id.* ¶¶ 177-78.

Sylabs does not allege in the Complaint any specific acts performed by Defendant Buss (ODI's CEO) in connection with remaining Defendants' access of Sylabs' server. *See id.* ¶ 35.

CIQ benefitted from Defendants' actions at Sylabs' expense—it patented technologies developed by Sylabs, scooped up at least one of Sylabs' customers and raised millions of dollars in capital. *See id.* ¶¶ 138, 175, 179-181. As of May 2022, Defendant GK valued the company at $150 million. *See id.* ¶ 138 & n.20.

///

///

### C. Procedural History

Sylabs commenced this action on February 24, 2023. Two tranches of Defendants now move to dismiss: IAG and Defendant Whitley on the one hand and remaining Defendants on the other. *See* Dkts. 39 (the "IAG Motion"), 40 (the "CIQ Motion") (collectively, the "Motions").[2] Sylabs opposes the Motions. *See* Dkts. 47 (the "CIQ Opposition"), 51 (the "IAG Opposition").[3] Defendants filed replies. *See* Dkts. 54, 56.[4] All necessary Parties—Sylabs and all 11 Defendants—have consented to the jurisdiction of a magistrate judge.[5] *See* Dkts. 20, 31, 42.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully."

---

[2] Sylabs named IAG Capital Partners as a defendant in the Complaint. *See* Complaint ¶ 27. No such entity exists. *See* IAG Motion at 1 n.1. IAG Fund II, LP and IAG Capital Holdings II, LLC filed the IAG Motion (along with Defendant Whitley), even though Sylabs did not name these entities as defendants. *See id.*

[3] Sylabs submits a self-described "expert" declaration in connection with its opposition briefing in an attempt to supplement its allegations. *See* Dkt. 47-1. However, the Complaint includes no references to this declaration, and Sylabs does not request that the Court judicially notice the declaration. The Court therefore declines to consider the declaration in analyzing the Motions. *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119-LHK, 2014 WL 234218, at *11 n.15 (N.D. Cal. Jan. 21, 2014) (declining to consider declarations filed in connection with opposition to motion to dismiss counterclaims where declarations not referenced in counterclaims and no request for court to judicially notice declarations); *Sears v. Cnty. of Monterey*, No. 11-cv-01876-LHK, 2013 WL 256764, at *6 n.5 (N.D. Cal. Jan. 23, 2013) (declining to consider declaration filed in connection with opposition to motion to dismiss where declaration not referenced in complaint and declaration does not "form the basis of Plaintiff's claim").

[4] The notice of motion for the CIQ Motion does not list Defendant Hayden among Defendants filing that motion. *See* CIQ Motion. However, counsel filing the CIQ Motion identifies itself as counsel for Defendant Hayden. *See* CIQ Motion at 26; *see also* Dkt. 54 at 1 n.1 (listing Defendant Hayden among Defendants filing CIQ Motion). The Court will therefore treat the CIQ Motion as filed by Defendant Hayden.

[5] Plaintiff also sued 50 Doe defendants. *See* Complaint ¶ 40. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir. 2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).

1   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[6]

2   In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted).  A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in his favor.  *See Boquist*, 32 F.4th at 773.  However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith."  *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020).

### III.   DISCUSSION

Sylabs asserts 11 causes of action in the Complaint, all of which stem from Defendants' alleged theft of its intellectual property:

- Violation of the Defend Trade Secrets Act (the "DTSA") (asserted against all Defendants).
- Violation of the California Uniform Trade Secrets Act (the "CUTSA") (asserted against all Defendants).
- Violation of the Computer Fraud and Abuse Act (the "CFAA") (asserted against all Defendants).
- Violation of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (the "RICO Act") (asserted against all Defendants).
- Violation of Section 1962(d) of the RICO Act (asserted against all Defendants).
- Civil Conspiracy (asserted against all Defendants).

