1   CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
    carolyn.luedtke@mto.com
2   MIRIAM KIM (State Bar No. 238230)
    miriam.kim@mto.com
3   TAYLOR L. BENNINGER (State Bar No. 344825)
    Taylor.Benninger@mto.com
4   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, Twenty-Seventh Floor
5   San Francisco, California 94105-2907
    Telephone:    (415) 512-4000
6   Facsimile:    (415) 512-4077

7   Attorneys for Defendants
    JOEL WHITLEY, IAG FUND II, LP, and
8   IAG CAPITAL HOLDINGS II, LLC

9

10                        **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

12

13   SYLABS, INC., a Delaware corporation,          Case No. 5:23-cv-00849-SVK

14                 Plaintiff,                        **IAG INVESTORS' NOTICE OF**
                                                     **MOTION AND MOTION TO DISMISS**
15           v.                                      **FIRST AMENDED COMPLAINT**
                                                     **PURSUANT TO RULE 12(B)(6);**
16   GREGORY ROSE a/k/a GREGORY M.                   **MEMORANDUM OF POINTS AND**
     KURTZER; JULIA ROSE a/k/a JULIA                 **AUTHORITIES**
17   KURTZER; ROBERT ADOLPH; MATTHEW
     HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a          Date:      May 7, 2024
18   CIQ; OPEN DRIVES, INC.; DAVID BUSS;             Time:      10:00 a.m.
     MARLIN PRAGER; JOEL WHITLEY; IAG                Courtroom: 6, 4th Floor
19   FUND II, LP a/k/a IAG CAPITAL                   Judge:     Hon. Susan van Keulen
     PARTNERS; IAG CAPITAL HOLDINGS II,
20   LCC a/k/a IAG CAPITAL PARTNERS; and             Filed/Lodged Concurrently with:
     DOES 1 through 50, inclusive,                     1.  Proposed Order Granting IAG
21                                                         Defendants' Motion to Dismiss
                   Defendants.
22

23

24

25

26

27

28

Case No. 5:23-cv-00849-SVK

IAG INVESTORS' NOTICE OF MOTION AND MOTION TO DISMISS FAC PURSUANT TO RULE 12(B)(6);
MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on May 7, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants Joel Whitley, IAG Capital Fund II, LP, and IAG Capital Holdings II, LLC (collectively, "IAG Investors") will and do hereby move to dismiss Plaintiff Sylabs, Inc.'s ("Sylabs" or "Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on the accompanying Memorandum of Points and Authorities, all documents in the Court's file, and such other written and oral argument as may be presented to the Court.

DATED:  February 23, 2024                MUNGER, TOLLES & OLSON LLP


                                        By:  /s/ Miriam Kim
                                             CAROLYN HOECKER LUEDTKE
                                             carolyn.luedtke@mto.com
                                             MIRIAM KIM
                                             miriam.kim@mto.com
                                             TAYLOR L. BENNINGER
                                             Taylor.Benninger@mto.com

                                             Attorneys for JOEL WHITLEY, IAG FUND II,
                                             LP, and IAG CAPITAL HOLDINGS II, LLC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION................................................................................................1

II.     BACKGROUND..................................................................................................3

        A.      Relevant Allegations ..............................................................................3

        B.      Procedural History..................................................................................4

III.    LEGAL STANDARD ..........................................................................................5

IV.     ARGUMENT .......................................................................................................5

        A.      Sylabs Has Not Alleged Trade Secret Misappropriation by the IAG
                Investors (Counts I & III). .....................................................................5

                1.      *Sylabs Does Not Allege that the IAG Investors Acquired Any Trade
                        Secrets.* ......................................................................................6

                2.      *Sylabs Does Not Allege that the IAG Investors Should Have Known
                        that Any Documents Contained Improperly-Obtained Trade Secrets.* ........8

        B.      Sylabs' CFAA Claim is Time-Barred and Self-Defeating (Count II)........................9

                1.      *Sylabs Again Fails to Specify the Applicable Provision of the CFAA.* ..........9

                2.      *Sylabs' CFAA Claim is Time-Barred.* ..............................................9

                3.      *Sylabs Alleges Only Authorized Access, Not Unauthorized Access.*............11

                4.      *Sylabs Does Not Allege Any Loss or Damage Attributable to the IAG
                        Investors.* ................................................................................11

        C.      Sylabs Fails to Allege a Single Predicate Act, Let Alone a Pattern of
                Racketeering Activity, to Support its RICO Claims (Counts IV and V). ...............13

        D.      Sylabs' State Law Claims Remain Preempted (Counts VI, VII, IX, X, and
                XI). .......................................................................................................14

        E.      Sylabs' Claims Against the IAG Investors Should Be Dismissed Without
                Leave to Amend. ......................................................................................15

V.      CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abcarian v. Levine*,
    972 F.3d 1019 (9th Cir. 2020) ................................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................... 5

*Calendar Rsch. LLC v. StubHub, Inc.*,
    No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13, 2020) ......................... 9

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    369 F. Supp. 3d 983 (C.D. Cal. 2019) .................................................................................... 14

*CleanFish, LLC v. Sims*,
    No. 19-cv-03663-HSG, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) .................................. 8

*Diamond S.J. Enter., Inc. v. City of San Jose*,
    395 F. Supp. 3d 1202 (N.D. Cal. 2019) .................................................................................. 15

*Digital Envoy, Inc. v. Google, Inc.*,
    370 F. Supp. 2d 1025 (N.D. Cal. 2005) .................................................................................. 15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ................................................................................................................. 13

