**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net
Counsel of Record for Plaintiff, **SYLABS, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, | Case No. **5:23-cv-00849-SVK** |
| Plaintiff, | **SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |
| v. | [Opposition filed under CIV. L.R. 7-3(a)] |
| **GREGORY ROSE** a/k/a **GREGORY M. KURTZER**, et al., | |
| Defendants. | Date:   May 7, 2024 |
| | Time:   10:00 am |
| | Courtroom:  6 |
| | Judge:   Honorable Susan van Keulen |
| | Filed/Lodged Concurrently with: |
| | 1.    Evidentiary Objections to Exhibit A (Kurtzer Release) to Declaration of Kurtzer |
| | 2.    Opposition to Defendants' Request for Judicial Notice |
| | 3.    [*Proposed*] Order Denying Motion to Dismiss and Motion to Strike |
| | 4.    [*Proposed*] Order Sustaining Objections to and Excluding Kurtzer Release |

Although Defendants filed and briefed **two** motions in a **single** Memorandum, Dkt. 67, Sylabs files this **separate** opposition to this Motion and concurrently files a **separate** opposition to the Motion to **Strike**. *See* CIV. L.R. 7-3(a) and the 1/30/24 Court Order, Dkt. 62, p. 1, ll. 11-13.

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES........................................................... iii

OPPOSITION TO MOTION TO <u>DISMISS</u> UNDER RULE 12(b)(6)............... 1

PRELIMINARY STATEMENT: SYLABS IS ENTITLED TO
CONDUCT WRITTEN DISCOVERY AND TAKE DEPOSITIONS................ 1

SYLABS' CYBER FORENSICS EXPERT: FORMER
FBI AGENT, CHRISTOPHER TARBELL........................................... 2

ARGUMENT.............................................................................. 2

I.    THE COURT SHOULD <u>NOT</u> CONSIDER THE RELEASE, AND,
      THEREFORE, SHOULD DENY DEFENDANTS' MOTION TO
      DISMISS........................................................................ 2

      A.    THE COURT'S 12/19/23 MOTION TO DISMISS ORDER.................... 2

      B.    THE COURT SHOULD NOT CONSIDER THE RELEASE BECAUSE IT
            IS OUTSIDE THE FOUR CORNERS OF THE FAC........................... 4

II.   SYLABS HAS CURED ALL THE PLEADING DEFICIENCIES
      IDENTIFIED BY THE COURT IN ITS MTD ORDER, AND,
      THEREFORE, DEFENDANTS' RULE 12(b)(6) MOTION TO
      DISMISS SHOULD BE DENIED IN ITS ENTIRETY........................... 6

      A.    PRELIMINARY MATTER REGARDING EXHIBIT 74 TO THE
            FAC........................................................................ 6

      B.    DUE TO THE FACT THAT THE COURT MAY NOT CONSIDER THE
            RELEASE AT THIS STAGE OF THE PROCEEDINGS, THE RELEASE
            DOES NOT BAR CLAIMS AGAINST DEFENDANT GREGORY
            KURTZER OR ANY OTHER DEFENDANT FOR CONDUCT
            ENGAGED IN PRIOR TO AND AFTER APRIL 29, 2020..................... 8

      C.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN
            THE MTD ORDER REGARDING COUNT I (DTSA) AND COUNT
            III (CUTSA)............................................................... 8

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN <u>OPPOSITION</u> TO CIQ AND
OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)**

i

LEPISCOPO & ASSOCIATES LAW FIRM

     (1)    Sylabs' SIF Technology Trade Secrets............................. 9

     (2)    Sylabs' Efforts to Protect Its Trade Secrets....................... 10

D.   THE CFAA CLAIMS ARE NOT TIME BARRED AND THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT II (CFAA), INCLUDING DEFENDANTS' PRE AND POST MARCH 31, 2020, VIOLATIONS OF CFAA............................................................................................ 12

E.   THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING THE RICO CLAIMS IN COUNTS IV AND V.................................................................................... 15

F.   THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING CUTSA'S PREEMPTION OF STATE LAW CLAIMS ALLEGED IN COUNTS VI THROUGH XI........ 17

G.   AS THE ECONOMIC LOSS RULE DOES NOT APPLY, THE FAC SUFFICIENTLY ALLEGES THE INTENTIONAL MISREPRESENTATION CLAIMS ALLEGED IN COUNTS XIII, XV, XVII, XIX, AND XXI.................................................................... 19

H.   SINCE THE BUSS/ PRAGER/OPEN DRIVES NDA APPLIES TO DEFENDANT OPEN DRIVES, INC., AND ITS OFFICERS AND DIRECTORS, SUCH AS DEFENDANTS DAVID BUSS AND MARLIN PRAGER, SYLABS ALLEGES SUFFICIENT FACTS TO SUPPORT THE BREACH OF CONTRACT AND INTENTIONAL MISREPRESENTATION CLAIMS IN COUNTS XX AND XXI............................................................................................ 23

I.   THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING DEFENDANTS DAVID BUSS, MARLIN PRAGER, AND OPEN DRIVES............................................ 25

III.   SYLABS REQUESTS LEAVE TO AMEND COMPLAINT................. 30

CONCLUSION.......................................................................................... 30

CERTIFICATE OF SERVICE

LEPISCOPO & ASSOCIATES LAW FIRM

# **TABLE OF AUTHORITIES**

**CASES:**                                                                **Pages**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................ 7

*Austin v. Terhune*,
   367 F.3d 1167 (9th Cir. 2004)................................................ 1

*Breier v. Northern California Bowling Proprietors' Association*,
   316 F.2d 787 (1963)........................................ 7, 12, 15, 16, 19, 23,  25, 30

*Dhital v. Nissan North America, Inc.*,
   84, Cal.App.5th 828 (2022)................................................ 21-23

*Dhital v. Nissan North America, Inc.*,
   2023 Cal. LEXIS 569 (February 1, 2023)............................ 22

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017)................................................ 7

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993).............................................. 2

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)............................................................. 2

*Fontana v. Haskin*,
   262 F.3d 871 (9th Cir. 2001)................................................ 1

*Harris v. Atlantic Richfield Co.*,
   14 Cal.App.4th 70 (1993)................................................... 21, 23

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007)............................................. 3, 5

*Jackson v. Carey*,
   353 F.3d 750 (9th Cir. 2003)................................................ 1

*Jones v. Greninger*,
   188 F.3d 322 (5th Cir. 1999)................................................ 1

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ............................................................ 5

*Mobley v. McCormick,*
    40 F.3d 337 (10th Cir. 1994)............................................................. 6

*Rattagan v. Uber Technologies, Inc.,*
    19 F.4th 1188 (9th Cir. 2021)........................................................... 20, 22

*Rattagan v. Uber Technologies, Inc.,*
    S272113, 2022 Cal. LEXIS 1885 (March 11, 2022).................... 20

*Robinson Helicopter Co. v. Dana Corp.,*
    34 Cal.4th 979 (2004)...................................................................... 21, 23

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974).......................................................................... 1, 6

*Sidney-Vinstein v. A.H. Robins Co.,*
    697 F.2d 880 (9th Cir. 1983)........................................................... 2

**STATUTES & CODES:**

    18 U.S.C. § 1030 ("CFAA")........................................12, 13, 14,  16, 22

    18 U.S.C. § 1343 ................................................................................ 16

    18 U.S.C. § 1831 *et seq.* ("DTSA")...............................................8, 9,  15, 16

    18 U.S.C. § 1962(c) ("RICO")......................................................... 15, 16

    18 U.S.C. § 1962(d) ("RICO")......................................................... 15, 16

    California Business & Professions Code § 17200 ("CUCL")........................ 18

    California Civil Code §§ 3426 et seq. ("CUTSA")....................................8,  9, 17

**RULES:**

    Northern District Civil Local Rule 7-3........................................... 1

    Federal Code of Civil Procedure, Rule 8(a).................................... *passim*

    Federal Code of Civil Procedure, Rule 9(b).................................... *passim*

    Federal Code of Civil Procedure, Rule 12(b)(6)............................. *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEPISCOPO & ASSOCIATES LAW FIRM

**COURT ORDERS & NOTICES:**

Order on Motion to Dismiss, Dkt.59 (December 19, 2023)........................... *passim*

Order Granting Joint Stipulation, Dkt. 63 (January 30, 2024)....................... 1

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN <u>OPPOSITION</u> TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)**

v

**OPPOSITION TO MOTION TO <u>DISMISS</u> UNDER RULE 12(b)(6)**

Plaintiff Sylabs, Inc. ("Sylabs") hereby opposes the Rule 12(b)(6) motion to dismiss ("Motion"), Dkt. 67, filed by defendants CIQ; Gregory Rose a/k/a Gregory M. Kurtzer; Julia Rose a/k/a Julia Kurtzer; Robert Adolph; Matthew Hayden; Erin Fong; Marlin Prager; Open Drives, Inc.; and David Buss (collectively, "Defendants"). Although Defendants filed and briefed **<u>two</u>** motions in a **<u>single</u>** Memorandum, Dkt. 67, Sylabs files this **<u>separate</u>** opposition to the Motion and concurrently files a **<u>separate</u>** opposition to the Motion to **<u>Strike</u>**. *See* CIV. L.R. 7-3(a) and the 1/30/24 Court Order, Dkt. 63, p. 1, ll. 11-13.

