**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net

Counsel of Record for Plaintiff, **SYLABS, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>**GREGORY ROSE** a/k/a **GREGORY M. KURTZER**, et al., )<br><br>Defendants. )<br>_____ ) | Case No.  **5:23-cv-00849-SVK**<br><br>**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)  [Dkt. 68]**<br><br>Date:   May 7, 2024<br>Time:   10:00 am<br>Courtroom:   6<br>Judge:   Honorable Susan van Keulen<br><br><u>Filed/Lodged Concurrently with</u>:<br>1.    [*Proposed*] Order Denying Motion to Dismiss |

/////
/////
/////
/////
/////

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES.................................................................................... iii

OPPOSITION TO MOTION TO <u>DISMISS</u> UNDER RULE 12(b)(6)................ 1

PRELIMINARY STATEMENT: SYLABS IS ENTITLED TO
CONDUCT WRITTEN DISCOVERY AND TAKE DEPOSITIONS................ 1

SYLABS' CYBER FORENSICS EXPERT: FORMER
FBI AGENT, CHRISTOPHER TARBELL....................................................... 2

LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS................. 5

ARGUMENT..................................................................................................... 6

I.     THE COURT SHOULD <u>NOT</u> CONSIDER THE RELEASE, AND,
       THEREFORE, SHOULD DENY IAG DEFENDANTS' MOTION TO
       DISMISS.................................................................................................. 6

       A.     The Court's 12/19/23 Motion To Dismiss Order.................... 6

       B.     The Court Should Not Consider The Release Because It
              Is Outside The Four Corners Of The FAC............................. 8

II.    SYLABS HAS CURED ALL THE PLEADING DEFICIENCIES
       IDENTIFIED BY THE COURT IN ITS MTD ORDER, AND,
       THEREFORE, IAG DEFENDANTS' RULE 12(b)(6) MOTION TO
       DISMISS SHOULD BE DENIED IN ITS ENTIRETY........................... 9

       A.     Preliminary Matter Regarding Exhibit 74 To The
              FAC.......................................................................................... 9

       B.     Due To The Fact That The Court May Not Consider The
              Release At This Stage Of The Proceedings, The Release
              Does Not Bar Claims Against Defendants Whitley, IAG
              Fund, or IAG Capital For Conduct Engaged In Prior To
              And After April 29, 2020......................................................... 11

LEPISCOPO & ASSOCIATES LAW FIRM

C.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT I (DTSA) AND COUNT III (CUTSA).................................................................. 11

    (1)    Sylabs Has Cured The Pleading Deficiencies Identified in the MTD Order Regarding Defendants Whitley, IAG Funds, and IAG Capital, and the FAC Sufficiently Alleges IAG Defendants' Actionable Conduct.................. 11
    (2)    Sylabs' SIF Technology Trade Secrets............................. 17
    (3)    Sylabs' Efforts to Protect Its Trade Secrets....................... 20

D.    THE CFAA CLAIMS ARE NOT TIME BARRED AND THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT II (CFAA), INCLUDING IAG DEFENDANTS' PRE AND POST MARCH 31, 2020, VIOLATIONS OF CFAA........................................................................ 23

    (1)    Sylabs Identified the CFAA Provisions Alleged to Have Been Violated........................................................ 23
    (2)    Sylabs CFAA Claims Are NOT Time Barred.................... 23
    (3)    IAG Defendants' Access to Sylabs Computer Systems was Unauthorized and Caused Damage to Sylabs.............. 24

E.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING THE RICO CLAIMS IN COUNTS IV AND V.......................................................................... 26

F.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING CUTSA'S PREEMPTION OF STATE LAW CLAIMS ALLEGED IN COUNTS VI THROUGH XI............................................................................... 28

III.    SYLABS REQUESTS LEAVE TO AMEND COMPLAINT................. 30

CONCLUSION.................................................................. 30

CERTIFICATE OF SERVICE

LEPISCOPO & ASSOCIATES LAW FIRM

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 68)

ii

# TABLE OF AUTHORITIES

**CASES:**                                                                                                    **Pages**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................ 10

*Austin v. Terhune,*
   367 F.3d 1167 (9th Cir. 2004)...................................................... 1, 5

*Breier v. Northern California Bowling Proprietors' Association,*
   316 F.2d 787 (1963).........................................................10, 23, 26,  27, 30

*Eichenberger v. ESPN, Inc.,*
   876 F.3d 979 (9th Cir. 2017)........................................................ 10

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993)...................................................... 1

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994)...................................................................... 2

*Fontana v. Haskin,*
   262 F.3d 871 (9th Cir. 2001)........................................................ 1

*Galbraith v. County of Santa Clara,*
   307 F.3d 1119 (9th Cir. 2002)...................................................... 5

*Hishon v. King & Spalding,*
   467 U.S. 69 (1984)........................................................................ 5

*Hospital Bldg. Co. v. Rex Hospital Trustees,*
   425 U.S. 738 (1976)...................................................................... 5

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.,*
   499 F.3d 1048 (9th Cir. 2007)..................................................6,  8, 9

*Jackson v. Carey,*
   353 F.3d 750 (9th Cir. 2003)..................................................... 1, 5

*Jenkins v. McKeithen,*
   395 U.S. 411, *reh'g denied,* 396 U.S. 869 (1969)........................ 5

LEPISCOPO & ASSOCIATES LAW FIRM

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999)........................................................ 1, 5

*Palmer v. Roosevelt Lake Log Owners Ass'n*,
  651 F.2d 1289 (9th Cir. 1981)..................................................... 5

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974)..................................................................... 1

*Schneider v. California Dept. of Corr.*,
  151 F.3d 1194 (9th Cir. 1998)..................................................... 5

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983)....................................................... 2

*Swierkiewicz v. Sorema N. A.*,
  534 U.S. 506 (2002)..................................................................... 5

**STATUTES & CODES:**
  18 U.S.C. § 1030 ("CFAA")......................................................... 23-27
  18 U.S.C. § 1343........................................................................... 27
  18 U.S.C. § 1831 *et seq.* ("DTSA").................................11, 17, 23,  26, 27
  18 U.S.C. § 1962(c) ("RICO")..................................................... 26, 27
  18 U.S.C. § 1962(d) ("RICO")..................................................... 26, 27
  California Business & Professions Code § 17200 ("CUCL")........ 29
  California Civil Code §§ 3426 et seq. ("CUTSA")..........................11, 17,  23, 28

**RULES & ORDERS:**
  Federal Code of Civil Procedure, Rule 8(a).................................. 1
  Federal Code of Civil Procedure, Rule 9(b).................................. 1
  Federal Code of Civil Procedure, Rule 12(b)(6)........................... *passim*

**COURT ORDERS & NOTICES:**
  Order on Motion to Dismiss, Dkt.59 (December 19, 2023)............. *passim*

LEPISCOPO & ASSOCIATES LAW FIRM

## OPPOSITION TO MOTION TO <u>DISMISS</u> UNDER RULE 12(b)(6)

Plaintiff Sylabs, Inc. ("Sylabs") hereby opposes the Rule 12(b)(6) motion to dismiss ("Motion"), Dkt. 68, filed by defendants Joel Whitley ("Whitley"), and IAG Fund II, LP a/k/a IAG Capital Partners ("IAG Fund") and IAG Capital Holdings II, LLC a/k/a IAG Capital Partners ("IAG Capital") (collectively, "IAG"). Defendants Whitley and IAG may be referred to individually as Whitley or IAG, or collectively as "IAG Defendants."

### PRELIMINARY STATEMENT:
### SYLABS IS ENTITLED TO CONDUCT WRITTEN DISCOVERY
### AND TAKE DEPOSITIONS

In light of the detailed allegations set forth in the First Amended Complaint ("FAC"), Dkt. 61, and exhibits attached thereto, Sylabs has cured the deficiencies identified in the MTD Order, Dkt. 59, thereby satisfying the pleading requirements under Rule 8(a) and Rule 9(b). Accordingly, Sylabs is entitled to conduct written discovery and take depositions.

As aptly put by the Fifth Circuit, at this stage of the litigation, the Court must simply determine whether the allegations in the FAC are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Ninth Circuit has expounded upon this principle:

> "The issue is not whether a plaintiff will ultimately prevail but **whether the claimant is entitled to offer evidence to support the claims**. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely **but that is not the test**."

