**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net
Counsel of Record for Plaintiff, **SYLABS, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>**GREGORY ROSE** a/k/a **GREGORY M. KURTZER**, et al.,<br><br>Defendants. | Case No.  **5:23-cv-00849-SVK**<br><br>**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN <u>OPPOSITION</u> TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO RULE 12(f) (Dkt. 67)**<br><br>Date:    May 7, 2024<br>Time:    10:00 am<br>Courtroom:  6<br>Judge:   Honorable Susan van Keulen<br><br><u>Filed/Lodged Concurrently with</u>:<br>1.    Evidentiary Objections to Exhibit A (Kurtzer Release) to Declaration of Kurtzer<br>2.    Opposition to Defendants' Request for Judicial Notice<br>3.    [*Proposed*] Orders Denying Motion to Dismiss and Motion to Strike<br>4.    [*Proposed*] Order Sustaining Objections to and Excluding Kurtzer Release |

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES...................................................................... iv

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE........... 1

PRELIMINARY STATEMENT: SYLABS IS ENTITLED TO
CONDUCT WRITTEN DISCOVERY AND TAKE DEPOSITIONS.................. 1

SYLABS' CYBER FORENSICS EXPERT: FORMER
FBI AGENT, CHRISTOPHER TARBELL............................................. 2

ARGUMENT....................................................................................... 2

I.    THE COURT SHOULD <u>NOT</u> CONSIDER THE RELEASE AT THE
      PLEADING STAGE OF THIS ACTION.................................... 2

      A.    THE COURT'S 12/19/23 MOTION TO DISMISS ORDER................... 2

      B.    THE COURT SHOULD NOT CONSIDER THE RELEASE BECAUSE IT IS
            OUTSIDE THE FOUR CORNERS OF THE FAC.................................. 4

II.   SINCE SYLABS HAS CURED ALL THE PLEADING
      DEFICIENCIES IDENTIFIED BY THE COURT IN ITS MTD
      ORDER, AND, THEREFORE, DEFENDANTS' RULE 12(b)(6)
      MOTION TO DISMISS SHOULD BE DENIED IN ITS
      ENTIRETY...................................................................... 6

      A.    PRELIMINARY MATTER REGARDING EXHIBIT 74 TO THE FAC........ 6

      B.    DUE TO THE FACT THAT THE COURT MAY NOT CONSIDER THE
            RELEASE AT THIS STAGE OF THE PROCEEDINGS, THE RELEASE
            DOES NOT BAR CLAIMS AGAINST DEFENDANT GREGORY
            KURTZER OR ANY OTHER DEFENDANT FOR CONDUCT ENGAGED
            IN PRIOR TO AND AFTER APRIL 29, 2020........................................ 7

      C.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE
            MTD ORDER REGARDING COUNT I (DTSA) AND COUNT III
            (CUTSA)........................................................................... 7

LEPISCOPO & ASSOCIATES LAW FIRM

(1)    Sylabs' SIF Technology Trade Secrets............................    8
(2)    Sylabs' Efforts to Protect Its Trade Secrets......................    9

D.    THE CFAA CLAIMS ARE NOT TIME BARRED AND THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT II (CFAA), INCLUDING DEFENDANTS' PRE AND POST MARCH 31, 2020, VIOLATIONS OF CFAA...........................................................................    11

E.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING THE RICO CLAIMS IN COUNTS IV AND V.....................................................................................    14

F.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING CUTSA'S PREEMPTION OF STATE LAW CLAIMS ALLEGED IN COUNTS VI THROUGH XI...............................    15

G.    AS THE ECONOMIC LOSS RULE DOES NOT APPLY, THE FAC SUFFICIENTLY ALLEGES THE INTENTIONAL MISREPRESENTATION CLAIMS ALLEGED IN COUNTS XIII, XV, XVII,  XIX, AND XXI.................................................................................    17

H.    SINCE  THE BUSS/ PRAGER/OPEN DRIVES NDA APPLIES TO DEFENDANT OPEN DRIVES, INC., AND ITS OFFICERS AND DIRECTORS,  SUCH AS DEFENDANTS DAVID BUSS AND MARLIN PRAGER, SYLABS ALLEGES SUFFICIENT FACTS TO  SUPPORT THE BREACH OF CONTRACT AND INTENTIONAL  MISREPRESENTATION CLAIMS IN COUNTS XX AND XXI.....................................    21

I.    THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING DEFENDANTS DAVID BUSS, MARLIN PRAGER, AND OPEN DRIVES.............................................    23

III.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE.........................................................................    27

A.    THE REQUEST TO STRIKE PARAGRAPHS 278-280 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY..................................................    27

LEPISCOPO & ASSOCIATES LAW FIRM

B.   THE REQUEST TO STRIKE PARAGRAPHS 375-403 AND 8 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.................................................. 28

C.   THE REQUEST TO STRIKE PARAGRAPHS 143, 194, 195, 222, AND 223 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.................................... 28

D.   THE REQUEST TO STRIKE PARAGRAPHS 452-470 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.................................................. 29

E.   THE REQUEST TO STRIKE REFERENCES TO "CRIMES" IN PARAGRAPHS 643 AND 647 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY...... 29

IV.   SYLABS REQUESTS LEAVE TO AMEND........................................... 30

CONCLUSION.................................................................................... 30

CERTIFICATE OF SERVICE

LEPISCOPO & ASSOCIATES LAW FIRM

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:                                                                                                          <u>Pages</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................ 7

*Austin v. Terhune*,
   367 F.3d 1167 (9th Cir. 2004).......................................................................... 1

*Breier v. Northern California Bowling Proprietors' Association*,
   316 F.2d 787 (1963)...................................... 7, 11, 14, 15, 17, 21, 22,   27, 30

*Dhital v. Nissan North America, Inc.*,
   84, Cal.App.5th 828 (2022)................................................................... 19-21

*Dhital v. Nissan North America, Inc.*,
   2023 Cal. LEXIS 569 (February 1, 2023)...................................................... 20

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017)........................................................................... 7

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993).................................................................... 2, 27

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)......................................................................................... 2

*Fontana v. Haskin*,
   262 F.3d 871 (9th Cir. 2001)........................................................................... 2

*Harris v. Atlantic Richfield Co.*,
   14 Cal.App.4th 70 (1993)........................................................................ 19, 21

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007)................................................................... 3-5

*Jackson v. Carey*,
   353 F.3d 750 (9th Cir. 2003)........................................................................... 1

*Jones v. Greninger*,
   188 F.3d 322 (5th Cir. 1999)........................................................................... 1

---

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN <u>OPPOSITION</u> TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (Dkt. 67)**

iv

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) .......................................................... 5, 6

*Mobley v. McCormick,*
    40 F.3d 337 (10th Cir. 1994)............................................................ 6

*Rattagan v. Uber Technologies, Inc.,*
    19 F.4th 1188 (9th Cir. 2021)........................................................... 18, 19

*Rattagan v. Uber Technologies, Inc.,*
    S272113, 2022 Cal. LEXIS 1885 (March 11, 2022)...................... 18, 20

*Robinson Helicopter Co. v. Dana Corp.,*
    34 Cal.4th 979 (2004) ...................................................................... 19, 21

*Sanchez v. City of Fresno,*
    914 F.Supp.2d 1079 (E.D. Cal. 2012)............................................. 27-30

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974).......................................................................... 1, 6

*Sidney-Vinstein v. A.H. Robins Co.,*
    697 F.2d 880 (9th Cir. 1983)............................................................ 2

**STATUTES & CODES:**

    18 U.S.C. § 1030 ("CFAA")......................................................11-16, 20, 22

    18 U.S.C. § 1343................................................................................ 15

    18 U.S.C. § 1831 *et seq.* ("DTSA")..........................................7-8, 14

    18 U.S.C. § 1962 ("RICO")......................................................14, 15, 29, 30

    California Business & Professions Code § 17200 ("CUCL")........ 16, 17

    California Civil Code §§ 3426 et seq. ("CUTSA").................7, 8, 15

**RULES:**

    Federal Code of Civil Procedure, Rule 8(a)................................... *passim*

    Federal Code of Civil Procedure, Rule 9(b)................................... *passim*

    Federal Code of Civil Procedure, Rule 12(b)(6)............................ *passim*

Federal Code of Civil Procedure, Rule 12(f)................................................1,  27-29

**COURT ORDERS & NOTICES:**

Order on Motion to Dismiss, Dkt.59 (December 19, 2023)...........................  *passim*

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

**OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE**

Plaintiff Sylabs, Inc. ("Sylabs") hereby opposes the motion to dismiss and strike (collectively "Motions"), Dkt. 67, filed by defendants CIQ, Gregory Rose a/k/a Gregory M. Kurtzer, Julia Rose a/k/a Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager, Open Drives, Inc., and David Buss (collectively, "Defendants").

