1 | CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
2 | MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
3 | TAYLOR L. BENNINGER (State Bar No. 344825)
Taylor.Benninger@mto.com
4 | MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
5 | San Francisco, California 94105-2907
Telephone:    (415) 512-4000
6 | Facsimile:    (415) 512-4077

7 | Attorneys for Defendants
JOEL WHITLEY, IAG FUND II, LP, and
8 | IAG CAPITAL HOLDINGS II, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| SYLABS, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREGORY ROSE a/k/a GREGORY M. KURTZER; JULIA ROSE a/k/a JULIA KURTZER; ROBERT ADOLPH; MATTHEW HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a CIQ; OPEN DRIVES, INC.; DAVID BUSS; MARLIN PRAGER; JOEL WHITLEY; IAG FUND II, LP a/k/a IAG CAPITAL PARTNERS; IAG CAPITAL HOLDINGS II, LCC a/k/a IAG CAPITAL PARTNERS; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. 5:23-cv-00849-SVK<br><br>**IAG INVESTORS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Date:　　　　May 7, 2024<br>Time:　　　　10:00 a.m.<br>Courtroom:　　6, 4th Floor<br>Judge:　　　　Hon. Susan van Keulen |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................2

 A. Sylabs Fails to Address, Much Less Rebut, the Deficiencies in its Trade Secret Misappropriation Claims Against the IAG Investors.....................................2

 B. Sylabs Cannot Escape Any of the Four Critical Faults in its CFAA Claim...............5

 C. Sylabs Cannot Salvage its RICO Claims. ..................................................................8

 D. Sylabs' Remaining State-Law Claims Fail. ................................................................9

 E. Sylabs' Opposition Illustrates Why its Claims Warrant Dismissal with Prejudice. ...................................................................................................................10

III. CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Al-Ahmed v. Twitter, Inc.*,
   648 F. Supp. 3d 1140 (N.D. Cal. 2023) ...................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................1

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020) .....................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................1

*Breier v. N. Cal. Bowling Proprietors' Ass'n*,
   316 F.2d 787 (1963) ................................................................................................................10

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   369 F. Supp. 3d 983 (C.D. Cal. 2019) .......................................................................................9

*Cnty. of Marin v. Deloitte Consulting LLP*,
   836 F. Supp. 2d 1030 (N.D. Cal. 2011) ....................................................................................8

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
   No. 17-CV-07243-SVK, 2018 WL 11361335 (N.D. Cal. Nov. 19, 2018) ................................9

*Heineke v. Santa Clara Univ.*,
   2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ............................................................................5

*Henry v. Napa Valley Unified*,
   No. 16-CV-04021-MEJ, 2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) .................................5, 8

*Herguan Univ. v. Immigr. & Customs Enf't*,
   258 F. Supp. 3d 1050 (N.D. Cal. 2017) ..................................................................................11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   639 F. Supp. 3d 944 (N.D. Cal. 2022) ......................................................................................6

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ...................................................................................................7

*Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*,
   817 F. App'x 380 (9th Cir. 2020) ............................................................................................10

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ........................................................................................7

*Ogbazghi v. Ditech Fin. LLC*,
  No. 18-CV-00004-SVK, 2018 WL 8344841 (N.D. Cal. Apr. 10, 2018) ...................................9

*Resh, Inc. v. Skimlite Mfg. Inc.*,
  666 F. Supp. 3d 1054 (N.D. Cal. 2023) ...........................................................................4

*Song v. Drenberg*,
  No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019) ........................................5

*Van Buren v. United States*,
  593 U.S. 374 (2021) ...........................................................................................7

*West v. Ronquillo-Morgan*,
  526 F. Supp. 3d 737 (C.D. Cal. 2020) ...........................................................................6

**STATE CASES**

*Angelica Textile Servs., Inc. v. Park*,
  220 Cal. App. 4th 495 (2013) ...................................................................................10

