**PETER D. LEPISCOPO, ESQ.   C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net

Counsel of Record for Plaintiff, **SYLABS, INC.**

LEPISCOPO & ASSOCIATES LAW FIRM

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, | Case No.  5:23-cv-00849-SVK |
| Plaintiff, | **SYLABS, INC.'S SECOND AMENDED COMPLAINT FOR:** |
| v. | |
| **GREGORY ROSE** a/k/a **GREGORY M. KURTZER**; **JULIA ROSE** a/k/a **JULIA KURTZER**; **ROBERT ADOLPH**; **MATTHEW HAYDEN**; **ERIN FONG**; **CTRL IQ, INC.** d/b/a **CIQ**; **OPEN DRIVES, INC.**; **DAVID BUSS**; **MARLIN PRAGER**; **JOEL  WHITLEY**; **IAG FUND II, LP a/k/a IAG CAPITAL PARTNERS; IAG CAPITAL HOLDINGS II, LLC a/k/a IAG CAPITAL PARTNERS**; and **DOES 1** through **50**, inclusive, | **1.  VIOLATION OF DEFEND TRADE SECRETS ACT;** <br><br> **2.  VIOLATION OF COMPUTER FRAUD & ABUSE ACT; AND** <br><br> **3.  VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT.** |
| Defendants. | **DEMAND FOR TRIAL BY JURY** |

Pursuant to the Court's May 8, 2024, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("2nd MTD Order"), Dkt. 80, which granted leave to amend, plaintiff, Sylabs, Inc. ("Sylabs" or "Plaintiff"), hereby submits this Second Amended Complaint ("Complaint") to cure the deficiencies identified by the Court in the 2nd MTD Order. *See* Fed. R. Civ. P. 15(a)(2).

# I.
## JURISDICTION AND VENUE

1.      The Court has subject-matter jurisdiction of this case ("Action") under 28 U.S.C. §§ 1331 and 1338: it is a civil action arising under the laws of the United States – specifically 18 U.S.C. § 1831 *et seq*., 18 U.S.C. § 1836(b), 18 U.S.C. § 1030, 18 U.S.C. § 1839, 18 U.S.C. § 1962(c), and 18 U.S.C. § 1962(d).

2.      The Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

3.      The Court further has jurisdiction over this Action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and an amount in controversy that exceeds $75,000.

4.      Personal jurisdiction exists specifically over all the defendants because they have each committed acts of misappropriation in this District and the State of California, because they each directly and/or through their officers, directors, investors and their employees, subsidiaries, divisions, groups, or distributors, advertised, marketed, used, offered for sale, imported for sale, and/or sold and continued to sell the products at issue in this Action containing the stolen and misappropriated technology in this District and the State of California, and placed those products in the stream of commerce with the expectation and knowledge that they will be purchased in this District and the State of California. Further, the defendants' theft and misappropriations involved certain trade secrets that were invented in, stored in, or accessed from this District and the State of California. As such, defendants have conspired to and committed violations of various California and federal laws in this District.

5.      Venue is proper in this district ("District") because Defendants committed the complained of acts in this District and are located, reside, are officers and/or directors of other defendants, or do business in this District. 12 U.S.C. § 5564(f).

## II.
## PRELIMINARY STATEMENT RE: CURING DEFICIENCIES
## IDENTIFIED IN THE 2nd MTD ORDER

6.    Sylabs would like to draw the Court's attention once again to the big picture which coalesces when one takes a step back to survey the facts of this Action. Throughout their Motions, Defendants' strategy has consisted of attempts to place each defendant (or subgroup) in a sanitized box, separate and apart from the other Defendants so each could opine, "Look here, Sylabs cannot allege that I have done anything wrong." Under Defendants' rhetoric, the getaway driver in a bank robbery could argue, "I am merely driving a car and I have a valid license." Of course, this way of storytelling evades the fact that overt acts of individuals, when combined and focused on a scheme, increase the likelihood of success. In this regard, the Court should remember and analyze this Action through the prism of the wise words of Justice Frankfurter in *Callahan v. United States*, 364 U.S. 587, 593-594 (1961) (emphasis added):

> "This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement -- partnership in crime -- presents a greater potential threat to the public than individual delicts.  Concerted action both **increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality**.  Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish."

7.    As alleged herein, because Defendants were in league, their conspiracy was methodical, well executed, and successful. For example, the Court need look no further than the coordinated and mass exodus Defendants made from Sylabs to launch defendant CIQ. The homogenized effect of their separate expertise, actions, and plans resulted in the successful commandeering of Sylabs' Trade Secrets, assets, corporate secrets, and customers, all of which instantaneously established defendant CIQ as a turnkey startup—thus, they immediately raised $33M. It is their concerted action that resulted in the success

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

of Defendants' conspiracy—a fabulous success—and it is exactly because of this concerted action that Defendants have all violated the DTSA, CFAA, and CUTSA.

8.    Further, this section is a general statement regarding the amended allegations designed to cure the pleading deficiencies of the FAC identified by the Court in its 2nd MTD Order, along with a discussion of Exhibits filed in support of this Complaint.[1]

9.    In the 2nd MTD Order, the Court held that Sylabs has stated claims under the DTSA and CUTSA against defendants CIQ, Greg Kurtzer, and Matthew Hayden but dismissed these claims against the remaining defendants with**out** leave to amend. *See* Dkt. 80, p. 9, ll. 22-26, and details at Dkt. 80, p. 6, l. 12 through p. 9, l. 26.

10.    As to the CFAA claim (Count II) in the 2nd MTD Order, the Court dismissed that claim against all Defendants **<u>with</u>** leave to amend. *See* Dkt. 80, p. 10, ll. 25-27, p. 18, ll. 5-8, and p. 20, ll. 16-17:

> "• **Violations Of The CFAA.** Leave to amend. The FAC's deficiencies on this claim (to the extent identified in this Order) stem from Sylabs' failure to identify the specific provisions of the statute that Defendants' allegedly violated. Sylabs can easily cure that deficiency in an amended pleading."

11.    Accordingly, in this Complaint Sylabs will amend Count II to satisfy the pleading requirements to state a claim under the CFAA against all Defendants.

12.    As to Counts IV through XXI, inclusive, in the 2nd MTD Order the Court dismissed some without leave to amend and others with leave to amend. However, by way

---

[1]    Hereinafter all citations to "Exhibit" or "Exh." shall refer to the exhibits to this Complaint, all of which are true and correct copies of their originals. So, for example, Exhibit 1 would be cited as "Exh. 1" or "Exhibit 1." Pursuant to the Court's Admonishment in its 2nd MTD Order, Dkt. 80, p. 19, ll. 12-24, Sylabs has eliminated 176 pages from the FAC; and will not file all Exhibits 1-74, but rather limit filed exhibits to following: Mr. Tabell's Declaration & C.V. (Exhs. 1 & 38), the Patent documents (Exhs. 37, 39-43, 54 & 55), Whitley email (Exh. 46), Sylabs' Employee Handbook & NDAs (Exhs. 47-52), CIQ Budget (Exh. 56), and SBIR emails (Exhs. 58, 59, 61, 62, & 65).

LEPISCOPO & ASSOCIATES LAW FIRM

of this Complaint, Sylabs has chosen to amend <u>only</u> Count II, the CFAA claim, but not the remaining claims alleged in Counts IV through XXI, inclusive.

13.     Finally, the Court has already found that Sylabs' claims alleged under DTSA (Count I) and CUTSA (Count III) are sufficiently pleaded to state claims against defendants CIQ, Greg Kurtzer, and Matthew Hayden. Accordingly, in this Complaint Sylabs has provided facts sufficient to cure the pleading deficiencies identified in the 2nd MTD Order so the Court can determine that Sylabs has stated a claim under CFAA (Count II) against defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and IAG Capital Holdings II.

## III.
## PLAINTIFF

12.     Sylabs, Inc. is a Delaware corporation with its headquarters located in Reno, Nevada.

## IV.
## DEFENDANTS
### DEFENDANTS CIQ, GREG KURTZER, JULIE KURTZER, ADOLPH, HAYDEN, AND FONG

13.     Defendant, Gregory Rose a/k/a Gregory M. Kurtzer ("Greg Kurtzer"), is an individual and resident of the State of California. Defendant, Julia Rose a/k/a Julia Kurtzer ("Julia Kurtzer"), is an individual and resident of the State of California and is defendant Greg Kurtzer's wife. These defendants reside in this District and the acts complained of herein were committed by them and damages suffered by Sylabs occurred in this District.

14.     Defendant, Robert Adolph ("Adolph"), is an individual and resident of the State of California. Adolph resides in this District and the acts complained of herein were committed by him and damages suffered by Sylabs occurred in this District.

15.     Defendant, Matthew Hayden ("Hayden"), is an individual and resident of the State of California. Hayden resides in this District and the acts complained of herein were committed by him and damages suffered by Sylabs occurred in this District.

LEPISCOPO & ASSOCIATES LAW FIRM

16.     Defendant, Erin Fong ("Fong"), is an individual and resident of the State of California. Fong resides in this District and the acts complained of herein were committed by her and damages suffered by Sylabs occurred in this District.

17.     Defendant, CTRL IQ, Inc. dba CIQ ("CIQ"), is a Delaware corporation, which was formed in Delaware on April 1, 2020, and is registered and qualified to do business in California, with its principal address located in this District at 1191 Solano Avenue, Unit 6687, Albany, California 94706.

### DEFENDANTS OPEN DRIVES, BUSS, AND PRAGER

18.     Defendant, Open Drives, Inc. ("Open Drives"), is a Delaware corporation with its principal address located at 10602 Virginia Avenue, Culver City, California 90232.

19.     Defendant, David Buss ("Buss"), is an individual and resident of the State of California.

20.     Defendant, Marlin Prager ("Prager"), is an individual and resident of the State of California.

**21.**     Sylabs is informed and believes and based upon such information and belief alleges that defendants Buss and Prager were acting upon the instructions and on behalf of defendant Open Drives to enrich defendant Open Drive, and defendant Open Drives authorized and ratified defendants Buss and Prager's actions as herein alleged.

### IAG DEFENDANTS AND WHITLEY

22.     Upon information and belief, Defendants, IAG Fund II, LP a/k/a IAG Capital Partners and IAG Capital Holdings II, LLC a/k/a IAG Capital Partners (collectively "IAG" or "IAG defendants"), and, as represented by their legal counsel in the motion to dismiss (Dkt. 39, p. 1 n. 1), were incorrectly sued as IAG Capital Partners in the original complaint (Dkt. 1). IAG are business entities forms unknown and places of formation unknown and are engaged in business in this District and state of California.

23.     As IAG Capital Holdings II, LLC a/k/a IAG Capital Partners and IAG Capital Holdings II, LLC a/k/a IAG Capital Partners have already generally appeared in

this Action by virtue of filing of their motion to dismiss (Dkt. 39), and, therefore, the Court has *in personam* jurisdiction over these defendants.

24.     Defendant, Joel Whitley ("Whitley"), is an individual and resident of the State of California.

25.     Sylabs is informed and believes and based upon such information and belief alleges that defendant Whitley was acting upon the instructions and on behalf of IAG defendants to enrich IAG defendants, and IAG defendants authorized and ratified defendant Whitley's actions as herein alleged.

### CO-CONSPIRATORS GREG KURTZER, JULIA KURTZER, ADOLPH, HAYDEN, FONG, BUSS, PRAGER, WHITLEY, CIQ, OPEN DRIVES, AND IAG

26.     Defendant Greg Kurtzer is currently a founder and director of CIQ and CIQ's chief executive officer, chief financial officer, and secretary, and was Sylabs' former chief executive officer and member of the board of directors of Sylabs. During and after the time he held that position of trust with Sylabs and while he was employed by CIQ, he conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' computers, computer servers, computer storage, databases, email, voice mail, use of internet, laptops, tablets, and cell phones (collectively "Sylabs' Computer Systems") and the data, folders, files, and directories residing on those systems (collectively "Data"), and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

27.     Defendant Julia Kurtzer was Sylabs' trusted advisor. During and after the time she held that position of trust with Sylabs, she conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

28.     Defendant Adolph is currently a founder of CIQ and CIQ's chief product officer and was Sylabs' trusted advisor. During and after the time he held that position of trust with Sylabs and while he was employed by CIQ, he conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and

Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

29. Defendant Hayden is currently CIQ's customer advocate and was Sylabs' project coordinator, which is a trusted position due to the fact he had access to all of Sylabs' technologies that were under development as well as Sylabs' other corporate secrets. During and after the time he held that position of trust with Sylabs and while he was employed by CIQ, he conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

30. Defendant Fong is currently CIQ's operations manager and was Sylabs' controller and handled marketing, which is a trusted position due to the fact she had access to all of Sylabs' technologies that were under development, marketing strategies and plans, as well as Sylabs' other corporate secrets. During and after the time she held that position of trust with Sylabs and while she was employed by CIQ, she conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

31. Defendant Buss is a director of defendant Open Drives and Open Drives' chief executive officer and secretary and while he was employed by Open Drives, he conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

32. Defendant Prager is a director of Open Drives and Open Drives' chief financial officer and while he was employed by Open Drives, he conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

LEPISCOPO & ASSOCIATES LAW FIRM

33.     Defendant Whitley is a principal of IAG and while he was employed by IAG, he conspired with other defendants to engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

34.     IAG defendants and Open Drives invested in CIQ and, therefore, were aware of, ratified, and benefited from Defendants' unlawful actions and Conspiracy through their cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets.

35.     The main object of the foregoing conspiracy ("Conspiracy") was to take steps in furtherance of committing cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, technologies, and customers for the express purpose of enriching Defendants and to eliminate Sylabs as a competitor in the HPC industry marketplace.

### DOE DEFENDANTS

36.     Many facets of the Conspiracy described herein likely remain unknown, and the complete list of Defendants likely extends beyond the individuals and entities identified here. At present, Sylabs is ignorant of the true names and capacities of such individuals and entities and, therefore, sues them herein under the fictitious names Does 1-50. Sylabs will amend this Complaint to identify additional individuals or entities as relevant information becomes available through discovery.

### V.

### PRELIMINARY COMMENT RE: THEFT OF TRADE SECRETS

37.     The theft of intellectual property has become a matter of national concern, which has been addressed through federal legislation. For example, in a rare show of solidarity, in 2016 the Defend Trade Secrets Act of 2016 ("DTSA") passed both houses of Congress with remarkable 87-0 approval in the Senate and 410-2 approval in the House.

38.     Sylabs brings this action under federal and California statutory schemes, separately alleged in Counts I through III, inclusive, under the DTSA, 18 U.S.C. § 1831 *et*

LEPISCOPO & ASSOCIATES LAW FIRM

*seq.*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and California Uniform Trade Secrets Act ("CUTSA"), California Civil Code §§ 3426 *et seq.*, against defendants Gregory Rose a/k/a Gregory M. Kurtzer, Julia Rose a/k/a Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, CTRL IQ, Inc. d/b/a CIQ, Open Drives, Inc., David Buss, Marlin Prager, Joel  Whitley, IAG Fund II, LP a/k/a IAG Capital Partners, IAG Capital Holdings II, LLC a/k/a IAG Capital Partners, and Does 1-50 (collectively "Defendants").

**VI.**

**SYLABS' CYBER FORENSICS EXPERT: FORMER FBI AGENT, CHRISTOPHER TARBELL**

39.     As will be alleged in greater detail below, and pursuant to the Court's December 19, 2023, order granting motion to dismiss ("1st MTD Order"), Dkt. 59 p. 5, n. 3, Sylabs will include allegations and evidence regarding its claims through the declaration of its expert witness, Christopher Tarbell (Exh. 38) ("Decl. of Tarbell") and Exhibits.

