CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
TAYLOR L. BENNINGER (State Bar No. 344825)
Taylor.Benninger@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Defendants
JOEL WHITLEY, IAG FUND II, LP, and
IAG CAPITAL HOLDINGS II, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

SYLABS, INC., a Delaware corporation,

Plaintiff,

v.

GREGORY ROSE a/k/a GREGORY M. KURTZER; JULIA ROSE a/k/a JULIA KURTZER; ROBERT ADOLPH; MATTHEW HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a CIQ; OPEN DRIVES, INC.; DAVID BUSS; MARLIN PRAGER; JOEL WHITLEY; IAG FUND II, LP a/k/a IAG CAPITAL PARTNERS; IAG CAPITAL HOLDINGS II, LCC a/k/a IAG CAPITAL PARTNERS; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:23-cv-00849-SVK

**IAG INVESTORS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: August 6, 2024
Time: 10:00 a.m.
Courtroom: 6, 4th Floor
Judge: Hon. Susan van Keulen

Filed/Lodged Concurrently with:

1. Proposed Order Granting IAG Investors' Motion to Dismiss

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on August 6, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants Joel Whitley, IAG Capital Fund II, LP, and IAG Capital Holdings II, LLC (collectively, "IAG Investors") will and do hereby move to dismiss Plaintiff Sylabs, Inc.'s ("Sylabs") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on the accompanying Memorandum of Points and Authorities, all documents in the Court's file, and such other written and oral argument as may be presented to the Court.

DATED: June 3, 2024  MUNGER, TOLLES & OLSON LLP

By: */s/ Miriam Kim*
CAROLYN HOECKER LUEDTKE
carolyn.luedtke@mto.com
MIRIAM KIM
miriam.kim@mto.com
TAYLOR L. BENNINGER
Taylor.Benninger@mto.com

Attorneys for JOEL WHITLEY, IAG FUND II, LP, and IAG CAPITAL HOLDINGS II, LLC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. Relevant Allegations ..... 2
B. Procedural History ..... 4
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 5
A. Three Fatal Flaws Doom All of Sylabs' CFAA Claims ..... 5
1. Sylabs Alleges No Loss Attributable to the IAG Investors. ..... 6
2. Sylabs Alleges Only Authorized Access, Not Unauthorized Access ..... 7
3. Sylabs' Claims Are Barred by the Statute of Limitations. ..... 8
B. Additional Flaws Defeat Each of Sylabs' Four CFAA Claims ..... 10
1. *Sylabs' § 1030(a)(4) Claim Sounds in Fraud But Does Not Satisfy Rule 9(b).* ..... 10
2. *Sylabs' § 1030(a)(5)(A) Claim Fails Because the IAG Investors Did Not Knowingly Transmit a Program, Information, Code, or Command.* ..... 11
3. *Sylabs' Claims under §§ 1030(a)(5)(A)-(C) Fail Because Sylabs Does Not Allege Any Damage Attributable to the IAG Investors.* ..... 12
C. The Court Should Not Grant Leave to Amend. ..... 13
V. CONCLUSION ..... 14

-i- Case No. 5:23-cv-00849-SVK
IAG INVESTORS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) .....9

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019).....6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....5, 12

*Calendar Rsch. LLC v. StubHub, Inc.*,
No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13, 2020) .....8

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023).....11

*Cotti v. Cal. Dep't of Soc. Servs. Dir. Will Lightbourne*,
No. 18-cv-02980-BLF, 2018 WL 6660073 (N.D. Cal. Dec. 19, 2018) .....7

*Diamond S.J. Enter., Inc. v. City of San Jose*,
395 F. Supp. 3d 1202 (N.D. Cal. 2019) .....13

*Doe ex rel. United States v. Vratsinas Constr. Co.*,
853 F. App'x 133 (9th Cir. 2021).....13

*Ewiz Express Corp. v. Ma Lab'ys, Inc.*,
No. 15-CV-01213-LHK, 2015 WL 5680904 (N.D. Cal. Sept. 28, 2015).....11

*Fraser v. Mint Mobile, LLC*,
No. C 22-00138 WHA, 2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) .....7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
639 F. Supp. 3d 944 (N.D. Cal. 2022) .....9

*Holomaxx Techs. v. Microsoft Corp.*,
783 F. Supp. 2d 1097 (N.D. Cal. 2011) .....12

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011).....7

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009).....8

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) .......... 9

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) .......... 6

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) .......... 11, 12

*Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA,
2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) .......... 10

