1   NEEL CHATTERJEE (SBN 173985)
    *NChatterjee@goodwinlaw.com*
2   ELIZABETH J. LOW (SBN 308098)
    *ELow@goodwinlaw.com*
3   DAVID SERATI (SBN 329811)
    *DSerati@goodwinlaw.com*
4   **GOODWIN PROCTER LLP**
    601 Marshall Street
5   Redwood City, California  94063
    Tel.: +1 650 752 3100
6   Fax: +1 650 853 1038

7   JENNIFER BRIGGS FISHER (SBN 241321)
    *JFisher@goodwinlaw.com*
8   **GOODWIN PROCTER LLP**
    Three Embarcadero Center
9   San Francisco, California 94111
    Tel.: +1 415 733 6000
10  Fax: +1 415 677 9041

11  Attorneys for Defendants
    CTRL IQ, INC. d/b/a CIQ; GREGORY ROSE a/k/a
12  GREGORY M. KURTZER; JULIA ROSE a/k/a
    JULIA KURTZER; ROBERT ADOLPH; MATTHEW
13  HAYDEN; ERIN FONG; OPEN DRIVES, INC.;
    DAVID BUSS; and MARLIN PRAGER

14

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                    SAN JOSE DIVISION

18  SYLABS, INC., a Delaware corporation,       Case No. 5:23-cv-00849-SVK

19                Plaintiff,                    **CIQ DEFENDANTS' AND OPEN
                                                DRIVES DEFENDANTS' MOTION TO
20         v.                                   DISMISS PLAINTIFF'S SECOND
                                                AMENDED COMPLAINT PURSUANT
21  GREGORY ROSE a/k/a GREGORY M.               TO RULE 12(B)(6) AND MOTION TO
    KURTZER; JULIA ROSE a/k/a JULIA             STRIKE PURSUANT TO RULE 12(F)**
22  KURTZER; ROBERT ADOLPH; MATTHEW
    HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a      Date:        August 6, 2024
23  CIQ; OPEN DRIVES, INC.; DAVID BUSS;         Time:        10:00 a.m.
    MARLIN PRAGER; JOEL WHITLEY; IAG            Courtroom: 6
24  CAPITAL PARTNERS; and DOES 1 through        Judge:       Hon. Susan van Keulen
    50, inclusive,
25                                              Concurrently Filed With:
                  Defendants.                      1.   [Proposed] Order
26

27

28

---

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on August 6, 2024 at 10:00 a.m., or as soon thereafter as the

3  matter may be heard, Defendants Gregory Rose a/k/a Gregory M. Kurtzer, Julia Rose a/k/a Julia

4  Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager, CTRL IQ, Inc. d/b/a CIQ,

5  Open Drives, Inc., and David Buss will and do hereby move pursuant to Federal Rules of Civil

6  Procedure 12(b)(6) and 12(f) to dismiss and strike the Second Amended Complaint filed by Plaintiff

7  Sylabs, Inc.

8      This Motion is based on the accompanying Memorandum of Points and Authorities, all

9  documents in the Court's file, and such other written and oral argument as may be presented to the

10  Court.

11

Dated: June 3, 2024                      GOODWIN PROCTER LLP

12

13

14                                   By:  /s/ Neel Chatterjee
                                         Neel Chatterjee
15                                       NChatterjee@goodwinlaw.com
                                         Jennifer Briggs Fisher
16                                       JFisher@goodwinlaw.com
                                         Elizabeth J. Low
17                                       ELow@goodwinlaw.com
                                         David Serati
18                                       DSerati@goodwinlaw.com

19                                       Attorneys for Defendants
                                         CTRL IQ, INC. d/b/a CIQ; GREGORY ROSE
20                                       a/k/a GREGORY M. KURTZER; JULIA
                                         ROSE a/k/a JULIA KURTZER; ROBERT
21                                       ADOLPH; MATTHEW HAYDEN; ERIN
                                         FONG; OPEN DRIVES, INC.; DAVID BUSS;
22                                       and MARLIN PRAGER

23

24

25

26

27

28

i

1

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................ 2

     A.     The Court Dismisses the Initial and First Amended Complaints......................... 2

     B.     Sylabs Files Its Second Amended Complaint. ................................................ 3

III.    LEGAL STANDARD ......................................................................................... 4

IV.     ARGUMENT .................................................................................................... 4

     A.     Sylabs' Trade Secret Claims Based on "Corporate Assets" and "Sylabs' Data" Fail. ...................................................................................................... 4

     B.     The Court Should Dismiss the CFAA Claims. ................................................ 5

          1.     The CFAA Claims Are Time-Barred. ............................................................. 6

          2.     The CFAA Claim Should be Dismissed as to Ms. Fong, Open Drives, Mr. Buss, Mr. Prager, Ms. Kurtzer, and Mr. Adolph. .................. 7

          3.     The SAC Fails to State a Claim Under § 1030(a)(4). ................................. 8

          4.     Sylabs Fails to State Claims Under §§ 1030(a)(4) and (a)(5)(A)-(C) as There Are No Allegations that Sylabs Suffered the Requisite Loss. ......................................................................................................... 8

          5.     Sylabs Fails to State a Claim Under § 1030(a)(5)(A) as There Are No Allegations that Defendants Transmitted a Program, Information, Code, or Command. ......................................................... 11

          6.     The §§ 1030(a)(2), (a)(4), and (a)(5)(A)-(C) Claims Fail As There Are No Allegations that Pre-March 31, 2020 Conduct Was Without or Exceeded Authorization. .......................................................... 11

          7.     Sylabs Fails to State a Claim Under § 1030(b). ...................................... 14

     C.     Dismissal Should be Without Leave to Amend. .................................................. 15

     D.     The Court Should Strike Immaterial and Impertinent Allegations, Headers, and Exhibits............................................................................................................ 15

          1.     Allegations Related to SingularityPRO and Singularity Enterprise. ........ 16

          2.     Allegations Regarding Misappropriation by Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Prager, Ms. Buss,  and Open Drives. ........... 17

          3.     Allegations of "Cyber Intrusions" and "Corruption and Damage to Sylabs' Computer Systems and Data" Asserted in Connection with the Trade Secret Claims. .............................................................. 18

          4.     Summaries of the Court's Prior Orders..................................................... 19

          5.     Summaries of Legislative History............................................................. 20

          6.     Allegations Regarding the National Oceanic and Atmospheric Administration. ......................................................................................... 20

          7.     Allegations Regarding NDAs Not as Issue. .............................................. 20

          8.     Allegations of Inequitable Conduct and Fraud. ....................................... 20

          9.     Request for a Special Master..................................................................... 21

V.      CONCLUSION ................................................................................................ 21

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Al-Ahmed v. Twitter, Inc.*,
   648 F. Supp. 3d 1140 (N.D. Cal. 2023) ................................................................. 7

*Alta Devices, Inc. v. LG Elecs., Inc.*,
   343 F. Supp. 3d 868 (N.D. Cal. 2018) ................................................................. 19

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ............................................................................. 9

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................... 7, 18

*Calendar Rsch. LLC v. StubHub, Inc.*,
   No. 17-CV-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13, 2020) ................. 10, 14

*Classical Silk, Inc. v. Dolan Grp., Inc.*,
   No. CV 14-09224-AB, 2016 WL 7638112 (C.D. Cal. Mar. 21, 2016) ................................. 15

*Connelly v. Blacksexfinder Corp.*,
   No. SACV 15-01255-CJC(JCGx), 2017 WL 11635875 (C.D. Cal. Sept. 12,
   2017) ............................................................................................................ 11

*Delacruz v. State Bar of Cal.*,
   No. 16-CV-06858-BLF, 2018 WL 3077750 (N.D. Cal. Mar. 12, 2018) ............................... 10

*Dhaliwal v. Singh*,
   No. CV F 13-0484 LJO SKO, 2013 WL 2664336 (E.D. Cal. June 12, 2013) ...................... 21

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968) ............................................................................... 5

