**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
23 Corporate Plaza Drive, Suite 150
Newport Beach, California 92660
Telephone: (619) 251-2428; Facsimile: (619) 330-2991
Email: plepiscopo@att.net

Counsel of Record for Plaintiff, **SYLABS, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **SYLABS, INC.**, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> **GREGORY ROSE** a/k/a **GREGORY M. KURTZER**, et al., <br><br> Defendants. | Case No.  **5:23-cv-00849-SVK** <br><br> **SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]** <br><br> Date:    August 6, 2024 <br> Time:    10:00 am <br> Courtroom:  6 <br> Judge:    Honorable Susan van Keulen <br><br> <u>Filed/Lodged Concurrently with</u>: <br> 1.    [*Proposed*] Order Denying Motion to Dismiss |

/////

---

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]**

LEPISCOPO & ASSOCIATES LAW FIRM

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.................................................................... iii

INTRODUCTION……………………………………………................. 1

PRELIMINARY STATEMENT……………………………................. 1

FOR PURPOSES OF THE PLEADING STAGE, COUNT II
OF THE SAC ALLEGES FACTS SUFFICIENT TO
STATE CLAIMS UNDER CFAA…………………………………….... 3

SYLABS IS ENTITLED TO CONDUCT WRITTEN DISCOVERY
AND TAKE DEPOSITIONS………………………………………….... 6

SYLABS' CYBER FORENSICS EXPERT: FORMER
FBI AGENT, CHRISTOPHER TARBELL............................................. 8

ARGUMENT.......................................................................................... 8

I.      LEGAL STANDARD (PURSUANT TO  2ND MTD ORDER)……........ 8

II.     IN THE SAC, SYLABS HAS CURED ALL THE PLEADING
        DEFICIENCIES IN COUNT II (CFAA) OF THE FAC, AS
        IDENTIFIED BY THE COURT IN ITS 2ND MTD ORDER, AND,
        THEREFORE, DEFENDANTS' RULE 12(b)(6) MOTION TO
        DISMISS SHOULD BE DENIED IN ITS
        ENTIRETY................................................................................. 9

        A.      IN ITS 2ND MTD ORDER, THE COURT IDENTIFIED THE
                DEFICIENCIES IN SYLABS' FAC, WHICH THE COURT INDICATED
                SYLABS COULD EASILY CURE THROUGH AN AMENDED
                COMPLAINT.................................................................... 9

        B.      THE CFAA CLAIMS ARE NOT TIME BARRED……...................... 10

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

C.  THE SAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE 2ND MTD ORDER REGARDING COUNT II (CFAA) THEREBY STATING CLAIMS AGAINST ALL DEFENDANTS............................ 12

    1.  Introduction…........……………………………………… 12

    2.  Sylabs has cured the single pleading deficiency in its CFAA claim as identified by the Court in its 2nd MTD Order………………………………………… 12

    3.  Sylabs' claims under the CFAA are not time barred………... 13

    4.  Contrary to Defendants' Arguments, the SAC sufficiently alleges claims against all Defendants under the CFAA, and, therefore, the Motion should be denied………………… 13

III.  SYLABS REQUESTS LEAVE TO AMEND; OR DISMISSAL WITHOUT PREJUDICE........................................................... 24

CONCLUSION........................................................................ 25

CERTIFICATE OF SERVICE

1

## **TABLE OF AUTHORITIES**

2    **CASES:**                                                                    **Pages**

3    *Andrews v. Sirius XM Radio, Inc.,*
4       932 F.3d 1253 (9th Cir. 2019)...................................................... 20

5    *Ashcroft v. Iqbal,*
6       556 U.S. 662 (2009)...........................................................2, 4,  8, 11

7    *Austin v. Terhune,*
8       367 F.3d 1167 (9th Cir. 2004)..................................................... 8

9    *Bell Atl. Corp. v. Twombly,*
       550 U.S. 544 (2007).................................................................. 8

10   *Boquist v. Courtney,*
11      32 F.4th 764, 773 (9th Cir. 2022)................................................. 9

12   *Breier v. Northern California Bowling Proprietors' Association,*
13      316 F.2d 787 (1963)...........................................................3, 13,  24, 25

14   *Callahan v. United States,*
15      364 U.S. 587 (1961)................................................................. 5

16   *Eichenberger v. ESPN, Inc.,*
17      876 F.3d 979 (9th Cir. 2017)...................................................2,  4, 11

18   *Fantasy, Inc. v. Fogerty,*
19      984 F.2d 1524 (9th Cir. 1993)..................................................... 8

20   *Fogerty v. Fantasy, Inc.,*
21      510 U.S. 517 (1994)................................................................. 8

22   *Fontana v. Haskin,*
       262 F.3d 871 (9th Cir. 2001)...................................................... 8

23   *Jackson v. Carey,*
24      353 F.3d 750 (9th Cir. 2003)...................................................... 8

25   *Jones v. Greninger,*
26      188 F.3d 322 (5th Cir. 1999)...................................................... 7

27

LEPISCOPO & ASSOCIATES LAW FIRM

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)……………………………………… 9

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974)........................................................................ 8

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983)......................................................... 8

*UFCW Loc. 1500 Pension Fund v. Mayer*,
   895 F.3d 695 (9th Cir. 2018)…………………………………….. 9

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021)…………………………………………… 20

## STATUTES & CODES:

18 U.S.C. § 1030 ("CFAA")............................................... *passim*

18 U.S.C. § 1030(a)(4)...............................................12,  19, 23

18 U.S.C. § 1030(a)(5)(A)-(C)..............................12, 18, 19,  23, 24

18 U.S.C. § 1030(e)(1)................................................... 14

18 U.S.C. § 1030(e)(2)................................................... 14

18 U.S.C. § 1030(e)(6)................................................... 22

18 U.S.C. § 1030(e)(8)................................................... 20, 22

18 U.S.C. § 1030(g)....................................................... 10, 11

California Civil Code §§ 3426 et seq. ("CUTSA")...................1,  6, 11

## RULES & ORDERS:

37 Code of Federal Regulation 1.56(a)……............................... 24

Federal Code of Civil Procedure, Rule 8(a)................................. 2, 6

Federal Code of Civil Procedure, Rule 9(b)................................. 12, 14

Federal Code of Civil Procedure, Rule 12(b)(6)........................... *passim*

LEPISCOPO & ASSOCIATES LAW FIRM

1

**COURT ORDERS & NOTICES:**

Order on Motion to Dismiss, Dkt. 59 (December 19, 2023)........................... *passim*

Order on Motion to Dismiss, Dkt. 80 (May 8, 2024)................................... *passim*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

**INTRODUCTION**

Plaintiff Sylabs, Inc. ("Sylabs" or "Plaintiff") hereby opposes the Federal Rule of Civil Procedure, Rule 12(b)(6) motion to dismiss ("Motion" or "Motion to Dismiss"), Dkt. 83, filed by defendants Joel Whitley, IAG Fund II, LP, and IAG Capital Holdings II, LLC (collectively, "Defendants" or "IAG Defendants"). Specifically, Defendants seek an order dismissing Count II of the Second Amended Complaint ("SAC" or "Complaint"), Dkt. 82.

