CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
TAYLOR L. BENNINGER (State Bar No. 344825)
Taylor.Benninger@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Defendants
JOEL WHITLEY, IAG FUND II, LP, and
IAG CAPITAL HOLDINGS II, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| SYLABS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY ROSE a/k/a GREGORY M. KURTZER; JULIA ROSE a/k/a JULIA KURTZER; ROBERT ADOLPH; MATTHEW HAYDEN; ERIN FONG; CTRL IQ, INC. d/b/a CIQ; OPEN DRIVES, INC.; DAVID BUSS; MARLIN PRAGER; JOEL WHITLEY; IAG FUND II, LP a/k/a IAG CAPITAL PARTNERS; IAG CAPITAL HOLDINGS II, LCC a/k/a IAG CAPITAL PARTNERS; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:23-cv-00849-SVK<br><br>**IAG INVESTORS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Date:            August 6, 2024<br>Time:           10:00 a.m.<br>Courtroom:   6, 4th Floor<br>Judge:          Hon. Susan van Keulen |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A.  Sylabs Cannot Evade the Three Fatal Flaws That Pervade its CFAA Claims. ........... 2

        1.  *Sylabs Fails to Identify Any Loss Attributable to the IAG Investors.* .............. 2

        2.  *The IAG Investors Neither Accessed Sylabs' Computers Without Authorization Nor Exceeded Authorized Access.* ........................................... 3

        3.  *Sylabs' Single Allegation of Delayed Discovery Is Insufficient to Render its Claims Timely.* ................................................................................. 5

    B.  Additional Flaws Doom Sylabs' Claims Under Each Listed CFAA Subsection. ............. 6

    C.  The Court Should Not Grant Leave to Amend. ......................................................... 10

III. CONCLUSION ........................................................................................................ 11

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Al-Ahmed v. Twitter, Inc.*,
    648 F. Supp. 3d 1140 (N.D. Cal. 2023) ..................................................................................5

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019)............................................................................................3, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................1, 10, 11

*Breier v. N. Cal. Bowling Proprietors' Ass'n*,
    316 F.2d 787 (9th Cir. 1963) ................................................................................................10

*Calsoft Labs, Inc. v. Panchumarthi*,
    No. 19-CV-04398-NC, 2019 WL 5811300 (N.D. Cal. Nov. 7, 2019) ........................................9

*Chao v. Aurora Loan Servs., LLC*,
    No. C 10-3118 SBA, 2013 WL 5487420 (N.D. Cal. Sept. 30, 2013) ........................................6

*Coronavirus Rep. v. Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023) ...................................................................................................7

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ...............................................................................................7, 8

*Diamond S.J. Enter., Inc. v. City of San Jose*,
    395 F. Supp. 3d 1202 (N.D. Cal. 2019) .................................................................................11

*Floyd v. Saber Fitness Hegenberger, LLC*,
    No. 24-CV-01278-TSH, 2024 WL 2971669 (N.D. Cal. June 11, 2024) ....................................2

*Henry v. Napa Valley Unified*,
    No. 16-CV-04021-MEJ, 2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) .....................................2

*Ewiz Express Corp. v. Ma Lab'ys, Inc.*,
    No. 15-CV-01213-LHK, 2015 WL 5680904 (N.D. Cal. Sept. 28, 2015) ..................................8

*Jackson v. Carey*,
    353 F.3d 750 (9th Cir. 2003) ............................................................................................1, 10

*Ji v. Naver Corp.*,
    No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ..................................9

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ................................................................................................4

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ........................................................................................9

*Ogbazghi v. Ditech Fin. LLC*,
    No. 18-CV-00004-SVK, 2018 WL 8344841 (N.D. Cal. Apr. 10, 2018) ....................................6

*Oracle Am., Inc. v. Serv. Key, LLC*,
    No. C 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012).........................................7

*Resh, Inc. v. Skimlite Mfg. Inc.*,
    666 F. Supp. 3d 1054 (N.D. Cal. 2023) ....................................................................................1

*Sollberger v. Wachovia Sec., LLC*,
    No. SACV 09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010) .......................7

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ....................................................................................5

*Van Buren v. United States*,
    593 U.S. 374 (2021) .......................................................................................................3, 4, 5, 11