---

[6] Sylabs directs the Court to apply the *Conley v. Gibson*, 355 U.S. 41 (1957) "no set of facts" standard in resolving the Motions.  *See* CIQ Opposition at 4; IAG Opposition at 3.  The Supreme Court expressly abrogated that standard in *Twombly*.  *See Twombly*, 550 U.S. at 562-63.

- Violation of the California Unfair Competition Law (the "CUCL") (asserted against all Defendants).
- Breach of fiduciary duty (asserted against Defendant GK only).
- Aiding and abetting breach of fiduciary duty (asserted against all Defendants except Defendant GK).
- Unjust enrichment (asserted against all Defendants).
- Conversion (asserted against all Defendants).

None of these claims survives scrutiny under Rule 12(b)(6).

### A. The Parties' Requests For Judicial Notice Are Moot

Sylabs and Defendants that filed the CIQ Motion submitted requests for judicial notice. *See* Dkts. 40-5, 48 (collectively, the "RJNs"). Having reviewed the RJNs, the Court concludes that its resolution of the Motions would not change even if it granted the RJNs and considered the documents in question. The Court will therefore deny the RJNs as moot. *See, e.g.*, *Black v. Irving Materials, Inc.*, No. 17-cv-06734-LHK, 2019 WL 1995342, at *2 n.1 (N.D. Cal. May 6, 2019) ("In the instant Order, the Court does not rely on the evidence of which Black seeks judicial notice. Thus, the Court DENIES AS MOOT Black's RJN . . . ."). The Court also observes that consideration of one of the documents at issue—an agreement that purportedly releases from liability several of Defendants—would not likely resolve any issue at the pleading stage, as the Parties dispute the scope and impact of the release. *See* CIQ Motion at 6-8; CIQ Opposition at 14-16, 17, 19.

### B. The Complaint Includes Few Or No Allegations Of Specific Conduct For Many Defendants

The conduct described in the Complaint overwhelmingly focuses on the actions of Defendant GK. Sylabs also discusses, albeit to a far lesser degree, the conduct of CIQ and Defendants Adolph, Hayden, JK and Fong. However, the Complaint lacks any allegations of specific, substantive actions performed by remaining Defendants.

**IAG and Defendant Whitley.** Defendant GK discussed Sylabs' business and technologies and forming a NEWCO entity in an email with Defendant Whitley and also provided

IAG and Defendant Whitley with access to Sylabs' server.  But Sylabs does not allege that these Defendants actually did anything in response to this email communication or provision of access.  Rather, it simply notes that IAG invested in CIQ.  *See* Complaint ¶ 38.  Sylabs otherwise conclusorily alleges that IAG and Defendant Whitley "conspired with other defendants" but offers no particularized facts to illustrate these Defendants' roles in such a conspiracy.  *See id.* ¶ 37.

**ODI And Defendants Prager And Buss.**  Defendant GK provided ODI and Defendant Prager with access to Sylabs' server.  But Sylabs does not allege that these Defendants actually did anything in response to this provision of access and does not allege any conduct on the part of Defendant Buss.  Rather, it simply notes that ODI invested in CIQ.  *See id.* ¶ 38.  Sylabs otherwise conclusorily alleges that Defendants GK and Adolph "plann[ed] a collaboration" with ODI, but offers no particularized facts to illustrate ODI's or Defendants Prager and Buss's roles in such a collaboration.  *See id.* ¶ 145.

The Complaint's conclusorily allegations and dearth of supporting facts regarding these Defendants cannot survive scrutiny under Rule 12(b)(6).  *See, e.g.*, *Cotti v. Cal. Dep't of Soc. Servs. Dir. Will Lightbourne*, No. 18-cv-02980-BLF, 2018 WL 6660073, at *3 (N.D. Cal. Dec. 19, 2018) (dismissing claims that "suffer from a . . . lack of factual support for purely conclusory allegations of wrongdoing"); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1106 (N.D. Cal. 2011) (dismissing claim where plaintiff's "allegations are both conclusory and devoid of factual support").  The Court will therefore dismiss all claims asserted against these Defendants to the extent asserted against these Defendants.