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    639 F. Supp. 3d 944 (N.D. Cal. 2022) .................................................................................... 10

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ................................................................................................... 14

*JustMed, Inc. v. Byce*,
    600 F.3d 1118 (9th Cir. 2010) ................................................................................................... 6

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ............................................................................................. 9, 11

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ................................................................................................................. 10

*Metaxas v. Lee*,
    503 F. Supp. 3d 923 (N.D. Cal. 2020) .................................................................................... 13

IAG INVESTORS' NOTICE OF MOTION AND MOTION TO DISMISS FAC PURSUANT TO RULE 12(B)(6);
MEMORANDUM OF POINTS AND AUTHORITIES

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) .................................................................12

*Navigation Holdings, LLC v. Molavi*,
    445 F. Supp. 3d 69 (N.D. Cal. 2020) ......................................................................8

*Navigation Holdings, LLC v. Molavi*,
    No. 19-CV-02644-LHK, 2020 WL 5074307 (N.D. Cal. Aug. 25, 2020) ...................8

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) .....................................................................12

*Nguyen v. Chow*,
    No. 14-cv-01444-VC, 2014 WL 12625960 (N.D. Cal. Sep. 19, 2014).....................13

*So v. HP, Inc.*,
    22-cv-02327-BLF, 2023 WL 4596778 (N.D. Cal. July 17, 2023)............................12

*Song v. Drenberg*,
    No. 18-cv-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019)........................9

*SunPower v. Solar City*,
    No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012)............14, 15

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016) ...............................................................................11

*Wagh v. Metris Direct, Inc.*,
    No. 01-cv-01711-TEH, 2002 WL 257846 (N.D. Cal. Feb. 20, 2002) ......................14

*West v. Ronquillo-Morgan*,
    No. CV 20-2711 DSF (Ex), 2021 WL 2953160 (C.D. Cal. May 10, 2021) ............10

**STATE CASES**

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009)................................................................................15

**FEDERAL STATUTES**

18 U.S.C. § 1030(g) .....................................................................................................9, 12

18 U.S.C. § 1961(1) ..........................................................................................................13

18 U.S.C. § 1962(c) ..........................................................................................................14

18 U.S.C. § 1962(d) ..........................................................................................................14

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

If Sylabs' First Amended Complaint ("FAC") makes anything clear, it is that the IAG Investors—IAG Fund II, LP; IAG Capital Holdings II, LLC (together, "IAG"); and Joel Whitley—are just that: investors.  They did not access, much less take, any trade secrets; they did not intrude into Sylabs' server; they were not members of some grand conspiracy.  To the contrary, although Sylabs' FAC now spans a whopping 238 pages (or 4,176 pages, including its 74 exhibits), all it says about the IAG Investors is that Whitley received an email, viewed some corporate documents, and downloaded a budget.  These activities are standard due diligence for investors and cannot support *any* claims, let alone *ten* claims, against the IAG Investors.  The Court should dismiss Sylabs' claims against the IAG Investors as it did before, and this time, it should do so with prejudice.

*First,* Sylabs once again fails to allege that the IAG Investors ever viewed, much less misappropriated, any trade secrets.  Sylabs' FAC narrows the bases of its misappropriation claim against the IAG Investors to a finite list of 14 corporate documents that it alleges Whitley viewed or downloaded.  FAC ¶ 333.  But the FAC does not allege that any of those documents fall within the scope of its purported trade secrets.  In fact, Sylabs' allegations support the opposite conclusion—namely, that these documents "are **not** defined as, nor are they a part of its Trade Secrets."  FAC ¶ 623 (emphasis in original).  What's more, even if Sylabs *had* alleged that any of those 14 documents contained a trade secret—which it has not—it has not shown that the IAG Investors knew or should have known as much.

*Second,* Sylabs has not cured any of the fundamental and fatal defects with its CFAA claim.  Sylabs has failed, yet again, to identify which subsection of the CFAA is at issue.  The CFAA claim is also time-barred by the two-year statute of limitations because a reasonable person in Sylabs' position would have been on notice of its claims almost *three* years before Sylabs filed this lawsuit, including because of Sylabs' Release Agreement with its departing CEO.  And even setting aside those threshold problems, Sylabs' FAC does not describe unauthorized access by the

1   IAG Investors—to the contrary, it describes *authorized* access—nor has it alleged that the IAG

2   Investors' actions caused Sylabs any damage or loss within the meaning of the CFAA.

3       **Third,** Sylabs has not stated, and cannot state, any RICO claims against the IAG Investors.

4   As was true of its original Complaint, the only predicate act alleged in the FAC is trade secret

5   misappropriation, and Sylabs fails to allege even one instance of such misappropriation by the

6   IAG Investors.  It follows *a fortiori* that Sylabs has not described a pattern of racketeering activity

7   by the IAG Investors.  Thus, Sylabs' substantive RICO claim fails, which also dooms its RICO

8   conspiracy claim.