**PRELIMINARY STATEMENT:**

**SYLABS IS ENTITLED TO CONDUCT WRITTEN DISCOVERY**

**AND TAKE DEPOSITIONS**

In light of the detailed allegations set forth in the First Amended Complaint ("FAC"), Dkt. 61, and exhibits attached thereto, Sylabs has cured the deficiencies identified in the MTD Order, Dkt. 59, thereby satisfying the pleading requirements under Rule 8(a) and Rule 9(b). Accordingly, Sylabs is entitled to conduct written discovery and take depositions to obtain evidence and testimony to prove its case.

In this regard, and as aptly put by the Fifth Circuit, at this stage of the litigation, the Court must simply determine whether the allegations in the FAC are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Ninth Circuit has expounded upon this principle:

> "The issue is not whether a plaintiff will ultimately prevail but **whether the claimant is entitled to offer evidence to support the claims**. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely **but that is not the test**."

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (emphasis added) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . '" (quoting *Fontana v. Haskin*, 262 F.3d 871, 977 (9th Cir. 2001)).

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

1

LEPISCOPO & ASSOCIATES LAW FIRM

Finally, disputed or substantial legal issues are properly determinable only **after discovery** and a **hearing on the merits**. *See e.g. Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994) (quoting *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983)).

### SYLABS' CYBER FORENSICS EXPERT:
### FORMER FBI AGENT, CHRISTOPHER TARBELL

As will be alleged in greater detail below, and pursuant to the Court's MTD Order,[1] Sylabs will include allegations and evidence regarding its claims through the declaration of its expert witness, former FBI Agent Christopher Tarbell (Exh. 38) ("Decl. of Tarbell"), Dkt. 61-38, and FAC Exhibits 1-36, 44, 45, 57, and 68-73, Dkt. 61-1 through 61-36, 61-44, 61-45, 61-57, and 61-68 through 61-73. *See* Mr. Tarbell's C.V., Exh. 1, Dkt. 61-1.

### ARGUMENT

**I.    THE COURT SHOULD <u>NOT</u> CONSIDER THE RELEASE, AND, THEREFORE, SHOULD DENY DEFENDANTS' MOTION TO DISMISS.**

For the following reasons the Court should <u>not</u> consider the Waiver, Release and Settlement Agreement ("Release"), Dkt. 67-2 (Attachment A), and, therefore, should **deny** the Motion to Dismiss because Defendants rely so heavily on that document.

**A.    <u>The Court's 12/19/23 Motion To Dismiss Order.</u>**

As an initial matter, it is worth pointing out that in its December 19, 2023, Order Granting Defendants' Motion to Dismiss ("MTD Order"), Dkt. 59, the Court correctly observed that application of the Release during the **pleading** stage of this Action would be inappropriate:

---

[1]    In its relevant part, the MTD Order, Note 3 reads: "Sylabs submits a self-described 'expert' declaration in connection with its opposition briefing in an attempt to supplement its allegations. *See* Dkt. 47-1. However, the Complaint includes no references to this declaration, and Sylabs does not request that the Court judicially notice the declaration. The Court therefore declines to consider the declaration in analyzing the Motions." *See* MTD Order, Dkt. 59, p. 5, n. 3.

LEPISCOPO & ASSOCIATES LAW FIRM

> "The Court also observes that consideration of one of the documents at issue—an agreement that purportedly releases from liability several of Defendants—**would not likely resolve any issue at the pleading stage, as the Parties dispute the scope and impact of the release**."

*See* MTD Order, Dkt. 59, p. 7, ll. 16-19 (emphasis added).

The Court's reasoning is correct. First, the Release is <u>not</u> within the four corners of the FAC, Dkt. 61, and is <u>not</u> attached as an exhibit to the FAC. Thus, the Court should <u>not</u> consider the Release at this time. *See e.g. Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("*Intri-Plex*").

Second, and contrary to Defendants' suggestion, inclusion of or reference to the Release in the FAC is <u>not</u> required because it is, in fact and law, a **defense** document. Specifically, Defendants proffer the Release as an affirmative defense to the FAC. Sylabs is under no duty to include Defendants' defenses in the FAC, and, therefore, the Release should <u>not</u> be considered at this stage of the proceedings. *Id*.

Third, all aspects of the Release are disputed. For example, Mr. Tarbell has concluded from his review and analysis of the evidence (FAC Exhibits 2-36, 57, 44, 45, & 68-73) that defendants Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Joel Whitley, Marlin Prager, and David Buss were "**insider threats**" to Sylabs. This is important because at the **very same time** the Release was being proposed by defendant Greg Kurtzer, Defendants were—as insider threats—committing and concealing cyber corruption, cyber destruction, and cyber theft of Sylabs' Computer Systems, data, folders, and files. *See* FAC Exhibit 38, Tarbell Decl., Dkt. 61-38, p. 9, ¶ 30 (emphasis added).

Together with Exhibits 2-73, the Tarbell Declaration clearly reveals that during the time frame that defendant Kurtzer was proposing the Release to Sylabs, he and his co-defendants were concealing their cyber theft of Sylabs' trade secrets, corporate secrets, etc., from Sylabs. Thus, the factual disputes between the Release and the FAC's allegations are subject to proof and resolution by a **trier of fact** but certainly **not by the Court at the pleading stage**. It is no secret that Sylabs contends that defendant Greg Kurtzer was

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

3

perpetrating a fraud on Sylabs by pretending to be negotiating the Release in good faith while at the same time he and his co-defendants were stealing Sylabs' trade secrets, corporate secrets, etc. Regardless of how these disputed facts are ultimately resolved and whatever inferences are drawn therefrom, what is legally important is that these disputes and the drawing of inferences are reserved for a **trier of fact** to decide at a **later stage** in these proceedings.

Fourth, the parties covered by the Release must be established. For example, there would need to be testimony in depositions and/or at trial to determine which, if any, defendants **other than** defendant Greg Kurtzer might be covered by the Release.

Fifth, the intent, scope, and impact of the Release are in dispute, which will also require extensive written discovery, as well as deposition and/or trial testimony.

Sixth, it is important to note that there are entities that are **parties to the Release** but who are <u>not</u> parties to this Action: R-Stor, Inc. and Sylabs Holdings, LLC. Their testimony must be considered in deciding the intent, scope, and impact of the Release in this Action, which cannot be accomplished until **after** the pleading stage of this Action.

Finally, in essence, Defendants are trying to circumvent the pleading, discovery, and trial stages through improper introduction and application of the Release at this stage of the proceedings. Of course, this does not mean that the Release is precluded from being considered in this Action **in the future**, only that it should not be considered at this time.

Based on the foregoing and the MTD Order (Dkt. 59, p. 7, ll. 16-19), the Court should <u>not</u> consider the Release during the **pleading** stage of this Action. Furthermore, there are additional reasons the Court should <u>not</u> consider the Release in deciding the Motion to Dismiss.

**B.    THE COURT SHOULD NOT CONSIDER THE RELEASE BECAUSE IT IS OUTSIDE THE FOUR CORNERS OF THE FAC.**

In support of their Motion, Defendants have submitted the Release. In deciding the Motion, the Court should <u>not</u> consider the Release. First, the Kurtzer Release is a matter outside the four corners of the FAC. Specifically, unlike motions for summary judgment,

LEPISCOPO & ASSOCIATES LAW FIRM

a Rule 12(b)(6) motion precludes the Court from considering materials outside the FAC to be utilized in support of the Motion, in this Action the Release. *See e.g. Intri-Plex , supra*, 499 F.3d at 1052.

Here, for purposes of Rule 12(b)(6), the Release is simply an agreement that is <u>not</u> attached to, discussed, alluded to, or raised in the FAC. Of course, if, for example, the Release were a court order or a stipulation, declaration, or other pleading filed in a state or federal court, then it might be subject to the Court's consideration through judicial notice (assuming it was relevant). For example, in *Intri-Plex*, the defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted because of a claim that had been **previously litigated** and dismissed with prejudice and was, therefore, barred by the doctrine of *res judicata*. In support of the Rule 12(b)(6) motion, the defendant filed a request for judicial notice of (1) the <u>filed</u> state court complaint, (2) the <u>filed</u> stipulation regarding the protective order in state court, and (3) a <u>filed</u> request for dismissal of its state court complaint with prejudice. *Id*. at 1051-1052. All three documents were judicially noticed in support of the motion because they were filed in **other** court proceedings, which resulted in the court dismissing the claim as barred by *res judicata*. *Id*.