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (emphasis added) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting *Fontana v. Haskin*, 262 F.3d 871, 977 (9th Cir. 2001)).

Finally, disputed or substantial legal issues are properly determinable only **after discovery** and a **hearing on the merits**. *See e.g. Fantasy, Inc. v. Fogerty*, 984 F.2d 1524,

LEPISCOPO & ASSOCIATES LAW FIRM

1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994) (quoting *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983)).

## SYLABS' CYBER FORENSICS EXPERT:
## FORMER FBI AGENT, CHRISTOPHER TARBELL

As will be alleged in greater detail below, and pursuant to the Court's MTD Order,[1] Sylabs will include allegations and evidence regarding its claims through the declaration of its expert witness, Christopher Tarbell (Exh. 38) ("Decl. of Tarbell"), Dkt. 61-38, and FAC Exhibits 1-36, 44, 45, 57, and 68-73, Dkt. 61-1 through 61-36, 61-44, 61-45, 61-57, and 61-68 through 61-73.[2]

In preparing his declaration (Exh. 38), Mr. Tarbell has reviewed and considered this Court's MTD Order (Dkt. 59) in order to provide as much information as possible to assist the Court in reaching its ultimate decision on the FAC in the event IAG Defendants filed a second motion to dismiss. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 1 & 2.

By way of introduction, Mr. Tarbell was a special agent of the Federal Bureau of Investigation ("FBI"). He was employed as a computer forensic examiner and Special Agent. As a member of the FBI's Computer Analysis Response Team ("CART"), his professional responsibilities focused on forensically recovering data and conducting forensic examinations of electronic evidence. He is also certified as a Forensic Computer Examiner with the International Association of Computer Investigative Specialists

---

[1]  In its relevant part, the MTD Order, Note 3 reads: "Sylabs submits a self-described 'expert' declaration in connection with its opposition briefing in an attempt to supplement its allegations. *See* Dkt. 47-1. However, the Complaint includes no references to this declaration, and Sylabs does not request that the Court judicially notice the declaration. The Court therefore declines to consider the declaration in analyzing the Motions." *See* MTD Order, Dkt. 59, p. 5, n. 3.

[2]  Hereinafter all citations to "Exhibit" or "Exh." shall refer to the exhibits attached to FAC, Dkt. 61-1 through 61-74, all of which are true and correct copies of their originals and are incorporated herein by this reference as though fully set forth herein. For example, Exhibit 1 may be cited as "Exhibit 1" or "Exh. 1."

LEPISCOPO & ASSOCIATES LAW FIRM

("IACIS"). *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 17 and 19-21; Exh. 1, Dkt. 61-1, p. 1.

As a Special Agent with the FBI, Mr. Tarbell's primary professional responsibility was to conduct criminal investigations into computer and network intrusions, which also involved the retrieval and forensic examination of computer-related evidence. During the course of his career at the FBI, Mr. Tarbell worked on nearly 100 criminal and national security investigations that involved the recovery and forensic analysis of a wide range of electronic evidence as well as the investigations of computer artifacts from cyber intrusions. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 17; Exh. 1, Dkt. 61-1, p. 1.

As a computer forensic examiner with the FBI, Mr. Tarbell engaged in rapid-response investigations all over the world on matters related to terrorism, botnets, and other cybercrimes. In 2009, Mr. Tarbell joined the FBI's renowned Cybercrime Squad as a Special Agent in the New York field office. He was the lead investigator on several of the FBI's most complex and cutting-edge cases, including the takedown of the billion-dollar, cryptocurrency based drug marketplace "Silk Road" including the arrest of its founder, and the investigation and arrest of the leadership of the Anonymous/LulzSec hacking crews. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 22; Exh. 1, Dkt. 61-38, p. 1.

As will be discussed in greater detail below, Sylabs' Drive and Email Audit Logs (Exhs. 44 and 45), along with Exhibits 2-36, 57, and 68-73, evince and memorialize each and every act of cyber corruption, cyber destruction, and cyber theft perpetrated by IAG Defendants and their co-defendants. These exhibits contain the following information for each and every unlawful access to Sylabs' computer server system ("Sylabs' Server")[3]: (1) the identity of the person accessing; (2) the date and time of access; (3) what was accessed; (4) what folders were trashed; (5) what folders were deleted; (6) what files were trashed; (7) what files were deleted; (8) what folders were renamed; (9) what files were renamed; (10) what files were download; (11) what directories were created for deletion and copying

---

[3]    At all relevant times, Sylabs' Server was hosted in Google Workspace also referred to as Google Drive. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 3-5.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 68)

3

LEPISCOPO & ASSOCIATES LAW FIRM

purposes; (12)  what permissions for access were granted and to whom; (13) the specific email addresses utilized to access Sylabs' server; and so on. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 27-139; Exhs. 44 & 45, Dkt. 61-44 and 61-45.

As set forth in his declaration, Mr. Tarbell performed a comprehensive review and analysis of the Audit Logs. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 42-127; Exhs. 44 & 45, Dkt. 61-44 and 61-45.

In his Declaration, Mr. Tarbell explains what an "insider threat" is and how such threats—like the ones posed by IAG Defendants and their co-defendants—can use **trust placed in them** to harm a company:

> "The Cybersecurity and Infrastructure Security Agency ("CISA") of the United States defines an insider threat as 'the potential for an insider to use their **authorized** access or understanding of an organization **to harm that organization**.'"

*See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 29 (emphasis added).

As will be alleged in greater detail below, for example, Mr. Tarbell has concluded from his review and analysis of the evidence that Whitley and his co-defendants Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager,  and David Buss were "**insider threats**" to Sylabs at the time they committed cyber corruption, cyber destruction, and cyber theft of Sylabs' trade secrets, confidential information, etc.:

> "Sylabs suffered multiple insider threat attacks by their former CEO and his cohorts. Sylabs' former CEO, Gregory Kurtzer ("KURTZER"), used his authorized access to and knowledge of Sylabs' intellectual property, trade secrets, confidential information, resources, including personnel, facilities, information, equipment, networks, and system to delete, share with outsiders, and download Sylabs' sensitive corporate data."

*See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 30.

Finally, as set forth in his declaration and supporting exhibits, Mr. Tarbell provides numerous factual examples of IAG Defendants' **insider threats** and external cyber intrusions into Sylabs' Server. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 31-127; Exhs.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 68)

4

LEPISCOPO & ASSOCIATES LAW FIRM

2-36, 57, 44, 45, & 68-73, Dkt. 61-2 through 61-36, 61-44, 61-45, 61-57, and 61-68 through 61-73.

### LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. California Dept. of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

At the pleading stage of this Action, the Court must simply determine whether the allegations in the FAC are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones, supra*, 188 F.3d at 324; *see also Jackson, supra,* 353 F.3d at 755 and *Austin, supra,* 367 F.3d at 1171.

As to the technical drafting of federal complaints, a simplified pleading standard applies to all civil actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Specifically, pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Further, each allegation "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at 512. Clearly, the FAC and its 73 exhibits have met this standard.

Finally, a motion to dismiss for failure to state a claim should <u>not</u> be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See e.g. Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 68)

5

# ARGUMENT

## I. THE COURT SHOULD <u>NOT</u> CONSIDER THE RELEASE, AND, THEREFORE, SHOULD DENY IAG DEFENDANTS' MOTION TO DISMISS.

IAG Defendants predicate arguments in their Motion on the Waiver, Release and Settlement Agreement ("Release"), Dkt. 67-2 (Attachment A), which has been filed by their co-defendants, CIQ and ODI Defendants, in support of their motion to dismiss, Dkt. 67. Sylabs has objected to the Release by filing Evidentiary Objections to and an Opposition to CIQ and ODI Defendants' Request for Judicial Notice of the Release (collectively "Objections"). Pursuant to the Objections and for the following reasons the Court should <u>not</u> consider the Release, and, therefore, should **deny** the Motion because the IAG Defendants rely so heavily on that document.

### A. THE COURT'S 12/19/23 MOTION TO DISMISS ORDER.

As an initial matter, it is worth pointing out that in its MTD Order the Court correctly indicated that application of the Release during the **pleading** stage of this Action would be inappropriate:

> "The Court also observes that consideration of one of the documents at issue—an agreement that purportedly releases from liability several of Defendants—**would not likely resolve any issue at the pleading stage, as the Parties dispute the scope and impact of the release**."