**PRELIMINARY STATEMENT:**
**SYLABS IS ENTITLED TO CONDUCT WRITTEN DISCOVERY**
**AND TAKE DEPOSITIONS**

Throughout their Motions, Defendants (including the Whitley/IAG Defendants in their motion, Dkt. 68) identify the absence of allegations and evidence—they make these assertions in a vacuum as though Sylabs must prove its entire case **at this stage**. However, in light of the detailed allegations set forth in the First Amended Complaint ("FAC"), Dkt. 61, and Exhibits 1-73 attached thereto, Sylabs has cured the deficiencies identified in the MTD Order, Dkt. 59, thereby satisfying the pleading requirements under Rule 8(a) and Rule 9(b). Accordingly, Sylabs is entitled to conduct written discovery and take depositions to obtain evidence and testimony **from all Defendants** to prove its case. So, for example, Sylabs is entitled to receive documents relating to all Defendants' email accounts, cellphone records and files, laptop and tablet files, computer files, etc., to find forensic evidence of their intrusions into Sylabs' Computer Systems. As aptly put by the Fifth Circuit, at this stage of the litigation, the Court must simply determine whether the allegations in the FAC are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Ninth Circuit has expounded upon this principle:

> "The issue is not whether a plaintiff will ultimately prevail but **whether the claimant is entitled to offer evidence to support the claims**. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely **but that is not the test**."

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (emphasis added) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th

Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . '" (quoting *Fontana v. Haskin*, 262 F.3d 871, 977 (9th Cir. 2001)).

Finally, disputed or substantial legal issues are properly determinable only **after discovery** and a **hearing on the merits**. *See e.g. Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994) (quoting *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983)).

### SYLABS' CYBER FORENSICS EXPERT: FORMER FBI AGENT, CHRISTOPHER TARBELL

As will be alleged in greater detail below, and pursuant to the Court's MTD Order,[1] Sylabs will include allegations and evidence regarding its claims through the declaration of its expert witness, former FBI Agent Christopher Tarbell (FAC, Exh. 38) ("Decl. of Tarbell"), and FAC Exhs. 2-73. *See* Mr. Tarbell's credentials in his C.V., FAC Exh. 1.

### ARGUMENT

## I.    THE COURT SHOULD <u>NOT</u> CONSIDER THE RELEASE AT THE PLEADING STAGE OF THIS ACTION.

For the following reasons the Court should <u>not</u> consider the Waiver, Release and Settlement Agreement ("Release"), Dkt. 67-2 (Attachment A), and, therefore, should **deny** the Motions because Defendants rely so heavily on that document.

### A.    THE COURT'S 12/19/23 MOTION TO DISMISS ORDER.

It is worth pointing out that in its December 19, 2023, Order Granting Defendants' Motion to Dismiss ("MTD Order"), Dkt. 59, the Court correctly observed that application of the Release during the **pleading** stage of this Action would be inappropriate:

---

[1]  In its relevant part, the MTD Order, Note 3 reads: "Sylabs submits a self-described 'expert' declaration in connection with its opposition briefing in an attempt to supplement its allegations. *See* Dkt. 47-1. However, the Complaint includes no references to this declaration, and Sylabs does not request that the Court judicially notice the declaration. The Court therefore declines to consider the declaration in analyzing the Motions." *See*  MTD Order, Dkt. 59, p. 5, n. 3.

LEPISCOPO & ASSOCIATES LAW FIRM

1
2
3

"The Court also observes that consideration of one of the documents at issue—an agreement that purportedly releases from liability several of Defendants—**would not likely resolve any issue at the pleading stage, as the Parties dispute the scope and impact of the release**."

4    *See* MTD Order, Dkt. 59, p. 7, ll. 16-19 (emphasis added).

5        The Court's reasoning is correct. First, the Release is <u>not</u> within the four corners of

6    the FAC, Dkt. 61, and is <u>not</u> attached as an exhibit to the FAC. Thus, the Court should <u>not</u>

7    consider the Release at this time. *See e.g. Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,

8    499 F.3d 1048, 1052 (9th Cir. 2007) ("*Intri-Plex*").

9        Second, and contrary to Defendants' suggestion, inclusion of or reference to the

10   Release in the FAC is <u>not</u> required because it is, in fact and law, a **defense** document.

11   Specifically, Defendants proffer the Release as an affirmative defense to the FAC. Sylabs is

12   under no duty to include Defendants' defenses in the FAC, and, therefore, the Release should

13   <u>not</u> be considered at this stage of the proceedings. *Id.*

14       Third, all aspects of the Release are disputed. For example, Mr. Tarbell has concluded

15   from his review and analysis of the evidence (FAC Exhibits 2-36, 57, 44, 45, & 68-73) that

16   defendants Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Joel

17   Whitley, Marlin Prager, and David Buss were "**insider threats**" to Sylabs. This is important

18   because at the **very same time** the Release was being proposed by defendant Greg Kurtzer,

19   Defendants were—as insider threats—committing and concealing cyber corruption, cyber

20   destruction, and cyber theft of Sylabs' Computer Systems, data, folders, and files. *See* FAC

     Exhibit 38, Tarbell Decl., p. 9, ¶ 30 (emphasis added).

21       Thus, the factual disputes between the Release and the FAC's allegations are subject

22   to  proof and resolution by a **trier of fact** but certainly **not by the Court at the pleading

23   stage**. Sylabs plainly contends that defendant Greg Kurtzer was perpetrating a fraud on

24   Sylabs by pretending to be negotiating the Release in good faith while at the same time he

25   and his co-defendants were stealing Sylabs' trade secrets, corporate secrets, etc. Regardless

26   of how these disputed facts are ultimately resolved, what is legally important is that these

27
28

LEPISCOPO & ASSOCIATES LAW FIRM

disputes and the drawing of inferences are reserved for a **trier of fact** to decide at a **later stage** in these proceedings. *See Intri-Plex, supra,* 499 F.3d at 1052.

Fourth, the parties covered by the Release must be established. For example, there would need to be testimony in depositions and/or at trial to determine which, if any, defendants **other than** defendant Greg Kurtzer might be covered by the Release.

Fifth, the intent, scope, and impact of the Release are in dispute, which will also require extensive written discovery, as well as deposition and/or trial testimony. In essence, Defendants are trying to circumvent the pleading, discovery, and trial stages through improper introduction and application of the Release at this stage of this Action.

Sixth, it is important to note that there are entities that are **parties to the Release** but who are **not** parties to this Action: R-Stor, Inc. and Sylabs Holdings, LLC. Their testimony must be considered in deciding the intent, scope, and impact of the Release in this Action, which cannot be accomplished until **after** the pleading stage of this Action.

Finally, if the Court defers consideration of the Release at this time, Defendants will not suffer prejudice because the Release will be considered **in the future** in this Action.

Based on the foregoing and the MTD Order (Dkt. 59, p. 7, ll. 16-19), the Court should not consider the Release during the **pleading** stage of this Action. Furthermore, there are the following additional reasons the Court should not consider the Release in deciding the Motion to Dismiss and Motion to Strike (or IAG/Whitley's motion, Dkt. 68).

**B.**   **THE COURT SHOULD NOT CONSIDER THE RELEASE BECAUSE IT IS OUTSIDE THE FOUR CORNERS OF THE FAC.**

In ruling on Defendants' Motion to Dismiss and Motion to Strike, the Court should not consider the Release. First, the Kurtzer Release is a matter outside the four corners of the FAC. Specifically, unlike motions for summary judgment, a Rule 12(b)(6) motion precludes the Court from considering materials outside the FAC to be utilized in support of the Motions, in this Action the Release. *See e.g. Intri-Plex, supra*, 499 F.3d at 1052.

Here, the Release is simply an agreement that is not attached to, discussed in, alluded to, or raised in the FAC. If, for example, the Release were a court order or a stipulation,

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

4

LEPISCOPO & ASSOCIATES LAW FIRM

declaration, or other pleading filed in a state or federal court, then it might be subject to the Court's consideration through judicial notice (assuming it was relevant). For example, in *Intri-Plex*, the defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted because of a claim that had been **previously litigated** and dismissed with prejudice and was, therefore, barred by the doctrine of *res judicata*. In support of the Rule 12(b)(6) motion, the defendant filed a request for judicial notice of (1) the <u>filed</u> state court complaint, (2) the <u>filed</u> stipulation regarding the protective order in state court, and (3) a <u>filed</u> request for dismissal of its state court complaint with prejudice. *Id*. at 1051-1052. All three documents were judicially noticed in support of the motion because they were filed in **other** court proceedings, which resulted in the court dismissing the claim as barred by *res judicata*. *Id*.

Unlike the **court-filed** documents in *Intri-Plex*, the Release in this matter was <u>not</u> filed in or approved by any state or federal court. It is simply a document outside the FAC that Defendants are attempting to improperly introduce into this Action at an improper stage of this Action. The Court should <u>not</u> consider the Kurtzer Release. *Id*.; Rule 12(b)(6).