**FEDERAL STATUTES**

18 U.S.C. § 1030 ...............................................................................................5, 7, 8

18 U.S.C. § 1343 ...................................................................................................8

18 U.S.C. § 1961(1) .................................................................................................9

**FEDERAL RULES**

Federal Rule of Civil Procedure 9(b) ................................................................................8

## I.  INTRODUCTION

Sylabs' Opposition (ECF No. 73; "Opposition" or "Opp."), despite being a full five pages overlength, includes almost no meaningful responses to any of the myriad fatal flaws presented in the IAG Investors' Motion to Dismiss the First Amended Complaint ("Motion" or "Mtn.").[1]  The Opposition does not cite, much less distinguish, even a single case on which the IAG Investors' arguments rely, and it fails to respond to (and thereby concedes) several such arguments.  It also fails to show that the IAG Investors ever viewed any trade secrets, accessed Sylabs' Google Drive without permission, or otherwise acted as anything other than good-faith investors.  Nor could Sylabs make such a showing: The only non-conclusory allegations about the IAG Investors in Sylabs' 238-page FAC and its 74 exhibits are that Whitley received an email, viewed some corporate documents, and downloaded a budget, and that IAG invested in CIQ.  *See* FAC ¶¶ 49, 119, 256, 307(c), 307(s), 311, 333-34.

Instead, Sylabs' Opposition evidences a fundamental misunderstanding about how motions to dismiss work and ignores the Court's directives in the Order dismissing the original Complaint.  For instance, even though this Court has *already* admonished Sylabs for citing the defunct "no set of facts" standard, *see* Order Granting Defendants' Motion to Dismiss, ECF No. 59 at 6 n.6 (Dec. 19, 2023) ("Order"), Sylabs continues to rely on the exact same body of pre-*Twombly* case law to argue that it "is entitled to conduct written discovery and take depositions."  Opp. at 1.  Moreover, Sylabs repeatedly conflates this Court's reasonable decision not to *reach* the (many) alternative reasons for dismissing Sylabs' original Complaint with a *denial* of those alternative bases for dismissal.  But the truth is clear.  Nothing in the Court's prior Order does (or could) relieve Sylabs of its obligation to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And Sylabs has not come close to pleading any plausible claims against the IAG Investors.

---

[1] The terms "IAG," "IAG Investors," "FAC," and "Kurtzer" have the same meanings in this Reply as in the IAG Investors' Motion.

Sylabs has now had two chances to plead plausible claims, and it has failed both times. Its failure to follow the clear guidance from this Court—including that Sylabs needed to identify "specific, substantive actions" by the IAG Investors, describe "technological harm" resulting from their alleged intrusions, and base its state-law claims on something distinct from the "alleged looting of Sylabs' servers," Order at 7, 12, 15—illustrates that further amendment of its 238-page FAC would be futile. This Court should dismiss all of Sylabs' claims against the IAG Investors with prejudice.

## II.   ARGUMENT

### A.   Sylabs Fails to Address, Much Less Rebut, the Deficiencies in its Trade Secret Misappropriation Claims Against the IAG Investors.

The IAG Investors' Motion showed, in exacting detail, why none of the 14 documents Whitley allegedly viewed on Sylabs' Google Drive could possibly constitute Sylabs' trade secrets and why neither Whitley nor IAG knew or should have known that any documents contained trade secrets. *See* Mtn. at 5-9. Sylabs' Opposition does not meaningfully engage with these meritorious arguments. Indeed, Sylabs does not even cite a single case in defense of these claims. Sylabs instead spends more than a dozen pages misinterpreting this Court's prior dismissal Order and parroting conclusory allegations that are entirely besides the point. *See* Opp. at 11-23. None of these tactics can save its trade secret misappropriation claims.