40.     By way of introduction, Mr. Tarbell was a Special Agent of the Federal Bureau of Investigation ("FBI"). He was employed as a computer forensic examiner and Special Agent. As a member of the FBI's Computer Analysis Response Team ("CART"), his professional responsibilities focused on forensically recovering data and conducting forensic examinations of electronic evidence. He is also certified as a Forensic Computer Examiner with the International Association of Computer Investigative Specialists ("IACIS"). *See* Exh. 38: Decl. of Tarbell ¶¶ 17 and 19-21; Exh. 1, p. 1.

41.     As a Special Agent with the FBI, Mr. Tabell's primary professional responsibility was to conduct criminal investigations into computer and network intrusions, which also involved the retrieval and forensic examination of computer-related evidence. During the course of his career at the FBI, Mr. Tarbell worked on nearly 100 criminal and national security investigations that involved the recovery and forensic analysis of a wide range of electronic evidence as well as the investigations of computer artifacts from cyber intrusions. *See* Exh. 38: Decl. of Tarbell ¶ 17; Exh. 1,  p. 1.

LEPISCOPO & ASSOCIATES LAW FIRM

42.     As a computer forensic examiner with the FBI, Mr. Tarbell engaged in rapid-response investigations all over the world on matters related to terrorism, botnets, and other cybercrimes. In 2009, Mr. Tarbell joined the FBI's renowned Cybercrime Squad as a Special Agent in the New York field office. He was the lead investigator on several of the FBI's most complex and cutting-edge cases, including the takedown of the billion-dollar, cryptocurrency-based drug marketplace "Silk Road" including the arrest of its founder, and the investigation and arrest of the leadership of the Anonymous/LulzSec hacking crews. *See* Exh. 38: Decl. of Tarbell ¶ 22; Exh. 1, p. 1.

43.     As will be alleged in greater detail below, Sylabs' drive and email audit Logs ("Audit Logs"), which contain the following information for each access to Sylabs' Computer Systems and Data[2]: (a) identity of the person accessing; (b) date, time, and what was accessed; (c) what folders were trashed or deleted; (d) what files were trashed or deleted; (e) what folders or files were renamed; (f) what files were download; (g) what directories were created for deletion and copying purposes; (h)  what permissions for access were granted and to whom; and (i) the specific email addresses utilized to access Sylabs' Computer Systems and Data; and so on. *See* Exh. 38: Decl. of Tarbell ¶¶ 27-139.

44.     As set forth in his declaration, Mr. Tarbell performed a comprehensive review and analysis of the Audit Logs. *See* Exh. 38: Decl. of Tarbell ¶¶ 42-111.

45.     In his Declaration, Mr. Tarbell explains what an "insider threat" is and how such threats can use the **trust placed in them** to harm a company:

> "The Cybersecurity and Infrastructure Security Agency ("CISA") of the United States defines an insider threat as 'the potential for an insider to use their **authorized** access or understanding of an organization **to harm that organization**.'"

*See* Exh. 38: Decl. of Tarbell ¶ 29 (emphasis added).

46.     Mr. Tarbell has concluded from his review and analysis of the evidence that defendants Greg Kurtzer, Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong,

---

[2]     At all relevant times, Sylabs' Server was hosted in Google Workspace also referred to as Google Drive. *See* Exh. 38: Decl. of Tarbell ¶¶ 3-5.

Marlin Prager, and David Buss were "**insider threats**" to Sylabs at the time they committed cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and cyber theft of Sylabs' Trade Secrets and Intellectual Property:

> "Sylabs suffered multiple insider threat attacks by their former CEO and his cohorts. Sylabs' former CEO, Gregory Kurtzer ("KURTZER"), used his authorized access to and knowledge of Sylabs' intellectual property, trade secrets, confidential information, resources, including personnel, facilities, information, equipment, networks, and system to delete, share with outsiders, and download Sylabs' sensitive corporate data."

*See* Exh. 38: Decl. of Tarbell ¶ 30; and he provides examples at ¶¶ 31-127.

47. Finally, Mr. Tarbell explains security features of Sylabs' Computer Systems and Data and Google Workspace: "One part of Google's security features is the audit logs that record users' actions on Sylabs access controlled computer systems. These audit logs provide Sylabs administrators a detailed list of security-relevant actions taken on their sensitive corporate files. These actions include, but are not limited to, trashing files, trashing folders, deleting files, and deleting folders." *See* Exh. 38: Decl. of Tarbell ¶ 30.

## VII.

## SYLABS' TRADE SECRETS

48. In its 2nd MTD Order, the Court held that Sylabs has sufficiently alleged that Sylabs owns the following five (5) Trade Secrets to satisfy the pleading requirements under Rule 12(b)(6): "(1) SingularityPRO, (2) SIF technology, (3) Singularity Enterprise, (4) Fuzzball, and (5) Armored Containers. . .Thus, Sylabs has sufficiently alleged ownership of five trade secrets." *See* 2nd MTD, Dkt. 80, p. 7, ll. 1-2 and 20.

49. In 2018, Sylabs commenced development of technologies for the high-performance computing industry ("HPC") to solve complex problems requiring massive computation.[3] HPC refers to the computer science architecture of aggregating computing power in a way that delivers much higher performance than could be obtained from a typical desktop computer or workstation to solve large problems in, for example, science,

---

[3]      *See generally*: https://www.ibm.com/topics/hpc.

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

engineering, medicine, or business. Sylabs' Trade Secrets relate to HPC through structuring small to medium, but powerful, computers that are harmonized to operate as one supercomputer. Each separate computer is termed a "node." Groups of computers are termed "clusters."

50.     Supercomputers operate under the principle of parallel processing, which means that there is more than one computer working simultaneously on different operations. So, for example, when hurricane season arrives the National Hurricane Center at the National Oceanic and Atmospheric Administration ("NOAA") employs their supercomputers to simultaneously model the trajectories of several hurricanes.[4]

51.     HPC is an industry with over $39 billion in annual revenues worldwide, which is expected to grow to over $74 billion by 2030.[5]

### Sylabs' SingularityPRO

52.     SingularityPRO is Sylabs' high-performance container technology specifically designed to enhance enterprise performance computing by building containers that support HPC, analytics, artificial intelligence, machine learning, and deep learning to provide "intelligence anywhere." SingularityPRO is differentiated from the Singularity open-source version by the inclusion of several plugins to augment capabilities, as well as a software bill of materials to address software supply chain security.

53.     It is important to note that the terms "Singularity Community" and "SingularityCE" refer to a basic, open-source Singularity platform released in 2016 that is the basis for a multitude of higher-level applications specifically designed to operate in the HPC technology space. It is important to understand that the transformation process of making an open-source piece of technology better through the addition of code, expansion of capabilities or functionality, support services, or other technologies constitutes trade

---

[4]     *See* National Hurricane Center at NOAA:
https://www.nhc.noaa.gov/gtwo.php?basin=atlc&fdays=2.

[5]     *See e.g.*:     https://www.bloomberg.com/press-releases/2022-07-21/high-performance-computing-market-size-to-surpass-74-101-million-by-2030-says-p-s-intelligence.

secrets and intellectual property. This includes the valued-added technologies developed and invented by Sylabs, all of which constitute its Trade Secrets. Therefore, when Sylabs adds to Singularity to create, for example, SingularityPRO, such transformation constitutes Sylabs' Trade Secrets. Sylabs has monetized SingularityPRO by licensing it to end-users with varying levels of support available, which is provided directly through Sylabs' team of experts. It is sold on a per-node basis or with pricing to suit unique scenarios.

54.     Essentially, SingularityPRO provides five major value-added technology features: enterprise grade support; backporting of security and bug fixes; packaged binaries for easy deployment and upgrades; influence on feature development and timelines; and extra functionality via PRO plugins, also invented, developed, and designed by Sylabs.

55.     To further clarify the distinction between open-source components of SingularityCE with Sylabs' value-added technology in SingularityPRO, below in Figure 1 the features of SingularityCE are placed in juxtaposition with Sylabs' SingularityPRO in order to identify the value-added technologies that form the basis of Sylabs' Trade Secrets.



**FIGURE 1: Value-Added Technology of SingularityPRO**

56.     Sylabs' technologies have raised the bar for container platforms throughout the HPC industry. SingularityPRO running on HPC platforms leverages the power of

LEPISCOPO & ASSOCIATES LAW FIRM

Artificial Intelligence ("AI"), machine learning, and deep learning to deliver unique enterprise-level services. SingularityPRO's advanced ecosystem of resources not only extends the overall value of the platform but also extends its ease of use and security.

### Sylabs' Singularity Image File Technology

57.     In 2018, Sylabs commenced research, design, and development and long-term strategies to invent an efficient and secure file format for use in the HPC industry and to support the private, public, academic, government, and military sectors to leverage more data to support and grow their enterprises and activities. Accordingly, Sylabs invented Singularity Image Format ("SIF") to create a digital container that holds pieces of software in a structured format that allows the programs to be portable and reproducible, as well as being secured through encryption. This is especially important for the development, creation, and sharing of intellectual property in collaborative environments or ones subject to higher levels of security classifications (*e.g.*, military, National Security Agency, etc.).

58.     For example, if a scientist wanted to design a complex weather analysis program to predict the direction of tropical storms in real time but wanted to keep it secure on a laptop before patenting and releasing it, Sylabs' SIF format would be utilized to hold all program information. Once created, the SIF container would be created and encrypted for ease of transport and use by, for example, NOAA's supercomputers.

59.     On June 7, 2019, Sylabs filed its SIF Application with the U.S. Patent and Trademark Office ("USPTO") to patent Sylabs' SIF technology, which was assigned U.S. Patent Application No. US 2019/0377708 A1. *See* Exh. 54.

60.     On May 2, 2023, the USPTO granted Sylabs' SIF Application and issued the SIF Technology patent to Sylabs, assigning U.S. Patent No. US 11,640, 372 B2 ("SIF Patent"), with Sylabs listed as owner and Yannick Cote as inventor. *See* Exh. 55.

61.     Sylabs' Armored Containers is Sylabs' SIF technology developed even further since this patent was obtained. Below, Sylabs will further clarify how the fraudulently procured CIQ patents are based on Sylabs' Trade Secrets regarding SIF containers, which was in development but not disclosed to the public.

62.     The next generation of Sylabs' value-added technology is known as "Singularity Enterprise."

63.     Simply put, Singularity Enterprise is a set of three services to support Sylabs' SIF container workflows. First, it is a remote builder utilized to build containers of varying architectures. Second, it has a container library to store, pull, and share SIF containers. Finally, it has a key management for SIF container authentication. As a natural progression in the development of its technology, Sylabs developed and designed "Sylabs' Container Library" and "Sylabs' Cloud Services." Fundamentally, the architecture of the Sylabs' Cloud Services and Container Library is set forth below in Figure 2.



**FIGURE 2: Architecture of Sylabs' Container Library and Cloud Services**

64.     Singularity Enterprise contains the full-featured Sylabs' Container Library, which can be hosted on-premises in a customer's data center or Sylabs' Cloud Services. Users can upload, download, search, and browse for containers in public and private areas, as well as share private containers with other users or via a generated link.

65.     Singularity Enterprise's Remote Builder Services resides in Sylabs' Cloud Services. This value-added technology equips users to build containers in Sylabs' SIF format with architecture independence and integration. The resulting SIF files created can be cryptographically signed, and subsequently have their authenticity and integrity verified whenever and wherever they are used—this type of portability of applications is extremely valuable and beneficial to users.

LEPISCOPO & ASSOCIATES LAW FIRM

66.     Singularity Enterprise's Container Library Services offers a repository to host Sylabs' SIF containers. Users can manage, store, and share containers in public and private directories, or share private containers with other users via a link generated through the Container Library Services. Singularity Enterprise's Key Management Services ensures container signing and validation services to Singularity Enterprise and the Container Library.

67.     Sylabs' SIF technology and strategy developing Singularity Enterprise has successfully positioned the company as a global leader in secure, trusted, performance-focused container solutions—this is the competitive and strategic advantage that Defendants unjustly gained through their cyber theft of Sylabs' Trade Secrets.

68.     After developing its initial Singularity-based technologies, Sylabs developed additional value-added technologies for the HPC industry known as "Fuzzball" and "Armored Containers." Specifically, on or about June 5, 2019, Sylabs first discussed the concepts of Fuzzball and Armored Containers during a design review meeting with Sylabs' staff, including its engineers. The high-level design of the architecture of Fuzzball commenced in late 2019 while that of Armored Containers commenced in July of 2019.

### Sylabs' Fuzzball Technology

69.     Fuzzball is Sylabs' Trade Secrets relating to value-added technology that creates a cluster of three differentiated software stacks. The first, Fuzzball **service**, is a cloud native service for workflow management and orchestration. The second, Fuzzball **agent**, is a small, purpose-built systems service that executes workflows on computer nodes. The third, "Fuzzctl" is a command line utility that users employ to interact with and manage other Fuzzball components. The power of Fuzzball clusters lies in their ability to be easily configured to accommodate various scales of computer resources. Fuzzball can be deployed in environments from as small as a single node running both the service and agent to deploying the service to orchestrate workloads across agents on various clusters of supercomputers located on-premises or on the Cloud.

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

70.    Essentially, Fuzzball can be understood as an intelligent task manager that controls data flow and computing, *i.e.*, it harmonizes supercomputers that might be located on premises or on the other side of the globe, making location irrelevant. NOAA has supercomputer systems for weather and climate analysis in Virginia and Arizona and research and development supercomputers located in West Virginia, Tennessee, Mississippi, and Colorado. Imagine each of these locations as the main node for each location, thus making 6 main nodes. Each of the six main nodes is comprised of clusters of computers creating individual supercomputers in each location.

71.    Based on NOAA scientists' specific instructions, Fuzzball's intelligent manager would be instructed on how each cluster in the six main node locations operates, and how the clusters comprising each of the six supercomputers operate and interface with each other. For example, the Virginia supercomputer node could be tasked by scientists through Fuzzball with collecting, storing, and analyzing certain data relating to wind velocity, patterns, and predictions for use by one of the other main nodes, say, for example, Mississippi, where storm and hurricane trajectories could be modeled. While the foregoing examples are rudimentary, the actual power of Fuzzball is much more complex, making it extremely effective and valuable to the growth of the HPC industry. To the point, the Dogwood Supercomputer has approximately 2,560 nodes to be managed.

72.    Finally, as alleged in Section VIII, below, in June of 2019 Sylabs invented and commenced development and design of Fuzzball, which Defendants misappropriated from Sylabs through their cyber theft of Sylabs' Trade Secrets. Once their cyber theft was complete, Defendants subsequently **patented** Fuzzball as their own invention through prosecution of fraudulent patent applications and perpetrating a fraud on the USPTO.

### Sylabs' Armored Containers Technology

73.    In June of 2019, Sylabs invented and commenced development and design of "Armored Containers," which is an extension to Sylabs' unique technology, Singularity Image Format, or SIF. For purposes of context, it was on June 7, 2019, that Sylabs filed its SIF Application with the USPTO (*see* Exhibit 54). Generally, Sylabs' Armored Containers

technology expands its SIF technology in a way that allows increased security in deployments to cloud environments as well as on-field deployed devices.

74.     As background, in order to expand research and development as well as promote innovative small businesses, Congress enacted 15 U.S.C. § 638, which gave birth to the Small Business Innovation Research program ("SBIR"), which is administered through the U.S. Small Business Administration's ("SBA") Office of Innovation and Technology ("OIT"). The SBIR program allowed the Government to bear the expense of carrying on research and development programs, to encourage small businesses like Sylabs, and "strengthen the competitive free enterprise system and the national economy."