*Resh, Inc. v. Skimlite Mfg. Inc.*,
666 F. Supp. 3d 1054 (N.D. Cal. 2023) .......... 7

*Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx),
2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) .......... 12

*Top Agent Network, Inc. v. Zillow, Inc.*,
No. 14-CV-04769-RS, 2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) .......... 8

*United States v. Nosal*,
844 F.3d 1024 (9th Cir. 2016) .......... 8

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 6, 12

*West v. Ronquillo-Morgan*,
No. CV 20-2711 DSF (Ex), 2021 WL 2953160 (C.D. Cal. May 10, 2021) .......... 9

**FEDERAL STATUTES**

18 U.S.C. § 1030(a)(2) .......... 10

18 U.S.C. § 1030(a)(4) .......... 2, 7, 10, 11

18 U.S.C. § 1030(a)(5)(A) .......... *passim*

18 U.S.C. § 1030(a)(5)(B) .......... 2, 7, 10, 12

18 U.S.C. § 1030(a)(5)(C) .......... 2, 7, 10, 12

18 U.S.C. § 1030(b) .......... 10

18 U.S.C. § 1030(c)(4)(A)(i)(I) .......... 6

18 U.S.C. § 1030(e)(8) .......... 12

18 U.S.C. § 1030(g) .......... 6, 8

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) .......... 2, 10, 11

Fed. R. Civ. P. 12(b)(6) .......... 5

Fed. R. Civ. P. 12(f) .......... 3

-iv- Case No. 5:23-cv-00849-SVK

IAG INVESTORS' NOTICE OF MOTION AND MOTION TO DISMISS SAC PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

Twice before, Plaintiff Sylabs, Inc. ("Sylabs") has attempted to state claims against IAG Fund II, IAG Capital Holdings II, and Joel Whitley (together, "the IAG Investors"). And twice before, Sylabs has failed, omitting basic elements of its claims, relying on conclusory and group allegations, and failing to describe any actionable misconduct by the IAG Investors. Recognizing the futility of Sylabs' attempts, the Court recently dismissed all of its causes of action against the IAG Investors except one—the CFAA count—without leave to amend.

Now, in its Second Amended Complaint ("SAC"), Sylabs doubles down on its baseless accusations and asserts that each of the IAG Investors violated four subsections of the CFAA. *See* SAC ¶ 190. But this latest pleading is as faulty as the prior ones, including because Sylabs *still* does not connect the IAG Investors with any CFAA loss. Sylabs uses a vastly overbroad definition of loss that includes non-technological, economic harms, *see* SAC ¶¶ 179, 237, but this Court has already held that such harms are not CFAA loss. *See* Order Granting Defendants' Motion to Dismiss, ECF No. 59 at 12 (Dec. 19, 2023) ("First Dismissal Order"). Sylabs also relies on group pleading and conclusory allegations to describe its supposed loss, but such allegations are insufficient to link the *IAG Investors* to any loss, much less the jurisdictional minimum of $5,000. This deficiency alone warrants the dismissal of Sylabs' claims against the IAG Investors with prejudice.

But Sylabs' CFAA claims also suffer from two additional overarching flaws, each of which, like the absence of CFAA loss, independently defeats all of its claims. First, as Sylabs concedes, the IAG Investors' alleged access to Sylabs' Google Drive occurred with technical authorization from Sylabs' then-CEO. In other words, despite conclusory and baseless assertions that the IAG Investors acted "without authorization," SAC ¶ 190, the inescapable truth is that their alleged access occurred *with authorization*. Second, Sylabs' claims are barred by the CFAA's two-year statute of limitations, as a reasonable person in Sylabs' position would have discovered the alleged intrusions far sooner than Sylabs' supposed discovery date.

And that is *still* not all.  Although Sylabs' SAC now identifies the subdivisions of the CFAA claims under which it sues—18 U.S.C. §§ 1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(B), and 1030(a)(5)(C)—its claims under each of these subsections have additional, specific defects.  Sylabs' claim under 18 U.S.C. § 1030(a)(4) sounds in fraud but cannot meet the heightened pleading standard of Rule 9(b).  Its claim under § 1030(a)(5)(A) lacks any supporting allegations that the IAG Investors transmitted a program, information, code or command.  And its claims under §§ 1030(a)(5)(A), (B), and (C) lack supporting allegations that the IAG Investors damaged any files or computers.