*Doan v. Singh*,
   No. 13-CV-00531-LJO, 2013 WL 3166338 (E.D. Cal. June 20, 2013) ............................. 21

*Doe 1 v. Univ. of S.F.*,
   685 F. Supp. 3d 882 (N.D. Cal. 2023) ................................................................ 16

*E.D.C. Techs., Inc. v. Seidel*,
   No. 16-CV-03316-SI, 2016 WL 4549132 (N.D. Cal. Sept. 1, 2016) ............................... 8

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ............... 16, 20

*Fish v. Tesla, Inc.*,
   No. SACV 21-060 PSG (JDEx), 2022 WL 1552137 (C.D. Cal. May 12, 2022) .................... 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   639 F. Supp. 3d 944 (N.D. Cal. 2022) ........................................................................ 6

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998)..................................................................................... 5

*Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*,
   863 F.3d 1178 (9th Cir. 2017).................................................................................. 15

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020)..................................................................................... 19

*JGX, Inc. v. Handlery*,
   No. 17-CV-00287-BLF, 2018 WL 984856 (N.D. Cal. Feb. 20, 2018)................................. 15

*Karkanen v. California*,
   No. 17-cv-06967-YGR, 2018 WL 3820916 (N.D. Cal. Aug. 10, 2018)............................... 14

*Lamar v. Merlin Ents. Grp. U.S. Holdings Inc.*,
   No. 20cv01049, 2023 WL 5811847 (S.D. Cal. Sept. 6, 2023) ......................................... 16

*Lee v. Hertz Corp.*,
   330 F.R.D. 557 (N.D. Cal. 2019) ............................................................................... 15

*Lukasian House, LLC v. Ample Int'l, Inc.*,
   No. CV 11–6449–JFW, 2012 WL 13009130 (C.D. Cal. Apr. 20, 2012) ............................ 10

*Maddalena v. Toole*,
   No. 13–cv–4873–ODW(RZx), 2013 WL 5491869 (C.D. Cal. Oct. 1, 2013) ........................ 6

*Merritt v. Countrywide Fin. Corp.*,
   No. 09-CV-01179-BLF, 2015 WL 5542992 (N.D. Cal. Sept. 17, 2015), *aff'd*,
   783 F. App'x 717 (9th Cir. 2019) ............................................................................... 20

*Nowak v. Xapo, Inc.*,
   No. 20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)......................... 8, 10

*Parziale v. HP, Inc.*,
   445 F. Supp. 3d 435 (N.D. Cal. 2020) ........................................................................ 12

*Petrie v. Elec. Game Card, Inc.*,
   761 F.3d 959 (9th Cir. 2014)...................................................................................... 16

*Sylabs, Inc. v. Rose*,
   No. 23-CV-00849-SVK, 2024 WL 2059716 (N.D. Cal. May 8, 2024)................................. 4

*Van Buren v. United States*,
   593 U.S. 374 (2021)................................................................................................ 9, 12

iv

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................................................ 15

*Wilson v. Bank of Am. Pension Plan for Legacy Cos.*,
    No. 18-CV-07755-TSH, 2019 WL 4479677 (N.D. Cal. Sept. 18, 2019) ............................. 15

**Statutes**

18 U.S.C. §§ 1030 ............................................................................................................... *passim*

**Other Authorities**

37 C.F.R. § 1.56 ............................................................................................................................ 21

Fed. R. Civ. P. 8 .............................................................................................................. 11, 14

Fed. R. Civ. P. 9 ........................................................................................................................... 8

Fed. R. Civ. P. 12 ................................................................................................................ *passim*

1

## I.    INTRODUCTION

Plaintiff Sylabs, Inc. ("Sylabs") has once again shown an inability to adhere to the Federal Rules of Civil Procedure's pleading requirements and the Court's orders.  Given the numerous shortcomings of the Second Amended Complaint ("SAC," Dkt. No. 82), Defendants Gregory Rose a/k/a Gregory M. Kurtzer, Julia Rose a/k/a Julia Kurtzer, Robert Adolph, Matthew Hayden, Erin Fong, Marlin Prager, CTRL IQ, Inc. d/b/a CIQ, Open Drives, Inc., and David Buss (collectively, "Defendants") again move to dismiss and to strike.

*First,* each of the claims is subject to dismissal.  As to the trade secret claims, the SAC appears to assert two new trade secrets—"Corporate Assets" and "Data"—as part of the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secret Act ("CUTSA") claims.  Not only does this exceed the scope of the Court's limited grant of leave to amend, but the SAC fails to plead such alleged trade secrets with the requisite particularity.

Sylabs fails to cure the deficiencies identified by Defendants in prior motions with respect to its Computer Fraud and Abuse Act ("CFAA") claim – specifically, that the CFAA claim is time-barred and is predicated on non-actionable misconduct.  The SAC also fails to plead the elements of the statutory provisions Sylabs identifies now for the first time, including its § 1030(a)(4), (a)(5), and (b) claims.

Sylabs' repeated failure to satisfy *Iqbal/Twombly*'s minimum pleading requirements confirms the Court's conclusions that "(1) Sylabs simply cannot state most of these claims, (2) it may be acting in bad faith and (3) further leave to amend would be futile and would unduly prejudice Defendants."  Dkt. No. 80 at 17.  The Court should dismiss each of these claims with prejudice pursuant to Rule 12(b)(6).

*Second,* ignoring the Court's admonishments to Sylabs (Dkt. No. 80 at 19), the SAC continues to assert immaterial and impertinent allegations that should be stricken pursuant to Rule 12(f).  As set forth below, the SAC includes allegations of trade secret misappropriation against Defendants whom the Court dismissed, continues to recite statutes verbatim, unnecessarily summarizes the Court's prior Orders, and improperly pleads purported expert testimony.  Should this case proceed, Defendants should not be forced to waste time and resources responding to such

1   superfluous allegations that have no bearing on the claims and issues.

2   **II.     BACKGROUND[1]**

3         **A.     The Court Dismisses the Initial and First Amended Complaints.**

4         Sylabs filed its initial Complaint on February 24, 2023, but did not serve any Defendants

5   until August 2023.  Dkt. No. 1 (Compl.); Dkt. Nos. 25-27 (Affidavits of Service for Summons).

6   The Court's prior order summarizes the Complaint's allegations.  Dkt. No. 59 at 2-4.

7         On December 19, 2023, the Court dismissed the initial Complaint in its entirety.   Dkt.

8   No. 59; *see* Dkt. No. 66-3 at 2.  On January 22, 2024, Sylabs filed its First Amended Complaint

9   ("FAC"), which alone consisted of 238 pages and, together with Sylabs' 74 exhibits, totaled more

10  than 4,100 pages.  Dkt. No. 61.  Defendants' motion to dismiss the FAC summarized the key

11  changes between the initial Complaint and the FAC.  Dkt. No. 66-3 at 2.

12        On May 8, 2024, the Court granted in part the CIQ and Open Drives Defendants' motion to

13  dismiss and strike, and granted in full the IAG Investors' motion to dismiss, the FAC.  Dkt. No. 80.

14  Specifically, the Court ruled as follows:

15        • The California Uniform Trade Secret Act ("CUTSA") and Defend Trade Secret Act

16            ("DTSA") claims were dismissed without leave to amend as to all Defendants,

17            except for Mr. Kurtzer, Mr. Hayden, and CIQ;

18        • The Racketeering Influenced and Corrupt Organizations Act, civil conspiracy,

19            Unfair Competition Law, breach of fiduciary duty, aiding and abetting breach of

20            fiduciary duty, unjust enrichment, and conversion claims were dismissed without

21            leave to amend; and

22        • The following claims were dismissed with leave to amend: the Computer Fraud and

23            Abuse Act ("CFAA"); breach of contract as to Messrs. Prager and Buss; and

24            intentional misrepresentation.

25  Dkt. No. 80 at 18.  The Court granted Sylabs limited leave to amend the CFAA, breach of contract,

26  and intentional misrepresentation claims.  *Id.*

27  _____

28  [1] Allegations from the SAC are intended only to aid in the Court's resolution of this motion.
    Defendants do not admit them by including them here.