**PRELIMINARY STATEMENT**

The amended allegations set forth in the SAC, along with the Exhibits filed in support thereof, are intended and designed to cure the pleading deficiencies of Count II (CFAA) alleged in Sylabs' First Amended Complaint ("FAC"), Dkt. 61, as identified by the Court in its May 8, 2024, dismissal order ("2nd MTD Order"), Dkt. 80.

In the 2nd MTD Order, the Court held that Sylabs has stated claims under Count I (DTSA) and Count III (CUTSA) against defendants CIQ, Greg Kurtzer, and Matthew Hayden, but dismissed these claims against the remaining defendants with**out** leave to amend. *See* Dkt. 80, p. 9, ll. 22-26, and details at Dkt. 80, p. 6, l. 12 through p. 9, l. 26.

As to the CFAA claim (Count II) in the 2nd MTD Order, the Court dismissed that claim against all Defendants **with** leave to amend. *See* Dkt. 80, p. 10, ll. 25-27, p. 18, ll. 5-8, and p. 20, ll. 16-17 (emphasis in original and added):

> "• **Violations Of The CFAA.** Leave to amend. The FAC's deficiencies on this claim (to the extent identified in this Order) stem from Sylabs' failure to identify the specific provisions of the statute that Defendants' allegedly violated. Sylabs can **easily cure** that deficiency in an amended pleading."

The Court has already found that Sylabs' claims alleged under DTSA (Count I) and CUTSA (Count III) are sufficiently pleaded to state claims against defendants CIQ, Greg Kurtzer, and Matthew Hayden. Accordingly, in the SAC Sylabs has alleged facts sufficient to cure the pleading deficiencies of Count II as identified in the 2nd MTD Order so the

Court can determine that Sylabs has stated a claim under CFAA (Count II) against **all** Defendants, including Whitley, IAG Fund II, and IAG Capital Holdings II.

The foregoing notwithstanding, it seems clear from their Motion that Defendants' strategy is to ignore the fact that the Court spent considerable time crafting the 2nd MTD Order in order to identify the pleading deficiencies in the FAC so that Sylabs would be **on notice of** and have an opportunity to cure those deficiencies. Contrary to their protests in their Motion, Defendants have failed to keep in mind that we are bound by the Court's 2nd MTD Order regarding the deficiencies in the FAC, Rule 8 and 12(b)(6), and the Ninth Circuit's guidance, all of which require the Court to treat the allegations of the SAC and exhibits attached thereto as true:

> "We accept as true all factual allegations in the operative complaint, and we construe them in the light most favorable to Plaintiff as the non-moving party."

*Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 981 (9th Cir. 2017) ("*ESPN*"). Furthermore, Sylabs needs to allege only facts giving rise to a reasonable inference that Defendants are liable for the misconduct alleged in Count II of the SAC. *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Ashcroft*"). As evinced by their Motion, it is clear that Defendants will simply review each rendition of any amended complaint filed by Sylabs, then conjure up a new set of deficiencies. The Court should not play this game, but rather it should prevent Defendants from engaging the Court in perpetual motions to dismiss. *See* Rule 8(a) and Rule 12(b)(6); *ESPN* and *Ashcroft*, *supra*.

Finally, if the Court determines that the SAC has remaining pleading deficiencies in Count II, or if the Court decides to entertain the **new** deficiencies with Count II as suggested by Defendants that were not identified in the 2nd MTD Order, then each should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies in Count II. This is an important due process principle because Sylabs made its drafting decisions relating to the SAC based on what the Court identified in the 2nd MTD Order (*see* Dkt. 80, p. 10, ll. 1-27 and p. 18, ll. 5-8). Accordingly,

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

2

LEPISCOPO & ASSOCIATES LAW FIRM

if the Court does identify **new** deficiencies, then Sylabs should be granted leave to amend so it can cure those **new** deficiencies. *See Breier v. Northern California Bowling Proprietors' Association*, 316 F.2d 787, 790 (1963) ("*Breier*").

### FOR PURPOSES OF THE PLEADING STAGE, COUNT II OF THE SAC ALLEGES FACTS SUFFICIENT TO STATE CLAIMS UNDER CFAA

In assessing the sufficiency of Count II of the SAC, the Court should consider that IAG Defendants have not only succeeded as investors in CIQ but also benefited in launching a turnkey startup—defendant CIQ—without making any payment to or investment in Sylabs; they have planned and participated in the fraudulent patenting of Sylabs' Trade Secrets and benefited through their investment in and ownership of CIQ; they have benefited from Sylabs' SBIR applications and award; they planned and participated in and benefited from CIQ's customer base gained through the theft of Sylabs' customer and prospective customer lists; they have benefited from the astronomic growth experienced by CIQ when Defendants stole Sylabs' list of investors and prospective investors; and they have benefited from CIQ being able to raise at least $33 million from the theft of Sylabs' Trade Secrets.

As a matter of equity, the Court should not turn a blind eye to such unlawful conduct—especially since this Court sits in the heart of Silicon Valley, where such lawlessness should be discouraged, and most certainly should not receive judicial ratification; nor should the Court ignore that Defendants have secreted and destroyed evidence just as they have committed cyber theft and cyber destruction against Sylabs. As a practical matter, even though Sylabs was able to secure the server and mail audit logs ("Audit Logs") as well as documents that were not destroyed by Defendants, there is a plethora of evidence that **Defendants have in their possession** that will further support Sylabs' claims in the SAC. For example, as the SAC alleges, Defendants used email addresses outside of @sylabs.io to unlawfully access Sylabs' Computer Systems Data during the entire time frame from January 1, 2020, through June 30, 2020. Absent

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

3

LEPISCOPO & ASSOCIATES LAW FIRM

discovery requests to Defendants and subpoenas for documents directed to the servers of the outside emails, Sylabs will not be able to obtain this evidence. Defendants used the following emails that were **outside** of Sylabs:

- IAG Defendants through defendant Whitley's personal account: joel.whitley@gmail.com (*see* SAC, Dkt. 82, ¶¶ 133, 154, and 155; Exh 38: Decl. of Tarbell, 82-3, ¶¶ 24.a.vi, 50.l, 50.m, 88-91, 131, and 139).

- Open Drives through defendant Buss through two different outside emails, one with defendant Open Drives, d.buss@opendrives.com, and the other with Cubic Corporation, David.Buss@cubic.com (*see* SAC, Dkt. 82, ¶¶ 151; Exh 38: Decl. of Tarbell, 82-3, ¶¶ 41, 98, 99, 100, & 101; Exh. 59. Dkt. 82-20; Exh 62, Dkt. 82-22, pp. 3- 5 & 9-12).

- Open Drives through defendant Prager, m.prager@opendrives.com (*see* SAC, Dkt. 82, ¶¶ 133, 143, 144, &150; Exh 38: Decl. of Tarbell, 82-3, ¶¶ 24.a.viii, 50.m, 92, 93, 94, 95, 96, 97, 99,131, & 135; Exh 46, Dkt. 82-9, pp. 1-3; Exh 59, Dkt. 82-20; Exh 62, Dkt. 82-22, pp. 3-5 & 9-12).

- Open Drives through defendant Adolph, r.adolph@opendrives.com (*see* Exh 62, Dkt. 82-22, pp. 1 & 3).

- Defendant Greg Kurtzer's personal email, gmkurtzer@gmail.com (*see* SAC, Dkt. 82, ¶ 133; Exh 38: Decl. of Tarbell, 82-3, ¶¶ 24.a.v, 54, 119.b, 120, 121, 125, 126, 127, 131, 136, & 138).