*West v. Ronquillo-Morgan*,
    No. CV 20-2711 DSF (Ex), 2021 WL 2953160 (C.D. Cal. May 10, 2021) ..............................6

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) .................................................................................................10

**FEDERAL STATUTES**

18 U.S.C. § 1030(a)(4) ...............................................................................................................6, 7, 8

18 U.S.C. § 1030(a)(5) ...............................................................................................................3, 8, 9

18 U.S.C. § 1030(b) .........................................................................................................................9

18 U.S.C. § 1030(c)(4)(A)(i)(I) .......................................................................................................3

18 U.S.C. § 1030(e)(8) ....................................................................................................................3

18 U.S.C. § 1030(e)(11) ..................................................................................................................3

18 U.S.C. § 1030(g) ........................................................................................................................3

**FEDERAL RULES**

Federal Rule of Civil Procedure 8 ...........................................................................................1, 7, 10

Federal Rule of Civil Procedure 9(b) ........................................................................................6, 7, 8

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................10

## I. INTRODUCTION

Sylabs' Opposition to the IAG Investors' Motion to Dismiss urges this Court to disregard whether Sylabs has pleaded sufficient facts against Joel Whitley, IAG, or any other individual Defendant and instead consider the "big picture" of their supposed "conspiracy." Sylabs, Inc.'s Memorandum of Points and Authorities in Opposition to IAG Investors' Motion to Dismiss, ECF No. 86 at 5 (June 17, 2024) ("Opposition" or "Opp.").[1] But this "conspiracy" is pure speculation. Across its three complaints, the only "overt acts" Sylabs has ever asserted against the IAG Investors are that IAG invested in CIQ, and that Whitley received an email, worked on a budget, and viewed some corporate documents. *Id.*; *see also* SAC ¶¶ 34, 108, 154-55. This is not enough. Just as the police cannot charge everyone who drives by a bank as "the getaway driver in a bank robbery," Opp. at 5, so Sylabs cannot tie the IAG Investors to a hypothetical conspiracy based on their routine investment activities.

Sylabs' "conspiracy" argument is just an effort to mask the truth: There is absolutely no support for its CFAA claims against the IAG Investors. Sylabs' Opposition proves this point. Not once, in 25 pages, does it link any loss or damage to the IAG Investors, show that they hacked into Sylabs' computers, or even defend its own diligence in discovering its alleged injury. Instead, Sylabs deflects and obfuscates: It fixates on a "single pleading deficiency," *id*. at 12, while ignoring other defects in its claims; it asserts that it "is entitled to offer evidence" and commence discovery, *id*. at 7 (quoting *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003)), based on abrogated pre-*Twombly* cases; and it continues to lump Defendants together despite "well-established law in this circuit that" group allegations "do not satisfy Rule 8[]." *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023). But none of these strategies can remedy Sylabs' fundamental failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] The terms "Sylabs," "IAG Investors," "SAC," "FAC," "First Dismissal Order," "Second Dismissal Order," and "Kurtzer" have the same meanings in this Reply as in the IAG Investors' Motion to Dismiss.

The bottom line is that the IAG Investors do not belong in this case. Sylabs has now had three chances to state a claim against them, and not only has it failed all three times—it has *never* alleged any facts showing, or even raising plausible inferences, that they committed *any* wrongdoing. As the Court aptly noted, this behavior shows that "(1) Sylabs simply cannot state most of [its] claims, (2) it may be acting in bad faith and (3) further leave to amend would be futile and would unduly prejudice Defendants." Second Dismissal Order, ECF No. 80 at 17. To spare the IAG Investors from having to defend against Sylabs' baseless allegations a fourth time, this Court should dismiss Sylabs' remaining claims against the IAG Investors without leave to amend.

## II. ARGUMENT

### A. Sylabs Cannot Evade the Three Fatal Flaws That Pervade its CFAA Claims.

The IAG Investors' Motion to Dismiss demonstrated that three independent flaws—the absence of CFAA loss, the presence of technical authorization, and the expiration of the statute of limitations—each doom all of Sylabs' CFAA claims. Sylabs' Opposition has not demonstrated otherwise. To the contrary, several of Sylabs' arguments are so thin and non-responsive that they constitute waiver, and all of its arguments collapse upon the slightest scrutiny.