  **C. Sylabs' DTSA And CUTSA Claims Fail Because Sylabs Does Not Sufficiently Plead The Elements Of A Trade Secret**

Courts analyze DTSA and CUTSA "claims together because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).  "To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that:  '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'"  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations omitted).  "[W]hat may be considered a

'trade secret' is broad." *InteliClear*, 978 F.3d at 657 (citation omitted).  "[T]he definition of trade secret consists of three elements:  (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.* (citations omitted).  In identifying a trade secret at the pleading stage, a plaintiff "need not 'spell out the details of the trade secret,' but must minimally provide 'reasonable notice of the issues which must be at the time of trial and . . . provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-cv-01409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citations omitted).

Sylabs identifies five purported trade secrets in the Complaint:  (1) SingularityPRO, (2) SIF technology, (3) Singularity Enterprise, (4) Fuzzball and (5) Armored Containers.  *See* Complaint ¶¶ 60-108.[7]  Defendants offer three reasons why none of these technologies constitutes a sufficiently-alleged trade secret:  (1) Sylabs does not describe the trade secrets in sufficient detail, (2) some of the ostensibly secret information is actually publicly available and (3) Sylabs does not describe its efforts to maintain the secrecy of its technologies.  *See* CIQ Motion at 8-13.

With respect to Defendants' first two arguments, the Court addresses each purported trade secret as follows:

**SingularityPRO.**  Sylabs describes SingularityPRO as an improvement upon Singularity.  *See* Complaint ¶¶ 60-68.  Defendants argue that Sylabs describes the differences between the open-source Singularity and Sylabs' SingularityPRO in only general terms.  *See* CIQ Motion at 9-10.  But Sylabs (1) describes the specific improvements to Singularity that it provides with SingularityPRO and (2) enumerates in a chart the specific additional features that it provides with SingularityPRO.  *See* Complaint ¶¶ 66-67.  Those allegations constitute sufficiently detailed descriptions of SingularityPRO and distinguish it from the publicly available Singularity.  *See,*

---

[7] In the Complaint, Sylabs more broadly identifies its trade secrets as its "scientific, technical, economic, and engineering information, as well as [its] Corporate Secrets, IP, and/or other privileged and protected information as herein alleged."  Complaint ¶ 210; *see also id.* ¶ 250.  But Sylabs does not describe in detail any purported trade secrets other than the five technologies identified above.  Further, in its briefing, Sylabs identifies only these five technologies as the at-issue trade secrets.  *See* CIQ Opposition at 16-17; IAG Opposition at 8-9.

*e.g.*, *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 77-78 (N.D. Cal. 2020) (trade secret sufficiently described where plaintiffs "claim[ed] that their specialized, proprietary process improves upon the standard . . . process").

**SIF Technology.** Sylabs disclosed its SIF technology in its application to patent that technology. *See* Complaint ¶ 75. SIF technology, therefore, does not constitute a trade secret. *See Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) ("[D]isclosure of a trade secret in a patent application extinguishes the information's trade secret status."). While Sylabs may retain trade-secret protection over those aspects of SIF technology not published in its patent application, it fails to "delineate the boundaries between its trade secrets and its information that has been made public through patents and patent applications." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1146 (N.D. Cal. 2019). Sylabs argues that distinguishing between the protected aspects of SIF technology and those aspects published in its patent application requires conducting expert discovery. *See* CIQ Opposition at 19. But the Court does not demand an exacting distinction at this stage that would depend upon discovery. Rather, Sylabs must simply allege with particularity those aspects of its SIF technology not discussed in the patent application, and it does not do so in the Complaint.