9       **Finally,** Sylabs' state-law claims are inescapably preempted.  Sylabs attempts to plead

10  around preemption by basing its claims on the misappropriation of "assets and property . . . that

11  are **not** Trade Secrets, and, therefore, **not** actionable under CUTSA."  FAC ¶ 622.  But this

12  argument misses the point.  As this Court has already explained, CUTSA preempts state-law

13  claims not only when they rest on the misappropriation of trade secrets, but *also* when they rest on

14  the misappropriation of confidential information, unless the information is protected by some

15  other positive law or the underlying wrongdoing is materially distinct from any alleged trade

16  secret misappropriation.  *See* Order Granting Defendants' Motion to Dismiss, ECF No. 59 at 14

17  (Dec. 19, 2023) ("Order").  Sylabs does not even attempt to meet the first condition, and it cannot

18  succeed on the second, because its state-law claims still arise from the same "alleged looting of

19  Sylabs' servers" as the CUTSA claim.  *Id.* at 15.

20      For all of these reasons, Sylabs' FAC is fundamentally defective, and its claims against the

21  IAG Investors must be dismissed.[1]  And because any attempt to amend these claims would be

22  futile and prejudicial to the IAG Investors, the Court should not grant leave to amend.

23

24

25

26

---

27  [1] The IAG Investors also join in the separate motion to dismiss filed by the other Defendants.  *See*

28  *generally* CIQ Defendants' Motion to Dismiss FAC, ECF No. 67 (February 23, 2024).

1    **II.    <u>BACKGROUND</u>[2]**

2        **A.    Relevant Allegations**

3        The plaintiff, Sylabs, is a company within the high-performance computing industry, and

4    Defendant Greg Kurtzer[3] is its former CEO.  *See* FAC ¶¶ 111, 120.  Kurtzer left Sylabs in March

5    2020 and went on to found Defendant CIQ, a groundbreaking startup in the same industry that

6    Sylabs sees as a competitor.  *See* FAC ¶¶ 111, 120, 290.  As the IAG Investors already explained

7    (and Sylabs continues to ignore), Kurtzer's transition was not a surprise to Sylabs, which

8    negotiated and signed a Release Agreement with Kurtzer shortly after his departure.  *See generally*

9    CIQ Defendants' Request for Judicial Notice, ECF No. 67-3 (February 23, 2024).[4]  Still, Sylabs

10   alleges that Kurtzer and a few other former Sylabs employees downloaded and deleted documents

11   from its server and used Sylabs' trade secrets at CIQ.  *See, e.g.*, FAC ¶¶ 34, 111, 113-14.

12       The IAG Investors played no role in this alleged scheme, even under a generous reading of

13   Sylabs' FAC.  Like the original Complaint, the FAC alleges that Whitley received an email from

14   Kurtzer about starting a new company and using "all open source" technology to build Fuzzball.

15   FAC ¶¶ 49, 311.  The FAC adds that the IAG Investors and the Open Drives Investors helped

16   create a budget for the new company, which Sylabs attaches to the FAC as Exhibit 56.  FAC

17   ¶¶ 37-38.  It also alleges that Kurtzer provided Whitley with access to 39 corporate documents on

18   Sylabs' server, of which Whitley viewed 14.  FAC ¶ 333; *see also* FAC ¶¶ 254-55, 307(r).  Of

19   these documents, Whitley downloaded a copy of just one, "Fuzz Budget," on March 13, 2020—

20   less than a week after Kurtzer created it on March 8, 2020.  *See* FAC ¶¶ 256, 307(c), 307(s), 334.

21   Finally, Sylabs alleges, on information and belief, that "Whitley and IAG have not executed a

22

23   _____

24   [2] The IAG Investors refer to allegations from the FAC only to aid in the Court's resolution of this
     Motion and do not admit them by including them here.

25

26   [3] Two named Defendants in this lawsuit, Greg Kurtzer and Julia Kurtzer, share the same last
     name.  Unless stated otherwise, this Motion uses "Kurtzer" to mean Greg Kurtzer rather than Julia

27   Kurtzer.

28   [4] The IAG Investors join in the CIQ Defendants' Request for Judicial Notice.

nondisclosure or confidentiality agreement with Sylabs," purportedly "to conceal the identities of Whitley and IAG from Sylabs."  FAC ¶ 81.

Later, after CIQ had formed, the IAG Investors recognized the company's tremendous potential and opted to invest in it.  *See* FAC ¶ 119.

**B.    Procedural History**

Almost three full years after CIQ was founded, Sylabs brought the instant lawsuit.  It named as Defendants not only Kurtzer and CIQ, but also anyone who had the slightest connection with them, including several other CIQ employees, two companies that invested in CIQ, and three employees of those companies.  *See* Compl. ¶¶ 11-29.  Sylabs asserted eleven causes of action, including for trade secret misappropriation, unauthorized access to protected computers, and RICO violations.  *See* Compl. ¶¶ 208-359.  Yet after filing, Sylabs made no attempt to serve the Complaint or prosecute its lawsuit for nearly six months, until the Court warned it to proceed or risk dismissal.  *See* Order Continuing Initial Case Management Conference; Order Denying Without Prejudice Administrative Motion to Seal, ECF No. 23 at 1 (June 27, 2023).

After Sylabs finally served its original Complaint, all Defendants promptly moved to dismiss.  As relevant here, the IAG Investors explained that Sylabs made generic allegations against "Defendants" as a group and failed to include any individualized allegations of wrongdoing by the IAG Investors.  *See* IAG Defendants' Notice of Motion and Motion to Dismiss Complaint, ECF No. 39 at 6-10 (Aug. 28, 2023) ("First IAG MTD").  The IAG Investors also showed that every one of Sylabs' claims against it were preempted, time-barred, or unsupported by the existing allegations.  *Id.* at 10-21.