Unlike the **court-filed** documents in *Intri-Plex*, the Release was <u>not</u> filed in or approved by any state or federal court. It is simply a document outside the FAC that Defendants are attempting to improperly introduce into this Action at an improper stage of this Action. The Court should <u>not</u> consider the Kurtzer Release. *Id*.; Rule 12(b)(6).

Second, this Court may <u>not</u> take judicial notice of the Release because it is neither attached to nor referenced in the FAC, and, therefore, the incorporation doctrine is inapplicable. Defendants admit this: "[T]he FAC again omits any reference to the Release." *See* Motion, Dkt. 67, p. 3, l. 17. However, and incredibly, Defendants then go on to improperly conclude that under *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("*Knievel*") the Court can consider the Release under the incorporation by reference doctrine. *See* Motion, Dkt. 67, p. 3, ll. 20-24. On page 4 Defendants set forth a chart that juxtaposes the Release and the FAC as justification for the Court to <u>improperly</u> employ the

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

5

LEPISCOPO & ASSOCIATES LAW FIRM

incorporation by reference doctrine to consider the Release in ruling on the Motion. *See* Motion, Dkt. 67, p. 4, ll. 8-28. Of course, this is sleight of hand by Defendants because none of the cited references to the paragraphs in the FAC are dependent upon or originate from the Release. If the Court were to accept Defendants' proposed interpretation and application of *Knievel*, then virtually any external document could easily be infused into the four corners of any pleading, which would then become *ipso facto* incorporated into the complaint at issue. So, under Defendants' suggestion, does *Knievel* now mean that if a defendant prepares a chart, juxtaposes a document that is **outside** the complaint with paragraphs in the complaint, then such document can be considered in a Rule 12(b)(6) motion? Certainly not! *Knievel* does <u>not</u> authorize or countenance such an absurd end; nor should the Court adopt such an expansive, unsupported, and illogical interpretation and application of *Knievel*.

Third, Sylabs has asserted evidentiary objections to the Release and requested it be excluded from consideration in the Motion (*see* concurrently filed herewith, Sylabs' Evidentiary Objections to the Release).

Finally, this Court should <u>not</u> take judicial notice of the Release, should <u>not</u> incorporate by reference the Release into the FAC through the improper interpretation of *Knievel*, should sustain Sylabs' Evidentiary Objections, and should exclude the Release from being considered in deciding the Motion. *Knievel*, *supra*; *Rhodes*, *supra*; *see generally Mobley v. McCormick*, 40 F.3d 337; Rule 12(b)(6).

## II.    SYLABS HAS CURED ALL THE PLEADING DEFICIENCIES IDENTIFIED BY THE COURT IN ITS MTD ORDER, AND, THEREFORE, DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY.

### A.    <u>PRELIMINARY MATTER REGARDING EXHIBIT 74 TO THE FAC</u>.

For the Court's assistance and convenience, Sylabs has attached Exhibit 74, which is a <mark>highlighted</mark> version of the FAC, Dkt. 61, so the Court can see the comprehensive changes Sylabs made to the original complaint for purposes of curing **<u>all</u>** the pleading

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

6

LEPISCOPO & ASSOCIATES LAW FIRM

deficiencies identified in the MTD Order (*see* Exhibit 74, Dkt. 61-74). Contrariwise, in their Motions, Defendants failed to keep in mind that we are guided by the Court's MTD Order regarding the deficiencies in the original complaint, Dkt. 1, Rule 8 and 12(b)(6), and the Ninth Circuit's guidance, which requires the Court to treat the allegations of the FAC and Exhibits 1-73 attached thereto as true:

> "We accept as true all factual allegations in the operative complaint, and we construe them in the light most favorable to Plaintiff as the non-moving party."

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017) ("*ESPN*").

Further, Sylabs needs to allege only facts giving rise to a reasonable inference that Defendants are liable for the misconduct alleged in the FAC. *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Ashcroft*").

It seems from their Motion that Defendants' strategy is to ignore the fact that the Court spent considerable time crafting the MTD Order in order to identify the pleading deficiencies in the original complaint, Dkt. 1, so that Sylabs would have an opportunity to cure those deficiencies. In response, Sylabs digested and analyzed the MTD Order then cured all the pleading deficiencies with detailed facts and exhibits. As expressed in their Motion, Defendants will simply review each rendition of any amended complaint prepared and filed by Sylabs, then conjure up a whole new set of deficiencies. The Court should <u>not</u> play this game and should prevent Defendants from engaging the Court in perpetual motions to dismiss. *See* Rule 8(a), Rule 9(b), and Rule 12(b)(6); *ESPN* and *Ashcroft*, *supra*.

Finally, if the Court determines that there are remaining pleading deficiencies from the MTD Order, then such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *See Breier v. Northern California Bowling Proprietors' Association*, 316 F.2d 787, 790 (1963) ("*Breier*").

/////

/////

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

7

**B.**    **DUE TO THE FACT THAT THE COURT MAY NOT CONSIDER THE RELEASE AT THIS STAGE OF THE PROCEEDINGS, THE RELEASE DOES NOT BAR CLAIMS AGAINST DEFENDANT GREGORY KURTZER OR ANY OTHER DEFENDANT FOR CONDUCT ENGAGED IN PRIOR TO AND AFTER APRIL 29, 2020.**

For all the reasons set forth in Section I, *supra*, the Court should <u>not</u> consider the Release during the pleading stage of this Action. Accordingly, the Release does <u>not</u> bar any of Sylabs' claims set forth in Counts I through XXI of the FAC, regardless of whether Defendants' conduct occurred prior to or after April 29, 2020.

**C.**    **THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT I (DTSA) AND COUNT III (CUTSA).**

In its MTD Order, the Court analyzed Sylabs' Defense of Trade Secrets Act ("DTSA") (Count I), 18 U.S.C. § 1831 *et seq.*, and California's Uniform Trade Secrets Act ("CUTSA") (Count III), California Civil Code §§ 3426 *et seq*., claims "together because the elements are substantially similar." *See* Dkt. 59, p. 8, ll. 22-24 (citation omitted). In the FAC, Sylabs addressed and cured the Court's concerns regarding Counts I and III together. In their Motion, Defendants argue something that the Court did not identify as a deficiency in the MTD Order, namely that the DTSA and CUTSA claims "should be dismissed as to Mr. Buss, Mr. Prager, Open Drives, Ms. Fong, Mr. Hayden, and Ms. Kurtzer, as there are no allegations that these Defendants misappropriated any alleged trade secrets." *See* Motion, p. 5, ll. 15-17. Defendants already made these claims in their first motion to dismiss the original complaint. *See* Memo of Ps & As, Dkt. 40, p. 13, l. 8 through p. 14, l. 17. However, the Court did not identify any such pleading deficiency in its MTD Order, Dkt. 59, and, therefore, should not accept this recycled argument as to the FAC.

The foregoing notwithstanding, the FAC pleads sufficient facts to demonstrate that defendants Buss, Prager, Open Drives, Fong, Hayden, and Julia Kurter have engaged in misappropriation of Trade Secrets: See FAC, Dkt. 61, ¶ 61; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 29-127; and Exhs. 2-36, 44, 45 and 57, Dkt. 61-2 through 61-36, 61-44, 61-45, and 61-57, 61-68 through 61-73.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

8

LEPISCOPO & ASSOCIATES LAW FIRM

Finally, in its MTD Order, the Court expressed concerns that Sylabs did not plead facts with sufficient particularity to establish Sylabs' Trade Secrets under DTSA and CUTSA indicating two **very specific** deficiencies set forth below, each of which will be addressed in order.

(1)    **Sylabs' SIF Technology Trade Secrets**. The Court indicated that Sylabs did not allege facts sufficient to show those aspects of its SIF technology, which were <u>not</u> discussed in Sylabs' U.S. Patent Application No. US 2019/0377708 A1 ("Sylabs SIF Application"):

> "But the Court does not demand an exacting distinction at this stage that would depend upon discovery. Rather, **Sylabs must simply allege with particularity those aspects of its SIF technology <u>not</u> discussed in the patent application**, and it does not do so in the Complaint."

*See* MTD Order, Dkt. 59, p. 10, ll. 14-16 (emphasis added).

As to the Court's concerns relating to those aspects of its SIF technology **<u>not</u>** discussed in Sylabs' SIF Application, Sylabs has provided sufficient allegations in the FAC to cure this deficiency. For example, Sylabs alleges in the FAC that certain SIF technology components were <u>not</u> disclosed in Sylabs' SIF Application (Exh. 54, Dkt. 61-54) or Sylabs' SIF Patent (Exh. 55, Dkt. 61-55) but were stolen and used by Defendants to procure the Armored Container patents. Specifically, CIQ patent 11,055,428 (Exh. 41, Dkt. 61-41) mentions this type of approach for another format of container images, namely OCI container images. Sylabs has never publicly disclosed the Trade Secrets underlying the specific methods of encrypting container images as it pertains to OCI images but began developing this as part of its secret "Armored Containers" project well before Defendants left Sylabs. Thus, these are Sylabs' Trade Secrets, which were stolen by Defendants to develop and unlawfully and fraudulently procure their Patent Nos. US 11,055,428 (Exh. 41, Dkt. 61-41), US 11,163,902 (Exh. 42, Dkt-61-42), and US 11,321,064 (Exh. 43, Dkt. 61-43). *See* FAC, Dkt. 61, ¶ 414.