*See* MTD Order, Dkt. 59, p. 7, ll. 16-19 (emphasis added).

The Court's reasoning is correct. First, the Release is <u>not</u> within the four corners of the FAC, Dkt. 61, and is <u>not</u> attached as an exhibit to the FAC. Thus, the Court should **not** consider the Release at this time. *See e.g. Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("*Intri-Plex*").

Second, and contrary to Defendants' suggestion, inclusion of or reference to the Release in the FAC is <u>not</u> required because it is, in fact and law, a **defense** document. Specifically, Defendants proffer the Release as an affirmative defense to the FAC. Sylabs

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

is under no duty to include Defendants' defenses in the FAC, and, therefore, the Release should <u>not</u> be considered at this stage of the proceedings.

Third, all aspects of the Release are disputed. For example, Mr. Tarbell has concluded from his review and analysis of the evidence (FAC Exhibits 2-36, 57, 44, 45, & 68-73) that defendant Whitley and his co-defendants Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager, and David Buss were "**insider threats**" to Sylabs. This is important because at the **very same time** the Release was being proposed by defendant Greg Kurtzer, IAG Defendants and their co-defendants were committing cyber corruption, cyber destruction, and cyber theft of Sylabs' Trade Secrets and Intellectual Property. *See* FAC Exhibit 38, Tarbell Decl., Dkt. 61-38, p. 9, ¶ 30 (emphasis added).

Together with Exhibits 2-73, the Tarbell Declaration clearly reveals that during the time frame that defendant Kurtzer was proposing the Release to Sylabs, IAG Defendants and their co-defendants were concealing their cyber-theft of Sylabs' trade secrets, corporate secrets, etc., from Sylabs. Thus, the factual disputes between the Release and the FAC's allegations are subject to  proof and resolution by a **trier of fact** but certainly **not by the Court at the pleading stage**. It is no secret that Sylabs contends that defendant Greg Kurtzer was perpetrating a fraud on Sylabs by pretending to be negotiating the Release in good faith while at the same time IAG Defendants and their co-defendants were stealing Sylabs' trade secrets, corporate secrets, etc. Regardless of how these disputed facts are ultimately resolved and whatever inferences are drawn therefrom, what is legally important is that these disputes and the drawing of inferences are reserved for a **trier of fact** to decide at a later stage in these proceedings. Accordingly, these disputed facts and the inferences to be drawn therefrom cannot be decided by the Court at the **pleading** stage through Rule 12(b)(6).

Fourth, the parties covered by the Release must be established. For example, there would need to be testimony in depositions and/or at trial to determine whether or not IAG Defendants might be covered by the Release.

Fifth, the intent, scope, and impact of the Release are in dispute, which will also require extensive written discovery, as well as deposition and/or trial testimony.

Sixth, it is important to note that there are entities that are **parties to the Release** but who are <u>not</u> parties to this Action: R-Stor, Inc. and Sylabs Holdings, LLC. Their testimony must be considered in deciding the intent, scope, and impact of the Release in this Action, which cannot be accomplished until **after** the pleading stage of this Action.

Finally, in essence, IAG Defendants are trying to circumvent the pleading, discovery, and trial stages through improper introduction and application of the Release at this stage of the proceedings. Of course, this does not mean that the Release is precluded from being considered in this Action **in the future**, only that it should not be considered at this time. Based on the foregoing and the MTD Order (Dkt. 59, p. 7, ll. 16-19), the Court should <u>not</u> consider the Release during the **pleading** stage of this Action. But there are additional reasons the Court should <u>not</u> consider the Release in deciding the Motion to Dismiss.

**B.    <u>THE COURT SHOULD NOT CONSIDER THE RELEASE BECAUSE IT IS OUTSIDE THE FOUR CORNERS OF THE FAC</u>.**

In support of their Motion, IAG Defendants have submitted the Release. In deciding the MTD, the Court may <u>not</u> consider the Release because it is a matter outside the four corners of the FAC. Specifically, unlike motions for summary judgment, a Rule 12(b)(6) motion precludes the Court from considering materials outside the FAC to be utilized in support of the MTD, in this case the Release. *See e.g. Intri-Plex , supra*, 499 F.3d at 1052.

Here, for purposes of Rule 12(b)(6), the Release is simply an agreement that is <u>not</u> attached to, discussed, alluded to, or raised in the FAC. Of course, if, for example, the Release was a court order or a stipulation, declaration, or other pleading filed in a state or federal court, then it might be subject to a court's consideration through judicial notice (assuming it was relevant). For example, in *Intri-Plex*, the defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted because of a claim that had been **previously litigated** and dismissed with prejudice and was, therefore, barred

LEPISCOPO & ASSOCIATES LAW FIRM

by the doctrine of *res judicata*. In support of the Rule 12(b)(6) motion the defendant filed a request for judicial notice of (1) the filed state court complaint, (2) the filed stipulation regarding the protective order in state court, and (3) a filed request for dismissal of its state court complaint with prejudice. *Id*. at 1051-1052. All three documents were judicially noticed in support of the motion, which resulted in the court dismissing the claim as barred by *res judicata*. *Id*.

Unlike the **court-filed** documents in *Intri-Plex*, the Release was <u>not</u> filed in or approved by any state or federal court. It is simply a document outside the FAC that IAG Defendants are attempting to improperly introduce into this Action at the improper stage of this Action. The Court should <u>not</u> consider the Kurtzer Release. *Id*.; Rule 12(b)(6).

Finally, Sylabs has asserted evidentiary objections to the Release and requested it be excluded from consideration in the Motions (*see* concurrently filed herewith, Sylabs' Evidentiary Objections to the Release filed in support of Sylabs' opposition the CIQ and Open Drives Defendants' motion to dismiss, Dkt. 67).

## II.    SYLABS HAS CURED ALL THE PLEADING DEFICIENCIES IDENTIFIED BY THE COURT IN ITS MTD ORDER, AND, THEREFORE, IAG DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY.

### A.    <u>PRELIMINARY MATTER REGARDING EXHIBIT 74 TO THE FAC.</u>

For the Court's assistance and convenience, Sylabs has attached Exhibit 74, which is a <mark>highlighted</mark> version of the FAC, Dkt. 61, so the Court can see the comprehensive changes Sylabs made to the original complaint for purposes of curing **<u>all</u>** the pleading deficiencies identified in the MTD Order (*see* Exhibit 74, Dtk. 61-74). Contrariwise, in their Motions, IAG Defendants failed to keep in mind that we are guided by the Court's MTD Order regarding the deficiencies in the original complaint, Dkt. 1, Rule 8 and 12(b)(6), and the Ninth Circuit's guidance, which requires the Court to treat the allegations of the FAC and Exhibits 1-73 attached thereto as true:

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

"We accept as true all factual allegations in the operative complaint, and we construe them in the light most favorable to Plaintiff as the non-moving party."

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017) ("*ESPN*").

Further, Sylabs need allege only facts giving rise to a reasonable inference that IAG Defendants are liable for the misconduct alleged in the FAC. *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Ashcroft*").

It seems from their Motion that IAG Defendants' strategy is to ignore the fact that the Court spent considerable time crafting the MTD Order in order to identify the pleading deficiencies in the original complaint, Dkt. 1, so that Sylabs would have an opportunity to cure those deficiencies. In response, Sylabs digested and analyzed the MTD Order then cured all the pleading deficiencies with detailed facts and exhibits. As expressed in their Motion, IAG Defendants will simply review each rendition of any amended complaint prepared and filed by Sylabs, then conjure up a whole new set of deficiencies. The Court should <u>not</u> play this game and should prevent IAG Defendants from engaging the Court in perpetual motions to dismiss. *See* Rule 8(a), Rule 9(b), and Rule 12(b)(6); *ESPN* and *Ashcroft*, *supra*.

Finally, if the Court determines that there are remaining pleading deficiencies from the MTD Order, then such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *See Breier v. Northern California Bowling Proprietors' Association*, 316 F.2d 787, 790 (1963) ("*Breier*").