Second, this Court may <u>not</u> take judicial notice of the Release because it is neither attached to nor referenced in the FAC, and, therefore, the incorporation doctrine is inapplicable. Defendants admit this: "[T]he FAC again omits any reference to the Release." *See* Motion, Dkt. 67, p. 3, l. 17. However, and incredibly, Defendants then go on to improperly conclude that under *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("*Knievel*"), the Court can consider the Release under the incorporation by reference doctrine. *See* Motion, Dkt. 67, p. 3, ll. 20-24. On page 4 Defendants set forth a chart that juxtaposes the Release and the FAC as justification for the Court to <u>improperly</u> apply the incorporation by reference doctrine to consider the Release in ruling on the Motions. *See* Motion, Dkt. 67, p. 4, ll. 8-28. Of course, this is sleight of hand by Defendants because none of the cited references to the paragraphs in the FAC are dependent upon or originate from the Release. If the Court were to accept Defendants' proposed interpretation and application of *Knievel*, then virtually any external document could easily be infused into the four corners of

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

5

LEPISCOPO & ASSOCIATES LAW FIRM

any pleading, which would then become *ipso facto* incorporated into the complaint at issue. Certainly, the Court cannot adopt such an expansive, unsupported, and illogical interpretation and application of *Knievel*.

Third, Sylabs has asserted evidentiary objections to the Release and requested it be excluded from consideration in the Motions (*see* concurrently filed herewith, Sylabs' Evidentiary Objections to the Release).

Finally, this Court should <u>not</u> take judicial notice of the Release, should <u>not</u> incorporate by reference the Release into the FAC through the improper interpretation of *Knievel*, should <u>sustain</u> Sylabs' Evidentiary Objections, and should <u>exclude</u> the Release from being considered in deciding the Motions to Dismiss and Strike. *Knievel*, *supra*; *Rhodes*, *supra*; *see generally Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994); Rule 12(b)(6).

## II. SINCE SYLABS HAS CURED ALL THE PLEADING DEFICIENCIES IDENTIFIED BY THE COURT IN ITS MTD ORDER, DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY.

### A. <u>Preliminary Matter Regarding Exhibit 74 To The FAC</u>.

It seems from their Motion that Defendants' strategy is to ignore the fact that the Court spent considerable time crafting the MTD Order in order to identify the pleading deficiencies in the original complaint, Dkt. 1, so that Sylabs would have an opportunity to cure those deficiencies. Sylabs has attached a highlighted version of the FAC, Dkt. 61, so the Court can conveniently review and consider the changes Sylabs made to the original complaint to cure **all** the pleading deficiencies the Court identified (*see* FAC Exh. 74).

Contrary to their protests in the Motion to Dismiss (Dkt. 67, p. 1, ll. 9-17), Defendants have failed to keep in mind that we are guided by the Court's MTD Order regarding the deficiencies in the original complaint, Dkt. 1, Rule 8 and 12(b)(6), and the Ninth Circuit's guidance, all of which require the Court to treat the allegations of the FAC and FAC Exhs. 1-73 as true:

> "We accept as true all factual allegations in the operative complaint, and we construe them in the light most favorable to Plaintiff as the non-moving party."

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

6

LEPISCOPO & ASSOCIATES LAW FIRM

*Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 981 (9th Cir. 2017) ("*ESPN*"). Further, Sylabs needs to allege only facts giving rise to a reasonable inference that Defendants are liable for the misconduct alleged in the FAC. *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Ashcroft*").

As evinced by their Motion, Defendants will simply review each rendition of any amended complaint filed by Sylabs, then conjure up a new set of deficiencies. The Court should <u>not</u> play this game, but prevent Defendants from engaging the Court in perpetual motions to dismiss. *See* Rule 8(a), Rule 9(b), and Rule 12(b)(6); *ESPN* and *Ashcroft*, *supra*.

Finally, if the Court determines that there are remaining pleading deficiencies from the MTD Order, then each should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *See Breier v. Northern California Bowling Proprietors' Association*, 316 F.2d 787, 790 (1963) ("*Breier*").

**B.**    **<u>DUE TO THE FACT THAT THE COURT MAY NOT CONSIDER THE RELEASE AT THIS STAGE OF THE PROCEEDINGS, THE RELEASE DOES NOT BAR CLAIMS AGAINST DEFENDANT GREGORY KURTZER OR ANY OTHER DEFENDANT FOR CONDUCT ENGAGED IN PRIOR TO AND AFTER APRIL 29, 2020.</u>**

For all the reasons set forth in Section I, *supra*, the Court should <u>not</u> consider the Release during the pleading stage of this Action. Accordingly, the Release does <u>not</u> bar any of Sylabs' claims set forth in Counts I through XXI of the FAC, regardless of whether Defendants' conduct occurred prior to or after April 29, 2020.

**C.**    **<u>THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING COUNT I (DTSA) AND COUNT III (CUTSA).</u>**

In its MTD Order, the Court analyzed Sylabs' Defense of Trade Secrets Act ("DTSA") (Count I), 18 U.S.C. § 1831 *et seq.*, and California's Uniform Trade Secrets Act ("CUTSA") (Count III), California Civil Code §§ 3426 *et seq.*, claims "together because the elements are substantially similar." *See* Dkt. 59, p. 8, ll. 22-24 (citation

omitted). In the FAC, Sylabs addressed and cured the Court's concerns regarding Counts I and III together.

In their Motion, Defendants argue something that the Court did not identify as a deficiency in the MTD Order, namely that the DTSA and CUTSA claims "should be dismissed as to Mr. Buss, Mr. Prager, Open Drives, Ms. Fong, Mr. Hayden, and Ms. Kurtzer, as there are no allegations that these Defendants misappropriated any alleged trade secrets." *See* Motion, Dkt. 67, p. 5, ll. 15-17. Defendants already made these claims in their first motion to dismiss the original complaint. *See* Memo of Ps & As, Dkt. 40, p. 13, l. 8 through p. 14, l. 17. However, the Court did not identify any such pleading deficiency in its MTD Order, Dkt. 59, and, therefore, should not accept this recycled argument as to the FAC. The foregoing notwithstanding, the FAC pleads sufficient facts to demonstrate that defendants Buss, Prager, Open Drives, Fong, Hayden, and Julia Kurter have engaged in misappropriation of Trade Secrets: *See* FAC, Dkt. 61, ¶ 61; Exh. 38: Decl. of Tarbell ¶ ¶ 29-127; and FAC Exhs. 2-36, 44, 45, 57, and 68-73.

Finally, in its MTD Order, the Court expressed concerns that Sylabs did not plead facts with sufficient particularity to establish Sylabs' Trade Secrets under DTSA and CUTSA indicating two **very specific** deficiencies set forth below, each of which will be addressed in order.

**(1) Sylabs' SIF Technology Trade Secrets**. The Court indicated that Sylabs did not allege facts sufficient to show those aspects of its SIF technology that were <u>not</u> discussed in Sylabs' U.S. Patent Application ("Sylabs SIF Application," FAC Exh. 54):

> "But the Court does not demand an exacting distinction at this stage that would depend upon discovery. Rather, **Sylabs must simply allege with particularity those aspects of its SIF technology <u>not</u> discussed in the patent application**, and it does not do so in the Complaint."

*See* MTD Order, Dkt. 59, p. 10, ll. 14-16 (emphasis added).

As to the Court's concerns relating to those aspects of its SIF technology not discussed in Sylabs' SIF Application, Sylabs has provided sufficient allegations in the FAC

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

8

LEPISCOPO & ASSOCIATES LAW FIRM

to cure this deficiency. For example, Sylabs alleges in the FAC that certain SIF technology components were not disclosed in Sylabs' SIF Application (FAC Exh. 54) or Sylabs' SIF Patent (FAC Exh. 55) but were stolen and used by Defendants to procure the Armored Container patents. Specifically, CIQ patent 11,055,428 (FAC Exh. 41) mentions specific methods of encrypting container images as it pertains to OCI images which Sylabs had never publicly disclosed but had been developing as part of its secret "Armored Containers" project well before Defendants left Sylabs. See FAC, Dkt. 61, ¶ 130.

Defendants stole these Trade Secrets to develop and unlawfully and fraudulently procure three patents for CIQ based upon Sylabs' Armored Containers technology, which was born out of Sylabs' research and development starting in June of 2019 (FAC Exhs. 41, 42, and 43). *See* FAC, Dkt. 61, ¶ 414. It is important to note that the Armored Containers technology that serves as the basis of CIQ' s patents is **not** based on the technology disclosed in Sylabs' SIF Application for its SIF technology. *See* FAC, Dkt. 61, ¶ ¶ 373 (Figure 10), 411-414, and 496-497. For purposes of illustration and more detail, please see Figure 10 from the FAC to show the amendments made in the FAC to cure these deficiencies (*see* highlighted portions), *See* FAC, Dkt. 61, ¶ ¶ 372 and 373 (Figure 10).