As an initial matter, Sylabs cannot escape the flaws in its FAC identified in the IAG Investors' Motion simply because the Court relied on more general reasons to dismiss its original Complaint. Its argument that this Court "did not identify any deficiencies relating to Sylabs' failure to allege that [the IAG] defendants 'acquired any trade secrets' or that these defendants 'should have known that any documents contained improperly-obtained trade secrets,'" Opp. at 11, ignores that this Court "dismiss[ed] *all* claims asserted against" the IAG Investors, including the trade secret claims, because of "[t]he Complaint's conclusor[y] allegations and dearth of supporting facts." Order at 8. The absence of allegations that the IAG Investors acquired any trade secrets, or knew about any trade secrets, was encompassed within that dismissal. And in any event, a defendant may "bring motions to dismiss in response to an amended pleading based on

1  arguments previously made in a prior motion to dismiss," or even "raise new arguments that were
2  not previously made." *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2013 WL
3  5487420, at *4 (N.D. Cal. Sept. 30, 2013).
4      Next, Sylabs attempts to defend its trade secret claims by relying on the same allegations
5  that the Court found *insufficient* to sustain a claim against the IAG Investors in the original
6  Complaint. For instance, Sylabs' Opposition repeats this Court's summary of the original
7  Complaint and the contents of the email Kurtzer allegedly sent to Whitley, Opp. at 12-13—but the
8  Court already concluded that these allegations could not support Sylabs' claims against the IAG
9  Investors when it dismissed the original Complaint. *See* Order at 7-8. Likewise, the Court's
10 statement that Kurtzer "provided IAG and Defendant Whitley 'with access to the Sylabs Server, in
11 particular to all documents relating to Fuzzball,'" *id.* at 3 (quoting Compl. at ¶¶ 150-51), does
12 nothing to help Sylabs now. *See* Opp. at 13. Not only did the Court hold that this conclusory
13 allegation was insufficient to show trade secret misappropriation by the IAG Defendants in the
14 original Complaint, *see* Order at 7-8, *see also* IAG Defendants' Motion to Dismiss Complaint,
15 ECF No. 39, at 11-12, 16 (Aug. 28, 2023), it also *does not appear* in the FAC. Indeed, that
16 allegation is now contradicted by the FAC and its exhibits, which list just 14 corporate documents
17 that Whitley allegedly viewed, FAC ¶ 333, and do *not* plausibly show that any of those 14
18 documents contain Fuzzball or any other purported trade secret. *See* Mtn. at 6-7.
19     Sylabs' arguments about a hypothetical conspiracy between the defendants likewise do not
20 and cannot show that the *IAG Investors* acquired, disclosed, or used information rising to the level
21 of a trade secret. *See, e.g.*, *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (outlining
22 elements of trade secret misappropriation claim). Sylabs' argument relies on the allegation that
23 the IAG Investors received its Corporate Records, *see* Opp. at 14-15, but Sylabs explicitly
24 excludes such records from the definition of its alleged trade secrets. FAC ¶¶ 51(b), 623; *see also*
25 Mtn. at 7. Sylabs also argues that "IAG Defendants and their co-defendants agreed to engage in
26 unauthorized access," conspired "to gather up all of Sylabs' email addresses for contacts,"
27 "engag[ed] in budgetary planning" for "NewCo," and "made significant and ongoing unlawful
28 cyber intrusions into Sylabs' Server," including "after defendants Greg Kurtzer, Adolph, Hayden,

Julia Kurtzer, and Fong left their employment with Sylabs." Opp. at 14-16 (emphasis omitted). But again, none of these alleged activities involve any of the technical trade secrets this Court has identified.[2] *See* Order at 9-11. What's more, the IAG Investors are connected to these alleged activities not through any "specific, substantive actions," *id.* at 7, but through conclusory allegations and improper group pleading against "Defendants" or a laundry list thereof. *See* FAC ¶¶ 34, 37-38, 50, 52-53. These group allegations cannot support "a claim for relief that is plausible against" the IAG Investors. *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023); *see also Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (replacing "Defendants" with a list of all defendants does not cure group pleading problems).[3]