75.     On or about 2019, the U.S. Air Force issued SBIR Request No. 20.1, Contract No. FA8649-20-P-0729, Tracking No. J201-CSO1-7047, and Topic J201CSO1 for Containers Technologies for LevelUp. In response to the U.S. Air Force SBIR request, in or about the end of 2019, Sylabs commenced preparation of its SBIR proposal No. F2-13944 ("SBIR Proposal") regarding its hardened SIF container technology, which Sylabs titled, "Sylabs' Armored Containers." On or about August 24, 2020, Sylabs submitted a second SBIR Proposal through the SBA's SBIR Innovation Portal.

76.     Unlike standard OCI containers, Sylabs' Armored Containers are built with simple, single SIF containers that can be easily moved into air-gapped systems without requiring additional infrastructure. As generally referred to herein, the term "air-gapped" refers to highly secured areas that includes security measures that isolate a computer or cluster of computers from establishing any outside connection to ensure no cyber theft or infiltration can occur.

77.     The Department of Defense ("DoD") refers to this as a Sensitive Compartmented Information Facility, or "SCIF" (pronounced "Skiff"). Therefore, in the DoD vernacular, Sylabs' Armored Containers would be referred to as "SCIF SIFs." An Armored Container can be thought of as an "up-armored" form of Sylabs' SIF container, which is improved with not only air-gapping technology but also embedded cryptographic signatures and encryption support to provide further security and protections.

78.     In the DoD's AI Sector, in or about May or June of 2020, Sylabs commenced discussions with American Systems regarding a joint venture centered on Sylabs' Armored Containers technology. In or about September 14, 2020, American Systems announced the joint venture with Sylabs ("AS-Sylabs Venture"): "AMERICAN SYSTEMS has teamed with Sylabs.io—a leader in secure, trusted, performance focused container solutions—to form 'Team AMERICAN SYSTEMS'." The AS-Sylabs Venture was under the jurisdiction of the DoD's Joint Artificial Intelligence Center ("JAIC") and governed by the DoD's 2018 AI Strategy[6] and Presidential Executive Order No. 13869 (2/11/19).[7] In its September 14, 2020, announcement of the AS-Sylabs Venture, American Systems listed the common mission areas in which Sylabs' Armored Containers technology would be utilized: Naval Warfare Systems; Air Warfare Systems; Land Warfare Systems; Command, Control, Communications, Computers, and Intelligence Systems; Space Systems; and Cybersecurity.

79.     Sylabs' SIF and Armored Containers technologies have raised the bar for container platforms throughout the HPC industry. Thus, Sylabs' technologies leverage the power of AI, machine learning, and deep learning to deliver unique enterprise-level services and an advanced ecosystem of resources that not only extends the overall value of the technologies but also couples ease of use and portability with unmatched security.

80.     It is important to note that the Armored Containers technology that serves as the basis of CIQ's patents is not based on the technology disclosed in Sylabs' SIF Application regarding its SIF technology. These patents were stolen by Defendants and are based on Sylabs' Trade Secrets and, therefore, are Sylabs' property. Originally, in its 1st MTD Order, the Court expressed concerns that Sylabs did not allege facts sufficient to show those aspects of its SIF technology that were not discussed in Sylabs' SIF Application. See Dkt. 59, p. 10, ll. 4-16. However, in its FAC, Dkt. 61, Sylabs cured this

---

[6]    *See, e.g.: https://media.defense.gov/2019/Feb/12/2002088963/-1/-1/1/SUMMARY-OF-DOD-AI-STRATEGY.PDF.*          .
[7]    *See, e.g.:* https://www.govinfo.gov/content/pkg/FR-2019-02-14/pdf/2019-02544.pdf.

LEPISCOPO & ASSOCIATES LAW FIRM

deficiency by making the distinction between Sylabs' patented SIF technology and the Armored Containers Trade Secrets, which were stolen by Defendants and then used to obtain the CIQ patents. Specifically, CIQ patent 11,055,428 (Exh. 41) describes a method for encrypting a different format of container images than the one mentioned in Sylabs' SIF Application (Exh. 54), namely OCI container images. Sylabs has never publicly disclosed the Trade Secrets underlying the specific methods of encrypting container images as it pertains to OCI images but began developing this as part of its secret "Armored Containers" project well before Defendants left Sylabs.

<div align="center"><strong><u>Market Examples for SingularityPRO, Singularity Enterprise,<br>Fuzzball, and Armored Containers</u></strong></div>

81.     Sylabs' SIF Container technology, SingularityPRO, Singularity Enterprise, Fuzzball technology, and Armored Containers technology all have a broad customer base including academic and governmental research entities (DoE) and military agencies (DoD), as well as companies in the biomedical, telecommunications, electronics, and manufacturing sectors.

<div align="center"><strong><u>CIQ's Six Patents Are Based On Sylabs' Trade Secrets</u></strong></div>

82.     As an illustration, Figure 3 proves that CIQ's six patents are based on Sylabs' Trade Secrets.

| SYLABS' TRADE SECRET | KURTZER, et al.'s THEFT: PATENT # (See Exhibit) | PROOF THAT PATENT IS SYLABS' TRADE SECRET |
|---|---|---|
| Fuzzball | US 10,970,113 (*see* Exhibit 37) | CIQ patent 10,970,113 describes the high-level architecture of the "Fuzzball/HPC 2.0" project that began development by Sylabs starting in 2019.<br><br>As set forth in greater detail in Sections VII-VIII, and the exhibits listed, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date. |

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

| | | |
|---|---|---|
| | | In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Fuzzball | US 11,099,893 (*see* Exhibit 39) | CIQ patent 11,099,893 describes a continuation to CIQ patent 10,970,113, which describes the high-level architecture of the "Fuzzball/HPC 2.0" project that began development by Sylabs starting in 2019.<br><br>As set forth in greater detail in Sections VII-VIII, and the exhibits listed, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date.<br><br>In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| Fuzzball | US 11,310,342 (*see* Exhibit 40) | CIQ patent 11,310,342 describes a specific algorithm of the high-level architecture of the "Fuzzball/HPC 2.0" project that began development by Sylabs starting in 2019.<br><br>As set forth in greater detail in Sections VII-VIII, and the exhibits listed, the evidence unequivocally demonstrates Sylabs was  inventing, developing, and designing this technology as early as June of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date.<br><br>In addition to the forgoing, on December 19, 2019, and January 9th and 13th 2020, design reviews of Fuzzball were held by Sylabs, which were video recorded. |
| | | |
| Armored Containers | US 11,055,428 (*see* Exhibit 41) | The Armored Containers are based on Sylabs' prior trade secrets in the SIF technology. It is important to note that the armored technology that serves as the basis of CIQ's patents is not based on the technology disclosed in Sylabs' SIF Application (Exh. 54) or SIF Patent (Exh. 55) for its SIF technology. This CIQ patent specifically mentions this type of approach for another format of container images, namely Open Container Initiative (OCI) container images. Sylabs has never publicly disclosed the Trade Secrets underlying the OCI method of encrypting container images as it pertains to OCI images but has been developing this as part of its secret "armored containers" project. |

| | | |
|---|---|---|
| | | As set forth in greater detail in Sections VII-VIII, and the exhibits listed below, the evidence unequivocally demonstrates Sylabs was inventing, developing, and designing this technology as early as July of 2019, which is approximately 1 year prior to Defendants' theft and more than 2 years prior to patent issuance date. |
| Armored Containers | US 11,163,902 (*see* Exhibit 42) | "                            " |
| Armored Containers | US 11,321,064 (*see* Exhibit 43) | "                            " |
| | | |

**FIGURE 3**: Defendants' Patents Through Theft of Sylabs' Trade Secrets

**Sylabs' Efforts to Protect Its Trade Secrets**

83.     As mentioned, the 1st MTD Order indicated that Sylabs needed to identify and allege the specific policies, methods, and procedures utilized by Sylabs to protect its Trade Secrets (*see* Dkt. 59, p. 11, ll. 13-17). Sylabs employed policies, methods, and procedures to maintain secrecy of and protect its Trade Secrets from public disclosure, which include Technical Protections, Conflict of Interest/Corporate Policies, and IP Assignments/NDA Assignments (collectively "Trade Secret Protections"). *See* Exh. 47.

84.     **Trade Secret Protections:** During all times relevant to this Action, Sylabs maintained and utilized various technology-based protections ("Technical Protections") to not only maintain the secrecy of Sylabs' Trade Secrets but also prevent those having knowledge of those Trade Secrets from utilizing them as a means of competing against Sylabs.  Specially, Sylabs securely stores its Data on its Computer Systems. *See* Exh. 38: Decl. of Tarbell ¶¶ 4 & 5.

85.     In addition, as part of the Technical Protections offered by its Server, during all times relevant to this Action, Sylabs took steps to ensure that all source code, technical documentation, and planning material are stored in private server projects, and access to the projects was strictly limited on a need-to-know basis even within Sylabs. This is the

LEPISCOPO & ASSOCIATES LAW FIRM

general practice for all closed-source Sylabs projects/products to ensure that its Trade Secrets are kept secret. *See* Exhs. 47-52.

86.   **Conflict of Interest/Corporate Policies:** In addition to the Technical Protections employed by Sylabs, it also maintained various corporate and conflict of interest policies ("Conflict of Interest Policies"), which include specific policies and procedures set forth in Sylabs' Employee Handbook ("Handbook") (*see* Exh. 47) that were in effect during all relevant timeframes alleged herein. In particular, the Handbook provides extensive protection for Sylabs' Computer Systems and Data (Exh. 47, p. 15).

87.   One example from Sylabs' Handbook includes a specific policy on the protection of trade secrets and other protected information (see Exh. 47, pp. 19-20). This Trade Secrets Policy prohibited Defendants from disclosing Sylabs' Trade Secrets during **or after** they left their employment with Sylabs (*see* Exh. 47, p. 20; emphasis added):

> "Employees will not, except as required in the conduct of our Company's business or as authorized in writing by our Company, disclose or use **during their term of employment or subsequent thereto any Trade Secrets/Confidential Information**. Furthermore, all records, files, plans, documents and the like relating to the business of our Company which employees prepare, use or come in contact with shall be **and shall remain the sole property of our Company and shall not be copied without written permission** of our Company and **shall be returned to our Company on termination or cessation of employment**, or at our Company's request at any time."

88.   As alleged herein, Defendants violated this policy on numerous occasions. The Handbook makes clear that Sylabs owns all Trade Secrets, software installed on Sylabs' Computer Systems, and the Data stored in Sylabs' Computer Systems. It specifically prohibits such software, files, and data from being removed or taken upon separation from employment (see Exh. 47, pp. 15-16). The Handbook also sets forth the proper and prohibited uses of Sylabs' Computer Systems (*see* Exh. 47, pp. 16-18). Further, the Handbook sets forth policies and procedures to protect the integrity of Sylabs' Computer Systems and Data (*see* Exh. 47, pp. 18-19).

89. **IP Assignment/NDA Agreements:** In addition to being bound by the protections of Sylabs' Technical Protections and Conflict of Interest/Corporate of Interest Policies, Defendants Greg Kurtzer, Matthew Hayden, Erin Fong, Robert Adolph, David Buss, Marlin Prager, and Open Drives are bound by intellectual property assignments and nondisclosure agreements (referred to individually as "Kurtzer Assignment/NDA," "Hayden Assignment/NDA," "Fong Assignment/NDA," "Adolph Assignment/NDA," "Buss/ Prager/Open Drives NDA," or collectively as "Defendants' Assignments/NDAs" or "IP Assignment/NDA Agreements). *See* Exhs. 48-52, respectively.

90. Sylabs' DoD proposals contain another example of specific nondisclosure language put in place by Sylabs to protect its Trade Secrets. In their theft of Sylabs' SBIR business with the DoD, Defendants violated the DoD's Nondisclosure Notice:

"This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed-in whole or in part-for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offeror as a result of-or in connection with-the submission of this data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. . ."

91. Notwithstanding all the Trade Secret Protections implemented by Sylabs and the DoD, as will be alleged in greater detail below in Section VIII of this Complaint, Defendants simply ignored and failed to comply with them.

**VIII.**
**ALLEGATIONS SUFFICIENTLY STATING CLAIMS AGAINST ALL DEFENDANTS FOR VIOLATIONS OF DTSA, CFAA, AND CUTSA**

92. It was through the publication of defendant CIQ's U.S. Patent No. US 10,970,113 B1 (Exh. 37), which occurred on or after April 6, 2021, that Sylabs first started discovering evidence of Defendants' cyber corruption, cyber destruction, cyber theft, misappropriation, and unlawful and fraudulent patenting of Sylabs' Trade Secrets. Although this patent was Sylabs' Trade Secrets, defendants Greg Kurtzer and Adolph fraudulently listed themselves as co-inventors, when they, along with the other Defendants, committed cyber theft of Sylabs' Trade Secrets. *See* Exh. 37, p. 1, ¶ 72, "Inventors."

93.     Thereafter, Sylabs commenced review of Sylabs' Computer Systems Audit Logs, which started to reveal Defendants' cyber corruption, cyber destruction, and cyber theft of Sylabs' Trade Secrets. *See* Exh. 38: Decl. of Tarbell ¶¶ 4-5 and 27-127, all of which violate the protections afforded under DTSA, CFAA, and CUTSA.

**Defendants' Fraudulent and Unlawful Patenting of Trade Secrets Invented and Owned by Sylabs: CIQ's Six Patents are Based on Theft of Sylabs' Trade Secrets**

94.     The gravamen of this Action is Defendants' cyber corruption and cyber destruction of Sylabs' Computer Systems and Data, and the cyber theft, misappropriation, and unlawful and fraudulent patenting of Sylabs' Trade Secrets. After becoming both insider threats and outsider threats and stealing Sylabs' Trade Secrets, Defendants then used these stolen Trade Secrets to fraudulently procure the following six patents on behalf of defendant CIQ: US 10,970,113 (Exh. 37), US 11,099,893 (Exh. 39), US 11,310,342 (Exh. 40), US 11,055,428 (Exh. 41), US 11,163,902 (Exh. 42), and US 11,321,064 (Exh. 43), all of which violate the protections afforded under DTSA, CFAA, and CUTSA.

**CIQ's Patents Based on Fuzzball Trade Secrets**

95.     The evidence demonstrates that CIQ's Patent Nos. US 10,970,113 (Exh. 37), US 11,099,893 (Exh. 39), and US 11,310,342 (Exh. 40) are described and based upon the high-level architecture of the "Fuzzball/HPC 2.0" project, which was born out of Sylabs' research and development that commenced in 2019 (*see* Figure 3, *supra*).

96.     These patents were stolen by Defendants and are based on Sylabs' Trade Secrets, and, therefore, are Sylabs' property. Allegations in the sections below detail how Greg Kurtzer first committed cyber destruction by publishing Sylabs' Fuzzball Trade Secrets to open source, allowing him and Defendants, through their cyber corruption, cyber destruction, and cyber theft to steal and use Sylabs' Trade Secrets to procure these patents, all of which violate the protections afforded under DTSA, CFAA, and CUTSA.

**CIQ's Patents Based on Armored Containers Trade Secrets**

97.     CIQ's Patent Nos. US 11,055,428 (Exh. 41), US 11,163,902 (Exh. 42), and US 11,321,064 (Exh. 43) are based on Sylabs' Armored Containers (*see* Figure 3, *supra*).

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

As detailed in Section VII, above, Sylabs began research and development of Armored Containers in June of 2019, and submitted its first SBIR proposal at the end of that year. Sylabs then submitted a second SBIR proposal for Armored Containers in August of 2020.