That Sylabs has failed to state any claims against the IAG Investors even after its third attempt to do so proves that it simply cannot state such claims.  Additionally, as this Court already recognized, it suggests that Sylabs "may be acting in bad faith" and that "further leave to amend would be futile and would unduly prejudice Defendants."  Order Granting in Part and Denying in Part Motions to Dismiss First Amended Complaint with Limited Leave to Amend, ECF No. 80 at 17 (May 8, 2024) ("Second Dismissal Order").  Accordingly, this Court should dismiss Sylabs' claims against the IAG Investors with prejudice.

## II.     BACKGROUND[1]

### A.     Relevant Allegations

Sylabs is a company within the high-performance computing industry, and Greg Kurtzer[2] is its former CEO.  *See* SAC ¶¶ 26, 49.  Kurtzer left Sylabs in March 2020 and went on to found CIQ, a groundbreaking startup in the same industry that Sylabs sees as a competitor.  *See* SAC ¶¶ 26, 103, 119-20.  Sylabs alleges that, in the spring of 2020, Kurtzer, CIQ, and another former Sylabs employee, Matthew Hayden, misappropriated Sylabs' secrets, including its "Fuzzball" and "Armored Container[]" technologies.  *See* SAC ¶¶ 158-59.  Additionally, Sylabs asserts that a

---

[1] The IAG Investors refer to allegations from the SAC only to aid in the Court's resolution of this Motion and do not admit them by including them here.

[2] Two Defendants in this lawsuit, Greg Kurtzer and Julia Kurtzer, share the same last name.  This Motion uses "Kurtzer" to mean Greg Kurtzer rather than Julia Kurtzer.

much larger group—not just these Defendants, but also several other former Sylabs affiliates, two of CIQ's investors, and three employees of those investors—accessed Sylabs' Google Drive without authorization in violation of the CFAA. *See* SAC ¶¶ 178-241.

Sylabs conclusorily alleges, on information and belief, that "Whitley, with IAG defendants' approval and ratification . . . , improperly accessed Sylabs' Computer Systems and deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data, files, and folders relating to Sylabs' Data, Trade Secrets, and Corporate Secrets." SAC ¶ 153.[3] But the SAC offers no particularized facts showing any deletions or modifications by the IAG Investors. Just the opposite: the SAC makes clear that the IAG Investors never improperly accessed Sylabs' systems or committed any misconduct. In fact, the entire SAC contains just six allegations related to Whitley and IAG's conduct:

- "Whitley is a principal of IAG," and IAG "invested in CIQ." SAC ¶¶ 33-34.
- Whitley received an email from Kurtzer about starting a new company, wherein Kurtzer wrote that the relevant technologies were "all open source." SAC ¶ 113; *see also* SAC Ex. 46 (Kurtzer/Whitley email) at 5.
- Whitley and IAG, among others, helped create a budget for the new company. SAC ¶ 108; *see also* SAC Ex. 56.
- On March 12 and 13, 2020, Sylabs' then-CEO "Kurtzer changed the permissions on 39 files in Sylabs' Computer Systems and Data," enabling Whitley to access those files through his "personal G-mail." SAC ¶ 154. *See also* SAC Ex. 38 (Tarbell

[3] Sylabs also accuses the IAG Investors of misappropriating, stealing, using, or disclosing Sylabs' trade secrets, *see* SAC ¶¶ 33, 34, 105, 153, 191, 201-04, 214-16, and emphasizes that "**<u>ALL</u>** Defendants" violated the DTSA and CUTSA, SAC ¶¶ 115 (emphasis in original), *see also* SAC ¶ 7. But this Court already found that "[n]one of the[] files" Whitley allegedly downloaded or viewed "appear to have concerned Sylabs' trade secrets," Second Dismissal Order at 8, and it dismissed Sylabs' trade secrets claims against the IAG Investors without leave to amend. *See id.* at 18, 20. Accordingly, if any part of Sylabs' SAC survives as to the IAG Investors—and it should not—these references to trade secret misappropriation must be stricken as "immaterial" and "impertinent." Fed. R. Civ. P. 12(f).

Declaration) at ¶¶ 50, 50.1 (Kurtzer "[c]hanged the sharing permission" for Whitley's email address "prior to . . . tendering his resignation").

- On March 13, 2020, using "the permissions defendant Greg Kurtzer provided," Whitley "downloaded the document titled 'Fuzz Budget'" and "viewed 14 files on Sylabs' Computer Systems." SAC ¶ 155; *accord* SAC Ex. 38 at ¶ 88.