2

1

**B.    Sylabs Files Its Second Amended Complaint.**

Sylabs filed its SAC on May 19, 2024.  Dkt. No. 82.  The SAC asserts three claims for violation of the DTSA and CUTSA against Mr. Kurtzer, Mr. Hayden, and CIQ (counts I and III) and violation of the CFAA against all defendants (count II).  The SAC notably differs from the FAC as follows:

- The SAC does not re-assert the breach of contract and intentional misrepresentation claims.

- The SAC also purports to bring the CFAA claim under 18 U.S.C. §§ 1030(a)(2), (a)(4), (a)(5)(A)-(C), and (b).[2]  SAC ¶¶ 187-89, 190(a)-(d), 191-216, 218-30.

- The SAC again omits any reference to the Waiver, Release and Settlement Agreement between Mr. Kurtzer and Sylabs, Sylabs Holdings LLC, and R-Stor, Inc. Sylabs' conscious choice to omit all reference to this document, like Sylabs' repeated failure to plead a plausible claim, implies that it may be acting in bad faith.

The SAC violates the Court's prior Order with respect to the trade secret claims.  The Court previously found that "Sylabs has sufficiently alleged DTSA and CUTSA claims against CIQ and Defendants GK and Hayden with respect to its SIF technology, Fuzzball and Armored Containers trade secrets."  Dkt. No. 80 at 9.  Otherwise, "[t]he Court . . . dismiss[ed]  Sylabs' DTSA and CUTSA claims (without leave to amend as discussed in Section III.H, *infra*) (1) to the extent asserted against remaining Defendants and (2) to the extent based on misappropriation of its other trade secrets[,]" that is, SingularityPRO and Singularity Enterprise.  *Id.*; *see id.* at 6-7 (listing asserted trade secrets).  The SAC nevertheless includes allegations of trade secret misappropriation against Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Prager, Ms. Buss, and Open Drives (*see, e.g.*, SAC ¶¶ 7, 27-28, 30-32, 34, 115, 135-136, 141, 145, 149, and 153), and improperly includes SingularityPRO and Singularity Enterprise as Sylabs' "Trade Secrets" (*see, e.g.*, SAC ¶¶ 52-56, 62-67).

---

[2] For its §§ 1030(a)(2) and (b) claims, Sylabs uses group pleading and does not specify which "Defendants" violated these subsections.  *See* SAC ¶¶ 187-89.  But as explained herein, Sylabs cannot state such claims against any Defendants.

3

1    **III.   LEGAL STANDARD**

2          The Court's prior Order articulated the legal standard on a Rule 12(b)(6) motion.  *Sylabs,*

3    *Inc. v. Rose*, No. 23-CV-00849-SVK, 2024 WL 2059716, at *1 (N.D. Cal. May 8, 2024).  The

4    Court should apply the same standard here.

5    **IV.   ARGUMENT**

6          Sylabs' SAC should be dismissed because Sylabs again fails to allege sufficient facts to

7    meet federal pleading standards.  In addition, the Court should strike the allegations of the SAC

8    that are immaterial and impertinent.

9    **A.    Sylabs' Trade Secret Claims Based on "Corporate Assets" and "Sylabs'**
          **Data" Fail.**
10

11          The DTSA and CUTSA claims fail to the extent they are predicated on the alleged

12    misappropriation of Sylabs' "Corporate Assets" or "Data."  The SAC alleges that Defendants

13    engaged in the "cyber theft and misappropriation of . . . Sylabs' Corporate Assets."  *See* SAC ¶¶ 26-

14    32, 35, 134-35, 137, 141, 145, 149, 153.  In an attempt to avoid preemption under CUTSA, Sylabs

15    previously argued that the "Corporate Assets"—which purportedly gave rise to its state law

16    claims—were different from its trade secrets.  Dkt. No. 73 at 28-29; Dkt. No. 76 at 15-16.  The

17    Court rejected this argument, finding that

18          [Sylabs'] rights in the non-trade-secret information clearly stem from the same
          "grounds upon which trade secrets are considered property" (*i.e.*, the information
19          constitutes Sylabs' valuable, non-public information), and Sylabs does not argue
          otherwise, and the alleged wrongdoing underlying its state-law claims mirrors the
20          alleged wrongdoing underlying its CUTSA claim (*i.e.*, Defendants' alleged looting
          of Sylabs' servers).
21

22    Dkt. No. 80 at 17.  The SAC also repeatedly refers to the "misappropriation of Sylabs' Data[.]"

23    SAC ¶¶ 170-77, 249.  Sylabs' "Data" is defined as "data, folders, files, and directories residing on

24    [Sylabs'] systems."  *Id.* ¶ 26.

25          Sylabs' assertion that these "Corporate Assets" and "Data" form the basis of its trade secret

26    claims warrants dismissal.  As a preliminary matter, Sylabs' attempt to reassert "Corporate Assets"

27    and "Data" as part of its trade secret claims exceeds the Court's prior Order, which did not grant

28    Sylabs leave to add new alleged trade secrets.  Dkt. No. 80 at 9.

---

4

1   These allegations are also improper and irrelevant as to Mr. Adolph, Ms. Kurtzer,

2   Ms. Fong, Mr. Buss, Mr. Prager, and Open Drives.  SAC ¶¶ 27-28, 30-32, 34, 135-36, 141, 145,

3   149.  As the Court dismissed the trade secret claims against these Defendants without leave to

4   amend (Dkt. No. 80 at 9), Sylabs' inclusion of allegations of misappropriation against them is

5   improper and violates the Court's order.  *See infra*, § IV(D)(2).

6   Furthermore, the SAC offers no description of what constitutes "Corporate Assets."  This

7   is fatal to the claim.  "A plaintiff seeking relief for misappropriation of trade secrets must identify

8   the trade secrets and carry the burden of showing that they exist. . . . The plaintiff should describe

9   the subject matter of the trade secret with sufficient particularity to separate it from matters of

10   general knowledge in the trade or of special knowledge of those persons skilled in the trade."  *Imax*

11   *Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (cleaned up).  Absent allegations

12   as to what the "Corporate Assets" includes, Mr. Kurtzer, Mr. Hayden, and CIQ cannot "ascertain

13   at least the boundaries within which the [alleged] secret lies."  *Diodes, Inc. v. Franzen*, 260 Cal.

14   App. 2d 244, 253 (1968).

15   Sylabs' attempt to define "Sylabs' Data" as "data, folders, files, and directories residing on

16   [Sylabs'] systems" fares no better, as this definition is too vague to allow the plausible inference

17   that they amount to a trade secret.  *See* SAC ¶ 26.  This falls far short of the pleading requirements

18   set forth in *Imax* and *Diodes.*  Accordingly, the Court should dismiss the trade secret claims to the

19   extent they are predicated on the alleged misappropriation of "Corporate Assets" and "Data."

20   **B.    The Court Should Dismiss the CFAA Claims.**

21   Sylabs' SAC cites in passing to several provisions of the CFAA—18 U.S.C. §§ 1030(a)(4)

22   and 1030(a)(5)(A), (B), and (C) (SAC ¶¶ 227-29), with passing references to § 1030(a)(2) and (b)

23   (*id.* ¶¶ 187-89).  These passing references are not sufficient to state a claim.  As set forth below,

24   not only are the claims time-barred, but the SAC fails to allege plausible facts sufficient to state a

25   claim for each one.[3]

26

27

28
_____
[3] Although Sylabs pleads it CFAA claim as a single count, §§ 1030(a)(4), (a)(5)(A), (a)(5)(B), and (a)(5)(C) are in fact separate claims with their own elements.

1          **1.      The CFAA Claims Are Time-Barred.**

2          The SAC and its exhibits show that Sylabs' CFAA claim is barred by the statute's two-year

3   limitations period.  Sylabs initiated this action on February 24, 2023; thus, any alleged conduct

4   giving rise to the CFAA claim must have occurred no earlier than February 24, 2021 to be

5   actionable.  *See* 18 U.S.C. § 1030(g) ("No action may be brought . . . unless such action is begun

6   within 2 years of the date of the act complained of or the date of the discovery of the damage.").