- Defendant Robert Adolph's personal email, robert.adolph@hotmail.com (*see* Exh 38: Decl. of Tarbell, Dkt. 82-3, ¶ 99; Exh. 59, Dkt. 82-20; Exh. 62, Dkt. 82-22, pp. 3, 5, & 9-12).

However, Sylabs will not have access to that evidence until discovery is conducted (*see* discovery discussion below). Thus, the Court can and should make reasonable inferences in **Sylabs' favor** that the evidence already provided along with the allegations in the SAC are sufficient to justify denying the Motion. *See e.g. ESPN* and *Ashcroft*, *supra*.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

4

LEPISCOPO & ASSOCIATES LAW FIRM

Additionally, Sylabs would like to draw the Court's attention to the big picture, which coalesces when one takes a step back to survey the facts of this Action. Throughout their Motions, Defendants' strategy has, in part, consisted of attempts to place each defendant (or subgroup) in a sanitized box, separate and apart from the other Defendants so each could opine, "Look here, Sylabs cannot allege that I have done anything actionable." Under Defendants' rhetoric, the getaway driver in a bank robbery could argue, "I was merely driving a car and I had a valid driver's license." Of course, this way of storytelling evades the fact that overt acts of individuals, when combined and focused on a scheme, increase the likelihood of success. In this regard, the Court should remember and analyze this Action through the prism of the wise words of Justice Frankfurter in *Callahan v. United States*, 364 U.S. 587, 593-594 (1961) ("*Callahan*") (emphasis added):

> "This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement -- partnership in crime -- presents a greater potential threat to the public than individual delicts. Concerted action both **increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality**. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish."

As alleged in the SAC, because Defendants were in league, their conspiracy was methodical, well executed, and successful. For an obvious example, the Court need look no further than the coordinated and mass exodus Defendants made from Sylabs to fund and launch defendant CIQ. The homogenized effect of their separate expertise, actions, financial means (especially IAG Defendants), and plans resulted in the successful commandeering of Sylabs' Trade Secrets, assets, corporate secrets, and customers, all of which instantaneously established defendant CIQ as a turnkey startup—thus, they immediately raised $33M. It was their concerted actions that resulted in Defendants' success—a fabulous success—and it is exactly because of these concerted actions that Defendants have all violated the CFAA.

LEPISCOPO & ASSOCIATES LAW FIRM

Finally, Defendants want the Court to analyze all allegations of the SAC and attached exhibits in a vacuum, disregarding the obvious relationship between Defendants, as well as the coordination and planning being done and executed by the Defendants for the express purpose of creating a turnkey start-up (for which they paid $0). The SAC's allegations and exhibits demonstrate Defendants' deceit in giving defendant CIQ the codename, "Newco" to which they would unlawfully transfer Sylabs' trade secrets, corporate secrets, customers, investors, etc. The Court should not be misled or persuaded by Defendants' siren call to wear blinders while reviewing and analyzing the SAC. Rather, the Court should employ exacting scrutiny to consider the interrelationship between all Defendants, Defendants' actions, and the allegations in the SAC.

## SYLABS IS ENTITLED TO CONDUCT WRITTEN DISCOVERY AND TAKE DEPOSITIONS

Considering the detailed allegations set forth in the SAC, Dkt. 82, and exhibits attached thereto, Sylabs has cured all the deficiencies identified in the 2nd MTD Order, Dkt. 80, thereby satisfying the pleading requirements under Rule 8(a). Accordingly, Sylabs is entitled to conduct written discovery and take depositions to obtain evidence and testimony to prove its case—**the evidence in Defendants' possession, which is not currently available to Sylabs, will no doubt prove that all Defendants engaged in conduct that violates the CFAA (as well as DTSA and CUTSA).** In the event the Court is inclined to dismiss any of the Defendants, then Sylabs requests that it is with**out** prejudice because once discovery commences evidence will be revealed that implicates all Defendants.

For example, during the time frame January 2, 2020, through April 16, 2020, Defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and/or IAG Capital Holdings, II utilized numerous Internet Protocol addresses ("IP addresses") to remotely access Sylabs Computer Systems from the following IP addresses and locations inside and outside (and unknown locations) the United States of America ("US"):

LEPISCOPO & ASSOCIATES LAW FIRM

| IP address | Location |
|---|---|
| 104.47.125.33 | US |
| 104.47.17.97 | US |
| 104.47.32.36 | Burke, Virginia, US |
| 104.47.4.36 | Wilmington, Delaware, US |
| 104.47.48.33 | US |
| 104.47.5.36 | US |
| 104.47.58.161 | Carrollton, Texas, US |
| 104.47.58.33 | Wilmington, DE US |
| 104.47.6.36 | Sacramento, CA, US |
| 104.47.70.110 | US |
| 104.47.70.33 | Berkeley, CA, US |
| 163.114.21.140 | Parker, Colorado, US |
| 163.114.21.150 | US |
| 163.114.23.130 | US |
| 163.114.23.140 | Amsterdam, No. Holland, NL |
| 172.112.246.83 | US |
| 203.254.224.12 | Unknown |
| 209.85.220.41 | US |
| 209.85.220.73 | US |
| 23.226.89.13 | Des Moines, Iowa, US |
| 67.231.145.42 | US |
| 68.232.140.227 | US |
| 68.232.141.249 | US |

*See* SAC, Dkt. 82, ¶ 217.

In order for Sylabs to determine which Defendants performed each of the above-listed intrusions through the IP Addresses and from which of their devices, a Special Master is needed and Sylabs will need to conduct discovery, including forensic analysis and investigation of all of Defendants' devices used to unlawfully access Sylabs' Computer Systems and Data. In this regard, and as aptly put by the Fifth Circuit, at this stage of the litigation, the Court must simply determine whether the allegations in the SAC are such that Sylabs is "entitled to offer evidence to support [its] claim[s].'" *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Ninth Circuit has adopted this principle:

"The issue is not whether a plaintiff will ultimately prevail but **whether the claimant is entitled to offer evidence to support the claims**. Indeed it may

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

7

LEPISCOPO & ASSOCIATES LAW FIRM

Lepiscopo & Associates Law Firm

appear on the face of the pleadings that a recovery is very remote and unlikely **but that is not the test**."

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (emphasis added) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . '" (quoting *Fontana v. Haskin*, 262 F.3d 871, 977 (9th Cir. 2001)).

Finally, disputed or substantial legal issues are properly determinable only **after discovery** and a **hearing on the merits**. *See e.g. Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994) (quoting *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983)).

### SYLABS' CYBER FORENSICS EXPERT: FORMER FBI AGENT, CHRISTOPHER TARBELL

Pursuant to the Court's 12/19/23 Order Granting Defendants' Motions to Dismiss ("MTD Order"), Dkt. 59, p. 5, n. 3, Sylabs provided allegations and evidence regarding its claims through the declaration of its forensic and cyber theft expert witness, former FBI Agent Christopher Tarbell (Exh. 38) ("Decl. of Tarbell"), Dkt. 82-3, and SAC Exhibits 1, 37, 39-43, 46, 47-52, 54 & 55, 56, 58, 59, 61, 62, & 65), Dkt. 82-1 through 82-23.