#### 1. *Sylabs Fails to Identify Any Loss Attributable to the IAG Investors.*

Sylabs' Opposition fails to show that the IAG Investors caused the requisite $5,000 or more in loss. As the IAG Investors explained in detail, Sylabs' SAC improperly inflates its "loss" figures by including harms that are not cognizable under the CFAA—such as litigation costs and indirect economic harm—and harms caused by Defendants other than the IAG Investors. *See* IAG Investors' Notice of Motion and Motion to Dismiss SAC, ECF No. 83 at 6-7 (June 3, 2024) ("Motion" or "Mtn"). Sylabs' Opposition does not engage with these points, defend any of the losses listed in its SAC, or connect the IAG Investors to those alleged losses. This "failure to address in [its] opposition arguments raised in an opening motion . . . constitutes waiver or concession," *Henry v. Napa Valley Unified*, No. 16-CV-04021-MEJ, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016), and "dismissal is appropriate" on this ground alone, *Floyd v. Saber Fitness Hegenberger, LLC*, No. 24-CV-01278-TSH, 2024 WL 2971669, at *13 (N.D. Cal. June 11, 2024).

But even on the merits, Sylabs' nonresponsive arguments and irrelevant contentions cannot identify any CFAA loss. Sylabs posits that "trashing or deleting files and folders constitutes the type of harm, *i.e.*, cognizable damage, that is remediable under the CFAA." Opp. at 19. But this argument ignores the distinction between CFAA *damages* and CFAA *loss*. *Compare* 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (e)(11), (g) (defining loss and requiring $5,000 or more of loss for civil CFAA claims) *with id.* §§ 1030(a)(5)(A)-(C), (e)(8) (defining damage and requiring damage as an element of certain CFAA claims). And in any event, this argument does not show any loss attributable to the *IAG Investors*, as they did not "trash[] or delet[e]" Sylabs' "files" or "folders." *See also* § II.B, *infra*.

Nor is Sylabs' argument that "[t]he Court should not apply *Van Buren* [*v. United States*, 593 U.S. 374 (2021)] or *Andrews* [*v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019)]" even remotely persuasive. Opp. at 20. Sylabs attempts to characterize these cases as involving "minor matters," *id*., but whether or not the misconduct there was "minor" is of no moment. *Andrews* and *Van Buren* set out the binding legal rule that the CFAA's "'loss' definition . . . clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself." *Andrews*, 932 F.3d at 1263; *accord Van Buren*, 593 U.S. at 391 (interpreting "loss" as "costs caused by harm to computer data, programs, systems, or information services"). And as this Court has *already* held, this rule applies here, such that Sylabs cannot "recover[] for violations that result in . . . non-technological harm." First Dismissal Order, ECF No. 59 at 12.

Thus, because Sylabs does not allege $5,000 of technical loss—or even $1 of such loss—attributable to the IAG Investors, all of its CFAA claims against them must be dismissed.

**2.     *The IAG Investors Neither Accessed Sylabs' Computers Without Authorization Nor Exceeded Authorized Access.***

Sylabs' Opposition does not dispute that, according to Sylabs' own allegations, Sylabs' then-CEO, Greg Kurtzer, gave the IAG Investors technical permission to view and download Sylabs' corporate documents. *See* Mtn. at 7-8. Instead, Sylabs proffers two reasons why the IAG Investors lacked authorization: "they never executed a non-disclosure agreement, and their access

was intended and dedicated to effectuate cyber theft and cyber destruction." Opp. at 21. Neither argument has any merit.

First, the presence or absence of a non-disclosure agreement ("NDA") has no bearing on the question of whether the IAG Investors acted with authorization. The case law interpreting the term "without authorization" (which Sylabs ignores) sets out a simple test: "[A] person uses a computer 'without authorization'" only "when the person has not received permission to use the computer for any purpose." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009). And here, the IAG Investors "received permission" to access Sylabs' Google Drive, *id.*; *see also* SAC ¶ 155, so their access occurred with authorization. In other words, "without authorization" is "a gates-up-or-down inquiry," and once Kurtzer granted the IAG Investors "access [to Sylabs'] computer system," the gates were up notwithstanding the alleged absence of an NDA. *Van Buren*, 593 U.S. at 390.