**Singularity Enterprise.** "Singularity Enterprise is a set of three services to support" customers' use of SIF technology. *See* Complaint ¶ 79. Sylabs describes in detail the specific functions of Singularity Enterprise. *See id.* ¶¶ 79-87. Defendants argue that Sylabs provides too general a level of detail. *See* CIQ Motion at 9-10. The Court disagrees, because Sylabs' descriptions "provide reasonable guidance in ascertaining the scope of appropriate discovery." *Autodesk*, 2015 WL 2265479, at *5. Were the DTSA and CUTSA claims to proceed past the pleading stage, Defendants would know based on the descriptions in the Complaint exactly which questions to ask and areas to probe about Singularity Enterprise in discovery.

**Fuzzball.** Defendants argue that Fuzzball cannot constitute a trade secret, because it "has been publicly available since it was made open source in March 2020." *See* CIQ Motion at 11. Defendants ignore, however, Sylabs' allegation that Fuzzball remained secret <u>until Defendant GK released it to the public.</u> *See* Complaint ¶ 162. Defendants cannot "be inoculated from liability

10

1  for trade secret misappropriation because one of them disclosed a portion of the trade secrets to the
2  public." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 17-cv-04062-SVW, 2017 WL 10378336, at *3
3  (C.D. Cal. Aug. 16, 2017) (citation omitted).

4  **Armored Containers.** Armored Containers "expand [Sylabs'] SIF technology in a way
5  that allows increased security." Complaint ¶ 101. Sylabs describes in detail how Armored
6  Containers improve upon SIF technology. *See id.* ¶¶ 102-03. While Defendants argue Armored
7  Containers lost their trade-secret status when Sylabs filed its application to patent SIF technology,
8  that application does not specifically concern Armored Containers. *See* CIQ Motion at 10-11;
9  Complaint ¶¶ 75, 100. And by describing the differences between SIF technology and Armored
10 Containers, Sylabs sufficiently "delineate[s] the boundaries between its trade secrets and its
11 information that has been made public through patents and patent applications." *AlterG*, 388 F.
12 Supp. 3d at 1146.

13 Thus, Sylabs sufficiently describes four of its five purported trade secrets which are not
14 publicly available. However, the Court agrees with Defendants' third argument that Sylabs does
15 not sufficiently allege any efforts to maintain the secrecy of its technologies. Indeed, Sylabs offers
16 no allegations of <u>any specific</u> measures it took. Accordingly, Sylabs' DTSA and CUTSA claims
17 fail. *See, e.g.*, *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 16-cv-05399-WHO, 2017
18 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017) (dismissing CUTSA claim where plaintiff failed to
19 allege reasonable effort to maintain secrecy of purported trade secrets); *Teva Pharms. USA, Inc. v.
20 Health IQ LLC*, No. 13-cv-00308-CJC, 2013 WL 12132029, at *6 (C.D. Cal. Apr. 29, 2013)
21 (dismissing CUTSA claim where, *inter alia*, plaintiffs "fail[] to outline any steps taken to protect
22 the [trade-secret] information"); *cf. Tri Tool, Inc. v. Hales*, No. 22-cv-01515-DAD, 2023 WL
23 7130610, at *4 (E.D. Cal. Oct. 30, 2023) ("In its complaint, plaintiff also alleges that it restricted
24 access to its Trade Secrets information on a need-to-know basis, used password protections, and
25 required confidentiality agreements to be signed by employees. Thus, plaintiff has sufficiently
26 alleged that it took reasonable measures to keep the Project Information secret." (citations
27 omitted)).
28 ///

11

### D. Sylabs' CFAA Claim Fails Because Sylabs Does Not Allege That It Suffered Any Harm Remediable By The Statute

"[T]he CFAA is 'an anti-hacking statute,' not 'an expansive misappropriation statute.'" *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) (citation omitted). It provides a cause of action to "[a]ny person who suffers damage or loss by reason of a violation of" the statute. 18 U.S.C. § 1030(g). "The statutory definitions of 'damage' and 'loss' . . . focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021); *see also Andrews*, 932 F.3d at 1263 ("The statute's 'loss' definition—with its references to damage assessments, data restoration, and interruption of service—clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself.").