This Court granted Defendants' Motions, dismissing Sylabs' Complaint in its entirety.  It found that the Complaint "offer[ed] no particularized facts to illustrate [the IAG Investors'] roles in . . . a conspiracy," so none of its claims against the IAG Investors could "survive scrutiny under Rule 12(b)(6)."  Order at 8.  The Court separately dismissed Sylabs' trade secrets claims because, while the Court found that Sylabs had sufficiently described four of five alleged trade secrets, it had not described any specific measures to protect those secrets.  *Id.* at 9-11.  It dismissed Sylabs' CFAA claim, because Sylabs had not alleged actionable harm, and its RICO claims, because

IAG INVESTORS' NOTICE OF MOTION AND MOTION TO DISMISS FAC PURSUANT TO RULE 12(B)(6);
MEMORANDUM OF POINTS AND AUTHORITIES

Sylabs had not alleged any predicate acts.  *Id.* at 11-13.  Finally, the Court dismissed Sylabs' state-law claims as preempted because "the alleged wrongdoing underlying [these] claims mirrors the alleged wrongdoing underlying its CUTSA claim (*i.e.*, Defendants' alleged looting of Sylabs' servers)."  *Id.* at 15.

Sylabs responded to this Court's dismissal by replacing its already-lengthy 89-page Complaint with a tome-like FAC that spans 238 pages and attaches nearly 4,000 additional pages of audit logs, emails, declarations, and other exhibits.  But despite this extreme length, the FAC *still* fails to identify a single instance in which any of the IAG Investors did anything wrong.  Accordingly, the IAG Investors now move to dismiss the FAC.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (cleaned up) (citation omitted).  Instead, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct" and push the claims across "the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    Sylabs Has Not Alleged Trade Secret Misappropriation by the IAG Investors (Counts I & III).

Sylabs' trade secret misappropriation claims against the IAG Investors under the DTSA (Count I) and CUTSA (Count III) necessarily fail for two independent reasons: Sylabs has not alleged that the IAG Investors viewed a single purported trade secret, and even if they had, Sylabs has not alleged that they knew or should have known that they received any wrongfully-acquired trade secrets.

### 1.    *Sylabs Does Not Allege that the IAG Investors Acquired Any Trade Secrets.*

Sylabs' amended trade secret claims against the IAG Investors, like those in its original Complaint, proceed under an indirect acquisition theory only and do not even attempt to allege use or disclosure.  But even these limited claims fail because the FAC includes no allegations to support the basic requirement that the IAG Investors "c[a]me into possession" of Sylabs' trade secrets.  *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1129 (9th Cir. 2010) (citation omitted).

The FAC alleges that Whitley accessed a very limited universe of materials—he viewed just 14 individual documents and downloaded one, *see* FAC ¶¶ 256, 333—but the FAC is devoid of allegations that those documents are, or contain, trade secrets.  This Court already found that Sylabs sufficiently described four alleged trade secrets: SingularityPro, Singularity Enterprise, Fuzzball, and Armored Containers.[5]  *See* Order at 9-11.  But Sylabs does not allege that the 14 documents Whitley viewed, which range from budgeting and financial documents to incorporation certificates to stock agreements, contain information related to any of these four purported trade secrets.  Nor does Sylabs identify which of the four alleged trade secrets, if any, appear within those 14 documents.

In fact, Sylabs' FAC forecloses the possibility that any of the documents Whitley allegedly viewed contained trade secrets.  The file names of these documents indicate that they are corporate "certificate[s]," "bylaws," and "agreements"—not technical trade secrets:

- Fuzz Budget
- (6) - Series Seed cert. SS-1 (R-Stor Inc.) - 12-1-17.pdf
- 001 - Action of Incorporator - 10-11-17.pdf

---

[5] The Court also noted a fifth potential trade secret, SIF Technology, but held that Sylabs failed to identify any aspects of that technology that were not disclosed in its related patent application.  Although there is no plausible suggestion that the IAG Investors ever acquired SIF Technology, the IAG Investors nonetheless note that Sylabs' FAC did not cure this deficiency.  Sylabs' attempt to distinguish a SIF Technology trade secret from its patent application rests on methods Sylabs "ha[d] been developing . . . as part of its secret 'armored containers' project."  FAC ¶ 130; *see also* FAC ¶¶ 200, 211.  But Sylabs has already identified Armored Containers as an alleged trade secret.  Thus, Sylabs fails to include sufficient allegations to distinguish a SIF Technology trade secret from its SIF Technology patent application, on the one hand, and its Armored Containers trade secret, on the other.

- 008 - Joint Board and Shareholder Consent of Conversion - 7.10.18.pdf
- 008A - Joint Board and Shareholder Consent of Conversion [DUPLICATE – WITH DRAFT STAMP] - 7.10.18.pdf
- A003 - Certificate of Incorporation [Sylabs Inc. 2018] - 8-17-18.pdf
- A002 - Amended and Restated Certificate of Incorporation (Series Seed) FILED 12-1-17.pdf
- Assignment of Technology Agreement (Greg Kurtzer) - 11-10-17.pdf
- B002 - Bylaws [Sylabs Inc. 2018] - 8.31.18.pdf
- Certificate of Conversion (Corp to LLC) - 7.20.18.pdf
- Founder Stock Purchase Agreement - Sylabs Holdings LLC- 8.31.18.pdf
- Investors' Rights Agreement (Series Seed) - 12-1-17.pdf
- Patent Cooperation Treaty - 2019.07.11.pdf
- Plan of Conversion - 7.10.18.pdf

FAC ¶ 333. What's more, Sylabs characterizes these "corporate records, board consents, stock purchase agreements, indemnification agreements, Series Seed Cert. SS-1 (R-Stor), investors' rights agreements, 409A valuations, patent cooperation treaty, and other documents" as its "Corporate Assets" or "Corporate Secrets," which "are **not** defined as, nor are they a part of its Trade Secrets." FAC ¶¶ 51(b), 623 (emphasis in original). Indeed, according to the file names, several of these "Corporate Secrets" are not secret at all, but are the kinds of documents that are filed publicly with the Secretary of State or disclosed to shareholders. And one of those documents, the "Assignment of Technology Agreement," FAC ¶ 333, appears to be a publicly filed exhibit to the FAC. *See* FAC, Ex. 48. Based on Sylabs' own filings, then, viewing these documents cannot support a trade secret misappropriation claim.