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

Moreover, CIQ's Patent Nos. US 11,055,428 (Exh. 41, Dkt. 61-41), US 11,163,902 (Exh. 42, Dkt. 61-42), and US 11,321,064 (Exh. 43, Dkt. 41-43) are described and based upon Sylabs' Armored Containers technology, which was born out of Sylabs' research and development starting in June of 2019. It is important to note that the Armored Containers technology that serves as the basis of CIQ's patents is **not** based on the technology disclosed in Sylabs' SIF Application for its SIF technology. *See* FAC, Dkt. 61, ¶¶ 373 (Figure 10), 411-414, and 496-497. For purposes of illustration and more detail, please see Figure 10 from the FAC to show the amendments made in the FAC to cure these deficiencies (*see* <mark>highlighted</mark> portions), *See* FAC, Dkt. 61, ¶¶ 372 and 373 (Figure 10).

**(2)    Sylabs' Efforts to Protect Its Trade Secrets.** The Court indicated that Sylabs did <u>not</u> allege facts sufficient to show the policies, methods, and procedures it maintained to protect the secrecy of its Trade Secrets from being publicly disclosed:

> "Thus, Sylabs sufficiently describes four of its five purported trade secrets which are not publicly available. However, the Court agrees with Defendants' third argument that **Sylabs does not sufficiently allege any efforts to maintain the secrecy of its technologies. Indeed, Sylabs offers no allegations of <u>any specific</u> measures it took**."

*See* MTD Order, Dkt. 59, p. 11, ll. 13-16 (emphasis in original and added).

As to the policies, methods, and procedures Sylabs maintained to protect the secrecy of its Trade Secrets, Sylabs has cured this deficiency in the FAC. Generally, Sylabs' Server and Google Workspace provided security for the protection of Sylabs' Trade Secrets. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 3-5. Of course, this type of security was nullified by Defendants through their unlawful and unauthorized intrusions into Sylabs' Server when they were **insider** threats and **external** threats with unimpeded access to Sylabs' Server from March 2020 through June 2020. Specifically, Mr. Tarbell provides numerous factual examples of Defendants' actions as **insider** threats as well as Defendants' **external** cyber intrusions into Sylabs' Server. *See* FAC, Dkt. 61, ¶ 61; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 29-127; and Exhs. 2-36, 44, 45, 57, and 61-73, Dkt. 61-2 through 61-36, 61-44, 61-45, 61-57, and 61-61 through 61-73.

As evidence of further protection of its Trade Secrets, Sylabs provided additional allegations in the FAC to identify the policies, methods, and procedures it utilized to maintain the secrecy of and protect from public disclosure of its Trade Secrets (collectively "Trade Secret Protections"). *See* FAC, Dkt. 61, ¶ 62; Exh. 47, Dkt. 61-47. For example, Sylabs utilized a protective server environment for its data, folders, files, and directories. Specifically, Sylabs utilized Google Workspace, which is a secure cloud computing based service that many companies utilize for employees to collaborate, store, and share files. Workspace has a robust logging feature that allows the auditing of employee activities within this environment. *See* FAC, Dkt. 61, ¶¶ 63 and 64; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 3 and 4.

In addition to the Trade Secret Protections, Sylabs maintained conflict of interest policies ("Conflict of Interest Policies") to not only ensure the secrecy of Sylabs' Trade Secrets but also prevent those Trade Secrets and those having knowledge of those Trade Secrets from being utilized as a means of **competing against Sylabs**—in the way that Defendants' conspiracy launched and empowered CIQ to compete against Sylabs after stealing Sylabs' Trade Secrets and Corporate Assets. *See* FAC, Dkt. 61, ¶ 65; Exh. 47, Dkt. 61-47.

Sylabs also maintained and utilized various technology-based protections ("Technical Protections") to not only maintain the secrecy of Sylabs' Trade Secrets but also prevent those Trade Secrets from being utilized and those having knowledge of those Trade Secrets from utilizing them as a means of competing against Sylabs. *See* FAC, Dkt. 61, ¶ 66. So, for example, Sylabs took steps to ensure that all source code and other materials related to its Fuzzball and Armored Containers Trade Secrets were kept secret, as is the general practice for other closed-source Sylabs projects/products such as SingularityPRO and Singularity Enterprise. Thus, source code, technical documentation, and planning material are stored in private server projects, and access to the projects was strictly limited, including use of IP Assignment/NDA Agreements. *See* FAC, Dkt. 61, ¶ 67; Exhs. 48-52, Dkt. 61-48 through 61-52.

During the relevant timeframe of this Action, Sylabs was engaged in pursuing business with the United States Government, in particular the Department of Defense ("DoD"). A document titled, "Open Call for Innovative Defense-Related Dual-Purpose Technologies/Solutions with a Clear Air Force Stakeholder" ("RFP"), was subject to DoD nondisclosures, which included the following Notice:

> "This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed-in whole or in part-for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offeror as a result of-or in connection with-the submission of this data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. . ."

*See* FAC, Dkt. 61, ¶ 68; Exh. 53, Dkt. 61-53. Thus, **Defendants breached this protocol**.

In addition to the Trade Secret Protections, Conflict of Interest Policies, and Technical Protections, Sylabs also utilized intellectual property assignment agreements and nondisclosure agreements ("IP Assignment/NDA Agreements") to not only maintain the secrecy of Sylabs' Trade Secrets and Sylabs' Corporate Assets but also prevent those Trade Secrets and Corporate Assets from being utilized as a means of competing against Sylabs. *See* FAC, Dkt. 61, ¶ 69; Exhs. 47-52, Dkt. 61-47 through 61-52.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**D.** **THE CFAA CLAIMS ARE NOT TIME BARRED AND THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT II (CFAA), INCLUDING DEFENDANTS' PRE AND POST MARCH 31, 2020, VIOLATIONS OF CFAA.**

As an initial matter, Defendants argue that Sylabs' CFAA claims are time barred because they were not filed within two years as required by 18 U.S.C. § 1030(g), Motion, Dkt. 67, p. 8, l. 16 through p. 9, l. 12. However, Defendants failed to mention that in the FAC Sylabs has alleged that Sylabs did not discover Defendants' cyber theft (that

LEPISCOPO & ASSOCIATES LAW FIRM

**Defendants themselves <u>concealed</u>**) until April 6, 20<u>21</u>. *See* FAC, Dkt. 61, Section VI, ¶¶ 208-209. As the original complaint was filed **less than two** (2) years later on February 24, 20<u>23</u>, Dkt. 1, Sylabs' CFAA claims are <u>not</u> timed barred by 18 U.S.C. § 1030(g). One final point is that any factual dispute that Defendants might have created regarding Section 1030(g) may be resolved only by a trier of fact, and not through a Rule 12(b)(6) motion.

In its MTD Order, the Court determined that under the original complaint, Dkt. 1, Sylabs' "CFAA Claim Fails Because Sylabs Does Not Allege That It Suffered Any Harm Remediable By The Statute." *See* MTD Order, Dkt. 59, p. 12, ll. 1-22. As set forth in Count II and Sections V-VIII of the FAC, Sylabs has alleged sufficient facts and provided sufficient evidence to properly allege Defendants' cyber corruption and cyber destruction of Sylabs' server, data, folders, files, and directories.

Mr. Tarbell has reviewed the MTD Order and has provided an analysis and discussion of evidence to address the pleading insufficiencies of the original allegations. *See* FAC, Dkt. 61, ¶ 20; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 3-13. First, Mr. Tarbell explains the security features of Sylabs' Server and Google Workspace:

> "One part of Google's security features is the audit logs that record users' actions on Sylabs access controlled computer systems. These audit logs provide Sylabs administrators a detailed list of security-relevant actions taken on their sensitive corporate files. These actions include, but are not limited to, trashing files, trashing folders, deleting files, and deleting folders."

*See* FAC, Dkt. 61, ¶ 20; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 4.

Mr. Tarbell goes on to explain why Defendants' trashing or deleting files and folders constitutes the type of harm that is remediable under the Computer Fraud and Abuse Act ("CFAA"). In particular, Mr. Tarbell explains:

> "Google states that a user 'can remove Google Drive files and folders from… (Google Workspace) My Drive and shared drives…(with) trash or delete.' Files and folders in Google Workspace Drive can be **permanently deleted without moving the data to trash**. Any file or folder that is moved into trash is automatically deleted after 30 days. **After a file is deleted, any other user that has been shared that file will lose access to the file**."