**B.    <u>DUE TO THE FACT THAT THE COURT MAY NOT CONSIDER THE RELEASE AT THIS STAGE OF THE PROCEEDINGS, THE RELEASE DOES NOT BAR CLAIMS AGAINST DEFENDANTS WHITLEY, IAG FUND, OR IAG CAPITAL FOR CONDUCT ENGAGED IN PRIOR TO AND AFTER APRIL 29, 2020.</u>**

For all the reasons set forth in Section I, *supra*, the Court should <u>not</u> consider the Release during the pleading stage of this Action. Accordingly, the Release does <u>not</u> bar any of Sylabs' claims set forth in Counts I through XXI of the FAC, regardless of whether

1    Defendants Whitley, IAG Fund, or IAG Capital's conduct occurred prior to or after April

2    29, 2020.

**C.**    <u>**THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT I (DTSA) AND COUNT III (CUTSA).**</u>

In its MTD Order, the Court analyzed Sylabs' Defense of Trade Secrets Act ("DTSA") (Count I), 18 U.S.C. § 1831 *et seq.*, and California's Uniform Trade Secrets Act ("CUTSA") (Count III), California Civil Code §§ 3426 *et seq.*, "together because the elements are substantially similar." *See* Dkt. 59, p. 8, ll. 22-24 (citation omitted). In the FAC, Sylabs addressed and cured the Court's concerns regarding Counts I and III together.

**(1)**    **Sylabs Has Cured The Pleading Deficiencies Identified in the MTD Order Regarding Defendants Whitley, IAG Funds, and IAG Capital, and the FAC Sufficiently Alleges IAG Defendants' Actionable Conduct.** Contrary to IAG Defendants' arguments in Section IV.A.1 and IVA.2 of their Motion, the MTD Order did not identify any deficiencies relating to Sylabs' failure to allege that these defendants "acquired any trade secrets" or that these defendants "should have known that any documents contained improperly-obtained trade secrets." *See* Motion, Dkt. 68, p. 6, l. through p. 9, l. 2. In the FAC, Sylabs addressed all of the deficiencies the Court identified in the MTD Order regarding the DTSA (Count I) and CUTSA (Count III), including the ones identified by IAG Defendants in footnote 5 on page 6 of the Motion. *See* Motion, Dkt. 68, p. 6, n. 5.

In its MTD Order, the Court identified the following pleading deficiencies, but IAG Defendants' aforementioned deficiencies are **not** among them:

> "**IAG and Defendant Whitley.** Defendant GK discussed Sylabs' business and technologies and forming a NEWCO entity in an email with Defendant Whitley and also provided IAG and Defendant Whitley with access to Sylabs' server**. But Sylabs does not allege that these Defendants actually did anything in response to this email communication or provision of access.** Rather, it simply notes that IAG invested in CIQ. See Complaint ¶ 38. Sylabs otherwise conclusorily alleges that IAG and Defendant Whitley

LEPISCOPO & ASSOCIATES LAW FIRM

1

2

"conspired with other defendants" **but offers no particularized facts to illustrate these Defendants' roles in such a conspiracy**. *See id*. ¶ 37."

3

*See* MTD Order, Dkt. 59, p. 7, l. 26 through p. 8, l. 5 (emphasis original and added).

4

5

6

The foregoing notwithstanding, in order to eliminate any doubt, Sylabs provides examples from the MTD Order and the allegations in the FAC regarding IAG Defendants' assertions. First, here is what this Court initially identified:

7

8

9

10

11

12

13

14

"[O]n March 11, 2020, Defendant GK emailed Defendant **Whitley, a principal of investment firm IAG**, about (1) Sylabs' 'big name customers and opportunities,' (2) 'keep[ing] the team together and continu[ing] the development of Fuzzball/HPC-2.0,' (3) 'plans' and 'projections' for a "NEWCO" entity and (4) 'build[ing]' **Fuzzball** using open-source technology. *See id*. ¶ 147. A week-and-a-half later, Defendants GK, Adolph (a Sylabs' advisor), Hayden (a Sylabs' project coordinator), JK (a Sylabs' advisor) and Fong (a Sylabs' controller and marketer) resigned from the company. *See id*. ¶¶ 31-34, 156-161. Shortly thereafter, on April 1, 2020, Defendant GK founded **CIQ, another player** in the HPC industry. *See id*. ¶ 171. Defendants Adolph, Hayden and Fong joined **Defendant GK in his new venture with IAG** and ODI signing on as investors. *See id*. ¶¶ 32-34, 38."

15

*See* MTD Order, Dkt. 59, p. 2, l. 19 through p. 3, l. 3 (emphasis added).

16

17

18

19

20

Here are more details from the FAC and exhibits that directly support what the Court identified above. Specifically, on March 11, 2020, defendant Greg Kurtzer sent defendant Joel Whitley, a principal of defendant IAG, an email ("Kurtzer/Whitley Email"), wherein he explains part of the conspiracy to commit cyber theft of Sylabs' Trade Secrets and Sylabs' customers, including confirming the information set forth in the CIQ Budget:

21

"Dear Joel, . . .

22

23

24

25

This will provide us with the ability to keep the team together and continue the development of Fuzzball/HPC-2.0. Additionally, we have some big name customers and opportunities we've been developing and this will allow us to continue bringing in the ARR (about $1M today) while also servicing a pipeline of $10M over the next 24 months.

26

27

28

> It is important to note that the intellectual property that we would need to build Fuzzball is all open source and I personally lead those respective open source projects and communities. Sylabs does have some commercial IP, which would be quite advantageous to have (e.g. Singularity Enterprise, which is not open source), but it is not a requirement for Fuzzball or any of our plans or projections for **NEWCO**. . .
>
> The second model demonstrates inclusion of an optimistic sales pipeline which includes multiple DOD awards, strategic development NREs, as well as building ARR. It also includes several new market injection points around Fuzzball, which are conservative."

*See* FAC, Dkt. 61, ¶ 45; Exh. 46, Dkt. 61-46, 3/11/20 Kurtzer/Whitley Email, pp. 1, 5-6; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 22 & 24.b; Exh. 45, Dkt. 61-45, Mail Audit Logs, Greg Kurzer, 3/11/20. For the Court's information, the Kurtzer/Whitley Email is the email referred to by the Court in the MTD Order, Dkt. 59, p. 2, n. 1 ("Sylabs does not include a complete copy of the March 11, 2020 email in the Complaint.").

Further, IAG Defendants incorrectly assert that they were not provided with Sylabs' Trade Secrets and that IAG Defendants were unaware of such stolen Trade Secrets. However, the Court's own findings (based on the original Complaint, Dkt. 1) places IAG Defendants' assertion in dispute:

> "On March 11 and 13, 2020, Defendant GK **provided IAG and Defendant Whitley** '**with access to the Sylabs Server**, in particular to all documents relating to **Fuzzball**' and 'Sylabs['] Corporate Records.' See id. ¶¶ 150-51."

*See* MTD Order, Dkt. 59, p. 3, ll. 10-12 (emphasis added). It is important to note that in its MTD Order the Court found that Sylabs' **Fuzzball** constituted a protected trade secret:

> "**Fuzzball.** Defendants argue that Fuzzball cannot constitute a trade secret, because it 'has been publicly available since it was made open source in March 2020.' See CIQ Motion at 11. Defendants ignore, however, Sylabs' allegation that Fuzzball remained secret until Defendant GK released it to the public. See Complaint ¶ 162. Defendants cannot 'be inoculated from liability for trade secret misappropriation because one of them disclosed a portion of the trade secrets to the public.' *Calendar Rsch. LLC v. StubHub, Inc.*, No. 17-cv-04062-SVW, 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017) (citation omitted)."

LEPISCOPO & ASSOCIATES LAW FIRM

*See* MTD Order, Dkt. No. 59, pp. 10-11 (emphasis original; citations omitted in original).

Thus, **at the time** when IAG Defendants received the documents relating to Fuzzball, Fuzzball was part of Sylabs' Trade Secrets. *See* FAC, Dkt. 61, ¶¶ 27-32; Exh. 38, Dkt. 61-38: Decl. of Tarbell, ¶¶ 119-121; Exhs. 37, 39, 40, 44, 45, 63, and 64. Accordingly, the Court has indicated that the allegations demonstrate that IAG Defendants and their co-defendants are subject to liability for their theft and misappropriation of Sylabs' Trade Secrets, including Fuzzball. *See* MTD Order, Dkt. No. 59, pp. 10-11.