**(2)    Sylabs' Efforts to Protect Its Trade Secrets.** The Court indicated that Sylabs did <u>not</u> allege facts sufficient to show the policies, methods, and procedures it maintained to protect the secrecy of its Trade Secrets from being publicly disclosed:

> "Thus, Sylabs sufficiently describes four of its five purported trade secrets which are not publicly available. However, the Court agrees with Defendants' third argument that **Sylabs does not sufficiently allege any efforts to maintain the secrecy of its technologies. Indeed, Sylabs offers no allegations of <u>any specific</u> measures it took**."

*See* MTD Order, Dkt. 59, p. 11, ll. 13-16 (emphasis in original and added).

As to the policies, methods, and procedures Sylabs maintained to protect the secrecy of its Trade Secrets, Sylabs has cured this deficiency in the FAC. Sylabs' Server and Google Workspace provided security for the protection of Sylabs' Trade Secrets. *See* FAC Exh. 38:

LEPISCOPO & ASSOCIATES LAW FIRM

Decl. of Tarbell ¶¶ 3-5. However, this security was nullified by Defendants through their unlawful and unauthorized intrusions into Sylabs' Server when they were **insider** and **external** threats with unimpeded access to Sylabs' Server from March 2020 through June 2020. Mr. Tarbell provides numerous factual examples of Defendants' actions as **insider** threats as well as Defendants' **external** cyber intrusions into Sylabs' Server. *See* FAC, Dkt. 61, 61; Exh. 38: Decl. of Tarbell ¶¶ 29-127; and Exhs. 2-36, 44, 45, 57, and 61-73.

Furthermore, Sylabs provided additional allegations in the FAC to identify the policies, methods, and procedures it utilized to not only ensure the secrecy of Sylabs' Trade Secrets but also prevent those Trade Secrets and those having knowledge of those Trade Secrets from utilizing them as a means of **competing against Sylabs**—in the way that Defendants' conspiracy launched and empowered CIQ to compete against Sylabs after stealing Sylabs' Trade Secrets and Corporate Assets. (collectively "Trade Secret Protections"). *See* FAC, Dkt. 61, ¶ 62; Exh. 47.

Sylabs utilized Google Workspace, which is a secure, protective cloud server environment and computing based service to store its data, folders, files, and directories. Workspace has a robust logging feature that allows the auditing of employee activities within this environment. *See* FAC, Dkt. 61, ¶ ¶ 63 and 64; Exh. 38: Decl. of Tarbell ¶ ¶ 3 and 4. Sylabs also maintained and utilized various technology-based protections ("Technical Protections"). *See* FAC, Dkt. 61, ¶ 66. For example, Sylabs took steps to ensure that all source code, technical documentation, and planning material were stored in closed-source, private server projects, and access to the projects was strictly limited, including use of IP Assignment/NDA Agreements. *See* FAC, Dkt. 61, ¶ 67; Exhs. 48-52.

For example, Sylabs was engaged in pursuing business with the United States Government, in particular the Department of Defense ("DoD"). Proposals related to DoD business contained the following Notice:

"This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed-in whole or in

Lepiscopo & Associates Law Firm

part-for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offeror as a result of-or in connection with-the submission of this data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. . ."

*See* FAC, Dkt. 61, ¶ 68; Exh. 53. **Defendants breached this DoD protocol**.

In addition to the Trade Secret Protections, Sylabs maintained conflict of interest policies ("Conflict of Interest Policies"), and also utilized intellectual property assignment agreements and nondisclosure agreements ("IP Assignment/NDA Agreements") to not only maintain the secrecy of Sylabs' Trade Secrets and Sylabs' Corporate Assets but also prevent those Trade Secrets and Corporate Assets from being utilized as a means of competing against Sylabs. *See* FAC, Dkt. 61, ¶ ¶ 65 and 69; Exhs. 47-52.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**D. THE CFAA CLAIMS ARE NOT TIME BARRED AND THE FAC CURED THE PLEADING DEFICIENCIES REGARDING COUNT II (CFAA), INCLUDING DEFENDANTS' PRE AND POST MARCH 31, 2020, VIOLATIONS OF CFAA.**

Defendants argue that Sylabs' Computer Fraud and Abuse Acct ("CFAA") claims are time barred because they were not filed within two years as required by 18 U.S.C. § 1030(g), Motion, Dkt. 67, p. 8, l. 16 through p. 9, l. 12. However, Defendants failed to mention that in the FAC Sylabs has alleged that Sylabs did not discover Defendants' cyber theft (that **Defendants themselves concealed**) until April 6, 2021. *See* FAC, Dkt. 61, Section VI, ¶ ¶ 208-209. As the original complaint was filed **less than two (2)** years later on February 24, 2023, Dkt. 1, Sylabs' CFAA claims are not timed barred by 18 U.S.C. § 1030(g). Clearly, any factual dispute that Defendants might have created regarding Section 1030(g) may be resolved only by a trier of fact, and not through a Rule 12(b)(6) motion.

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

In its MTD Order, the Court determined that under the original complaint, Dkt. 1, Sylabs' "CFAA Claim Fails Because Sylabs Does Not Allege That It Suffered Any Harm Remediable By The Statute." *See* MTD Order, Dkt. 59, p. 12, ll. 1-22. As set forth in Count II and Sections V-VIII of the FAC, Sylabs has alleged sufficient facts and provided sufficient evidence to properly allege Defendants' cyber corruption and cyber destruction of Sylabs' server, data, folders, files, and directories.

Mr. Tarbell has reviewed the MTD Order and has provided an analysis and discussion of evidence to address the pleading insufficiencies of the original allegations. *See* FAC, Dkt. 61, ¶ 20; Exh. 38: Decl. of Tarbell ¶¶ 3-13. First, Mr. Tarbell explains the security features of Sylabs' Server and Google Workspace:

> "One part of Google's security features is the audit logs that record users' actions on Sylabs access controlled computer systems. These audit logs provide Sylabs administrators a detailed list of security-relevant actions taken on their sensitive corporate files. These actions include, but are not limited to, trashing files, trashing folders, deleting files, and deleting folders."

*See* FAC, Dkt. 61, ¶ 20; Exh. 38: Decl. of Tarbell ¶ 4.

Mr. Tarbell then explains why Defendants' trashing or deleting files and folders constitutes the type of harm that is remediable under the CFAA:

> "Google states that a user 'can remove Google Drive files and folders from⋯ (Google Workspace) My Drive and shared drives⋯(with) trash or delete.' Files and folders in Google Workspace Drive can be **permanently deleted without moving the data to trash**. Any file or folder that is moved into trash is automatically deleted after 30 days. **After a file is deleted, any other user that has been shared that file will lose access to the file**."

*See* FAC, Dkt. 61, ¶ 21; Exh. 38: Decl. of Tarbell ¶ 5 (emphasis added).

Next, Mr. Tarbell connects the preceding explanation with Section 1030(e)(8) of the CFAA:

> "Damage, as defined in 18 USC § 1030(e)(8), is 'any **impairment** to the integrity or availability of data, a program, a system, or information.' "

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (Dkt. 67)

12

LEPISCOPO & ASSOCIATES LAW FIRM

*See* FAC, Dkt. 61, ¶ 22; Exh. 38: Decl. of Tarbell ¶ 6 (emphasis added).

Mr. Tarbell then goes on to explain that Sylabs has suffered cognizable damage that is remediable under the CFAA:

> "Deleting and trashing, which are automatically deleted after 30 days, files and folders in Sylabs' Google Workspace is a damage. These files' availability to legitimate Sylabs' Google Workspace users **was impaired**."

*See* FAC, Dkt. 61, ¶ 23; Exh. 38: Decl. of Tarbell ¶ 7 (emphasis added).

Further, Mr. Tarbell explains that under Section 1030(e)(6) of the CFAA Defendants' access to Sylabs' Server for the purpose of deleting and trashing Sylabs' data, files, and directories **exceeded any authorized access** they might have enjoyed under the IP Assignment/NDA Agreements (*see* FAC Exhs. 48-52):

> "Exceeds authorized access, as defined in 18 USC § 1030(e)(6), is to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter. <u>Deleting and trashing files, damaging the data, on a Sylabs' computer system after resigning from Sylabs is **exceeding authorized access**</u>."

*See* FAC, Dkt. 61, ¶ 24; Exh. 38: Decl. of Tarbell ¶ 13 (emphasis added).