Sylabs also spends several pages discussing the deficiencies that this Court identified with its trade secret claims in dismissing its original Complaint, *see* Opp. at 17-22, but nothing in this discussion helps Sylabs survive the instant Motion. As to the deficiency with any SIF Technology trade secret, *see* Opp. at 17-19, Sylabs not only fails to cure it—as Sylabs identifies no information that is not either disclosed in the SIF patent or encompassed by its Armored Containers trade secret—but it also fails to allege that the IAG Investors ever acquired, used, or disclosed this trade secret. *See* Mtn. at 6 n.5; *see also* CIQ Defendants' Motion to Dismiss FAC, ECF No. 67, at 5-6 (Feb. 23, 2024). Similarly, Sylabs recounts its efforts to protect its trade secrets, *see* Opp. at 20-22, but the IAG Investors do not challenge the adequacy of those allegations.

---

[2] This is particularly true of the "CIQ Budget," as Sylabs' public disclosure of a similar budget, created the same day, undermines any inference that the information within the CIQ Budget is secret. *See* Mtn. at 7; FAC Ex. 56.

[3] Further, some of the group allegations upon which Sylabs relies cannot possibly apply to the IAG Investors. For example, Sylabs' allegation that "between April 2, 2020 and April 15, 2020, Defendants made significant and ongoing unlawful cyber intrusions into Sylabs' Server," FAC ¶ 54, *see also* Opp. at 16, is contradicted by more specific allegations that Whitley only viewed 14 documents and downloaded one, all on March 13, 2020. FAC ¶¶ 254, 256, 307(r)-(s). Similarly, the allegation that a list of defendants "access[ed] and edit[ed] the CIQ Budget," FAC ¶ 51(a), *see also* Opp. at 15, is contradicted by the cited exhibits, which do *not* show that Whitley or IAG ever accessed or edited a document called the "CIQ Budget." *See* FAC Ex. 44.

In sum, Sylabs' Opposition points to *no* allegations showing that Whitley or IAG ever accessed, much less used or disclosed, any part of its purported trade secrets.  And it does not even attempt to rebut the IAG Investors' argument that they had no expectation of receiving any trade secrets.  *See* Mtn. at 8; *see also, e.g.*, *Henry v. Napa Valley Unified*, No. 16-CV-04021-MEJ, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016) ("Typically, failure to address in an opposition arguments raised in an opening motion, as Plaintiff did here, constitutes waiver or concession of the argument.").  Sylabs' trade secret misappropriation claims against Whitley and IAG must be dismissed.

### B.  Sylabs Cannot Escape Any of the Four Critical Faults in its CFAA Claim.

The IAG Investors' Motion identified four independent grounds for dismissal of Sylabs' CFAA claim: Sylabs fails to specify the applicable CFAA subsection, did not meet the statute of limitations, alleges only authorized access, and identifies no loss or harm attributable to the IAG Investors.  *See* Mtn. at 9-13.  Once again, Sylabs' Opposition does not meaningfully engage with any of these arguments, and it certainly cannot rebut them.

*First,* Sylabs cannot change the fact that its FAC does not identify the applicable subsections of the CFAA under which it sues.  For the first time in its Opposition, Sylabs identifies *some* "specific provisions," which it says "*include* 18 U.S.C. § 1030(a)(2), 18 U.S.C. § 1030(a)(4), 18 U.S.C. § 1030(a)(5), 18 U.S.C. § 1030(e)(6), and 18 U.S.C. § 1030(e)(8)."  Opp. at 23 (emphasis added).  But "the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Song v. Drenberg,* No. 18-CV-06283-LHK, 2019 WL 1998944, at *5 (N.D. Cal. May 6, 2019) (quoting *Heineke v. Santa Clara Univ.,* 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) (alteration omitted)).  Further, Sylabs does not even claim to identify an exhaustive list of the CFAA provisions at issue, so the IAG Investors still do not have "notice of what [they] must defend[] against."  *Id.* at *6.  Nor does Sylabs identify which part of § 1030(a)(5)—which contains three separate offenses in its three subsections—is at issue.  Finally, subsections 1030(e)(6) and (e)(8) are not causes of action, but statutory definitions, so Sylabs cannot sue under either of these provisions.  18 U.S.C. § 1030(e)(6) (defining "exceeds authorized access"); § 1030(e)(8) (defining "damage").