98.    Defendants' unlawful patenting of Sylabs' Armored Containers technology not only violates the Armored Containers technology itself but also Sylabs' underlying SIF technology, which is the necessary prior art upon which Armored Containers is built. Of note, in the Court's 2nd MTD Order, the Court acknowledged that Sylabs had sufficiently alleged its trade secrets as it pertains to SIF technology, when it held:

> "[t]he Court directed Sylabs to 'allege with particularity those aspects of its SIF technology not discussed in the patent application" in its amended pleading . . . **Sylabs has adequately complied**."

*See* 2nd MTD Order. Dkt., 80, p. 7, ll. 5-7 (emphasis added).

99.    Further, defendants Greg & Julia Kurtzer and Hayden had credentials to access the Trade Secrets in Sylabs' SBIR Proposal through the DoD's SBIR Innovation Portal. Sylabs is informed and believes, and based upon that information alleges, that they used this access to unlawfully steal Sylabs' Trade Secrets. Despite all the protections put in place by Sylabs, Defendants stole and used Sylabs' Trade Secrets to procure the CIQ patents, all of which violate the protections of DTSA, CFAA, and CUTSA.

### Defendants' Inequitable Conduct and Intentional Fraud Perpetrated on the USPTO

100.    After Defendants stole and misappropriated Sylabs' Armored Containers and Fuzzball Trade Secrets, they unlawfully patented Sylabs' technology through cyber theft and violated 37 CFR 1.56 by breaching their duty of candor, disclosure, and good faith, thereby perpetrating a fraud on the USPTO on the following grounds:

a.    Listing incorrect inventors and/or omitting inventors to fraudulently represent that SIF containers, Fuzzball, and Armored Containers were their Trade Secrets when they were owned by Sylabs and invented bys employees;

b.    fraudulently omitting prior art, *i.e.*, Sylabs' Trade Secrets that Defendants obtained and misappropriated through cyber theft; and

c.   Inequitable conduct—fraud.

101.   Inequitable conduct requires that everyone participating in the procurement of a patent abide by 37 Code of Federal Regulations ("CFR") 1.56(a) (emphasis added):

> "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a duty to disclose to the Patent Office **all information known to that individual to be material to patentability**."

102.   Finally, in addition to their inequitable conduct, Defendants successfully perpetrated an intentional fraud upon the USPTO. Such conduct is proscribed by 37 CFR 1.56(a), which in its relevant part provides (emphasis added):

> "However, no patent will be granted on an application in connection with which **fraud on the Office was practiced or attempted** or the duty of disclosure was violated through bad faith or intentional misconduct."

## Defendants' Cyber Corruption, Cyber Destruction, Cyber Theft, Misappropriation, and Unlawful Use of Sylabs' Trade Secrets, Intellectual Property, Corporate Secrets, and Other Sensitive Information

103.   As outlined by the Supreme Court's decision in *Van Buren v. United States* ("*Van Buren*") and the Ninth Circuit's decision in *Andrews v. Sirius XM Radio* (9th Circuit) ("*Sirius XM*"), one aspect of this Action is the cyber destruction, corruption, damage, and loss through **technological** harms caused by Defendants to Sylabs' Computer Systems and Data. Further, as demonstrated below, Defendants stole Sylabs' Trade Secrets, Corporate Secrets, customer information, etc., and gave it to Sylabs' direct competitor, defendant CIQ. Under *Van Buren* and *Sirius*, all of the foregoing constitutes remediable harm under the CFAA, all of which violate DTSA, CFAA, and CUTSA.

104.   It is clear from the facts outlined below that Defendants' cyber theft took root long before March of 2020. Defendants methodically planned to eviscerate Sylabs' entire business in order to create a new company (defendant CIQ) founded with Sylabs' stolen Trade Secrets and Corporate Assets. Evidence shows that in November of 2019, defendants Robert Adolph and Greg Kurtzer were already planning Defendants' theft of Sylabs' Trade Secrets and Corporate Secrets, as well as planning a collaboration between Open Drives

and a so-called "Newco" (*i.e.*, defendant CIQ) so that CIQ could be immediately launched. *See* Exh. 56 and 58.

105.    Sylabs is informed and believes, and based on such information and belief alleges that on or about March 8, 2020, defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, and Whitley, and, through their respective officers, CIQ, Open Drives, and IAG, agreed to engage in unauthorized access for the purpose of cyber corruption and cyber destruction of Sylabs' Computer Systems and Data and cyber theft of Sylabs' Trade Secrets.

106.    Sylabs is further informed and believes, and based upon such information and belief alleges that defendant Greg Kurtzer and defendants Whitley and IAG agreed that they would not enter into a nondisclosure or confidentiality agreement to conceal the identities of Whitley and IAG from Sylabs. This is supported by the fact that during this same time frame, in meetings with prospective investors (except IAG), defendant Greg Kurtzer did everything he could to dissuade **other prospective** investors from investing in Sylabs, thereby sabotaging Sylabs' ability to receive investment capital. For example, he feigned being unprepared for meetings and uninterested in his presentations, could not explain Sylabs' existing products, provided incorrect and foolish answers to questions, and exhibited other behavior and demeanor that resulted in **all** investors being scared off and not moving forward with any further discussions or negotiations with Sylabs. Thus, Defendants' Conspiracy scared off investors for Sylabs, **while securing IAG as the investment capital for CIQ** when it was launched on April 1, 2020. For added context, this was occurring during the time frame that Sylabs was commencing preparation of its SBIR Proposal for presentation to the DoD.

107.    Furthermore, Sylabs is informed and believes, and based up such information alleges that defendant Greg Kurtzer assumed and believed (due to his **insider knowledge**), that Sylabs was in dire economic straits and would most likely dissolve. Defendants then relied on this assumption to conclude that no plaintiff would survive to file a case such as this Action. As a result, during the time frame from March 1 through 31, 2020, and more

intensively leading up their resignation dates from Sylabs, defendant Greg Kurtzer was engaged in detailed planning with defendants Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, and Whitley, and, through their respective officers, CIQ, Open Drives, and IAG, to annihilate Sylabs and create their new competitive entity, defendant CIQ. See Exh. 38 Decl. of Tarbell ¶¶ 8, 9, 22, 50-54, 56, 77, and 87.

108.    For example, the Audit Trails expose this motive by revealing that on March 8, 2020, defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, and Whitley, and, through their respective officers, CIQ, Open Drives, and IAG, prepared a budget ("CIQ Budget") for defendant **CIQ** (identified in the Budget as "Newco"). *See* Exh. 56. In addition to preparing the budgetary elements, defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, Whitley, and CIQ, Open Drives, and IAG, through their respective officers, also listed the following **Sylabs' customers and prospective customers** as **CIQ's** in their CIQ Budget: (a) LLNL - Spack Collaboration; (b) Genentech; (c) RStor – ABCI; (d) Qualcomm; (e) Lawrence Livermore National Laboratory; (f) Federal Reserve Bank; (g) RStor - RIKEN (Singularity Enterprise); (h) University of Florida; (i) San Diego Supercomputing Center; (j) Pfizer; (k) Sandia National Laboratory; (l) Lawrence Berkeley National Laboratory; (m) MythicAI; and (n) Oak Ridge National Laboratory. *See* Exh. 56, p. 1.

109.    Furthermore, Sylabs is informed and believes, and based on such information and belief alleges that as a retired U.S. Navy Admiral, defendant David Buss used his knowledge and expertise of and influence with the DoD to recognize the value of Sylabs' DoD projects. Specifically, in March of 2020, defendant Buss and the other Defendants included Sylabs' Armored Containers in their cyber theft, a project that Sylabs had already been involved in with the U.S. Air Force since 2019. In fact, the U.S. Air Force awarded the SBIR Phase 1 contract to Sylabs on March 6, 2020. Sylabs is informed and believes, and based on such information and belief alleges that defendant Buss was involved in assessing Sylabs' DoD projects that were under way for the purpose of including them in

CIQ's business plan and CIQ Budget because he knew Sylabs' Trade Secrets would be used as the basis to procure the six CIQ Patents. *See* Exhs. 46, 56, 58, & 61.

110.    Various correspondence between Defendants proves their intentions to steal Sylabs' Trade Secrets, including Armored Containers. For example, on March 10, 2020, defendant Greg Kurtzer sent an email to defendants Buss, Adolph, and Prager: "Hi guys, Here is the formal SBIR Phase 1 Award. Greg." At this point defendant Buss and his co-defendants knew that the SBIR Phase 1, as well as follow-up awards for Phase 2 and Phase 3, were Sylabs' property and future business, as it was based and awarded on Sylabs' technology. Clearly, defendants Buss, Greg Kurtzer, Adolph, and Prager already had a plan underway in furtherance of their Conspiracy so that CIQ would benefit from SBIR Phase 1, Phase 2, and Phase 3, including planning on receiving SBIR revenues in CIQ's budget. *See e.g.* Decl. of Tarbell ¶ 41; Exhs. 46, 56, 58, & 61.

111.    Specifically, in a March 16, 2020, email to his co-defendants Buss, Greg Kurtzer, and Prager, defendant Adolph discussed Sylabs' SBIR that was stolen by Defendants for use by "NewCo," which the evidence demonstrates is defendant CIQ:

"Hi Marlin and Dave,

This is the NewCo next SBIR...This is them asking for the Sylabs Edge Solution. The current SBIR is just secure containers. . ."

See Decl. of Tarbell ¶ 41; Exhs. 56 & 58. Further, in a March 29, 2020, email sent by defendant Buss to his codefendants, Greg Kurtzer, Marlin Prager, and Robert Adolph, his involvement with SBIR through the U.S. Navy's program is evident:

"Interesting. I just received a LinkedIn connection request from Matt Williams, who runs the Navy's SBIR program. Of course I said yes and connected. Will reach out to him. Dave  David H. Buss CEO, OpenDrives, LLC"

*See* Decl. of Tarbell ¶ 41; Exh. 59.

112.    Banking on their theft of Sylabs' Trade Secrets, in March of 2020, after the U.S. Air Force awarded the Phase 1 SBIR to Sylabs, despite knowing that SBIR Phases 1, 2, and 3 were Sylabs' property, Defendants included **$7,050,000** of total revenue within **CIQ's** Budget regarding **Sylabs'** SBIR Award & Proposal: (a) USAF SBIR Phase 1,

LEPISCOPO & ASSOCIATES LAW FIRM

$50,000;  (b) USAF SBIR Phase 2, $2,000,000; and (c) USAF SBIR Phase 3, $5,000,000. *See* Exh. 38: Decl. of Tarbell ¶ 41; Exh. 56, p. 1.

113.    Simultaneously with the correspondence related to Sylabs' Armored Containers, on March 11, 2020, the same day that defendant Greg Kurtzer gave defendant Prager access to view a file on Sylabs' Computer Systems entitled "Email cover to Joel", which Prager promptly accessed, Greg Kurtzer also sent defendant Joel Whitley, a principal of defendant IAG, an email ("Kurtzer/Whitley Email"),  wherein he explains part of the Conspiracy to commit cyber theft of Sylabs' Trade Secrets and Sylabs' customers:

> "Dear Joel, . . .
>
> This will provide us with the ability to keep the team together and continue the development of Fuzzball/HPC-2.0. Additionally, we have some big name customers and opportunities we've been developing and this will allow us to continue bringing in the ARR (about $1M today) while also servicing a pipeline of $10M over the next 24 months.
>
> It is important to note that the intellectual property that we would need to build Fuzzball is all open source and I personally lead those respective open source projects and communities. Sylabs does have some commercial IP, which would be quite advantageous to have (e.g. Singularity Enterprise, which is not open source), but it is not a requirement for Fuzzball or any of our plans or projections for NEWCO. . .
>
> The second model demonstrates inclusion of an optimistic sales pipeline which includes multiple DOD awards, strategic development NREs, as well as building ARR. It also includes several new market injection points around Fuzzball, which are conservative."

*See* Exh. 46, pp. 1, 5-6.

114.    In the Kurtzer/Whitley Email (Exh. 46), defendant Greg Kurtzer incorrectly states that Fuzzball could be recreated through open-source programs—a clear admission as to Defendants' theft of Fuzzball through open sourcing it. This ignores the legal barrier to such a tactic because Fuzzball was already (and currently is) Sylabs' Trade Secret at the time that he sent this email.

LEPISCOPO & ASSOCIATES LAW FIRM

115.    In his email, Greg Kurtzer also indicates how advantageous it would be for Newco to have Singularity Enterprise, which was already and currently is Sylabs' Trade Secrets. Further, he references **Sylabs**' "**big name customers and opportunities**" as though they belonged to him and CIQ (*see* Exh. 46). This, of course, elucidates the reasons for Defendants' cyber theft—to bring Sylabs' Trade Secrets and assets to defendant CIQ without paying Sylabs. Accordingly, **ALL** Defendants benefited and are unjustly enriched through cyber theft, all of which are violations of DTSA, CFAA, and CUTSA.

116.    On March 17, 2020, defendants further admitted their unlawful scheme when defendants Adolph and Greg Kurtzer were in contact with Facebook, for the purpose of promoting Fuzzball for implementation when CIQ was finally launched on April 1, 2020:

> "I believe if we could work out an agreement for a yearly support/development model with you/your team, **we could easily sidetrack this situation and possibly even open a new entity focused on this solution (codename Fuzzball)**."

*See* Exh. 65 (emphasis added). Of course, opening a "new entity" in which to place Fuzzball was shorthand for the secret identity of **defendant CIQ**. Thus, Defendants were enticing Facebook to get involved in "the startup phase" of CIQ and Fuzzball. *See* Exh. 65.

117.    In furtherance of Defendants' Conspiracy and pursuant to their instructions, on March 27, 2020, and March 30, 2020, defendants Buss and Open Drives sent emails to Greg Kurtzer regarding the theft and planned use of Sylabs' SBIR. *See* Exh 38: Decl. of Tarbell ¶¶ 98-101. What at first glance might have seemed like benign correspondence between defendants Buss, Open Drives, Prager, and Greg Kurtzer soon revealed a hidden plot at the core: an HPC Whitepaper, which was authored and worked on by Sylabs' employees Adam Hughes and Mike Frisch. The Whitepaper contained Sylabs' opportunities with Fuzzball/HPC 2.0 but was fraudulently edited by defendant Adolph to read as though Sylabs' Trade Secrets and the opportunities expressed in that document had nothing to do with Sylabs, including listing **Open Drives' defendant Adolph and a certain Sean Lee as the authors**.

118.    Simultaneously, on March 18, 2020, defendant Greg Kurtzer commenced recruiting future employees and engineers, and solicited job applicants for defendant CIQ,

LEPISCOPO & ASSOCIATES LAW FIRM

and defendant Adolph also began corrupting, downloading, and/or editing Sylabs' files and folders that contained Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets.

119.    As Defendants' plans were in place and in the process of being executed, on March 22, 2020, defendant Greg Kurtzer resigned as Sylabs' CEO, which would become effective March 31, 2020. One day later, on March 23, 2020, defendants Julia Kurtzer, Fong, Hayden, and Adolph all followed suit and tendered their resignations, all effective on the same date, March 31, 2020. Decl. of Tarbell ¶¶ 8, 9, 22, 50-54, 56, 77, and 87.

120.    The day after his resignation, on March 23, 2020, defendant Greg Kurtzer revealed that Newco would now be formed and started the formation of Control Command, Inc. ("Control Command"). In fact, on this date he purchased the URL name for Control Command: "CTRL-CMD.COM." Greg Kurtzer later changed Control Command's official name to the name it currently holds, defendant CTRL IQ, INC. d/b/a CIQ.

121.    Around this timeframe, in order to steal Sylabs' customers and sales, defendant Greg Kurtzer arranged for all sales inquiries and purchase requests to be held until April 1, 2020, when he would no longer be employed by Sylabs, and **directed those sales inquiries and purchase requests to his Personal Email Accounts**.