- Whitley and IAG did "not enter into a nondisclosure or confidentiality agreement" with Sylabs. SAC ¶ 106.

**B.      Procedural History**

Almost three full years after Kurtzer allegedly used Sylabs' secrets and founded CIQ, Sylabs brought this lawsuit, asserting causes of action for trade secret misappropriation, CFAA and RICO violations, and several state law claims. *See* Complaint, ECF No. 1 at ¶¶ 208-359 (Feb. 24, 2023). All Defendants successfully moved to dismiss its Complaint. *See* First Dismissal Order at 14. As relevant here, this Court found that none of Sylabs' claims against the IAG Investors could "survive scrutiny under Rule 12(b)(6)," as the Complaint "offer[ed] no particularized facts to illustrate these Defendants' roles in . . . a conspiracy." *Id.* at 8. Separately, the Court explained that Sylabs' CFAA claims failed because they were not supported by any allegations of actionable harm. *Id.* at 12.

Sylabs responded to the First Dismissal Order by filing a behemoth 238-page First Amended Complaint and nearly 4,000 additional pages of exhibits. *See generally* Sylabs, Inc.'s First Amended Complaint, ECF No. 61 (Jan. 22, 2024) ("FAC"). All Defendants again moved to dismiss, and this Court granted those Motions as to almost all of Sylabs' claims. *See generally* Second Dismissal Order, ECF No. 80. Although the Court found that Sylabs "sufficiently alleged DTSA and CUTSA claims against CIQ and Defendants [Kurtzer] and Hayden with respect to its SIF technology, Fuzzball and Armored Containers trade secrets," *id.* at 9, it dismissed all of Sylabs' other trade secrets claims and all of Sylabs' claims against the IAG Investors. *Id.* at 9-12, 16-17. The Court allowed Sylabs to amend its CFAA claims because "[t]he FAC's deficiencies on this claim (to the extent identified in this Order)"—namely, "Sylabs' failure to identify the

specific provisions of the statute"—could be cured by amendment. *Id.* at 18. The Court denied leave to amend for every other claim against the IAG Investors. *See id.*

The Second Dismissal Order also admonished Sylabs for its conduct and failure to comply with the applicable rules in this litigation so far. *See id.* at 19. It cited Sylabs' "particularly egregious" conduct in relying on "the 'no set of facts' standard" and admonished that it would "consider appropriate consequences (including issuing sanctions) if Sylabs continues to misrepresent the law." *Id.* at 20. And, because Sylabs "[threw] everything but the proverbial kitchen sink (although perhaps even that and then some)" into its FAC but "still fail[ed] to state most of its claims," the Court felt "compelled to conclude that . . . Sylabs simply cannot state most of these claims" and "may be acting in bad faith." *Id.* at 17.

Heedless of these warnings, Sylabs opted to replead its CFAA claims against the IAG Investors in its SAC. But like the FAC before it, and the original Complaint before that, Sylabs' SAC does not come close to stating the factual allegations necessary to support its claims. Accordingly, the IAG Investors now move to dismiss Sylabs' SAC without leave to amend.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (cleaned up) (citation omitted). Instead, a complaint must allege "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct" and push the claims across "the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Twombly*, 550 U.S. at 557).

## IV. ARGUMENT

### A. Three Fatal Flaws Doom All of Sylabs' CFAA Claims.

Sylabs' CFAA claims against the IAG Investors cannot withstand even a modicum of scrutiny. In fact, no fewer than three fatal flaws apply to *all* such claims: the absence of CFAA

loss, the inescapable conclusion that the IAG Investors had authorization, and the expiration of the statute of limitations. Any one of these flaws—and certainly all three of them together—warrants dismissal of Sylabs' claims.

**1. Sylabs Alleges No Loss Attributable to the IAG Investors.**

Sylabs' SAC, like its FAC and its original Complaint, fails to allege any cognizable CFAA loss—much less the jurisdictional minimum of $5,000 in loss—stemming from the IAG Investors' actions.[4] Sylabs generically alleges that it suffered "damage and loss in an amount between $33M and $150M," SAC ¶ 190, and "actual, remediable damage due to Defendants' cyber corruption and cyber destruction in the form of monetary damage in an amount that exceeds $75,000." SAC ¶ 237 (footnote omitted). But those allegations are insufficient to show the requisite loss, for two reasons.