7   "'When legislators have written the word 'discovery' directly into the statute . . . state and federal

8   courts have typically interpreted the word to refer not only to actual discovery, but also to the

9   hypothetical discovery of facts a reasonably diligent plaintiff would know.'"  *hiQ Labs, Inc. v.*

10  *LinkedIn Corp.*, 639 F. Supp. 3d 944, 968 (N.D. Cal. 2022) (quoting *West v. Ronquillo-Morgan*,

11  No. CV 20-2711 DSF (EX), 2021 WL 2953160, at *3 (C.D. Cal. May 10, 2021) (additional citation

12  omitted; ellipses in the original).  As Sylabs waited almost three years to file suit, the claim should

13  be dismissed as untimely.  *See Maddalena v. Toole*, No. 13–cv–4873–ODW(RZx), 2013 WL

14  5491869, at *5 (C.D. Cal. Oct. 1, 2013) (dismissing CFAA claim where, "[b]ecause [p]laintiffs

15  waited almost two-and-a-half years to file their complaints, their actions [we]re time-barred").

16         The face of the SAC confirms that the statute of limitations expired prior to Sylabs' filing

17  of this litigation, as the allegations show that the alleged misconduct that occurred prior to

18  February 24, 2021.  *See, e.g.*, SAC ¶ 107 (Defendants' conduct took place "during the time period

19  between ***March 1 through June 1 of 2020***"); *id.* ¶ 122 ("on March 24 through 31, 2020, defendant

20  Adolph commenced deleting and downloading items from Sylabs' Computer System . . ."); *id.*

21  ¶ 123 ("On March 23, 2020, . . . defendant Greg Kurtzer . . . release[ed] Sylabs' Fuzzball

22  technology . . ."); *id.* ¶ 142 ("[D]uring the month of March 2020,  . . . defendant Adolph used his

23  Sylabs email account . . ."); *id.*  ¶ 144 ("On March 19, 2020, external account

24  m.prager@opendrives.com edited the file . . ."); *id.* ¶¶ 219-26,  231 (alleging conduct by

25  Defendants that took place "during the timeframe of ***January 1, 2020, through June 30, 2020***")[4];

26  *id.* ¶ 217 ("[D]uring the time frame ***January 2, 2020, through April 16, 2020***, Defendants Greg

27  Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund

28  _____
[4] All emphases have been added unless otherwise indicated.

CIQ DEFENDANTS' AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND TO STRIKE
CASE NO. 5:23-cv-00849-SVK

II, and/or IAG Capital Holdings, II utilized numerous Internet Protocol addresses . . . to remotely access Sylabs Computer Systems.").

The delayed discovery rule also does not apply here and thus cannot save the claim.  "Under the delayed discovery rule, 'the accrual of the action may be postponed and the running of the limitations period tolled until the plaintiff discovers, or has reason to discover the cause of action.'" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 138 (N.D. Cal. 2020) (quoting *Quarry v. Doe I*, 53 Cal. 4th 945, 960 (2012)).  Sylabs' allegation that "[i]t was through the publication of defendant CIQ's U.S. Patent No. US 10,970,113 B1 . . . , which occurred on or after April 6, 2021, that Sylabs first started discovering evidence of Defendants'" alleged misconduct (SAC ¶ 92) is simply not plausible in light of the allegation that, "[o]n March 23, 2020, . . . Greg Kurtzer . . . release[ed] Sylabs' Fuzzball technology . . . to open-source" (*id.* ¶ 123).  The SAC offers no explanation as to (1) whether Sylabs was unaware of Fuzzball's release to open source on March 23, 2020, or why it was unable to discover such release at that time; and (2) why Fuzzball's alleged release to open source did not trigger an investigation into the alleged wrongdoing, whereas the publication of CIQ's patent application did.  In other words, the SAC does not  "plead facts to show . . . [its] inability to have made earlier discovery despite reasonable diligence." *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1156 (N.D. Cal. 2023) (citation omitted).

**2.      The CFAA Claim Should be Dismissed as to Ms. Fong, Open Drives, Mr. Buss, Mr. Prager, Ms. Kurtzer, and Mr. Adolph.**

Sylabs alleges that Ms. Fong, Open Drives, Mr. Buss, Mr. Prager, Ms. Kurtzer, and Mr. Adolph violated § 1030(a)(5)(A)-(C) by "us[ing] and/or disclos[ing] . . . Sylabs' Trade Secrets[.]" SAC ¶¶ 196, 209 (Ms. Fong); *id.* ¶¶ 198, 211 (Open Drives); *id.* ¶¶ 199, 212 (Mr. Buss); *id.* ¶¶ 200, 213 (Mr. Prager); *id.* ¶¶ 193, 206 (Ms. Kurtzer).  However, the Court previously dismissed the trade secret claims against these Defendants without leave to amend, on grounds that "[n]one of these [allegedly misappropriated] files appear to have concerned Sylabs' trade secrets." Dkt. No. 80 at 8-9.  Sylabs' CFAA claim against Ms. Fong, Open Drives, Mr. Buss, Mr. Prager, Ms. Kurtzer, and Mr. Adolph thus cannot be predicated on the "use or disclosure" of the alleged trade secrets.

### 3. The SAC Fails to State a Claim Under § 1030(a)(4).

The CFAA claim brought under § 1030(a)(4) fails because it does not meet Rule 9(b)'s heightened pleading standard. Section 1030(a)(4) imposes liability against a person who, "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . ." "CFAA claims under section 1030(a)(4) must be pled with FRCP 9(b)'s specificity 'only when fraudulent conduct is specifically alleged as the basis for the wrongdoing.'" *E.D.C. Techs., Inc. v. Seidel*, No. 16-CV-03316-SI, 2016 WL 4549132, at *4 (N.D. Cal. Sept. 1, 2016) (quoting *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014)); *see Nowak*, 2020 WL 6822888, at *3 ("'Rule 9(b) plainly applies to § 1030(a)(4)'s requirement that the defendant's acts further the intended fraud.'") (quoting *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012)).

Here, the SAC alleges only that Defendants "defrauded Sylabs obtained value for defendant CIQ in an amount between $33M and $150M from Sylabs." SAC ¶¶ 218-26. It is unclear from these allegations what such fraud entailed, what each Defendants' role in the misconduct was, and when the fraud allegedly occurred. *See Nowak*, 2020 WL 6822888, at *3 (dismissing CFAA claim and noting that "[t]he pleadings for Plaintiff's CFAA claim should include the who, what, when, where, and how of the misconduct charged.") (cleaned up). And, while the SAC asserts that "Defendants successfully perpetrated an intentional fraud upon the USPTO" (SAC ¶ 102), this group pleading improperly lumps Defendants together and fails to identify any specific misconduct by each one.

### 4. Sylabs Fails to State Claims Under §§ 1030(a)(4) and (a)(5)(A)-(C) as There Are No Allegations that Sylabs Suffered the Requisite Loss.

The § 1030(a)(4) and (a) (5)(A)-(C) claims should be dismissed because the SAC fails to allege facts that Sylabs suffered a "loss" in the amount of $5,000 within the meaning of the statute. *See* 18 U.S.C. § 1030(e)(11) (defining "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or

other consequential damages incurred because of interruption of service").  In dismissing Sylabs' CFAA claim in the original Complaint, the Court explained that "[t]he statutory definition[] of . . . 'loss' . . . focus[s] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data."  Dkt. No. 59 at 12 (quoting *Van Buren v. United States*, 593 U.S. 374, 392 (2021)); *see also Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) ("The statute's 'loss' definition—with its references to damage assessments, data restoration, and interruption of service—clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself.").  Like Sylabs' original Complaint, the SAC fails to describe any such technological loss.