### ARGUMENT

## I.    LEGAL STANDARD (PURSUANT TO 2ND MTD ORDER).

Under Rule 12(b)(6), the Court must dismiss the SAC if it "fail[s] to state a claim upon which relief can be granted." In order for it to survive Defendants' Motion to Dismiss, Sylabs must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires Sylabs to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft, supra,* 556 U.S. at 678 (citations omitted). In ruling on Defendants' Motion to Dismiss, the Court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See*

*UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). In addition, the Court must also presume the truth of Sylabs' allegations in the SAC and draw all reasonable inferences in its favor. *See Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

**II.    IN THE SAC, SYLABS HAS CURED ALL THE PLEADING DEFICIENCIES IN COUNT II (CFAA) OF THE FAC, AS IDENTIFIED BY THE COURT IN ITS 2ND MTD ORDER, AND, THEREFORE, DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY.**

**A.    IN ITS 2ND MTD ORDER, THE COURT IDENTIFIED THE DEFICIENCIES IN SYLABS' FIRST AMENDED COMPLAINT, WHICH THE COURT INDICATED SYLABS COULD EASILY CURE THROUGH AN AMENDED COMPLAINT.**

In its 2nd MTD Order, the Court identified the following pleading deficiencies:

> "'The CFAA prohibits a number of different computer crimes . . . .' In that vein, the statute 'is comprised of many parts and subparts, all of which are defined to give rise to liability under the [statute] in different ways and which have different pleading requirements.' Yet nowhere in the FAC does Sylabs identify which particular provisions Defendants allegedly violated. Sylabs has therefore failed to state a claim under the CFAA.
>
> In its opposition briefing, Sylabs attempts to belatedly cure this deficiency by enumerating the specific subsections of the CFAA at issue. But '[i]t is axiomatic that [a] complaint may not be amended by briefs [submitted] in opposition to a motion to dismiss.' The Court also recognizes that Sylabs excerpts in the FAC certain provisions of the CFAA '[i]n its relevant part.'
>
> However, these excerpts remain outside the section of the FAC in which Sylabs expressly discusses its CFAA cause of action. That will not do. '[A]llegations must put defendants 'on sufficient notice of the particular misconduct alleged to permit [them] to prepare a defense to [a plaintiff's] claims.'' The FAC fails to provide such sufficient notice because it is not clear whether Sylabs alleges Defendants violated the excerpted provisions of the CFAA.

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

9

LEPISCOPO & ASSOCIATES LAW FIRM

1    Accordingly, the Court will dismiss Sylabs' CFAA claim (with leave to
2    amend as discussed in Section III.H, infra)."

3  *See* 2nd MTD, Dkt. 80, p. 10, ll. 1-27 (emphasis added; citations omitted).

4    Finally, as referred to in the last paragraph of the preceding quote, the Court further
5  held that Sylabs could easily cure the pleading deficiencies of Count II (CFAA):

6    "• **Violations Of The CFAA.** Leave to amend. The FAC's deficiencies on
     this claim (to the extent identified in this Order) stem from Sylabs' failure to
7    identify the specific provisions of the statute that Defendants' allegedly
8    violated. Sylabs can **_easily cure_** that deficiency in an amended pleading."

9  *See* 2nd MTD, Dkt. 80, p. 18, ll. 5-8 (emphasis in original and added).

10  **B.    THE CFAA CLAIMS ARE NOT TIME BARRED.**

11    Notwithstanding the fact that in its 2nd MTD Order, Dkt. 80, the Court did **not** hold
12  that Count II (CFAA) is time barred, Defendants argue in their Motion that Sylabs' CFAA
13  claims are time barred because they were not filed within two years as required by 18
14  U.S.C. § 1030(g). *See* Motion, Dkt. 83, p. 8, l. 25-p. 10, l. 3. However, as clearly alleged
15  in the SAC, Sylabs did not first discover Defendants' actionable conduct (that **Defendants**
16  **themselves** **_concealed_**) until April 6, 20<u>21</u>. *See* SAC, Dkt. 82, ¶ 92. As the original
17  complaint was filed **less than two** (2) years later on February 24, 20<u>23</u> (*see* Dkt. 1, p. 1,
18  date Filed), Sylabs' CFAA claims are <u>not</u> timed barred by 18 U.S.C. § 1030(g).

19    In their Motion, Defendants offer hypotheticals and assumed facts, and then ask the
20  Court to make assumptions and draw unreasonable inferences based on those hypothetical
21  and assumed facts to trigger Section 1030(g)'s limitation period. *See* Motion, Dkt. 83, p.
22  8, l. 25-p. 10, l. 3. Essentially, Defendants list some facts alleged in the SAC and request
23  the Court to make assumptions and draw inferences based on those facts as to Sylabs'
24  knowledge, although they are in direct contravention of the clear allegations:

25    "It was through the publication of defendant CIQ's U.S. Patent No. US
      10,970,113 B1 (Exh. 37), which occurred on or after April 6, 2021, that
26    Sylabs first started discovering evidence of Defendants' cyber corruption,

LEPISCOPO & ASSOCIATES LAW FIRM

cyber destruction, cyber theft, misappropriation, and unlawful and fraudulent patenting of Sylabs' Trade Secrets."

*See* SAC, Dkt. 82, ¶ 92. The forgoing allegation triggered the actual investigation of Defendants' unlawful conduct, including analysis of the evidence that would reveal Defendants' unlawful behavior, the Audit Logs:

> "Thereafter, Sylabs commenced review of Sylabs' Computer Systems Audit Logs, which started to reveal Defendants' cyber corruption, cyber destruction, and cyber theft of Sylabs' Trade Secrets. *See* Exh. 38: Decl. of Tarbell ¶¶ 4-5 and 27-127, all of which violate the protections afforded under DTSA, CFAA, and CUTSA."

*See* SAC, Dkt. 82, ¶ 93.

It is important to note that this defense has already been presented twice to the Court, making this the third time. Specifically, Defendants made the same arguments in their motions to dismiss the original complaint (Dkt. 39, p. 15, l. 3-p. 17, l. 15) and the first amended complaint (Dkt. 68, p. 9, l. 21-p. 11, l. 7). However, neither the MTD Order (Dkt. 59), nor the 2nd MTD Order (Dkt. 80) found any deficiencies relating to Sylabs' allegations regarding Section 1030(g). Furthermore, this Action is at the pleadings stage so Defendants will be able to further explore issues relating to their purported statute of limitations defense through written discovery and depositions.

Finally, any factual disputes or hypotheticals Defendants have raised in their Motion, as well as the assumptions and unreasonable inferences asked to be drawn from such disputed facts and hypotheticals, regarding Section 1030(g), must be resolved and drawn only by a trier of fact but not by the Court through a Rule 12(b)(6) motion. *See ESPN, supra,* 876 F.3d at 981 and *Ashcroft, supra,* 556 U.S. at 678.

/////

/////

/////

/////

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

11

LEPISCOPO & ASSOCIATES LAW FIRM

**C.    THE SAC CURED THE PLEADING DEFICIENCIES IDENTIFIED IN THE 2ND MTD ORDER REGARDING COUNT II (CFAA) THEREBY STATING CLAIMS AGAINST ALL DEFENDANTS.**

### 1.    Introduction.

Although page limitations prevent listing all of Defendants' violations of the CFAA, they are set forth in greater detail in Section VIII of the SAC, Dkt. 82, *see* ¶¶ 92-155, all of which are hereby incorporated herein by this reference.