Likewise, the IAG Investors' purpose in accessing Sylabs' Google Drive does not affect whether they acted with authorization. As the Ninth Circuit held in *Brekka*, "[n]o language in the CFAA supports [the] argument that authorization to use a computer ceases" if someone "use[s] the computer contrary to the [company's] interest" or has a "disloyal" "mental state"; rather, a person only "uses a computer 'without authorization'" if that person "has *no* rights, limited or otherwise, to access the computer in question." 581 F.3d at 1133-34 (emphasis added). Because Kurtzer granted Whitley the rights to view and download documents on Sylabs' Google Drive, SAC ¶ 155, Whitley did not act without authorization as a matter of law. Further, even if Sylabs' theory were not foreclosed by *Brekka*, Sylabs' SAC includes no non-conclusory allegations that the IAG Investors knew of (much less joined) any conspiracy, so Sylabs cannot demonstrate the factual predicate of its argument, namely, that Whitley's access "was intended and dedicated to effectuate cyber theft and cyber destruction." Opp. at 21; *see also* § II.B, *infra*.

In the alternative, Sylabs argues that, "even if . . . IAG Defendants had authorization to access Sylabs' Computer Systems and Data, they nonetheless violated the CFAA by **exceeding** such authority . . . when they worked with the other defendants to damage Sylabs." Opp. at 21-22 (emphasis in original). But this argument fares no better. First of all, the SAC does not allege an

exceeds-authorized-access theory against the IAG Investors, and "[a] complaint may not be amended by briefs [submitted] in opposition to a motion to dismiss." Second Dismissal Order at 10 (alteration in original) (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010)). More to the point, *Van Buren* squarely forecloses this theory. The defendant in that case, a police officer, accessed a law enforcement database and ran a license-plate search in exchange for money. *See* 593 U.S. at 378, 380. The Supreme Court held that the defendant "did not 'excee[d] authorized access' to the database, . . . even though he obtained information from the database for an improper purpose," because he had technical authorization to "use the system to retrieve license-plate information." *Id.* at 396 (alteration in original). So, too, here: It does not matter whether Whitley was "work[ing] with the other defendants to damage Sylabs"—which, again, Sylabs' SAC does not support—or what provisions might have appeared in an NDA had the IAG Investors signed one. Opp. at 22. The only thing that matters is that Whitley used "the permissions defendant Greg Kurtzer provided" to view or download all of the documents at issue, SAC ¶ 155, such that he never exceeded his authorized access.

   **3.**   ***Sylabs' Single Allegation of Delayed Discovery Is Insufficient to Render its Claims Timely.***

   Finally, Sylabs cannot show, based on the allegations in the SAC, that it brought its claims within the CFAA's two-year statute of limitations. Sylabs' Opposition emphasizes its "clear allegation[]" that it "'first started discovering evidence'" of Defendants' alleged intrusions "'on or after April 6, 2021,'" after "'the publication of defendant CIQ's . . . Patent,'" and it accuses the IAG Investors of creating a "factual dispute[]" based on "hypothetical and assumed facts." Opp. at 10-11 (quoting SAC ¶ 92). But Sylabs misconstrues both the relevant legal inquiry and the IAG Investors' argument.

   To set the record straight: The IAG Investors do not contest (at this stage of the proceedings) that Sylabs discovered the alleged intrusion "on or after April 6, 2021," nor do they assume that Sylabs actually discovered its injury earlier. The IAG Investors' point is instead that the SAC does not allege Sylabs' "inability to have made earlier discovery despite reasonable diligence." *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1156 (N.D. Cal. 2023) (citation

omitted); *see* Mtn. at 8-10.  After all, the CFAA's statute of limitations runs from "the hypothetical discovery of facts a reasonably diligent plaintiff would know."  *West v. Ronquillo-Morgan*, No. CV 20-2711 DSF (Ex), 2021 WL 2953160, at *3 (C.D. Cal. May 10, 2021) (citation omitted).  And Sylabs' SAC contains no allegations that it could not have discovered the alleged intrusions before April 6, 2021, through the exercise of reasonable diligence.  Just the opposite: the SAC alleges that Kurtzer published Fuzzball to open source over a year earlier, on March 23, 2020, SAC ¶ 123, and it does not explain why Sylabs could not have reasonably discovered its alleged injury after *that* publication.  Under such circumstances, Sylabs is the one asking "the Court to . . . draw unreasonable inferences" about timeliness, Opp. at 10, not the IAG Investors.