Sylabs does not allege that it experienced any damage to its computers or servers (*e.g.*, file corruption). Rather, the Complaint focuses on Defendants' alleged misappropriation of Sylabs' information, which resulted in economic harm to Sylabs. *See* Section I.B, *supra* (CIQ benefitted from allegedly misappropriated information at expense of Sylabs). But the CFAA does not permit recovery for violations that result in such non-technological harm. *See, e.g., Fraser v. Mint Mobile, LLC*, No. 22-cv-00138-WHA, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022) ("[T]he loss here flows from the use of the unlawfully obtained information to hack Fraser's Ledger account. This order finds this type of damage or loss is not recognized by the CFAA." (citation omitted)); *Delacruz v. State Bar of Cal.*, No. 16-cv-06858-BLF, 2017 WL 3129207, at *4 (N.D. Cal. July 24, 2017) ("[T]he alleged damages from the denial of state bar admission and loss of prospective employment are not recoverable under the CFAA." (citation omitted)). The Court will therefore dismiss Sylabs' CFAA claim.

///
///
///
///
///
///

### E. Sylabs' RICO Act Claims Fail Because Sylabs Does Not Sufficiently Allege That Defendants Committed Any Predicate Acts

Sylabs alleges that Defendants conspired to engage in racketeering activity in violation of Sections 1962(c) and (d) of the RICO Act. "The elements of a Section 1962(c) RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to a plaintiff's business or property." *Marani v. Cramer*, No. 19-cv-05538-YGR, 2023 WL 4034207, at *2 (N.D. Cal. Mar. 2, 2023). Sylabs selects Defendants' alleged violations of the DTSA as the necessary predicate acts. *See* Complaint ¶¶ 187-88; *see also* CIQ Opposition at 22-23; IAG Opposition at 22-23; 18 U.S.C. § 1961(1). Its Section 1962(c) claim therefore fails, because Sylabs does not sufficiently allege any DTSA violations. *See* Section III.C, *supra*; *see, e.g.*, *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1044 (N.D. Cal. 2011) ("Having found that the Amended Complaint fails to allege sufficient predicate acts to establish SAP participated in a pattern of racketeering activity, Marin's section 1962(c) claim must be dismissed."). Because Sylabs' Section 1962(c) claim fails, its Section 1962(d) claim fails as well. *See* 18 U.S.C. § 1962(d); *see Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[I]f the section 1962(c) claim does not state an action upon which relief could *ever* be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained." (citation omitted)); *see, e.g.*, *Wagh v. Metris Direct, Inc.*, No. 01-cv-01711-TEH, 2002 WL 257846, at *4 (N.D. Cal. Feb. 20, 2002) ("[S]ince Plaintiff cannot satisfy the requirements of his Section 1962(c) claim, Plaintiff's Section 1962(d) claim must fail as well.").

### F. The CUTSA Preempts Sylabs' Other State-Law Claims

Sylabs asserts six state-law claims in addition to its CUTSA claim, all of which it bases on the same conduct underlying its CUTSA claim, namely, Defendants' alleged misappropriation of Sylabs' purported trade secrets. But "[u]nder California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citations omitted); *see also ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019) ("CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information . . . ." (citations

13

omitted)); *see, e.g.*, *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 238 (6th Dist. 2010) ("All of Silvaco's claims . . . depend on [Defendants'] supposed use, in Silvaco's words, of 'software . . . which embodies and uses . . . Silvaco Trade Secrets.' Its exclusive remedy therefore lies in CUTSA. If it cannot establish liability under CUTSA, it is not entitled to relief."), *disapproved on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011).