The FAC's allegations regarding the sole document that Whitley downloaded—the "Fuzz Budget," *see* FAC ¶ 256—likewise show that this document cannot contain a trade secret. There are *no* allegations suggesting that the "Fuzz Budget" contains valuable information that Sylabs secretly developed to support its high-performance computing products. To the contrary, its file name plainly purports to be a "[b]udget," and Sylabs alleges that Kurtzer created it on March 8, 2020, less than a week before sharing it with Whitley. FAC ¶ 307(s). Such a document falls far outside the scope of any of the trade secrets that Sylabs has alleged, as Sylabs implicitly acknowledged by publicly filing as an exhibit the "CIQ Budget," another budget that Kurtzer and others created the same day as the "Fuzz Budget." *See* FAC ¶ 37, Ex. 56.

Because Sylabs' FAC demonstrates that the IAG Investors never acquired any trade secrets, Sylabs' trade secret misappropriation claims against them must be dismissed.

2.  ***Sylabs Does Not Allege that the IAG Investors Should Have Known that Any Documents Contained Improperly-Obtained Trade Secrets.***

Even if Sylabs could backtrack from its own allegation that Corporate Assets, such as the 14 documents Whitley viewed, are not trade secrets, the trade secret misappropriation claims would still fail, because Sylabs does not allege that the IAG Investors "knew or had reason to know . . . that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78-79 (N.D. Cal. 2020) (citation omitted).  At most, Sylabs' allegations show that the IAG Investors communicated with Kurtzer in March 2020, and that Kurtzer, as Sylabs' CEO, had access to Sylabs' "commercial IP."  FAC ¶¶ 49, 311.  But allegations that a defendant knew that an intermediary "had access to trade secrets" are insufficient to state a claim, *Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644-LHK, 2020 WL 5074307, at *5 (N.D. Cal. Aug. 25, 2020), as are allegations that a defendant "continuously communicated with" an intermediary who "was employed by [the] [p]laintiff."  *CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020).  A successful trade secret plaintiff must go further and allege facts that "'tend to exclude' an innocent explanation," *id.* (alteration adopted) (citation omitted), and Sylabs has failed to do so here.

To the contrary, Sylabs' FAC, like its original Complaint, *undermines* any inference that the IAG Investors had the requisite knowledge and supports the opposite inference that the IAG Investors did *not* expect to receive any secret or proprietary information.  Kurtzer's representation that "the intellectual property that [he] would need to build Fuzzball is *all open source*," FAC ¶¶ 49, 311; Ex. 46, supports an "innocent explanation" that Whitley did *not* know he might be receiving secret information.  *CleanFish*, 2020 WL 1274991, at *10 (citation omitted).  Similarly, Sylabs' new allegation that the IAG Investors did not sign a nondisclosure agreement, FAC ¶ 81, coupled with a complete lack of allegations suggesting that Sylabs requested one, supports an inference that the IAG Investors did *not* expect to receive any information that was secret or proprietary.  Because the FAC not only fails to allege that the IAG Investors should have known

they were receiving any improperly-acquired trade secrets, but actually supports the opposite conclusion, Sylabs' trade secret misappropriation claims against the IAG Investors must fail.

**B.    Sylabs' CFAA Claim is Time-Barred and Self-Defeating (Count II).**

Sylabs' CFAA claim against the IAG Investors is fatally defective for four independent reasons. Two of those reasons—Sylabs' failure to specify the applicable subpart of the CFAA and its delay in bringing this claim until nearly a full year after the statute of limitations ran—warrant dismissal without reaching the merits. But Sylabs' claim also fails on the merits, as its allegations describe authorized rather than unauthorized access and fail to connect the IAG Investors to any compensable damage or loss.

*1.    Sylabs Again Fails to Specify the Applicable Provision of the CFAA.*

As a threshold matter, Sylabs claim is inadequately pleaded in the most basic possible way: Sylabs does not identify which provision or provisions of the CFAA it alleges the IAG Investors violated. "The CFAA prohibits a number of different computer crimes," *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009), "and each provision has different substantive requirements." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391, at *15 (C.D. Cal. May 13, 2020). But even though all Defendants previously highlighted this problem in the first motion to dismiss, Sylabs *still* has not given the Defendants notice of the provision or provisions at issue. For that reason alone, Sylabs' CFAA claim must fail. *See Song v. Drenberg*, No. 18-cv-06283-LHK, 2019 WL 1998944, at *4-6 (N.D. Cal. May 6, 2019) (dismissing CFAA claim for failure to specify applicable subsection).