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

*See* FAC, Dkt. 61, ¶ 21; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 5 (emphasis added).

Next, Mr. Tarbell connects the preceding explanation with Section 1030(e)(8) of the CFAA:

> "Damage, as defined in 18 USC § 1030(e)(8), is 'any **impairment** to the integrity or availability of data, a program, a system, or information.'"

*See* FAC, Dkt. 61, ¶ 22; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 6 (emphasis added).

Mr. Tarbell then goes on to explain that Sylabs has suffered cognizable damage that is remediable under the CFAA:

> "Deleting and trashing, which are automatically deleted after 30 days, files and folders in Sylabs' Google Workspace is a damage. These files' availability to legitimate Sylabs' Google Workspace users **was impaired**."

*See* FAC, Dkt. 61, ¶ 23; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 7 (emphasis added).

Further, Mr. Tarbell explains that under Section 1030(e)(6) of the CFAA Defendants' access to Sylabs' Server for the purpose of deleting and trashing Sylabs' data, files, and directories **<u>exceeded</u> any authorized access** they might have enjoyed under, for example, the IP Assignment/NDA Agreements (*see* Exhs. 48-52, Dkt. 61-48 through 61-52):

> "Exceeds authorized access, as defined in 18 USC § 1030(e)(6), is to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter. <u>Deleting and trashing files, damaging the data, on a Sylabs' computer system after resigning from Sylabs is **exceeding authorized access**</u>."

*See* FAC, Dkt. 61, ¶ 24; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 13 (emphasis added).

To tie everything together, Mr. Tarbell provides some examples of Defendants' unlawful acts that caused Sylabs damage under Section 1030(e)(8):

> "As KURTZER was walking out the door of Sylabs, after tendering his resignation, KURTZER deleted 142 folders (Exhibit 3) and 881 files (Exhibit 4).

Lepiscopo & Associates Law Firm

Defendant Robert Adolph ("ADOLPH") trashed 24 files from Sylabs' Google Workspace between tendering his resignation and the effective date of his resignation. These trashed files would also be automatically deleted within 30 days.

As Shara Hayden was leaving Sylabs, she deleted 95 folder (Exhibit 34) and deleted 255 files (Exhibit 35).

Defendant Matthew Hayden ("HAYDEN") deleted a file from Sylabs' Google Workspace nine days after his resignation from Sylabs."

*See* FAC, Dkt. 61, ¶ 25; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 8-12; Exhs. 3, 4, 19, 20, 34, 35, 44, and 45, Dkt. 61-3, 61-4, 61-19, 61-20, 61-34, 61-35, 61-44, and 61-45.

As the foregoing examples demonstrate, Sylabs has alleged in the FAC that it suffered actual, remediable damage[2] due to Defendants' cyber corruption and cyber destruction in the form of monetary damage in an amount that exceeds $75,000. *See* FAC, Dkt. 61, ¶ 19(a)-(n) and ¶¶ 124-374; Exhs. 2-73, Dkt. 61-2 through 61-73.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## E.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING THE RICO CLAIMS IN COUNTS IV AND V.

In its MTD Order, the Court determined that Sylabs' Counts IV and V for RICO were insufficient because they relied upon Sylabs' Count I (*i.e.*, **violation of the DTSA**) as their Predicate Acts to establish RICO, which the Court held Sylabs failed to establish in the original complaint:

"Sylabs selects Defendants' alleged violations of the DTSA as the necessary predicate acts. See Complaint ¶¶ 187-88; see also CIQ Opposition at 22-23; IAG Opposition at 22-23; 18 U.S.C. § 1961(1). Its Section 1962(c) claim

---

[2]    For purposes of CFAA, the terms "**damage**" "**damages**," and "**harm**" shall have the same meaning and were used interchangeably throughout the FAC.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

15

therefore fails, **because Sylabs does not sufficiently allege any DTSA violations**."

*See* MTD Order, Dkt. 59, p.13, ll. 6-10 (emphasis added).

It follows, therefore, that if Sylabs cured deficiencies with violations of DTSA (Count I) in the FAC (*see* II.C, *supra*), as was clearly demonstrated above, then Sylabs' RICO claims in Counts IV and V are sufficiently pleaded. *Id.* As set forth in greater detail in Section II.C, *supra*, the FAC cured the pleading deficiencies identified in the MTD Order regarding Count I, the DTSA, which satisfies the predicate acts to cure the deficiencies in RICO Counts IV and V.

As alleged in Count I, CIQ's patent Nos. US 10,970,113 (Exh. 37), US 11,099,893 (Exh. 39), US 11,310,342 (Exh. 40), US 11,055,428 (Exh. 41), US 11,163,902 (Exh. 42), and US 11,321,064 (Exh. 43) are based on Sylabs' Trade Secrets that Defendants unlawfully acquired through cyber corruption, destruction, theft, misappropriation, and unlawful and fraudulent patenting of Sylabs' Trade Secrets. These are clear violations of the DSTA. *See* FAC, Dkt. 61, ¶ 89.

It is undeniable and important to note for purposes of alleging the Predicate Acts under the RICO Act claims alleged in Counts IV and V that the allegations set forth therein constitute not only civil claims but also Defendants' alleged violation of federal **criminal** statutes, including, for example: 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1030(a)(4) (Computer Fraud), 18 U.S.C. § 1030(a)(2) (Theft of Information from a Computer), 18 U.S.C. § 1030(b) (Conspiring to Violate the CFAA), and 18 U.S.C. § 1030(a)(5)(B) (Recklessly Damaging a Computer). *See* FAC, Dkt. 61, ¶¶ 90 and 545.

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies in Counts IV and V (RICO) as identified by this Court in the MTD Order, Dkt. 59, p.13, ll. 6-10.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

LEPISCOPO & ASSOCIATES LAW FIRM

**F.  THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING CUTSA'S PREEMPTION OF STATE LAW CLAIMS ALLEGED IN COUNTS VI THROUGH XI.**

In its MTD Order, the Court clearly identified the pleading deficiencies regarding CUTSA's preemption of Sylabs' state law claims alleged in Counts VI through XI.

> "The CUTSA Preempts Sylabs' Other State-Law Claims. Sylabs asserts six state-law claims in addition to its CUTSA claim, all of which it bases on the same conduct underlying its CUTSA claim, namely, Defendants' alleged **misappropriation of Sylabs' purported trade secrets**. But '[u]nder California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon **misappropriation of a trade secret**.'"

*See* MTD Order, Dkt. 59, p.13, ll. 20-25 (emphasis added; citations omitted).

It follows from the MTD Order, that if Sylabs alleges damages sustained that are <u>not</u> based upon **misappropriation of trade secrets** then Sylabs will have cured the pleading deficiencies as to Defendants' challenges to Counts VI through XI. Specifically, and as discussed in Section II.D, *supra*, Sylabs has alleged that it suffered **non-misappropriation of trade secrets** damages in an amount that exceeds $75,000, which are distinguishable from what the Court indicated was insufficient for pleading purposes and which include costs, wages, and all related fees to: (1) discover cyber intrusions to Sylabs' Server; (2) discover harm caused to Sylabs' server, data, folders, files, and directories; (3) find, gather, and organize evidence of cyber intrusions to Sylabs' Server and harm caused to Sylabs' server, data, folders, files, and directories; (4)  assess the evidence of the harm caused to Sylabs' server, data, folders, files, and directories; (5) conduct forensic analysis of the evidence of cyber intrusions to Sylabs' Server and of the harm caused to Sylabs' server, data, folders, files, and directories; and (6) prepare forensic reports of the evidence of cyber intrusions to Sylabs' Server and the harm caused to Sylabs' server, data, folders, files, and directories by cyber intrusions, cyber corruption, and cyber destruction. *See* FAC, Dkt. 61, ¶ 19. These issues and the amount of damages are to be determined by a trier of fact not by the Court in a 12(b)(6) motion.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

17

LEPISCOPO & ASSOCIATES LAW FIRM

In addition to the foregoing allegations, the following allegations summarize Sylabs' assets and property stolen by Defendants that are **not** defined as, nor are they a part of its Trade Secrets, all of which were used by Defendants to launch and grow defendant CIQ's business: (1) corporate documents and minutes of shareholder and board of directors' meetings; (2) financial records; (3) partner and joint venture records; (4) existing and prospective customer list; (5) sales and potential sales lists; (6) statements of work; (7) purchase orders; (8) invoices; (9) marketing strategies, plans, and pricing; (10) prospective investors list; (11) human resources records; (l2) employees' files, including information relating to Sylabs employees' salary and benefits packages, payroll information, addresses, dates of birth, driver's licenses, tax identification numbers, etc.; (13) offers of employment, executive employment agreements, employment agreements, independent contract agreements, consultant agreements, technical advisor agreements, and reseller agreements; (14) attorney-client communications, attorney work-product documents, accountant-client communications, settlement negotiations and agreements, nondisclosure agreements, and tax returns; and (15) emails and correspondence from the Sylabs' Server, including but not limited to ones relating to sensitive corporate secrets and affairs, and ones discussing attorney-client communications, attorney work-product documents, accountant-client communications, settlement negotiations and agreements, nondisclosure agreements, and tax returns information. *See* FAC, Dkt. 61, ¶ 623.