The FAC supports what the Court identified above. Specifically, on or about March 8, 2020, IAG Defendants and their co-defendants agreed to engage in unauthorized access—through insider and external threats—for the purpose of having defendant Greg Kurtzer provide IAG Defendants and their co-defendants with unauthorized access and credentials and permissions to access Sylabs' Server in order to carry out their conspiracy to cause damage to Sylabs (CIQ's competitor) and Sylabs' server, data, files, and directories: (a) cyber corruption and damage to Sylabs' computer server; (b) corruption and damage to Sylabs' computer data; (c) corruption and damage to Sylabs' computer folders; (d) corruption and damage to Sylabs' computer files; (e) corruption and damage to Sylabs' computer directories; (f) cyber intrusion to Sylabs' computer server; (g) cyber intrusion to Sylabs' computer files; (h) cyber intrusion to Sylabs' computer folders; (i) cyber intrusion to Sylabs' computer files; (j) cyber intrusion to Sylabs' computer directories; (k) cyber theft of Sylabs' Trade Secrets; (l) cyber misappropriation of Sylabs' Trade Secrets; (m) cyber theft of Sylabs' Corporate Assets; (n) cyber misappropriation of Sylabs' Corporate Assets; (o) cyber theft of Sylabs' corporate secrets; and (p) cyber misappropriation of Sylabs' corporate secrets. *See* FAC, Dkt. 61, ¶ 50; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 31-127; Exhs. 2-36, Dkt. 61-2 through 61-36; Exhs. 44 & 45, Dkt. 61-44 and 61-45: and Exh. 57, Dkt. 61-57. *See* FAC, Dkt. 61, ¶ 33.

In addition, IAG Defendants also received Sylabs' Corporate Records, which included highly confidential information, including, for example: investor lists; existing

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

and prospective customer lists; marketing strategies, plans, and pricing; financial records; sales and potential sales documents; statements of work; purchase orders; invoices; employee files and human resource records; employment offers and agreements; attorney-client communications; and minutes of shareholder and board of directors' meetings. *See* FAC, Dkt. 61, ¶ 33.

Another interesting part of IAG Defendants' and their co-defendants' conspiracy was to gather up all of Sylabs' email addresses for contacts, customers, investors, and others. Specifically, between March 22 through 31, 2020, IAG Defendants and their co-defendants agreed to engage in unauthorized access—through insider and external threats—for the purpose of having defendant Greg Kurtzer change the accessibility and ownership of email contact information and convert the format to **.csv** (comma-separated values)[4] formatted files used for spreadsheets, including, for example: (a) Emails.csv; (b) Contact_Emails.csv;    (c)    Lead_Emails.csv;    (d)    Deal_Contacts.csv;    and    (e) Appointment_Attendees.csv. *See* FAC, Dkt. 61, ¶ 53; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 51.h; Exh. 7, Dkt. 61-7, pp. 1-2; Exhs. 44 and 45, Dkt. 61-44 and 61-45: Drive and Mail Audit Logs.

IAG Defendants participated with their co-defendants in preparing the new entity they initially referred to as "NewCo," which was subsequently formed as defendant CIQ, and commenced preparing the launch of CIQ by engaging in budgetary planning, including preparing a detailed budget for "NewCo" which was actually defendant CIQ (the "CIQ Budget"). IAG Defendants included Sylabs' existing and prospective customers in the CIQ Budget, including, for example, Qualcomm, Lawrence Livermore National Laboratory, San Diego Supercomputing Center, Federal Reserve Bank, and University of Florida. *See* FAC, Dkt. 61, ¶¶ 37-38; Exh. 56, Dkt. 61-56, p.1.

There are significant additional allegations set forth in Sections V through VIII of the FAC (Dkt. 61, ¶¶ 125-374) regarding IAG Defendants and their co-defendants'

---

[4]     As utilized and defined by the Library of Congress, see definition of **.csv** files: https://www.loc.gov/preservation/digital/formats/fdd/fdd000323.shtml

unlawful conduct in furtherance of their conspiracy and intrusion into Sylabs' Server. However, one last point needs to be made regarding IAG Defendants' unauthorized access to Sylabs Server, data, folders, and files. Specifically, IAG Defendants' and their co-defendants agreed to and did, in fact, continue engaging in unauthorized access even **after** defendants Greg Kurtzer, Adolph, Hayden, Julia Kurtzer, and Fong left their employment with Sylabs on March 31, 2020. For example, between April 2, 2020 and April 15, 2020, IAG Defendants made significant and ongoing unlawful cyber intrusions into Sylabs' Server for the purposes of: (a) cyber corruption and damage to Sylabs' computer server; (b) corruption and damage to Sylabs' computer data; (c) corruption and damage to Sylabs' computer folders; (d) corruption and damage to Sylabs' computer files; (e) corruption and damage to Sylabs' computer directories; (f) cyber intrusion to Sylabs' computer server; (g) cyber intrusion to Sylabs' computer files; (h) cyber intrusion to Sylabs' computer folders; (i) cyber intrusion to Sylabs' computer files; (j) cyber intrusion to Sylabs' computer directories; (k) cyber theft of Sylabs' Trade Secrets; (l) cyber misappropriation of Sylabs' Trade Secrets; (m) cyber theft of Sylabs' Corporate Assets; (n) cyber misappropriation of Sylabs' Corporate Secrets; (o) cyber theft of Sylabs' corporate secrets; and (p) cyber misappropriation of Sylabs' corporate secrets. *See* FAC, Dkt. 61, ¶ 54; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 52; Exhs. 16 through 23, Dkt. 61-16 through 61-23; Exhs. 44 and 45, Dkt. 61-44 and 61-45: Drive and Mail Audit Logs.

As a consequence of IAG Defendants and their co-codefendants' theft of Sylabs' Trade Secrets, Corporate Secrets, and other assets, CIQ recently raised $26,000,000, making a total of $33,000,000 raised, and according to defendant Greg Kurtzer, CIQ now has a valuation of $150,000,000. The capital raised and estimated valuation are related to Sylabs' Trade Secrets, which were stolen by IAG Defendants and their co-defendants thereby constituting damage to Sylabs (*see* FAC, Dkt. 61, ¶¶ 147 and 300).[5]

---

[5]    *See*: https://siliconangle.com/2022/05/12/ciq-raises-26m-promote-free-alternative-red-hat-linux/.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 68)

16

Finally, in addition to IAG Defendants' assertions that Fuzzball is not Sylabs' Trade Secrets (*see* Motion, p. 6, n. 5), in its MTD Order, Dkt. 59, the Court expressed concerns that Sylabs did not plead facts with sufficient particularity to establish Sylabs' Trade Secrets under DTSA (Count I) and CUTSA (Count III) indicating two very specific deficiencies set forth below, each of which was cured in the FAC and will be addressed in order.

(2)     **Sylabs' SIF Technology Trade Secrets**. The Court indicated that Sylabs did not allege facts sufficient to show those aspects of its SIF technology <u>not</u> discussed in Sylabs' U.S. Patent Application No. US 2019/0377708 A1 ("Sylabs SIF Application"):

> "But the Court does not demand an exacting distinction at this stage that would depend upon discovery. Rather, **Sylabs must simply allege with particularity those aspects of its SIF technology not discussed in the patent application**, and it does not do so in the Complaint."

*See* MTD Order, Dkt. 59, p. 10, ll. 14-16 (emphasis added).

As to the Court's concerns relating to those aspects of its SIF technology **<u>not</u>** discussed in Sylabs' SIF Application, Sylabs has provided sufficient allegations in the FAC to cure this deficiency. For example, Sylabs alleges in the FAC that certain SIF technology components were <u>not</u> disclosed in Sylabs' SIF Application (Exh. 54, Dkt. 61-54) or Sylabs' SIF Patent (Exh. 55, Dkt. 61-55) but were stolen and used by Defendants to procure the Armored Container patents. Specifically, CIQ patent 11,055,428 (Exh. 41, Dkt. 61-41) specifically mentions this type of approach for another format of container images, namely OCI container images. Sylabs has never publicly disclosed the Trade Secrets underlying the specific methods of encrypting container images as it pertains to OCI images but began developing this as part of its secret "Armored Containers" project well before Defendants left Sylabs. Thus, these are Sylabs' Trade Secrets, which were stolen by Defendants to develop and unlawfully and fraudulently procure their Patent Nos. US 11,055,428 (Exh. 41, Dkt. 61-41), US 11,163,902 (Exh. 42, Dkt-61-42), and US 11,321,064 (Exh. 43, Dkt. 61-43). *See* FAC, Dkt. 61, ¶ 414.