Mr. Tarbell provides some examples of Defendants' unlawful acts that caused Sylabs damage under Section 1030(e)(8), such as Greg Kurtzer deleting 142 folders after tendering his resignation, Adolph trashing 24 files after tendering his resignation (files that would automatically be deleted within 30 days), or Hayden deleting a file nine days after his resignation from Sylabs. *See* FAC, Dkt. 61, ¶ 25; Exh. 38: Decl. of Tarbell ¶¶ 8-12; Exhs. 3, 4, 19, 20, 34, 35, 44, and 45. As the foregoing examples demonstrate, Sylabs has alleged in the FAC that it suffered actual, remediable damage[2] due to Defendants' cyber corruption

---

[2]    For purposes of CFAA, the terms "**damage**" "**damages**," and "**harm**" shall have
the same meaning and were used interchangeably throughout the FAC.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (Dkt. 67)

13

and cyber destruction in the form of monetary damage in an amount that exceeds $75,000. *See* FAC, Dkt. 61, ¶ 19(a)-(n) and ¶ ¶ 124-374; Exhs. 2-73.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**E.**    **THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING THE RICO CLAIMS IN COUNTS IV AND V.**

In its MTD Order, the Court determined that Sylabs' Counts IV and V for RICO were insufficient because they relied upon Sylabs' Count I (*i.e.*, **violation of the DTSA**) as their Predicate Acts to establish RICO, which the Court held Sylabs failed to establish in the original complaint:

> "Sylabs selects Defendants' alleged violations of the DTSA as the necessary predicate acts. See Complaint ¶¶ 187-88; see also CIQ Opposition at 22-23; IAG Opposition at 22-23; 18 U.S.C. § 1961(1). Its Section 1962(c) claim therefore fails, **because Sylabs does not sufficiently allege any DTSA violations**."

*See* MTD Order, Dkt. 59, p.13, ll. 6-10 (emphasis added).

It follows, therefore, that since Sylabs cured deficiencies identified in the MTD Order with violations of DTSA (Count I) in the FAC (*see* II.C, *supra*), then Sylabs' RICO claims in Counts IV and V are sufficiently pleaded. *Id*.

As alleged in Count I, CIQ's patents found in FAC Exhs 37, 39, 40, 41, 42, and 43 are based on Sylabs' Trade Secrets that Defendants unlawfully acquired through cyber corruption, destruction, theft, misappropriation, and unlawful and fraudulent patenting of Sylabs' Trade Secrets. These are clear violations of the DSTA. *See* FAC, Dkt. 61, ¶ 89.

The allegations of the FAC that provide the predicate acts under the RICO claims alleged in Counts IV and V constitute not only civil claims but also Defendants' alleged violation of federal **criminal** statutes, including: 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. §

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

14

LEPISCOPO & ASSOCIATES LAW FIRM

1030(a)(4) (Computer Fraud), 18 U.S.C. § 1030(a)(2) (Theft of Information from a Computer), 18 U.S.C. § 1030(b) (Conspiring to Violate the CFAA), and 18 U.S.C. § 1030(a)(5)(B) (Recklessly Damaging a Computer). *See* FAC, Dkt. 61, ¶ ¶ 90 and 545.

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies in Counts IV and V (RICO) as identified by this Court in the MTD Order, Dkt. 59, p.13, ll. 6-10.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## F. THE FAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING CUTSA'S PREEMPTION OF STATE LAW CLAIMS ALLEGED IN COUNTS VI THROUGH XI.

In its MTD Order, the Court clearly identified the pleading deficiencies regarding CUTSA's preemption of Sylabs' state law claims alleged in Counts VI through XI.

> "The CUTSA Preempts Sylabs' Other State-Law Claims. Sylabs asserts six state-law claims in addition to its CUTSA claim, all of which it bases on the same conduct underlying its CUTSA claim, namely, Defendants' alleged **misappropriation of Sylabs' purported trade secrets**. But '[u]nder California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon **misappropriation of a trade secret**.'"

*See* MTD Order, Dkt. 59, p.13, ll. 20-25 (emphasis added; citations omitted).

It follows from the MTD Order, that if Sylabs alleges damages sustained that are <u>not</u> based upon **misappropriation of trade secrets** then Sylabs will have cured the pleading deficiencies as to Defendants' challenges to Counts VI through XI. Specifically, and as discussed in Section II.D, *supra*, Sylabs has alleged that it suffered **<u>non-misappropriation of trade secrets</u>** damages in an amount that exceeds $75,000, which are distinguishable from what the Court indicated was insufficient for pleading purposes and which include costs, wages, and all related fees to: (1) discover cyber intrusions to Sylabs' Server; (2) discover harm caused to Sylabs' server, data, folders, files, and directories; (3) find, gather, and

organize evidence of cyber intrusions to Sylabs' Server and harm caused to Sylabs' server, data, folders, files, and directories; (4) assess the evidence of the harm caused to Sylabs' server, data, folders, files, and directories; (5) conduct forensic analysis of the evidence of cyber intrusions to Sylabs' Server and of the harm caused to Sylabs' server, data, folders, files, and directories; and (6) prepare forensic reports of the evidence of cyber intrusions to Sylabs' Server and the harm caused to Sylabs' server, data, folders, files, and directories by cyber intrusions, cyber corruption, and cyber destruction. *See* FAC, Dkt. 61, ¶ 19. These issues and the amount of damages are to be determined by a trier of fact not by the Court in a 12(b)(6) motion.

In addition to the foregoing allegations, the following allegations summarize Sylabs' assets and property stolen by Defendants that are **<u>not</u>** defined as, nor are they a part of its Trade Secrets, all of which were used by Defendants to launch and grow defendant CIQ's business: (1) corporate documents and minutes of shareholder and board of directors' meetings; (2) financial records; (3) partner and joint venture records; (4) existing and prospective customer list; (5) sales and potential sales lists; (6) statements of work; (7) purchase orders; (8) invoices; (9) marketing strategies, plans, and pricing; (10) prospective investors list; (11) human resources records; (l2) employees' files, including information relating to Sylabs employees' salary and benefits packages, payroll information, addresses, dates of birth, driver's licenses, tax identification numbers, etc.; (13) offers of employment, executive employment agreements, employment agreements, independent contract agreements, consultant agreements, technical advisor agreements, and reseller agreements; and (14) emails and. *See* FAC, Dkt. 61, ¶ 623.

Defendants separately attack Sylabs' claim under California's Unfair Competition Law ("CUCL"), California Business & Professions Code § 17200, Count VII, an attack also made in their first motion to dismiss. *See* Memo of Ps & As, Dkt. 40, p. 13, l. 8 through p. 14, l. 17. However, the Court did not identify any such pleading deficiency in its MTD Order, but instead found the sole deficiency with Sylabs' CUCL claim (Count VII) was that it was preempted. *See* MTD Order, Dkt. 59, p. 14, l. 12. As set forth in this Section II.F, since

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (Dkt. 67)

16

LEPISCOPO & ASSOCIATES LAW FIRM

Sylabs has cured the pleading deficiency regarding preemption of the CUCL claim (Count VII), the Court should not accept this recycled argument as to the FAC.

As the foregoing demonstrates, Sylabs has cured the pleading deficiencies in Counts VI through XI, as identified by this Court in the MTD Order, Dkt. 59, p.13, ll. 20-25.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**G.    AS THE ECONOMIC LOSS RULE DOES NOT APPLY, THE FAC SUFFICIENTLY ALLEGES THE INTENTIONAL MISREPRESENTATION CLAIMS ALLEGED IN COUNTS XIII, XV, XVII,  XIX, AND XXI.**

Defendants claim the following pleading deficiencies regarding the State Fraud Claims: first, these claims, which sound in fraud, do not meet the heightened pleading standard of Rule 9(b); second, the economic loss rule bars the claims; and third, the FAC lacks sufficient allegations that the aforementioned Defendants intended to defraud Sylabs or induce Sylabs' reliance. *See* Motion, Dkt. 67, p. 20, ll. 6-9.

Of note, the challenged claims for intentional misrepresentation against defendants Kurtzer, Hayden, Fong, Adolph, Buss, Prager, and Open Drives, Counts XIII, XV, XVII, XIX, and XXI (collectively "State Fraud Counts"), respectively, were not part of the original complaint and were **not** assessed in the MTD Order—this is the Court's first review of those claims. Except under preemption, Defendants (Buss and Prager excepted) do **not** attack the **breach of contract** claims alleged in Counts XII, XIV, XVI, XVIII, or XX.

First, the allegations regarding the State Fraud Counts satisfy the pleading requirements of Rule 8(a) and Rule 9(b) and demonstrate that Defendants intended to defraud Sylabs and induce Sylabs' reliance. The idea underlying these counts is, as alleged, that Defendants executed their respective nondisclosure agreements ("Defendants' NDAs") in order to further their conspiracy by promising to protect and not steal Sylabs' property. This promise resulted in Defendants gaining access to ALL data, folders, and files on Sylabs'

LEPISCOPO & ASSOCIATES LAW FIRM

Computer Systems. As alleged, Defendants willfully and intentionally commenced destroying Sylabs computer data, folders, and files and stealing Sylabs' Corporate Assets. Thus, **all** Defendants lied through the false promise made in Defendants' NDAs to gain access because their access was intended to and did facilitate and advance their fraud and conspiracy. *See* FAC, Dkt. 61, ¶¶ 703-708, 719-724, 735-740, 751-755, and 766-771; Exhs. 48-52. It would be up to a trier of fact—not the Court deciding a Rule 12(b)(6) motion—to decide the disputed facts and draw whatever inferences and conclusions they choose, which could reasonably and rationally lead to a finding that Defendants satisfied the elements of the State Fraud Counts, including that Defendants intended to defraud Sylabs and induce Sylabs' reliance. *See* Rule 8(a) and Rule 9(b).