***Second,*** Sylabs' claims are time barred. Sylabs argues that "IAG Defendants failed to mention that in the FAC Sylabs has alleged that Sylabs did not discover Defendants' cyber theft (that Defendants themselves concealed) until April 6, 2021." Opp. at 23 (emphasis omitted). Not so. The IAG Investors Motion not only mentioned this allegation, but explained in depth why it was insufficient to evade the statute of limitations. *See* Mtn. at 9-11.

Sylabs' argument that there is a "factual dispute" about the statute of limitations that "may be resolved only by a trier of fact, and not through a Rule 12(b)(6) motion," Opp. at 24, is unavailing. "A claim may be dismissed as untimely" on a motion to dismiss "when the running of the statute [of limitations] is apparent on the face of the complaint." *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 741 (C.D. Cal. 2020) (alteration in original) (citation omitted). Further, for a plaintiff to rely on the delayed discovery rule to evade the statute of limitations—as Sylabs seeks to do here—it "must specifically plead facts to show . . . the inability to have made earlier discovery despite reasonable diligence." *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1156 (N.D. Cal. 2023) (citation omitted). Sylabs has not pleaded such facts. To the contrary, its allegations that Fuzzball was released to open-source on March 23, 2020, FAC ¶ 363, as well as the existence of the Release Agreement with Kurtzer,[4] demonstrate that a "reasonable person in [Sylabs'] situation" would have inquired into and discovered "the nature and cause of [its] injury" long before Sylabs' alleged discovery date. *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 969 (N.D. Cal. 2022) (citations omitted).

***Third,*** Sylabs cannot escape its own allegations that the IAG Investors had technical authorization to access Sylabs' server. Sylabs parrots its allegations that the IAG Investors were

---

[4] Sylabs argues that the Court should not grant the IAG Investors' Motion on the basis of the Release. *See* Opp. at 6-9. But the IAG Investors do not argue, at this stage in the case, that Sylabs' claims against them are covered by the Release. Rather, they argue that the Court should take judicial notice of the Release because it would have placed a reasonable person in Sylabs' shoes on inquiry notice of any alleged misconduct. *See* Mtn. at 3 n.4, 10. Because this argument rests only on the existence of the Release, and not disputed matters like its "scope and impact," Order at 7, judicial notice is appropriate. *See, e.g.*, *Al-Ahmed*, 648 F. Supp. 3d at 1157-58 (concluding, from document incorporated by reference, that defendant sent an email that should have put plaintiff on notice of claim, and dismissing CFAA count, among others, as time barred).

"external threats"[5] and argues that they "were not Sylabs' employees, agents, contractors, or other status that would give implied authorization to access Sylabs' Computer Systems." Opp. at 24 (emphasis omitted). But the FAC unambiguously alleges that Kurtzer "changed the permissions" on the files that Whitley allegedly viewed and "granted [him] permission" to access them. FAC ¶¶ 51(b), 255. Because Whitley "received permission" to access these documents, he did not act "without authorization." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009).

Nor does the FAC allege that the IAG Investors exceeded any authorized access. Sylabs argues, based on the Tarbell declaration, that some unidentified "Defendants' access to Sylabs' Server for the purpose of deleting and trashing Sylabs' data, files, and directories exceeded any authorized access they might have enjoyed under, for example, the IP Assignment/NDA Agreements." Opp. at 25 (emphasis omitted). But the FAC contains no allegations that Whitley or IAG deleted any of Sylabs' files or folders. Further, the Supreme Court has made clear that "an individual . . . 'exceeds authorized access' by accessing a computer 'with authorization' and then obtaining information he is 'not entitled so to obtain.'" *Van Buren v. United States*, 593 U.S. 374, 389 (2021) (quoting 18 U.S.C. §§ 1030(a)(2), (e)(6)). Because Whitley only viewed documents that he was "entitled" to view, per Kurtzer's authorization, Sylabs' argument that the IAG Investors exceeded their authorized access fails.