122.    Almost simultaneously, on March 24 through 31, 2020, defendant Adolph commenced deleting and downloading items from Sylabs' Computer Systems by using defendant Greg Kurtzer's CIQ email account and defendant Adolph's personal email account. These deletions and downloads related primarily to Sylabs' Trade Secrets as confidentially presented in Sylabs' SBIR Proposal and Sylabs' development of opportunities and sales in the federal space.

123.    While it would take too many pages to delve into all the details of Defendants' cyber theft, one egregious example that deserves special attention is the method by which they stole and patented Sylabs' Fuzzball technology. On March 23, 2020, the day after he announced his resignation, defendant Greg Kurtzer destroyed Sylabs' Trade Secrets by releasing Sylabs' Fuzzball technology—**which was secret and closed source**—to open-source. He did this so that Defendants could use it (but would not have

LEPISCOPO & ASSOCIATES LAW FIRM

to pay for it) when they started defendant CIQ. This falls under the rubric of cyber theft known as cyber destruction of Sylabs' Trade Secrets.

124.    In order to provide context for this assertion, the following general outline of Fuzzball's development is provided. On December 19, 2019, a Zoom meeting was held during which time Sylabs commenced its planning of the design and development of Fuzzball, including preparation of an initial planning document ("Fuzzball Planning Document"). **It is important to note that defendant <u>Buss</u> attended this 12/19/19 Fuzzball Planning Meeting, as well as other meetings**. On February 19, 22, and 27, 2020, Sylabs conducted internal demonstrations of how Fuzzball worked. On March 4, 2020, Sylabs created an internal document titled, "Rough Draft" of Fuzzball talking points ("Fuzzball Talking Points"), which provided a general description and discussion of Sylabs' Fuzzball trade secrets.

125.    As additional background, Sylabs' Trade Secrets in the form of Fuzzball were contained in multimedia files (i.e., video and audio files in mp4 format). These files related to what Sylabs' calls, "All Hands" meetings, which means: a meeting with the entire company to gather everyone and obtain updates on each component of the business, to put out guidance, make changes to policy or products and any other items that may be discussed. In this context, the "All Hands" meetings concerned the design, development, and design reviews of Sylabs' Trade Secrets relating to Fuzzball. Tarbell's forensic examination of Sylabs' Audit Logs revealed that Defendants **trashed and deleted** video and audio files constituting Sylabs' Trade Secrets relating to Fuzzball—this is clear damage to Sylabs (CIQ's competitor) under Sections 1030(e)(8) and 1030(e)(6) of the CFAA, and, of course, this occurred after Defendants downloaded all of these to their personal, external emails and servers so they could be used by Defendants to launch defendant CIQ and procure the Fuzzball patents. *See* Exh. 38: Decl. of Tarbell ¶¶ 102 and 103; Exhs. 37, 39, and 40).

126.    Hoping to cover their cyber theft and destruction, on April 15, 2020 (<u>after</u> Greg Kurtzer, et al. had departed from Sylabs), Defendants surreptitiously and without

authorization accessed Sylabs' Computer Systems to <u>return</u> one of the 12/31/19 Fuzzball All Hands meeting recordings, which had been trashed and deleted on March 26, 2020,

127.    As further proof of their intention to steal Fuzzball, in the CIQ Budget Defendants further revealed their unlawful intentions when they treated Fuzzball as their own. Specifically, in the CIQ Budget, Defendants identify six different Fuzzball products based on **Sylabs' Fuzzball Trade Secrets**, which would be sold by CIQ: (a) Fuzzball licensing and support; (b) FuzzStack; (c) FuzzStack on hardware; (d) FuzzCloud (SaaS); (e) FuzzSecure; and (f) FuzzEdge. *See* Exh. 56, p. 1.

128.    Defendants also accessed and copied Sylabs' Computer Systems and Data in order to steal and misappropriate Sylabs' corporate secrets, including Sylabs' corporate documents and minutes of shareholder and board of directors' meetings ("Sylabs' Corporate Records"), financial records ("Sylabs' Financial Records"), partner and joint venture records ("Collaboration Records"), customer list ("Sylabs' Customer List"), sales and potential sales lists ("Sylabs' Sales Lists"), statements of work ("Sylabs' SOWs"), purchase orders ("Sylabs' POs"), invoices ("Sylabs' Invoices"), marketing strategies, plans, and pricing ("Sylabs' Marketing"), and prospective investors list ("Sylabs' Investors"), all of which may be referred to collectively as "Sylabs' Corporate Secrets."

129.    Between March 22 through 31, 2020, Defendants agreed to engage in unauthorized access for the purpose of having defendant Greg Kurtzer change the accessibility and ownership of email contact information on Sylabs' Computer Systems that contained Sylabs' contacts, customers, pending deals, and meeting appointments. This was done so Defendants could convert it to .csv formatted files used for creating spreadsheets. Sylabs' files included, for example: (a) Emails.csv; (b) Contact_Emails.csv; (c) Lead_Emails.csv; (d) Deal_Contacts.csv; and (e) Appointment_Attendees.csv. *See* Exh. 38: Decl. of Tarbell ¶ 51.h.

130.    As Greg Kurtzer's time ran short at Sylabs, on March 29, 2020, in order to further Defendants' Conspiracy to steal Sylabs' Computer Systems and Data, former Sylabs employee Rose Stein transferred her ownership and administrative credentials in

LEPISCOPO & ASSOCIATES LAW FIRM

Sylabs' Computer Systems to defendant Greg Kurtzer. He then proceeded to access and download all of the documents from Sylabs' Computer Systems, as well as manipulating them in a manner to conceal his unauthorized access. He also altered sharing permissions on hundreds of folders and tens of thousands of files. Thus, between March 26 through 29, 2020, defendant Greg Kurtzer committed comprehensive cyber destruction and cyber theft by downloading the entire Sylabs Computer Systems to his Private Email.

131. Overall, Greg Kurtzer and the other former employees of Sylabs downloaded, deleted, and trashed thousands of folders and files on Sylabs' Computer Systems as they were walking out the door to work at CIQ; in some cases, these acts were committed when they were no longer at Sylabs, as they accessed Sylabs' Computer Systems and Data without authorization, and violated the IP Assignment/NDA Agreements (Exhs. 48-52). *See* Exh. 38: Decl. of Tarbell ¶¶ 8, 9, 22, 50-54, 56, 77, & 87.

132. Starting on April 2, 2020, and continuing thereafter, Greg Kurtzer and Defendants Adolph, Hayden, and Fong knowingly made numerous unauthorized intrusions into Sylabs' Computer Systems and Data and downloaded thousands of directories and files, and deleted, trashed, created, downloaded, and viewed Sylabs' Data. *See* Exh. 38: Decl. of Tarbell ¶¶ 8, 9, 22, 29, ,30, 34, 50-54, 56, 77, and 87. At this point 300 Sylabs' files were trashed. *See* Exh. 38: Decl. of Tarbell ¶ 130.

133. One example of Greg Kurtzer's unauthorized access after his employment at Sylabs had ended was on April 2, 2020, accessed Sylabs' sales content for the unlawful betterment of CIQ. Additionally, Greg Kurtzer also gave access to three external accounts to Defendants Prager/Open Drives (m.prager@opendrives.com), Whitley/IAG (joel.whitley@gmail.com), and his personal email (gmkurtzer@gmail.com) for the purpose of unlawfully accessing Sylabs' Computer Systems and Data. These actions led directly to the downloading of over 1,000 of Sylabs' files and unauthorized external access to Sylabs' folder "All Corporate Docs." *See* Exh. 38: Decl. of Tarbell ¶¶ 131 & 135.

/////

/////

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

## Greg Kurtzer's Cyber Intrusion, Cyber Corruption, and Cyber Destruction, and Cyber Theft and Misappropriation

134.    In addition to his aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendant Greg Kurtzer, without authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendant also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were provided to defendant CIQ for its use and benefit. Said defendant's actions constitute violations of DTSA, CFAA, and CUTSA.

## Julia Kurtzer's Cyber Intrusion, Cyber Corruption, and Cyber Destruction, and Cyber Theft and Misappropriation

135.    In addition to her aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendant Julia Kurtzer (Greg Kurtzer's wife), without authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendant also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were provided to defendant CIQ for its use and benefit. Said defendant's actions constitute violations of DTSA, CFAA, and CUTSA.

136.    For example, on April 16, 2020, after she had left Sylabs, defendant Julia Kurtzer remotely and surreptitiously accessed Sylabs' Computer Systems and Data to

further Defendants' cyber theft of Sylabs' customers, sales, and opportunities by downloading and emailing Sylabs' Purchase Orders received from customers to defendants Greg Kurtzer, Fong, and Adolph. One purchase order was from SHI International Corporation for an order for SingularityPRO for 200 nodes for 1 year and SingularityPRO for 100 nodes to six months. Consequently, Sylabs lost this customer to defendant CIQ through Defendants' cyber theft of Sylabs' Corporate Assets.

### Matthew Hayden's Cyber Intrusion, Cyber Corruption, and Cyber Destruction, and Cyber Theft and Misappropriation

137.   In addition to his aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendant Hayden, without authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendant also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were provided to defendant CIQ for its use and benefit. Said defendant's actions constitute violations of DTSA, CFAA, and CUTSA.

138.   For example, beginning as early as March 1, 2020, and continuing through March 22, 2020, Defendant Hayden instructed his wife, Shara Hayden, to help him steal and misappropriate Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets. During this time frame and at defendant Hayden's direction, Mrs. Hayden corrupted, deleted, viewed, downloaded, and/or edited hundreds of folders and files in Sylabs' systems in anticipation of defendant Hayden's rapidly approaching departure from Sylabs. Moreover, on March 26, 2020, just days before defendant Hayden's resignation, Shara Hayden unlawfully accessed Sylabs' Computer Systems and Data and corrupted and deleted over three hundred files and folders. For example, from March 1, 2020, through

LEPISCOPO & ASSOCIATES LAW FIRM

March 22, 2020, Shara Hayden used her Sylabs' account, shara@sylabs.io, to: trash 12 files; create 3 files; delete 28 files; download 4 files; edit 9 files; download 4 files; rename a file; and view 16 files. See Exh 38: Decl. of Tarbell ¶¶ 85-86. On March 26, 2020, Shara Hayden took the following actions on Sylabs' Computer Systems and Data: trashed 94 folders; trashed 256 files; deleted 95 folders; and deleted 255 files. *See* Exh 38: Decl. of Tarbell ¶ 87.

139.    Between April 5, 2020, and April 9, 2020, well after he left his employment with Sylabs, defendant Hayden unlawfully used his Sylabs' account, matt@sylabs.io, to conduct unauthorized intrusions into Sylabs' Computer Systems and Data. *See* Exh 38: Decl. of Tarbell ¶ 61. For example, on April 5, 2020, defendant Hayden used his Sylabs' account to create the file "Untitled document" on Sylabs' Computer Systems. This same account then edited the file "Untitled document" over the next approximately 90 minutes to and renamed the file to "Direct to Phase II." Defendant Hayden continued to edit the file "Direct to Phase II" for nearly two hours. Finally, he downloaded the file twice from Sylabs' Computer Systems. Along with downloading the file "Direct to Phase II," defendant Hayden downloaded 47 other files from Sylabs' Computer Systems on April 5, 2020. *See* Exh 38: Decl. of Tarbell ¶¶ 62-65.

140.    On April 9, 2020, HAYDEN's account matt@sylabs.io unlawfully accessed Sylabs' Computer Systems and Data and deleted the file ".DS_Store." The listed owner of this file in the audit logs was "DoD," the Department of Defense. The deletion of the file ".DS_Store" on April 9, 2020, by HAYDEN's account matt@sylabs.io logged into Sylabs' Computer Systems from the exact same IP address he used to access Sylabs' Computer Systems and Data between March 2, 2020, and March 16, 2020, to perform approximately 81 recorded activities. In fact, defendant Hayden in particular is guilty of accessing, stealing, and destroying highly confidential documents relating to Sylabs' Armored Containers technology. Commencing on March 24 and continuing through April 6, 2020, defendant Hayden commenced his cyber theft of Sylabs' Corporate Secrets by accessing Sylabs' Computer Systems and Data and downloading Sylabs' SBIR Proposal and work

LEPISCOPO & ASSOCIATES LAW FIRM

relating to Sylabs' SIF and Armored Containers technology utilized with the National Security Agency ("NSA") in 2018 through 2019. It may be that this particular cyber theft will involve Defendants' criminal violations relating to a federal agency operating in an extremely high national security environment, *i.e.*, **the NSA**. *See* Exh. 38: Decl. of Tarbell ¶¶ 66 & 67.

<div align="center">

**Robert Adolph's Cyber Intrusion, Cyber Corruption,
and Cyber Destruction, and Cyber Theft and Misappropriation**

</div>

141.   In addition to his aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendant Adolph, without authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendant also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were provided to defendant CIQ for its use and benefit. Said defendant's actions constitute violations of DTSA, CFAA, and CUTSA.

142.   In furtherance of Defendants' Conspiracy and pursuant to their instructions, during the month of March 2020, prior to tendering his resignation, defendant Adolph used his Sylabs email account, robert@sylabs.io, to trash 24 files, create 10 files, download 11 files, edit 14 files, change link sharing access and visibility on 5 files, rename 4 files; and change user sharing permissions on 3 files. *See* Exh 38: Decl. of Tarbell ¶¶ 56 and 57.

143.   In addition, on March 18, 2020, Robert Adolph's Sylabs email account robert@sylabs.io changed the permissions on the file "HPC is at the heart of Sylabs" in Sylabs' Computer Systems for external account m.prager@opendrives.com from "None" to "Can edit." Just 76 seconds after changing this permission, robert@sylabs.io changed the file's name from "HPC is at the heart of Sylabs" to "Disrupt the Status Quo - HPC

Taken to the Next Level." This permission change by robert@sylabs.io allowed this external account, m.prager@opendrives.com, to view the "Disrupt the Status Quo - HPC Taken to the Next Level" in Sylabs' Computer Systems on March 19, 2020, and March 21, 2020. *See* Exh. 38: Decl. of Tarbell ¶ 96.

144.    On March 19, 2020, external account m.prager@opendrives.com edited the file "Disrupt the Status Quo - HPC Taken to the Next Level." The permission change by robert@sylabs.io allowed this external account, m.prager@opendrives.com, to edit and alter a file that was on Sylabs' Computer Systems. *See* Exh. 38: Decl. of Tarbell ¶ 96.

### Erin Fong's Cyber Intrusion, Cyber Corruption, and Cyber Destruction, and Cyber Theft and Misappropriation

145.    In addition to her aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendant Fong, without authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendant also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were provided to defendant CIQ for its use and benefit. Said defendant's actions constitute violations of DTSA, CFAA, and CUTSA.

146.    In furtherance of Defendants' Conspiracy and pursuant to their instructions, prior to her resignation from Sylabs, defendant Fong used her Sylabs email account, erin@sylabs.io, to: edit 11 files (editing one file 18 times on March 24, 2020); change permissions for "Untitled spreadsheet" so anyone could view and edit the file; rename a file, upload 1 file; download 18 files; view 28 files; create 5 files. See Exh 38: Decl. of Tarbell ¶¶ 71-73.