***First***, Sylabs continues to treat non-technological harms as CFAA loss, even though this Court already ruled that "the CFAA does not permit recovery for violations that result in such non-technological harm." First Dismissal Order at 12. "The statutory definition[] of . . . 'loss' . . . focus[es] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021), and "clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019). In direct violation of these principles, Sylabs' allegations include litigation costs—such as costs to "organize" and "assess the evidence" and "prepare forensic reports," SAC ¶ 237—which "do not count as a 'loss' under the CFAA." *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012). Similarly, Sylabs' (incorrect) allegations that CIQ raised $33

[4] The portion of the CFAA authorizing a private right of action, 18 U.S.C. § 1030(g), allows "[a] civil action . . . only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." And the only one of those factors that could possibly apply here is "loss to 1 or more persons . . . aggregating at least $5,000 in value," 18 U.S.C. § 1030(c)(4)(A)(i)(I), as this case does not involve medical information, physical injury, public health or safety, or damage to a computer of the United States Government. *See id.* § 1030(c)(4)(A)(i)(II)-(V).

million using stolen information, *see* SAC ¶ 7, cannot be CFAA loss, as non-technological harms that "flow[] from the use of the unlawfully obtained information" are not "recognized by the CFAA." First Dismissal Order at 12 (quoting *Fraser v. Mint Mobile, LLC*, No. C 22-00138 WHA, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022)). If these improper costs are excluded from the total, as they must be, Sylabs' SAC includes no allegations showing that any loss met or exceeded the requisite $5,000.

***Second,*** Sylabs fails to allege any facts plausibly showing that the *IAG Investors* caused any loss. Sylabs uses group pleading to describe costs related to "*Defendants'* cyber intrusions to Sylabs' Computer Systems and Data." SAC ¶ 237 (emphasis added). But group allegations that lump all Defendants together "do not satisfy Rule 8's notice requirement" or "'state a claim for relief that is plausible against *one* Defendant.'" *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)). Indeed, as this Court previously explained, such "conclusor[y] allegations and dearth of supporting facts regarding [the IAG Investors] cannot survive scrutiny under Rule 12(b)(6)." First Dismissal Order at 8. Nor is it even remotely plausible that the IAG Investors' alleged actions—which consisted of Whitley viewing 14 files and downloading one, *see* SAC ¶ 155—could have caused $5,000 of loss. Without "factual support for purely conclusory allegations of wrongdoing" related to this critical element, Sylabs' CFAA claims must be dismissed. *Cotti v. Cal. Dep't of Soc. Servs. Dir. Will Lightbourne,* No. 18-cv-02980-BLF, 2018 WL 6660073, at *3 (N.D. Cal. Dec. 19, 2018).

**2. Sylabs Alleges Only Authorized Access, Not Unauthorized Access.**

Sylabs' CFAA claims contain a second, independently-fatal flaw: The SAC does not plausibly allege that the IAG Investors accessed Sylabs' server "without authorization," as required by 18 U.S.C. § 1030(a)(5)(A)-(C).[5] Sylabs alleges, on information and belief, that

---

[5] Unlike 18 U.S.C. § 1030(a)(5)(A)-(C), which prohibit access or damage "without authorization," 18 U.S.C. § 1030(a)(4) prohibits both access "without authorization" and actions that "exceed[] authorized access." But Sylabs' SAC alleges only a "without authorization" theory against the IAG Investors.

Whitley accessed Sylabs' computer systems "without Sylabs' authorization," SAC ¶ 153, but its allegations reveal that the IAG Investors did, in fact, have authorization.

As used in the CFAA, the term "'without authorization' is an unambiguous, non-technical term that . . . means accessing a protected computer without permission" or "getting into the computer after categorically being barred from entry." *United States v. Nosal*, 844 F.3d 1024, 1028, 1034 (9th Cir. 2016). "[A] person uses a computer 'without authorization'" only "when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission)." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009).

Here, Sylabs' allegations can support only one conclusion: that the IAG Investors had authorization to view and download the at-issue documents on Sylabs' server. Sylabs concedes that "defendant Greg Kurtzer provided . . . defendants Whitley and IAG" with "permissions" to access "Sylabs' Google Drive," and that Whitley used "th[ose] permissions" to "view[] 14 files" and "download[] the file 'Fuzz Budget' from Sylabs' Computer System." SAC ¶¶ 154-55. At that time, Kurtzer was Sylabs' CEO and had "plenary authority to . . . grant access to [Sylabs'] computers and files." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391, at *19 (C.D. Cal. May 13, 2020). Thus, Sylabs' "factual averments" make plain that Whitley "was not 'without authorization' to access" Sylabs' Google Drive. *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *6 (N.D. Cal. Apr. 13, 2015) (holding that defendant failed to allege CFAA violation where prospective investor accessed defendants' members-only site after defendant "created an account" for him "precisely so that [he] could access" it). In other words, because the IAG Investors had "permission" to access the files on Sylabs' Google Drive, they did not act "without authorization," and they did not violate the CFAA. *Brekka*, 581 F.3d at 1135.