*First,* Sylabs' allegations that it suffered "a loss . . . exceeding $5,000 during a one-year period, and, in fact, in an amount between $33M and $150M" (SAC ¶ 189; *see id.* ¶¶ 190(a), 190(d), 218-26) are insufficient.  Indeed, there are no allegations that this "loss" was incurred to "'respond to an offense' or to return a system 'to its condition prior to the offense'" so as to establish a cognizable loss under the CFAA.  *Bui-Ford*, 2024 WL 694485, at *4 (quoting 18 U.S.C. § 1030(e)(11)).  To the contrary, the SAC alleges these "losses" were caused by Defendants "defrauding Sylabs and obtaining business value in an amount between $33M and $150M" (SAC ¶ 190(a)) or by Defendants "negligently causing damage and loss in an amount between $33M and $150M" (*id.* ¶ 190(d)).  There are no allegations explaining how such damages were the result of "harms caused by computer intrusions," as opposed to the alleged misappropriation of Sylabs' information (SAC ¶¶ 191-216), so as to fall within the meaning of § 1030(e)(11).  *See Andrews*, 932 F.3d at 1263.

*Second,* paragraph 237 of the SAC does not save the claim.  Rather than only identify its technological harms, Sylabs takes a kitchen-sink approach in an attempt to inflate its purported harms, and identifies 14 different types of harm that Sylabs allegedly suffered as a result of the alleged CFAA violation.  *See* SAC ¶ 237.  But Sylabs fails to allege any harms that constitute a cognizable "loss" under the CFAA.  Sylabs alleges unrecoverable "costs, wages, and fees incurred to assess . . . evidence[,]" "to conduct forensic analysis of the evidence[,]" or "to prepare forensic

reports[.]"[5]  *See, e.g.*, SAC ¶ 237(c)-(j).  Such costs relate to "legal expenses" and therefore "are not a cognizable loss under the CFAA."  *Delacruz v. State Bar of Cal.*, No. 16-CV-06858-BLF, 2018 WL 3077750, at *8 (N.D. Cal. Mar. 12, 2018); *see also Calendar Rsch. LLC v. StubHub, Inc.*, No. 17-CV-04062-SVW-SS, 2020 WL 4390391, at *26 (C.D. Cal. May 13, 2020) ("[F]ees paid to an expert to assist in litigation do not constitute a 'loss' under CFAA[.]") (cleaned up); *Lukasian House, LLC v. Ample Int'l, Inc.*, No. CV 11–6449–JFW (FMOx), 2012 WL 13009130, at *3 (C.D. Cal. Apr. 20, 2012) ("[F]ees incurred for the forensic analysis of Defendants' computers during the course of this litigation is not the type of loss that is recoverable under the CFAA."); *Nowak v. Xapo, Inc.*, No. 20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) ("[I]t is unclear how hiring an investigative firm to trace stolen funds constitutes a cognizable 'loss' relating to computers under the CFAA.") (citations omitted).

Sylabs also alleges two categories—"costs, wages, and fees incurred to remedy harm caused to Sylabs' Computer Systems and Data" and "costs, wages, and fees incurred to remedy harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction" (SAC ¶ 237(k), (l))[6]—that appear to relate to remedial measures, but there are no allegations of technological harm raising a plausible inference that these costs were incurred to restore Sylabs' data, program, system, or information.  Indeed, it is impossible to discern from these conclusory allegations what exactly such expenses entail (i.e., what remedial actions were taken) or whether they, standing alone, amount to $5,000 and whether those expenses were incurred in a one-year period.  These allegations thus do not save the claim.

---

[5] The types of "damage" also appear to be redundant or include overlapping costs in an attempt to inflate the alleged harms.  For instance, it is unclear how "(b) costs, wages, and fees incurred to discover the harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions, cyber corruption, and cyber destruction" is meaningfully different from "(c) costs, wages, and fees incurred to find, gather, and organize evidence of Defendants' cyber intrusions to Sylabs' Computer Systems and Data[.]"  SAC ¶ 237.

[6] Subsections (k) and (l) are also largely repetitive.  *Compare* SAC ¶ 237(k) ("costs, wages, and fees incurred to remedy harm caused by Defendants' cyber intrusions to Sylabs' Computer Systems and Data") *with id.* ¶ 237(l) ("costs, wages, and fees incurred to remedy harm caused to Sylabs' Computer Systems and Data by Defendants' cyber intrusions*, cyber corruption, and cyber destruction*") (emphasis added).

10

1

2

   **5.**  **Sylabs Fails to State a Claim Under § 1030(a)(5)(A) as There Are No Allegations that Defendants Transmitted a Program, Information, Code, or Command.**

3

   The § 1030(a)(5)(A) claim fails because there are no allegations that Defendants

4

"knowingly cause[d] the transmission of a program, information, code, or command[.]"  Rather,

5

the SAC contains only conclusory allegations that information was transmitted to a protected

6

computer.  For instance, although the SAC alleges that there were "knowing transmissions in

7

violation of CFAA, 18 USC § 1030(a)(5)(A)" (SAC ¶¶ 218-26), it fails to explain how or when

8

such transmissions occurred, or who made the transmission.  This is insufficient to meet Rule 8's

9

pleading requirements.  *See Connelly v. Blacksexfinder Corp.*, No. SACV 15-01255-CJC(JCGx),

10

2017 WL 11635875, at *2 (C.D. Cal. Sept. 12, 2017) ("Plaintiffs only state, in conclusory fashion,

11

that 'Plaintiffs' computers are protected computers . . . in that they are used in and affect interstate

12

commerce and communication.' . . . This statement is insufficient to satisfy Federal Rule of Civil

13

Procedure 8, which requires that a complaint contain a short and plain statement showing that the

14

pleader is entitled to the relief sought.").

15

   **6.**  **The §§ 1030(a)(2), (a)(4), and (a)(5)(A)-(C) Claims Fail As There Are No Allegations that Pre-March 31, 2020 Conduct Was Without or Exceeded Authorization.**

16

17

   The Court should dismiss the CFAA claim to the extent it is predicated on violations of

18

§§ 1030(a)(2), (a)(4), (a)(5)(A), (a)(5)(B), and (a)(5)(C) based on access to the Sylabs server that

19

occurred prior to Mr. Kurtzer, Ms. Kurtzer, Mr. Adolph, Ms. Fong, and Mr. Hayden's resignations

20

from Sylabs.  There are no facts that their access to the Sylabs server during that time frame was

21

without or exceeded authorization.

22

   Sections 1030(a)(2) and 1030(a)(4) impose liability against a person who "accesses a

23

computer ***without*** authorization or ***exceeds*** authorized access."  18 U.S.C. § 1030(a)(2); *see* 18

24

U.S.C. § 1030(a)(4) (same, but "accesses a protected computer").

25

   Sections 1030(a)(5)(A)-(C), on the other hand, only concern access "without authorization."

26

*See Fish v. Tesla, Inc.*, No. SACV 21-060 PSG (JDEx), 2022 WL 1552137, at *9 (C.D. Cal. May

27

12, 2022) ("Section 1030(a)(5)(A) proscribes the knowing 'transmission of a program, information,

28

code or command' to intentionally cause 'damage ***without authorization***, to a protected

11

computer.'") (quoting 18 U.S.C. §§ 1030(a)(5)(A), (e)(8)) (ellipses and brackets in the original); *Bui-Ford*, 2024 WL 694485, at *3 ("Unlike subsection (a)(5)(A), subsections (a)(5)(B) and (a)(5)(C) require that Plaintiffs allege that defendant 'intentionally accesses a protected computer' 'without authorization.'").

"Exceeding authorization" and acting "without authorization" are "two distinct ways of obtaining information unlawfully." *Van Buren*, 593 U.S. at 389. If an individual has authorized access to a computer system, he exceeds that access only if he "obtains information located in particular areas of the computer— such as files, folders, or databases—that are off limits to him." *Id.* at 396; *see* 18 U.S.C. § 1030(e)(6) ("[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter[.]"). There is no violation of the CFAA where the information accessed is within the limits of what is authorized, even if it was accessed for allegedly improper reasons. *Van Buren*, 593 U.S. at 389.