In their Motion, Defendants assert the following arguments: **(1)** the CFAA Claims are time barred (Dkt. 83, pp. 8-10); **(2)** Sylabs alleges no loss attributable to Defendants (Dkt. 83, pp. 6-7); **(3)** Sylabs alleges only authorized access, not unauthorized access (Dkt. 83, pp. 7-8); **(4)** Sylabs' § 1030(a)(4) claim sounds in fraud but does not satisfy Rule 9(b) (Dkt. 83, pp. 10-11); **(5)** Sylabs' § 1030(a)(5)(A) claim fails because Defendants did not knowingly transmit a program, information, code, or command (Dkt. 83, pp. 11-12); and **(6)** Sylabs' claims under §§ 1030(a)(5)(A)-(C) fail because Sylabs does not allege any damage attributable to Defendants (Dkt. 83, pp. 12-13) (collectively "Defendants' Arguments").

As mentioned above, in its 2nd MTD Order, the Court identified the deficiencies in Count II (CFAA) in the FAC:

> "• **Violations Of The CFAA.** Leave to amend. The FAC's deficiencies on this claim (to the extent identified in this Order) stem from Sylabs' failure to identify the **specific provisions of the statute** that Defendants' allegedly violated. Sylabs can easily cure that deficiency in an amended pleading."

*See* 2nd MTD, Dkt. 80, p. 18, ll. 5-8 (emphasis in original and added); and for details, *see also* 2nd MTD, Dkt. 80, p. 10, ll. 1-27.

### 2.    Sylabs has cured the single pleading deficiency in its CFAA claim as identified by the Court in its 2nd MTD Order.

In its 2nd MTD Order, the Court held that the CFAA (Count II) failed to state a claim against Defendants for a **single** reason—no other deficiencies were cited:

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

12

"'The CFAA prohibits a number of different computer crimes . . . .' In that vein, the statute 'is comprised of many parts and subparts, all of which are defined to give rise to liability under the [statute] in different ways and which have different pleading requirements.' Yet nowhere in the FAC does Sylabs **identify which particular provisions Defendants allegedly violated**. Sylabs has therefore failed to state a claim under the CFAA.

*See* 2nd MTD Order, Dkt. 80, p. 10, ll. 1-8 (emphasis added; citations omitted).

In full compliance with the Court's 2nd MTD Order, Sylabs has cured this deficiency by tying the actions to the particular provisions of the CFAA, which Defendants have violated. *See* SAC, Dkt. 82, ¶¶ 179-183, 187-216, 218-229, and 238- 240.

Finally, it is important to reiterate that if the Court were to decide to entertain the alleged deficiencies suggested by Defendants in the Motion, which were **not** identified in the 2nd MTD Order, then each should be specifically identified and Sylabs should be provided leave to amend to cure those remaining pleading deficiencies. This is an important due process principle because Sylabs made its drafting decisions relating to the SAC based on its reliance on the 2nd MTD Order. Accordingly, if the Court does identify **new** deficiencies, then Sylabs should be granted leave to amend so it can cure those **new** deficiencies. *See Breier, supra*, 316 F.2d at 790.

### 3. <u>Sylabs' claims under the CFAA are not time barred.</u>

As to Defendants' argument that the claims under the CFAA are time barred, Sylabs addressed that argument in Section II.B, *supra*.

### 4. <u>Contrary to Defendants' Arguments, the SAC sufficiently alleges claims against all Defendants under the CFAA, and, therefore, the Motion should be denied.</u>

The CFAA claim is alleged against G. Kurtzer, J. Kurtzer, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, LP, and IAG Capital Holdings II, LLC (SAC, Dkt. 82, ¶ 179). As mentioned above, the Court should view this matter in the totality of the circumstances in order to see the interrelationship of the facts with each Defendant. For example, the SAC alleges that the business entity defendants, CIQ, Open Drives, IAG

LEPISCOPO & ASSOCIATES LAW FIRM

Fund II, and IAG Capital Holdings II, acted by and through their officers, directors, principals, and employees as follows.

IAG Defendants have instructed, authorized, ratified, and benefited from all actions taken by defendant Whitley, as a principal and employee of IAG Defendants (Dkt. 82, ¶¶ 25, 33, 34, 153, 154, 155, 179, & 181).

Defendant CIQ has instructed, authorized, ratified, and benefited from all actions taken by defendant G. Kurtzer, founder, director, and CEO (Dkt. 82, ¶¶ 26, 34, 110, 115, 134, 166-168, & 179); defendant J. Kurtzer (Dkt. 82, ¶¶ 34, 110, 115, 135, & 179); defendant Hayden, as customer advocate (Dkt. 82, ¶¶ 29, 34, 110, 115, 137, 166-168, & 179); defendant Adolph, as founder and chief product officer (Dkt. 82, ¶¶ 28, 34, 110, 115, 141, 142, & 179); and defendant Fong, as operations manager (Dkt. 82, ¶¶ 30, 34, 110, 115, 145, 146, & 179).

Defendant Open Drives has instructed, authorized, ratified, and benefited from all actions taken by defendant Buss, as director, CEO, and secretary (Dkt. 82, ¶¶ 21, 31, 34, 149, 179, & 180); and defendant Prager, as director and CFO (Dkt. 82, ¶¶ 21, 32, 34, 149, 179, & 180).

Under the CFAA, Sylabs' Computer Systems and Data[1] were "computers" as defined by 18 U.S.C. § 1030(e)(1) (SAC, Dkt. 82, ¶ 185), and were "protected computers" as defined by 18 U.S.C. § 1030(e)(2)(B) because they are used in or affecting interstate or foreign commerce or communication (SAC, Dkt. 82, ¶ 186).

Although the discussions below address all aspects of the cyber theft and cyber destruction and allegations under CFAA, it also highlights the SAC's allegations relating to all defendants' pervasive fraud, which invalidate IAG Defendants' argument on pages

---

[1]    Sylabs' Computer Systems is comprised of Sylabs' computers, computer servers, computer storage, databases, email, voice mail, use of internet, laptops, tablets, and cell phones; and Data is comprised of the data, folders, files, and directories residing on those systems. (SAC, Dkt. 82, ¶ 26.)

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

14

LEPISCOPO & ASSOCIATES LAW FIRM

12 & 13 of their Motion that Sylabs' CFAA claim sounds in fraud but does not comply with Rule 9(b). Motion, Dkt. 83, pp. 10-11.

During the time frame January 1st through June 30th of 2020, defendant G. Kurtzer believed (due to his **insider knowledge**) that Sylabs was in dire economic straits and would most likely become insolvent and dissolve. Agreeing with and acting together pursuant to defendant G. Kurtzer's belief, Defendants (including IAG Defendants) engaged in detailed planning to commit cyber-theft of Sylabs' trade secrets, customers, assets, and other assets, and to commit cyber-destruction of Sylabs' Computer Systems and Data for the purpose of launching their new competitive entity, defendant CIQ. *See* SAC, Dkt. 82, ¶¶ 107 & 231; Exh. 38 Decl. of Tarbell, Dkt. 82-3, ¶¶ 8, 9, 22, 50-54, 56, 77, and 87.