Sylabs' secondary argument—that the statute-of-limitations issue "has already been presented twice to the Court" and the Court has not yet "found any deficiencies" with the timeliness of Sylabs' claims, *id*. at 11—is also unavailing.  Well-established law permits defendants to "bring motions to dismiss in response to an amended pleading," including motions "based on arguments previously made in a prior motion to dismiss."  *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013).  And the fact that the Court did not previously rule on this issue says nothing about its merits, as the Court did not *need* to reach it given the other dispositive flaws with Sylabs' prior pleadings.  *Cf., e.g.*, *Ogbazghi v. Ditech Fin. LLC*, No. 18-CV-00004-SVK, 2018 WL 8344841, at *3 & n.3 (N.D. Cal. Apr. 10, 2018) (declining to "reach the other arguments in Defendant's Motion to Dismiss" where other grounds "bar[red] Plaintiff's claims").  In sum, the question of whether Sylabs' claims are timely is properly before the Court, and the answer, based on the SAC, is that they are not.

**B.     Additional Flaws Doom Sylabs' Claims Under Each Listed CFAA Subsection.**

In addition to the three overarching flaws that doom all of Sylabs' claims, the IAG Investors' Motion to Dismiss also identified specific flaws that affect and defeat Sylabs' claims under each relevant subsection of the CFAA.  *See* Mtn. at 10-13.  Sylabs' Opposition does not convincingly rebut even one of these flaws.

**First,** Sylabs' § 1030(a)(4) claim fails because it does not explain "the 'who, what, when, where, and how'" of the alleged fraud, as required by Federal Rule of Civil Procedure 9(b).

*Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (citation omitted); *see also* Mtn. at 10-11.  Sylabs does not dispute that Rule 9(b) applies to its § 1030(a)(4) claim; instead, it parrots segments of its SAC supposedly demonstrating "all defendants' pervasive fraud."  Opp. at 14; *see also id.* at 15-18.  But far from "invalidat[ing] the IAG Defendants' argument . . . that Sylabs' CFAA claim sounds in fraud but does not comply with Rule 9(b)," *id.* at 14-15, Sylabs' Opposition only proves the IAG Investors right.

"To comply with Rule 9(b), [Sylabs] must allege, with specificity, each incident of fraudulent conduct that comprises its CFAA claim against" the IAG Investors, *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *7 (N.D. Cal. Dec. 3, 2012)—but Sylabs does not identify *any* wrongdoing by the IAG Investors.  Instead, its Opposition cites several group allegations against "Defendants" or a laundry list thereof, *see* Opp. at 15 (citing SAC ¶¶ 46, 107-08), but like Rule 8, "Rule 9(b) 'does not allow a complaint to . . . lump multiple defendants together'" or "make 'everyone did everything' allegations."  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted); *see also Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (explaining that an undifferentiated list of defendants remains an improper group allegation).  Remarkably, Sylabs also spends pages of its Opposition recapping allegations against *other Defendants*, *see* Opp. at 15-16, 18 (citing allegations, in SAC ¶¶ 108-12, 111-16, about Sylabs' SBIR contract; emails between Defendants Kurtzer, Buss, Adolph, and Prager; contacts that Kurtzer and Adolph had with Facebook; and Kurtzer's approach to sales inquiries and purchase requests), but this conduct did not involve the *IAG Investors* and cannot support Sylabs' claims against them.  In fact, Sylabs highlights just one allegation involving the IAG Investors—the March 11, 2020, email, *see* Opp. at 17-18—but this email came from *Kurtzer*, so it cannot show the "specific content" of any "false

representations" by the *IAG Investors*. *Ewiz Express Corp. v. Ma Lab'ys, Inc.*, No. 15-CV-01213-LHK, 2015 WL 5680904, at *7 (N.D. Cal. Sept. 28, 2015) (citation omitted).[2]

Because Sylabs fails to connect the IAG Investors to any fraudulent conduct at all, much less describe that fraud with the particularity required by Rule 9(b), Sylabs' § 1030(a)(4) claim cannot stand.