Accordingly, Sylabs may not maintain its non-CUTSA state-law claims based on Defendants' alleged misappropriation of its purported trade secrets. *See, e.g.*, *Arthur J. Gallagher & Co. v. Tarantino*, No. 20-cv-05505-EMC, 2022 WL 4092673, at *14-16 (N.D. Cal. July 27, 2022) (civil conspiracy claim preempted by the CUTSA); *Strategic Partners, Inc v. FIGS, Inc.*, No. 19-cv-02286-JWH, 2021 WL 4813645, at *6-7 (C.D. Cal. Aug. 10, 2021) (breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims preempted by the CUTSA); *Waymo*, 256 F. Supp. 3d at 1062-64 (CUCL claim preempted by the CUTSA); *MedioStream, Inc v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (conversion claim preempted by the CUTSA); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10-cv-01773-LHK, 2010 WL 5069832, at *10 (N.D. Cal. Dec. 7, 2010) (unjust enrichment claim preempted by the CUTSA).

This conclusion results even though the Court concludes that none of the at-issue technologies, as currently pled, rises to the level of a trade secret. *See* Section III.C, *supra*; *ChromaDex*, 369 F. Supp. 3d at 989 ("CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, <u>even if that information does not meet the statutory definition of a trade secret</u>." (emphasis added) (citations omitted)). The CUTSA preempts a plaintiff's claims based on misappropriation of information that does not qualify as a trade secret

> unless one of the following conditions is met: (1) [the plaintiff] can allege facts that show that "the [non-trade secret proprietary] information . . . was 'made property by some provision of positive law,' . . . on grounds that are qualitatively different from the grounds upon which trade secrets are considered property", or (2) it can otherwise be concluded that [the plaintiff's] Non–Trade Secret Claims allege "wrongdoing" that is "material[ly] distinct[ ] [from] the wrongdoing alleged in a [C]UTSA claim[.]"

14

*SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012) (citations omitted).  Sylabs satisfies neither of these two conditions.  Its rights in the five at-issue technologies clearly stem from the same "grounds upon which trade secrets are considered property" (*i.e.*, the technologies constitute Sylabs' non-public, valuable information), and Sylabs does not argue otherwise, and the alleged wrongdoing underlying its state-law claims mirrors the alleged wrongdoing underlying its CUTSA claim (*i.e.*, Defendants' alleged looting of Sylabs' servers).

Relying on the decision of the California Court of Appeal in *Angelica Textile Services, Inc. v. Park*, 220 Cal. App. 4th 495 (4th Dist. Div. 1 2013), Sylabs opposes CUTSA preemption, because "[t]he CUTSA 'does not displace noncontract claims that, although related to trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim.'"  CIQ Opposition at 2 (citing *Angelica*, 220 Cal. App. 4th at 506); *see also* IAG Opposition at 24-25.  But as the very language Sylabs quotes indicates, CUTSA preemption does not apply where the state-law claims "are independent and <u>based on facts distinct from the facts that support the misappropriation claim</u>."  *Angelica*, 220 Cal. App. 4th at 506 (emphasis added).  Here, Sylabs' predicates its CUTSA and non-CUTSA claims on the same underlying conduct.  *Angelica*, therefore, does not permit Sylabs to circumvent CUTSA preemption.  *See, e.g.*, *Anokiwave, Inc. v. Rebeiz*, No. 18-cv-00629-JLS, 2018 WL 4407591, at *7 (S.D. Cal. Sept. 17, 2018) (analyzing *Angelica* and concluding that CUTSA preemption applies because state-law claim "is based on the same facts as [defendant's] alleged wrongful conduct in disclosing trade secrets").

///
///
///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motions and **DISMISSES** all of Sylabs' claims **WITH LEAVE TO AMEND**. Sylabs must file an amended complaint by **January 22, 2024**. The Court will dismiss this action if Sylabs fails to file an amended complaint by the deadline. The Court also **DENIES** the Parties' RJNs as moot.

**SO ORDERED.**

Dated: December 19, 2023

SUSAN VAN KEULEN
United States Magistrate Judge