*2.    Sylabs' CFAA Claim is Time-Barred.*

Sylabs' CFAA claim is also barred by the statute of limitations. A CFAA claim must be "begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). Sylabs alleges that it "first started discovering evidence of Defendants' cyber corruption [and] destruction" after "the publication of defendant CIQ's U.S. Patent No. US 10,970,113 . . . on or after April 6, 2021." FAC ¶ 208. But the term "discovery" in the CFAA "refer[s] not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." *West v. Ronquillo-Morgan*, No. CV 20-2711 DSF

1  (Ex), 2021 WL 2953160, at *3 (C.D. Cal. May 10, 2021) (quoting *Merck & Co. v. Reynolds*, 559

2  U.S. 633, 645 (2010)).  And a "reasonable person in [Sylabs'] situation" would have inquired into

3  and discovered "the nature and cause of [its] injury" up to a year before Sylabs' alleged discovery

4  date.  *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 969 (N.D. Cal. 2022) (citation

5  omitted).

6       A reasonable person in Sylabs' position would have been on inquiry notice of its CFAA

7  claim in spring 2020.  Most obviously, Sylabs negotiated and signed a Release Agreement on

8  April 29, 2020, which enumerated and released Kurtzer from liability for specified conduct.  *See*

9  CIQ Defendants' Motion to Dismiss FAC, ECF No. 67 at 3-5 (February 23, 2024).  Sylabs

10  therefore had actual notice of the conduct underlying at least part of its CFAA claim in April 2020.

11  Further, a reasonable plaintiff in "dire straits" who owns allegedly valuable trade secrets and

12  whose CEO was departing would inquire about the CEO's conduct *before* executing a release and

13  about his compliance *afterward*.  FAC ¶ 352.  Finally, Sylabs hangs its hat on the publication of

14  the '113 Fuzzball patent application, which it alleges revealed the intrusions for the first time, *see*

15  FAC ¶¶ 208, 210—but Sylabs also alleges that Kurtzer had *already* published Fuzzball to open

16  source on March 23, 2020.  FAC ¶ 363.  Sylabs should have inquired after the *first* alleged

17  publication, not the second.  Even drawing all reasonable inferences in Sylabs' favor, "a

18  reasonable person in [Sylabs'] situation," as described by the FAC, "would have been expected to

19  inquire about the cause of [its] injury" in spring 2020.  *hiQ Labs*, 639 F. Supp. 3d at 969 (citation

20  omitted).

21       Once Sylabs was on inquiry notice, it is undeniable that an inquiry "would have disclosed

22  the nature and cause of [its] injury so as to put [it] on notice of [its] claim."  *Id* (citation omitted).

23  This is because a reasonable inquiry *did* disclose the nature and cause of Sylabs' alleged injury—

24  namely, the alleged deletions and intrusions by Kurtzer and other Defendants in March and April

25  2020, *see, e.g.*, FAC ¶ 25 (summarizing the results of Sylabs' investigation), Ex. 38 (Tarbell

26  Declaration) (same)—once Sylabs got around to conducting it.  As Sylabs explained, its Google

27  Workspace has "a robust logging feature that allows the auditing of employee activities" and

28  "provide[s] Sylabs administrators a detailed list of security-relevant actions taken on their

sensitive corporate files," including deleting files and folders.  FAC ¶ 20, 63 (quoting Decl. of Tarbell).  With these features at its fingertips, Sylabs would have uncovered the same conduct if it had conducted an investigation in 2020 instead of beginning its examination "on or after April 6, 2021."  FAC ¶ 208.

In sum, because a reasonable person in Sylabs' situation would have discovered the basis for a CFAA claim in 2020, the statute of limitations necessarily ran in 2022.  But Sylabs did not bring this case until February 2023, so its CFAA claim is time barred.

### 3. *Sylabs Alleges Only Authorized Access, Not Unauthorized Access.*

Any possible CFAA claim would require Sylabs to show that the IAG Investors accessed Sylabs' server without authorization, *see* First IAG MTD at 15-16 & n.5, but Sylabs' allegations show that the IAG Investors accessed Sylabs' server *with* authorization.  The term "'without authorization' is an unambiguous, non-technical term that . . . means accessing a protected computer without permission" or "getting into the computer after categorically being barred from entry."  *United States v. Nosal*, 844 F.3d 1024, 1028, 1034 (9th Cir. 2016).  "[A] person uses a computer 'without authorization'" only "when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission)."  *Brekka*, 581 F.3d at 1135.  Here, Sylabs does not allege that Whitley was a hacker who accessed documents without technical rights or permissions to do so.  Just the opposite: Sylabs concedes that Whitley accessed its server only after Kurtzer "changed the permissions" and "granted [Whitley] permission" to view certain files.  FAC ¶¶ 51(b), 255.  This technical authorization is dispositive.  The FAC shows that Whitley's alleged access was authorized, rather than unauthorized, so Sylabs' CFAA claim against the IAG Investors must fail.

### 4. *Sylabs Does Not Allege Any Loss or Damage Attributable to the IAG Investors.*

Finally, even if the IAG Investors access *had* been unauthorized—a conclusion that contradicts both the CFAA and the FAC—Sylabs has not alleged any damage or loss attributable to the IAG Investors.  "Every claim" under the CFAA "requires . . . either 'damage' or 'loss,'" *So*

*v. HP, Inc.*, 22-cv-02327-BLF, 2023 WL 4596778, at \*18 (N.D. Cal. July 17, 2023) (citation omitted), so Sylabs' failure to plead either is fatal to *any* potential CFAA claim.