In the Motion, Defendants separately attack Sylabs' claim under California's Unfair Competition Law ("CUCL"), California Business & Professions Code § 17200, Count VII, which was also made in their first motion to dismiss. *See* Memo of Ps & As, Dkt. 40, p. 13, l. 8 through p. 14, l. 17. However, the Court did not identify any such pleading deficiency in its MTD Order, Dkt. 59, and, therefore, should not accept this recycled argument as to the FAC. Specifically, in its MTD Order, the Court found the sole deficiency with Sylabs' CUCL claim (Count VII) was that it was preempted. *See* MTD Order, Dkt. 59, p. 14, l. 12. As set forth in this Section II.F, Sylabs has cured the pleading deficiency regarding preemption of the CUCL claim (Count VII).

LEPISCOPO & ASSOCIATES LAW FIRM

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies in Counts VI through XI, as identified by this Court in the MTD Order, Dkt. 59, p.13, ll. 20-25.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## G.    AS THE ECONOMIC LOSS RULE DOES NOT APPLY, THE FAC SUFFICIENTLY ALLEGES THE INTENTIONAL MISREPRESENTATION CLAIMS ALLEGED IN COUNTS XIII, XV, XVII, XIX, AND XXI.

The challenged claims for intentional misrepresentation against defendants Kurtzer, Hayden, Fong, Adolph, Buss, Prager, and Open Drives, Counts XIII, XV, XVII, XIX, and XXI (collectively "State Fraud Counts"), respectively, were not part of the original complaint and were **not** assessed in the MTD Order—this is the Court's first review of those claims. Except under preemption, Defendants (Buss and Prager excepted) do **not** attack the **breach of contract** claims alleged in Counts XII, XIV, XVI, XVIII, or XX.

Defendants claim the following pleading deficiencies regarding the State Fraud Claims: first, these claims, which sound in fraud, do not meet the heightened pleading standard of F.R.Civ.P. Rule 9(b); second, the economic loss rule bars the claims; and third, the FAC lacks sufficient allegations that the aforementioned Defendants intended to defraud Sylabs or induce Sylabs' reliance. *See* Motion, Dkt. 67, p. 20, ll. 6-9. Each will be addressed in order.

The allegations regarding the State Fraud Counts satisfy the pleading requirements of Rule 8(a) and Rule 9(b) and demonstrate that Defendants intended to defraud Sylabs and induce Sylabs' reliance. The idea underlying these counts is, as alleged, that Defendants executed their respective nondisclosure agreements ("Defendants' NDAs") in order to further their conspiracy by promising to protect and not steal Sylabs' property. This promise resulted in Defendants gaining access to ALL data, folders, and files on Sylabs' Computer Systems. As alleged in exhaustive detail in Sections II and V-VIII of the

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

19

LEPISCOPO & ASSOCIATES LAW FIRM

FAC, Defendants willfully and intentionally commenced stealing Sylabs' Corporate Assets. Thus, **all** Defendants lied through the false promise made in Defendants' NDAs to gain access because their access was intended to and did facilitate and advance their fraud and conspiracy. *See* FAC, Dkt. 61, ¶¶ 703-708, 719-724, 735-740, 751-755, and 766-771; Exhs. 48-52, Dkt. 61-48 through 61-52.

It would be up to a trier of fact—not the Court deciding a Rule 12(b)(6) motion— to decide the disputed facts and draw whatever inferences and conclusions they choose, which could reasonably and rationally lead to a finding that Defendants satisfied the elements of the State Fraud Counts, including that Defendants intended to defraud Sylabs and induce Sylabs' reliance. *See* Rule 8(a) and Rule 9(b).

Defendants improperly apply the economic loss rule as they relate to the allegations of this Action. In fact, under Defendants' application of this rule, no plaintiff would be able to plead alternative claims of relief. As an initial matter, applying the economic loss rule in the manner in which Defendants attempt to do in this Action is not as conclusive as Defendants would have the Court believe. Actually, there is a case currently pending before the California Supreme Court, in which the Ninth Circuit has certified the following question to the California Supreme Court regarding the economic loss rule:

> "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?"

*Rattagan v. Uber Technologies, Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021).

In response to the Ninth Circuit's certification request, the California Supreme Court **granted** certification. *Rattagan v. Uber Technologies, Inc.*, S272113, 2022 Cal. LEXIS 1885 (March 11, 2022) ("*Rattagan*"). *Rattagan* has been fully briefed but has not been scheduled for oral argument or decided by the California Supreme Court.[3]

---

[3]    *See* Docket in *Rattagan*:

https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2369232&doc_no=S272113&request_token=NiIwLSEnXkw8WzAtSCItSE1JUDw0UDxTJCI%2BQztTQCAgCg%3D%3D.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

20

LEPISCOPO & ASSOCIATES LAW FIRM

A California Supreme Court's decision is instructive and governs the State Fraud Counts, and may provide guidance as to how the Supreme Court might decide *Rattagan*:

> "We went on to describe several instances where tort damages were permitted in contract cases. 'Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced. . .[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 989-990 (2004) ("*Robinson*") (citations omitted).

*Robinson* went on to cite and quote with approval a Court of Appeal's decision that supports the State Fraud Counts—Defendants made false promises that they would comply with the Defendants' NDAs in order to induce Sylabs to provide access to Sylabs' Computer Systems, data, folders, and files. However, the allegations demonstrate that although Defendants promised, for the purpose of inducing Sylabs to authorize access, they always intended to disclose, steal, and otherwise improperly use Sylabs' Trade Secrets, Corporate Secrets, and other confidential and proprietary information. Consequently, the economic loss rule does <u>not</u> apply to the State Fraud Counts:

> "[W]hen one party commits a **fraud during the contract formation** or performance, the injured party may recover in contract **<u>and</u> tort**."

*Harris v. Atlantic Richfield Co.*, 14 Cal.App.4th 70, 78 (1993) ("*Harris*") (emphasis added).

Another case allowing a tort claim in the face of an economic loss defense is worth mentioning. In *Dhital v. Nissan North America, Inc.*, 84, Cal.App.5th 828, 841 (2022) ("*Dhital*"), the California Court of Appeal allowed the tort cause of action for fraud in the inducement to proceed even though a contract (warranty) cause of action was also alleged:

> "In our view, that independence is present in the case of fraudulent inducement (whether it is achieved by intentional concealment or by

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 67)

21

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

intentional affirmative misrepresentations), because a defendant's conduct in fraudulently inducing someone to enter a contract is separate from the defendant's later breach of the contract or warranty provisions that were agreed to."

It is important to note that the California Supreme Court has just granted review in *Dhital* regarding exclusion of fraud in the inducement under the economic loss rule, pending that Court's decision in *Rattagan*:

> "The petition for review is granted. Further action in this matter is deferred pending consideration and disposition of a related issue *in Rattagan v. Uber Tech. Inc*., S272113 (see Cal. Rules of Court, rule 8.512(d)(2)), or pending further order of the court. Submission of additional briefing, pursuant to California Rules of Court, rule 8.520, is deferred pending further order of the court."

*Dhital v. Nissan North America, Inc*., 2023 Cal. LEXIS 569 (February 1, 2023).

Fraud in the inducement and promise without intention to perform are the same species of tort, to wit: a lie to induce another person's reliance and to take action to do something. In this Action  the FAC alleges that Defendants lied to induce Sylabs to provide Defendants with access to Sylabs' Trade Secrets, Corporate Secrets, and other confidential and proprietary information. Once Defendants had access, they **damaged** Sylabs Computer Systems, data, folders, and files, and stole Sylabs' Trade Secrets and Corporate Secrets. *See* FAC, Dkt. 61, ¶¶  703-708, 719-724, 735-740, 751-755, and 765-772; Exhs. 48-52, Dkt. 61-48 through 61-52.

The FAC's allegations make clear that Defendants fraudulently gained access to Sylabs' Computer Systems, data, folders, and files, then immediately proceeded to exceed their fraudulently obtained access, all of which is actionable:

> "Exceeds authorized access, as defined in 18 USC § 1030(e)(6), is to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter. **<u>Deleting and trashing files, damaging the data, on a Sylabs' computer system after resigning from Sylabs is exceeding authorized access</u>**."

*See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 13 (emphasis added). Whatever the outside scope may be interpreted to be, the IP Assignment/NDA Agreements do **not** authorize Defendants to engage in the unlawful acts alleged in the FAC. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 1-127; Exhs. 1-43; 46-73; Exhs. 44 and 45: Drive and Mail Audit Logs.