Moreover, CIQ's Patent Nos. US 11,055,428 (Exh. 41, Dkt. 61-41), US 11,163,902 (Exh. 42, Dkt. 61-42), and US 11,321,064 (Exh. 43, Dkt. 41-43) are described and based upon Sylabs' Armored Containers technology, which was born out of Sylabs' research and development starting in June of 2019. It is important to note that the Armored Containers technology that serves as the basis of CIQ's patents is **not** based on the technology disclosed in Sylabs' SIF Application for its SIF technology. *See* FAC, Dkt. 61, ¶¶ 373 (Figure 10), 411-414, and 496-497. For purposes of illustration and more detail, please see **Figure 10** from the FAC to show the amendments made in the FAC to cure these deficiencies (*see* highlighted portions below):

| SYLABS' TRADE SECRET | KURTZER, et al.'s THEFT: PATENT # (See Exhibit) | PROOF THAT PATENT IS SYLABS' TRADE SECRET |
|---|---|---|
| Fuzzball | US 10,970,113 (*see* Exhibit 37) | CIQ patent 10,970,113 describes the high level architecture of the "Fuzzball/HPC 2.0" project that began development by Sylabs starting in 2019.<br><br>As set forth in greater detail in Sections V-VII, above, and the exhibits listed below, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date.<br><br>In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Fuzzball | US 11,099,893 (*see* Exhibit 39) | CIQ patent 11,099,893 describes a continuation to CIQ patent 10,970,113, which describes the high level architecture of the "Fuzzball/HPC 2.0" project that began development by Sylabs starting in 2019.<br><br>As set forth in greater detail in Sections V-VII, above, and the exhibits listed below, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date. |

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF 68)

18

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

| | | |
|---|---|---|
| | | In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Fuzzball | US 11,310,342 (*see* Exhibit 40) | CIQ patent 11,310,342 describes a specific algorithm of the high level architecture of the "Fuzzball/HPC 2.0" project that began development by Sylabs starting in 2019.<br><br>As set forth in greater detail in Sections V-VII, above, and the exhibits listed below, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date.<br><br>In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Armored Containers | US 11,055,428 (*see* Exhibit 41) | The Armored Containers a based on Sylabs' prior trade secrets in the SIF technology. It is important to note that the armored technology that serves as the basis of CIQ's patents is not based on the technology disclosed in Sylabs' SIF Application (Exh. 54) or SIF Patent (Exh. 55) for its SIF technology. This CIQ patent specifically mentions this type of approach for another format of container images, namely Open Container Initiative (OCI) container images. Sylabs has never publicly disclosed the Trade Secrets underlying the OCI method of encrypting container images as it pertains to OCI images but has been developing this as part of its secret "armored containers" project.<br><br>As set forth in greater detail in Sections V-VII, above, and the exhibits listed below, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as July of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date. |
| Armored Containers | US 11,163,902 (*see* Exhibit 42) | "                " |
| Armored Containers | US 11,321,064 (*see* Exhibit 43) | "                " |

*See* FAC, Dkt. 61, ¶¶ 372 and 373 (Figure 10).

**(3)    Sylabs' Efforts to Protect Its Trade Secrets.** The Court indicated that Sylabs did <u>not</u> allege facts sufficient to show the policies, methods, and procedures it maintained to protect the secrecy of its Trade Secrets from being publicly disclosed:

> "Thus, Sylabs sufficiently describes four of its five purported trade secrets which are not publicly available. However, the Court agrees with Defendants' third argument that **Sylabs does not sufficiently allege any efforts to maintain the secrecy of its technologies. Indeed, Sylabs offers no allegations of <u>any specific</u> measures it took**."

*See* MTD Order, Dkt. 59, p. 11, ll. 13-16 (emphasis in original and added).

As to the policies, methods, and procedures Sylabs maintained to protect the secrecy of its Trade Secrets from being publicly disclosed, Sylabs has cured this deficiency in the FAC. Generally, Sylabs' Server and Google Workspace provided security for the protection of Sylabs' Trade Secrets. *See* Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 3-5. Of course, this type of security was nullified by IAG Defendants and their co-defendants through their unlawful and unauthorized intrusions into Sylabs' Server when they were insider threats and external threats with unimpeded access to Sylabs' Server from March 2020 through June 2020. Specifically, Mr. Tarbell provides numerous factual examples of IAG Defendants and their co-defendants' insider threats and external cyber intrusions into Sylabs' Server. *See* FAC, Dkt. 61, ¶ 61; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 29-127; and Exhs. 2-36, 44, 45, 57, and 61-73, Dkt. 61-2 through 61-36, 61-44, 61-45, 61-57, and 61-61 through 61-73.

As evidence of further protection of Sylabs' Trade Secrets, Sylabs provided additional allegations in the FAC to identify the policies, methods, and procedures Sylabs utilized to maintain secrecy of and protect from public disclosure of its Trade Secrets (collectively "Trade Secret Protections"). *See* FAC, Dkt. 61, ¶ 62; Exh. 47, Dkt. 61-47. For example, Sylabs utilized a protective server environment for its data, folders, files, and directories. Specifically, Sylabs utilized Google Workspace, which is a secure cloud computing based service that many companies utilize for employees to collaborate, store,

LEPISCOPO & ASSOCIATES LAW FIRM

and share files. Workspace has a robust logging feature that allows the auditing of employee activities within this environment. *See* FAC, Dkt. 61, ¶ 63; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 4.

Additional allegations in the FAC allege that Sylabs utilized Workspace features such as Google Drive to securely store, edit, and work together on sensitive corporate files. Sylabs employed these Google Workspace tools in part to ensure the security of their trade secrets, company secrets, and sensitive data. *See* FAC, Dkt. 61, ¶ 64; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 5.

In addition to the Trade Secret Protections, Sylabs maintained conflict of interest policies ("Conflict of Interest Policies") to not only ensure the secrecy of Sylabs' Trade Secrets but also prevent those Trade Secrets and those having knowledge of those Trade Secrets from being utilized as a means of **competing against Sylabs**—in the way that IAG Defendants and their co-defendants' conspiracy empowered CIQ to compete against Sylabs after stealing Sylabs' Trade Secrets and Sylabs' Corporate Assets. *See* FAC, Dkt. 61, ¶ 65; Exh. 47, Dkt. 61-47.

Sylabs also maintained and utilized various technology-based protections ("Technical Protections") to not only maintain secrecy of Sylabs' Trade Secrets but also prevent those Trade Secrets from being utilized and those having knowledge of those Trade Secrets from utilizing them as a means of competing against Sylabs. *See* FAC, Dkt. 61, ¶ 66. So, for example, Sylabs took steps to ensure that all source code and other materials related to its Fuzzball and Armored Containers Trade Secrets were kept secret, as is the general practice for other closed source Sylabs projects/products such as SingularityPRO and Singularity Enterprise. Thus, source code, technical documentation, and planning material are stored in private server projects, and access to the projects was strictly limited on a need-to-know basis even within Sylabs. As is common practice at technology firms, Sylabs' employees, including Defendants, execute IP Assignment/NDA Agreements. *See* FAC, Dkt. 61, ¶ 67; Exhs. 48-52, Dkt. 61-48 through 61-52.

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

During the relevant timeframe of this Action, Sylabs was engaged in pursuing business with the United States Government, in particular the Department of Defense ("DoD"). A document titled "Open Call for Innovative Defense-Related Dual-Purpose Technologies/Solutions with a Clear Air Force Stakeholder" ("RFP"), was subject to DoD nondisclosures. For example, it included in this RFP, as well as other proposals, the following Notice:

> "This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed-in whole or in part-for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offeror as a result of-or in connection with-the submission of this data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. . ."

*See* FAC, Dkt. 61, ¶ 68; Exh. 53, Dkt. 61-53.

In addition to the Trade Secret Protections, Conflict of Interest Policies, and Technical Protections, Sylabs also utilized intellectual property assignment agreements and nondisclosure agreements ("IP Assignment/NDA Agreements") to not only maintain the secrecy of Sylabs' Trade Secrets and Sylabs' Corporate Assets but also prevent those Trade Secrets and Corporate Assets from being utilized and those having knowledge of these from utilizing them as a means of competing against Sylabs. *See* FAC, Dkt. 61, ¶ 69; Exhs. 47-52, Dkt. 61-47 through 61-52.