Defendants improperly apply the economic loss rule as it relates to the allegations of this Action. Under Defendants' application of this rule, no plaintiff would be able to plead alternative claims of relief. In fact, there is a case currently pending before the California Supreme Court, in which the Ninth Circuit has certified the following question to the California Supreme Court regarding the economic loss rule:

> "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?"

*Rattagan v. Uber Technologies, Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021).

In response to the Ninth Circuit's certification request, the California Supreme Court **granted** certification. *Rattagan v. Uber Technologies, Inc.*, S272113, 2022 Cal. LEXIS 1885 (March 11, 2022) ("*Rattagan*"). *Rattagan* has been fully briefed but has not been scheduled for oral argument or decided by the California Supreme Court.

A California Supreme Court's decision is instructive and governs the State Fraud Counts, and may provide guidance as to how the Supreme Court might decide *Rattagan*:

> "We went on to describe several instances where tort damages were permitted in contract cases. 'Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; **or where the contract was**

**fraudulently** **induced**. . .[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 989-990 (2004) ("*Robinson*") (citations omitted) (emphasis added).

*Robinson* went on to cite and quote with approval a California Court of Appeal's decision that supports the State Fraud Counts—Defendants made false promises that they would comply with the Defendants' NDAs in order to induce Sylabs to provide access to Sylabs' Computer Systems, data, folders, and files. However, the allegations demonstrate that although Defendants made promises, for the purpose of inducing Sylabs to authorize access, they intended to destroy, disclose, steal, and otherwise improperly use Sylabs' Trade Secrets, Corporate Secrets, and other confidential and proprietary information. Consequently, the economic loss rule does <u>not</u> apply to the State Fraud Counts:

> "[W]hen one party commits a **fraud during the contract formation** or performance, the injured party may recover in contract **and tort**."

*Harris v. Atlantic Richfield*, 14 Cal.App.4th 70, 78 (1993) ("*Harris*") (emphasis added).

Another case allowing a tort claim in the face of an economic loss defense is worth mentioning. In *Dhital v. Nissan North America, Inc.*, 84, Cal.App.5th 828, 841 (2022) ("*Dhital*"), the California Court of Appeal allowed the tort cause of action for fraud in the inducement to proceed even though a contract (warranty) cause of action was also alleged:

> "In our view, that independence is present in the case of fraudulent inducement (whether it is achieved by intentional concealment or by intentional affirmative misrepresentations), because a defendant's conduct in fraudulently inducing someone to enter a contract is separate from the defendant's later breach of the contract or warranty provisions that were agreed to."

It is important to note that the California Supreme Court has just granted review in *Dhital* regarding exclusion of fraud in the inducement claim under the economic loss rule, pending that Court's decision in *Rattagan*:

LEPISCOPO & ASSOCIATES LAW FIRM

1

2

3

4

"The petition for review is granted. Further action in this matter is deferred pending consideration and disposition of a related issue *in Rattagan v. Uber Tech. Inc*., S272113 (see Cal. Rules of Court, rule 8.512(d)(2)), or pending further order of the court. Submission of additional briefing, pursuant to California Rules of Court, rule 8.520, is deferred pending further order of the court."

5

*Dhital v. Nissan North America, Inc*., 2023 Cal. LEXIS 569 (February 1, 2023).

6

7

8

9

10

11

12

Fraud in the inducement and promise without intention to perform are the same species of tort, to wit: a lie to induce another person's reliance and to take action to do something. In this Action  the FAC alleges that Defendants lied to induce Sylabs to provide Defendants with access to Sylabs' Trade Secrets, Corporate Secrets, and other confidential and proprietary information. Once Defendants had access, they **damaged** Sylabs Computer Systems, data, folders, and files, and stole Sylabs' Trade Secrets and Corporate Secrets. *See* FAC, Dkt. 61,  ¶¶   703-708, 719-724, 735-740, 751-755, and 765-772; Exhs. 48-52.

13

14

15

The FAC's allegations make clear that Defendants fraudulently gained access to Sylabs' Computer Systems, data, folders, and files, then immediately proceeded to exceed their fraudulently obtained access, all of which is actionable:

16

17

18

19

 "Exceeds authorized access, as defined in 18 USC  § 1030(e)(6), is to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter. **Deleting and trashing files, damaging the data, on a Sylabs' computer system after resigning from Sylabs is exceeding authorized access**."

20

21

22

23

*See* FAC Exh. 38, Dkt. 61-38: Decl. of Tarbell ¶ 13 (emphasis added). Whatever the outside scope may be interpreted to be, the IP Assignment/NDA Agreements do **not** authorize Defendants to engage in the unlawful acts alleged in the FAC. *See* FAC Exh. 38: Decl. of Tarbell ¶¶ 1-127; Exhs. 1-43; 44, 45, and 46-73.

24

25

26

As the foregoing demonstrates, Sylabs has alleged with the required **heightened** particularity the circumstances constituting fraud alleged in the State Fraud Counts, all of which is in full compliance with Rule 8(a) and Rule 9(b). Furthermore, the economic loss

27

28

LEPISCOPO & ASSOCIATES LAW FIRM

rule is inapplicable to the State Fraud Counts. *See Robinson, supra,* 34 Cal.4th at 889-890; *Harris, supra,* 14 Cal.App.4th at 78; *Dhital, supra,* 84, Cal.App.5th at 841.

Finally, if the Court determines that there are pleading deficiencies regarding the State Fraud Counts, then such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

**H.    SINCE THE BUSS/ PRAGER/OPEN DRIVES NDA APPLIES TO DEFENDANT OPEN DRIVES, INC., AND ITS OFFICERS AND DIRECTORS, SUCH AS DEFENDANTS DAVID BUSS AND MARLIN PRAGER, SYLABS ALLEGES SUFFICIENT FACTS TO SUPPORT THE BREACH OF CONTRACT AND INTENTIONAL MISREPRESENTATION CLAIMS IN COUNTS XX AND XXI.**

Defendant David Buss is defendant Open Drives' C.E.O. and director, and defendant Marlin Prager is defendant Open Drives' C.F.O. and director. *See* FAC, Dkt. 61, ¶ ¶ 116 and 117, respectively. Accordingly, upon accepting their email credentials and access to Sylabs' Computer Systems, defendants Buss and Prager agreed to abide by the terms of the Buss/ Prager/Open Drives NDA, FAC Exh. 52. Furthermore, they had the control to do so under the NDA.

Paragraph 3 of the Buss/ Prager/Open Drives NDA sets forth the duties of defendants Open Drives, Buss, and Prager under that agreement:

"3. Permission; Obligations. Recipient and any of its Affiliates shall: (a) only disclose the Confidential Information to Recipient's or any Affiliates **employees and contractors who have written and binding non disclosure obligations with Recipient that are as restrictive as those herein and then only for the Purpose**; (b) not disclose any Confidential Information to any third party, without Discloser's prior written consent;(c) use Confidential Information only for the Purpose; (d) not reproduce Confidential Information in any form except for the Purpose; (e) not reverse engineer, decompile, or disassemble any Discloser Confidential Information; (f) not use the, Confidential information to make, have made or sell any products or services that compete with any of Discloser's products or services; and, (g) provide Discloser with notice of any actual or threatened breach of Agreement."
ser with notice of any actual or threatened breach of Agreement."

*See* FAC Exh. 52, p. 1, ¶ 3 (emphasis added).

LEPISCOPO & ASSOCIATES LAW FIRM

One **affirmative** duty of defendant Open Drives and its officers, defendants Buss and Prager, under the Buss/Prager/Open Drives NDA was to make sure that anyone who would be granted access to Sylabs Computer Systems or received Sylabs' Trade Secrets, Corporate Secrets, or other confidential information executed a nondisclosure agreement to bind them to the Buss/Prager/Open Drives NDA. *See* FAC Exh. 52, p. 1, ¶ 3(a). Sylabs would only be able to discover this information through written discovery and depositions.

Through Mr. Tarbell's Declaration, it is clear that by virtue of the Buss/Prager/Open Drives NDA, defendants Marlin Prager and David Buss became "**insider threats**" to Sylabs at the time they gained access to and committed cyber corruption and cyber destruction of Sylabs' Computer Systems, data, folders, and files, and cyber theft of Sylabs' Trade Secrets, Corporate Secrets, and other confidential and proprietary information, thereby "exceeding authorized access." *See* FAC Exh. 38: Decl. of Tarbell ¶¶ 13 and 30.

It is also important to note that the duties of defendants Open Drives, Buss, and Prager under the Buss/Prager/Open Drives NDA are still in full force and effect:

> "Recipient's nondisclosure obligations under sub-Sections(a) and (b) of this Section 3 shall expire **5 years** from the date of disclosure of such Confidential Information."