***Fourth,*** Sylabs fails to identify any damage or loss recognized by the CFAA and attributable to the IAG Investors. Sylabs argues that "IAG Defendants' trashing or deleting files and folders constitutes" CFAA damage. Opp. at 25; *see also id.* at 26 n.6. But again, the FAC does not contain a single allegation that *Whitley or IAG* trashed or deleted files or folders. Nor does Sylabs argue that the 14 documents Whitley allegedly viewed or the single document he allegedly downloaded were unavailable or corrupted due to those actions. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) (explaining that there is no CFAA damage if the defendant did not "damage[] any systems or destroy[] any data"). Accordingly,

---

[5] At other points in its Opposition, Sylabs illogically refers to the IAG Investors as "insider threats," Opp. at 4, 7, which is contrary to its allegations in the FAC. *See* FAC ¶¶ 254-55, 263.

Sylabs has failed to show *any* amount of damage—much less "an amount that exceeds $75,000," Opp. at 26—attributable to the IAG Investors.

Nor does Sylabs show CFAA loss. Indeed, its Opposition does not even acknowledge that damage and loss are separate requirements under the CFAA. *Compare* 18 U.S.C. § 1030(e)(8) (defining "damage") *with id.* § 1030(e)(11) (defining "loss"). Nor did it respond to the IAG Investors' arguments that its litigation costs do not qualify as CFAA loss, or that the limited alleged actions against Whitley—that he viewed 14 files, downloaded one, and deleted zero, *see* FAC ¶¶ 254, 256—could have caused Sylabs to incur any investigation or remediation costs, much less $5,000 worth of costs. *See* Mtn. at 12-13. Sylabs' failure to respond "constitutes waiver or concession of the argument." *Henry*, 2016 WL 7157670, at *4.

For all four of these reasons, Sylabs has not stated a CFAA claim.

**C.     Sylabs Cannot Salvage its RICO Claims.**

Sylabs also cannot cure the deficiencies in its RICO claims. Sylabs' Opposition relies on the premise that the FAC "cure[s] the pleading deficiencies identified in the MTD Order regarding Count I, the DTSA," which it asserts "satisfies the predicate acts" and "cure[s] the deficiencies in RICO Counts IV and V." Opp. at 27. But as the IAG Investors demonstrate in their Motion, *see* Mtn. at 5-9, and in this Reply, *see* § II.A, *supra*, Sylabs has not pleaded a DTSA claim against the IAG Investors. Sylabs therefore did not cure the defects the Court identified in its Order dismissing the original Complaint.

Likewise, Sylabs' attempt to drum up another predicate act fails. Sylabs' passing reference to "federal criminal statutes, including, for example: 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1030(a)(4) (Computer Fraud), 18 U.S.C. § 1030(a)(2) (Theft of Information from a Computer), 18 U.S.C. § 1030(b) (Conspiring to Violate the CFAA), and 18 U.S.C. § 1030(a)(5)(B) (Recklessly Damaging a Computer)," Opp. at 27 (emphasis omitted) (citing FAC ¶¶ 90, 545), is insufficient under well-established pleading standards. Sylabs' Opposition completely ignores the IAG Investors' argument that it has not sufficiently alleged wire fraud—much less under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Mtn. at 13 n.6; *see also, e.g.*, *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1037 (N.D. Cal. 2011)

("[Rule 9(b)'s] heightened pleading standard applies to RICO claims alleging fraud."). Sylabs also ignores that CFAA claims are not predicate acts under the RICO statute. Mtn. at 13 n.6; *see also* 18 U.S.C. § 1961(1).