147.    It appears that defendant Fong was working with Rose Anne Stein as she executed her portion of the raid on Sylabs' Computer Systems and Data. On March 16, 2020, Rose used her second Sylabs' account, anne@sylabs.io, to: create a file named "Untitled document." This file was then renamed to "Email Templates." Rose Anne Stein then changed the link sharing visibility of this file from "Private" to "Anyone with the link within the domain for sylabs.io." She then changed this document's link sharing access type from "None" to "Can view for sylabs.io" to "Can edit for sylabs.io." Also on March 16, 2020, Rose Anne Stein downloaded, viewed, and edited this file multiple times. On March 16, 2020, and March 17, 2020, this same file was subsequently viewed and edited by defendant Fong. *See* Exh 38: Decl. of Tarbell ¶¶ 78-80.

148.    In furtherance of Defendants' Conspiracy and pursuant to their instructions, on April 2, 2020, after her departure from Sylabs, defendant Fong unlawfully accessed Sylabs' Computer Systems and Data to steal .cvs files containing Sylabs' members so that CIQ could use the information to populate spreadsheets to conduct marketing for CIQ. *See* Exh 38: Decl. of Tarbell ¶ 74.

## Marlin Prager, David Buss, and Open Drives' Cyber Intrusion, Cyber Corruption, and Cyber Destruction, and Cyber Theft and Misappropriation

149.    In addition to their aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendants Prager and Buss, separately and with defendant Open Drives' approval and ratification, without Sylabs' authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendants also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

provided to defendant CIQ for its use and benefit. Defendants Prager, Buss, and Open Drives' actions constitute violations of DTSA, CFAA, and CUTSA.

150.    On March 8, 2020, and March 9, 2020, March 11, 2020, March 18, 2020, and March 19, 2020, respectively, defendant Greg Kurtzer changed the permissions on four files in Sylabs' Computer Systems for external access for defendants Prager and Open Drives so that they could access them through defendant Prager's email, m.prager@opendrives.com. *See* Exh 38: Decl. of Tarbell ¶¶ 93-97. As a result, between March 8, 2020, and March 21, 2020, defendants Prager and Open Drives viewed four files on Sylabs' Computer Systems. *See* Exh 38: Decl. of Tarbell ¶ 92. Not only did Prager view four files on Sylabs' Computer Systems, but also on March 19, 2020, external account m.prager@opendrives.com edited the file "Disrupt the Status Quo - HPC Taken to the Next Level." *See* Exh. 38: Decl. of Tarbell ¶ 97.

151.    During defendant Buss's involvement in the theft of Sylabs' Armored Containers technology, the Audit Logs show a series of emails he used with his Open Drives' email, d.buss@opendrives.com, for the timeframe March 10, 2020, through March 29, 2020. These intrusions by defendant Buss reveal his involvement in all aspects of the Conspiracy and planning of the transition of Sylabs' business to CIQ. *See* Exhs. 56 and 62: 3/10/20 email (pp. 1-2), 3/13/20 email (p. 3), 3/16/20 email (p. 4), 3/19/20 email (pp. 5-8), 3/19/20 email (p. 9), 3/27/20 email (pp.  10-11), and 3/29/20 email (p. 12).

152.    Further, defendant Buss' unlawful email activity with his co-defendant Adolph was ongoing from March 8, 2020, through March 30, 2020, regarding Sylabs' SBIR and other issues relating to Sylabs' ongoing business and defendant CIQ's pre-start up business. *See* Exh. 38: Decl. of Tarbell ¶¶ 41 and 98-101.

## Joel Whitley and IAG Defendants' Cyber Intrusion, Cyber Corruption, and Cyber Destruction, and Cyber Theft and Misappropriation

153.    In addition to their aforementioned unlawful acts, as alleged in greater detail above, Sylabs is informed and believes and based on such information and belief alleges that during the timeframe of January 1, 2020, through June 30, 2020, defendant Whitley,

LEPISCOPO & ASSOCIATES LAW FIRM

with IAG defendants' approval and ratification, without Sylabs' authorization, improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets. Said defendants also, without authorization, improperly accessed Sylabs' Computer Systems and Data for the purpose of cyber theft and misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets, all of which were provided to defendant CIQ for its use and benefit. Defendants Whitley and IAG Defendants' actions constitute violations of DTSA, CFAA, and CUTSA.

154.   In furtherance of Defendants' Conspiracy and pursuant to their instructions, an email account belonging to defendant Joel Whitley that was external to Sylabs, joel.whitley@gmail.com, had access to Sylabs' Google Drive. At this time defendant Joel Whitley was a principal of and employed by the IAG defendants. *See* Exh. 38: Decl. of Tarbell ¶ 131. Specifically, on March 12 and 13, 2020, defendant Greg Kurtzer changed the permissions on 39 files in Sylabs' Computer Systems and Data so external threats, defendants Whitley and IAG defendants, could access through Whitley's personal G-mail, joel.whitley@gmail.com. *See* Exh 38: Decl. of Tarbell ¶ 89.

155.   In furtherance of Defendants' Conspiracy and pursuant to their instructions, with the permissions defendant Greg Kurtzer provided to defendants Whitley and IAG, on March 13, 2020, defendants Whitley and IAG downloaded the document titled "Fuzz Budget" from Sylabs' Computer Systems and Data. Then, on March 13, 2020, defendants Whitley and IAG, as external threats, viewed 14 files on Sylabs' Computer Systems and Data, including files relating to Fuzzball and Sylabs' corporate records. On March 13, 2020, Whitley viewed these files on Sylabs' Computer Systems through his external account, joel.whitley@gmail.com, and downloaded the file "Fuzz Budget" from Sylabs' Computer System. *See* Exh 38: Decl. of Tarbell ¶¶ 88. 89, and 90-91.

/////

/////

1

2

## IX.
## CLAIMS FOR RELIEF

3

4    156.    Sylabs alleges the following claims for relief against Defendants, jointly and
severally.

5

6    ### COUNT I

### VIOLATIONS OF DEFEND TRADE SECRETS ACT

7    (Against Defendants Gregory Rose a/k/a Gregory M. Kurtzer; Matthew Hayden;
CTRL IQ, Inc. d/b/a CIQ, Only)

8

9    157.    The allegations in Paragraphs 1 to 155 are incorporated herein by reference.

10    158.    In the 2nd MTD Order, the Court held that Sylabs has stated claims under
the DTSA and CUTSA against defendants CIQ, Greg Kurtzer, and Matthew Hayden but

11

12    dismissed these claims against the remaining defendants with**out** leave to amend. *See* Dkt.
80, p. 9, ll. 22-26, and details at Dkt. 80, p. 6, l. 12 through p. 9, l. 26.

13

14    159.    In its 2nd MTD Order, the Court held that Sylabs has sufficiently alleged that
Sylabs owns the following five (5) Trade Secrets to satisfy the pleading requirements under

15

16    Rule 12(b)(6) and DTSA: "(1) SingularityPRO, (2) SIF technology, (3) Singularity
Enterprise, (4) Fuzzball and (5) Armored Containers. . .Thus, Sylabs has sufficiently

17    alleged ownership of five trade secrets." *See* 2nd MTD, Dkt. 80, p. 7, ll. 1-2 and 20.

18    160.    In Sections VII-VIII, above, incorporated herein by this reference, Sylabs

19    provides significant and detailed allegations sufficiently stating claims against defendants
for violations of DTSA, CFAA, and CUTSA.

20

21    161.    **Unlawful Conduct Engaged In By Defendants After Mass Resignation
From Sylabs**. In addition to their aforementioned unlawful acts, as alleged in greater detail

22

23    in Section VIII, Sylabs is informed and believes, and based upon such information and
belief alleges that in furtherance of their Conspiracy with their codefendants, defendants

24

25    Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, and Prager, and, through their
respective officers, defendants CIQ and Open Drives, agreed to a mass resignation from

26

27    Sylabs but to continue engaging in unauthorized access even **after** they departed Sylabs on

28

LEPISCOPO & ASSOCIATES LAW FIRM

March 31, 2020. For example, between April 2, 2020, and April 15, 2020, defendants Greg Kurtzer, Adolph, Hayden, Julia Kurtzer, and Fong made significant and ongoing unlawful cyber intrusions into Sylabs' Computer Systems and Data for the purposes of: (a) corrupting and damaging to Sylabs' Computer Systems and Data; and (b) cyber theft and misappropriation of Sylabs' Trade Secrets, Corporate Assets, and Sylabs' Corporate Secrets.  *See* Exh. 38: Decl. of Tarbell ¶¶ 1-127.

162.    As alleged in greater detail in this Count and in Sections VII-VIII, defendants CIQ, Greg Kurtzer, and Hayden' actions constitute actual, and threatened and ongoing violations under DTSA, 18 U.S.C. §§ 1836 and 1839: (a) cyber corruption and damage to Sylabs' Sylabs' Computer Systems and Data; and (b) cyber theft and misappropriation of Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets.  *See* Exh. 38: Decl. of Tarbell ¶¶ 1-127; Exhs. 37-43, 46 & 47.

163.    As alleged in Section VII, above, during all relevant times Sylabs owned Sylabs' Trade Secrets, Corporate Secrets, and/or other protected information, as Sylabs is the entity in which rightful legal or equitable title to Sylabs' Trade Secrets, Corporate Secrets, and other protected information is reposed.

164.    As alleged in greater detail in this Count and in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden intended to and knowingly caused damage to Sylabs and Sylabs' Computer Systems and Data, and  accessed Sylabs' Computer Systems and Data without authorization and disclosed, acquired, used, copied, downloaded, uploaded, photocopied, replicated, transmitted, delivered, communicated, or conveyed Sylabs' Trade Secrets, Corporate Secrets, and/or other protected information. They performed such acts in furtherance of the Conspiracy and to perpetrate the theft and misappropriation of Sylabs' Trade Secrets, Corporate Secrets, and/or other protected information, all of which constitute violations under DTSA, 18 U.S.C. §§ 1836 and 1839.

165.    As alleged in greater detail in this Count and in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden intended to and knowingly caused damage to Sylabs and Sylabs' Computer Systems and Data, and  stole and misappropriated Sylabs'

LEPISCOPO & ASSOCIATES LAW FIRM

Trade Secrets, Corporate Assets, and Corporate Secrets through cyber theft, and then perpetrated a fraud on the USPTO by submitting fraudulent patent applications to the USPTO and receiving fraudulently obtained patents, to wit: US 10,970,113 (Exh. 37); US 11,099,893 (Exh. 39); US 11,310,342 (Exh. 40); US 11,055,428 (Exh. 41); US 11,163,902 (Exh. 42); and US 11,321,064 (Exh. 43).

166.    As alleged in greater detail in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden acquired, used, or disclosed Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets knowing that they were stolen and misappropriated through defendants CIQ, Greg Kurtzer, and Hayden's cyber theft of Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets without Sylabs' consent or authorization. Further, defendants CIQ, Greg Kurtzer, and Hayden intentionally engaged in these acts to benefit themselves, with the knowledge and/or intent that these acts would injure Sylabs and cause damage to Sylabs and Sylabs' Computer Systems and Data, all of which constitute violations under DTSA, 18 U.S.C. §§ 1836 and 1839.

167.    The cyber corruption, cyber destruction, cyber theft and use of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information by defendants CIQ, Greg Kurtzer, and Hayden was without Sylabs' authorization, and Sylabs did not consent to their cyber corruption, cyber destruction, cyber theft, acquisition, disclosure, or use of Sylabs' Trade Secrets, Corporate Secrets, and other protected information, all of which constitute violations under DTSA, 18 U.S.C. §§ 1836 and 1839.

168.    At all times mentioned in this Complaint, defendants CIQ, Greg Kurtzer, and Hayden intended to corrupt and cause damage to Sylabs and Sylabs' computer server, data, folders, files, and directories and to convert, misappropriate, and steal Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets to their own use and benefit and for their own enrichment, all of which constitute violations under DTSA, 18 U.S.C. §§ 1836 and 1839.

/////

/////

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

169. As alleged in greater detail in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden' clearly knew and intended that Sylabs would be damaged by their actions, all of which constitute violations under DTSA, 18 U.S.C. §§ 1836 and 1839.

170. As alleged in greater detail in this Count and in Sections VII-VIII, above, as a result of defendants CIQ, Greg Kurtzer, and Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets, Sylabs has suffered actual damages in an amount that greatly exceeds $75,000.

171. As alleged in greater detail in this Count and in Sections VII-VIII, above, as a result of defendants CIQ, Greg Kurtzer, and Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets, defendants CIQ, Greg Kurtzer, and Hayden have been unjustly enriched.

172. As alleged in greater detail in this Count and in Sections VII-VIII, above, as a result of defendants CIQ, Greg Kurtzer, and Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets, Sylabs requests that the Court issue an order that all right, title, and interest in and to the Stolen Patents be divested from defendant CIQ and fully vested in Sylabs, and that the currently listed inventors in the Stolen Patents be removed and replaced with the names of Sylabs' relevant employees as the sole inventors.

173. Sylabs further pleads entitlement to a reasonable royalty from each of the Stolen Patents to compensate Sylabs for defendants CIQ, Greg Kurtzer, and Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets in an amount that greatly exceeds $75,000.

174. Sylabs further pleads entitlement to a disgorgement of profits received from each of the Stolen Patents to compensate Sylabs for defendants CIQ, Greg Kurtzer, and

LEPISCOPO & ASSOCIATES LAW FIRM

Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets in an amount that greatly exceeds $75,000.

175. Sylabs pleads entitlement to all funds defendants CIQ, Greg Kurtzer, and Hayden have raised due to their violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets in an amount that exceeds $25,000,000.

176. As alleged in greater detail in this Count and in Sections VII-VIII, above, the defendants CIQ, Greg Kurtzer, and Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets was willful and malicious based on the facts alleged herein. Defendants CIQ, Greg Kurtzer, and Hayden acted with a purpose and willingness to commit the acts alleged, and defendants CIQ, Greg Kurtzer, and Hayden's conduct was not reasonable under the circumstances. Sylabs is therefore entitled to exemplary damages and attorney fees and costs. Sylabs further seeks exemplary damages against defendants CIQ, Greg Kurtzer, and Hayden' in an amount up to two times the amount of Sylabs' actual damages according to proof under 18 U.S.C. § 1836.

177. As alleged in greater detail in this Count and in Sections VII-VIII, above, the defendants CIQ, Greg Kurtzer, and Hayden's violation of 18 U.S.C. §§ 1836(b)(3) through their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Data, Trade Secrets, Corporate Assets, and Corporate Secrets has caused and will continue to cause Sylabs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. As alleged in greater detail in this Count and in Sections VII-VIII, above, if defendants CIQ, Greg Kurtzer, and Hayden were permitted to continue to use and disseminate Sylabs' Trade Secrets, Corporate Assets, and Corporate Secrets, then Sylabs would be irreparably harmed and the economic damages to Sylabs would be difficult to quantify. An injunction prohibiting Defendants from further acquisition, disclosure, use, and possession of Sylabs' Trade Secrets, Corporate Secrets, and other privileged and

protected information is necessary to provide Sylabs with complete relief pursuant to 18 U.S.C. §§ 1836(b)(3).

## COUNT II

### VIOLATIONS OF COMPUTER FRAUD AND ABUSE ACT

(Against Defendants, Gregory Rose a/k/a Gregory M. Kurtzer, Julia Rose a/k/a Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, CTRL IQ, Inc. d/b/a CIQ, Open Drives, Inc., David Buss, Marlin Prager, Joel Whitley, IAG Fund II, LP a/k/a IAG Capital Partners, and IAG Capital Holdings II, LLC a/k/a IAG Capital Partners)

178.    The allegations in Paragraphs 1 to 155 are incorporated herein by reference.

179.    As a direct consequence of their aforementioned unlawful acts, as alleged in in Section VIII, Sylabs is informed and believes and based upon such information and belief alleges that defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, Prager, and Whitley, and, through their respective officers, CIQ, Open Drives, and IAG benefited and enriched CIQ through said unlawful actions in violation of 18 USC §§ 1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(B), and 1030(a)(5)(C).