**3. Sylabs' Claims Are Barred by the Statute of Limitations.**

Sylabs' CFAA claims share one final, fatal flaw: They are all time-barred. The CFAA has a two-year statute of limitations, *see* 18 U.S.C. § 1030(g), and the IAG Investors allegedly

accessed Sylabs' server on March 12 and 13, 2020.  SAC ¶¶ 154-55.  But Sylabs did not file this action until February 24, 2023—nearly *three* years later.

Sylabs seeks to evade the statute of limitations by alleging that it did not discover any intrusions into its system until "on or after April 6, 2021," following "the publication of defendant CIQ's U.S. Patent No. US 10,970,113."  SAC ¶ 92.  But the CFAA's statute of limitations does not run from "actual discovery," but from "the hypothetical discovery of facts a reasonably diligent plaintiff would know."  *West v. Ronquillo-Morgan*, No. CV 20-2711 DSF (Ex), 2021 WL 2953160, at *3 (C.D. Cal. May 10, 2021) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 645 (2010)).  For Sylabs to rely on delayed discovery to evade the statute of limitations, it must "plead facts to show . . . [its] inability to have made earlier discovery despite reasonable diligence."  *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1156 (N.D. Cal. 2023) (citation omitted).

Sylabs has not done so.  The SAC suggests that the publication of Fuzzball in CIQ's '113 patent clued it into "Defendants' cyber corruption, cyber destruction, [and] cyber theft," SAC ¶ 92; *see also* SAC ¶ 82, but it ignores that Kurtzer allegedly published Fuzzball to open source more than a year earlier, on March 23, 2020.  SAC ¶ 123.  Sylabs does not explain why the publication of the patent was sufficient to put it on inquiry notice of the alleged cyber intrusions, while Kurtzer's alleged, prior publication of Fuzzball to open source was not.  To the contrary, a "reasonable person in [Sylabs'] situation" would have discovered the alleged theft shortly after its former CEO published its valuable trade secret to open source.  *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 969 (N.D. Cal. 2022) (citation omitted).[6]  And that discovery would have triggered the investigation that "disclosed the nature and cause of [Sylabs'] injury," putting Sylabs "on notice of [its] claim" up to a year before its alleged April 6, 2021 discovery date.  *Id.* (second alteration in original) (citation and internal quotation marks omitted).

---

[6] Indeed, given that Sylabs manages or controls related "open source assets," "open source projects," and "open source technologies," *see* SAC Ex. 48 at 8, it is implausible that a reasonable person in Sylabs' position would *not* have seen Kurtzer's publication of Fuzzball to open source for more than a year, until a related patent was also published.

Thus, Sylabs' failure to bring its claims before the expiration of the statute of limitations—like its failure to allege CFAA loss and its inability to show access without authorization—warrants the dismissal of all of its CFAA claims.

**B. Additional Flaws Defeat Each of Sylabs' Four CFAA Claims.**

On top of the universal shortcomings described above, additional flaws doom each of Sylabs' specific claims against the IAG Investors. Although Sylabs now lists four subsections of the CFAA under which it purports to bring those claims—18 U.S.C. §§ 1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(B), and 1030(a)(5)(C), SAC ¶¶ 227-29—it has not identified a single subsection under which the IAG Investors could actually be liable, as it fails to allege facts to state a plausible claim under any of these four provisions.[7]

***1. Sylabs' § 1030(a)(4) Claim Sounds in Fraud But Does Not Satisfy Rule 9(b).***

First, Sylabs' claim under § 1030(a)(4)—which prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization . . . and by means of such conduct further[ing] the intended fraud"—fails because it does not satisfy the requirements of Federal Rule of Civil Procedure 9(b).