A person acts "without authorization" "when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission) or when the [computer owner] has rescinded permission to access the computer and the defendant uses the computer anyway.'" *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 448-49 (N.D. Cal. 2020) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009)) (brackets in the original).

The SAC lacks sufficient facts showing that all of the alleged misconduct was "without authorization" or "exceeded authorization." *See* SAC ¶ 187 (alleging "Defendants, collectively and individually, violated 18 U.S.C. § 1030(a)(2) because they intentionally accessed and caused to be accessed Sylabs' Computer Systems and Data, ***without authorization* . . .**"); *id.* ¶ 235 (alleging "Defendants' access to Sylabs' Computer Systems and Data for the purpose of deleting and trashing Sylabs' Computer Systems and Data ***exceeded any authorized access* . . .**").[7] According to the SAC, Mr. Kurtzer tendered his resignation on March 22, 2020, and that Ms. Kurtzer, Ms. Fong,

---

[7] Paragraph 235 is asserted in connection with the CUTSA claim. However, Defendants address it here in an abundance of caution.

Mr. Hayden, and Mr. Adolph tendered their resignations on March 23, 2020. SAC ¶ 119. Each of their resignations were effective March 31, 2020. *Id.* The face of the SAC makes it clear that much of the allegedly wrongful conduct giving rise to the § 1030(a)(5)(A) claim occurred while these individuals were Sylabs employees:

- "[O]n March 24 through 31, 2020, defendant Adolph commenced deleting and downloading items from Sylabs' Computer Systems by using defendant Greg Kurtzer's CIQ email account and defendant Adolph's personal email account." SAC ¶ 122.

- "On March 23, 2020, . . . defendant Greg Kurtzer . . . release[ed] Sylabs' Fuzzball technology . . ." *Id.* ¶ 123.

- "[O]n March 26, 2020, ***just days before defendant [Matthew] Hayden's resignation***, Shara Hayden unlawfully accessed Sylabs' Computer Systems and Data and corrupted and deleted over three hundred files and folders." *Id.* ¶ 138; *see id.* (alleging that Ms. Hayden acted at Mr. Hayden's direction).

- "[D]uring the month of March 2020, ***prior to tendering his resignation***, defendant Adolph used his Sylabs email account, robert@sylabs.io, to trash 24 files, create 10 files, download 11 files, edit 14 files, change link sharing access and visibility on 5 files, rename 4 files; and change user sharing permissions on 3 files." *Id.* ¶ 142.

- "***[O]n March 18, 2020***, Robert Adolph's Sylabs email account robert@sylabs.io changed the permissions on the file ' HPC is at the heart of Sylabs' . . ." *Id.* ¶ 143.

- "***[P]rior to her resignation from Sylabs***, defendant Fong used her Sylabs email account, erin@sylabs.io, to: edit 11 files (editing one file 18 times on March 24, 2020); change permissions for "Untitled spreadsheet" so anyone could view and edit the file; rename a file, upload 1 file; download 18 files; view 28 files; create 5 files." *Id.* ¶ 146.

- "On March 8, 2020, and March 9, 2020, March 11, 2020, March 18, 2020, and March 19, 2020, respectively, defendant Greg Kurtzer changed the permissions on four files . . ." *Id.* ¶ 150.

13

1    There are no allegations that Ms. Kurtzer, Ms. Fong, Mr. Hayden, and Mr. Adolph were *not*

2    permitted to access, view, edit, change permissions for, or even delete files as part of their job

3    duties, or that Sylabs had revoked their access to the server during the period between the time they

4    had tendered their resignations and their last days at Sylabs.  In other words, there is nothing to

5    suggest that these Defendants acted without authorization or exceeded their authorized access.  *See*

6    *Calendar Rsch.*, 2020 WL 4390391, at *24 ("Plaintiff fails to establish that [i]ndividual

7    [d]efendants were not authorized to delete files off of their work computers while they were still

8    employed. Unlike other cases finding plausible CFAA liability, [p]laintiff here had not revoked

9    [d]efendants' access to the computer at the time of the alleged erasure.") (citations omitted).

10   ### 7.    Sylabs Fails to State a Claim Under § 1030(b).

11   Because the CFAA claims fails to the extent they are brought under § 1030(a)(4) and (5),

12   so too does the portion of the claim asserted under § 1030(b).  Section 1030(b) imposes liability

13   against "[w]hoever conspires to commit or attempts to commit an offense under subsection (a)[.]"

14   But, as explained above, the SAC has not set forth sufficient facts to show that a § 1030(a)(4) lies,

15   or that there is a § 1030(a)(5) claim arising out of wrongdoing that allegedly occurred before March

16   31, 2020.

17   The § 1030(b) claim fails for the additional reason that it engages in improper group

18   pleading.  Rather than identifying specific conduct by each Defendant that allegedly violates

19   § 1030(b), the SAC once again improperly lumps them together.  *See, e.g.*, SAC ¶ 188

20   ("Defendants, collectively and individually, violated 18 U.S.C. § 1030(b) by conspiring and

21   attempting to commit and succeeding in committing the violations alleged herein, all of which

22   benefited and enriched Defendants."); *id.* ¶ 189 ("Defendants, collectively and individually,

23   violated 18 U.S.C. § 1030(b) . . .").  This does not withstand scrutiny under Rule 12(b)(6).  *See*

24   *Karkanen v. California*, No. 17-cv-06967-YGR, 2018 WL 3820916, at *7 (N.D. Cal. Aug. 10,

25   2018) ("Courts consistently conclude that a complaint which 'lump[s] together . . . multiple

26   defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'")

27   (quoting *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) and

28   collecting cases).

1
**C.      Dismissal Should be Without Leave to Amend.**

2          Sylabs has had three opportunities to adequately plead its claims, yet still cannot satisfy

3   Rule 12(b)(6)'s pleading requirements.  As the Court previously noted, Sylabs' repeated inability

4   to state claims leads to the conclusion "that (1) Sylabs simply cannot state most of these claims,

5   (2) it may be acting in bad faith and (3) further leave to amend would be futile and would unduly

6   prejudice Defendants." Dkt. No. 80 at 17.  Dismissal should thus be without leave to amend.  *See*

7   *Wilson v. Bank of Am. Pension Plan for Legacy Cos.*, No. 18-CV-07755-TSH, 2019 WL 4479677,

8   at *6 (N.D. Cal. Sept. 18, 2019) (dismissal with prejudice is appropriate where the Court previously

9   granted leave to amend, the amended claims fail to cure the defects, and further amendment would

10  be futile) (citing *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 780 F. App'x 467,

11  472 (9th Cir. 2019) (district court's dismissal with prejudice was appropriate because plaintiff's

12  amended pleading, "fail[ed] to present any facts which could cure the defect underlying the district

13  court's dismissal")); *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187

14  n.5 (9th Cir. 2017) (dismissal upheld where complaint could not be saved by further amendment).

15
**D.      The Court Should Strike Immaterial and Impertinent Allegations, Headers, and Exhibits.**
16

17         Despite the Court's admonishment that "[l]ess is more" (Dkt. No. 80 at 19), the SAC still

18  contains numerous allegations that are "redundant, immaterial, [or] impertinent[.]"  Fed. R. Civ.

19  P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money

20  that must arise from litigating spurious issues by dispensing with those issues prior to trial."

21  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (cleaned up); *see Classical*

22  *Silk, Inc. v. Dolan Grp., Inc.*, No. CV 14-09224-AB (MRWx), 2016 WL 7638112, at *2 (C.D. Cal.

23  Mar. 21, 2016) (granting motion to strike "to simplify and streamline the issues at trial").  Thus,

24  "[a] motion to strike should be granted if it will eliminate serious risks of prejudice to the moving

25  party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019)

26  (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510

27  U.S. 517 (1994)).  "The decision to strike a portion of a party's pleading is within the sound

28  discretion of the court." *JGX, Inc. v. Handlery*, No. 17-CV-00287-BLF, 2018 WL 984856, at *6

1    (N.D. Cal. Feb. 20, 2018) (citing *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

2         "'Immateriality' and 'impertinence' under Rule 12(f) both speak to the relevance of

3    challenged allegations." *Doe 1 v. Univ. of S.F.*, 685 F. Supp. 3d 882, 894 (N.D. Cal. 2023).