As testified to by Chris Tarbell, Defendants G. Kurtzer, J. Kurtzer, Adolph, Hayden, Fong, Prager, Buss, and Whitley were "**insider threats**" to Sylabs at the time they committed cyber corruption and cyber destruction of Sylabs' Computer Systems and Data and cyber theft of Sylabs' Trade Secrets (SAC, Dkt. 82, ¶ 46; Exh. 38 Decl. of Tarbell, Dkt. 82-3, ¶ 30). Mr. Tarbell proffers many examples in his Declaration at ¶¶ 31-127.

As Insider Threats, on or about March 8, 2020, defendants G. Kurtzer, J. Kurtzer, Adolph, Hayden, Fong, Buss, Prager, and Whitley, and, through their respective officers, CIQ, Open Drives, and IAG, prepared a budget ("CIQ Budget") for defendant **CIQ** (identified as "Newco"). In the CIQ Budget, Defendants listed fourteen of **Sylabs' customers and prospective customers** as **CIQ's** in the CIQ Budget. *See* SAC, Dkt. 82, ¶ 108; Exh. 56, Dkt. 81-18, p. 1.

As a retired U.S. Navy Admiral, defendant David Buss used his knowledge and expertise of and influence with the DoD to recognize the value of Sylabs' DoD projects. Specifically, in March of 2020, defendant Buss and his codefendants, including IAG Defendants, included Sylabs' Armored Containers in their cyber theft, a project that Sylabs had already been involved in with the U.S. Air Force since 2019. On March 6, 2020, the U.S. Air Force awarded the SBIR Phase 1 contract to Sylabs. Furthermore, defendant Buss

LEPISCOPO & ASSOCIATES LAW FIRM

was involved in assessing Sylabs' DoD projects that were under way for the purpose of including them in CIQ's business plan and CIQ Budget because he knew Sylabs' Trade Secrets would be used as the basis to procure the six CIQ Patents. *See* SAC, Dkt. 82, ¶ 109; Exhs. 46, 56, 58, & 61, Dkt. 82-9, 82-18, 82-19, & 82-21, respectively.

The SAC demonstrates that all defendants, including IAG Defendants, were involved in planning and executing the theft and destruction of Sylabs' customers and existing and future agreements with the DoD. For example, on March 10, 2020, defendant Greg Kurtzer sent an email to defendants Buss, Adolph, and Prager: "Hi guys, Here is the formal SBIR Phase 1 Award. Greg." At this point defendant Buss and his codefendants, including IAG Defendants, knew that the SBIR Phase 1, as well as follow-up awards for Phase 2 and Phase 3, were Sylabs' property and future business, as it was based and awarded on Sylabs' technology. *See* SAC, Dkt. 82, ¶¶ 110 & 110; Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 41; Exhs. 46, 56, 58, & 61, Dkt. 82-9, 82-18, 82-19, & 82-21, respectively.

In a March 16, 2020, email sent to his co-defendants Buss, G. Kurtzer, and Prager, defendant Adolph discussed Sylabs' SBIR that was stolen by Defendants for use by "NewCo," which the evidence demonstrates is defendant CIQ: "This is the NewCo next SBIR...This is them asking for the Sylabs Edge Solution. The current SBIR is just secure containers. . ." *See* SAC, Dkt. 182, ¶ 111; Exhs. 46, 56 & 58, Dkt. 82-18 & 82-19. In a March 29, 2020, follow-up email sent by defendant Buss to his codefendants, G. Kurtzer, Marlin Prager, and Robert Adolph, his involvement with SBIR through the U.S. Navy's program is evident:

> "Interesting. I just received a LinkedIn connection request from Matt Williams, who runs the Navy's SBIR program. Of course I said yes and connected. Will reach out to him. Dave David H. Buss CEO, Open Drives, LLC"

*See* SAC, Dkt. 82, ¶ 111; Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 41; Exh. 59, Dkt. 82-20.

Clearly, defendants, including IAG Defendants, had a plan underway in furtherance of their conspiracy so that not only CIQ but also IAG Defendants would benefit from SBIR

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]

16

LEPISCOPO & ASSOCIATES LAW FIRM

LEPISCOPO & ASSOCIATES LAW FIRM

Phase 1, Phase 2, and Phase 3, including planning on receiving SBIR revenues in CIQ's budget, which would benefit IAG Defendants as investors. Specifically, Defendants included **$7,050,000** of total revenue within **CIQ's** Budget regarding **Sylabs'** SBIR Award & Proposal: (a) USAF SBIR Phase 1, $50,000; (b) USAF SBIR Phase 2, $2,000,000; and (c) USAF SBIR Phase 3, $5,000,000. *See* SAC, Dkt. 82, ¶¶ 110 & 112; Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 41; Exhs. 46, 56 (p. 1), 58, & 61, Dkt. 82-9, 82-18, 82-19, & 82-21, respectively.

Similarly, on March 17, 2020, defendants', including IAG Defendants, unlawful scheme was evident when defendants Adolph and Greg Kurtzer were in contact with Facebook, for the purpose of promoting Fuzzball for implementation when CIQ was launched on April 1, 2020:

> "I believe if we could work out an agreement for a yearly support/development model with you/your team, **we could easily sidetrack this situation and possibly even open a new entity focused on this solution (codename Fuzzball)**."

*See* SAC, Dkt. 82, ¶ 116; Exh. 65, Dkt. 82-23 (emphasis added).

Through their principal, defendant Whitley, IAG Defendants were actively involved in this conspiracy. Specifically, on March 11, 2020, defendant G. Kurtzer sent Whitley an email ("Whitley Email") updating him on the efforts to steal Sylabs' Trade Secrets:

> "Dear Joel, . . .
>
> This will provide us with the ability to keep the team together and continue the development of Fuzzball/HPC-2.0. Additionally, we have some big name customers and opportunities we've been developing and this will allow us to continue bringing in the ARR (about $1M today) while also servicing a pipeline of $10M over the next 24 months.
>
> It is important to note that the intellectual property that we would need to build Fuzzball is all open source and I personally lead those respective open source projects and communities. Sylabs does have some commercial IP, which would be quite advantageous to have (e.g. Singularity Enterprise,

LEPISCOPO & ASSOCIATES LAW FIRM

which is not open source), but it is not a requirement for Fuzzball or any of our plans or projections for NEWCO. . .

The second model demonstrates inclusion of an optimistic sales pipeline which includes multiple DOD awards, strategic development NREs, as well as building ARR. It also includes several new market injection points around Fuzzball, which are conservative."

*See* SAC, Dkt. 82, ¶ 113; Exh. 46, Dkt. 82-9, pp. 5-6. In the Whitley Email, defendant G. Kurtzer explains to defendant Whitley that Fuzzball could be acquired by CIQ through open-source programs—a clear admission as to Defendants' theft of Fuzzball through open sourcing it. *See* SAC, Dkt. 82, ¶ 114; Exh. 46, Dkt. 82-9.

In the Whitley Email, G. Kurtzer alludes to what an advantageous it would be for Newco to have <u>Sylabs</u>' "**big name customers and opportunities**." In fact, around this timeframe, in order to steal Sylabs' customers and sales, defendant Greg Kurtzer arranged for all sales inquiries and purchase requests to be held until April 1, 2020, when he would no longer be employed by Sylabs, and **directed those sales inquiries and purchase requests to his Personal Email Accounts**. *See* SAC, Dkt. 82, ¶¶ 115 & 121; Exh. 46, Dkt. 82-9 (emphasis added).