***Second,*** Sylabs' § 1030(a)(5)(A) claim fails because the SAC does not allege that Whitley or IAG "knowingly cause[d] the transmission of a program, information, code, or command." 18 U.S.C. § 1030(a)(5)(A). Sylabs "dispute[s]" this argument, stating that "Mr. Tarbell's Declaration" contains information from "his review and analysis of thousands of pages of Audit Logs" such as the "identity of the person accessing" Sylabs' Google Drive and the "date, time, and what was accessed." Opp. at 18. But Sylabs misses the point. While Mr. Tarbell's Declaration states that "account joel.whitley@gmail.com viewed 14 files on Sylabs' Google Drive" and "downloaded the file 'Fuzz Budget,'" SAC Ex. 38 at ¶¶ 88, 90, the SAC does *not* allege that Whitley or IAG made any knowing transmissions of code or commands in order to do so. Nor does Sylabs explain how accessing or downloading a Google document constitutes the knowing "transmission of a program, information, code, or command" within the meaning of the CFAA— much less cite a single legal authority holding as much. In the absence of any on-point allegations or case law, Sylabs' § 1030(a)(5)(A) claim cannot succeed.

***Third,*** Sylabs' §§ 1030(a)(5)(A)-(C) claims all fail because the IAG Investors did not cause any damage to Sylabs' systems. Sylabs argues that "[d]eleting and trashing . . . files and folders in Sylabs' Google Workspace is a damage" under the CFAA, such that it "suffered actual,

---

[2] In addition to the supposed scheme of "cyber theft and cyber destruction," Opp. at 14, Sylabs also argues that "Defendants perpetrated fraud on Sylabs and the U.S. Patent and Trademark Office ('USPTO') by falsely listing the names of inventors, omitting prior art, and engaging in inequitable conduct," Opp. at 23-24; *see also id.* at 3. But the SAC includes *no* allegations connecting the IAG Investors to any patent applications, and group allegations do not suffice. *Destfino*, 630 F.3d at 958. Moreover, the SAC does not explain how the IAG Investors' actions— which were limited to viewing and downloading files that did not concern Sylabs' trade secrets, *see* Second Dismissal Order at 8—could have "further[ed] [an] intended fraud" to falsely patent Sylabs' trade secrets. 18 U.S.C. § 1030(a)(4).

remediable damage . . . due to Defendants' cyber corruption and cyber destruction." Opp. at 20. But this argument, which rests on improper group pleading, is insufficient to show any damage by the IAG Investors: Sylabs had to "specify with particularity which entity took which alleged actions," and it cannot "evade this requirement by making allegations against groups of 'defendants' generically." *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *6 (N.D. Cal. Sept. 30, 2022) (dismissing complaint, including CFAA claim, on group pleading grounds). What's more, Sylabs' SAC makes clear that the IAG Investors did *not*, in fact, delete any documents. *See* SAC ¶ 155 (alleging that Whitley "viewed 14 files" and "downloaded" one, without any allegations of deletions), Ex. 38 at ¶¶ 88-90 (same). Accordingly, the IAG Investors caused *no* damage, and Sylabs' claims under §§ 1030(a)(5)(A), (B), and (C) all fail.[3]

*Finally,* to the extent that Sylabs attempts to state a § 1030(b) CFAA conspiracy claim against the IAG Investors, its attempt fails. *See* Mtn. at 10 n.7. The SAC does not list § 1030(b) as one of the subsections the IAG Investors allegedly violated, *see* SAC ¶¶ 227-29, and even though Sylabs' Opposition is replete with accusations that the "IAG Defendants were actively involved in [a] conspiracy," Opp. at 17; *see also id.* at 5-6, 15, 19, 21, it never connects these accusations to a § 1030(b) claim. Accordingly, Sylabs has not identified § 1030(b) as a "provision[] [the IAG Investors] allegedly violated," so it necessarily "fail[s] to state" such a claim. Second Dismissal Order at 10. Moreover, the SAC contains only "bare statement[s] that '[Defendants] conspired to commit acts'" without any "specific allegations of an agreement and common activities," which is insufficient to support a § 1030(b) claim against the IAG Investors. *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835-36 (N.D. Cal. 2014); *see also, e.g.*, *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-CV-04398-NC, 2019 WL 5811300, at *7 (N.D. Cal.