**First,** Sylabs has failed to allege any damage to its computers or servers arising from the IAG Investors' alleged conduct. Under the CFAA, "'damage' means harm to computers or networks," which does not exist where a defendant "accessed [a plaintiff's] databases without permission" but did not "damage[] any systems or destroy[] any data." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014). Here, though, Sylabs alleges only that Whitley "viewed" a small handful of documents and "downloaded" one. FAC ¶¶ 254, 256. Sylabs does *not* allege that the IAG Investors *deleted* any documents—a telling omission, given that it does include such allegations for some other Defendants, *see, e.g.*, FAC ¶¶ 25, 52, 234, 240—and it does not allege that the 14 documents or the data therein were unavailable or corrupted after Whitley allegedly viewed them. (Quite the contrary, Sylabs seems to have access to at least one of those documents, the Assignment of IP Agreement, through the present day, given that Sylabs apparently attached it to the FAC. *See* FAC, Ex. 48.) Accordingly, Sylabs has failed to describe any damage to its computers or servers attributable to the IAG Investors.

**Second,** Sylabs does not sufficiently allege CFAA loss. In attempting to describe its loss, Sylabs makes improper group pleading allegations, collectively alleging that "*Defendants'* cyber corruption and cyber destruction" caused it to incur the alleged costs. FAC ¶ 484 (emphasis added). But Sylabs has not connected the *IAG Investors'* conduct with any such loss. Moreover, Sylabs' new group allegations primarily describe the costs associated with "organiz[ing] evidence," "assess[ing] the evidence," and "prepar[ing] forensic reports," FAC ¶ 484. But these "litigation costs . . . do not count as a 'loss' under the CFAA" because they are not "'essential to remedying the harm' of the unauthorized access." *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012). Sylabs' FAC does *not* allege that its investigatory and remedial expenses exceeded \$5,000—the jurisdictional minimum for a CFAA claim, *see* 18 U.S.C. § 1030(g)—without the expenses it undertook to prepare for litigation. Nor is it plausible that Whitley's alleged actions—which, again, consist of viewing 14 files, downloading one, and

1    deleting zero, *see* FAC ¶¶ 254, 256—*could* have caused Sylabs to incur any costs, let alone $5,000

2    of loss, attributable to the IAG Investors.  For this reason, too, Sylabs' CFAA claim fails.

**C.    Sylabs Fails to Allege a Single Predicate Act, Let Alone a Pattern of Racketeering Activity, to Support its RICO Claims (Counts IV and V).**

5         Sylabs has also failed to allege any RICO claims against the IAG Investors.  The RICO

6    statute targets "long-term criminal conduct," *Nguyen v. Chow*, No. 14-cv-01444-VC, 2014 WL

7    12625960, at *2 (N.D. Cal. Sep. 19, 2014), and Sylabs' allegations against the IAG Investors—

8    which, again, describe only mundane investing activities—come nowhere close to this standard.

9         ***First,*** Sylabs fails to allege even a single predicate act.  Like its original Complaint,

10   Sylabs' FAC rests on trade secret misappropriation as the predicate act for its RICO claims;[6]

11   indeed, Sylabs admits that it must "cure[] the deficiencies with violations of DTSA (Count I)" to

12   sufficiently plead its RICO count.  FAC ¶ 544.  But as explained above, Sylabs has still failed to

13   state a DTSA claim against the IAG Investors, who never acquired a single trade secret.  *See*

14   § IV.A, *supra*.  Sylabs' RICO claim necessarily fails with its DTSA claim.

15        ***Second,*** Sylabs has failed to allege a pattern of racketeering activity against the IAG

16   Investors.  A successful RICO claim requires not just one predicate act, but a pattern of—that is,

17   multiple acts of—racketeering activity.  *Abcarian v. Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020).

18   So even if Sylabs had stated a DTSA claim against the IAG Investors, that would constitute *at*

19   *most* one predicate act, and there are absolutely no allegations in Sylabs' entire 238-page FAC that

20   could support a second one.  Moreover, "[a] 'pattern' of racketeering activity also requires proof"

21   that the predicate acts "amount to or pose a threat of continued criminal activity,'" either by

22   "extending over a substantial period of time" or "project[ing] into the future with a threat of

23   repetition." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020) (quoting *H.J. Inc. v. Nw.*

24   *Bell Tel. Co.*, 492 U.S. 229, 241 (1989)).  Sylabs cannot meet this requirement because, according

25

26   _____

27   [6] Sylabs makes passing reference to wire fraud and computer fraud, but Sylabs has not attempted to plead the former and the latter is not a predicate act.  *See* 18 U.S.C. § 1961(1) (listing predicate

28   acts).

1    to its allegations, Whitley's conduct occurred between March 8 and 13, 2020, and has not recurred

2    since.  *See* FAC ¶ 37 (prepared CIQ Budget on March 8, 2020), ¶ 49 (received email on March 11,

3    2020), ¶ 254 (viewed 14 documents on March 13, 2020), ¶ 256 (downloaded "Fuzz Budget" on

4    March 13, 2020).  Accordingly, Sylabs' FAC does not describe a pattern of racketeering activity.

5         **Finally,** as this Court has already recognized, a RICO conspiracy claim cannot stand if the

6    substantive RICO claim fails.  Order at 13 (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751

7    (9th Cir. 2000) and *Wagh v. Metris Direct, Inc.*, No. 01-cv-01711-TEH, 2002 WL 257846, at *4

8    (N.D. Cal. Feb. 20, 2002))  Therefore, "[b]ecause Sylabs' Section 1962(c) claim fails, its Section