As the foregoing demonstrates, Sylabs has alleged with the required **heightened** particularity the circumstances constituting fraud alleged in the State Fraud Counts, all of which is in full compliance with Rule 8(a) and Rule 9(b). Furthermore, the economic loss rule is inapplicable to the State Fraud Counts. *See Robinson, supra,* 34 Cal.4th at 889-890; *Harris, supra,* 14 Cal.App.4th at 78; *Dhital, supra,* 84, Cal.App.5th at 841.

Finally, if the Court determines that there are pleading deficiencies regarding the State Fraud Counts, then such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**H.    SINCE  THE BUSS/ PRAGER/OPEN DRIVES NDA APPLIES TO DEFENDANT OPEN DRIVES, INC., AND ITS OFFICERS AND DIRECTORS,  SUCH AS DEFENDANTS DAVID BUSS AND MARLIN PRAGER, SYLABS ALLEGES SUFFICIENT FACTS TO SUPPORT THE BREACH OF CONTRACT AND INTENTIONAL MISREPRESENTATION CLAIMS IN COUNTS XX AND XXI.**

Defendant David Buss is defendant Open Drives' chief executive officer and director, and defendant Marlin Prager is defendant Open Drives' chief financial officer and director. *See* FAC, Dkt. 61, ¶¶ 116 and 117, respectively. Accordingly, upon accepting their email credentials and access to Sylabs' Computer Systems, defendants Buss and Prager agreed to abide by the terms of the Buss/ Prager/Open Drives NDA, Exh. 52, Dkt. 61-52. Furthermore, they had the control to do so under the NDA.

Furthermore, Paragraph 3 of the Buss/ Prager/Open Drives NDA sets forth the duties of defendants Open Drives, Buss, and Prager under that agreement:

"3. Permission; Obligations. Recipient and any of its Affiliates shall: (a) only disclose the Confidential Information to Recipient's or any Affiliates **employees and contractors who have written and binding non disclosure obligations with Recipient that are as restrictive as those herein and then**

LEPISCOPO & ASSOCIATES LAW FIRM

**only for the Purpose**; (b) not disclose any Confidential Information to any third party, without Discloser's prior written consent;(c) use Confidential Information only for the Purpose; (d) not reproduce Confidential Information in any form except for the Purpose; (e) not reverse engineer, decompile, or disassemble any Discloser Confidential Information; (f) not use the, Confidential information to make, have made or sell any products or services that compete with any of Discloser's products or services; and, (g) provide Discloser with notice of any actual or threatened breach of Agreement."

*See* Exh. 52, Dkt. 61-52, p. 1, ¶ 3 (emphasis added).

One **affirmative** duty of defendant Open Drives and its officers, defendants Buss and Prager, under the Buss/Prager/Open Drives NDA was to make sure that anyone who would be granted access to Sylabs Computer Systems or received Sylabs' Trade Secrets, Corporate Secrets, or other confidential information executed a nondisclosure agreement to bind them to the Buss/Prager/Open Drives NDA. *See* Exh. 52, Dkt. 61-52, p. 1, ¶ 3(a).

Through Mr. Tarbell's Declaration, it is clear that by virtue of the Buss/Prager/Open Drives NDA, defendants Marlin Prager and David Buss became "**insider threats**" to Sylabs at the time they gained access to and committed cyber corruption and cyber destruction of Sylabs' Computer Systems, data, folders, and files, and cyber theft of Sylabs' Trade Secrets, Corporate Secrets, and other confidential and proprietary information:

"Sylabs suffered multiple insider threat attacks by their former CEO and his cohorts. Sylabs' former CEO, Gregory Kurtzer ("KURTZER"), used his authorized access to and knowledge of Sylabs' intellectual property, trade secrets, confidential information, resources, including personnel, facilities, information, equipment, networks, and system to delete, share with outsiders, and download Sylabs' sensitive corporate data."

*See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 30.

It is also important to note that the duties of defendants Open Drives, Buss, and Prager under the Buss/Prager/Open Drives NDA are still in full force and effect:

"Recipient's nondisclosure obligations under sub-Sections(a) and (b) of this Section 3 shall expire **5 years** from the date of disclosure of such Confidential Information."

LEPISCOPO & ASSOCIATES LAW FIRM

*See* Exh. 52, Dkt. 61-52, p. 1, ¶ 3 (emphasis added).  Accordingly, defendants Buss and Prager's duties under the Buss/Prager/Open Drives NDA continue to the present.

As the foregoing demonstrates, defendants Buss and Prager's breach of the NDA has been ongoing and continuing to the present day, which was made possible by their **fraudulent inducement** of Sylabs to provide them with access to Sylabs' Computer Systems, date, folders, and files, and cyber theft of Trade Secrets, Corporate Secrets, and other confidential and proprietary information.

Sylabs has alleged with the required particularity the circumstances constituting breach of contract and fraud claims alleged against defendants Buss and Prager in Counts XX and XXI, all of which are in full compliance with Rule 8(a) and Rule 9(b).

Finally, if the Court determines that there are pleading deficiencies regarding the breach of contract and fraud claims in Counts XX and XXI, then such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## I.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING DEFENDANTS DAVID BUSS, MARLIN PRAGER, AND OPEN DRIVES .

In its MTD Order, the Court identified the pleading deficiencies regarding insufficient allegations against defendants Buss and Prager:

> "Sylabs does not allege in the Complaint any specific acts performed by Defendant Buss (ODI's CEO) in connection with remaining Defendants' access of Sylabs' server.
>
> **ODI [Open Drives, Inc.] And Defendants Prager And Buss**. Defendant GK provided ODI and Defendant Prager with access to Sylabs' server. But Sylabs does not allege that these Defendants actually did anything in response to this provision of access and does not allege any conduct on the part of Defendant Buss. Rather, it simply notes that ODI invested in CIQ. Sylabs otherwise conclusorily alleges that Defendants GK and Adolph 'plann[ed] a collaboration' with ODI, but offers no particularized facts to illustrate ODI's or Defendants Prager and Buss's roles in such a collaboration."

LEPISCOPO & ASSOCIATES LAW FIRM

*See* MTD Order, Dkt. 59, p.4, ll. 20-25, and p. 8, ll. 6-12 (emphasis original and added; citations omitted).

As mentioned above, defendant Buss is Open Drives' C.E.O. and a director and defendant Prager is Open Drives' C.F.O. and a director, and, therefore, their individual and collective actions bind defendant Open Drives, including, for example, all of the actions performed by defendants Buss and Prager, as discussed below.

In response to the MTD Order, Sylabs has made, for example, the following allegations in the FAC and supporting exhibits to provide details of the actions performed by defendants Buss, Prager, and Open Drives relating to their own violations and in concert with their co-defendants in furtherance of the conspiracy, all of which cures the above mentioned pleading deficiencies in the MTD Order:

(1)    Email accounts external to Sylabs, m.prager@opendrives.com and d.buss@opendrive.com, were used by defendants Marlin Prager and Buss, respectively, while employed by defendant Open Drives, Inc., to access Sylabs' Computer Systems. *See* FAC, Dkt. 61, ¶ 8; Exh. 38: Decl. of Tarbell ¶¶ 8, 9, 22, 41, 50-54, 56, 77, 87, and 98-101; Exhs. 2-36, 44, 45, 57, 68-73.

(2)    Defendants agreed to and utilized defendant Buss' position, experience, and contacts as a retired Navy Admiral to promote "defendant CIQ's technology" with the DoD, which was actually Sylabs' Trade Secrets stolen by defendants, *see* FAC, Dkt. 61, ¶ 39.

(3) Defendants Buss and Prager were involved in assessing Sylabs' DoD projects that were under way for the purpose of including them in **CIQ's business plan** and **CIQ Budget** because they knew Sylabs' Trade Secrets would be used as the basis to procure the six CIQ Patents, *see* FAC, Dkt. 61, ¶ 39; Exhs. 37 and 39-43, Dkt. 61-37 and 61-39 through 61-43.

(3)    Defendants Buss and Prager were involved in a meeting held on December 19, 2019, during which time Sylabs commenced its planning of the design and development

LEPISCOPO & ASSOCIATES LAW FIRM

of Fuzzball, including preparation of an initial planning document ("Fuzzball Planning Document"), as well as in other meetings relating to Fuzzball where they gained access to and knowledge of Sylabs' Trade Secrets, *see* FAC, Dkt. 61, ¶ 31; Exh. 64, Dkt. 61-63.

(4)    Defendants Buss and Prager and their co-defendants were involved in a meeting in February 2020, wherein they agreed with their co-defendants to carry out their scheme against Sylabs by creating a **new** company that Defendants secretly referred to as "NewCo" for purposes of stealing Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets and transferring to the newly formed defendant, CIQ, which  caused damage to Sylabs (*see* subparagraphs (a) through (p) for a list of specific damage done to Sylabs' Computer Systems, data, folders, and files), *see* FAC, Dkt. 61, ¶ 34(a)-(p).