The foregoing was just a general summary of the amendments made to cure the deficiencies identified in the MTD Order regarding the steps Sylabs has taken to protect its Trade Secrets, etc. Sylabs has alleged a more detailed discussion in the FAC of the specific policies, methods, and procedures comprising Sylabs' Trade Secret Protections, Conflict of Interest Policies, Technical Protections, and IP Assignment/NDA Agreements, all of which are designed to protect Sylabs' Trade Secrets, Corporate Secrets, and Privileged and Protected Information. *See* FAC, Dkt. 61, ¶¶ 72-85; Exhs. 47-52, Dkt. 61-47 through 61-52.

Other than the aforementioned pleading deficiencies, the MTD Order did not identify any other pleading deficiencies in Count I (DTSA) and Count III (CUTSA). Accordingly, Sylabs has cured all deficiencies identified in the MTD Order, and, therefore, Defendants' Motion to Dismiss Count I (DTSA) and/or Count III (CUTSA) of the FAC should be **denied**.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**D. THE CFAA CLAIMS ARE NOT TIME BARRED OR SELF-DEFEATING, AND THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT II (CFAA), INCLUDING IAG DEFENDANTS' PRE AND POST MARCH 31, 2020, VIOLATIONS OF CFAA.**

**(1) Sylabs Identified the CFAA Provisions Alleged to Have Been Violated:** IAG Defendants contend Sylabs' CFAA claim is deficient because the FAC does not identify the specific provisions of the CFAA alleged to have been violated. The argument is meritless. On the contrary, Sylabs' FAC plainly states and identifies the specific CFAA provisions alleged to have been violated by the IAG Defendants. (*See* FAC, Dkt. 61, ¶¶ 27, 383-384, 447-486.) The specific provisions include 18 U.S.C. § 1030(a)(2), 18 U.S.C. § 1030(a)(4), 18 U.S.C. § 1030(a)(5), 18 U.S.C. § 1030(e)(6), and 18 U.S.C. § 1030(e)(8). (Id.) Accordingly, Sylabs' FAC has adequately identified the specific provisions of the CFAA alleged to have been violated.

**(2) Sylabs' CFAA Claims Are NOT Time Barred:** As an initial matter, IAG Defendants argue that Sylabs' CFAA claims are time barred because they were not filed within two years as required by 18 U.S.C. § 1030(g) ("Section 1030(g)"), Motion, Dkt. 68, p. 9, l. 21 through p. 11, l. 7. However, IAG Defendants failed to mention that in the FAC Sylabs has alleged that Sylabs did not discover Defendants' cyber theft (that **Defendants themselves concealed**) until **April 6, 2021**. See FAC, Dkt. 61, Section VI, ¶¶ 208-209. As

the original complaint was filed less than two (2) years later on **February 24, 2023**, Dkt. 1, Sylabs' CFAA claims are NOT timed barred by Section 1030(g). One final point is that any factual dispute IAG Defendants might have created regarding Section 1030(g) may be resolved only by a trier of fact, and not through a Rule 12(b)(6) motion.

   **(3)    IAG Defendants' Access to Sylabs Computer Systems was Unauthorized and Caused Damage to Sylabs:** It is undisputed that the IAG Defendants were not Sylabs' employees, agents, contractors, or other status that would give implied authorization to access Sylabs' Computer Systems. *See* FAC, Dkt. 61, ¶¶ 118-119. On the contrary, IAG Defendants were at all times **external** threats to Sylabs who never had permission or authorization to access Sylabs' Trade Secrets, Corporate Assets, or corporate secrets. *See* FAC, Dkt. 61, ¶ 254, Exh 38, Dkt. 61-38: Decl. of Tarbell ¶ 88; Exhs. 36, 44, and 45.

   In its MTD Order, the Court determined that under the original complaint, Dkt. 1, Sylabs' "CFAA Claim Fails Because Sylabs Does Not Allege That It Suffered Any Harm Remediable By The Statute." *See* MTD Order, Dkt. 59, p. 12, ll. 1-27. As set forth in Count II and Sections V-VIII of the FAC, Sylabs has alleged sufficient facts and provided sufficient evidence to prove IAG Defendants' cyber corruption and cyber destruction of Sylabs' server, data, folders, files, and directories.

   Mr. Tarbell has reviewed the MTD Order and has provided an analysis and discussion of evidence to address the pleading insufficiencies of the original allegations. *See* FAC, Dkt. 61, ¶ 20; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶¶ 3-13. First, Mr. Tarbell explains the security features of Sylabs' Server and Google Workspace:

   "One part of Google's security features is the audit logs that record users' actions on Sylabs access controlled computer systems. These audit logs provide Sylabs administrators a detailed list of security-relevant actions taken on their sensitive corporate files. These actions include, but are not limited to, trashing files, trashing folders, deleting files, and deleting folders."

*See* FAC, Dkt. 61, ¶ 20; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 4.

LEPISCOPO & ASSOCIATES LAW FIRM

Mr. Tarbell goes on to explain why IAG Defendants' trashing or deleting files and folders constitutes the type of harm that is remediable under the CFAA. In particular, Mr. Tarbell explains:

"Google states that a user 'can remove Google Drive files and folders from… (Google Workspace) My Drive and shared drives…(with) trash or delete.' Files and folders in Google Workspace Drive can be **permanently deleted without moving the data to trash**. Any file or folder that is moved into trash is automatically deleted after 30 days. **After a file is deleted, any other user that has been shared that file will lose access to the file**."

*See* FAC, Dkt. 61, ¶ 21; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 5 (emphasis added).

Next, Mr. Tarbell connects the preceding explanation with Section 1030(e)(8) of the CFAA:

"Damage, as defined in 18 USC § 1030(e)(8), is 'any **impairment** to the integrity or availability of data, a program, a system, or information.'"

*See* FAC, Dkt. 61, ¶ 22; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 6 (emphasis added).

Mr. Tarbell then goes on to explain that Sylabs has suffered cognizable damage that is remediable under the CFAA:

"Deleting and trashing, which are automatically deleted after 30 days, files and folders in Sylabs' Google Workspace is a damage. These files' availability to legitimate Sylabs' Google Workspace users **was impaired**."

*See* FAC, Dkt. 61, ¶ 23; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 7 (emphasis added).

Further, Mr. Tarbell explains that under Section 1030(e)(6) of the CFAA Defendants' access to Sylabs' Server for the purpose of deleting and trashing Sylabs' data, files, and directories **exceeded any authorized access** they might have enjoyed under, for example, the IP Assignment/NDA Agreements (*see* Exhs. 48-52, Dkt. 61-48 through 61-52):

"Exceeds authorized access, as defined in 18 USC § 1030(e)(6), is to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter. **Deleting and trashing files, damaging the data, on a Sylabs'**

LEPISCOPO & ASSOCIATES LAW FIRM

**computer system after resigning from Sylabs is exceeding authorized access**."

*See* FAC, Dkt. 61, ¶ 24; Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 13 (emphasis added).

As the foregoing examples demonstrate, Sylabs has alleged in the FAC that it suffered actual, remediable damage[6] due to IAG Defendants' unauthorized access to Sylabs' Computer Systems and cyber corruption and cyber destruction in the form of monetary damage in an amount that exceeds $75,000. *See* FAC, Dkt. 61, ¶ 19(a)-(n) and ¶¶ 124-374; Exhs. 2-73, Dkt. 61-2 through 61-73.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**E.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING THE RICO CLAIMS IN COUNTS IV AND V.**

In its MTD Order, the Court determined that Sylabs' Counts IV and V for RICO were insufficient because they relied upon Sylabs' Count I (*i.e.*, **violation of the DTSA**) as their Predicate Acts to establish RICO, which the Court held Sylabs failed to establish in the original complaint:

> "Sylabs selects Defendants' alleged violations of the DTSA as the necessary predicate acts. See Complaint ¶¶ 187-88; see also CIQ Opposition at 22-23; IAG Opposition at 22-23; 18 U.S.C. § 1961(1). Its Section 1962(c) claim therefore fails, **because Sylabs does not sufficiently allege any DTSA violations**."