*See* FAC Exh. 52, p. 1, ¶ 3 (emphasis added).  Accordingly, defendants Buss and Prager's duties under the Buss/Prager/Open Drives NDA continue to the present.

Sylabs has alleged with the required particularity the circumstances constituting breach of contract and fraud claims alleged against defendants Buss and Prager in Counts XX and XXI, all of which are in full compliance with Rule 8(a) and Rule 9(b).

Finally, if the Court determines that there are pleading deficiencies regarding the breach of contract and fraud claims in Counts XX and XXI, then such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

/////

/////

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

22

LEPISCOPO & ASSOCIATES LAW FIRM

## I. THE FAC CURED PLEADING DEFICIENCIES IDENTIFIED IN THE MTD ORDER REGARDING DEFENDANTS DAVID BUSS, MARLIN PRAGER, AND OPEN DRIVES .

In its MTD Order, the Court identified the pleading deficiencies regarding insufficient allegations against defendants Buss and Prager:

> "Sylabs does not allege in the Complaint any specific acts performed by Defendant Buss (ODI's CEO) in connection with remaining Defendants' access of Sylabs' server.
>
> **ODI [Open Drives, Inc.] And Defendants Prager And Buss**. Defendant GK provided ODI and Defendant Prager with access to Sylabs' server. But Sylabs does not allege that these Defendants actually did anything in response to this provision of access and does not allege any conduct on the part of Defendant Buss. Rather, it simply notes that ODI invested in CIQ. Sylabs otherwise conclusorily alleges that Defendants GK and Adolph 'plann[ed] a collaboration' with ODI, but offers no particularized facts to illustrate ODI's or Defendants Prager and Buss's roles in such a collaboration."

*See* MTD Order, Dkt. 59, p.4, ll. 20-25, and p. 8, ll. 6-12 (emphasis original and added; citations omitted).

As mentioned above, Buss and Prager are officers of Open Drives and, therefore, their individual and collective actions are binding on defendant Open Drives and its representatives. In response to the MTD Order, Sylabs has cured the above-mentioned pleading deficiencies in the FAC. For example, the following allegations and supporting exhibits provide details of the actions performed by defendants Buss, Prager, and Open Drives separately and in concert with their co-defendants in furtherance of the conspiracy:

(1)   Email accounts external to Sylabs, m.prager@opendrives.com and d.buss@opendrive.com, were used by defendants Marlin Prager and Buss, respectively, while employed by defendant Open Drives, Inc., to access Sylabs' Computer Systems. *See* FAC, Dkt. 61, ¶ 8; Exh. 38: Decl. of Tarbell ¶¶ 8, 9, 22, 41, 50-54, 56, 77, 87, and 98-101; Exhs. 2-36, 44, 45, 57, 68-73.

(2)   Defendants agreed to and utilized defendant Buss's position, experience, and contacts as a retired Navy Admiral to promote "defendant CIQ's technology" with the

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CIQ AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE  (Dkt. 67)

23

DoD, which was actually **Sylabs'** Trade Secrets stolen by defendants Buss and Prager and their co-defendants, *see* FAC, Dkt. 61, ¶ 39.

(3)    Defendants Buss and Prager were involved in a meeting held on December 19, 2019, during which time Sylabs commenced its planning of the design and development of Fuzzball, including preparation of an initial planning document ("Fuzzball Planning Document"), as well as in other meetings relating to Fuzzball where they gained access to and knowledge of Sylabs' Trade Secrets, *see* FAC, Dkt. 61, ¶ 31; Exh. 64.

(4)    Defendants Buss and Prager and their co-defendants were involved in a meeting in February 2020, wherein they agreed with their co-defendants to carry out their scheme against Sylabs by creating a **new** company that Defendants secretly referred to as "NewCo" for purposes of stealing Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets and transferring to the newly formed defendant, CIQ, which  caused damage to Sylabs (*see* subparagraphs (a) through (p) for a list of specific damage done to Sylabs' Computer Systems, data, folders, and files), *see* FAC, Dkt. 61, ¶ 34 (a)-(p).

(5)    Defendants Buss and Prager and their co-defendants met on March 8, 2020, to prepare a budget ("CIQ Budget") for CIQ (identified in the Budget as "NewCo") in order to conceal their conspiracy to set up CIQ and transfer all of Sylabs' Trade Secrets and assets to CIQ, in which they ultimately succeeded. Further, it listed several of Sylabs' customers and prospective customers as CIQ's (*see* subparagraphs (a) through (n) for a list of specific companies). *See* FAC, Dkt. 61, ¶¶ 37 & 38(a)-(n); Exh. 56.

(6)    Defendant Buss used his knowledge and expertise with the DoD when he and defendant Prager, and their co-defendants, were involved during the February-March 2020 timeframe in assessing Sylabs' DoD projects that were under way for the purpose of including them in CIQ's business plan and the CIQ Budget. Defendants Buss and Prager and their co-defendants knew Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets would be stolen and used as the basis to procure the six CIQ Patents, *see* FAC, Dkt. 61, ¶ 39; Exhs. 37 and 39-43.

LEPISCOPO & ASSOCIATES LAW FIRM

(7)    In March of 2020, defendants Buss and Prager and their co-defendants inserted themselves into a government project that Sylabs was already involved in with the U.S. Air Force, which is known as Small Business Innovation Research ("SBIR"),[3] in this case Sylabs' SBIR proposal No. F2-13944 ("SBIR Proposal"), which was based on Sylabs' hardened SIF container technology, *see* FAC, Dkt. 61, ¶ 40.

(8)    On March 10, 2020, defendant Greg Kurtzer sent an email to defendants **Buss**, Adolph, and **Prager** regarding the SBIR Phase 1 Award, which defendants Buss and Prager and their co-defendants knew to be Sylabs' property and future business, as it was based and awarded on Sylabs' technology–they came to know this as a consequence of their access to Sylabs' Computer Systems. However, their plan in furtherance of their conspiracy was already underway so that CIQ would benefit from SBIR Phase 1, Phase 2, and Phase 3, to the extent of **even relying on Sylabs' projected revenues in <u>CIQ's</u> Budget** (Exh. 58). *See* FAC, Dkt. 61, ¶ 42; Exh. 38: Decl. of Tarbell ¶ 41; Exhs. 44, 45, 61, 57, and 58.

(9)    On March 16, 2020, defendants Buss and Prager (and Greg Kurtzer) received an email from defendant Adolph, which discussed Sylabs' SBIR that was stolen by defendants Buss and Prager and their co-defendants for use by "NewCo," which is defendant CIQ: "Hi Marlin and Dave, This is the <u>**NewCo next SBIR**</u>. . .This is them asking for the Sylabs Edge Solution. The current SBIR is just secure containers. . ." *See* FAC, Dkt. 61, ¶ ¶ 43 and 288; Exh. 38: Decl. of Tarbell ¶ 41; Exhs. 56 and 58 (emphasis added).

(10)    On March 29, 2020, defendant Buss sent an email to his codefendants, wherein defendants Buss and Prager's involvement with SBIR through the U.S. Navy's program is evident: "Interesting. I just received a LinkedIn connection request from Matt Williams, **who runs the Navy's SBIR program. Of course I said yes and connected. Will reach**

---

[3]    SBIR is administered through the U.S. Small Business Administration's ("SBA") Office of Innovation and Technology ("OIT"), *see*: https://www.sbir.gov/about.

**out to him**." *See* FAC, Dkt. 61, ¶ 44; Exh. 38: Decl. of Tarbell ¶ 41; Exh. 59 (emphasis added). Keep in mind Buss and Prager work for Open Drives not Sylabs.

(11)    In March of 2020, defendants Buss and Prager and their co-defendants included within **CIQ's** Budget (Exh. 56) several projected revenue stream items relating to **Sylabs' SBIR** Award & Proposal as though they belonged to defendant CIQ. Keep in mind, at this very time defendants Buss and Prager and their co-defendants were not only corrupting, destroying, and stealing Sylabs' data, files, and directories, they were actively planning how they—through CIQ—would benefit from Sylabs' customers and active projects with the DoD. *See* FAC, Dkt. 61, ¶ 45; Exh. 56, p. 1; Exh. 38: Decl. of Tarbell ¶ 41; Exhs. 44 and 45.

(12)    In furtherance of their conspiracy, in March of 2020, in the same **CIQ** Budget (Exh. 56), defendants Buss and Prager and their co-defendants further revealed their unlawful intentions when they treated Fuzzball as their own. Specifically, defendants Buss and Prager and their co-defendants identify six different Fuzzball products based on Sylabs' Fuzzball Trade Secrets, which would be promoted by CIQ. *See* FAC, Dkt. 61, ¶ 46; Exh. 56, p. 1.

(13)    Emails sent between March 10 and March 29, 2020, show that defendants Buss and Prager were involved in all aspects of the conspiracy through planning of the theft and unlawful transfer of Sylabs' Trade Secrets, assets, opportunities, customers, and business to CIQ. *See* FAC, Dkt. 61, ¶ 47; Exh. 62: emails.