Sylabs also fails to address the fact that it has not alleged either a pattern of racketeering activity or a RICO conspiracy. *See* Mtn. at 13-14. Once again, Sylabs wrongly assumes that this Court implicitly denied the original Motion to Dismiss on these grounds simply because it explicitly granted it on other grounds. But it is entirely proper for the Court to not reach all arguments in a motion to dismiss where one ground is sufficient for dismissal. *See, e.g.*, *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-CV-07243-SVK, 2018 WL 11361335, at *23 (N.D. Cal. Nov. 19, 2018) ("[B]ecause Plaintiffs have failed to state a claim against the individual defendants as described above, the Court does not reach this [additional] argument."); *Ogbazghi v. Ditech Fin. LLC*, No. 18-CV-00004-SVK, 2018 WL 8344841, at *3 & n.3 (N.D. Cal. Apr. 10, 2018) ("Because . . . judicial estoppel and res judicata . . . would bar Plaintiff's claims, the Court did not reach the other arguments in Defendant's Motion to Dismiss."). Any amended complaint must still include sufficient factual allegations to state a claim—and because Sylabs cannot point to any allegations in the FAC supporting a pattern of racketeering activity or a RICO conspiracy, its RICO claims necessarily fail.

**D.  Sylabs' Remaining State-Law Claims Fail.**

Sylabs does not address the case law cited by the IAG Investors explaining that its remaining state-law claims are preempted by CUTSA. *See* Mtn. at 14-15. Instead, Sylabs selectively quotes this Court's Order for the proposition that CUTSA "supersedes other civil remedies based upon **misappropriation of a trade secret**" and argues that, if its claims "are not based upon **misappropriation of trade secrets** then Sylabs will have cured the pleading deficiencies as to Defendants' preemption based challenges to Counts VI through XI." Opp. at 28. But Sylabs Opposition, like its FAC, ignores that "CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, <u>even if that information does not meet the statutory definition of a trade secret</u>." Order at 14 (quoting *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019)).

Because all of Sylabs state-law claims are premised on the taking of Sylabs' business information, *see* Opp. at 29 (listing the "assets and property" at issue), Sylabs' claims remain preempted unless, as this Court previously held, "the state-law claims 'are independent and based on facts distinct from the facts that support the misappropriation claim." Order at 15 (quoting *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013)). Like its original Complaint, Sylabs' FAC "predicates its CUTSA and non-CUTSA claims on the same underlying conduct" (i.e., alleged theft from Sylabs' servers). *Id.*; *see* FAC ¶¶ 622-24, 628-34, 640, 642, 645, 648, 661-63, 666-77, 679-92. Therefore, the state-law claims against the IAG Investors are preempted and must be dismissed.[6]

### E. Sylabs' Opposition Illustrates Why its Claims Warrant Dismissal with Prejudice.

Finally, Sylabs requests leave to amend its Complaint, but the Court should decline to grant it. Sylabs argues—again, relying on case law that predates *Twombly* and *Iqbal*—that it should be allowed to amend if "it appears at all possible that [it] can correct the defect" in its claims. Opp. at 30 (quoting *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (1963)). But as this Court already recognized, leave to amend is properly denied "when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." Order at 6 (quoting *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020)). This case fits precisely within this rule. *See* Mtn. at 15-16.

Sylabs' Opposition showcases its repeated failure to heed the guidance in this Court's Order dismissing the original Complaint, underscoring the futility of amendment:

---

[6] Sylabs separately defends its UCL claim, which, in addition to being preempted, also fails because Sylabs lacks UCL standing, because the predicate claims fail, and because Sylabs identifies no fraudulent business practices. *See* Mtn. at 15 n.7; CIQ Defendants' Motion to Dismiss FAC, ECF No. 67 at 16-20. Sylabs does not engage with the substance of these arguments, instead arguing that "the Court did not identify any such pleading deficiency in its MTD Order." Opp. at 29. But again, the fact that the Court did not need to reach this argument to dismiss the UCL claim does not mean these arguments are not meritorious.