180.    In addition to their aforementioned unlawful acts, as alleged in Section VIII, Sylabs is informed and believes and based upon such information and belief alleges that defendants Buss and Prager were acting individually and collectively upon the instructions and on behalf of defendant Open Drives to enrich defendant Open Drives, and defendant Open Drives authorized and ratified and benefited from defendants Buss and Prager's violations of CFAA, in particular 18 USC §§ 1030(a)(4) and 1030(a)(5)(A)-(C).

181.    In addition to their aforementioned unlawful acts, as alleged in in Section VIII, Sylabs is informed and believes and based upon such information and belief alleges that defendant Whitley was acting upon the instructions and on behalf of IAG defendants to enrich IAG defendants, and IAG defendants authorized and ratified and benefited from defendant Whitley's violations of CFAA, 18 USC §§ 1030(a)(4) and 1030(a)(5)(A)-(C).

182.    In addition to their aforementioned unlawful acts, as alleged in in Section VIII, Sylabs is informed and believes, and based on such information and belief alleges that on or about March 8, 2020, defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden,

Fong, Buss, Prager, and Whitley, and, through their respective officers, CIQ, Open Drives, and IAG, agreed to engage in unauthorized access for the purpose of helping defendant Greg Kurtzer engage in cyber corruption and cyber destruction of Sylabs' Computer Systems and Data in violation of CFAA, violations of CFAA, 18 USC §§ 1030(a)(4) and 1030(a)(5)(A)-(C).

183.   In Sections VI-VIII, above, Sylabs provides significant and detailed allegations sufficiently stating claims against all Defendants for violation of CFAA, 18 USC §§ 1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(B), and 1030(a)(5)(C).

184.   In the 2nd MTD Order, the Court found the following deficiency regarding Sylabs' claim under the CFAA:

> "C. Sylabs CFAA Claim Fails
>
> "The CFAA prohibits a number of different computer crimes. . .Yet nowhere in the FAC does Sylabs identify which particular provisions Defendants allegedly violated. Sylabs has therefore failed to state a claim under the CFAA. . .The Court also recognizes that Sylabs excerpts in the FAC certain provisions of the CFAA "[i]n its relevant part." See FAC ¶ 383. However, these excerpts remain outside the section of the FAC in which Sylabs expressly discusses its CFAA cause of action. . . .The FAC fails to provide such sufficient notice because it is not clear whether Sylabs alleges Defendants violated the excerpted provisions of the CFAA."

*See* 2nd MTD, Dkt. 80, p. 10, ll. 1-3, 5-8, and 14-24. However, the Court went on to provide leave to amend and advised how this deficiency could be easily cured by Sylabs:

> "• **Violations Of The CFAA.** Leave to amend. The FAC's deficiencies on this claim (to the extent identified in this Order) stem from Sylabs' failure to identify the specific provisions of the statute that Defendants' allegedly violated. **Sylabs can easily cure that deficiency in an amended pleading**."

*See* 2nd MTD, Dkt. 80, p. 18, ll. 5-8 (emphasis in original and added).

185.   Sylabs' Computer Systems and Data were "computers" as defined by 18 U.S.C. § 1030(e)(1).

186.   Sylabs' Computer Systems and Data were "protected computers" as defined by 18 U.S.C. § 1030(e)(2)(B) because they are "used in or affecting interstate or foreign commerce or communication."

187.   The factual allegations set forth below and in Sections VI-VIII, above, demonstrate that Defendants, collectively and individually, violated 18 U.S.C. § 1030(a)(2) because they intentionally accessed and caused to be accessed Sylabs' Computer Systems and Data, without authorization and, on information and belief, obtained data from Sylabs' Computer Systems and Data, all of which benefited and enriched Defendants.

188.   The factual allegations set forth below and in Sections VI-VIII, above, demonstrate that Defendants, collectively and individually, violated 18 U.S.C. § 1030(b) by conspiring and attempting to commit and succeeding in committing the violations alleged herein, all of which benefited and enriched Defendants.

189.   The factual allegations set forth below and in Sections VI-VIII, above, demonstrate that Defendants, collectively and individually, violated 18 U.S.C. § 1030(b), and that in doing so Defendants' conduct caused a loss to Sylabs exceeding $5,000 during a one-year period, and, in fact, in an amount between $33M and $150M.

190.   The factual allegations set forth below and in Sections VI-VIII, above, demonstrate that defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and IAG Capital Holdings II, collectively and individually,  collaborated together and used multiple devices to access, and actually accessed, Sylabs' Computer Systems and Data without authorization and/or in excess of authorization for the express purposes of:

a.   defrauding Sylabs and obtaining business value in an amount between $33M and $150M in violation of CFAA, 18 USC § 1030(a)(4);

b.   intentionally damaging Sylabs' Computer Systems and Data by knowing transmission in violation of CFAA, 18 USC § 1030(a)(5)(A);

c.   recklessly damaging Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B);

d.   negligently causing damage and loss in an amount between $33M and $150M by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(C).

191.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and IAG Capital Holdings II used and/or disclosed and continue to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit themselves in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

192.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Greg Kurtzer used and/or disclosed and continues to use and/or disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit himself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

193.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Julia Kurtzer used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit herself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

194.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Adolph used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit himself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

195.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Hayden used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit himself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

LEPISCOPO & ASSOCIATES LAW FIRM

196.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Fong used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit herself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

197.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant CIQ used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit itself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

198.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Open Drives used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit itself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

199.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Buss used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit himself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

200.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Prager used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit himself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

201.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Whitley used and/or disclosed and continues to use and disclose Sylabs'

Trade Secrets, without Sylabs' consent or permission, to benefit himself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

202.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant IAG Fund II used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit itself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

203.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant IAG Capital Holdings II used and/or disclosed and continues to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit itself in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

204.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and IAG Capital Holdings II used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

205.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Greg Kurtzer used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

206.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Julia Kurtzer used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

LEPISCOPO & ASSOCIATES LAW FIRM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEPISCOPO & ASSOCIATES LAW FIRM

207.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Adolph used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

208.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Hayden used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

209.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Fong used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

210.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant CIQ used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

211.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Open Drives used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

212.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Buss used and/or disclosed Sylabs' Trade Secrets, maliciously and in

1

2

3

4

5

6

7

8

9

10

11

LEPISCOPO & ASSOCIATES LAW FIRM

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

213.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Prager used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

214.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant Whitley used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

215.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant IAG Fund II used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

216.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 2, 2020, through the present, defendant IAG Capital Holdings II used and/or disclosed Sylabs' Trade Secrets, maliciously and in willful and conscious disregard of the rights of Sylabs in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C).

217.    As alleged in Section VIII, During the time frame January 1, 2020, through June 30, 2020, Defendants were insider threats to Sylabs (Decl. of Tarbell ¶ 30), and, as such, Defendants engaged in unauthorized insider and external cyber intrusions to Sylabs' Computer Systems and Data. *See* Exh. 38: Decl. of Tarbell ¶¶ 31-127. In addition to the aforementioned unauthorized accesses to Sylabs' Computer Systems and Data, Sylabs is informed and believes, and based upon such information and belief alleges that during the

time frame January 2, 2020, through April 16, 2020, Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and/or IAG Capital Holdings, II utilized numerous Internet Protocol addresses ("IP addresses") to remotely access Sylabs Computer Systems from the following IP addresses and locations inside and outside the United States of America ("US"):

| IP address | Location |
|---|---|
| 104.47.125.33 | US |
| 104.47.17.97 | US |
| 104.47.32.36 | Burke, Virginia, US |
| 104.47.4.36 | Wilmington, Delaware, US |
| 104.47.48.33 | US |
| 104.47.5.36 | US |
| 104.47.58.161 | Carrollton, Texas, US |
| 104.47.58.33 | Wilmington, DE US |
| 104.47.6.36 | Sacramento, CA, US |
| 104.47.70.110 | US |
| 104.47.70.33 | Berkeley, CA, US |
| 163.114.21.140 | Parker, Colorado, US |
| 163.114.21.150 | US |
| 163.114.23.130 | US |
| 163.114.23.140 | Amsterdam, No. Holland, NL |
| 172.112.246.83 | US |
| 203.254.224.12 | Unknown |
| 209.85.220.41 | US |
| 209.85.220.73 | US |
| 23.226.89.13 | Des Moines, Iowa, US |
| 67.231.145.42 | US |
| 68.232.140.227 | US |
| 68.232.141.249 | US |

In order to determine which Defendants performed each of the above-listed intrusions through the IP Addresses and from which of their devices, a Special Master is needed and Sylabs will need to conduct discovery, including forensic analysis and investigation of all of Defendants' devices used to unlawfully access Sylabs' Computer Systems and Data.

218.   As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through

LEPISCOPO & ASSOCIATES LAW FIRM

June 30, 2020, defendant Greg Kurtzer: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(5)(C).

219.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Julia Kurtzer: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently cause damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

220.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Adolph: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEPISCOPO & ASSOCIATES LAW FIRM

221.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Hayden: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

222.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Fong: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

223.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant CIQ: defrauded Sylabs and obtained value for itself in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and

loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

224.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Open Drives: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

225.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Buss: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

226.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Prager: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC

§ 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

227.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant Whitley: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

228.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant IAG Fund II: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

229.    As alleged in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, defendant IAG Capital Holdings, II: defrauded Sylabs and obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs and Sylabs'

LEPISCOPO & ASSOCIATES LAW FIRM

Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4); intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions in violation of CFAA, 18 USC § 1030(a)(5)(A); recklessly damaged Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and negligently caused damage and loss by intentional access of Sylabs Computer Systems in violation of CFAA, 18 USC § 1030(a)(5)(C).

230.   In its 1st MTD Order, the Court determined that under the original complaint (Dkt. 1) Sylabs' "CFAA Claim Fails Because Sylabs Does Not Allege That It Suffered Any Harm Remediable By The Statute" (Dkt. 59, p. 12, ll. 1-27). However, the Court's 2nd MTD Order does not identify any such deficiency. The following provides Mr. Tarbell's explanation as to how Sylabs suffered cognizable damage under CFAA.

231.   In addition to what has been alleged herein, and as set forth the Declaration of Tarbell (Exh. 38), Sylabs is informed and believes, and based upon such information and belief alleges that during the time frame January 1, 2020, through June 30, 2020, Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and/or IAG Capital Holdings, II, individually and working together, trashed or deleted thousands of files and folders in Sylabs' Computer Systems and Data.

232.   For example, Mr. Tarbell explains why Defendants' trashing or deleting files and folders constitutes the type of harm that is remediable under the CFAA. In particular, Mr. Tarbell explains:

> "Google states that a user 'can remove Google Drive files and folders from… (Google Workspace) My Drive and shared drives…(with) trash or delete.' Files and folders in Google Workspace Drive can be permanently deleted without moving the data to trash. Any file or folder that is moved into trash is automatically deleted after 30 days. After a file is deleted, any other user that has been shared that file will lose access to the file."

*See* Exh. 38: Decl. of Tarbell ¶ 5 (emphasis added).

233.   Next, Mr. Tarbell connects the preceding explanation with Section 1030(e)(8) of the CFAA:

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

> "Damage, as defined in 18 USC § 1030(e)(8), is 'any impairment to the integrity or availability of data, a program, a system, or information.'"

*See* Exh. 38: Decl. of Tarbell ¶ 6.

234.   Mr. Tarbell then goes on to explain that Sylabs has suffered cognizable damage that is remediable under CFAA:

> "Deleting and trashing, which are automatically deleted after 30 days, files and folders in Sylabs' Google Workspace is a damage. These files' availability to legitimate Sylabs' Google Workspace users was impaired."

*See* Exh. 38: Decl. of Tarbell ¶ 7.

235.   Further, Mr. Tarbell explains that under Section 1030(e)(6) Defendants' access to Sylabs' Computer Systems and Data for the purpose of deleting and trashing Sylabs' Computer Systems and Data exceeded any authorized access they might have enjoyed under, for example, the IP Assignment/NDA Agreements (*see* Exhs. 48-52):

> "Exceeds authorized access, as defined in 18 USC § 1030(e)(6), is to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter. Deleting and trashing files, damaging the data, on a Sylabs' computer system after resigning from Sylabs is exceeding authorized access."

*See* Exh. 38: Decl. of Tarbell ¶ 13 (emphasis added).

236.   Finally, Mr. Tarbell provides examples of Defendants' unlawful acts that caused Sylabs damage under Section 1030(e)(8). *See* Exh. 38: Decl. of Tarbell ¶¶ 8-12.

237.   Based on the foregoing, Sylabs has alleged sufficient facts and provided sufficient evidence to state a claim under CFAA against all Defendants for their cyber corruption and cyber destruction of Sylabs' Computer Systems and Data. As a consequence, Sylabs has suffered actual, remediable damage[8] due to Defendants' cyber corruption and cyber destruction in the form of monetary damage in an amount that exceeds $75,000, which includes but is not limited to the following components: (a) costs,  wages,

---

[8]   For purposes of CFAA, the terms "**damage**" "**damages**," and "**harm**" shall have the same meaning and will be used interchangeably throughout the Complaint.

and fees incurred to discover Defendants' cyber intrusions to Sylabs' Computer Systems and Data; (b) costs, wages, and fees incurred to discover the harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction; (c) costs, wages, and fees incurred to find, gather, and organize evidence of Defendants' cyber intrusions to Sylabs' Computer Systems and Data; (d) costs, wages, and fees incurred to find, gather, and organize evidence of the harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction; (e) costs, wages, and fees incurred to assess the evidence of Defendants' cyber intrusions to Sylabs' Computer Systems and Data; (f) costs, wages, and fees incurred to assess the evidence of the harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction; (g)   costs,  wages, and fees incurred to conduct forensic analysis of the evidence of Defendants' cyber intrusions to Sylabs' Computer Systems and Data; (h) costs, wages, and fees incurred to conduct forensic analysis of the evidence of the harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction; (i) costs, wages, and fees incurred to prepare forensic reports of the evidence of Defendants' cyber intrusions to Sylabs' Computer Systems and Data; (j) costs, wages, and fees incurred to prepare forensic reports of the evidence of the harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction; (k) costs, wages, and fees incurred to remedy harm caused by Defendants' cyber intrusions to Sylabs' Computer Systems and Data; (l) costs, wages, and fees incurred to remedy harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction; (m) all other costs, wages, and fees incurred as a consequence of Defendants' cyber intrusions to Sylabs' Computer Systems and Data; and (n) all other costs, wages, and fees incurred as a consequence of Defendants' cyber corruption and cyber destruction to Sylabs' Computer Systems and Data.

238.   As a foreseeable, direct, and proximate result of Defendants' actions in violation of 18 USC §§ 1030(a)(4) and 1030(a)(5)(A)-(C), as herein alleged, Sylabs has

LEPISCOPO & ASSOCIATES LAW FIRM

suffered the foregoing harm that is remediable under the CFAA in an amount that exceeds $75,000.

239.   As a foreseeable, direct, and proximate result of Defendants' actions in violation of 18 USC §§ 1030(a)(4) and 1030(a)(5)(A)-(C), as herein alleged, Defendants, and each of them, have been unjustly enriched in an amount between $33M and $150M.

240.   As a direct consequence of Defendants' cyber corruption and cyber destruction, as alleged in this Count and in Sections VII-VIII, Sylabs has suffered the requisite remediable harm under the CFAA in violation of 18 USC §§ 1030(e)(11). *See Van Buren* and *Sirius; see also* Exh. 38: Decl. of Tarbell ¶¶ 1-127.