As a threshold matter, Sylabs' § 1030(a)(4) claim is subject to Rule 9(b)'s heightened pleading standard. Courts in this district are split about the precise circumstances under which Rule 9(b) applies to these claims: Some have held that Rule 9(b) "plainly applies to section 1030(a)(4)'s requirement that the defendant's acts further the intended fraud," *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012), while

---

[7] In addition to these four subsections, the SAC also alleges in passing that "Defendants . . . violated 18 U.S.C. § 1030(a)(2)" and "18 U.S.C. § 1030(b)." SAC ¶¶ 187-89. Sylabs does not clarify *which* Defendants allegedly did so, and it does not list these subsections in the paragraphs enumerating its claims against Whitley and IAG. But to the extent that Sylabs *does* purport to assert such claims against the IAG Investors, it has failed to clearly "identify the specific provisions of the [CFAA] that [the IAG Investors] allegedly violated," Second Dismissal Order at 18, and therefore has not cured the deficiency this Court identified in its last Dismissal Order. Further, Sylabs includes no non-conclusory allegations to support a claim against the IAG Investors under §§ 1030(a)(2) or (b), so any such claims should be dismissed with prejudice.

others "require that CFAA claims under § 1030(a)(4) be pleaded with specificity only when fraudulent conduct is specifically alleged as the basis for the wrongdoing." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014). But even under the latter standard, Sylabs' § 1030(a)(4) claims are subject to Rule 9(b) because they are grounded in allegations that Whitley and IAG "defrauded Sylabs" and thereby "obtained value for defendant CIQ." SAC ¶¶ 227-29. *See, e.g.*, *Ewiz Express Corp. v. Ma Lab'ys, Inc.*, No. 15-CV-01213-LHK, 2015 WL 5680904, at *5 (N.D. Cal. Sept. 28, 2015) (applying Rule 9(b) where "Plaintiff allege[d] that Defendants 'undertook a scheme to steal Plaintiff's customers and business by forming competing companies having misleadingly similar business names and internet domains as are used by Plaintiff.'").

It is equally clear that Sylabs' § 1030(a)(4) claims do not "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Ninth Circuit has interpreted this language to mean that "[p]arties must allege . . . the 'who, what, when, where, and how of the misconduct charged.'" *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (citation omitted). But *nothing* in Sylabs' SAC answers these questions with respect to the § 1030(a)(4) claim against the IAG Investors, and *no* particularized facts support Sylabs' conclusory assertion that Whitley and IAG "defrauded Sylabs and obtained value for defendant CIQ . . . from Sylabs and Sylabs' Computer Systems and Data in violation of CFAA, 18 USC § 1030(a)(4)." SAC ¶¶ 227-29. For that reason—in addition to the myriad generally-applicable reasons above, *see* §§ IV.A.1-3, *supra*—this Court should dismiss Sylabs' § 1030(a)(4) claim.

#### 2. ***Sylabs' § 1030(a)(5)(A) Claim Fails Because the IAG Investors Did Not Knowingly Transmit a Program, Information, Code, or Command.***

Second, Sylabs' SAC includes no non-conclusory allegations that the IAG Investors "knowingly cause[d] the transmission of a program, information, code, or command," as is required to state a claim under § 1030(a)(5)(A). In fact, the *only* relevant allegations in Sylabs' SAC are boilerplate paragraphs stating that Whitley and IAG "intentionally damaged Sylabs' Computer Systems and Data by knowing transmissions." SAC ¶¶ 227-29. But this language is simply "a 'legal conclusion couched as a factual allegation'" and is "devoid of factual support."

*Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1106 (N.D. Cal. 2011) (quoting *Twombly*, 550 U.S. at 555). Because Sylabs nowhere identifies or describes any program, information, code, or command originating from Whitley or IAG, or explains when or how Whitley or IAG allegedly transmitted that code, it has not stated a § 1030(a)(5)(A) claim.

**3. *Sylabs' Claims under §§ 1030(a)(5)(A)-(C) Fail Because Sylabs Does Not Allege Any Damage Attributable to the IAG Investors.***

Finally, Sylabs' claims under 18 U.S.C. §§ 1030(a)(5)(A), (B), and (C) fail because Sylabs describes no damage attributable to the IAG Investors. CFAA damage—a required element of these claims, and one that is distinct from CFAA loss[8]—means "'technological harm[]'" to "computers or servers (e.g., file corruption)." First Dismissal Order at 12 (quoting *Van Buren*, 593 U.S. at 392). Damage does not exist if a defendant "accesse[s] [a plaintiff's] databases" without "damag[ing] any systems or destroy[ing] any data." *NetApp*, 41 F. Supp. 3d at 834. But that is exactly what Sylabs describes here: It alleges that the IAG Investors "viewed 14 files" and "downloaded the file 'Fuzz Budget,'" SAC ¶ 155, but it does not allege that they impaired the availability of those files or destroyed any data therein.