4    "Immaterial" is "defined . . . as 'that which has no essential or important relationship to the claim

5    for relief or the defenses being plead.'" *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th

6    Cir. 2014) (quoting *Fantasy, Inc.*, 984 F.2d at 1527). "'Impertinent' matter consists of statements

7    that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at

8    1527 (cleaned up).

9         Furthermore, "Rule 12(f) does not require a showing of prejudice and no Ninth Circuit

10   authority requires a showing of prejudice to prevail on a Rule 12(f) motion." *Lamar v. Merlin Ents.*

11   *Grp. U.S. Holdings Inc.*, No. 20cv01049 JAH-MSB, 2023 WL 5811847, at *3 (S.D. Cal. Sept. 6,

12   2023).

13              **1.     Allegations Related to SingularityPRO and Singularity Enterprise.**

14        The Court should strike any allegations about SingularityPRO and Singularity Enterprise,

15   *see* SAC ¶¶ 52-56, 62-67, as their inclusion as part of Sylabs' "Trade Secrets" violates the Court's

16   Order.  The Court previously found that Sylabs had stated limited trade secret claims only "against

17   CIQ and Defendants GK and Hayden with respect to its SIF technology, Fuzzball and Armored

18   Containers trade secrets." Dkt. No. 80 at 9.  The Court otherwise dismissed these claims "(1) to

19   the extent asserted against remaining Defendants and (2) to the extent based on misappropriation

20   of its other trade secrets[,]" that is, SingularityPRO and Singularity Enterprise. *Id.*; *see id.* at 6-7

21   (identifying purported trade secrets).

22        Despite the Court's narrowing of these claims, Sylabs continues to discuss SingularityPRO

23   and Singularity Enterprise, even though Sylabs has no claims based on these trade secrets.  For

24   instance, the SAC identifies "SingularityPRO" in Section VII, which is titled "Sylabs' Trade

25   Secrets", and alleges that "when Sylabs adds to Singularity to create, for example, SingularityPRO,

26   ***such transformation constitutes Sylabs' Trade Secrets***." SAC ¶ 53; *see id.* ¶¶ 52, 54-56.

27        Section VII of the SAC also contains allegations describing Singularity Enterprise as "[t]he

28   next generation of Sylabs' value-added technology" that "a set of three services to support Sylabs'

                                                  16

SIF container workflows." *Id.* ¶¶ 62-63; *see id.* ¶¶ 64-67.

Although the SAC does not explicitly define "Trade Secrets," each of the technologies described in Section VII presumably fall within the meaning of the term.  Thus, Sylabs' allegation that "CIQ, Greg Kurtzer, and Hayden . . . stole and misappropriated Sylabs' Trade Secrets" (SAC ¶ 165; *see id.* ¶¶ 166-68, 170-77, 246-66), includes the alleged misappropriation of SingularityPRO and Singularity Enterprise.  This is improper and violates the Court's Order dismissing the trade secret claims based on these technologies without leave to amend. Dkt. No. 80 at 9 ("Sylabs has sufficiently alleged that it suffered harm with respect to Defendants' misappropriation of *only* its SIF technology, Fuzzball and Armored Containers trade secrets. . . . The Court will dismiss Sylabs' DTSA and CUTSA claims (without leave to amend . . . to the extent based on misappropriation of its other trade secrets.") (italics added).  The Court should therefore strike the trade secret claims to the extent they are based on the alleged misappropriation of SingularityPRO and Singularity Enterprise.

### 2. Allegations Regarding Misappropriation by Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Prager, Ms. Buss,  and Open Drives.

Although the Court only allowed the trade secret claims to proceed against Mr. Kurtzer, Mr. Hayden, and CIQ, the SAC continues to allege that the Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Prager, Ms. Buss, and Open Drives engaged in trade secret misappropriation:

- Several of the SAC's headers assert that these Defendants engaged in "Misappropriation."  SAC at 38:13-14, 41:5-6, 42:8-9, 43:15-16, 44:22-23.

- Paragraphs 7 and 115 improperly engage in group pleading to allege that "all Defendants" engaged in trade secret misappropriation.  SAC ¶ 7 ("Defendants have all violated the DTSA . . . and CUTSA"); *id.* ¶ 115 ("**ALL** Defendants benefited and are unjustly enriched through cyber theft, all of which are violations of DTSA, CFAA, and CUTSA.") (capitalization and emphasis in the original).

- Paragraphs 27-28, 30-32, 34, 135-136, 141, 145, 149, and 153 allege that Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Prager, Ms. Buss, Open Drives, and the IAG Investors engaged in conduct "for the purpose of cyber theft and

17

misappropriation of Sylabs' Trade Secrets and Sylabs' Corporate Assets" and that "[s]aid defendant's actions constitute violations of DTSA . . . and CUTSA."

Sylabs cannot contend that these allegations relate to the CFAA claim, as "'the plain language of the CFAA targets the unauthorized procurement or alteration of information, ***not its misuse or misappropriation***.'" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 128-29 (N.D. Cal. 2020) (quoting *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc)) (cleaned up). Paragraphs 7, 27-28, 30-32, 34, 115, 135-136, 141, 145, 149, and 153, as well as headers referring to misappropriation (SAC at 38:13-14, 41:5-6, 42:8-9, 43:15-16, 44:22-23) should thus be stricken. Such allegations thus expressly violate the Court's dismissal of Ms. Kurtzer, Mr. Adolph, Ms. Fong, Mr. Prager, Ms. Buss, and Open Drives from the trade secret claims without leave to amend.

### 3. Allegations of "Cyber Intrusions" and "Corruption and Damage to Sylabs' Computer Systems and Data" Asserted in Connection with the Trade Secret Claims.

Sylabs appears to conflate the pleading requirements for trade secret and CFAA claims. Specifically, as part of its DTSA and CUTSA claims, Sylabs repeatedly asserts that Defendants engaged in "cyber intrusions" or "cyber corruption" that damaged Sylabs' computer systems. *See* SAC ¶¶ 161, 246 ("Greg Kurtzer, Adolph, Hayden, Julia Kurtzer, and Fong made significant and ongoing unlawful cyber intrusions into Sylabs' Computer Systems and Data for the purposes of: (a) corrupting and damaging to Sylabs' Computer Systems and Data . . ."); *see id.* ¶ 162 ("CIQ, Greg Kurtzer, and Hayden' actions constitute actual, and threatened and ongoing violations under DTSA, 18 U.S.C. §§ 1836 and 1839: (a) cyber corruption and damage to Sylabs' Sylabs' Computer Systems and Data . . ."); *id.* ¶ 165 ("CIQ, Greg Kurtzer, and Hayden intended to and knowingly caused damage to Sylabs and Sylabs' Computer Systems and Data . . ."); *id.* ¶¶ 166, 250 ("CIQ, Greg Kurtzer, and Hayden intentionally engaged in these acts to benefit themselves, with the knowledge and/or intent that these acts would injure Sylabs and cause damage to Sylabs and Sylabs' Computer Systems and Data . . ."); *id.* ¶¶ 167, 170-77, 246, 251, 254-59, 265-66 (alleging "cyber corruption, cyber destruction"); *id.* ¶¶ 168, 252 ("CIQ, Greg Kurtzer, and Hayden intended to corrupt and cause damage to Sylabs and Sylabs' computer server . . ."); *id.* ¶ 249 ("Greg Kurtzer, and Hayden intended to and knowingly caused damage to Sylabs and Sylabs' computer server,

18

1    data, folders, files, and directories . . .")

2           Such allegations are immaterial and impertinent to trade secret claims, which require Sylabs

3    to establish "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated

4    the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."

5    *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020); *see Alta*

6    *Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) ("The elements of

7    misappropriation under the DTSA are similar to those under the CUTSA, . . . except that the DTSA

8    applies only to misappropriations that occur or continue to occur on or after its date of enactment

9    on May 11, 2016.") (cleaned up).  The Court should thus strike references to cyber intrusion,

10   corruption, and damage alleged in connection with the DTSA and CUTSA claims.