This is an appropriate spot to dispute another one of Defendants' arguments set forth on pages 11-12 of their Motion. Specifically, Defendants argue that: "Sylabs' § 1030(a)(5)(A) claim fails because Defendants did not knowingly transmit a program, information, code, or command." *See* Dkt. 83, pp. 11-12. This is easily disputed because Mr. Tarbell's Declaration is an expression of his review and analysis of thousands of pages of Audit Logs. Thus IAG Defendants' argument is not correct because Mr. Tarbell has analyzed Sylabs' Audit Logs, which contain the following information for each Defendants' access to Sylabs' Computer Systems and Data2: (a) identity of the person accessing; (b) date, time, and what was accessed; (c) what folders were trashed or deleted; (d) what files were trashed or deleted; (e) what folders or files were renamed; (f) what files were download; (g) what directories were created for deletion and copying purposes; (h)

what permissions for access were granted and to whom; and (i) the specific email addresses utilized to access Sylabs' Computer Systems and Data; and so on. *See* SAC. Dkt. 82, ¶ 43; Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶¶ 27-139.

For example, Mr. Tarbell has concluded from his review and analysis of the evidence that defendants G. Kurtzer, J. Kurtzer, Adolph, Hayden, Fong, Buss, Prager, and Whitley, and also, through their respective officers, CIQ, Open Drives, and IAG were "**insider threats**" to Sylabs, As Insider Threats, on or about March 8, 2020, Defendants agreed to engage in unauthorized access for the purpose of committing cyber corruption and cyber destruction of Sylabs' Computer Systems and Data in violation of CFAA, 18 USC §§ 1030(a)(4) and 1030(a)(5)(A)-(C):

> "Sylabs suffered multiple insider threat attacks by their **former CEO and his cohorts**. Sylabs' former CEO, Gregory Kurtzer ("KURTZER"), used his authorized access to and knowledge of Sylabs' intellectual property, trade secrets, confidential information, resources, including personnel, facilities, information, equipment, networks, and system to **delete, share with outsiders, and download** Sylabs' sensitive corporate data."

*See* SAC. Dkt. 82, ¶ 46; Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 30, *see also* ¶¶ 31-127 (emphasis added).

Sylabs disputes Defendants' two damages arguments asserting that Sylabs has failed to allege loss or damage attributable to IAG Defendants. Motion, Dkt. 83, pp. 6-7 & 12-13. For example, Mr. Tarbell explains that Defendants' trashing or deleting files and folders constitutes the type of harm, *i.e.*, cognizable damage, that is remediable under the CFAA:

> "Google states that a user 'can remove Google Drive files and folders from… (Google Workspace) My Drive and shared drives…(with) trash or delete.' Files and folders in Google Workspace Drive can be permanently deleted without moving the data to trash. Any file or folder that is moved into trash is automatically deleted after 30 days. After a file is deleted, any other user that has been shared that file will lose access to the file."

*See* Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 5 (emphasis added).

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]**

**19**

Lepiscopo & Associates Law Firm

LEPISCOPO & ASSOCIATES LAW FIRM

Next, Mr. Tarbell connects the preceding explanation with Section 1030(e)(8) of the CFAA:

> "Damage, as defined in 18 USC § 1030(e)(8), is 'any impairment to the integrity or availability of data, a program, a system, or information.'"

*See* Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 6.

Mr. Tarbell then goes on to explain that Sylabs has suffered cognizable damage that is remediable under CFAA:

> "Deleting and trashing, which are automatically deleted after 30 days, files and folders in Sylabs' Google Workspace is a damage. These files' availability to legitimate Sylabs' Google Workspace users was impaired."

*See* Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 7.

Consistent with the foregoing, Sylabs alleges in the SAC that it has suffered actual, remediable damage **under CFAA** due to Defendants' cyber corruption and cyber destruction in the form of monetary damages. *See* SAC. Dkt. 82, ¶ 237. In opposition, Defendants cite *Van Buren v. United States*, 141 S. Ct. 1648 (2021) ("*Van Buren*") and *Andrews v. Sirius XM Radio, Inc.*, 932 F.3d 1253 (9th Cir. 2019) ("*Andrews*"). Motion, Dkt. 83, pp. 6-7. Although at first glance these cases seem persuasive, they are inapposite.

*Van Buren* concerned a police officer's access to a law enforcement database to retrieve a license plate number in exchange for money. However, the Supreme Court was concerned with what constituted "exceeds authorized access" not the nature of the damages. *Van Buren*, *supra*, 141 S. Ct. at 1654-1662.

*Andrews* concerned an action under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725. The issue of the CFAA was raised in the context of the denial of allowing leave to amend to add a new claim under the CFAA, which was denied. *Andrews* arose from the use of information from a driver's license given to a dealership, which was subsequently sold to a third party. *Andrews*, *supra*, 932 F.3d at 1255, 1257, 1262-1264.

The Court should not apply *Van Buren* or *Andrews* this Action because they related to minor matters clearly distinguishable when placed in juxtaposition to the comprehensive

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]**

**20**

cyber theft of Sylabs' Trade Secrets and cyber destruction of Sylabs' Computer Systems and Data.

Sylabs also disputes IAG Defendants' argument that Count II of the SAC alleges only authorized access, not unauthorized access. Motion, Dkt. 83, pp. 7-8. To the contrary, Sylabs alleges that IAG Defendants never had authorization because they never executed a non-disclosure agreement, and their access was intended and dedicated to effectuate cyber theft and cyber destruction. Furthermore, Sylabs alleges that defendant G. Kurtzer and defendants Whitley and IAG agreed that they would not enter into a nondisclosure or confidentiality agreement to **conceal** the identities of Whitley and IAG Defendants from Sylabs. *See* SAC, Dkt. 82, ¶¶ 106 & 107.

The foregoing is supported by the fact that G. Kurtzer believed Sylabs was in dire economic straits and that during this same time frame, in meetings with prospective investors (except IAG Defendants), defendant G. Kurtzer did everything he could to dissuade **other prospective** investors from investing in Sylabs, thereby sabotaging Sylabs' ability to receive investment capital. For example, he feigned being unprepared for meetings and uninterested in his presentations, could not explain Sylabs' existing products, provided incorrect and foolish answers to questions, and exhibited other behavior and demeanor that resulted in **all** investors being scared off and not moving forward with any further discussions or negotiations with Sylabs. Thus, Defendants' plan scared off investors for Sylabs, **while securing IAG Defendants' investment capital for CIQ** when it was launched on April 1, 2020. *See* SAC, Dkt. 82, ¶¶ 106 & 107. Of course, a reasonable inference from the foregoing is that defendant G. Kurtzer and defendant Whitley and IAG Defendants engaged in this unlawful conduct because they knew their plan to steal Sylabs' Trade Secrets would be successful and that CIQ would be funded by investment capital provided by IAG Defendants.