---

[3] In defending these claims, Sylabs also relies on its allegations that "defendants Whitley ([SAC] ¶¶ 201 & 214), IAG Fund II (¶¶ 202 & 215), and IAG Capital Holdings II (¶¶ 203 & 216) . . . maliciously and willfully used and/or disclosed and continues [*sic*] to use and/or disclose Sylabs' Trade Secrets." Opp. at 24; *see also* Opp. at 23. But this Court already found that Sylabs did not allege any misappropriation by the IAG Investors and dismissed Sylabs' trade secrets claims against them with prejudice, *see* Second Dismissal Order at 8, 18, 20, and the IAG Investors renew their request to strike these allegations from Sylabs' SAC, if it survives. *See* Mtn. at 3 n.3.

Nov. 7, 2019) (requiring plaintiff to plead "at least the basic elements of the conspiracy, especially the existence of an agreement," and dismissing CFAA conspiracy claim where plaintiff failed to allege that "defendants reached some explicit or tacit understanding or agreement" (citation omitted)).

### C. The Court Should Not Grant Leave to Amend.

The lengthy list of weaknesses that remain in Sylabs' claims after three rounds of pleadings, *see* §§ II.A-B, *supra*, illustrates that further amendment would be futile and justifies dismissal with prejudice. Seeking to avoid this result, Sylabs argues that "due process" requires this Court to "specifically identif[y]" every defect with Sylabs' claims and give it "leave to amend so it can cure those new deficiencies." Opp. at 2-3, 13 (emphasis omitted). But the sole case on which Sylabs relies, *Breier*, interprets the abrogated pre-*Twombly/Iqbal* "any conceivable state of facts" standard, *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963) (citation omitted), and even then, it does not mention, much less establish, a due process right to alternative rulings. In fact, *Breier* acknowledges that dismissal *without* leave to amend is appropriate where there is "bad faith," "undue prejudice," or a "futility of amendment." *Id.* (citation omitted). Thus, far from supporting Sylabs' argument that it has a due process right to amend its pleadings, *Breier* supports dismissal with prejudice here.

Likewise, Sylabs' request for leave to amend on the grounds that "the evidence in Defendants' possession . . . will no doubt prove that all Defendants engaged in conduct that violates the CFAA," Opp. at 6 (emphasis omitted), rests on abrogated case law. After *Twombly* and *Iqbal*, the question is no longer "whether the claimant is entitled to offer evidence to support the claims." Opp. at 7 (quoting *Jackson*, 353 F.3d at 755). Since these watershed cases, "the Supreme Court has been clear that discovery cannot cure a facially insufficient pleading" and that plaintiffs may not "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6)." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (citing *Twombly*, 550 U.S. at 559)). Contrary to Sylabs' contention, then, the possibility that discovery could reveal new evidence is not a ground for dismissal without prejudice.

Instead, dismissal *with* prejudice is the appropriate result, and not solely because amendment would be futile. Sylabs' tactics in this litigation—including its unabashed reliance on pre-*Twombly* precedent, its continued use of improper group allegations, and its failure to engage with *Van Buren*, *Andrews*, and other binding case law—reinforce the conclusion that Sylabs is "acting in bad faith." Second Dismissal Order at 17. And the IAG Investors would be "unduly prejudice[d]" by any continuation of Sylabs' baseless claims against them. *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1217 (N.D. Cal. 2019). Under these circumstances, Sylabs should not receive another chance to amend, and this Court should not hesitate to dismiss its claims for good.

## III. CONCLUSION

As explained in this Reply and in the Motion to Dismiss, the IAG Investors committed no misconduct and do not belong in this lawsuit. Accordingly, the Court should dismiss Sylabs' claims against the IAG Investors and deny Sylabs leave to amend.

DATED: June 24, 2024                    MUNGER, TOLLES & OLSON LLP

By: */s/ Miriam Kim*
CAROLYN HOECKER LUEDTKE
carolyn.luedtke@mto.com
MIRIAM KIM
miriam.kim@mto.com
TAYLOR L. BENNINGER
Taylor.Benninger@mto.com

Attorneys for JOEL WHITLEY, IAG FUND II, LP, and IAG CAPITAL HOLDINGS II, LLC