9    1962(d) claim fails as well."  *Id.*

10        **D.    Sylabs' State Law Claims Remain Preempted (Counts VI, VII, IX, X, and XI).**

11        Sylabs' FAC repleads the same state-law claims from its original Complaint, but those

12   claims remain preempted and must be dismissed again.  Sylabs counters that these claims are

13   proper because they rest on "assets and property . . . that are not Trade Secrets, and, therefore, not

14   actionable under CUTSA."  FAC ¶ 622 (emphasis omitted).  But Sylabs misunderstands the scope

15   of CUTSA preemption.  As this Court correctly concluded, CUTSA "preempt[s] all claims

16   premised on the wrongful taking and use of confidential business and proprietary information,

17   ***even if that information does not meet the statutory definition of a trade secret***."  Order at 14

18   (emphasis in original) (quoting *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983,

19   989 (C.D. Cal. 2019)).

20        *SunPower v. Solar City*, on which this Court previously relied, confirms that CUTSA

21   preempts Sylabs' claims based on misappropriation of "assets and property . . . that are not Trade

22   Secrets."  FAC ¶ 622 (emphasis omitted); *see* No. 12-CV-00694-LHK, 2012 WL 6160472, at *3-9

23   (N.D. Cal. Dec. 11, 2012).  That Court held that state-law claims "based on . . .non-trade secret

24   proprietary information are superseded" by CUTSA unless the information is "made property by

25   some provision of positive law" or stems from "'wrongdoing' that is 'materially distinct from the

26   wrongdoing alleged in a CUTSA claim."  *SunPower,* 2012 WL 6160472, at *9 (alterations

27   adopted) (citations omitted).  Neither condition applies here.  Sylabs describes no "positive law,"

28   *id.*, aside from CUTSA, which would make the information at issue into property.  And far from

-14-

1  involving "materially distinct" wrongdoing, *id.* (alterations adopted), all of Sylabs' state-law

2  claims are still explicitly based on the same "alleged looting of Sylabs' servers" underlying

3  Sylabs' CUTSA claim.  Order at 15.  Because Sylabs' state-law claims arise from "the same

4  nucleus of facts as the misappropriation of trade secrets claim," *K.C. Multimedia, Inc. v. Bank of*

5  *Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v.*

6  *Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)), those claims are preempted and must

7  be dismissed.[7]

8      **E.    Sylabs' Claims Against the IAG Investors Should Be Dismissed Without Leave
        to Amend.**

9

10     All of Sylabs' claims against the IAG Investors once again warrant dismissal, but now,

11  they warrant dismissal with prejudice.

12     Leave to amend is properly denied "if allowing amendment would unduly prejudice the

13  opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith."

14  *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1217 (N.D. Cal. 2019).  Here,

15  Sylabs' behemoth FAC illustrates that any further amendment would be futile.  When this Court

16  dismissed Sylabs' original Complaint, Sylabs responded by filing a 238-page FAC and attaching

17  74 exhibits, including a 50-page expert declaration, *see* FAC, Ex. 38, and hundreds of pages of

18  audit logs, *see* FAC, Exs. 44-45.  Sylabs' approach, it seems, was to take every piece of evidence

19  in its possession, throw it into a pleading, and see what sticks.  But this approach only illustrates

20  how thin Sylabs' allegations against the IAG Investors are.  If Sylabs had any basis to allege that

21  the IAG Investors acquired even one trade secret, accessed a single file without permission, or

22  committed any RICO predicate acts, it would have done so somewhere within its thousands of

23  pages of filings.  It has not, because it cannot: The IAG Investors were only ever investors, and no

24  amount of amendment could change that.  Likewise, Sylabs already had one opportunity to cure

25

26  _____

    [7] In addition, the IAG Investors agree with CIQ Defendants that the UCL claims fail because the
27  predicate claims fail, because Sylabs lacks UCL standing, and because Sylabs does not allege
    fraudulent business practices.  *See* CIQ Defendants' Motion to Dismiss FAC, ECF No. 67 at 16-20
28  (February 23, 2024).

the defects with its state-law claims, but it failed to do so, and in the process ignored this Court's clear holding that CUTSA preemption applies "even if th[e] information does not meet the statutory definition of a trade secret." Order at 14 (emphasis in original) (citation omitted). The Court does not need to hear from Sylabs again to know that it can do nothing to save its claims.

Not only would leave to amend be an exercise in futility, it would also subject the IAG Investors to severe undue prejudice. The IAG Investors have already had to defend themselves from Sylabs' baseless allegations twice—including, in this latest round of pleading, by sifting through more than 4,000 pages of filings—when Sylabs' only real grievance with IAG is that it "invested in CIQ." FAC ¶ 119. The IAG Investors should not have to expend more time and more resources to defend their innocent conduct against Sylabs' unfounded allegations.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should dismiss Sylabs' claims against the IAG Investors with prejudice.

DATED: February 23, 2024                    MUNGER, TOLLES & OLSON LLP

                                            By:  */s/ Miriam Kim*
                                            CAROLYN HOECKER LUEDTKE
                                            carolyn.luedtke@mto.com
                                            MIRIAM KIM
                                            miriam.kim@mto.com
                                            TAYLOR L. BENNINGER
                                            Taylor.Benninger@mto.com

                                            Attorneys for JOEL WHITLEY, IAG FUND II,
                                            LP, and IAG CAPITAL HOLDINGS II, LLC