(5)    Defendants Buss and Prager and their co-defendants met on March 8, 2020, to prepare a budget ("CIQ Budget") for CIQ (identified in the Budget as "NewCo") in order to conceal their conspiracy to set up CIQ and transfer all of Sylabs' Trade Secrets and assets to CIQ, in which they ultimately succeeded. Further, it listed several of Sylabs' customers and prospective customers as CIQ's (*see* subparagraphs (a) through (n) for a list of specific companies). *See* FAC, Dkt. 61, ¶¶ 37 & 38(a)-(n); Exh. 56, Dkt. 61-56.

(6)    Defendant Buss used his knowledge and expertise with the DoD when he and defendant Prager, and their co-defendants, were involved during the February-March 2020 timeframe in assessing Sylabs' DoD projects that were under way for the purpose of including them in CIQ's business plan and the CIQ Budget. Defendants Buss and Prager and their co-defendants knew Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets would be stolen and used as the basis to procure the six CIQ Patents, *see* FAC, Dkt. 61, ¶ 39; Exhs. 37 and 39-43, Dkt. 61-37 and 61-39 through 61-43.

(7)    In March of 2020, defendants Buss and Prager and their co-defendants inserted themselves into a government project that Sylabs was already involved in with the U.S. Air Force, which is known as Small Business Innovation Research ("SBIR"),[4] in this

---

[4]    SBIR is administered through the U.S. Small Business Administration's ("SBA") Office of Innovation and Technology ("OIT"), *see*:  https://www.sbir.gov/about.

LEPISCOPO & ASSOCIATES LAW FIRM

case SBIR proposal No. F2-13944 ("SBIR Proposal") regarding Sylabs' hardened SIF container technology, *see* FAC, Dkt. 61, ¶ 40.

(8)    On March 10, 2020, defendant Greg Kurtzer sent an email to defendants Buss, Adolph, and Prager:  "Hi guys, Here is the formal SBIR Phase 1 Award. Greg". At this point defendant Buss and his co-defendants knew that the SBIR Phase 1, as well as follow-up awards for Phase 2 and Phase 3, were Sylabs' property and future business, as they were based and awarded on Sylabs' technology—they came to know this as a consequence of their access to Sylabs' Computer Systems. However, defendants Buss, Greg Kurtzer, Adolph, and Prager's plan in furtherance of their conspiracy was already underway so that CIQ would benefit from SBIR Phase 1, Phase 2, and Phase 3, to the extent of **even planning on its revenues in <u>CIQ's</u> budget** (Exh. 58). *See* FAC, Dkt. 61, ¶ 42; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 41; Exhs. 44, 45, 61, 57, and 58.

(9)    On March 16, 2020, defendants Buss and Prager (and their co-defendant Greg Kurtzer) received an email from defendant Adolph, which discussed Sylabs' SBIR that was stolen by defendants Buss and Prager and their co-defendants for use by "NewCo," which is defendant CIQ: "Hi Marlin and Dave, This is the **<u>NewCo</u> next SBIR**. . .This is them asking for the Sylabs Edge Solution. The current SBIR is just secure containers. . ." *See* FAC, Dkt. 61, ¶¶ 43 and 288; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 41; Exhs. 56 and 58, Dkt. 61-56 and Dkt. 61-58 (emphasis added).

(10)    On March 29, 2020, defendants Buss sent an email to his codefendants, Greg Kurtzer, Prager, and Adolph, wherein defendants Buss and Prager's involvement with SBIR through the U.S. Navy's program is evident: "Interesting. I just received a LinkedIn connection request from Matt Williams, who runs the Navy's SBIR program. Of course I said yes and connected. Will reach out to him. Dave David H. Buss, CEO, OpenDrives, LLC." *See* FAC, Dkt. 61, ¶ 44; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 41; Exh. 59, Dkt. 61-59.

(11)    In March of 2020, defendants Buss and Prager and their co-defendants included within **CIQ's** Budget (Exh. 56) the following projected revenue stream items

LEPISCOPO & ASSOCIATES LAW FIRM

regarding Sylabs' SBIR Award & Proposal as though it belonged to defendant CIQ: (a) USAF SBIR Phase 1, $50,000; (b) USAF SBIR Phase 2, $2,000,000; and (c) USAF SBIR Phase 3, $5,000,000. Keep in mind, at this very time defendants Buss and Prager and their co-defendants were not only corrupting, destroying, and stealing Sylabs' data, files, and directories, they were actively planning how they—through CIQ—would benefit from Sylabs' customers and active projects with the DoD. *See* FAC, Dkt. 61, ¶ 45; Exh. 56, Dkt. 61-56, p. 1; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 41; Exhs. 44 and 45, Dkt. 61-44 and 61-45.

(12)    In furtherance of their conspiracy, in March of 2020, in the same **CIQ** Budget (Exh. 56), defendants Buss and Prager and their co-defendants further revealed their unlawful intentions when they treated Fuzzball as their own. Specifically, defendants Buss and Prager and their co-defendants identify six different Fuzzball products based on Sylabs' Fuzzball Trade Secrets, which would be promoted by CIQ: (a) Fuzzball licensing and support; (b) FuzzStack; (c) FuzzStack on hardware; (d) FuzzCloud (SaaS); (e) FuzzSecure; and (f) FuzzEdge. *See* FAC, Dkt. 61, ¶ 46; Exh. 56, Dkt. 61-56, p. 1.

(13)    Defendants Buss and Prager's involvement is further evinced by a series of emails during the timeframe of March 10, 2020, through March 29, 2020, which show their involvement in all aspects of the conspiracy through planning of the transition (*i.e.*, theft and unlawful transfer) of Sylabs' Trade Secrets, assets, opportunities, customers, and business to CIQ. *See* FAC, Dkt. 61, ¶ 47; Exh. 62, Dkt. 61-62: 3/10/20 email (pp. 1-2), 3/13/20 email (p. 3), 3/16/20 email (p. 4), 3/19/20 email (pp. 5-8), 3/19/20 email (p. 9), 3/27/20 email (pp. 10-11), and 3/29/20 email (p. 12).

(14)    As a final example of their involvement, defendants Buss and Prager's email activity with their co-defendant Adolph was ongoing from March 8, 2020, through March 30, 2020, regarding Sylabs' SBIR and other issues relating to Sylabs' ongoing business and defendant **CIQ's pre-start** up business. *See* FAC, Dkt. 61, ¶ 48; Exh. 57, Dkt. 61-57: David Buss' email audit logs; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 41 and 98-101; Exhs. 44 and 45, Dkt. 61-44 and 61-45: Drive and Mail Audit Logs.

LEPISCOPO & ASSOCIATES LAW FIRM

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies regarding defendants David Buss, Marlin Prager, and Open Drives, as identified by this Court in the MTD Order, Dkt. 59, p.4, ll. 20-25, and p. 8, ll. 6-12.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## III.    SYLABS REQUESTS LEAVE TO AMEND.

As there is an enormous amount of evidence in this Action, some of which has already been disclosed, even before discovery of all parties has commenced, any deficiencies would be easily cured. Accordingly, in the event this Court determines that one or more counts of Sylabs' FAC, Dkt. 61, is or are deficient, then Sylabs respectfully requests leave to amend it in light of Supreme Court and Ninth Circuit precedent:

> "As the Supreme Court indicated in Foman [v. Davis, 371 U.S. 178, 182 (1962)], amendment should not be barred as futile if the underlying facts 'may be a proper subject of relief.' As we have recently said, leave to amend should be allowed unless the complaint 'cannot under any conceivable state of facts be amended to state a claim.' *Alexander v. Pacific Maritime Ass'n*, 9th Cir., 1963, 314 F.2d 690. Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.' 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)."

*Breier, supra,* 316 F.2d at 790.

## CONCLUSION

Based on the foregoing, Sylabs respectfully requests the Court to deny the Motion to Dismiss. Alternatively, if this Court grants the Motion in whole or in part, then Sylabs hereby requests leave to amend the FAC. *Breier, supra,* 316 F.2d at 790.


Dated:  March 22, 2024.                    **LEPISCOPO & ASSOCIATES LAW FIRM**


By:  /s/ Peter D. Lepiscopo          _
                    **PETER D. LEPISCOPO**

LEPISCOPO & ASSOCIATES LAW FIRM

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that I electronically filed the foregoing with the Clerk of the Court

3

for the United States District Court for the Northern District of California by using the

4

CM/ECF system on March 22, 2024. I further certify that all participants in the case are

5

registered CM/ECF users and that service will be accomplished by the CM/ECF system.

6

I certify under penalty of perjury that the foregoing is true and correct. Executed on

7

March 22, 2024.

8

9                                        LEPISCOPO & ASSOCIATES LAW FIRM

10                                       By: /s/ Peter D. Lepiscopo _____ _
                                              **PETER D. LEPISCOPO**
11                                             *Counsel of Record*
                                              Attorneys for Plaintiff, **SYLABS, INC.**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEPISCOPO & ASSOCIATES LAW FIRM