*See* MTD Order, Dkt. 59, p.13, ll. 6-10 (emphasis added).

It follows, therefore, that if Sylabs' cured the deficiencies with violations of DTSA (Count I) in the FAC (*see* II.C, *supra*), as clearly demonstrated above, then Sylabs' RICO claims in Counts IV and V are sufficiently pleaded. *Id*.

---

[6]    For purposes of CFAA, the terms "**damage**" "**damages**," and "**harm**" shall have the same meaning and will be used interchangeably throughout the FAC.

LEPISCOPO & ASSOCIATES LAW FIRM

As set forth in greater detail in Section II.C, *supra*, the FAC cured the pleading deficiencies identified in the MTD Order regarding Count I, the DTSA, which satisfies the predicate acts to cure the deficiencies in RICO Counts IV and V.

As alleged in Count I, as well as in greater detail above in this Section II and below in Sections V-VIII, CIQ's patent Nos. US 10,970,113 (Exh. 37), US 11,099,893 (Exh. 39), US 11,310,342 (Exh. 40), US 11,055,428 (Exh. 41), US 11,163,902 (Exh. 42), and US 11,321,064 (Exh. 43) are based on Sylabs' Trade Secrets that Defendants unlawfully acquired through cyber corruption, destruction, theft, misappropriation, and unlawful and fraudulent patenting of Sylabs' Trade Secrets. These are clear violations of the DSTA. *See* FAC, Dkt. 61, ¶ 89.

It is undeniable and important to note for purposes of alleging the Predicate Acts under the RICO Act claims alleged in Counts IV and V, that the allegations set forth therein constitute not only civil claims but also Defendants' violation of federal **criminal** statutes, including, for example: 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1030(a)(4) (Computer Fraud), 18 U.S.C. § 1030(a)(2) (Theft of Information from a Computer), 18 U.S.C. § 1030(b) (Conspiring to Violate the CFAA), and 18 U.S.C. § 1030(a)(5)(B) (Recklessly Damaging a Computer). *See* FAC, Dkt. 61, ¶¶ 90 and 545. These are appropriate allegations because the RICO statutory scheme is both civil and criminal.

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies in Counts IV and V (RICO) as identified by this Court in the MTD Order, Dkt. 59, p.13, ll. 6-10.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

LEPISCOPO & ASSOCIATES LAW FIRM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEPISCOPO & ASSOCIATES LAW FIRM

**F.     THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING CUTSA'S PREEMPTION OF STATE LAW CLAIMS ALLEGED IN COUNTS VI THROUGH XI.**

In its MTD Order, the Court clearly identified the pleading deficiencies regarding CUTSA's preemption of Sylabs' state law claims alleged in Counts VI through XI.

> "The CUTSA Preempts Sylabs' Other State-Law Claims. Sylabs asserts six state-law claims in addition to its CUTSA claim, all of which it bases on the same conduct underlying its CUTSA claim, namely, Defendants' alleged **misappropriation of Sylabs' purported trade secrets**. But '[u]nder California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon **misappropriation of a trade secret**.'"

*See* MTD Order, Dkt. 59, p.13, ll. 20-25 (emphasis added; citations omitted).

It follows from the MTD Order, therefore, that if Sylabs alleges damages sustained that are <u>not</u> based upon **misappropriation of trade secrets** then Sylabs will have cured the pleading deficiencies as to Defendants' preemption based challenges to Counts VI through XI. Specifically, and as discussed in Section II.D.3, *supra*, Sylabs has alleged that it suffered **<u>non</u>-misappropriation of trade secrets** damages in an amount that exceeds $75,000, which are distinguishable from what the Court indicated was insufficient for pleading purposes and which include costs, wages, and all related fees to: (1) discover cyber intrusions to Sylabs' Server; (2) discover harm caused to Sylabs' server, data, folders, files, and directories; (3) find, gather, and organize evidence of cyber intrusions to Sylabs' Server and harm caused to Sylabs' server, data, folders, files, and directories; (4) assess the evidence of the harm caused to Sylabs' server, data, folders, files, and directories; (5) conduct forensic analysis of the evidence of cyber intrusions to Sylabs' Server; (6) conduct forensic analysis of the harm caused to Sylabs' server, data, folders, files, and directories; and (7) prepare forensic reports of the evidence of cyber intrusions to Sylabs' Server and the harm caused to Sylabs' server, data, folders, files, and directories by cyber intrusions, cyber corruption, and cyber destruction. *See* FAC, Dkt. 61, ¶ 19.

In addition to the foregoing allegations, the following allegations summarize Sylabs' assets and property stolen by IAG Defendants and their co-defendants, which are **not** Sylabs' Trade Secrets: (1) corporate documents and minutes of shareholder and board of directors' meetings; (2) financial records; (3) partner and joint venture records; (4) existing and prospective customer list; (5) sales and potential sales lists; (6) statements of work; (7) purchase orders; (8) invoices; (9) marketing strategies, plans, and pricing; (10) prospective investors list; (11) human resources records; (l2) employees' files, including information relating to Sylabs employees' salary and benefits packages, payroll information, addresses, dates of birth, driver's licenses, tax identification numbers, etc.; (13) offers of employment, executive employment agreements, employment agreements, independent contract agreements, consultant agreements, technical advisor agreements, and reseller agreements; (14) attorney-client communications, attorney work-product documents, accountant-client communications, settlement negotiations and agreements, nondisclosure agreements, and tax returns; and (15) emails and correspondence from the Sylabs' Server, including but not limited to ones relating to sensitive corporate secrets and affairs, and ones discussing attorney-client communications, attorney work-product documents, accountant-client communications, settlement negotiations and agreements, nondisclosure agreements, and tax returns information. *See* FAC, Dkt. 61, ¶ 623.

In their Motion, IAG Defendants separately attack Sylabs' claim under California's Unfair Competition Law ("CUCL"), California Business & Professions Code § 17200, Count VII, which was also made in their first motion to dismiss. *See* Memo of Ps & As, Dkt. 39, p. 19, l. 8 through p. 21, l. 5. However, the Court did not identify any such pleading deficiency in its MTD Order, Dkt. 59, and, therefore, should not accept this recycled argument as to the FAC. Specifically, in its MTD Order, the Court found the sole deficiency with Sylabs' CUCL claim (Count VII) was that it was preempted. *See* MTD Order, Dkt. 59, p. 14, l. 12. As set forth in this Section II.F, Sylabs has cured the pleading deficiency regarding preemption of the CUCL claim (Count VII).

LEPISCOPO & ASSOCIATES LAW FIRM

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies in Counts VI through XI, as identified by this Court in the MTD Order, Dkt. 59, p.13, ll. 20-25.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## III.    SYLABS REQUESTS LEAVE TO AMEND.

As there is an enormous amount of evidence in this Action, some of which has already been disclosed, even before discovery of all parties has commenced, any deficiencies would be easily cured. Accordingly, in the event, this Court determines that one or more counts of Sylabs' FAC, Dkt. 61, is or are deficient, then Sylabs respectfully requests leave to amend it in light of Supreme Court and Ninth Circuit precedent:

> "As the Supreme Court indicated in Foman [v. Davis, 371 U.S. 178, 182 (1962)], amendment should not be barred as futile if the underlying facts 'may be a proper subject of relief.' As we have recently said, leave to amend should be allowed unless the complaint 'cannot under any conceivable state of facts be amended to state a claim.' *Alexander v. Pacific Maritime Ass'n*, 9th Cir., 1963, 314 F.2d 690. Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.' 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)."

*Breier, supra,* 316 F.2d at 790.

## CONCLUSION

Based on the foregoing, Sylabs respectfully requests the Court to deny the Motion to Dismiss. Alternatively, if this Court grants the Motion in whole or in part, then Sylabs hereby requests leave to amend the FAC. *Breier, supra,* 316 F.2d at 790.

Dated:  March 22, 2024.                     LEPISCOPO & ASSOCIATES LAW FIRM


By:  /s/ Peter D. Lepiscopo          _
     **PETER D. LEPISCOPO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on March 22, 2024. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on March 22, 2024.

LEPISCOPO & ASSOCIATES LAW FIRM

By:  /s/ Peter D. Lepiscopo          _
     **PETER D. LEPISCOPO**
     *Counsel of Record*
     Attorneys for Plaintiff, **SYLABS, INC.**