(14)    As a final example of their involvement, defendants Buss and Prager's email activity with their co-defendant Adolph was ongoing from March 8, 2020, through March 30, 2020, regarding Sylabs' SBIR and other issues relating to Sylabs' ongoing business and defendant **CIQ's pre-start** up business. *See* FAC, Dkt. 61, ¶ 48; Exh. 57; Exh. 38: Decl. of Tarbell ¶¶ 41 and 98-101; Exhs. 44 and 45.

LEPISCOPO & ASSOCIATES LAW FIRM

As the foregoing examples demonstrate, Sylabs has cured the pleading deficiencies regarding defendants David Buss, Marlin Prager, and Open Drives, as identified by this Court in the MTD Order, Dkt. 59, p.4, ll. 20-25, and p. 8, ll. 6-12.

Finally, if the Court determines that there are remaining uncured pleading deficiencies from the MTD Order, such deficiencies should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. *Breier, supra*, 316 F.2d at 790.

## III. THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE.

Courts are very reluctant to resolve disputed or substantial legal issues in such motions. Disputed or substantial legal issues are properly determinable only **after discovery** and a **hearing on the merits**. *See e.g. Fantasy, supra,* 984 F.2d at 1527.

In this Action, given the gravity of the allegations, the Court should require Defendants to **also** demonstrate how each paragraph of the FAC they seek to strike causes them prejudice. As the Court's review will discover, Defendants have made no such showing, and, therefore, the motion should be denied in its entirety. *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1122 (E.D. Cal. 2012) ) ("*Sanchez*").

## A. THE REQUEST TO STRIKE PARAGRAPHS 278-280 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.

In their motion, Defendants seek to strike Paragraphs 278-280 of the FAC because they are "irrelevant." First, Rule 12(f) is not a substitute for evidentiary objections. Second, Defendants simply ignore Paragraph 277, which establishes the pleading sufficiency set forth in Paragraphs 278-280, by alleging as part of Sylabs' claims against Defendants that Sylabs' Trade Secrets were fraudulently patented. Second, this is alleged as further proof of Defendants' criminal conspiracy that is actionable under the claims alleged in the FAC. Paragraphs 278-279 set forth what constitutes a fraud upon the USPTO, which includes **inequitable** conduct—*i.e.* fraud—under 37 Code of Federal Regulations ("CFR") 1.56(a). Third, Paragraph 280 provides allegations as to Defendants' conduct that constitutes further proof of violations of CFR 1.56(a). *See* FAC, Dkt. 61, ¶¶ 277-280.  Finally, Defendants

provide no proof of any prejudice. *Sanchez, supra*, 914 F.Supp.2d at 1122. Accordingly, the request to strike these paragraphs of the FAC should be denied.

**B.    THE REQUEST TO STRIKE PARAGRAPHS 375-403 AND 8 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.**

Defendants seek to strike Paragraphs 375-403 of the FAC because they are "redundant, immaterial, and impertinent." First, the Court should deny this out of hand because these same statutes and jury instructions were alleged in Paragraphs 182 through 207 of the original complaint, Dkt. 1. Second, Defendants seek to strike portions of Paragraph 8 of the FAC because they assert patent infringement claims and are irrelevant. However, these allegations relate to the fraud Defendants perpetrated on the USPTO, which provides some of the basis for the allegations relating to 18 U.S.C. § 1962 (*i.e.* RICO). Third, this is also alleged as the predicate claims of Defendants' conspiracy that is actionable under the claims of the FAC. Finally, Defendants provide no proof of any prejudice. *Sanchez, supra*, 914 F.Supp.2d at 1122. Accordingly, the request to strike these paragraphs of the FAC should be denied.

**C.    THE REQUEST TO STRIKE PARAGRAPHS 143, 194, 195, 222, AND 223 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.**

Defendants seek to strike Paragraphs 143, 194, 195, 222, and 223 of the FAC. First, the Court should deny this out of hand because these same allegations were alleged in Paragraph 48, 95, 96, 114, and 115 of the original complaint, Dkt. 1. Second, Paragraphs 143, 194, and 195 underscore the importance of technological achievements in the high performance computing industry ("HPC"), which underlies Sylabs' Trade Secrets and the six patents that defendant CIQ fraudulently patented. As alleged in Paragraph 137, HPC refers to use of technology that harnesses the power of supercomputers or computer clusters to solve complex problems requiring massive computation, which is utilized by NOAA (Paragraphs 143 and 195), the DoD, and other federal agencies. Third, Paragraphs 222 and 223 of the FAC relate to computer forensics and the FBI computer forensics assessment of destruction

of intellectual property such as the Audit Logs in this Action (*see* FAC Exhs. 44 and 45). Furthermore, Sylabs' forensics expert, Mr. Tarbell, was part of the FBI's Cybercrimes Squad in the New York Field Office (*see* FAC Exhs. 1 and 38). Finally, Defendants provide no proof of any prejudice. *Sanchez, supra*, 914 F.Supp.2d at 1122. Accordingly, the request to strike these paragraphs of the FAC should be denied.

**D.    THE REQUEST TO STRIKE PARAGRAPHS 452-470 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY .**

Defendants seek to strike Paragraphs 452-470 of the FAC. These paragraphs are alleged in response to the Court's MTD Order, Dkt. 59 (internal quotation marks omitted):

> "453. In its MTD Order, this Court indicated that: [T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret. In identifying a trade secret at the pleading stage, a plaintiff need not spell out the details of the trade secret, but must minimally provide reasonable notice of the issues which must be at the time of trial and . . . provide reasonable guidance in ascertaining the scope of appropriate discovery. *See* MTD Order, Dkt. 59, p. 9, ll. 1-6."

Paragraphs 454-470 include, for example: description of Sylabs' Trade Secrets supporting its Claims; the policies and security measures protecting those Trade Secrets; conflict of interests policies in place to prevent competition against Sylabs through theft and/or misuse of its Trade Secrets and other protected information; technical protections in place to maintain the secrecy of Trade Secrets; IP assignment and nondisclosure agreements (Exhs. 48-52) to protect Trade Secrets and other protected information; and protections demanded by the U.S. Government under the SBIR program.

Finally, Defendants provide no proof of any prejudice. *Sanchez, supra*, 914 F.Supp.2d at 1122. Accordingly, the request to strike these paragraphs of the FAC should be denied.

**E.    THE REQUEST TO STRIKE REFERENCES TO "CRIMES" IN PARAGRAPHS 643 AND 647 OF THE FAC SHOULD BE DENIED BECAUSE THEY ARE NECESSARY FOR PLEADING SUFFICIENCY.**

LEPISCOPO & ASSOCIATES LAW FIRM

Defendants seek to strike Paragraphs 643 and 647 of the FAC. Sylabs listed criminal statutes in response to the Court's request for predicate acts to support the RICO claims. *See* MTD, Dkt. 59, p. 13, l. 1. In Paragraphs 643 and 647, Sylabs alleges the civil and criminal violations of law that comprise the requisite predicate acts because RICO is both a civil and criminal statutory scheme, making the allegations of both appropriate and necessary to establish the requisite predicate acts, even if the criminal offenses are not remediable in this case. Finally, Defendants provide no proof of any prejudice. *Sanchez, supra*, 914 F.Supp.2d at 1122. Accordingly, the request to strike these paragraphs of the FAC should be denied.

## IV.  SYLABS REQUESTS LEAVE TO AMEND.

As there is a significant amount of evidence in this Action, even before discovery has commenced, any deficiencies would be easily cured. Accordingly, if this Court determines that one or more counts of Sylabs' FAC, Dkt. 61, is or are deficient, Sylabs respectfully requests leave to amend in light of Supreme Court and Ninth Circuit precedent:

> "As the Supreme Court indicated in Foman [v. Davis, 371 U.S. 178, 182 (1962)], amendment should not be barred as futile if the underlying facts 'may be a proper subject of relief.' As we have recently said, leave to amend should be allowed unless the complaint 'cannot under any conceivable state of facts be amended to state a claim.' *Alexander v. Pacific Maritime Ass'n*, 9th Cir., 1963, 314 F.2d 690. Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.' 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)."

*Breier, supra,* 316 F.2d at 790.

## CONCLUSION

Based on the foregoing, Sylabs respectfully requests the Court to deny the Motions to Dismiss and Strike. Alternatively, if this Court grants the Motions in whole or in part, then Sylabs hereby requests leave to amend the FAC. *Breier, supra,* 316 F.2d at 790.

Dated:  April 1, 2024.                     **LEPISCOPO & ASSOCIATES LAW FIRM**

By:  /s/ Peter D. Lepiscopo
        **PETER D. LEPISCOPO**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on April 1, 2024. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 1, 2024.

LEPISCOPO & ASSOCIATES LAW FIRM

By: /s/ Peter D. Lepiscopo _
PETER D. LEPISCOPO
*Counsel of Record*
Attorneys for Plaintiff, **SYLABS, INC.**