- This Court's Order explained that, in order to state *any* claims against the IAG Investors, Sylabs needed "allegations of specific, substantive actions performed by" them. Order at 7. Yet Sylabs' FAC still does not plead *any* "specific, substantive actions" that the IAG Investors took to acquire trade secrets, intrude into Sylabs' Google Drive without permission, or join any alleged conspiracy. And its Opposition attempts to minimize, rather than comply with, this requirement. See Opp. at 11-12.

- Relatedly, this Court's dismissal of the original Complaint's trade secrets claims against the IAG Investors necessarily entailed a finding that the existing allegations were insufficient to support those claims. See Order at 2-4, 7-8. But Sylabs continues to rely on these same allegations to support its trade secret misappropriation claims against the IAG Investors. See Opp. at 12-13.

- As to the CFAA claim, this Court explained that "the CFAA does not permit recovery for violations that result in . . . non-technological harm," Order at 12—but Sylabs still tries to assert CFAA claims against the IAG Investors without alleging that they caused any technical harm.

- As to the RICO claims, this Court explained that "Sylabs does not sufficiently allege any DTSA violations," such that there were no predicate acts. Order at 13. Yet Sylabs' FAC still attempts to plead a RICO claim against the IAG Investors, even though it cannot show any DTSA violations by them.

- As to the state-law claims, this Court explained that "the alleged wrongdoing underlying [Sylabs'] state-law claims mirror[ed] the alleged wrongdoing underlying its CUTSA claim," Order at 15, placing Sylabs on notice that it had to plead some *different* wrongdoing to support its state-law claims. But Sylabs continues to base its state-law claims solely on misappropriation of information that does not rise to the level of a trade secret, *see* Opp. at 28-29, in direct contravention of this Court's Order.

Sylabs' failure to follow this Court's clear guidance to plead actionable claims illustrates that it *cannot* do so, and that there is no point in giving Sylabs leave to amend again. *See, e.g.*, *Herguan Univ. v. Immigr. & Customs Enf't*, 258 F. Supp. 3d 1050, 1074 (N.D. Cal. 2017) (granting motion

to dismiss with prejudice where first amended complaint "did not cure the deficiencies identified in Defendants' original motion to dismiss").

Nor should this Court credit Sylabs' assertion that "any deficiencies would be easily cured" by the "enormous amount of evidence in this Action." Opp. at 30. Sylabs has disclosed thousands of pages of "evidence" in the 74 exhibits to its FAC—but exactly none of it supports a claim against the IAG Investors. To the contrary, even after Tarbell's "comprehensive review and analysis of the Audit Logs," Opp. at 4, all Sylabs can say about the IAG Investors is that Whitley received an email, viewed some corporate documents, and downloaded a budget. Sylabs' Opposition does not explain what additional evidence Sylabs could possibly offer, on top of the mountain of existing exhibits, to support *any* claims against the IAG Investors. Because "an enormous amount of evidence" shows only that the IAG Defendants did nothing wrong—and because the IAG Investors would be severely and unduly prejudiced by having to defend against Sylabs' meritless claims in another round of briefing, *see* Mtn. at 16—the Court should not hesitate to dismiss Sylabs' claims against them with prejudice.

## III.   CONCLUSION

For the foregoing reasons, and for the reasons stated in the IAG Investors' Motion, the Court should dismiss Sylabs' FAC against the IAG Investors with prejudice.

DATED: April 5, 2024                MUNGER, TOLLES & OLSON LLP

By: */s/ Miriam Kim*
CAROLYN HOECKER LUEDTKE
carolyn.luedtke@mto.com
MIRIAM KIM
miriam.kim@mto.com
TAYLOR L. BENNINGER
Taylor.Benninger@mto.com

Attorneys for JOEL WHITLEY, IAG FUND II, LP, and IAG CAPITAL HOLDINGS II, LLC