241.   As a direct consequence of Defendants' cyber corruption and cyber destruction, as alleged in this Count and in Sections VII-VIII, Sylabs has also suffered irreparable harm and will continue to suffer irreparable injury that cannot be remedied at law unless Defendants, and each of them, and all other persons or entities acting in concert with them, are enjoined from further engaging in any of the actions alleged herein.

## COUNT III

## VIOLATIONS OF CALIFORNIA UNIFORM TRADE SECRETS ACT

(Against Defendants Gregory Rose a/k/a Gregory M. Kurtzer; Matthew Hayden;

CTRL IQ, Inc. d/b/a CIQ, Only)

242.   The allegations in Paragraphs 1 to 155 are incorporated herein by reference.

243.   In the 2nd MTD Order, the Court held that Sylabs has stated claims under the DTSA and CUTSA against defendants CIQ, Greg Kurtzer, and Matthew Hayden but dismissed these claims against the remaining defendants without leave to amend. *See* Dkt. 80, p. 9, ll. 22-26, and details at Dkt. 80, p. 6, l. 12 through p. 9, l. 26.

244.   In its 2nd MTD Order, the Court held that Sylabs has sufficiently alleged that Sylabs owns the following five (5) Trade Secrets to satisfy the pleading requirements under Rule 12(b)(6) and CUTSA: "(1) SingularityPRO, (2) SIF technology, (3) Singularity Enterprise, (4) Fuzzball and (5) Armored Containers. . .Thus, Sylabs has sufficiently alleged ownership of five trade secrets." *See* 2nd MTD, Dkt. 80, p. 7, ll. 1-2 and 20.

245.   In Sections VII-VIII, above, incorporated herein by this reference, Sylabs provides significant and detailed allegations sufficiently stating claims against defendants for violations of DTSA, CFAA, and CUTSA.

246.   **Unlawful Conduct Engaged In By Defendants After Mass Resignation From Sylabs**. In addition to their aforementioned unlawful acts, as alleged in greater detail in Section VIII, Sylabs is informed and believes, and based upon such information and belief alleges that in furtherance of their Conspiracy with their codefendants, defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, Buss, and Prager, and, through their respective officers, defendants CIQ and Open Drives, agreed to a mass resignation from Sylabs but to continue engaging in unauthorized access even **after** they departed Sylabs on March 31, 2020. For example, between April 2, 2020 and April 15, 2020, defendants Greg Kurtzer, Adolph, Hayden, Julia Kurtzer, and Fong made significant and ongoing unlawful cyber intrusions into Sylabs' Computer Systems and Data for the purposes of: (a) corruption and damage to Sylabs' computer server; (b) corruption and damage to Sylabs' computer data; (c) corruption and damage to Sylabs' computer folders; (d) corruption and damage to Sylabs' computer files; (e) corruption and damage to Sylabs' computer directories; (f) cyber intrusion to Sylabs' computer server; (g) cyber intrusion to Sylabs' computer files; (h) cyber intrusion to Sylabs' computer folders; (i) cyber intrusion to Sylabs' computer files; (j) cyber intrusion to Sylabs' computer directories; (k) cyber theft of Sylabs' Trade Secrets; and (l) cyber misappropriation of Sylabs' Trade Secrets.  *See* Section II, ¶¶ 27-54 of this Complaint; *see also* Exh. 38: Decl. of Tarbell ¶¶ 1-127.

247.   As alleged in greater detail in this Count and in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden's actions constitute actual, and threatened and ongoing violations under CUTSA, California Civil Code §§ 3426 *et seq*.: (a) cyber corruption and damage to Sylabs' computer server; (b) corruption and damage to Sylabs' computer data; (c) corruption and damage to Sylabs' computer folders; (d) corruption and damage to Sylabs' computer files; (e) corruption and damage to Sylabs' computer directories; (f) cyber intrusion to Sylabs' computer server; (g) cyber intrusion to Sylabs'

LEPISCOPO & ASSOCIATES LAW FIRM

computer files; (h) cyber intrusion to Sylabs' computer folders; (i) cyber intrusion to Sylabs' computer files; (j) cyber intrusion to Sylabs' computer directories; (k) cyber theft of Sylabs' Trade Secrets; and (l) cyber misappropriation of Sylabs' Trade Secrets.  *See* Section II, ¶¶ 27-54 of this Complaint; *see also* Exh. 38: Decl. of Tarbell ¶¶ 1-127.

248.    At all times relevant to this Complaint, Sylabs owned Sylabs' Trade Secrets as Sylabs is the entity in which rightful legal or equitable title to Sylabs' Trade Secrets is reposed.

249.    In violation of CUTSA, Section 3426.3, and as alleged in greater detail in this Count and in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden intended to and knowingly caused damage to Sylabs and Sylabs' computer server, data, folders, files, and directories, and  accessed Sylabs' Computer Systems and Data without authorization and disclosed, acquired, used, copied, downloaded, uploaded, photocopied, replicated, transmitted, delivered, communicated, or conveyed Sylabs' Trade Secrets. As alleged in greater detail in this Count and in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden intended to and knowingly caused damage to Sylabs and Sylabs' computer server, data, folders, files, and directories and stole and misappropriated Sylabs' Trade Secrets through cyber theft, and then perpetrated a fraud on the USPTO by submitting fraudulent patent applications to the USPTO and receiving fraudulently obtained patents, to wit: US 10,970,113 (Exh. 37); US 11,099,893 (Exh. 39); US 11,310,342 (Exh. 40); US 11,055,428 (Exh. 41); US 11,163,902 (Exh. 42); and US 11,321,064 (Exh. 43) (*i.e.*, the Stolen Patents).

250.    In violation of CUTSA, Section 3426.3, and as alleged in greater detail in Sections VII-VIII, above, the Defendants acquired, used, or disclosed Sylabs' Trade Secrets, knowing that they were stolen and misappropriated, obtained, or converted through defendants CIQ, Greg Kurtzer, and Hayden's cyber theft of Sylabs' Trade Secrets without Sylabs' consent or authorization. Further, defendants CIQ, Greg Kurtzer, and Hayden intentionally engaged in these acts to benefit themselves, with the knowledge

LEPISCOPO & ASSOCIATES LAW FIRM

and/or intent that these acts would injure Sylabs and cause damage to Sylabs (CIQ's competitor) and Sylabs' computer server, data, folders, files, and directories.

251.   The cyber corruption, cyber destruction, cyber theft, and use of Sylabs' Trade Secrets by defendants CIQ, Greg Kurtzer, and Hayden was without Sylabs' authorization, and Sylabs did not consent to their cyber corruption, cyber destruction, cyber theft, acquisition, disclosure, or use of Sylabs' Trade Secrets, all of which violate CUTSA, Section 3426.3.

252.   At all times mentioned in this Complaint, defendants CIQ, Greg Kurtzer, and Hayden intended to corrupt and cause damage to Sylabs and Sylabs' computer server, data, folders, files, and directories and to convert, misappropriate, and steal Sylabs' Trade Secrets to and for their own use and benefit and for their own enrichment, all of which violate CUTSA, Section 3426.3.

253.   As alleged in greater detail in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden clearly knew and intended that Sylabs, as the owner of the Sylabs' Trade Secrets would be damaged by their actions, all of which violate CUTSA, Section 3426.3.

254.   As alleged in greater detail in this Count and in Sections VII-VIII, above, as a result of defendants CIQ, Greg Kurtzer, and Hayden's cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets, Sylabs has suffered actual damages in an amount to be proven at trial but in an amount that greatly exceeds $75,000, all of which violate CUTSA, Section 3426.3.

255.   In violation of CUTSA, Section 3426.3, and as alleged in greater detail in this Count and in Sections VII-VIII, above, as a result of defendants CIQ, Greg Kurtzer, and Hayden's cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets, defendants CIQ, Greg Kurtzer, and Hayden have been unjustly enriched.

256.   In violation of CUTSA, Section 3426.3, and as alleged in greater detail in this Count and in Sections VII-VIII, above, as a result of defendants CIQ, Greg Kurtzer,

LEPISCOPO & ASSOCIATES LAW FIRM

and Hayden's cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets, Sylabs requests that the Court issue an order that all right, title, and interest in and to the Stolen Patents be divested from defendant CIQ and fully vested in Sylabs, and that the currently listed inventors in the Stolen Patents be removed and replaced with the names of Sylabs' relevant employees as the sole inventors.

257.    Pursuant to CUTSA, Section 3426.3, Sylabs further pleads entitlement to a reasonable royalty from each of the Stolen Patents to compensate Sylabs for defendants CIQ, Greg Kurtzer, and Hayden's cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

258.    Pursuant to CUTSA, Section 3426.3, Sylabs further pleads entitlement to a disgorgement of profits received from each of the Stolen Patents to compensate Sylabs for defendants CIQ, Greg Kurtzer, and Hayden's cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

259.    Pursuant to CUTSA, Section 3426.3, Sylabs further pleads entitlement to all funds that defendants CIQ, Greg Kurtzer, and Hayden have raised due to their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets in an amount to be proven at trial but in an amount that exceeds $25,000,000.

260.    Pursuant to CUTSA, Section 3426.3, Sylabs further pleads entitlement to a reasonable royalty from each of the Stolen Patents (Exhs. 39-43) to compensate Sylabs for defendants CIQ, Greg Kurtzer, and Hayden's cyber theft and misappropriation of Sylabs' Trade Secrets in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

261.    Pursuant to CUTSA, Section 3426.3, Sylabs further pleads entitlement to a disgorgement of profits received from each of the Stolen Patents (Exhs. 39-43) to compensate Sylabs for defendants CIQ, Greg Kurtzer, and Hayden's cyber theft and

misappropriation of Sylabs' Trade Secrets in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

262.   Pursuant to CUTSA, Section 3426.3, Sylabs further pleads entitlement to all capital defendants CIQ, Greg Kurtzer, and Hayden have raised due to their cyber theft and misappropriation of Sylabs' Trade Secrets in an amount to be proven at trial but in an amount that exceeds $25,000,000.

263.   In violation of CUTSA, Section 3426.3, and as alleged in greater detail in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden's cyber theft and misappropriation of Sylabs' Trade Secrets has caused and will continue to cause Sylabs irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

264.   In violation of CUTSA, Section 3426.2, and as already demonstrated in Sections VII-VIII, above, if defendants CIQ, Greg Kurtzer, and Hayden were permitted to continue to use and disseminate Sylabs' Trade Secrets, then Sylabs would be irreparably harmed and the economic damages to Sylabs would be difficult to quantify. An injunction prohibiting defendants CIQ, Greg Kurtzer, and Hayden from further acquisition, disclosure, use, and possession of Sylabs' Trade Secrets is necessary to provide Sylabs with complete relief.

265.   Pursuant to CUTSA, California Civil Code § 3426.2, Sylabs requests injunctive relief, as defendants CIQ, Greg Kurtzer, and Hayden's wrongful conduct alleged herein by their cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets will continue unless enjoined and restrained by the Court and will cause great and irreparable injury to Sylabs' business, and it could cause defendants CIQ, Greg Kurtzer, and Hayden to have improper advantages, positions, and rights in the marketplace to Sylabs' detriment. Absent injunctive relief, defendants CIQ, Greg Kurtzer, and Hayden further disclosure and use of Sylabs' Trade Secrets could irreparably harm Sylabs.

LEPISCOPO & ASSOCIATES LAW FIRM

266.    As alleged in greater detail in Sections VII-VIII, above, defendants CIQ, Greg Kurtzer, and Hayden cyber corruption, cyber destruction, and cyber theft and misappropriation of Sylabs' Trade Secrets was willful and malicious based on the facts alleged herein. defendants CIQ, Greg Kurtzer, and Hayden acted with a purpose and willingness to commit the acts alleged, and defendants CIQ, Greg Kurtzer, and Hayden's conduct was not reasonable under the circumstances. Sylabs is therefore entitled to exemplary damages and attorney fees and costs. Sylabs further seeks exemplary damages against defendants CIQ, Greg Kurtzer, and Hayden in an amount up to two times the amount of Sylabs' actual damages according to proof under CUTSA, California Civil Code § 3426.3.

## X.
## DEMAND FOR TRIAL BY JURY

267.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Sylabs hereby respectfully demands a jury trial on all issues triable by jury.

## XI.
## DEMAND FOR RELIEF

Sylabs requests the following relief:

1.      Pursuant to the confidentiality and seizure provisions of DTSA, 18 U.S.C. §§ 1835 and 1836, an order appointing a special master ("Special Master") to receive and review the documents in Defendants' possession due to their cyber theft of Sylabs' Computer Systems and Data.

2.      Pursuant to the confidentiality and seizure provisions of DTSA, 18 U.S.C. §§ 1835 and 1836, an order seizing and directing Defendants, and each of them, to forthwith deliver all servers, laptops, smartphones, tablets, and all other electronic devices to the Special Master so that Sylabs may conduct forensic analysis of devices seized.

3.      As a result of the Defendants' cyber theft, cyber corruption, cyber destruction, and misappropriation of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information, Sylabs requests that the Court issue an order that all

right, title, and interest in and to the Stolen Patents be divested from defendant CIQ and fully vested in Sylabs, and that the currently listed inventors in the Stolen Patents be removed and replaced with the names of Sylabs' relevant employees as the sole inventors.

4.      As a result of Defendants' cyber theft, cyber corruption, cyber destruction, and misappropriation of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information, Sylabs requests damages against Defendants, jointly and severally, in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

5.      Sylabs further requests an award against the Defendants, jointly and severally, of the reasonable royalty from each of the Stolen Patents to compensate Sylabs for Defendants' cyber theft, cyber corruption, cyber destruction, and misappropriation of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

6.      Sylabs further requests disgorgement of profits received by Defendants, jointly and severally, from each of the Stolen Patents to compensate Sylabs for Defendants' cyber theft, cyber corruption, cyber destruction, and misappropriation of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information in an amount to be proven at trial but in an amount that greatly exceeds $75,000.

7.      Sylabs further requests an award against Defendants, jointly and severally, for disgorgement and receipt of all funds and capital Defendants have raised due to their cyber theft, cyber corruption, cyber destruction, and misappropriation of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information in an amount to be proven at trial but in an amount that exceeds $25,000,000.

8.      Sylabs further seeks exemplary damages against Defendants, jointly and severally, in an amount according to proof.

9.      Sylabs further seeks exemplary damages against Defendants, jointly and severally, in an amount up to two times the amount of Sylabs' actual damages according to proof.

10.     Sylabs further requests entry of an injunction prohibiting Defendants, and each of them, from further acquisition, disclosure, use, and possession of Sylabs' Trade Secrets, Corporate Secrets, and/or other privileged and protected information.

11.     Attorneys' fees and costs pursuant to DTSA, CFAA, and/or CUTSA.

12.     Pre-judgment and/or post-judgment interest on all damages awarded.

13.     Such other and further relief as the Court deems just and proper.

Dated:  May 19, 2024.                    LEPISCOPO & ASSOCIATES LAW FIRM


                                    By:  /s/ Peter D. Lepiscopo            _
                                        **PETER D. LEPISCOPO**
                                        *Counsel of Record*
                                        Attorneys for Plaintiff, **SYLABS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Second Amended Complaint and Exhibits thereto** with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on May 19, 2024. I further certify that all participants in the case are registered CM/ECF users and that service of the **Second Amended Complaint and Exhibits thereto** will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on May 19, 2024, at Newport Beach, California.

LEPISCOPO & ASSOCIATES LAW FIRM

By: /s/ Peter D. Lepiscopo _____
       **PETER D. LEPISCOPO**
       *Counsel of Record*
       Attorneys for Plaintiff, **SYLABS, INC.**