Sylabs' conclusory and group allegations cannot cure this defect. For example, Sylabs alleges that "Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and/or IAG Capital Holdings, II, individually and working together, trashed or deleted thousands of files and folders in Sylabs' Computer Systems and Data." SAC ¶ 231. But this list is just another form of "impermissible lumping" and does not state a claim that the *IAG Investors* caused any damage, *Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010)—especially because Sylabs elsewhere alleges that *other Defendants* made these deletions. *See, e.g.*, SAC ¶¶ 132, 138,

---

[8] *Compare* 18 U.S.C. § 1030(e)(8) (defining "damage" as "any impairment to the integrity or availability of data, a program, a system, or information") *with id.* § 1030(e)(11) (defining "loss" as " any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service").

140, 142. Similarly, Sylabs' allegation, on information and belief, that Whitley and IAG "deleted, trashed, renamed, deleted, viewed, created, edited, added, downloaded, emailed, printed, moved, concealed, and/or copied data," SAC ¶ 153—an allegation that Sylabs copied and pasted to describe *every* Defendant in this action, *see* SAC ¶¶ 134-35, 137, 141, 145, 149—does not raise a possible, let alone plausible, inference that IAG or Whitley deleted anything, as other allegations, including in the forensic report, make clear that they only "viewed" and "downloaded" files. SAC ¶ 155; *see also* SAC Ex. 38 ¶¶ 88-91 (listing all of Whitley's alleged actions in Sylabs' Google Workspace and not mentioning any deletions).

**C. The Court Should Not Grant Leave to Amend.**

Sylabs has now had three opportunities to state its claims against the IAG Investors, and each time, it has submitted a pleading riddled with glaring flaws and omissions. Under such circumstances, this Court should deny Sylabs leave to amend, because "allowing amendment would . . . be futile" and would "unduly prejudice" the IAG Investors, and because Sylabs "has acted in bad faith." *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1217 (N.D. Cal. 2019).

The futility of amendment is illustrated by the fact that Sylabs "had an opportunity to cure deficiencies" in its pleadings—actually, multiple opportunities—yet it "failed to do so." *Doe ex rel. United States v. Vratsinas Constr. Co.*, 853 F. App'x 133, 134 (9th Cir. 2021). Both this Court and the IAG Investors have repeatedly placed Sylabs on notice of the flaws in its CFAA claims—including almost all of the fatal flaws discussed in this Motion, *compare* IAG Defendants' Notice of Motion and Motion to Dismiss Complaint, ECF No. 39 at 15-17 (Aug. 28, 2023) ("First IAG MTD"); First Dismissal Order at 7-8, 12, *with* §§ IV.A.1-3, *supra*—but Sylabs has failed to correct them. It continues to use improper group pleading in its allegations of loss and damage, it ignores the fact that its own allegations foreclose a claim of unauthorized access, and it still does not explain why it needed more than a year to discover the alleged cyber-theft of its most valuable technologies. Sylabs' inability to cure these deficiencies "despite seemingly emptying its silos" indicates that "further leave to amend would be futile and would unduly prejudice" the IAG Investors. Second Dismissal Order at 17.

Sylabs' conduct in this litigation also suggests that it is "acting in bad faith." *Id.* Despite having ample notice that its allegations were insufficient to connect the IAG Investors to any alleged conspiracy or misconduct, *see* First IAG MTD at 6-10; First Dismissal Order at 7-9, Sylabs has continued to sue the IAG Investors based only on conclusory allegations, group pleading, and scattered examples of entirely innocent conduct. Such actions are not consistent with a plaintiff acting in good faith. For this reason, too, the Court should deny Sylabs leave to amend its complaint for a fourth time.

## V. **CONCLUSION**

For the foregoing reasons, the Court should dismiss Sylabs' claims against the IAG Investors with prejudice.

DATED: June 3, 2024

MUNGER, TOLLES & OLSON LLP

By: */s/ Miriam Kim*

CAROLYN HOECKER LUEDTKE
carolyn.luedtke@mto.com
MIRIAM KIM
miriam.kim@mto.com
TAYLOR L. BENNINGER
Taylor.Benninger@mto.com

Attorneys for JOEL WHITLEY, IAG FUND II, LP, and IAG CAPITAL HOLDINGS II, LLC