11                    **4.     Summaries of the Court's Prior Orders.**

12          Paragraphs 6-13, 48, 158-159, 184, 230, and 243-244, the third and fourth sentences of

13   paragraph 80, the first sentence of paragraph 83, and the second sentence of paragraph 98

14   summarize or quote the Court's prior orders on Defendants' motions to dismiss.  *See* SAC ¶ 80

15   ("Originally, in its 1st MTD Order, the Court expressed concerns that Sylabs did not allege facts

16   sufficient to show those aspects of its SIF technology that were not discussed in Sylabs' SIF

17   Application. See Dkt. 59, p. 10, ll. 4-16. However, in its FAC, Dkt. 61, Sylabs cured this deficiency

18   by making the distinction between Sylabs' patented SIF technology and the Armored Containers

19   Trade Secrets, which were stolen by Defendants and then used to obtain the CIQ patents."); *id.* ¶ 83

20   ("As mentioned, the 1st MTD Order indicated that Sylabs needed to identify and allege the specific

21   policies, methods, and procedures utilized by Sylabs to protect its Trade Secrets (see Dkt. 59, p.

22   11, ll. 13-17)."); *id.* ¶ 98 ("Of note, in the Court's 2nd MTD Order, the Court acknowledged that

23   Sylabs had sufficiently alleged its trade secrets as it pertains to SIF technology, when it held . . .").

24   Restating the Court's prior Orders is immaterial to the allegations and claims at issue.  In particular,

25   explanations as to how the SAC allegedly cures the deficiencies that the Court previously found

26   constitute attorney argument that is inappropriate for a complaint.

27

28

1

2         **5.**         **Summaries of Legislative History.**

Paragraph 37 purports to recount the history of trade secret laws.  SAC ¶ 37 ("The theft of

3 intellectual property has become a matter of national concern, which has been addressed through

4 federal legislation.  For example, in a rare show of solidarity, in 2016 the Defend Trade Secrets Act

5 of 2016 ('DTSA') passed both houses of Congress with remarkable 87-0 approval in the Senate

6 and 410-2 approval in the House.").  "Superfluous historical allegations are a proper subject of a

7 motion to strike." *Fantasy, Inc.*, 984 F.2d at 1527; *accord Merritt v. Countrywide Fin. Corp.*, No.

8 09-CV-01179-BLF, 2015 WL 5542992, at \*13 (N.D. Cal. Sept. 17, 2015), *aff'd*, 783 F. App'x 717

9 (9th Cir. 2019) (striking "superfluous historical allegations or unrelated information" that "have no

10 apparent pertinence to the claims in this case").

11         **6.**         **Allegations Regarding the National Oceanic and Atmospheric**

12                  **Administration.**

13 Paragraph 50 relates to the National Oceanic and Atmospheric Administration's ("NOAA")

14 alleged use of supercomputers.  The second sentence of paragraph 58 alleges that "[o]nce created,

15 the SIF container would be created and encrypted for ease of transport and use by, for example,

16 NOAA's supercomputers."  As there are no allegations that the NOAA does in fact use Sylabs'

17 alleged trade secrets, the Court should strike these allegations as redundant, immaterial, and

18 impertinent. *See Fantasy, Inc.*, 984 F.2d at 1527; *Merritt*, 2015 WL 5542992, at \*13.

19         **7.**         **Allegations Regarding NDAs Not as Issue.**

20 Paragraph 89 alleges that "Defendants Greg Kurtzer, Matthew Hayden, Erin Fong, Robert

21 Adolph, David Buss, Marlin Prager, and Open Drives are bound by intellectual property

22 assignments and nondisclosure agreements[.]"  Exhibits 50, 51, and 52 purport to be the NDAs

23 between Ms. Fong, Mr. Adolph, and Open Drives, LLC, respectively.  Paragraph 89, as it relates

24 to Ms. Fong, Mr. Adolph, Mr. Buss, Mr. Prager, and Open Drives, and Exhibits 50-52 are

25 immaterial as the Court dismissed the trade secret claims, and Sylabs no longer asserts breach of

26 contract claims, as to them.

27         **8.**         **Allegations of Inequitable Conduct and Fraud.**

28 Paragraphs 100 and 102 accuse Defendants of engaging in inequitable conduct and fraud

on the U.S. Patent and Trademark Office, due to Defendants' alleged patenting of Sylabs' technology. Paragraph 249 similarly alleges that CIQ, Mr. Kurtzer, and Mr. Hayden "perpetrated a fraud on the USPTO by submitting fraudulent patent applications to the USPTO and receiving fraudulently obtained patents[.]" These allegations are irrelevant, as Sylabs does not assert claims for inequitable conduct, improper inventorship, or correction of inventorship.

Moreover, paragraphs 101 and 102, which quote 37 C.F.R. § 1.56(a), should be stricken on grounds that they violate the Court's express guidance that "Sylabs need not . . . excerpt entire portions of statutes" and are otherwise immaterial. Dkt. No. 80 at 19; *see Doan v. Singh*, No. 13-CV-00531-LJO, 2013 WL 3166338, at *14 (E.D. Cal. June 20, 2013) (granting motion to strike allegations reciting statutes because, "although plaintiffs allege a RICO violation, there is no need for a verbatim recitation of 18 U.S.C. § 1961"); *Dhaliwal v. Singh*, No. CV F 13-0484 LJO SKO, 2013 WL 2664336, at *21-22 (E.D. Cal. June 12, 2013) (striking quotations of statutes).

### 9.    Request for a Special Master.

The last sentence of paragraph 217 states that, "[i]n order to determine which Defendants performed each of the above-listed intrusions through the IP Addresses and from which of their devices, a Special Master is needed and Sylabs will need to conduct discovery, including forensic analysis and investigation of all of Defendants' devices used to unlawfully access Sylabs' Computer Systems and Data." A request for a Special Master is a discovery matter. It is not an allegation that belongs in a complaint.

### V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss without leave to amend the trade secret claims to the extent they are predicated on the alleged misappropriation of "Corporate Assets" and "Data" and the CFAA claim in its entirety. Defendants further respectfully request that the Court strike the aforementioned paragraphs that are immaterial and impertinent.

1    Dated: June 3, 2024                         GOODWIN PROCTER LLP

2

3                                                By: */s/ Neel Chatterjee*
                                                    Neel Chatterjee
4                                                   *NChatterjee@goodwinlaw.com*
                                                    Jennifer Briggs Fisher
5                                                   *JFisher@goodwinlaw.com*
                                                    Elizabeth J. Low
6                                                   *ELow@goodwinlaw.com*
                                                    David Serati
7                                                   *DSerati@goodwinlaw.com*

8

9                                                Attorneys for Defendants
                                                 CTRL IQ, INC. d/b/a CIQ; GREGORY ROSE
10                                               a/k/a GREGORY M. KURTZER; JULIA
                                                 ROSE a/k/a JULIA KURTZER; ROBERT
11                                               ADOLPH; MATTHEW HAYDEN; ERIN
                                                 FONG; OPEN DRIVES, INC.; DAVID BUSS;
12                                               and MARLIN PRAGER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CIQ DEFENDANTS' AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND TO STRIKE
CASE NO. 5:23-cv-00849-SVK

1

**CERTIFICATE OF SERVICE**

2         I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3 United States District Court for the Northern District of California by using the CM/ECF system

4 on June 3, 2024.  I further certify that all participants in the case are registered CM/ECF users and

5 that service will be accomplished by the CM/ECF system.

6         I certify under penalty of perjury that the foregoing is true and correct.  Executed on June

7 3, 2024.

8

9                                                          /s/ *Neel Chatterjee*
                                                             Neel Chatterjee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CIQ DEFENDANTS' AND OPEN DRIVES DEFENDANTS' MOTION TO DISMISS AND TO STRIKE
CASE NO. 5:23-cv-00849-SVK