On the other hand, even if the Court were to assume, *arguendo*, that IAG Defendants had authorization to access Sylabs' Computer Systems and Data, they nonetheless violated

**SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]**

**21**

LEPISCOPO & ASSOCIATES LAW FIRM

the CFAA by **exceeding** such authority—thus, any authorized access effectively became unauthorized when they worked with the other defendants to damage Sylabs. In this regard, Mr. Tarbell explains that under Section 1030(e)(6) Defendants' access to Sylabs' Computer Systems and Data for the purpose of **deleting** and **trashing** Sylabs' Computer Systems and Data **exceeded** **any authorized access** they might have enjoyed even if there were under the IP Assignment/NDA Agreements (Exhs. 48-52, Dkt. 82-11 through 82-15). This is important, because even had defendant Whitley and IAG Defendants executed such an agreement, they would not have been conferred with the authorization to engage in the unlawful conduct alleged in the SAC, regardless of whether that conduct occurred before or after the mass exodus from Sylabs:

> "**Exceeds authorized access**, as defined in 18 USC § 1030(e)(6), is to access a computer with authorization and to **use such access to obtain or alter information in the computer that the accessor is not entitled** so to obtain or alter. Deleting and trashing files, damaging the data, on a Sylabs' computer system after resigning from Sylabs is **exceeding authorized access**."

*See* Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶ 13 (emphasis added).

Another unauthorized access came in the form of trashing of Data that IAG Defendants agreed to and planned with the other defendants relating to the deletion of Sylabs' multimedia files memorializing "All Hands" meeting held regarding Fuzzball (*i.e.*, video and audio files in mp4 format) in violation of Sections 1030(e)(8) and 1030(e)(6) of the CFAA. *See* SAC, Dkt. 82, ¶ 125; Exh. 38: Decl. of Tarbell, Dkt. 82-3, ¶¶ 102 & 103.

Although page limitations do not permit listing all of Defendants' violations of the CFAA, they are set forth in greater detail in Section VIII of the SAC, Dkt. 82, *see* ¶¶ 92-155. Specifically, during the time frame January 2, 2020, through the present, defendants Greg Kurtzer, Julia Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and IAG Capital Holdings II, collectively and individually, collaborated and used multiple devices to access, and actually accessed, Sylabs' Computer

LEPISCOPO & ASSOCIATES LAW FIRM

Systems and Data without authorization and/or in excess of authorization for the express purposes of:

1. **defrauding** Sylabs to obtain value in an amount between $33M and $150M in violation of CFAA, 18 USC § 1030(a)(4);

2. **intentionally damaging** Sylabs' Computer Systems and Data by knowing transmission in violation of CFAA, 18 USC § 1030(a)(5)(A);

3. **recklessly damaging** Sylabs' Computer Systems and Data by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(B); and

4. **negligently causing damage and loss** in an amount between $33M and $150M by intentional access in violation of CFAA, 18 USC § 1030(a)(5)(C).

*See* SAC, Dkt. 82, ¶ 190.

As alleged in Section VIII of the SAC, during the time frame January 2, 2020, through the present, Defendants G. Kurtzer, J. Kurtzer, Adolph, Hayden, Fong, CIQ, Open Drives, Buss, Prager, Whitley, IAG Fund II, and IAG Capital Holdings II have stolen, used and/or disclosed, and continue to use and disclose Sylabs' Trade Secrets, without Sylabs' consent or permission, to benefit themselves in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C). *See* SAC, Dkt. 82, ¶¶ 92-155. Specifically, the SAC alleges that CIQ's Patent Nos. US 10,970,113 (Exh. 37), US 11,099,893 (Exh. 39), US 11,310,342 (Exh. 40), US 11,055,428 (Exh. 41), US 11,163,902 (Exh. 42), and US 11,321,064 (Exh. 43) (collectively "Stolen Trade Secrets") were born out of Sylabs' capital investment, research, design, and development that commenced in 2019, which Defendants obtained without payment through their cyber theft. *See* SAC, Dkt. 82, ¶¶ 95-99 and ¶ 82 Figure 3.

In unlawfully procuring patents of the Stolen Trade Secrets, Defendants perpetrated fraud on Sylabs and the U.S. Patent and Trademark Office ("USPTO") by falsely listing

LEPISCOPO & ASSOCIATES LAW FIRM

SYLABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IAG INVESTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [Dkt. 83]
23

the names of inventors, omitting prior art, and engaging in inequitable conduct. *See* SAC, Dkt. 82, ¶¶ 100-102; *see also* 37 Code of Federal Regulations ("CFR") 1.56(a).[2]

Finally, as alleged in Section VIII of the SAC, Dkt. 82, including setting forth **each** defendants' **individual** conduct, during the time frame January 2, 2020, through the present, defendants Whitley (¶¶ 201 & 214), IAG Fund II (¶¶ 202 & 215), and IAG Capital Holdings II (¶¶ 203 & 216), G. Kurtzer (¶¶ 192 & 205), J. Kurtzer (¶¶ 193 & 206), Adolph (¶¶ 194 & 207), Hayden (¶¶ 195 & 208), Fong (¶¶ 196 & 209), Buss (¶¶ 199 & 212), Prager (¶¶ 200 & 213), CIQ (¶¶ 197 & 210), Open Drives (¶¶ 198 & 211) maliciously and willfully used and/or disclosed and continues to use and/or disclose Sylabs' Trade Secrets, without Sylabs' consent or permission in conscious disregard of Sylabs' rights and to benefit themselves in violation of CFAA, 18 USC § 1030(a)(5)(A)-(C). *See* SAC, Dkt. 82, ¶¶ 192-196, 199-203, 205-209, and 211-216 and Section VIII, ¶¶ 92-155.

## III. SYLABS REQUESTS LEAVE TO AMEND; OR DISMISSAL WITHOUT PREJUDICE.

In the event this Court determines that Count II of the SAC, Dkt. 82, is deficient, then Sylabs respectfully requests leave to amend it in light of Supreme Court and Ninth Circuit precedent. *See Breier, supra,* 316 F.2d at 790. If the Court were to dismiss any of the Defendants from Count II (CFAA), then Sylabs requests it is with**out** prejudice because once discovery commences evidence will be revealed that implicates any dismissed Defendants at which time Sylabs will move to join those defendants.

---

[2]    37 CFR 1.56(a) provides (emphasis added): "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a **duty to disclose to the Patent Office all information known to that individual to be material to patentability**. However, no patent will be granted on an application in connection with which **fraud on the Office was practiced or attempted** or the duty of disclosure was violated through bad faith or intentional misconduct."

LEPISCOPO & ASSOCIATES LAW FIRM

1

**CONCLUSION**

Based on the foregoing, Sylabs respectfully requests the Court to deny the Motion to Dismiss. Alternatively, if this Court grants the Motion in whole or in part, then Sylabs hereby requests leave to amend the SAC. *Breier, supra,* 316 F.2d at 790. If the Court were to dismiss any of the Defendants from Count II (CFAA), then Sylabs requests it is with**out** prejudice because once discovery commences evidence will be revealed that implicates any dismissed Defendants at which time Sylabs will move to join those defendants.

Dated:  June 17, 2024.          **LEPISCOPO & ASSOCIATES LAW FIRM**

                               By:  /s/ Peter D. Lepiscopo          _
                                    **PETER D. LEPISCOPO**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on June 17, 2024. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on June 17, 2024.

LEPISCOPO & ASSOCIATES LAW FIRM

By:  /s/ Peter D. Lepiscopo          _
      **PETER D. LEPISCOPO**
      *Counsel of Record*
      Attorneys for Plaintiff, **SYLABS, INC.**